EXHIBIT #10A

**From:** Jason Packer [mailto:jason.packer@worthpoint.com]
**Sent:** Wednesday, March 2, 2016 6:15 PM
**To:** Will Seippel <will.seippel@worthpoint.com>
**Subject:** Re: FW: Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

----------

From: **Jason Packer** <jason.packer@worthpoint.com>
Date: Thu, Mar 3, 2016 at 8:39 AM
To: Will Seippel <will.seippel@worthpoint.com>

Exhibit #6

I can file a temporary removal request w/Google for this URL:
http://www.worthpoint.com/worthopedia/titanic-lithograph-poster-48924121
Which is the one that has her text in the old cached version w/Google:
http://webcache.googleusercontent.com/search?q=cache:7Xt_g7k26S8J:www.worthpoint.com/worthopedia/titanic-lithograph-poster-48924121+&cd=1&hl=en&ct=clnk&gl=us
Should I go ahead and do that? They don't always process those but there's no real danger to us other than losing traffic for just one page.

==========

From: **Will Seippel** <will.seippel@worthpoint.com>
Date: Thu, Mar 3, 2016 at 2:46 PM
To: Jason Packer <jason.packer@worthpoint.com>

Yes, please do.

Reply 547

**From:** Jason Packer [mailto:jason.packer@worthpoint.com]
**Sent:** Thursday, March 3, 2016 8:39 AM

==========

From: **Will Seippel** <will.seippel@worthpoint.com>
Date: Thu, Mar 3, 2016 at 2:46 PM
To: Jason Packer <jason.packer@worthpoint.com>

Yes, please do.

Reply to Doc 547

**From:** Jason Packer [mailto:jason.packer@worthpoint.com]
**Sent:** Thursday, March 3, 2016 8:39 AM

--
Will Seippel
CEO/Founder
WorthPoint Corporation

(404) 996-1472 O)

Exhibit #2

support.google.com

Removing Content From Google - Legal Help

Legal Help

EXHIBIT #8 A(2)

EXHIBIT #10 B

# Removing Content From Google

This page will help you get to the right place to report content that you would like removed from Google's services under applicable laws. Providing us with complete information will help us investigate your inquiry.

If you have non-legal issues that concern Google's Terms of Service or Product Policies, please visit http://support.google.com

We ask that you submit a separate notice for each Google service where the content appears.

What Google product does your request relate to? Google Search

Which product does your request relate to? Google Search

Even if Google removes a webpage or image from our search results, we are not able to remove content from websites that host it. The page may still exist on the website and this means it can be found through the URL to the website, social media sharing, or other search engines. We recommend reaching out to the website owner to request removal.

Access this page to learn more about how to contact a website owner.

Public Information

Plaintiff's Google Evidence 02

a. Temporarily remove URL

b. Clear cached URL

EXHIBIT #167

6. Select Next to complete the process. The request usually takes up to a day to process, and is not guaranteed to be accepted. Check back to see the status of the request. If your request has been denied, click Learn more to learn why.
7. Submit additional removal requests for any additional URLs that might point to the same page, as well as any variations in URL casing that your server handles. For example, all the following URLs might point to the same page:
   - `example.com/mypage`
   - `example.com/MyPage`
   - `example.com/page?1234`
8. To make your removal permanent, read the next sections.

EXHIBIT #100

## Find the correct URL for blocking

Here's how to find the correct URL to submit to the tool in order to block it in Search results.

Web page URL

Image URL

Temporary Removal only for a 6 months

## Make your removal permanent

The Removals tool provides only a *temporary* removal of about six months. To remove content or a URL from Google search *permanently*:

1. Take one of the following actions to remove the page permanently:
   - Remove or update the content on your site (images, pages, directories) and make sure that your web server returns either a `404 (Not Found)` or `410 (Gone)` HTTP status code. Non-HTML files (like PDFs) should be completely removed from your server. (Learn more about HTTP status codes)
   - Block access to the content, for example by requiring a password.
   - Indicate that the page should not be indexed using the noindex meta tag. This is less secure than the other methods.
   - Do not use robots.txt as a blocking mechanism.
2. If you blocked the page before removing your content permanently (step 1), unblock and then reblock the page. This clears the page from the index, if it was recrawled after blocking.

Plaintiff's Google Evidence 07

## Cancel a request

If you want to cancel your temporary block from search results:

1. Open the Removals tool.
2. Find your request in the history table.

 Annamarie Trombetta <atrombettaart@gmail.com>

## Trombetta v. Norb Novocin, et al.- WE File: 19701.00006

**Annamarie Trombetta** <atrombettaart@gmail.com> Mon, May 23, 2022 at 1:27 PM
To: "Haimson, Nicole" <Nicole.Haimson@wilsonelser.com>, "Farmer, Jana S." <jana.farmer@wilsonelser.com>, "Bialek, Adam" <Adam.Bialek@wilsonelser.com>, Anderson Duff <ajd@hoganduff.com>

To All Attorneys,

Please see Plaintiff's response to the Rule 37 Letter. Also Plaintiff has attached her Google Search Help print out regarding the removal of the fraudulent internet link ""1972 Original Oil Man With Red Umbrella " that was misattributed to the Plaintiff.

The hand labeling is Plaintiff's Google Evidence 01 to 09. Please review the attachments and confirm receipt of all that has been emailed.

Sincerely,
Annamaire Trombetta
[Quoted text hidden]

**10 attachments**

**Rule 37 Plaintiff's Response.pdf**
78K

**Plaintiff's Google Evidence 01.pdf**
152K

**Plaintiff's Google Evidence 02.pdf**
120K

**Plaintiff's Google Evidence 03.pdf**
83K

Exhibit
#10D

**Plaintiff's Google Evidence 04.pdf**
129K

**Plaintiff's Google Evidence 05.pdf**
110K

**Plaintiff's Google Evidence 06.pdf**
226K

**Plaintiff's Google Evidence 07.pdf**
155K

**Plaintiff's Google Evidence 08.pdf**
123K

**Plaintiff's Google Evidence 09.pdf**
117K





2017-August-28

**BY FEDERAL EXPRESS AND ELECTRONIC MAIL; WITHOUT PREJUDICE; FOR SETTLEMENT PURPOSES**

Mr. & Mrs. Norbert and Marie Novocin
Estate Auctions Inc.
1221 Old Furnace Road
Seaford, DE 19973
estateauctionsinc@gmail.com

Exhibit 11A

**Re: Misattribution of eBay Lot Sold on 2012-Dec.-01, Described as "1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta YQZ" (the "Lot")**

Mr. and Mrs. Novocin:

We represent the artist Annamarie Trombetta ("Ms. Trombetta") in relation to your sale of the Lot referenced above. If you are represented by counsel, please forward this communication to him/her.

Estate Auctions Inc. ("EAI") offered the Lot in December 2012 on eBay. EAI's eBay seller page listed the Lot as being "by Annamarie Trombett[a]" and "signed Annamarie Trombetta." The listing reproduced biographical information from Ms. Trombetta's website, and further indicated that the Lot was "signed on the bottom, but on the back it has written in red on the stretcher, Annamarie Trombetta 'Gifted' 1977, 'Painted' 1972."

There are numerous grave problems with this attribution and description, including without limitation:

- Ms. Trombetta did ***not*** create the Lot nor approve her association therewith, such that the attribution of the work to her likely constitutes a **false designation of origin** in violation of the Lanham Act, and may also constitute a **violation of her moral rights** under the Visual Artists Rights Act;
- The unauthorized use of Ms. Trombetta's name for advertising or trade purposes was a **violation of her right of publicity** under New York state law;
- The publication of the misattribution of the Lot constituted **defamation**, resulting in damage to Ms. Trombetta's reputation, a detrimental impact on the sales prices for authentic works by her hand and/or the loss of individual sales thereof;
- The eBay listing's use of Ms. Trombetta's original website text constituted **copyright infringement**; and
- Because the signature on the front of the Lot can at best be read as "A. Trombetta," not "*Annamarie* Trombetta," the eBay listing, entirely *aside* from effecting a false attribution,



Exhibit #8-A

mnoh@CahillLawFirm.com

2017-August-28

**BY FEDERAL EXPRESS AND ELECTRONIC MAIL; WITHOUT PREJUDICE; FOR SETTLEMENT PURPOSES**

Mr. & Mrs. Norbert and Marie Novocin
Estate Auctions Inc.
1221 Old Furnace Road
Seaford, DE 19973
estateauctionsinc@gmail.com

**Re: Misattribution of eBay Lot Sold on 2012-Dec.-01, Described as "1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta YQZ" (the "Lot")**

Mr. and Mrs. Novocin:

We represent the artist Annamarie Trombetta ("Ms. Trombetta") in relation to your sale of the Lot referenced above. If you are represented by counsel, please forward this communication to him/her.

Estate Auctions Inc. ("EAI") offered the Lot in December 2012 on eBay. EAI's eBay seller page listed the Lot as being "by Annamarie Trombett[a]" and "signed Annamarie Trombetta." The listing reproduced biographical information from Ms. Trombetta's website, and further indicated that the Lot was "signed on the bottom, but on the back it has written in red on the stretcher, Annamarie Trombetta 'Gifted' 1977, 'Painted' 1972."

There are numerous grave problems with this attribution and description, including without limitation:

- Ms. Trombetta did ***not*** create the Lot nor approve her association therewith, such that the attribution of the work to her likely constitutes a **false designation of origin** in violation of the Lanham Act, and may also constitute a **violation of her moral rights** under the Visual Artists Rights Act;
- The unauthorized use of Ms. Trombetta's name for advertising or trade purposes was a **violation of her right of publicity** under New York state law;
- The publication of the misattribution of the Lot constituted **defamation**, resulting in damage to Ms. Trombetta's reputation, a detrimental impact on the sales prices for authentic works by her hand and/or the loss of individual sales thereof;
- The eBay listing's use of Ms. Trombetta's original website text constituted **copyright infringement**; and
- Because the signature on the front of the Lot can at best be read as "A. Trombetta," not "*Annamarie* Trombetta," the eBay listing, entirely *aside* from effecting a false attribution,

EXHIBIT# 12

was actually demonstrably inaccurate, potentially negligent and constituted a **breach of express warranty** in violation of the Uniform Commercial Code.

We understand that Ms. Trombetta reached out to you soon after her discovery of your online sale of the Lot, and spoke with you by telephone in January of this year, after the misattribution had been continually published for close to ***four years***—damaging her reputation and the market for her artwork all the while. Upon learning from our client that EAI had misattributed the Lot, you apparently refused to remedy the situation. Among other potential avenues of redress, you declined to do any of the following:

- Provide to Ms. Trombetta images of the verso of the Lot showing the alleged inscription;
- Provide to Ms. Trombetta contact information for the consignor or purchaser of the Lot or assure Ms. Trombetta that such third parties would be notified of EAI's misattribution of the work; Confirmation 2017 – WorthPoint Webpage Still Online
- Assure Ms. Trombetta that the misattribution would be corrected in EAI's records, including without limitation any public records (such as those available through online aggregators, e.g. WorthPoint) or website metadata.

Important *

Rather than taking any of the above actions or otherwise addressing the wrongs inflicted on this established artist, you challenged Ms. Trombetta to get an attorney. She has done so.

As discussed above, **EAI's misattribution and misdescription of the Lot, as well as its unauthorized use of Ms. Trombetta's website text, violates Ms. Trombetta's legal rights and gives rise to numerous claims under federal and/or state law**. EAI's failure to take corrective actions, even after being notified by Ms. Trombetta of these issues—in combination with other consumer complaints regarding misattributions and false descriptions of property sold by EAI—may also constitute evidence of fraudulent intent and/or a pattern of fraudulent behavior triggering criminal liability.

Although we were disappointed to learn that you previously declined to remedy your breaches of our client's rights, we have counseled Ms. Trombetta to make a final attempt to resolve this matter amicably with EAI, so as to save her the time and energy that would be consumed by commencement of an action against EAI. To that end, without prejudice and with express reservation of all of her rights, powers and privileges available under at law or in equity, Ms. Trombetta hereby demands that EAI:

On August 28, 2017

- **notify the consignor and purchaser** of the Lot of the Lot's misattribution, explicitly indicating that the Lot was not painted by Ms. Trombetta, and provide a copy of such notices and delivery confirmations to Ms. Trombetta (for the purposes of this settlement, it is acceptable for EAI to redact the names of the consignor and purchaser);
- **confirm that its internal records and any publicly-accessible data** (including website metadata) in regard to the sale of this Lot **has been corrected to remove any reference to Ms. Trombetta** (and instead correctly attribute the work to a different artist, or identify it as

Plaintiff's attorney's Request to Remove public data

Exhibit Exhibit #8-B

11-B

was actually demonstrably inaccurate, potentially negligent and constituted a **breach of express warranty** in violation of the Uniform Commercial Code.

We understand that Ms. Trombetta reached out to you soon after her discovery of your online sale of the Lot, and spoke with you by telephone in January of this year, after the misattribution had been continually published for close to ***four years***—damaging her reputation and the market for her artwork all the while. Upon learning from our client that EAI had misattributed the Lot, you apparently refused to remedy the situation. Among other potential avenues of redress, you declined to do any of the following:

- Provide to Ms. Trombetta images of the verso of the Lot showing the alleged inscription;
- Provide to Ms. Trombetta contact information for the consignor or purchaser of the Lot or assure Ms. Trombetta that such third parties would be notified of EAI's misattribution of the work;
- Assure Ms. Trombetta that the misattribution would be corrected in EAI's records, including without limitation any public records (such as those available through online aggregators, e.g. WorthPoint) or website metadata.

Rather than taking any of the above actions or otherwise addressing the wrongs inflicted on this established artist, you challenged Ms. Trombetta to get an attorney. She has done so.

As discussed above, **EAI's misattribution and misdescription of the Lot, as well as its unauthorized use of Ms. Trombetta's website text, violates Ms. Trombetta's legal rights and gives rise to numerous claims under federal and/or state law**. EAI's failure to take corrective actions, even after being notified by Ms. Trombetta of these issues—in combination with other consumer complaints regarding misattributions and false descriptions of property sold by EAI—may also constitute evidence of fraudulent intent and/or a pattern of fraudulent behavior triggering criminal liability.

Although we were disappointed to learn that you previously declined to remedy your breaches of our client's rights, we have counseled Ms. Trombetta to make a final attempt to resolve this matter amicably with EAI, so as to save her the time and energy that would be consumed by commencement of an action against EAI. To that end, without prejudice and with express reservation of all of her rights, powers and privileges available under at law or in equity, Ms. Trombetta hereby demands that EAI:

- **notify the consignor and purchaser** of the Lot of the Lot's misattribution, explicitly indicating that the Lot was not painted by Ms. Trombetta, and provide a copy of such notices and delivery confirmations to Ms. Trombetta (for the purposes of this settlement, it is acceptable for EAI to redact the names of the consignor and purchaser);
- **confirm that its internal records and any publicly-accessible data** (including website metadata) in regard to the sale of this Lot **has been corrected to remove any reference to Ms. Trombetta** (and instead correctly attribute the work to a different artist, or identify it as

Exhibit #11C
EXHIBIT #2(3)

"artist unknown"), including any data or metadata maintained by third party websites with whom EAI has a contractual relationship (e.g. Google AdWords or other SEO services), providing a listing of such corrective actions upon their initiation, and subsequent confirmation upon completion of such actions;

- **remit the lump-sum amount of $8,000.00 as liquidated damages** for the irreparable harm to her reputation and market caused by the original misattribution and EAI's subsequent willful perpetuation thereof.

Please confirm your agreement to the above conditions at your earliest convenience, and in any event no later than the close of business, New York time, on Friday, 2017-September-01; we will be happy to provide you with wire details for this firm's escrow account.

The foregoing does not purport to state all of the relevant facts or points of law. We request that EAI appropriately identify, preserve, and segregate all information relevant to Ms. Trombetta's claims, including without limitation electronically-stored information (*e.g.*, text messages, computer caches, recycle bins, emails, all drafts and mark-ups of documents, etc., whether controlled by EAI or its employees), in anticipation of the possibility of litigation regarding this matter. Nothing contained herein, and no delay, failure or omission by Ms. Trombetta to exercise any right shall impair such right or operate as a waiver thereof.

Kind regards,

Megan E. Noh

Cc: Annamarie Trombetta

Exhibit #11C

(10 of 16), Page 10 of 16 Case: 25-817, 05/12/2025, DktEntry: 21.2, Page 10 of 16

Exhibit 12A

1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (12/01/2012) 5/7/17, 11:18 AM

Plaintiff 000069

Date and Time

EXHIBIT #10 (11)

ebay

Worthopedia™
price guide

*Items in the Worthopedia are obtained exclusively from licensors and partners solely for our members' research needs.*

Flag item for content or copyright

If this item contains incorrect or inappropriate information please contact us here to flag it for review.

If you are the originator/copyright holder of this photo/item and would prefer it be excluded from our community, contact us here for removal.

- Home > Worthopedia™ > 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz

## 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz

- Sold for: Start Free Trial or Sign In to see what it's worth.
- Item Category:
- Source: eBay
- Sold Date: Dec 01,2012
- Channel: Online Auction

Welcome to EstateAuctionsInc! We are one of the Top Sellers of Antiques, Collectibles and Quirky items on eBay. We have been selling since 1998 and ALL of our auctions start at .99 cents. We are proud to announce that we maintain a "FIVE STAR Detailed Seller Rating" and our staff strives for 100% customer satisfaction. our 100% feedback rating will vouch for that. We work with consigners from Coast-To-Coast and work hard to make sure we have top quality items. We are "Your Quality Zone" - search "YQZ" to see our other listings our !

---

>>>>> UP IN THIS AUCTION <<<<< 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta New York Listed Artist - Shabby Chic Condition

- DESCRIPTION - Please be patient there are 12 photos to be loaded in this auction. Up in this auction is a wonderful and delightful oil on canvas painting of a man (I guess it could be a woman) with a red umbrella. This is by Annamarie Trombette. It is signed on the bottom, but on the back it has written in red on the stretcher, Annamarie Trombetta "Gifted" 1977, "Painted" 1972. To our eyes it looks like it is after the style of Andre Kohn. It is quite large being approx. 48 1/2" tall and 17 1/2" wide. We are calling it shabby chic condition as it has a tear in the canvas, about 5/8" long just to the left of the man's knees, but still such a great painting. For those not familiar with Trombetta, here is information about her from off AskArt as they got it from her

http://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-48924172 Page 2 of

(11 of 16), Page 11 of 16 Case: 25-1818, 05/12/2025, DktEntry: 21.2, Page 11 of 16

1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (12/01/2012) 5/7/17, 11:18 AM

Plaintiff 000070

Date and Time

website: Annamarie Trombetta (1963 - ) Lived/Active: New York The nature of an artist's life, creativity and growth may be synonymously expressed in the image of an archetypal tree. Beginning with the earthly descendent roots the artist like the tree branches out into its surrounding environmental and celestial world. Both ascend and descend, widening their girth of consciousness while producing visual imagery, weathering each season of change. Thus, I believe it is the nature of the artist and of nature itself to regenerate and manifest. All of the imagery in this catalog was either created en plein air or from the subject directly. My journey to becoming an artist began many years ago. The consanguineous roots of my Italian family tree provided me with an innate constitution for my artistic profession. When I was a tiny seed of contemplative thought, my artistic nature began to sprout interest while gazing up at the ceiling paintings in a neighborhood church named Regina Pacis, meaning Queen of Peace. The church located in Brooklyn, NY features ceiling paintings, sculptures, marble interiors, and incorporates architectural elements for the façade and the belfry that are of Italianate design. Before the age of three I was able to surmise that the church in the ceiling painting was indeed the church I was in. The visual stimulation was a form of education. It fostered my sense of perception which became my strongest mode for acquiring knowledge. As the years unfurled, my family moved to Staten Island. At this time it was a scenic field of luminosity, lush vegetation and a harbor view complete with sail boats and small yachts. A few years after we moved my tree of life was in jeopardy of loosing a limb. What appeared to be a swollen leg was indeed a cancerous tumor. It was an almost fatal or perhaps even a fated occurrence in my life. The struggle to survive the experience was lightened by my imagination and by my artistic ability to create. I seriously thought I would go into medicine but the posters and paintings in the hospital and doctor's office held my attention more intensely. I began my formal training at The Brooklyn Museum School of Art while I was in high school. The exposure to various forms of art inspired me to expand my horizons and in the early Eighties I traveled on a summer tour to Europe. The tour comprised of six countries; Germany, Austria, France, Italy, Switzerland and England. Viewing so many different cities and cultures in a concentrated period of time...

**Similar Items**

EXHBIT #10 (12

No image available

- Oil painting, original oil painting, impressionism

No image available

Exhibit 12B

- original oil painting on canvas

http://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-48924172 — Internet Web Address

Page 3 of 7

WorthPoint Evidence Exhibit 12,C-1

WorthPoint licenses the use of eBay sales data. Between 2012 and 2015, eBay made the Listing, among millions of others, available to WorthPoint for automatic download and publishing in its Worthopedia as a report of an auction sale. WorthPoint did not select the content it published, and in reporting the historical Auction Listing, WorthPoint did *not* select, review, edit or manually process it.

In August 2015, Plaintiff discovered the report of the Listing on WorthPoint's website. Insofar as the Listing had included language attributing the Painting to Plaintiff, the report of the auction sale also included that same information. Plaintiff claims that she did not create the Painting. WorthPoint takes no position on the authorship of the Painting, since it never saw the Painting, nor had any firsthand knowledge about the Painting. Plaintiff also claims that she holds a copyright in her Biography which was also part of the Listing. Again, WorthPoint has no independent knowledge about the Biography, as it never saw the Listing before being contacted by Plaintiff, and it was not involved in attaching the Biography to the Listing.

In January-February 2016, Plaintiff contacted WorthPoint with various questions about WorthPoint's report of the eBay Auction Listing (the "WP Report"). On February 3, 2016, Plaintiff requested that the WP Report be taken down. On February 4, 2016, WorthPoint removed the WP Report and never reposted it. While Plaintiff claims the WP Report was reposted, she has no firsthand knowledge of it and neither do her witnesses. The evidence upon which she relies constitutes "Google search results" that do not include the text of the Biography, the only work in which Plaintiff claims copyright.

Plaintiff's Amended Complaint, filed February 21, 2020, impleaded WorthPoint for the first time (ECF No. 36). Her claims sounding in copyright infringement (for her Biography), Digital Millennium Copyright Act violations (again, with respect to her Biography), and Visual

Exhibit #12-C-2

Biography was no longer visible on WorthPoint's website. Ex. "G", Seippel Decl., at ¶ 16-17. It was never reposted. *Id.*

While not alleged in the SAC, throughout this case, Plaintiff has argued that if WorthPoint took down the WP Report, then in March and in May 2017, the WorthPoint posting was "reposted" or "resurfaced," since she saw links to WorthPoint's website when she made very specific Google searches for the title of the Painting. ECF 348-1., at p. 13, ¶13; Ex. "A", Plaintiff's Deposition, at p. 256, ll. 9-16. Plaintiff cannot rely upon WorthPoint's assertion that the post was removed in order to establish her claim that the WP Report was re-posted. Plaintiff never claimed the WorthPoint post was removed, and as such, she cannot claim it was reposted. Accordingly, she cannot establish a new act to re-start the limitations period.

Even if Plaintiff argues that WorthPoint has conceded that the post was removed, Plaintiff cannot prove the WP Report was reposted. While Plaintiff claims she saw the post was still live in March and May 2017, there is no competent evidence in support, and WorthPoint can show definitively that it was not reposted, and can explain Plaintiff's incorrect assumption. First, Plaintiff conceded that she did not click through to the page on WorthPoint's cite and never saw the WP Report again on WorthPoint's site. Ex. "A", Plaintiff's deposition, p. 270, ll. 6-9. Strikingly, discovery has revealed that neither Plaintiff, nor any of Plaintiff's witnesses, can point to any evidence that WorthPoint "reposted" the WP Report containing Plaintiff's Biography after it was permanently taken down by WorthPoint on February 4, 2016. Exhibit "C", Chu Deposition, at pp. 18-19, 23-24; Ex. "D", Ploski Deposition, at p. 56; Ex. "P", Goodwillie Deposition, at p. 33; Ex. "I", O'Leary Deposition, at pp.117-118. During Ms. Trombetta's deposition, she was questioned as to the basis of her allegation that the infringing work remained in 2017. Plaintiff alleges on March 15, 2017, she searched on Google for *1972 Original Oil Painting Man with Red*



EXHIBIT# 12C-3

*Umbrella Signed* and the search result reported this title in connection with a link pointing to WorthPoint's website. *See* Ex. A, pp. 269-270. Plaintiff could not recall whether she clicked through to access WorthPoint's website on that day and does not know what the page would have contained. *Id.* Rather, she responded, "I cannot respond with certainty". *Id.* Plaintiff therefore has no evidence that the WP Report was present on WorthPoint's site, and she cannot establish that the Biography was contained within WorthPoint's report of the Auction Listing within three years of the filing of the Complaint.

Plaintiff may point out that she has a printout showing WorthPoint's report of the Auction Listing dated May 7, 2017. Ex. A, Plaintiff's deposition, p. 236. Plaintiff admits that she previously saved a copy of the report of the Listing to her computer. *Id.* Plaintiff admits that her printer puts a date on the corner of the printout. *Id.*, pp.236-237. As explained in the accompanying report of Jessie Stricchiola, the printer date on a printout of the page ostensibly from WorthPoint's website does not necessarily mean that this page appeared on WorthPoint's website at that time. *See* Ex. E, Stricchiola Report, p. 13, at ¶23. Without additional evidence, which Ms. Trombetta has failed to set forth, the timestamp is not a reliable indicator because it can be incorrect and/or manipulated. *Id.*

Plaintiff was aware of the subject WP Report since at least August 2015, yet she did not file her claim against WorthPoint until almost five years later in February 2020. WorthPoint has definitively proven, through Google Analytics, the testimony of Jason Packer, and the expert findings of Jessie Stricchiola, that WorthPoint never reposted or re-reported the historical listing after it was removed on February 4, 2016.

In contrast to Plaintiff's mere conjecture and baseless assumptions by Plaintiff and her witnesses, WorthPoint provided a Declaration of Jason Packer, the individual responsible for

Judge Swain Mem. Exhibit 12D

WorthPoint within three years of her initiating these claims against WorthPoint, i.e., after February 21, 2017. During her deposition, Trombetta could not recall whether she had clicked on the link displayed in the Google search results in March 2017, and she proffers no evidence from any other witness who claims to have done so or to have seen her biographical information on WorthPoint's site after that time. (See docket entry no. 425-1 ("Trombetta Dep.") at 269-70.)

Therefore, the only evidence the Plaintiff provides to substantiate her claim that WorthPoint reposted the listing is a March 15, 2017, screenshot of the link on a list of Google search results, which Stricchiola's uncontroverted proffer establishes does not prove anything about when the Listing was accessible on WorthPoint's website. WorthPoint, on the other hand, has provided substantial evidence from witness testimony and its web traffic history to establish that the page was taken down on February 4, 2016, and was not accessible at any point after that date. (See Packer Decl. ¶¶ 11, 13, 25.) The Court finds, viewing the evidence in the light most favorable to Trombetta, that Trombetta has failed to establish a triable issue of fact regarding WorthPoint's alleged "renewed act," and the Defendant is entitled to summary judgment on this issue.

For these reasons, the Court grants WorthPoint's motion for summary judgment in its entirety and denies Plaintiff's cross motion for summary judgment against WorthPoint in its entirety.

*Remaining Claims against EAI*

Trombetta and EAI have cross-moved for summary judgment on the three remaining claims against EAI, which assert violations of VARA and the DMCA, and direct copyright infringement.

Judge Swain - Memo Date 2025

timely claim under the copyright act against WorthPoint, Trombetta needed to have proffered admissible evidence sufficient to create a genuine dispute that WorthPoint engaged in a "renewed act" of infringement after February 21, 2017. (Id. at 18.) In the Final Opinion, the Court explicitly referenced and discussed the proffered March 2017 screenshot because that would have been a sufficiently timely "renewed act," had any screenshots from Google Searches created a genuine dispute regarding the listing's accessibility after February 21, 2017. As the Court found from consideration of the expert testimony offered by WorthPoint's witnesses, screenshots of Google search results could still display a "cached" version of the webpage even after WorthPoint deactivated the page. (Id.) Without more, the screenshots failed to show that WorthPoint reposted the listing within the relevant time period. Thus, Trombetta's proffer, at this stage, of additional screenshots taken later in 2017, fails to create a genuine dispute of material fact for the same reasons discussed in the Final Opinion.

Finally, Trombetta again proffers various pieces of evidence that are not relevant to any dispositive findings in this action. These include transcripts of phone calls between Trombetta and the EAI Defendants (Motion at 29-33), records of her pre-February 2017 discussions with WorthPoint requesting that the platform remove the misattributed listing from their website (id. at 17-25), and disputes over her preferred email address (id. at 40).

Because none of the evidence or claims Trombetta discusses are sufficient to show that the Court overlooked controlling law or relevant factual matters, Trombetta's Motion for Reconsideration is denied.

EXHIBIT 2E

Unpled Claims

Finally, Trombetta argues that the Court erred in finding that her claims for "fraud" and "negligence" were not pled in the operative pleading (see docket entry no. 348-1 (the