July 31, 2025
Case No. 25-817   Title:   Trombetta v. Novocin & WorthPoint Corporation

United States Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square. New York, New York 10007
The Honorable Chief Judge Debra Ann Livingston

To The Honorable Chief Judge Debra Ann Livingston,

    On May 12, 2025, Plaintiff /Appellant, Annamarie Trombetta, filed a Motion pursuant to FRAP Rule 27. In my motion, I listed some of the factual errors made by the District Court in support of the grounds for filing my appeal. On May 22, 2025, the attorneys for Defendant, WorthPoint Corporation sent me a letter that prompted me to request a Pro Bono attorney from The Second Circuit Court. My fourteen page letter with exhibits, which further explains my reasons for filing my appeal and requesting a Pro Bono attorney, were filed on June 2, 2025. Since this time, I have been awaiting the Court's response to my request. The purpose of this letter is to find out if or when I will be assigned a Pro Bono attorney.

    I remind the Court, I cured my DP Form 1080, which was refiled on May 12, 2025. Pursuant to Local Rule 31.2 (a) (1) (A) my brief should be filed within 91 days after the D-P Form was filed with the Court. According to this rule of measurement, my brief is due on August 11, 2025. I note that on the Pro Se Scheduling Notification form, if I fail to return a signed scheduling proposal, the Court will issue an order setting a 40-day deadline to file my brief. Again, I am waiting for the Court's decision on my request to receive a Pro Bono attorney. Below is a preview of some clear cut violations and willful and unethical gamesmanship that was ignored and/or overlooked by the lower Court and caused my appeal.

    The basis for my case in the lower court and this appeal pertains to intellectual property and copyright infringements violations and the willful committing of fraud by both Defendants. The crux of my case is due to an online website ad and the unauthorized and incorrect use of my name, biography, allegedly taken from the online website, askART in 2012. First, my biography was not on askART until 2015. EAI's online ad on WorthPoint's website had my birth year, it stated I was a New York artist, with my full name (spelled correctly) and advertised on the world wide internet, I created a four foot high, original oil painting, signed on the front and back, at age nine. The first Defendants, Norb and Marie Novocin, Estate Auctions Inc. admitted they **"gleaned"** my biography from askART's website

**NO. 7 TO THE RIGHT IS FROM NORB NOVOCIN"S DECLARATION  DOC. 56 FILED ON  06/26/20 PAGE 2**

> 7. I used biographical information about Plaintiff that I found on *AskArt.com* to ensure that the Estate Auctions eBay listing for the Painting was as accurate as possible. All of the information about Plaintiff that I included in the eBay listing was gleaned from *AskArt.com*.

which violates askART's Terms of Use. In summary, the fake EAI 1972 painting ad and the use of my self authored biography should have never been used or created. I noted this fact in my June 2, 2025 letter on pages 2 and 3. Annexed as **EXHIBIT #1** is askART 's Terms of Use, filed on 07/13 /2020 in Doc. 72, in my response to Defendants Motion to Post a $20,000 bond. The excerpt from askArt's Terms of Use clearly states : *You may* **not** *modify, create derivative works from, participate in the transfer or sale of, post on the World Wide Web, or in any way exploit the Site or any portion thereof for any* **public or commercial use without the expressed written permission of askART.**   SEE FULL EXCERPT BELOW FROM THE ASKART TERMS OF USE ON ITS WEBSITE.   ANNEXED IS **EXHIBIT#1** IS THE FULL PAGE OF THE ASKART TERMS OF USE.

> OWNERSHIP; RESTRICTIONS; TRADEMARKS
>
> askART owns, controls, licenses or has the right to use and provide the Site and all material on the Site, including, without limitation the askART Artist database, text, images, artist biographies, price valuation reports, articles, photographs, illustrations, audio and video clips, (collectively the "Content"). The Site is protected by copyright as a collective work and/or compilation, pursuant to U.S. copyright laws, international conventions, and other copyright laws. askART is the owner of the copyright in the entire Site. askART owns a copyright in the selection, coordination, arrangement and enhancement of the Site. You agree to abide by any and all copyright notices, information or restrictions displayed on the Site. askART does not grant permission to users of the site to reproduce images of original works of art.
>
> You may not modify, create derivative works, participate in the transfer or sale of, post on the World Wide Web, or in any way exploit the Site or any portion thereof for any public or commercial use without the express written permission of askART. You are responsible for complying with all applicable laws, rules and regulations regarding your use of any such downloaded Content. In the event of any permitted copying, redistribution or publication of material from the Site, no changes in or deletion of author attribution, trademark, legend or copyright notice shall be made.
>
> askART and Artist Bluebook are trademarks and service marks of askART, Inc. ALL RIGHTS RESERVED. All other trademarks, service marks, product names and company names or logos appearing on the Site are the property of their respective owners. Any use of such trademarks, service marks, product names and company names or logos, including the reproduction, modification, distribution or republication without the prior written permission of the owner of same, is strictly prohibited.

Magistrate Judge Cave did not address askART's policy that prohibits the transference, modification, or any creative derivative work by any third party. Judge Cave denied, <u>without prejudice,</u> Defendants' $20, 000 bond against me. On March 19, 2021, in Doc. 159, I filed a Motion for Sanctions to bring the non permitted use of any content on the askART website, clearly stated by askART on their website, to Judge Cave's attention. Plaintiff filed the Declarations by Norb and Marie Novocin in Doc. 56 and Doc. 57. Defendants declared in writing that the source of Plaintiff's biography was from the askART's website. In my Motion for Sanctions, I included Rule 11 and 11*2(b): Representations to the Court—By presenting to the court a pleading, written motion, or other papers—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;*

Judge Cave's response in Doc. 160, to my Sanction Motion-(Doc.159) which is below, not only has a clerical error and future date, (Oct.19, 2021— I filed my Motion on March 19, 2021) it, ultimately postponed and overlooked this quintessential violation by first Defendants, Norb and Marie Novocin, who declared my bio from askART's website in 2012 which is not permitted. Again my askART bio was added in 2015. This willful intention and the Novocins conscious act to use my biography, is an a priori intuitable, constitutive element and a clear cut violation to the written restrictions of askART's Terms of Use to create any derivative online ad. I produced and filed dated emails in 2015 to Bob Bahr who contacted and recommended by biography to askART as two other files documenting the 2015 year.

PLAINTIFF'S MOTION DOC. 159                    JUDGE SARAH L. CAVE ORDER DOC. 160

> 159  03/19/2021  PLAINTIFF'S MOTION FOR SANCTIONS DUE TO FRAUD UPON THE COURT BY DEFENDANTS MARIE & NORB NOVICINS'S WILLFUL FILING OF FALSE DECLARATIONS "SUBJECT TO PENALTY OF PERJURY" ADDITIONALLY PLAINTIFF REQUEST FOR DISMISSAL OF ATTORNEY ANDERSON DUFF. Document filed by Annamarie Trombetta.
> 19 Attachments ▼

> 160  03/22/2021  ORDER. On October 19, 2021 Plaintiff pro se Annamarie Trombetta filed a motion seeking sanctions against Defendants Norb and Marie Novocin and their counsel ("Plaintiff's Motion"). (ECF No. 159). Defendants need not undertake to file any opposition to Plaintiffs Motion, on which the Court will rule in due course. The Clerk of Court is respectfully directed to mail a copy of this Order to Ms. Trombetta at the address below. Mail To: Annamarie Trombetta, 175 East 96th Street (12R), New York, NY 10128. SO ORDERED. (Signed by Magistrate Judge Sarah L. Cave on 3/22/21) (yv) Transmission to Docket Assistant Clerk for processing.

At the beginning of Discovery, on April 8, 2022; I produced my 1972 childhood signature in print and script. First Defendants , Norb and Marie Novocin (EAI) online ad, photo featured a signature with an initial and allegedly my last name "Trombetta" . Mr. Novocin testified this signature appeared to look garbled. The Novocins' ad did NOT feature the second signature in red, yet it was the basis for their attribution. Seven years later, in Discovery, the red signature has three misspellings of my first name. Defendant's attorney, Mr. Duff and WorthPoint's attorneys willfully refused to acknowledge that the two signatures on the 1972 Original Oil Painting, the photo featured incomplete signature—"A. Trombetta" and alleged printed signature which misspelled my name in three different way, is not by my hand. Annexed as **EXHIBIT #2** is Plaintiff's filing on June 14, 2023 in Doc. 504 quoting EAI's response to my Statement of Material Facts No. 15. Plaintiff adds to this subject, attorney Anderson Duff made two unethical alterations which fail to note my name was misspelled in the red signature in his EAI Rule 56.1 Statement of Facts in ECF 421, SMF No 11, filed on 04/ 17/23. Mr. Duff in No. 11 SMF **(inserted below)** made a noteworthy **omission of the phrase "Gifted 1977".** Please note in EX.#2 Mr. Duff's wrote *"Plaintiff has demonstrated that she is willing to make misrepresentations while under oath".* Mr. Duff's written, filed SMF, below is another false document violating Rule 11 & 11*2(b).*

> 11. The wooden frame appearing on the back of the Painting featured the statement "Annamarie Trombetta, painted 1972." (Duff Decl. ¶ 3, Ex. A at 35:16-24, Ex. 2.)

In ECF 421, Mr. Duff's statement of fact, No 11, literally changed and omitted the space between Anna and Maria and changed ANNA MARIA to a spelling as one word, Annmarie. He also changed in SMF No. 11 ending with letter capital "A" as in the EAI photo evidenced to lower case letter "e".  These facts and attempts to change evidence are significant. Mr. Duff changed his clients misspelling of my name. . Mr Duff's attempt to hide these facts of the misspelling in red verses the way I spell my name reveals Mr. Duff has technically committed fraud and ultimately violated Rule 11 and 11*2(b)*. Plaintiff filed in Doc. 504 on 06/14/2023 my response EAI's Response to my Statement of Facts Rule 56.1. On page 7, I documented that both signature produced by first Defendants, red and black, front and back, prove the 1972 oil painting is **not** signed "Annamarie Trombetta". I also note each of the two signature produced by the Novocins, who willfully created this problem, looks completely different from the other.

   In Judge Swain's Memorandum in Doc. 538 filed on February on page 33, the Judge wrote I provided **"no evidence** other than **one** Wayback Machine documenting the year 2015"- SEE BELOW  This is completely inaccurate. One main reason for filing my Motion to Reconsider on March 19, 2024 in Doc. 542 was to bring to Judge Swains attention two dated emails I sent to. Bob Bahr who was

> 4   Plaintiff argues that Mr. Novocin could not have found her biography on askArt.com in December of 2012 because — Plaintiff asserts — her profile on askArt was first created in 2015. (Pl. Mem. at 22-23.) Plaintiff purports to substantiate her allegations with a computer screenshot, taken through Wayback Machine, which shows that her askArt profile <u>was</u> viewable in 2015. (Docket entry no. 488-1 at Ex. 18.) Plaintiff seems to misunderstand her own evidence. The existence of Trombetta's askArt profile in 2015 only shows that the webpage existed, and its data was cached, by 2015 at the <u>latest</u>. It does not disprove EAI's assertion that the page existed in 2012 and earlier. Because Plaintiff provides no evidence to contradict Mr. Novocin's testimony, the Court cannot find a genuine issue of fact regarding whether Mr. Novocin found the biography on askArt.
>
> TROMBETTA CROSS MSJs         VERSION FEBRUARY 20, 2024                                33

responsible for recommending my bio be listed with askART in 2015. In Doc. 542 filed 03/19/23 (Motion To Reconsider page 13) I inserted two screen shots. First, my March 5, 2015 email to Bob Bahr . This email documents my written consent to Bob to recommend my website biography to askART's website. On June 6, 2015, I sent Bob Bahr an email thanking Mr. Bahr for his recommendation and confirmed that my website biography was listed on askART's website.  I filed in the Court Records these two dated emails recently in Doc, 504 -2 page 4, Doc. 517-4 page 31, Doc. 518-2 - page 4. It includes my bio on askART's webste, WayBack Machine , captured in Sept.22, 2015 with my two 2015 emails to Bob Bahr.

   It is the Defendants, Estate Auctions Inc. and WorthPoint Corp. that only provided **one** fraudulent screenshot from Wayback Machine. Defendants evidence, just like their ad and their signatures in red and black, on the front and back of their 1972 damaged oil painting, is deficient and devoid of accurate information and is difficult to read. I filed it in Doc. 517-4 on 06/29/23 Page 34 of 38. Page 36 is Plaintiff's TRUE and AUTHENTIC 2015 askART biography listing . Please note Defendants fake evidence is bate stamped **WP000141**—-which means it is WorthPoint's Evidence. **EXHIBIT #3**





4 of 13

**TO THE LEFT IS A DETAIL OF URL WHICH IS HARD TO READ AND <u>DOES NOT</u> HAVE <u>MY NAME NEXT TO THE CODE</u> . DEFENDANTS EVIDENCE IS DEFICIENT AND FLAWED.**

I bring to the Court's attention that Defendant's fraudulent evidence has a grammatical error. Once again there is a significant **<u>defect</u>** and **<u>flaw</u>** in the Defendant's evidence that invalidates it's authenticity.



The statement to the left should read:

" *This biography* <u>*IS*</u> *from the Archives of AskART:* "

**THE TRUE, AUTHENTIC 2015 LINK HAS MY NAME : ANNAMARIE TROMBETTA IN THE URL. TWICE ALONG WITH THE ASK ART CODE 11156459.**
Below is the Plaintiff's authentic Wayback Internet Archive which has my name—Annamarie Trombetta with the code-11156459 and was Captured and Saved **1 time** on September 22, 2015. The authentic active link is online. At.    https://web.archive.org/web/20250000000000*/https://www.askart.com/artist/ Annamarie_Trombetta/11156459/Annamarie_Trombetta.aspx. **SEE EXHIBIT #4. TRUE askART website.**

   Throughout litigation both Defendants willfully and deliberately denied, lied and committed fraud to such an extent, I was compelled to file an Amended Complaint to include Fraud, Tort, IIED. My Amended Complaint was granted by Judge Cave on 02/02/23 in Doc.366. Judge Swain 's error in Doc. 538 filed on 02/20/24 inaccurately overlooked Doc. 366. Despite Plaintiff filing Doc. 542 on 3/19/24 noting the errors pages 3 thru 9, Judge Swain in Doc. 556 filed 03/07/25 wrote the same misinformation in No. 2, page one as written on page one in Doc. 542. I kindly ask the Second Circuit Court to please read my Motion Rule 59(e) and Rule 60, Doc. 542 on 3/19/24 which addresses many errors in the lower Court.
   Plaintiff's self authored biography noting my unique personal and professional information cannot be applicable to anyone else. Defendants incorrectly and unethically used my biographical information, which are clear cut violations of intellectual property and copyright infringements. It is the grounds for my lawsuit and appeal. In Discovery, I produced several documents including my original draft of my biography, dated sales receipts from my 2003 biographical editor, my first payment in 2003 to my website host, and dated exhibits for realist artists see **EXHIBIT #5 First Draft of Trombetta Biography** Annexed as, **EXHIBIT #6 Plaintiff's Evid No. 000124 Website Biography, filed numerous times). EXHIBIT #7 Trombetta's acceptance letter Representation Exhibit at the Arnot Museum.**    My 2003, complete biography with my CMI and copyright logo and statement *"All works on this site are copyrighted by Annamarie Trombetta "* with copyright symbol-*"All rights reserved"* In support of my statement, that Defendants WorthPoint Corp.willfully denied, lied and delayed litigation, is

**EXHIBIT #8** page 1 of Doc. 479 filed on 05/30/23. WorthPoint's response to Plaintiff's Undisputed Statements of Facts regarding my biography that Defendants used in their fake ad. Defendants pattern of lying and denial is also documented before Discovery. I announced I possessed my 1972 handwritten signatures yet agreed to write a letter before Discovery began. Noted in Doc. 207 filed 03/02/2022 and Doc. 209 are two written settlement letters. The first was requested and the second, Ordered by Judge Cave The attorneys falsely wrote to the Judge ,I did not include a numeric settlement amount in my first letter. Judge Cave Ordered me to write a second letter. without ever hearing my side. My settlement conference request was ignored by Judge Cave in Doc.214 on March16, 2022, who sided with Defendants by cancelling the scheduled Settlement Conference. Defendants documented, willful, false statements regarding my numeric amount in first settlement letter thwarted any resolution in 2022.

    I bring to the Court's attention, WorthPoint's website caption with the photo below. It is another example of an a priori intuitable and a constitutive element, and clear cut visual false statement. The signature in the photo is not signed Annamarie. Despite WorthPoint 's statement *"Copyrighted work licensed by WorthPoint"* and its inclusion of a copyright symbol, this public post wrote licensed not sub licensed by WorthPoint. In Discovery WorthPoint produced a 2009, Canadian sub licensing agreement most of which was redacted, with several black pages. Sub licensing is the process of giving someone else permission to use intellectual property, that the owner granted the rights to use to another party. This is usually done in exchange for a monetary fees. Sub licensing, unlike a licensing agreement, is a chain of permissions. Ultimately, the original owner which is the Appellant, and any use of my brand, self authored biography, gives me the exclusive right to allow any third party to use my brand. I remind the Court my self authored biography and name is also in my 2003 catalog, which is in a fixed tangible medium. I note to the Court that my name, in part or in full is my business "brand" and my "trademark". Any distortions, disfigurement to my brand had and continues to have an adverse effect on my name, and business, unnecessarily. In 2017, I contacted both Defendants, one through a hired attorney via a settlement letter which informed them I was not the artist who painted the 1972 painting. In litigation both Defendants produced false evidence or did not produce in full, un redacted evidence. In summary, creating a false, forged signature on a painting I did not paint, creates a false secondary market. There is no resale rights for artists in the contemporary secondary market. In other words, if a fraudulent painting with my name is sold, the seller does not have to owe me any fees from the sale of the art. The threat of a forged signature and misattribution and the failure of Norb Novocin to admit he made a mistake in 2017 when I contacted him, infers that Defendants are capable of creating a false secondary market using my name. Unfortunately, the lower Court failed to acknowledge or hold the Defendants accountable for their scheme, misattribution and two forged signature labeled as "original" oil painting "signed" Annamarie Trombetta painting . Neither signatures, in red or black, on the front or back, signed my name correctly.

   On the right insert below, is WorthPoint's response to Plaintiff interrogatory regarding what is being copyrighted by WorthPoint. WorthPoint's attorney objected and gave a manipulative response *" use of a copyright symbol is not the act of copyrighting a work".* Plaintiff notes that the use of a copyright symbol primarily acts as a public notice of a copyright claim, a visual claim that was unauthorized by WorthPoint . WorthPoint's unauthorized use next to my name and brand created a false, public, non existent business inference between WorthPoint and 1 Int. 10. excerpt, inserted below, was filed in Doc. 439 in my Mot in Limone on 04/19/23-EXHIBIT 18 page 9.

 

6 of 13

> ORDERED that Defendant WorthPoint Corporation file under seal, with access to the Plaintiff, Defendant WorthPoint, and court personnel only, the unredacted version of Jason Packer's Declaration (docket entry no. 425-6, 480-2), as well as any other evidence that was redacted to protect proprietary information and offered in connection with WorthPoint's Motion for Summary Judgment (docket entry no. 423), within 7 days of the date of entry of this Order.
>
> The Parties are directed to comply with the Individual Practices rules of the undersigned in connection with further proceedings in this case. The Clerk of Court is respectfully directed to mail a copy of this Order to Plaintiff at the below address.
>
> SO ORDERED.
>
> Dated: New York, New York
> December 13, 2023
>
> /s/ Laura Taylor Swain

On December 13, 2023, Judge Laura Taylor Swain issued an Order in Doc. 528, requesting any other evidence that was redacted to protect proprietary information and offered in connection with WorthPoint's Motion for Summary Judgment be produced to the Court and to the **Plaintiff**. At left, is an excerpt in Doc. 528, filed 12/13/23 from Judge Swain's Order.

    I note to Your Honor and to the Second Circuit Court of Appeals that I, Plaintiff and now Appellant, confronted WorthPoint's attorneys regarding the licensing and sub licensing differences on 08/29/2022 in Doc. 274 under Magistrate Judge Cave. I did so to document WorthPoint's attorneys response. In Doc. 274 filed on 08/29/2022 WorthPoint's attorney stated in writing that WorthPoint does not have the information as to when WorthPoint downloaded the 1972 eBay EAI ad for Original Oil entitled "Man with Red Umbrella". Please note WorthPoint's attorney, Jana Farmer's excerpt from Doc. 274 on page one is below which states that WorthPoint does not know when the ad was downloaded (Year-Month ).

> In Ms. Farmer's August 26, 2022 letter in Doc. 273 her reply to the Plaintiff is in the box below:
>
> (2) To state the date and year that WorthPoint downloaded the 1972 eBay Estate Auctions Inc. Ad for the Original Oil entitled "Man with Red Umbrella." As previously explained to Plaintiff numerous times, WorthPoint does not have this information and can only speculate as to when the download occurred.

    On page two of Doc.274 filed on 08/29/2022, Plaintiff confronted WorthPoint's attorneys with the differences and definition between a licensing agreement and a sub licensing agreement. In summary, I wanted WorthPoint's attorneys to state how the sub licensing agreement legally permitted WorthPoint to add a copyright symbol and statement *" Copyrighted work Licensed by WorthPoint"* underneath the photo of the forged signature " A. Trombetta" that was in the 1972 Oil Painting online ad on their website. I note that Plaintiff filed the same Doc. 274, filed on 08/29/2022, in Doc. 531 filed 12/19/23 on pages 28-29 and 30, to bring to Judge Swain's attention the failure of WorthPoint Corp. to produce a licensing agreement. Judge Swain's Order (above) want all evidence that was " redacted" to protect proprietary information and offered in connection with WorthPoint's Motion for Summary Judgment. WorthPoint failed to produce any pages of the AERS sub licensing agreement which had many redacted and completely blacked out documents, which defies Judge Swain's written Order in Doc. 528 on 12/13/23.

> Plaintiff has researched two definitions in the two boxes below. The first definition is for a Licensing Agreement and the second is the definition of a Sub Licensing Agreement. Each one is different.
>
> The term licensing agreement refers to **a legal, written contract between two parties wherein the property owner gives permission to another party to use their brand, patent, or trademark.**
>
> Plaintiff definition below relates to Defendants' Bate Stamped WP000008 thru WP000035 which is relative and subject to certain periods of time, hence Plaintiff's repeated requests to name the dates and times when the " 1972 Estate Auctions Inc. eBay Ad for the 1972 Original Oil entitled " Man With Red Umbrella" was DOWNLOADED from the alleged partner and when the 1972 EAI eBay ad was POSTED on the website of WorthPoint Corporation. Plaintiff also notes to the Court that each page, many which are redacted, of WP000008 thru WP000035 has written (Public Use).
>
> A sublicense agreement is **a legal document that outlines the terms and conditions where one business owner allows another party to use their intellectual property.** The original business owner, or licensor, often has the exclusive right to license specific intellectual property for a certain period of time.
>
> For the record, Plaintiff has never had a licensing agreement or sub licensing agreement with any entity, source or company. Once again Plaintiff reminds the Court in Plaintiff's August 25, 2022 letter, Doc. 270 , the name of WorthPoint's 2016 source and downloading partner. This is different from the name set forth by the Defendants attorneys in 2022. The difference is the named downloading source, the absence of meta data and dates for the eBay ad from WorthPoint is relevant to my case.

On page three of Doc.274 filed on 08/29/2022, Plaintiff confronted WorthPoint's attorneys with the differences and definition between a licensing agreement and a sub licensing agreement. I was able in August 29, 2023, to clarify conclusively that Advance Economic Research Inc in British Columbia, in Canada, was the sub licensing agreement of WorthPoint. This agreement has more to do with WorthPoint's adhering eBay's logo and trademark than to the ambiguous, intentional statement by WorthPoint *" Copyrighted work Licensed by WorthPoint"* and the addition of a copyright symbol. WorthPoint's written copyright and licensing claim with the copyright symbol along with my name, brand with WorthPoint's webpage, contains the use of my unauthorized and incorrect self authored biography. The Defendants ad was/is fraudulent. This is yet another example of an a priori intuitable and constitutive element, and clear public visual violation of my intellectual property and copyrights.

> • "Confusing" eBay licensing partner. Plaintiff expressed confusion as to which entity WorthPoint licensed the information about the past eBay sale of the subject painting in order to be able to post this information on WorthPoint's website. WorthPoint clarified to plaintiff that the name and address of its licensing partner appears on page 1 (Bates WP000008) of the confidential licensing agreement for eBay data that WorthPoint produced. WorthPoint clarified that this is the only licensing partner for eBay data that WorthPoint had during the relevant time period. WorthPoint also clarified that online research into the name of this licensing partner will reveal any former or subsequent names, which is likely further alleviate plaintiff's confusion.

**Fourth** Ms. Farmer clearly states *" WorthPoint clarified that this is the ONLY licensing partner for eBay data that WorthPoint had during the relevant time period"* Again, Ms. Farmer's 2022 statement and evidence is not the same as WorthPoint's 2016 statements from WorthPoint's website. Ms. Farmer's claims there is ONLY one licensing partner. In 2015 and 2016 on WorthPoint's website page entitled ITEM REVIEW REQUEST WorthPoint has written *"We license the data displayed in the Worthopedia from a VARIETY of sources . We are an official licensee of eBay and many of the leading auction houses".* These minor yet multiple mistakes add up to unethical

These rights comes into being as soon as the work is fixed in a tangible medum. In 2003 my biography was my printed catalog and added to my website which I produced. My catalog with my my self authored biography was last filed in Doc. 517-2 filed 06/29/23 . See. pages 2 thru 25.

On page 5 in Doc. 517-2 filed 06/29/23 is my/Plaintiff's website biography. In Yellow highlight, is my statement *"All of the imagery in this catalog was either created en plein air or from the subject directly".*

THE EAI/ WorthPoint Fraudulent Online Ad-Printed Directly from WorthPoint's online ad by a Computer on May 7, 2017 at 11:18 AM —See on the right side date and time.



The 1972 Original Oil Painting Man With Red Umbrella ad on WorthPoint's webpage included my statement regarding my catalog.

Below are some the standard elements in a sub licensing agreement. Once again, WorthPoint's Attorneys failed to fulfill Doc. 528 filed 12/13/23. WorthPoint's sub licensing agreement with AERS in British Columbia, Cananda did not contain any of the terms of use outlined below :

- **Clear Definitions:** WorthPoint's agreement failed to reveal all terms are clearly defined, including what rights are being sub licensed, to whom, and for what purpose.
- **Scope of Use:** WorthPoint's sub licensing agreement failed to specify exactly how the sub licensed work can be used if and what parts can it be modified? Distributed? Resold?
- **Payment Terms:** WorthPoint's sub licensing agreement obliterated any outline how and when payments will be made, whether as a lump sum, royalties, or another arrangement. **SEE EXHIBIT #8B WP000013.**
- **Duration:** WorthPoint's agreement fails to state how long the sublicense will last and under what conditions it can be renewed or terminated.
- **Obligations:** WorthPoint's sub licensing agreement failed to list any obligations or responsibilities that the sublicensee must meet, such as maintaining quality standards or complying with certain regulations.
- **Dispute Resolution:** WorthPoint's sub licensing agreement fails to include any plan for how it will dispute or handle infringements, whether through mediation, arbitration, or litigation.
- **Not a Franchise:** Franchise law is a complex set of laws defined by both the federal and state governments. The sub licensing Agreement produce by WorthPoint indicates that it has an agreement with eBay and AERS. Licensing and sublicensing when done improperly, could be considered a franchise and when done improperly, have multiply legal costs. EBay is the franchise brand, not the Plaintiff. My name, self authored biography were never licensed or sub licensed to any third party.

WorthPoint Corp. is in violation of Doc. 528 filed 12/13/23 and failed to produce its redacted 2009, AERS sub licensing to protect proprietary information offered in connection with WorthPoint's Motion for Summary Judgment in Doc.423.**SEE EXHIBITS #9A WP000009- #9B WP000013-#9CWP000030.** This violation, should have precluded a Summary Judgment Decision. I did write to the Court regarding this issue on 12/19/23 in Doc. 531 filed and again Doc.533 on12/27/23, to correct Judge Swain who assumed I was trying to file "NEW" exhibits. Everything I filed in Doc. 533 was previously filed. On 01/01/24 in Doc. 536. I wrote to Judge Swain to explain there were NO new exhibitions. Please review.

    The last subject of importance is noted in Doc. 556 filed on 03/07/25 by Judge Swains' inaccurate assumption that the Plaintiff's 2016 and 2017 evidence and numerous dated Google search listings that prove WorthPoint's webpage of the 1972 fraudulent oil painting, was reposting after it was removed in March 2016. Judge Swain ruled my evidence as "cached screenshots " instead of the timed and direct Computer print out from WorthPoint's online webpage and Google listing in 2016 and 2017. WorthPoint alleges they removed their false webpage on Feb. 4, 2016. Cached webpages only last 90 days. Moreover, Judge Swain ignored or was ignorant to the significance of the tag lines at the top and bottom on each of the Plaintiff's direct online computer print oust. These tagline confirm that my evidence was created by a printer at the time stamped in the upper right hand corner. Instead, Judge Swain preferred to side with WorthPoint's paid expert witness that made several mistakes in her report. One most obvious mistake by Ms. Stricchiola's was her failure to correctly note Plaitniff's Internet Expert'sAffidavit which she claims she reviewed yet characterized and wrote it was Declaration. I remind the Court that WorthPoint's attorneys did not correct their experts' mistake prior to filed Ms. Stricchiola's report with the Plaintiff and with Court. Furthermore, Ms.Stricchiola gave no explanation or reason to explain the time stamped dates on each of my Google Search listings other than to blame me claiming I somehow manipulated the printer to print out those dates" . Ms.Stricchiola's unprofessional, illogical and fraudulent excuse from WorthPoint's expert was preferred by Judge Swain.

    More importantly, Plaintiff's documented all the numerous filed emails from WorthPoint Corp sent and emailed to Plaintiff from October 2016 thru April 24, 2017 filed in Doc. 439 file on 04/10/2023. In Doc. 542 filed 03/19/24, on pages 17 thru 24, I meticulously detailed WP sent emails and WP Google Listings with the dates, times and included my Court filing dates and dockets

The screen shots excerpts below were filed Court records and prove WorthPoint Corp kept contacting and emailing Plaintiff with solicitations to invest in WorthPoint Corp. at the same time that WorthPoint reposted their fake 1972 Oil Painting webpage Google listing. WorthPoint's sent emails to Plaintiff's address using **trombettaart@yahoo.com** . WorthPoint's sent emails to me filed in Doc. 439 on 04/10/23. I note that WorthPoint's attorneys failed to produce any evidence that proves they removed the false 1972 oil painting webpage on alleged Feb.4 2016 by Will Seippel and hired webmaster Jason Packer. SEE **EXHIBIT #10 False claims of removal by Will Seippel and Jason Packer.** Inserted below are excerpts of previously filed emails from WorthPoint with repost of the fake 1972 oil painting WorthPoint's Google Listings from March to May 2017.

    **WORTHPOINT'S SENT EMAIL—— DATE SENT OCTOBER 27, 2016 IN Doc. 439 04/10/2023**



**Google Listing WorthPoint  DATE   OCTOBER 26, 2016 TIME 5:19 PM**



**WORTHPOINT'S SENT EMAIL— DATE SENT NOVEMBER 23, 2016**



**WORTHPOINT'S SENT EMAIL— DATE SENT DECEMBER 24, 2016**



**WORTHPOINT'S SENT EMAIL— DATE SENT JANUARY 31, 2017**



**Google Listing at the same time  WorthPoint Sent Email-  MARCH. 9, 2017—TIME 9:54 AM**



**Google Listing & 1972  WorthPoint Listing -  MARCH  28, 2017—TIME 3:21 PM**



**WORTHPOINT'S SENT EMAIL-SEE BELOW-DATE  SENT  APRIL 24, 2017—TIME 12:40 pm**



**Google Listing WorthPoint 1972 at the same time of Email   APRIL 24, 2017—TIME 12:40 pm**
PLEASE NOTE. Plaintiff printed out WorthPoint's April 24, 2017 at the same time that Plaintiff looked Online and found the Google Listing with the WorthPoint webpage listing of the 1972 fake painting.



**Google Listing 1972 WorthPoint Listing- MAY. 4, 2017—TIME 8:21 AM**



**Google Listing at the same time WorthPoint Sent Email- MAY. 9, 2017—TIME 8:37 AM**



   Plaintiff kindly, requests that the Court read Doc. 542 filed on 03/19/2024 to confirm all that is aforementioned in this letter has been presented to the lower Court. I note on pages 17 thru 24 in Doc. 542, I meticulously detailed and filed Plaintiff's sixteen written requests to WorthPoint's employees and website submissions from Jan. 14, 2016 till March 6, 2016. This does not include the numerous phone call to WorthPoint made from Jan.22, 2016 to Feb. 2016. This does not include all my phone call attempts to WorthPoint from early August 2015 up until WorthPoint's willful misinformation, directing Plaintiff to contact eBay to remove the false 1972 oil painting internet post in November 2015. Six months after WorthPoint removed the false 1972 oil painting post from under my name WorthPoint's false 1972 oil painting webpage was eposted on the internet after I the removal was done in March 2016. Plaintiff has filed as evidence, Google's public information website which states in writing all temporary Google removal requests only last for six months.**EXHIBIT #11 Google removal.** WorthPoint and its webmaster failed to submit information for a permanent Google removal. I have lost a great deal of time due to the mistakes and willful denial of any wrongdoing by both Defendants. I add, that I have been entrapped for precisely ten years due to Defendants willful attempts to use, abuse and exploit my name, brand and time and the errors of the Court that have not recognized the gamesmanship of the Defendants.

   Plaintiff kindly requests the Court to respond to my June 2, 2025 request to be assigned a Pro Bono attorney. Plaintiff/Appellant kindly requests the Court to designate a date and time when my Appeals' Brief needs to be filed. I am in a state of suspension, not knowing the status of my request for an attorney. For the foregoing reasons listed above, Plaintiff asks the Court to grant my requests.

                Respectfully Submitted,

Pro Se Plaintiff

            ————— Electronic Signature ——————-

Annamarie Trombetta
175 East 96th Street (12 R)    /s/ Annamarie Trombetta. July 31, 2025
New York, New York 10128
            _____-
               Annamarie Trombetta