**SA105**

Google+ Search Images Maps Play YouTube News Gmail More ·                                    artofannamarie@gmail.com ▾ ⚙

Go gle    1972 ORIGINAL OIL PAINTING MAN WITH RED UMBRELLA SIGNED ANNAN    🔍

All    Shopping    Images    Videos    News    More ·    Search tools

About 17 results (0 64 seconds)

*econd*

**1972 Original Oil Painting Man With Red Umbrella Signed ...**
www.worthpoint.com › Worthopedia™ ▾
1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta
yqz. Sold for: Start Free Trial or Sign In to see what it's worth. Item Category: ...
You've visited this page many times. Last visit: 12/30/15

*irst*

**Marilyn Monroe 1988 Vintage Michael Ochs Archive Chanel ...**
www.worthpoint.com › Worthopedia™ ▾
1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta
yqz · Mustangs" Frank Rowland ~ Original Serigraph ~ LARGE DRAMATIC ...
You've visited this page many times. Last visit: 12/30/15

*ourth*

**THOMAS KINKADE -KINCAID - WorthPoint**
www.worthpoint.com › Worthopedia™ ▾
Sold for: Start Free Trial or Sign In to see what it's worth. ... 1972 Original Oil Painting
Man With Red Umbrella Signed Annamarie Trombetta yqz · Handmade New Mexican
Folk Art Church Birdhouse LARGE Lark Sedona · BLUE HELLO KITTY ...

*Third*

**1789 bonnaterre original antique hand colored reptile ...**
www.worthpoint.com › Worthopedia™
1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta
yqz · Handmade New Mexican Folk Art Church Birdhouse LARGE Lark Sedona ...
You visited this page on 12/18/15.

**1789 bonnaterre original antique hand colored reptile ...**
www.worthpoint.com › Worthopedia™
Category: Original Antique Print Egyptian Cobra, Egg Eating Snake Pl.22 Historical
Information: This ... 1972 Original Oil Painting Man With Red Umbrella Signed
Annamarie Trombetta yqz · 1789 BONNATERRE ORIGINAL ANTIQUE HAND ...

**Annamarie Trombetta - Biography**
www.trombettaart.com/bio.html ▾
When I was a tiny seed of contemplative thought, my artistic nature began to sprout
interest while gazing up at the ceiling paintings in a neighborhood church ...
Missing: 1972 oil man red umbrella yqz

**Annamarie Trombetta - Artist Info**
www.trombettaart.com/info.html ▾
EDUCATION 1999 - National Academy School of Fine Arts 1991 - William Butler Yeats
Summer School, Sligo,Ireland 1989 - New York Academy of Art 1987 - Art ...
Missing: 1972 oil man red umbrella yqz
You've visited this page 4 times. Last visit: 11/12/15

*Fifth*

**artist annamarie trombetta's imagery offers visionary ...**
italianamericanmuseum.org/news/news_plein.html ▾
Artist Annamarie Trombetta's "Central Park Imagery," a collection of en plein air ... Ms.
Trombetta is an artist who has created works in printmaking, watercolor, oil ... The New
York Academy of Art, The National Academy Museum and School, ...
Missing: 1972 man red umbrella yqz
You've visited this page 2 times. Last visit: 12/11/15

**Annamarie Trombetta, Artist Interviewed by June Middleton ...**

https://www.youtube.com/watch?v=ufEQ3D3LWms
Apr 29, 2015 - Uploaded by JuneMindingBusiness
Annamarie Trombetta, an artist who's art has been exhibited
around the world, has created works in oil ...
Missing: 1972 man red umbrella yqz
▶ 28:02

**Painting Central - artist Annamarie Trombetta on Vimeo**

Original Oil Paintings
www.ugallery.com/Buy-Original-Art ▾
Original Art. Top Emerging Artists.
Expertly Curated — Free Shipping!

Original Art Gallery
www.zatista.com/ ▾
Over 7000 Completely Original Works
Great Value. Buy Today, Save Big.

Original Art For Sale
www.saatchiart.com/ ▾
4.7 ★★★★✫ rating for saatchiart com
Curated Men Collections.
Paintings, Sculpture, Photo & More!

Montclair Art Museum
www.montclairartmuseum.org/ ▾
(973) 746-5555
Celebrating American Art
for 100 Years!

Famous Paintings in NYC
www.drawingcenter.org/painting ▾
Visit The Drawing Center in SoHo.
A Museum Dedicated to Drawings.
♥ 35 Wooster St, New York, NY

Incredible Art for Sale
www.poba.org/shop ▾
Masterworks from artists who left
us too soon available only at POBA!

See your ad here »

*Date May 9, 2017*

*Exhibit #5*
*Submitted on*
*Feb 21, 2020*



# Annamarie Trombetta

The nature of an artist's life, creativity and growth may be synonymously expressed in the image of an archetypal tree. Beginning with the earthly descendent roots the artist like the tree branches out into its surrounding environmental and celestial world. Both ascend and descend, widening their girth of consciousness while producing visual imagery weathering each season of change. Thus, I believe it is the nature of the artist and of nature itself to regenerate and manifest. All of the imagery in this catalog was either created en plein air or from the subject directly.

My journey to becoming an artist began many years ago. The consanguineous roots of my Italian family tree provided me with an innate constitution for my artistic profession. When I was a tiny seed of contemplative thought, my artistic nature began to sprout interest while gazing up at the ceiling paintings in a neighborhood church named Regina Pacis, meaning Queen of Peace. The church located in Brooklyn, NY features ceiling paintings, sculptures, marble interiors, and incorporates architectural elements for the façade and the belfry that are of Italianate design. Before the age of three I was able to surmise that the church in the ceiling painting was indeed the church I was in. The visual simulation was a form of education. I fostered my sense of perception which became my strongest mode for acquiring knowledge.

As the years unfurled, my family moved to Staten Island. At this time it was a scenic field of luminosity, lush vegetation and a harbor view complete with sail boats and small yachts. A few years after we moved my tree of life was in jeopardy of loosing a limb. What appeared to be a swollen leg was indeed a cancerous tumor. It was an almost fatal or perhaps even a fated occurrence in my life. The struggle to survive the experience was brightened by my imagination and by my artistic ability to create. I seriously thought I would go into medicine but the posters and paintings in the hospital and doctor's office held my attention more intensely.

I began my formal training at The Brooklyn Museum School of Art while I was in high school. The exposure to various forms of art inspired me to expand my horizons and in the early Eighties I traveled on a summer tour to Europe. The tour comprised of six countries: Germany, Austria, France, Italy, Switzerland and England. Viewing so many different cities and cultures in a concentrated period of time helped me to see the similarities as well as the differences of each quite clearly.

Upon my return I enrolled in an art history course to examine the content of art in relation to its chronological, political and historical relevance while applying to art colleges. I was accepted to Parsons School of Design located in lower Manhattan. The pulsating pace of this congested cosmopolitan city was reflected in the school's curriculum. Although I did enjoy the challenges and experiences which expanded my capabilities, I was not satisfied with the level of my drawing and painting skills. In the mid eighties I attended The New York Academy of Art which focused on teaching the history and traditional techniques from periods of art, such as the Italian Renaissance, the classical and neoclassical periods in France, as well as the Spanish, Dutch and Flemish masters. Here I studied cast drawing, grisaille painting, anatomy, dissected cadavers, yet most influential to me was geometry and perspective.

During this period I traveled once again to France and Italy to study with my teachers who offered summer classes in art history, drawing and painting. I remember when I was in the french countryside feeling as if I was walking into a huge painting. The views felt so familiar due to the talents of Monet, Pissarro, VanGogh, etc. In my solitude I would envision them, particularly, VanGogh in a wheat field painting or see the circular hay stacks



Case: 25-817, 07/17/2026, DktEntry: 80.3, Page 4 of 147

SA108

change colors by sunset right before my eyes. The truth captured in their paintings a century ago felt so real to me it spiraled an incredible influence. This experience still inspires me to strive towards capturing my subjects with a sense of presence and atmosphere. Visiting Italy again, my ancestral homeland, sharpened my acuity and attraction to works of art on uniquely shaped canvases. There were so many moments that will be with me throughout my life, most notable was to see the chariot markings while walking in the ruins of ancient Rome, or to hear bells toll in St. Mark's Square, and to be within inches of some of the most revered art in the world.

When I returned to the States, the desire to develop artwork in various mediums became the goal. I started attending The National Academy School of Fine Arts to explore and perfect the media of pastels and figure painting, and also to study printmaking. During this time I was employed at The National Academy Museum. The Academy and its intriguing history filled the chasm of my knowledge for the heritage of American art while also informing me of the cultural developments in my country, particularly those in New York. The opportunity to read the Academy's books while I was working at the Museum, was an enlightening experience. I learned, most importantly, about the Hudson River School painters and their personal involvement with writer/poet William Cullen Bryant. This relationship between artists and writers of that time initiated the unfoldment of Central Park. The Park, which is adjacent to The National Academy Museum was already charted territory for my artistic expression. Learning about the creation of the Park intensified my passion for depicting it.

During my tenure at The Academy, a conversation with a museum visitor led to my interest in the W.B. Yeats Society of New York, and another trip abroad. Coincidentally and perhaps synchronistically I had been attending lectures on Theosophy about the same time I was learning about Yeats. Crucial to my personal and professional development at that time was my comprehension of why Theosophy influenced the modern movement in the Arts. Yeats, like many other writers, musicians, and artists such as Mondrian and Klee, etc. drew inspiration from the philosophical texts written by the robust Russian Madame Blavatsky. Within a few months I had won a scholarship under the auspices of the Yeats Summer School in Sligo, Ireland via the Yeats Society of New York.

A short trip to London, preceded the Summer School, where I hunted down John Singer Sargent's charcoal sketch of Yeats at the National Portrait Gallery. This inspired a trip to the Tate, and several other collections. Traveling to England first set the stage for the political, personal, and historical dynamics that I was about to encounter regarding the legacy of Yeats and of Ireland. Before the school commenced, there was a ceremonial service at Drumcliff Church where Yeats is buried. The picturesque view and the enigmatic words of his icy epitaph became etched in my memory on that day and inspired me to create a painting titled after his poem "Under Benbulben" which elaborates on his immortal words. To learn about his family, his life and his visions motivated me to begin a new chapter in creating my own work.

To culminate my journey, when I returned home I gathered the metaphorical leaves and branches that had fallen from my artistic tree, be it ancestral or archetypal and concentrated solely on "The Holy Tree" described in Yeats' poem "The Two Trees". This image (cat. page 6), inspired by the milieu of a mentor miles away is a tribute to his gifts and determined ways which regenerated and awakened the visionary in me. This catalogue highlights the pictorial progression from that trip and the time that followed.

**SA109**

From: Jason Packer [mailto:jason.packer@worthpoint.com]
Sent: Wednesday, March 2, 2016 6:15 PM
To: Will Seippel <will.seippel@worthpoint.com>
Subject: Re: FW: Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

----------
From: **Jason Packer** <jason.packer@worthpoint.com>
Date: Thu, Mar 3, 2016 at 8:39 AM
To: Will Seippel <will.seippel@worthpoint.com>

I can file a temporary removal request w/Google for this URL:
http://www.worthpoint.com/worthopedia/titanic-lithograph-poster-48924121
Which is the one that has her text in the old cached version w/Google:
http://webcache.googleusercontent.com/search?q=cache:7Xt_g7k26S8J:www.worthpoint.com/worthopedia/titanic-lithograph-poster-48924121+&cd=1&hl=en&ct=clnk&gl=us
Should I go ahead and do that? They don't always process those but there's no real danger to us other than losing traffic for just one page.

From: Will Seippel <will.seippel@worthpoint.com>
Date: Thu, Mar 3, 2016 at 2:46 PM
To: Jason Packer <jason.packer@worthpoint.com>

Yes, please do.

*[handwritten: Exhibit #7]*

*[handwritten: Filed Feb 21, 2020]*

From: Jason Packer [mailto:jason.packer@worthpoint.com]
Sent: Thursday, March 3, 2016 8:39 AM

----------
From: Will Seippel <will.seippel@worthpoint.com>
Date: Thu, Mar 3, 2016 at 2:46 PM
To: Jason Packer <jason.packer@worthpoint.com>

Yes, please do.

From: Jason Packer [mailto:jason.packer@worthpoint.com]
Sent: Thursday, March 3, 2016 8:39 AM

--
Will Seippel
CEO/Founder
WorthPoint Corporation

(404) 996-1472 O)

**SA110**

## Certificate of Registration

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karen A. Lesley*

Acting United States Register of Copyrights and Director

Registration Number:

**TX 8-655-807**

Effective Date of Registration:
June 18, 2018

### Title

Title of Work: Annamarie Trombetta Website www.trombettaart.com Biography --Portfolio-Credentials -- HomePage

### Completion/Publication

Year of Completion: 2003
Date of 1st Publication: September 30, 2003
Nation of 1st Publication: United States

### Author

Author: Annamarie Trombetta
Author Created: text, photograph(s), artwork
Citizen of: United States
Domiciled in: United States
Year Born: 1963

### Copyright Claimant

Copyright Claimant: Annamarie Trombetta
175 East 96th Street (12R), New York, NY, 10128, United States

### Certification

Name: Annamarie Trombetta
Date: June 18, 2018

Correspondence: Yes

Exhibit #8 Feb 21, 2020

Exhibit H

Page 1 of 1

**SA111**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karyn A. Temple*

Acting United States Register of Copyrights and Director

**Registration Number**

**TX 8-655-807**

**Effective Date of Registration:**
June 18, 2018

## Title

**Title of Work:** Annamarie Trombetta Website www.trombettaart.com Biography --Portfolio-Credentials -- HomePage

## Completion/Publication

**Year of Completion:** 2003
**Date of 1st Publication:** September 30, 2003
**Nation of 1st Publication:** United States

## Author

**Author:** Annamarie Trombetta
**Author Created:** text, photograph(s), artwork
**Citizen of:** United States
**Domiciled in:** United States
**Year Born:** 1963

## Copyright Claimant

**Copyright Claimant:** Annamarie Trombetta
175 East 96th Street (12R), New York, NY, 10128, United States

## Certification

**Name:** Annamarie Trombetta
**Date:** June 18, 2018

**Correspondence:** Yes

Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNAMARIE TROMBETTA,

                                    Plaintiff,

        against

                                                        CIVIL ACTION NO.: 18 Civ. 993 (RA) (SLC)

NORB NOVOCIN, et al.,                                   **OPINION & ORDER**

                                    Defendants.

**SARAH L. CAVE,** United States Magistrate Judge.

## I.        INTRODUCTION

Plaintiff Annamarie Trombetta ("Ms. Trombetta"), proceeding pro se, asserts several federal and state law claims seeking to recover damages from Defendants for purportedly advertising and selling online a low-quality painting, which they falsely advertised as being Ms. Trombetta's work and as a result of which she lost sales of her actual artwork and suffered other damages.  (See ECF Nos. 1, 29, 33, 36).  The case comes before the Court now on Ms. Trombetta's motion for leave to amend her complaint (ECF Nos. 29, 36) ("Motion to Amend"), and what Defendants Norb Novocin, Marie Novocin, and Estate Auctions Inc. (together, "EAI Defendants") label as a motion to dismiss (ECF No. 34).[1]  For the reasons set forth below, Ms. Trombetta's motion is GRANTED IN PART and DENIED IN PART.

---

[1] Because the Court had not yet ruled on Ms. Trombetta's Motion to Amend when the EAI Defendants filed what they labeled as their motion to dismiss, the Court deems their motion to constitute their opposition to Ms. Trombetta's Motion to Amend.

**SA113**

## II.     BACKGROUND

### A.     Factual Background

The factual background of this case is set forth in detail in the decision of The Honorable Ronnie Abrams, United States District Judge, granting in part and denying in part the EAI Defendants' motion to dismiss Ms. Trombetta's original Complaint.  See Trombetta v. Novocin, 414 F. Supp. 3d 625, 628–29 (S.D.N.Y. 2019).  (See ECF Nos. 1, 3).  Therefore, the Court will set forth only those additional facts pertinent to the pending motion, as taken from the allegations in Ms. Trombetta's proposed Amended Complaint,[2] which the Court presumes to be true for purposes of the present motion.  See Roth v. Jennings, 489 F.3d 499, 509–10 (2d Cir. 2007).

In August 2015, Ms. Trombetta, an artist who exhibits her work in New York City, discovered that the website Worthpoint.com, an online catalog of art sales and advertisements, had advertised and sold on eBay a painting (the "Painting") it misrepresented as being one of Ms. Trombetta's works.  Trombetta, 414 F. Supp. 3d at 628.  (ECF No. 36 at 2–3).  When she learned of the post about the Painting, Ms. Trombetta contacted Worthpoint.com to inform them that she was not the artist who had created the painting advertised and sold on eBay.  (ECF No. 36 at 3–4).  In December 2015, Ms. Trombetta spoke with Worthpoint.com employee "Anita B.," and then, on February 3, 2016, she spoke with Gregory Watkins, Worthpoint.com's "Website

---

[2] Although Ms. Trombetta purported to file her proposed Amended Complaint at ECF No. 33, the Court finds that her Response in Opposition to Defendants' Motion to Dismiss (ECF No. 36) in fact contains the most comprehensive, complete, and clear statement of the grounds on which she is seeking relief and exhibits in support.  Given Ms. Trombetta's pro se status, the Court interprets ECF No. 36 to be the operative proposed Amended Complaint, and will analyze the allegations in that document for purposes of the present motion.  See Trombetta, 414 F. Supp. 3d at 628 n.1; Washington v. Westchester Cnty. Dep't of Corr., No. 13 Civ 5322 (KPF), 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (citing cases in which courts have considered allegations pro se plaintiffs have made in opposition papers).

SA114

Master." (Id. at 4, 33 (Ex. 5)). She asked both of them to remove permanently the fraudulent listing about the Painting. (Id. at 4, 32 (Ex. 2), 33 (Ex. 5)). On February 20, 2016, Ms. Trombetta sent a notice to the Worthpoint.com website as well as an email to William Sieppel, Worthpoint.com's founder and owner, relaying the requests she had made to the other Worthpoint.com employees and asking that the links to the false information about the Painting be removed. (Id. at 4, 33–34 (Ex. 5); ECF No. 33 at 7). In March 2016, Mr. Seippel instructed another Worthpoint.com employee to submit to Google requests to remove the links to the Painting. (Id. at 46 (Ex. 7). On January 4, 2017, after finding that Worthpoint.com still showed an unauthorized listing under her name, Ms. Trombetta again emailed Mr. Sieppel, asking that the listing be removed. (ECF No. 36 at 32 (Ex. 2)). Ms. Trombetta alleges that the internet link about the Painting was reposted on May 9, 2017. (ECF No. 36 at 7).

On June 18, 2018, Ms. Trombetta registered a copyright for her website, www.trombettaart.com, which contains her self-drafted biography, portfolio, and credentials. (ECF No. 36 at 47–48 (Ex. 8)).

### B.     Procedural Background

On February 5, 2018, Ms. Trombetta filed her original Complaint asserting against the EAI Defendants "federal claims under the Lanham Act, the Copyright Act, and the Visual Artists Rights Act ("VARA"), as well as state law claims under the New York Civil Rights Law and the New York Artist's Authorship Rights Act." Trombetta, 414 F. Supp. 3d at 629. (ECF No. 1). In addition to damages of $76,000 for lost sales of her artwork and emotional injury, she sought a declaration that she did not create or sign the Painting. (ECF No. 1 at 16). On May 22, 2018, the EAI Defendants moved to dismiss (ECF No. 4), and in response, on January 17, 2019, Ms. Trombetta

3

filed a letter attaching a copy of her copyright registration.  (ECF No. 10).  The District Court held a status conference, after which it stayed the case "pending the parties' settlement efforts," which were unsuccessful.  Trombetta, 414 F. Supp. 3d at 629.  Ms. Trombetta filed a supplemental opposition to the EAI Defendants' motion to dismiss, to which the EAI Defendants did not reply. (ECF No. 22).  See Trombetta, 414 F. Supp. 3d at 629.

On October 2, 2019, the District Court issued a memorandum opinion and order (the "MTD Order"), granting in part and denying in part the EAI Defendants' motion to dismiss.  (ECF No. 23).  The District Court (1) dismissed with prejudice Ms. Trombetta's claims under Sections 50–51 of the New York Civil Rights Law, Section 14.03 of the New York Artist's Authorship Rights Act, and her trademark infringement claim under the Lanham Act; (2) dismissed without prejudice her Copyright Act claim; and (3) allowed her VARA claim to proceed.  Trombetta, 414 F. Supp. 3d at 634.  The District Court instructed Ms. Trombetta that if she chose to replead her Copyright Act claim, she must do so by November 4, 2019 and "she should reference her certificate of copyright registration in the allegations of her proposed Amended Complaint and that she should attach it thereto."  Id.

On December 3, 2019, after receiving an extension of time to file her proposed Amended Complaint (ECF No. 25), Ms. Trombetta filed her Motion to Amend.  (ECF No. 29).  In the Motion to Amend, Ms. Trombetta sought to add Mr. Sieppel and Worthpoint.com Corporation as Defendants (together, the "Worthpoint Defendants"), attached her copyright registration in support of her Copyright Act claim in compliance with the District Court's instruction, and made arguments concerning the claims that the District Court had dismissed with prejudice (Lanham

Act, New York Artist's Authorship Rights Act, and New York Civil Rights Law), but did not attach a proposed Amended Complaint.  (Id. at 1, 8; ECF No. 29-2 at 9).

To address the defects in the Motion to Amend, on December 16, 2019, the Court held a conference, following which it issued an order instructing Ms. Trombetta to file a proposed Amended Complaint that "may only include:  (1) the proposed amended copyright infringement claim; (2) the [VARA] claim; and (3) the basis, if any, for adding William Seipp[el] and Worthpoint Corporation as defendants in this action at this time."  (ECF No. 32).

On January 17, 2020, Ms. Trombetta filed a "Proposed Amended Complaint."  (ECF No. 33).  This pleading added the Worthpoint Defendants, asserted federal claims under the VARA, the Lanham Act, and the Copyright Act, and asserted state law claims under Sections 50–51 of the New York Civil Rights Law and Section 14.03 of the New York Artist's Authorship Rights Act.  (Id. at 14).  Notwithstanding instructions from both the District Court and this Court (see ECF Nos. 23, 32), the pleading did not attach a copy of Ms. Trombetta's copyright registration or otherwise contain any allegations concerning her copyright registration.

On January 31, 2020, the EAI Defendants opposed the Motion to Amend by filing what they labeled as a motion to dismiss the "Proposed Amended Complaint" pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF Nos. 34–35).  The EAI Defendants argued that the claims that the District Court already dismissed with prejudice should be dismissed, and that the copyright claim failed because Ms. Trombetta failed to attach the copyright registration or otherwise allege that her biography was covered by a copyright registration.  (ECF No. 35 at 3).

On February 21, 2020, Ms. Trombetta submitted her Response in Opposition to Defendants' Motion to Dismiss, in which she describes claims for direct and contributory

copyright infringement, violation of the Digital Millennium Copyright Act ("DMCA"), defamation, the Lanham Act, claims under Sections 50–51 of the New York Civil Rights Law and Section 14.03 of the New York Artist's Authorship Rights Act, and the VARA.  (ECF No. 36).  She also includes allegations in support of her copyright registration, a copy of which she attaches.  (ECF No. 36 at 12, 47–48).  As set forth above (see supra n.1), the Court interprets this filing as the operative proposed Amended Complaint for purposes of evaluating the parties' motions.

### III.    DISCUSSION

#### A.    Legal Standards

##### 1.    Motion to amend

Under Federal Rule of Civil Procedure 15, the Court may permit a party to amend its pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave may be denied as futile if the proposed amended pleading could not withstand a motion to dismiss.  See Oneida Indian Nation of N.Y. v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (internal citation omitted); Griffith-Fenton v. Coldwell Banker Mortg., No. 13 Civ. 7449 (VB), 2014 WL 6642715, at *1 (S.D.N.Y. Oct. 17, 2014).  The party opposing the proposed amendment bears the burden of establishing that the amendment would be futile.  See Ballard v. Parkstone Energy, LLC, No. 06 Civ. 13099 (RWS), 2008 WL 4298572, at *3 (S.D.N.Y. Sept. 19, 2008).

#### B.    Previously-Dismissed Claims[3]

In the MTD Order, the District Court dismissed with prejudice Ms. Trombetta's claims under Sections 50–51 of the New York Civil Rights Law, Section 14.03 of the New York Artist's

---

[3] The District Court allowed Ms. Trombetta's VARA claim to proceed, and there is no question that claim continues.

**SA118**

Authorship Rights Act, and the Lanham Act.  <u>Trombetta</u>, 414 F. Supp. 3d at 634.  The District Court explained that each of these claims suffered from a "substantive" problem that could not be cured, and therefore, denied leave to amend as "futile."  <u>Id.</u>  Accordingly, Ms. Trombetta's Motion to Amend to reassert each of these claims is DENIED, and the Court will deem them stricken from the Amended Complaint.

In the MTD Order, the District Court dismissed <u>without</u> prejudice Ms. Trombetta's copyright infringement claim based on the EAI Defendants' alleged copying of her website biography.  <u>Trombetta</u>, 414 F. Supp. 3d at 634.  The District Court instructed Ms. Trombetta that if she chose to replead her Copyright Act claim, "she should reference her certificate of copyright registration in the allegations of her proposed Amended Complaint and that she should attach it thereto."  <u>Id.</u>  Although Ms. Trombetta failed to comply with this requirement in her earlier filing (ECF No. 33), she included allegations in and a copy of the registration attached to the document the Court construes as her Amended Complaint.  (ECF No. 36 at 12, 47–48).  Accordingly, because Ms. Trombetta has remedied the deficiency in her copyright infringement claim, the Court GRANTS her Motion to Amend to include her copyright infringement claim against the EAI Defendants.

### C.    New Claims

Ms. Trombetta seeks allege contributory infringement against the Worthpoint Defendants, and to assert against both the EAI Defendants and the Worthpoint Defendants claims under the DMCA and for defamation.  (ECF No. 36 at 13–19).  The Court will consider each in turn.

#### 1.    Contributory copyright infringement

**SA119**

To state a claim for contributory copyright infringement, a plaintiff must show that the defendant "'with knowledge of the infringing activity' . . . 'materially contributes to the infringing conduct of another.'"  Arista Records LLC v. Lime Grp. LLC, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011) (quoting Matthew Bender & Co., Inc. v. W. Publ'g Co., 158 F.3d 693,706 (2d Cir. 1998)). "The knowledge standard is an objective one; contributory infringement liability is imposed on persons who know or have reason to know of the direct infringement."  Arista Records, LLC v. Doe 3, 604 F.3d 110, 118 (2d Cir. 2010) (emphasis in original; internal citation omitted).

Ms. Trombetta has alleged, and provided supporting documents, in support of her contention that the Worthpoint Defendants knew the internet post about the Painting was false, including her conversations with two Worthpoint.com employees and two emails to Mr. Seippel in 2016 and 2017.  (ECF No. 36 at 13).  She contends that the fact that Worthpoint.com took down and then reposted the link to the false post provides further support for her claim.  (ECF No. 36 at 14).

The Court finds that these allegations are sufficient to plausibly allege that the Worthpoint Defendants knew or should have known that the link about the Painting was infringing on Ms. Trombetta's copyright.  See Aaberg v. Francesca's Collections, Inc., No. 17 Civ. 115 (AJN), 2018 WL 1583037, at *5 (S.D.N.Y. Mar. 27, 2018) (denying motion to dismiss contributory copyright infringement claim where plaintiffs plausibly alleged defendants' "actual or constructive knowledge" of likely infringement).  Accordingly, Ms. Trombetta' motion to amend with respect to the contributory copyright infringement claim against the Worthpoint Defendants is GRANTED.

**SA120**

**2. DMCA**

"The DMCA makes it unlawful to knowingly, and with the intent to 'induce, enable, facilitate, or conceal infringement,' either 'provide' or 'distribute' . . . false 'copyright management information' or 'CMI.'"  Aaberg, 2018 WL 1583037, at *6 (quoting 17 U.S.C. § 1202(a)). To state a claim under § 1202(a), a plaintiff "must allege that the defendant both knew that the CMI was false, and provided or distributed the false CMI with the intent to induce, enable, facilitate, or conceal infringement."  Aaberg, 2018 WL 1583037, at *6 (citing Ward v. Nat'l Geographic Soc'y, 208 F. Supp. 2d 429, 449 (S.D.N.Y. 2002)).

The DMCA also prohibits the following actions "without the authority of the copyright owner or the law' and with knowledge or reason to know that it will "induce, enable, facilitate, or conceal" infringement:

(1) intentionally remove or alter any copyright management information;
(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law; or
(3) distribute . . . works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law.

17 U.S.C. § 1202(b).  To state a claim under § 1202(b), "a plaintiff must allege 1) the existence of CMI on the products at issue; 2) removal and/or alteration of that information; and 3) that the removal and/or alteration was done intentionally."  Aaberg, 2018 WL 1583037, at *6.

The DMCA defines CMI, in relevant part, to include:

(1) [t]he name of, and other identifying information about, the author of a work, (2) [t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright, and (3) . . . . the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.

17 U.S.C. § 1202(c)(2–4).  Courts generally take a broad view of what constitutes CMI.  See Aaberg, 2018 WL 1583037, at *7 (collecting cases).

For purposes of both § 1202(a) and § 1202(b), the Court finds that Ms. Trombetta has adequately alleged that the information included in the internet posts about the Painting included CMI and that the EAI Defendants and the Worthpoint Defendants removed or altered it.  The posts included not only her name, but also purported biographical information and website address.  (ECF No. 36 at 3).  See Aaberg, 2018 WL 1583037, at *7 (finding allegations "sufficient to identify the copyright owning Plaintiff").  She bolsters her allegations by attaching exhibits showing the internet posts that altered or omitted true information about her.  (ECF No. 36 at 28–30 (Exs. 1–3).  See Gattoni v. Tibi, LLC, 254 F. Supp.3d 659, 664 (S.D.N.Y. 2017) (noting that by providing actual example of allegedly infringing work, plaintiff "bolstered" her § 1202(b) claim).

With respect to the scienter element of both the § 1202(a) and § 1202(b) claims, the "Second Circuit has stated that courts should be lenient in allowing scienter issues to survive motions to dismiss."  Aaberg, 2018 WL 15803037, at *9 (citing In re DDAVP Direct Purchaser Antitrust Litig., 585 F.3d 677, 693 (2d Cir. 2009)).  Ms. Trombetta alleges that she contacted Mr. Novocin, Worthpoint.com employees, and Mr. Seippel on more than one occasion to complain about the misinformation in the internet posts about the Painting and request their removal.  She alleges that, as to EAI, Mr. Novocin deliberately disregarded her requests and told her, "Go For It and Hire an Attorney," and as to Worthpoint.com, Mr. Seippel instructed that the posts be removed, but they were later reposted.  (ECF No. 36 at 3–7, 14–16).  She attached copies of this correspondence as exhibits to provide further support to the credibility of her allegations.  (ECF

No. 36 at 31–34).  These allegations are consummate with those other courts have deemed sufficient to plead adequately the knowledge element of DMCA claims.  See Aaberg, 2018 WL 15803037, at *9 (finding allegations that defendants continued to sell infringing products after plaintiff lodged complaint were sufficient to state claims under § 1202(a) and § 1202(b)); Gattoni, 254 F. Supp. 3d at 664–65 (finding allegations that defendant partially tagged plaintiff's copyright was sufficient to plead knowledge element of § 1202(b) claim); Fischer v. Forrest, No. 14 Civ. 1304 (PAE), 2015 WL 195822, at *9 (S.D.N.Y. Jan. 13, 2015) (finding that where a defendant continued its infringing conduct after receiving a cease-and-desist letter, a plausible inference of intentionality existed).

Accordingly, the Court finds that Ms. Trombetta has adequately stated a claim under both § 1202(a) and § 1202(b) of the DMCA against the EAI Defendants and Worthpoint Defendants. Ms. Trombetta's Motion to Amend to add the DMCA claims against the EAI Defendants and the Worthpoint Defendants is GRANTED.

### 3.  Defamation

Ms. Trombetta seeks to add a claim for defamation against the EAI Defendants and Worthpoint Defendants, alleging that the internet posts about the Painting constituted false statements about her and her artwork that diminished the value of her artwork and caused her to lose at least one sale.  (ECF No. 36 at 17–19).

To allege a defamation claim under New York law, a plaintiff must allege:  "(1) a false statement about the claimant; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on the part of the publisher; (4) that either constitutes defamation per se or caused special damages."  Collins v. Travers Fine Jewels Inc.,

No. 16 Civ. 03780 (SN), 2017 WL 1184305, at *2 (S.D.N.Y. Mar. 29, 2017); see Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010).  A plaintiff asserting a defamation claim must "identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and (4) the third parties to whom the statements were published."  Yukos Capital S.A.R.L. v. Feldman, 15 Civ. 4964 (LAK), 2016 WL 183360, at *1 (S.D.N.Y. Jan. 11, 2016) (internal citation omitted).  Defamation claims in federal court are subject to the liberal pleading requirements of Federal Rule of Civil Procedure 8.  See DiFolco v. MSNBC Cable, LLC, 622 F.3d 104, 110–11, 113–14 (2d Cir. 2010).

A defamation claim must be brought within one year.  See N.Y. C.P.L.R. § 215(3).  This limitations period begins to run when "the libelous material first was published, that is, displayed to a third party."  Tucker v. Wyckoff Heights Med. Ctr., 52 F. Supp. 3d 583, 596–97 (S.D.N.Y. 2014) (internal citation omitted).  Under the "single publication rule," the publication of a defamatory statement, even if widely distributed, is "in legal effect, one publication which gives rise to one cause of action," with the limitations period beginning to run from the date of publication.  Gregoire v. G. P. Putnam's Sons, 298 N.Y. 119, 123 (1948).  This rule applies equally to online publications.  See Firth v. New York, 98 N.Y.2d 365, 370 (2002); Martin v. Daily News L.P., 121 A.D.3d 90, 103 (1st Dep't 2014) ("This rule applies to publications on the Internet . . . so continuous access to an article posted via hyperlinks . . . is not a republication.") (internal citation omitted).  "If a defamatory comment is 'republished' in a new format, the statute of limitations begins to run anew from the date of republication."  Enigma Software Grp. USA, LLC v. Bleeping Computer LLC, 194 F. Supp. 3d 263, 276 (S.D.N.Y. 2016) (quoting Firth, 98 N.Y.2d at 371).

Ms. Trombetta alleges that the original internet post about the Painting appeared sometime in 2012, and that Worthpoint.com republished the link on May 9, 2017. (ECF No. 36 at 2, 7). See Trombetta, 414 F. Supp. 3d at 633 ("Trombetta alleges that the advertisement of the painting containing her name and personal biography was published in December 2012.") Construing the statute of limitations most generously to Ms. Trombetta, to be timely, her defamation claim needed to be filed no later than May 9, 2018. She first asserted a defamation claim on February 21, 2020 (ECF No. 36 at 17), which is well beyond that deadline. Accordingly, the Court finds that her defamation claim is untimely. See Batra v. State Bank of India, No. 15 Civ. 2678 (LGS), 2016 WL 3029957, at *7 (S.D.N.Y. May 25, 2016) (dismissing defamation claim as time-barred). Because repleading cannot cure the expiration of the statute of limitations bar, Ms. Trombetta's motion to amend to add a defamation claim is DENIED.

### IV.     CONCLUSION

For the reasons set forth above, Ms. Trombetta's Motion to Amend is GRANTED in part and DENIED in part as follows:

(1) the claims under (a) Sections 50–51 of the New York Civil Rights Law, (b) Section 14.03 of the New York Artist's Authorship Rights Act, and (c) the Lanham Act, having previously been dismissed in the MTD Order, are stricken with prejudice;

(2) the claim for defamation is DISMISSED with prejudice;

(3) the claims (a) under the VARA against the EAI Defendants, (b) for direct copyright infringement against the EAI Defendants, (c) for contributory copyright infringement against the Worthpoint Defendants, and (d) under the DMCA § 1202(a) and § 1202(b) against the EAI Defendant and Worthpoint Defendants will proceed in this action;

**SA125**

(4) the Court deems ECF No. 36 to be the operative Amended Complaint in this action;

(5) Ms. Trombetta is directed to effect service of the Amended Complaint (ECF No. 36) on Defendants William Seippel and Worthpoint.com; and

(6) Defendants Norb Novocin, Marie Novocin and Estate Auctions, Inc. shall have until Thursday, April 2, 2020 to file their Answer to the Amended Complaint (ECF No. 36) consistent with this Opinion and Order.

The Clerk of the Court is respectfully directed to close ECF Nos. 29 and 34. The EAI Defendants are directed to mail a copy of this Order to Plaintiff at the address below.

Dated:    New York, New York
          March 19, 2020

SO ORDERED

_____
SARAH L. CAVE
**United States Magistrate Judge**

Mail To:    Annamarie Trombetta
            175 East 96th Street (Apt. 12R)
            New York, NY 10128

14

**SA126**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ANNAMARIE TROMETTA, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| NORB NOVOCIN, MARIE NOVOCIN, ESTATE AUCTIONS, INC., and WORTHPOINT CORPORATION, | ) ) ) ) ) |
| Defendants. | ) ) ) |

Case No. 18-cv-0993-RA-SLC

**PROTECTIVE ORDER**

**WHEREAS**, the Parties having agreed to the following terms of confidentiality, and the Court having found that good cause exists for the issuance of an appropriately tailored confidentiality order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, it is hereby

**ORDERED** that the following restrictions and procedures shall apply to the information and documents exchanged by the parties in connection with the pre-trial phase of this action:

1.      Counsel for any party may designate any document or information, in whole or in part, as confidential if counsel determines, in good faith, that such designation is necessary to protect the interests of the client in information that is proprietary, a trade secret or otherwise sensitive non-public information. Information and documents designated by a party as confidential will be stamped "CONFIDENTIAL."

2.      The Confidential Information disclosed will be held and used by the person receiving such information solely for use in connection with the action.

3.      In the event a party challenges another party's designation of confidentiality, counsel shall make a good faith effort to resolve the dispute, and in the absence of a resolution, the challenging party may seek resolution by the Court. Nothing in this Protective Order constitutes an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party reserves the right to object to the use or admissibility of the Confidential Information.

4.      All documents designated as "CONFIDENTIAL" shall not be disclosed to any person, except:

a.      The requesting party and counsel, including in-house counsel;

b.      Employees of such counsel assigned to and necessary to assist in the litigation;

**SA127**

      c.      Consultants or experts assisting in the prosecution or defense of the matter, to the extent deemed necessary by counsel; and

      d.      The Court (including the mediator, or other person having access to any Confidential Information by virtue of his or her position with the Court).

5.      Prior to disclosing or displaying the Confidential Information to any person, counsel must:

      a.      Inform the person of the confidential nature of the information or documents;

      b.      Inform the person that this Court has enjoined the use of the information or documents by him/her for any purpose other than this litigation and has enjoined the disclosure of the information or documents to any other person; and

      c.      Require each such person to sign an agreement to be bound by this Order in the form attached as Exhibit A.

6.      The disclosure of a document or information without designating it as "Confidential" shall not constitute a waiver of the right to designate such document or information as Confidential Information. If so designated, the document or information shall thenceforth be treated as Confidential Information subject to all the terms of this Stipulation and Order.

7.      Any Personally Identifying Information ("PII") (e.g., social security numbers, financial account numbers, passwords, and information that may be used for identity theft) exchanged in discovery shall be maintained by the receiving party in a manner that is secure and confidential and shared only with authorized individuals in a secure manner. The producing party may specify the minimal level of protection expected in the storage and transfer of its information. In the event the party who received PII experiences a data breach, it shall immediately notify the producing party of same and cooperate with the producing party to address and remedy the breach. Nothing herein shall preclude the producing party from asserting legal claims or constitute a waiver of legal rights and defenses in the event of litigation arising out of the receiving party's failure to appropriately protect PII from unauthorized disclosure.

8.      Pursuant to Federal Rule of Evidence 502, the production of privileged or work-product protected documents or communications, electronically stored information ("ESI") or information, whether inadvertent or otherwise, shall not constitute a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance,

**SA128**

responsiveness and/or segregation of privileged and/or protected information before production.

9.      Notwithstanding the designation of information as "Confidential" in discovery, there is no presumption that such information shall be filed with the Court under seal. The parties shall follow the Court's procedures for requests for filing under seal.

10.     At the conclusion of litigation, Confidential Information and any copies thereof shall be promptly (and in no event later than 30 days after entry of final judgment no longer subject to further appeal) returned to the producing party or certified as destroyed, except that the parties' counsel shall be permitted to retain their working files and one copy of the opposing side's discovery response and production, on the condition that those files will remain protected and retained for archival purposes only. The parties shall not be permitted to access their counsel's copy of the producing party's confidential discovery responses and production absent written permission from the producing party or as Court ordered.

11.     Nothing herein shall preclude the parties from disclosing material designated to be Confidential Information if otherwise required by law or pursuant to a valid subpoena.

SO STIPULATED AND AGREED.

After review of Ms. Trombetta's Proposed Protective Order and opposition letter (ECF Nos. 201–02), the Court GRANTS Defendants' Motion for a Protective Order and ADOPTS Defendants' Proposed Protective Order (ECF No. 200-1).

The Clerk of Court is respectfully directed to close ECF No. 200.

SO ORDERED 2/16/2022

SO ORDERED.

_SARAH L. CAVE_
SARAH L. CAVE
United States Magistrate Judge

**SA129**

**<u>Exhibit A</u>**

**<u>Agreement</u>**

I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matter entitled have been designated as confidential. I have been informed that any such documents or information labeled "CONFIDENTIAL" are confidential by Order of the Court.

I hereby agree that I will not disclose any information contained in such documents to any other person. I further agree not to use any such information for any purpose other than this litigation.

DATED:

_____
Signed in the presence of:

_____
(Attorney)

5

**SA130**

# Duff Law PLLC

Anderson J. Duff
Managing Member
(646) 450-3607
ajd@hoganduff.com

December 7, 2022

**<u>VIA ECF ONLY</u>**
Honorable Sarah L. Cave
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:     *Annamarie Trombetta v. Norb Novocin, et al.*, Case No. 18-cv-0993-RA-SLC

Dear Judge Cave:

On December 7, 2022, the Court issued an order stating that "Defendants Norb Novocin, Marie Novocin, and Estate Auctions Inc. shall advise the Court whether they have in their possession, custody, or control, the 'coding for EAI00058 and EAU00060[.]'" (Dkt. No. 325.) The documents produced by my clients, EAI000058 through EAI000060, are two emails. The first, EAI000058-EAI000059, is a forward of a December 1, 2012 email receipt of the eBay sale that Defendant Norb Novocin forwarded to himself on January 10, 2017. (Ex. A.) When the email was converted to a .pdf for production, a small portion on the right hand margin was cut off. Counsel for Worthpoint noticed the error and asked for production of the full email. To fulfill that request, my clients produced a .pdf of the original December 1, 2017 email as EAI000060. (Ex. B.) All Parties are in possession of the .eml files for both the original December 1, 2017 email and the forward of that email from my clients to themselves on January 10, 2017, which can be used to view the "coding" for each email. Plaintiff's own submission acknowledges that she has been in receipt of the .eml file for the email shown in EAI00058 and EAI000059 since at least as early as November 17, 2022. (Dkt. No. 322-5 at 6, 10.) To avoid further concerns from Plaintiff about the authenticity of the December 1, 2022 email receipt shown in EAI000060, my clients forwarded a copy of the .eml file for that email to Plaintiff today. (Ex. C.)

---

The Court appreciates Defendants' efforts to resolve Ms. Trombetta's questions about the "coding for EAI00058 and EAU00060" (the "Emails"). (ECF Nos. 324; 326). The Court deems Defendants' production concerning the Emails complete and the issues raised by Ms. Trombetta in ECF No. 322 resolved. Ms. Trombetta is encouraged to focus her efforts on complying with her obligations pursuant to the Court's scheduling order (ECF No. 308) and post-conference order dated November 23, 2022 (ECF No. 319).

The Clerk of Court is respectfully directed to send a copy of this Order to Ms. Trombetta at the address below.

SO ORDERED 12/08/22

Mail To:  Annamarie Trombetta
          175 East 96th Street, Apt 12R
          New York, New York 10128

SARAH L. CAVE
United States Magistrate Judge

DUFF.LAW   1

# SA131

Case 1:18-cv-00993-LTS-SLC    Document 343    Filed 12/20/22    Page 1 of 3

Ms. Trombetta's December 15, 2022 letter raises issues that the Court has already resolved twice, (see ECF Nos. 327; 340). Accordingly, to the extent Ms. Trombetta seeks to compel the production of the "original 2012 eBay email[,]" her request is DENIED AS MOOT. Defendants are not required to make any further productions concerning the "original 2012 eBay email[.]"

The Clerk of Court is respectfully directed to mail a copy of this Order to Ms. Trombetta at the address below.

SO ORDERED 12/20/22

*SARAH L. CAVE*
*United States Magistrate Judge*

age EAI 2012 eBay Sale

Pro se Plaintiff writes in gratitude to the Court for it's consideration regarding my recent necessary contact. An extension to recover is more than well needed this week. I sincerely appreciate the Court's patience.

I write to inform the Court that on Dec, 13, 2022 Plaintiff sent Anderson Duff an email in response to Mr. Duff's statements in Doc 334 in his Dec. 13, 2022 letter to the Court, Mr. Duff 's expressed that he did not understand what I was requesting from him regarding exporting the Original message in it's native electronic format. Plaintiff immediately made a short video, illustrating how to export an email's Original Message in its entirety, into a PDF. It is fast and simple to do. I sent my video, via email to Mr. Duff on Dec. 13th. I requested a full native electronic original 2012 eBay email, exported in a PDF envelope. For the record, I could not open Mr. Duff 's eml file. I made the effort to have my internet expert open it so I could view it.

As a result of my video, Mr. Duff sent his response. It was a 13 Page document titled Outlook Message Source. Mr. Duff's 13 pages are filled with "LIVE " text. This infers that Mr. Duff highlighted the text, copied it into a word or page document and transferred (pasted) the copied data. The live text permitted me to copy and paste it into this letter. I was able to change the color of the font on some of the text. WHAT IS IMPORTANT TO bring to the Court's attention is the significant distinction between an exported Original Electronic Message of an email in it's entirety, in a PDF format and what Mr. Duff produced. Text from an email that was highlighted, selected and put into a word or page document can be altered. Producing the native electronic original email, is done by exported it as a PDF. It is achieved simply by clicking onto the email, going to the original email, then the FILE icon and export it as a PDF. When the email is directly exported as a PDF it cannot be modified from it's intrinsic original state, hence my plea for an exported PDF.

To give a clear depiction of what I am communicating, I filed in **Exhibit #1,** a direct exported, original native electronic email from : ebay to : Plaintiff for a password reset, dated July 16, 2015. **Exhibit #2** is the SAME Original Message text from eBay to Plaintiff for a password reset on July 16, 2015, however I highlighted, pasted the text in pages and purposely changed the ORDER of the text. I copied the same eBay text in bold **below** and added it, in three different locations within the same document in addition to the original text.

**EXHIBIT #1 Native Electronic Original Message full envelope Plaintiff's July 16, 2015 eBay email PDF.**
**EXHIBIT #2 Rearranged Text of Plaintiff's July 16, 2015 eBay email in Page doc. exported as a PDF.**

**eBay sent this message to Annamarie Trombetta (trombannam).**
**Your registered name is included to show this message originated from eBay.**
**Learn more at http://pages.ebay.com/help/confidence/name-userid-emails.html**
————————————————————————————————

Following this, I changed some of the text above to Color and also changed the Font Size. I then exported the document as a PDF. All Original emails include symbols, letters numbers etc. The amount of coding depends on the visual content in each email and if there are visual attachments. Any email NOT exported directly in it's intrinsic entirety as a PDF, for an Original or Raw Message can be SELECTIVELY altered.

Plaintiff 's reason for my request of a fully exported Original Message for the 2012 eBay EAI sales receipt as a PDF is the same. Mr. Duff produced **three** different version for one receipt, with obvious visual alterations, each produced on three different dates. Plaintiff asks the Court to take notice of all my attempts to obtain one simple email eBay receipt. I asked for one simple native electronic email, in it's entirety, directly exported in a PDF format, for the same 2012 eBay receipt so it can be verified. The original eBay 2012 email should be in an envelope, with addresses of the sender, the receiver and related coding akin to all email data, same as in **EX #1.** This is a reasonable, easy request to produce an exported email as a PDF.

# SA132

EAI and Mr. Duff's have failed to produce many of Plaintiff's requests to include the location of the red signature which I first requested in Doc. 22 filed on 4/24/ 2019 and in my first interrogatories in Feb. 2022.

PLAINTIFF's INTERROGATORY NO. 8: ( Set forth to EAI and Mr. Duff  in Feb, 2022)
Plaintiff requests a written description of what the Back View of the entire painting entitled "1972 Original Oil Painting Man With Red Umbrella.  For Example : What is the color of the Canvas. Include as was duly stated in Estate Auction Inc. 2012 advertisement in the -DESCRIPTION-"    the exact location where it is written in red on the stretcher, "Annamarie Trombetta 'Gifted' 1977, "Painted" 1972".

EAI RESPONSE TO INTERROGATORY NO. 8:
Defendants object to this interrogatory because it is outside the scope of Local Civil Rule 33.3, contains impermissible subparts, and is abusive, unduly burdensome, and not proportional to the needs of the case. Subject to the foregoing  general and specific objections, Defendants identify Norb Novocin as the individual with knowledge of responsive information.

In Sept. 2022, Plaintiff subpoenaed the person in possession of the painting.  The red signature is located midway on the top stretcher bar.  A supporting fact that a nine year old could not sign the top stretcher  bar.

On Nov, 23, 2022 the Court ordered Plaintiff's simply  request  for one exported PDF Original Message. I explained then how to export the Original message to a PDF. Why is Mr. Duff willfully avoiding production?

December 15, 2022                                    Respectfully Submitted.

————— Electronic Signature —————

Annamarie Trombetta
175 East 96th Street
New York, New York 10128                    /s/ Annamarie Trombetta

_____
Annamarie Trombetta

## **Below is an illustration of  changes to Mr. Duff's data inform the Court**

ogan**Duff.**com </span></p><p class=3D"**MsoNormal"**> </p></div></
**body></html>**
--B_3753818549_3505238172--
--B_3753818549_383491175
Content-type: message/rfc822
Content-disposition: attachment

**Date: Tue, 10 Jan 2017 18:28:43 -0400**
**Subject: Fwd: Your eBay item sold**! 1972 Original Oil Painting Man With Red
 Umbrella Signed Annamarie Trombetta yqz (330833102936)
From: eBay EAI <ebay@novocin.com>
To: Norb Novocin <norb@novocin.com>,
     marie novocin <mombaree@gmail.com>
**Message-ID:**
**<CALKoPL433C9xXw**J0WZpXwn-4UZVXa=hvafEWq3oDxQKfNrR2ug@mail.gmail.com>
Thread-Topic: Your eBay item sold! 1972 Original Oil Painting Man With
**RED**
 **UMBRELLA** Signed Annamarie Trombetta yqz (330833102936)
Thread-Index: AU1pMjQwkqX6qfiN3bMXxD06g9CD6GdEPVhD
**Mime-version**: 1.0
Content-type: multipart/alternative;
     boundary="B_3739174330_4019078869"

> This message is **in MIME format**. Since your mail reader does not

**SA133**

understand  this format, some or all of this message may not be legible.
--B_3739174330_4019078869
Content-type: text/plain;
        charset="UTF-8"
Content-transfer-encoding: quoted-printable
---------- Forwarded message ----------
From: eBay <ebay@ebay.com>
Date: Sat, Dec 1, 2012 at 9:54 PM
Subject: **Your eBay item sold! 1972 Original Oil Painting Man With Red Umbre=**
lla Signed Annamarie Trombetta yqz (330833102936)
To: ebay@novocin.com
eBay sent this message to Norb & Marie **Novocin (estateauctionsinc).**
Your registered name is included to show this message originated from
eBay.=
Learn more.
Congratulations, your item sold!
Dear estateauctionsinc,
You did it! Your item sold. Please ship this item to the buyer after
your b=uyer pays.
1972 ORIGINAL OIL PAINTING MAN WITH RED UMBRELLA SIGNED ANNAMARIE TROMBETTA= YQZ
SALE PRICE :$181.50
QUANTITY SOLD:1
SALE DATE:DEC-01-12 18:54:01 PST
BUYER:NINA CORREIA
9NACLOCK (NINASCORREIA@AOL.COM) [CONTACT BUYER]
BUYER'S SHIPPING ADDRESS:
nina correia
14215 prairie flower ct
reno, NV 89511-6710 United States
Sell another Item | Send invoice to buyer

*Provide shipping information*
*Select your email preferences*
*Want to reduce your inbox email volume? Receive this email as a daily  diges=*
SIZE:XX-SMALL;=
FONT-FAMILY:VERDANA;COLOR:#666"><A HREF=3D"HTTP://PAGES.EBAY.COM/
EDUCATION/SPO=
OFTUTORIAL/INDEX.HTML" TARGET=3D"_BLANK">LEARN MORE</A> TO PROTECT
YOURSELF FR=OM SPOOF (FAKE) EMAILS.<BR><BR>EBAY SENT THIS EMAIL TO YOU
AT <A HREF=3D"MAILT=
o:ebay@novocin.com" target=3D"_blank">ebay@novocin.com</a> about your
account =
registered on <a href=3D"http://www.ebay.com"
target=3D"_blank">www.ebay.com</a>=
.<br><br>eBay sends these emails based on the preferences you set for
your a=
ccount. To unsubscribe from this email, change your <a href=3D"http://
my.ebay.=
com/ws/eBayISAPI.dll?
MyEbayBeta&amp;CurrentPage=3DMyeBayNextNotificationPrefer=
ences" target=3D"_blank">communication preferences</a>. Please note

**SA134**

Page 1 of 82

| | |
|---|---|
| United States District Court<br>Southern District of New York<br>_____<br>Annamarie Trombetta<br><br>Plaintiff<br>vs.<br><br>Norb Novocin, Marie Novocin<br>and   Estate Auctions Inc.<br>and<br><br>William Seippel & WorthPoint Corporation<br>5 Concourse Parkway NE, Suite 2850<br>Atlanta, Georgia 30328<br><br>Defendants<br>_____ | Case No. 18-cv-0993-RA-HBP<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO FILE A PROPOSED AMENDED COMPLAINT FOR FRAUD, EMOTIONAL DISTRESS, TORT AND PERMANENT INJUNCTIVE RELIEF AGAINST EAI AND NORB AND MARIE NOVICIN AND WORTH POINT CORPORATION DUE TO THE WILLFUL CONCEALMENT AND FALSIFICATION OF FACTS AND FALSE ADVERTISING** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE A PROPOSED AMENDED COMPLAINT TO INCLUDE FRAUD,, FALSE ADVERTISING EMOTIONAL DISTRESS AND A REQUST FOR DECLARATORY, PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

**ESTATE AUCTIONS INC.   NORB AND MARIE NOVOCIN**

**AND      WORTHPOINT   CORPORATION**

Pursuant to Rule 15, Rule 15 (a) (2), Rule 15 (c) (1) (a), Rule 15 (d) and Rule 26.01 of the Federal Rules of Civil Procedure and this Court, Plaintiff hereby respectfully submits this Memorandum in Support of Plaintiff's Motion for Leave to File a Proposed Amended Complaint to add Fed. Rule of Civil Procedure Fraud 9 (b) and for the Plaintiff's Request for Permanent Injunction and Other Equitable Relief ("Amended Complaint"). Rule 15(c)(1) indicates that an amendment to a complaint will relate back to the date of the original pleading if certain conditions are satisfied. First, the law that provides the applicable statute of limitations must allow the relation back. Fed. R. Civ. P. 15(c)(1)(A).

### INTRODUCTION

The Defendants, Estate Auctions Inc., Norb and Marie Novocin and WorthPoint Corporation have consistently purported confusing, illogical, multiple versions and obscured responses to

Plaintiff's very simple and direct questions. Based on past events and obvious false statements, spelling errors within the ad and in the red signature on the back of the 1972 Original Oil Painting, the recent production of three different, sales receipts for one eBay sale for the 1972 Original Oil Painting and the omission by WorthPoint to state the date and year when WorthPoint allegedly posted the false listing on their website ; Plaintiff set forth my Proposed Amendment Complaint to address these flagrant falsities. The additional Discovery responses and information in the Defendants' own filings exhibit such "bad faith," to the extent of willful, conscious intent, the actions necessitate a claim for Fraud and Tort. Plaintiff's claim for Fraud, also substantiates Plaintiff's initial Request for Declaratory Relief. I am not the artist who created or signed the 1972 oil painting. The willful concealment, failure of all Defendants to produce any computer data, or any of the original 12 photos written and described in the ad for the 1972 internet listing for the oil painting, conjoined with the delayed production of the misspelled red signature similar to my name; with the circulation of a false copyright symbol, calls for the Plaintiff to request Permanent Injunction Relief to prevent any further false assertions from both Defendants. My Proposed Amended Complaint intends to illustrate contradictory EAI written and verbal statements, revealing fraudulent conduct, beginning from my first encounter with WorthPoint Corporation in 2015 thru to 2017 and my first encounter with EAI Defendants Marie and in 2017 Norb Novocin spanning through to EAI's the most recent production of three separate eBay receipts with distinct alterations, produced at different times.

Plaintiff's Proposed Amended Complaint is in tandem with Judge Cave's most recent Order in Doc. 308. The language of Rule 15 (a) (2) states the amendment should be freely allowed "when justice so requires." Further, Rule 26.01 states that an amendment may be allowed " at any stage of an action and may permit parties to sought to amend their pleadings just before trial. Also, Rule 26 .01 gives the court's permission if the amendments are substantive— and support laws that creates or defines rights, duties, obligations, and causes of action that can be enforced by law. Additionally "under New York law" a claim for Intentional Infliction of Emotional Distress (IIED) requires a showing of: (i) extreme and outrageous conduct;

(ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" Rich v. Fox News Network, LLC, 939 F.3d 112 (2d Cir. 2019) (quoting Howell v. N.Y. Post Co., Inc., 596 N.Y.S.2d 350, 353 (N.Y. 1993)). As the Second Circuit has explained: Under New York law, although the standard of outrageous conduct is strict, rigorous and difficult to satisfy, that is not the case when there is a deliberate and malicious campaign of harassment or intimidation. Plaintiff's claim of Tort, both intentional and negligent necessitates the Discovery Rule, a rule in tort law which sets the statute of limitations for a cause of action not to begin to run until the time that the injured party discovers or reasonably should have discovered the injury. Plaintiff claims for pain and suffering have spanned seven and half years.

Plaintiff seeks to amend my complaint for reasons defined within my submission below for well warranted, obvious and justified claims to include Fraud, Tort and IIED. The willful denial by the EAI Defendants and WorthPoint Corporation, conjoined with their reluctance to resolve this case when I produced to all Defendants irrefutable evidence, that I am not the artist, has resulted in a severe loss of time, the inability of Plaintiff to earn a living due to the submissions required in litigating this case and delays in any legal rectification or resolution regarding a counterfeit painting baring two near similar names, to the Plaintiff. This steadfast, willful reluctance, denial and/or prolonged production of Discovery are simultaneously consistent with emails sent from both attorneys who have both referenced the 505 Copyright Act for attorneys fees the Plaintiff will incur at the end of this case. **EXHIBIT #4 Nov. 23, 2022 Email Subject Increased Attorney's Fees from Anderson Duff and Exhibit # 14 WorthPoint Corp. attorney Mr. Adam Bialek Dec. 2, 2022 email to Plaintiff to impose WorthPoint's attorneys fees**

Again, I did not paint in oils at age nine. I did not paint or sign the 1972 oil painting, which I consistently conveyed, evidenced in phone recordings, in writing all before I filed a lawsuit . Within Discovery, I produced my 1972 childhood signature within litigation. Discovery and deposition responses by the Novocins have uncovered and documented a conscious willful attempt to abscond Plaintiff's identity and reputation to falsely associate the 1972 oil painting

**SA137**

Page 4 of 82

with my true self authored biography. The willful attempts by all the Defendants, who requested Plaintiff to produce Settlement Letters was then rejected as was most recently on Nov. 23, 2022. This "entraps" the Plaintiff in continuous litigation, when I duly informed both parties and produced irrefutable evidence to substantiate all my claims. This full year that is almost at it's conclusion, has resulted in a continuous sustained, emotionally stressful set of circumstances, usurping Plaintiff 's well being and causing a sever loss of my time while concurrently burdening the Plaintiff and the Court with forced legal responsibilities to include the production of letters and documents by myself and my witnesses. All this work has derailed and prevented the Plaintiff from actively painting as pursuing my career. Since this case began, in good faith and with integrity I consistently submitted responses and evidence to the unpredictable, excessive demands by both Defendants, which totals over nine hundred documents.

Plaintiff's Proposed Amended Complaint harkens back to WorthPoint's written fraudulent statements, willful concealment, misinformation, captured in phone recordings and in writing. In 2015 and 2016, Plaintiff endured months of falsehoods and lies told by the WorthPoint's employees who concealed that WorthPoint's website was the source of the fraudulent link associated with Plaintiff's name and was responsible for it's removal of the false 1972 attribution of the oil painting that was advertised on WorthPoint 's website. The more time elapsed the more WorthPoint added more of it's unrelated pages to Plaintiff's name and credentials. Any website designer or webmaster can attest that adding or removing links on and off a website can be done **instantaneously**, however the owner of any website maintains the control of it's content. The facts regarding website ownership, the concealment of evidence, the lack of evidence and overt fraudulent excuses confirm fraudulent misrepresentations by WorthPoint Corp. to the Plaintiff, spans over seven and half years. One of the main elements of fraud is that there is no basis for believing that the information is factual. Despite Plaintiff's production of my 1972 signature in print and script, and the production of over nine hundred pages of evidence, the Defendants are unyielding and rejected settlement talks on Nov. 23,2022 . Concurrently and ironically,

WorthPoint 's Defendants, on August 30, 2022 improperly and willfully served Plaintiff an unsigned summons and a complaint with false incorrect facts and dates, generated from the state of Georgia, after I had a nine hour deposition. WorthPoint's owners are claiming that they are suffering from IIED, Plaintiff has always affirmed, I am not the artist who painted the 1972 oil painting and therefore could not have a licensing agreement with WorthPoint Corp. Aside from this Plaintiff has never been to the State of Georgia. Plaintiff has been falsely and repeatedly interrogated while constantly producing irrefutable proof. I am being bombarded with timed legal responsibilities, compounded by an addition countersuit, in a State I never entered, two years after I served WorthPoint, all endured because I was FORCED to protect my name, brand and to prevent further illegal and unethical usage of my name. For these defined reasons within my submission, I seek warranted and justified claims for IIED. The repeated complicated problems and delays Plaintiff endured all this due to a simple request to remove a false internet post satisfies the elements of IIED. In 2015, what I had hoped to be an honest or simple mistake, has revealed to a willful attempt to conceal a fraudulent two signatures by EAI along with circulating false copyright management information on the internet by WorthPoint Corp. The difficulties I endured to remove the false post reveal a willful pattern to abscond Plaintiff's identity and falsely associate the 1972 oil painting with my name possibly" to increase the value of a damaged oil painting and piggyback" off my name. Concurrently, and from 2015, I am being falsely associated to Estate Auctions Inc, WorthPoint Corporation, and eBay, which are all known for selling low quality items. I have the burden of litigation , the burden of proving my claims, all due to a signed counterfeit painting that in 2017 I informed Norb Novocin that I did not paint or sign this oil. WorthPoint never issued a statement of error nor an apology, thus this constitutes willful fraud.

Granting the Proposed Amendment Complaint would not be futile because the Second Amended Complaint ("SAC"), just like the First Amended Complaint ("FAC"), contains detailed factual allegations supporting each of Plaintiff's claims. Each claim has a correlating exhibit of evidence in support to verify the Plaintiff's claim. There will be no futility resulting in

**SA139**

examining the Plaintiffs' new claims, as these claims arise from the Defendants' willful intent to misrepresent Plaintiff' integrity and to willfully intend to misrepresent, to the Plaintiff. evidence, conduct and practices that Defendants have admittedly engaged. Based on the simple, plain reading of the evidence, all will assists in facilitating Plaintiff's claims confirmed by truthful facts substantiated in and by evidence produced to the Defendants and by the Defendants. and the Court with e forced legal responsibilities to include the production of letters and documents by myself and my witnesses. All this work has derailed and prevented the Plaintiff from actively painting as pursuing my career. Since this case began in good faith and with integrity has consistently submitted responses and evidence to the unpredictable, excessive demands by both Defendants, which totals over nine hundred documents.

## JURISDICTION AND VENUE

The Court has subject matter jurisdiction pursuant to Rule 15 of the Federal Rules of Civil Procedure. FRCV Rule 15 provides that " a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. § 1367.

### Legal Standards of F.R.C.R Fraud 9 (b) To Amend Plaintiff's Complaint

Plaintiff's moves the Court to include fraud against each Defendant due to the constant, willful, conscious misbehavior with the knowledge that Defendants have purported false and misleading information to the Plaintiff, about the Plaintiff and in reference to the "1972 Original Oil Painting Ad Man With Red Umbrella", to the general public at large and at present, to the Court in the public filings of this case. All the Defendants, EAI and WorthPoint Corp. demonstrated by concealment of evidence and by submitted false evidence that all parties exemplify an intent "to manipulate, deceive and/or defraud." the Plaintiff and the Court. The Southern District Court of New York, also known as the Second Circuit has held that Rule 9(b) requires fraud complaints to allege facts that lead to a "strong inference" that the defendant has the requisite state of mind.

Plaintiff's  Motion for my  Proposed Amended   Complaint  harkens back to the Court's Scienter, notation by  Judge Abrams  in her  Order and Decision filed in Doc, 187 on  12/21/21 on page 19 of 26.   Judge Abrams wrote  ~ " *Trombetta also states that the use of her  biography was unauthorized and that she contacted WorthPoint to inform the company of the  "false posting" Id at 6.  In other words, her biography was not "licensed by WorthPoint" as the  webpage claimed.  At this stage Trombetta's allegations with respect to the falsity of the CIM are  sufficient to state a claim. They are sufficient to allege scienter as well."*     Prior to Judge  Abrams   December 21, 2021 conclusion, Judge  Caves' March 19, 2020 Order and Decision,  Doc. 40 on   page 10 of 14  stated *" With respect  to the scienter  element of both the § 1202(a) and § 1202(b)  claims, the "Second Circuit has  stated that courts should be lenient in allowing scienter  issues  to survive motions to dismiss."  Aaberg, 2018 WL 15803037, at \*9 (citing In re DDAVP Direct  PurchaserAntitrust Litig., 585 F.3d 677, 693 (2d Cir. 2009))" . ~ Ms. Trombetta alleges that  she  contacted Mr. Novocin, Worthpoint.com employees, and Mr. Seippel on more than one occasion  to complain about the misinformation in the internet posts about the Painting and request their  removal.  She alleges that, as to EAI, Mr. Novocin deliberately disregarded her requests and told  her, "Go For It and Hire an Attorney," and as to Worthpoint.com, Mr. Seippel  instructed that the  posts be removed, but they were later reposted."*     The degree of the scienter element is typically and  presumably  determined throughout the  Discovery process.   Scienter can be proven by the  presentation of  evidence to show the   perpetrator's state  of mind, one of the key  elements in  F.R.C.P  9 (b) and must be plead with particularity**.**  The  evidence must  typically show that the perpetrator acted knowingly,  willfully, intentionally or in reckless disregard of the law.  Plaintiff has detailed statements and facts below.

Pleading Rule 9(b) of the Federal Rules of Civil Procedure permits allegations of malice, intent, knowledge, and other conditions of the mind to be alleged "generally".  To  plead  such allegations sufficiently, one must offer sufficient  facts to render the condition-of-the-mind allegation plausible. "In order to properly plead fraud  with particularity,  the complaint must allege the time, and content of the fraudulent  representation such that a  defendant can prepare an adequate response to the allegations."  The Second Circuit standard goes beyond general

statements when alleging intent. Plaintiff will  meet this standard by "(1)  alleging facts to show

that Defendants  had both motive and opportunity to commit fraud, or by (2) alleging facts that

constitute strong circumstantial evidence of conscious misbehavior or recklessness.

" *PetEdge, Inc. v. Garg*,564088, at \*9  (S.D.N.Y. Feb. 10, 2017).

The elements of fraud are as follows:

- **1** -A lie or falsehood is made.
- **2**- By the defendant with scienter, and the statement is false, or that there is no basis for believing   that the information is factual.
- **3**- The defendant intends to cause the plaintiff to do or not do some particular act based upon their falsehood or lie.
- **4**- The plaintiff is justified in relying on the falsehoods or lies told by the defendant.
- **5**- Harm results from the plaintiff's reliance on the defendant's statements  Causation loss is "the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.

## STATEMENT OF FACTS  AND RELEVANT PROCEDURAL HISTORY

Please see attached Proposed Second Amended Complaint Court Application for the full Statement of

facts that correlate to First Defendants  Estate Auctions Inc and Norb and Marie Novocin     and the

facts that correlate to Second  Defendant  WorthPoint Corporation.

## THE  PARTIES

First Defendant Estate Auctions Inc. Norb and Marie Novocin

Second Defendant WorthPoint Corporation

# Statutes of Limitation for Fraud in New York ~ Six Years  GENERAL

# or Two Years From the Time of the Confirmed Fraud.

Under New York law, an action based upon fraud must be commenced within six years of the

date the cause of action accrued, or within two years of the time, the Plaintiff discovered or could

have discovered the fraud with reasonable diligence, whichever is greater. The cause of action

accrues when "every element of the claim, including injury, can truthfully be alleged" "even though

the injured party may be ignorant of the existence of the wrong or injury.  Mere suspicion will not

constitute a sufficient substitute" for knowledge of the fraud.  Thus, while it is true that New York

courts will not grant a motion to dismiss a fraud claim where the plaintiff's knowledge is disputed,

courts will dismiss a fraud claim when the alleged facts establish that a duty of inquiry existed and

that an inquiry was not pursued. Plaintiff  has consistently pursued each Defendant prior to litigation.

Plaintiff  will detail below the unending misrepresentation by  WorthPoint Corp and eBay

spanning a period from August 2015 through to 2017.   Plaintiff did not  conclusively confirm  in

Dec/Jan 2015 and 2016  that the  eBay sale occurred.  The  eBay rep  deemed the 2012 EAI sale as

"Undefined". This is duly recording in **Plaintiff 's eBay.  m4a Evidence 000328 (phone recording).**

In 2017,  Plaintiff  could not understand why the  internet link that was supposed to be permanently

removed by  WorthPoint,  was under my name, again.   On Jan. 4, 2017,  I sent an email to

WorthPoint Corp and  did not receive any response.  I  then  reached out to  EAI to try to  find  out if

EAI uploaded  the 1972 eBay sale and posted it on the internet.  On Jan. 10,  2017,  Plaintiff  called

(302) 628- 9120,  the  telephone number  associated with EAI.  I spoke  with Marie Novocin to find

out if  they were the  sellers of the painting  and if they had any  information as to why their  2012

eBay sale was on the internet.  coming up under my name.  I  also asked if they knew who had the

painting.  Shortly after,  my phone call to Marie Novocin,  her husband , Defendant, Norb  Novocin

phoned  Plaintiff at  my home number on Jan. 10, 2017 at  7 :10  **Plaintiff 's  Norb Novocin  m4a**

**Evidence 000330  (phone recording)**.  This phone call affirms Plaintiff's  questions and Mr.

Novocin's affirmative  responses that he was indeed the seller of the painting. Mr. Novocin  said  he

phoned me  to tell me  *" he has a wealth of  no knowledge"* pertaining to the computer data. etc.

Plaintiff  documented with the Court Mr. Novocin  quote  to " Go For It and Hire an Attorney"

professing that  we did nothing wrong.   Months later,  exhibited in **EAI 000001  to Evidence  EAI**

**SA143**

Page 10 of 82

**000003** is Plaintiff's attorneys' letter dated August 28, 2017 sent to Mr. & Mrs. Norbert and Marie Novocin and Estate Auctions Inc.   Upon a lack of response from EAI Defendants,  Plaintiff filed this lawsuit  within months of EAI  ignoring the letter sent by my attorney, Megan Noh.  On Feb. 5, 2018, I filed a lawsuit against EAI and Norb and Marie Novocin.   In addition to Norb and   Marie Novocin and   Estate Auction Inc.  their attorney Anderson Duff clearly pointed out  and wrote in an e-mail dated March 1, 2019   *" We now understand that at least one third-party internet site scraped information about the December  1, 2012 eBay sale that contained the mis-attribution naming Ms. Trombetta and reposted the same on its website at least twice.  Because Estate Auctions has no control over  this third party,   Ms. Trombetta  had difficulty removing this information from the website.* A  settlement conference  in the spring of  2019  before Judge Abrams  was unsuccessful with an offer of  one hundred dollars.   After the unsuccessful settlement conference,  Plaintiff  filed on  April 24, 2019 in Doc. 22  my  EAI requests for production of the 12 photos of the oil,  the  red signature etc. in  order to lower the settlement amount and to attempt to facilitate a resolution for this case. to no avail or production. Upon Judge  Abrams  ruling,  Plaintiff was  permitted  to  Amend my initial  complaint to include  WorthPoint  Corporation.   In  April 2022,  EAI  produced evidence in EAI000011  thru  to   EAI00019,  a signature in red pencil which has a  different spelling than the Plaintiff.   Additionally Plaintiff  produced my signature and print on or  around the year 1972.   In reviewing the initial  Discovery  responses  from both Defendants, Plaintiff 's  filed a Motion to include  Fraud on May 18, 2022.  Plaintiff  's Motion filed in Doc.224. was to   Amend my Complaint, to Include Fraud and  request Permanent  Injunctive Relief . Judge Cave's  Order denied without prejudice Plaintiff's Motion with the possibility of filing an amended complaint at the end of Discovery, hence the filing.

# SA144

## PLAINTIFF'S  PROPOSED  AMENDED  COMPLAINT

## TO  INCLUDE  FRAUD  BY  EAI  AND  NORB AND MARIE  NOVOCIN

### FIRST  DEFENDANT ESTATE AUCTIONS INC.  AND  NORB AND MARIE  NOVOCIN

The Plaintiff  inclination to include Fraud 9 (b) harkens  back to Document  29  filed on December 3, 2019.  Plaintiff brings to the Court's attention Page 2 and  3 of 16,  in  Plaintiff's  December 3, 2019 filing.  **EXHIBIT #1** Doc. 29  page2   and  **EXHIBIT # 2** and  **EXHIBIT #3 in**  Doc. 33 filed on January 17, 2020 Page 14 - Relief #4 Identity Theft on a  Public Platform.     The Identity  Theft and The Assumption Deterrence Act as each separate  law or  claim  applies to one  or both Defendants and is within the statues  of limitations.  The Photo of the signature"A. Trombetta" that is not of the hand of the Plaintiff,  had "copyrighted work licensed  by WorthPoint".    It is a  fact that the Plaintiff never signs in oil just the first letter of Plaintiff's   first name. This  constitutes "Identity Theft"  The inclusion of Plaintiff' self authored biography with detailed personal facts and life events specifically known and experienced by the Plaintiff alone renders these personal facts as "personal data"  The fraudulent use of my personal data next to  a fraudulent signature "A. Trombetta"  circulated on the world wide web renders this  as Identity Theft.

**Definition:**   I·den·ti·ty theft  noun: **identity theft**; plural noun: **identity thefts**

1.  the fraudulent acquisition and use of a person's private identifying information, usually for financial gain.
2.  **Identity theft** and **identity fraud** are terms used to refer to all **types of crime** in which someone wrongfully obtains and uses another person's personal data in some way that involves **fraud** or deception, typically for economic gain.

1.  18 U.S. Code §1028. Fraud and related activity in connection with identification documents, authentication features, and information (a) Whoever, in a circumstance described in subsection (c) of this section  1) knowingly and without lawful authority produces an identification document, or a false identification document; (2)knowingly transfers an identification document, authentication

**SA145**

feature, or a false identification document knowing that such document or feature was stolen or produced without  lawful authority;

2.  Under the Identity Theft and Assumption Deterrence Act, it is a federal crime when a person

"knowingly transfers or uses,  without lawful authority, a means of identification of another person

with the intent to commit, or to aid or abet, any unlawful activity that constitutes a violation of

Federal law, or that constitutes a felony under any applicable State or local law."

EAI used Plaintiff's biography to facilitate an eBay sale for personal financial gain.  WorthPoint

Corporation listed the fraudulent eBay sale of the 1972 Oil Painting on their website which offers a

membership for sale  that allows customers to view the sales records and prices of sold items.   Both

Defendants used Plaintiff's self-authored biography  for the purposes of financial gain.

Plaintiffs  seeks a  Motion for  Leave to file my  Propose  Plaintiff's  Amended  Complaint, to

streamline this action when the Plaintiff  pleads factual content that allows the court to draw the

reasonable  inference that  all the  Defendants  are  liable for the consistent and willful fraudulent

misconduct  alleged in this filing.  Granting  Plaintiff's Motion to  Amend  Plaintiff's  Complaint,

allows the  Plaintiff to submit  new evidence verifying  the  fraudulent  offenses described  below,

while demonstrating   the justification for the Plaintiff's  need to warrant  legal action against  both

Defendants.   All  Defendants,  prior to litigation  have willfully contributed to  displaying and

purporting on the internet,  absurd facts ( 4 ft painting painted  at age 9), altering information

adversing effecting Plaintiff's  income producing ability and reputation  and creating  falsities to

include 1) a photo of false  signature misattributed  to Plaintiff   2) misrepresentation  of my

biographical history  3) visual  circulation on the internet  of   false  copyright and licensing claims

by WorthPoint Corp.   4)  false, misleading claims  and association of the  Plaintiff's name and

biography with EAI, eBay and WorthPoint Corporation and  5) a damaged 1972  painting  too large

**SA146**

to paint at age nine. The seven Counts of Fraud described below begin chronologically and end in the order of importance.

**1) FRAUD ~ COUNT I ~ DEFENDANTS' KNOWN FALSE WRITTEN MISREPRESENTATION FRONTAl SIGNATURE "A. TROMBETTA" PHOTO**

The first false written misrepresentation of significant consequences pertains to the only visible photo that appeared in the ad for the 1972 Original Oil Painting Man With Red Umbrella that was misattributed to the Plaintiff. The photo appears to be a signature in black oil paint on a canvas. Plaintiff has always regarded this signature as difficult and inclusive to be perceived as " A. Trombetta" It appears I am not alone. In the Sept. 21, 2022 Novocin deposition, WorthPoint's attorneys posed this question to Mr. Novocin , _" From your experience, what is the importance of a writing being on the back of the stretcher as opposed to the painting itself, if any ? "_ Defendant Norb Novocin on page 37 and 38 duly stated on Sept. 21, 2022: _" It helps us to understand what the signature was on the front. In other words, the signature on the front of the painting was garbled and it was kind of hard to read, when you turn it over, it had printed out what was and if it were up to me, I would make it almost a law that all the artists had to print out the actual name and so forth… Because some artists_ pictures are so, so hard to read. So this allowed us to be able to look up Trombetta, Annamarie. This one says Maria. I didn't remember it saying Maria, but that's how I looked it up". Plaintiff reminds the Court that the signature "A. Trombetta " was the only photo in the 1972 ad on the WorthPoint website despite the EAI ad claiming that there were 12 photos. The ambiguity of the signature on the front the 1972 Original Oil Painting has been deemed "garbled" by the very person who allegedly created the eBay ad for the 2012 sale. Mr. Novocin affirmed that the signature, that was circulated throughout the internet under my name " was hard to read". Mr. Novocin states this signature was hard to read however

it  had my biography next to it.   It is puzzling  and relative to this case,  that  this photo of the signature survived,  when all the other photos of the painting vanished.  By willfully taking  and included in the  eBay ad for the 1972 oil painting " Man With Red Umbrella",   my name,  my self authored biography with this "garbled" signature,  a public false identity was circulated throughout the internet in my name.  This "garbled" signature  in the photos became a  <u>false identification documented feature.</u>  This  fraudulent  signature acquisition on the oil painting  and use of  the Plaintiff's personal  private identifying information in my biography constitutes identity theft.

As a result the Plaintiff went to my bank to alert my bank and inform them of the signature.  My evidence  as proof is in **Plaintiff'sEvidence 000237.**  I also  put a credit freeze on my credit cards as evidenced i**n Plaintiff's EvidencePlaintiff000248.**  Plaintiff needs  to bring to the Court's attention the question    "Why was a photo taken of this signature?   More importantly  it was a   false misrepresentation.   This false signature  in the EAI ad on WorthPoint's website was listed under my name. Plaintiff is alleging  and assert through  Mr. Novocin  statements that he knew the front, black oil painting signature on the 1972 oil was questionable as he defined it as "garbled" and hard to read. Plaintiff sets forth these reason  in support of  my  allegation of  intentional misrepresentation.

2)   **FRAUD ~  COUNT  II ~ DEFENDANTS' KNOWN  FALSE  WRITTEN MISREPRESENTATION  OF ARTIST  DUE TO THE AGE AND YEARS STATED**

Plaintiff brings to the Court's attention  the screen shot box below taken from the original text of the  1972 EAI eBay ad for the 2012 sale.  Duly documented  is the year of Plaintiff's birth is in the EAI eBay  ad  an is indeed  written correctly as 1963.  The painting is dated 1972,  Based on the math, the age of the  Plaintiff and the height of the Plaintiff at age nine,  it is  impossible for Plaintiff to be the artist.   Plaintiff alleges that since Norb Novocin  found, sold and created the text

**SA148**

for the EAI eBay sale Mr. Novocin was aware that the Plaintiff year of birth was 1963. Mr.

Novocin chose to include the year of 1963, in his advertisement description. The year 1972 was

> "Gifted" 1977, "Painted" 1972. To our eyes it looks like it is after the style of Andre Kohn. It is quite large being approx. 48 1/2" tall and 17 1/2" wide. We are calling it shabby chic condition as it has a tear in the canvas, about 5/8" long just to the left of the man's knees, but still such a great painting. For those not familiar with Trombetta, here is information about her from off AskArt as they got it from her website: Annamarie Trombetta (1963 - )

designated as the year the oil was painted. It is evident and based on the exact statements in the text

that Defendant Norb Novocin wrote and noted , Mr Novocin it is verified that he had to be aware of

the Plaintiff's age. Therefore, the fact that Plaintiff was nine years old when this painting was

dated is duly known by [the] defendant . This text in the EAI ad is a prime element of intent to

commit fraud exemplified and unequivocally exhibited in writing by Mr. Novocin. He knew or

should have knows the facts and age Plaintiff. Intent to willfully commit fraud or willfully deny

liability is duly revealed with the years of the artist's birth and the painting date in such close

proximity to one another in the EAI ad. Circulating a low bid, questionable claim of attribution to

sell a damaged painting on the internet caused Plaintiff professional and financial embarrassment

and injury to the Plaintiff reputation and name. There is no basis for believing that the

information is factual and in this case it is obvious that a nine year old cannot paint a four foot high

painting. These elements of Fraud are evident by the alleged facts claimed and documented in the

EAI ad. The inclusion of the description," shabby chic" lacks professionalism and the term "

Gifted" implies that it was not sold. The low bid price, given it's size, diminishes my actual prices,

my name or "brand" and implies I use inferior materials due to a tear in the canvas.

3) **FRAUD ~ COUNT III ~ DEFENDANTS' KNOWN FALSE WRITTEN MISREPRESENTATION OF NAME ANNA MARIA SIGNATURE IN RED ON THE BACK OF THE CANVAS ALSO CONSTITUTES "FALSE ADVERTISING"**

**SA149**

The third  count of fraud for a known false written misrepresentation  is evident in  the description for the 1972  Original Oil Painting Man With Red Umbrella and the false, misleading and misrepresentation by EAI  and Norb Novocin  claims of  my full name on the back of the 1972 oil painting. The  use of my name as the artist adversely impacts the quintessential, vital earning potential that a visual artist has—- the pristine  notoriety of one's name.  The  well respected  reputation  of an artist's name  known  for  achievements  commands  a  greater  demand for one's artwork and ultimately increases one's price point and earning potential.   In the EAI ad,   Plaintiff  notes to the Court  the careless misspelling of my last name by Norb Novocin in the EAI ad " *This is by Annamarie Trombett [ e ]-* spelled with  an E at the end.  This  was duly noticed by one of my potential witnesses, Alex Raspa who produced a letter that remarks on  such an embarrassing  spelling mistake as well as the date of the oil and my listed year of birth.  This   spelling  mistake and the content in the EAI ad prompted Mr. Raspa  to contact me  to alert me  about the  false listing on the internet. His comments are evidenced in **Plaintiff's Evidence 000241.**  The  incorrect spelling of my  first name  is  documented  by Mr. Novocin  and was  displayed  to the  public.  I have noted over time,  a pattern  of  misspellings, incorrect facts, vague  inferences, willful   concealments or delays in purporting  a single  responses to Plaintiff's  reasonable and direct questions.   EAI Defendants have  demonstrated  a   plethora of willful concealments. One in particular importance is Mr. Novocin's  description, spelling  and location of a signature in "red"  not stating it was in pencil.   *"It is signed on the bottom,    but on the back it has written in red on the stretcher,   Annamarie  Trombetta " Gifted " 1977 "Painted" 1972.*   The red signature  in colored pencil not oil  is highly  suspect as a legitimate signature due to the fact that it was an oil painting,  not a work on paper.  As  aforementioned  Norb  Novocin could not discern the alleged name "Trombetta" from the front  signature on the canvas.  Novocin claims the signature in red pencil , is the source,  the reason and the  foundation upon  which  Mr.  Novocin  misattributed   a  <u>" run of the mill painting"</u>   as was  described  by  Mr. Novocin,   on page  43 of his deposition.   Based  on  limited information,  one source of reference and a willful affirmation  that he did not  look at Plaintiff's  website, Mr.   Novocin  designated my biography and name to attribute to the oil painting found in an attic  in

**SA150**

Chicago.   For the record I have never been to Chicago nor do I know or sold  an artwork to anyone in Chicago. Mr. Novocin's one stop  research, demonstrated  negligence even reckless  behavior by omitting any other  research  via  the internet or the Plaintiff's website.   He failed  to look up any other images and  failed to  confirm  or contact the Plaintiff  to validate if I was  was the artist for his   painting that Mr. Novocin  named " Man With Red Umbrella".   The fact that  the alleged source used by Mr. Novocin  did not  feature  any  visual images, other signatures or prices for sold artwork are important issues  to overlook.  It is not  plausible for any  person to believe Mr. Novocin's rational,  if any, given his   limited, attempt to search for any other credible facts other than  AskArt.

Aside from all this,  the long awaited production of the red signature has at least three misspelling in relation to the Plaintiff.  Moreover and what is important to note is, within the text of the EAI ad the name " <u>Annamarie"</u>   is  written as all one word,   without  a space in the middle and each spelling of Annamarie  ends in the  letter   " e " at the end.   The  name " Annamarie "  appears <u>six times</u> in the text of the EAI ad  and all the spelling is  consistently one word, not two separate names and not with the letter [ a ]  at the end—marie  not Maria.  The text spelling contradicts the red signature spelling.

On page 53 of Norb  Novocin's  Sept.21, 2022 deposition, he states

 "  *Once I saw the name on the back, I went to askArt. I put in the name  Trombetta and Annamarie come up. It 's an unusual nam*e. *I have never come across it before.  I did not—-I do not remember seeing  Anna Mari[A ] on the back of the painting,   so I just assumed it was the same person.* Mr. Novocin continues  on page  54 of his deposition *:      " I saw it had a biography, but no record of any paintings ever been sold, which  I'll   just leave it  ar that. There's no records of any  painting been sold on secondary  market.    I grabbed  the biography and used that in the listing.   Because there was no records of  any painting to be sold,   I  wanted people to be able to associate  somebody of value to the painting and so I went out and found  another artist on askART that has painted before with umbrellas.  I said it's much in the stye of and I  mentioned that other person.  So that way people can look it up and say, oh it's  like that person. They paint with umbrellas also. That way, people do some research  on it.  They see something of   value and  are  willing to spend more money."*

# SA151

Defendant Norb  Novocin is referring to artist Andre Kohn.  Mr. Novocin  statement in his deposition demonstrated that he looked up another artist who paints umbrellas but    WILLFULLY   FAILED to look up the  Plaintiff 's  credentials  or website to see if  the  Plaintiff painted umbrellas which to date, I  have not. BELOW  is the EAI statements.   Mr. Novocin's  negligence  and omission to look up  the  Plaintiff  on the internet  was a conscious decision  in the same way his decision and reason to  include Andre Kohn  and associate the artist's name with the Plaintiff.   Mr. Novocin's  rational was to add  "Value" so the buyer is willing to spend  more money.    ". Mr. Novocin clearly states his incentive  to associate the work of Andre Kohn was for financial gain.     For the record, a secondary market does not

> This is by Annamarie Trombette. It is signed on the bottom, but on the back it has written in red on the stretcher, Annamarie Trombetta "Gifted" 1977, "Painted" 1972. To our eyes it looks like it is after the style of Andre Kohn. It is quite large being approx. 48 1/2" tall and 17 1/2" wide. We are calling it shabby chic condition as it

give an artist any financial income or gain in reputation  unless the secondary market or  auction house is one of artistic  notoriety  such as Sotheby's  or Christies'  or at a Museum Auction  where  I  have had  my works   sold at auction. I might add that my works  were bid on and  sold  for a higher price  at auction, than my personal  price point.

Moreover, to add to this important  count for Fraud  is Plaintiff's  first legal filing and  documentation of Plaintiff request for  Defendants  production of  the signature  in red duly  noted in the  1972  Original Oil Painting Man With  Red  Umbrella.  My request is in **Doc.  22 filed  April 24 2019 on  Page 10 of 38 now Plaintiff's Evidence 000387- I.**   In April 2019,  after a  disappointing settlement  conference with Defendants who  failed to  offer anything  greater than one hundred dollars,  Plaintiff  offered a  potential resolution . In  response to this disappointing conference,  I filed a  letter  offering to reduce the amount of  settlement   if the of items listed in the EAI  such as the 12 photos, the red signature, the buyer etc. were  produced.   Plaintiff's  2019  conditional offer request in Doc. 22  did not produce  any responses or production of the red signature. from EAI  Defendants,   nor attorney  Anderson Duff. Number three on page 10 now bate stamped as **Plaintiff's  Evidence  000387I** lists as No. 3. my request for  " *A photograph of the actual signature in  red described on the back of the painting.* "     It  took an additional  three years  for EAI to  produced  photos  of  the signature in red which is in pencil and clearly  misspells  the Plaintiff's name to render the signature verifiably  not the  Plaintiff's.

**SA152**

The LOSS of time from Jan. 2017 to April 2022 is five years, three years to includes litigation. The willful delay and concealment of the misspelled red signature was obviously known and purposely withheld to prolong and hopefully run out the time for the statues of limitation for fraud. The red signature conclusively proves I am not the artist. Moreover from 2017, when I first informed Norb Novocin that I was not the artist, the Defendants have not produced the artist who painted Man With Red Umbrella nor the signer of this painting. The fact that an artist has not been identified supports Plaintiff assertion for willful concealment from 2017 to 2022. The willful and deliberate failure to respond or reasonably reconcile before or during this lawsuit supports Plaintiff claims of willful intent to commit and conceal fraud. The Defendants false material misrepresentation, material omission and material delay of such s pertinent detailed fact, ie the red signature, verifies a false attribution and that the Plaintiff is not the artist. Aside from this Defendants objected to Plaintiff request to know the location of the signature in red several times Defendants failure to produce the location caused Plaintiff to subpoena the woman who possess the painting. The signature is located midway on the top stretcher bar of a four foot painting. All of the aforementioned constitutes willful concealment. Below are EAI's attorney Mr. Duff response submitted to Plaintiff on April 8, 2022.

**PLAINTIFF'S REQUEST NO. 2.8:**

*"Produce the photos of the Back Views of the entire painting entitled "1972 Original Oil Painting Man With Red Umbrella that was Misattributed and allegedly Signed Annamarie Trombetta for Estate Auctions Inc. For Example: What is the color of the Canvas. Plaintiff is requesting as was duly stated in Estate Auction Inc. 2012 advertisement in the - DESCRIPTION-" the exact location where it is written in red on the stretcher, Annamarie Trombetta 'Gifted' 1977, "Painted" 1972".*

**EAI DEFENDANT'S RESPONSE TO REQUEST NO. 2.8:**
*"Defendants object to this request as duplicative of Requests 1.3, 1.4, and 1.5. Subject to and without waiver of any objections, Defendants will produce responsive, non-privileged documents in their possession, custody, or control if any exist."* Moreover, Plaintiff, on April,8, 2022 produced my childhood signature in print and in script on or

around the year 1972 and is numbered in my exhibits as **Plaintiff Evidence 000316** and **Plaintiff Evidence 000260** which is a full page of my script and print on or around 1972 . At the end of the summer in **Plaintiff's Evidence 000495** this exhibit reveals how Plaintiff printed and scripted the

# SA153

letter " A" .  All my signatures in my produced  evidence verify   that I am not the artist nor did I sign the 1972  oil.   Despite production of  verified proof, on Nov. 23, 2022 attorney Anderson Duff rejected  settlement  talks.   Once again,  Plaintiff  filed this lawsuit due to the willful denial by the Defendants to  accept the fact that I am not the artist and  that the Defendants cannot falsely attribute my name to a  painting  they sell  that I did not create.( This is a textbook definition of Visual Artist's Rights Act).   Since the  1972 oil painting does have my name on it,  over  time,  I do  not  wish   for a   "run of the mill 1972 oil   painting" ,  as Mr. Novocin  classified this oil painting,   to be named or   in  questioned as part of  the my oeuvre, or   attributed  to my name as one of artist.   At  this point in the case  and with the   evidential facts duly  documented,  any  reluctance in resolving this lawsuit constitutes  fraud and direct  S **190.20**   False  advertising.

A person is guilty of false advertising when, with intent to promote the sale or to increase the consumption of property or services, he makes or causes to be made a false or misleading statement in any advertisement or publishes any advertisement in violation of chapter three of the act of congress entitled "Truth in Lending Act" and the regulations thereunder, as such act and regulations may from time to  time be amended, addressed to the public or to a substantial number of   persons; One of the main  elements of fraud is

* 　　**1** -A lie or falsehood is made.
* 　　**2**- By the defendant with scienter, and the statement is false, or that there is no basis for believing   that the information is factual.  It is not possible that I at 9 years old painted a four foot high painting.
* 　　**3**- The defendant intends to cause the plaintiff to do or not do some particular act based upon their falsehood or lie.  Plaintiff  lost a great deal of time contacting both Defendants in order to inform both parties that I am not the artist and that the advertisement is false.
* 　　**4**- Harm results from the plaintiff's reliance on the defendant's statements  Causation loss is "the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.  As stated Plaintiff as a result of this listing lost a sale of artwork to a prominent collecter.  Plaintiff also lost contacts made to galleries and gallerists who were interested in  Plaintiff's work for  future gallery representation and career advancements, all of which were lost due to the false association of my name to a  large, damaged painting allegedly sold online on eBay. The eBay platform is not deemed  professional as other online art platforms such as  Artsy,  Satchi Art  or Artnet etc.

**4)   FRAUD ~  COUNT  IV ~ DEFENDANTS' KNOWN   WRITTEN REPRESENTATION OF  PLAINTIFF 'S  WEBSITE AND THE   NEGLIENCE BY DEFENDANTS  IN  NOT  VIEWING  OR  NOT CONTACTING THE  PLAINTIFF**

# SA154

Page 21 of 82

Plaintiff brings to the Court's attention the next issue that is duly documented in the EAI eBay ad for the 1972 oil painting Man With Red Umbrella.  Clearly referenced and written in the statements in the box below is the Defendants reference to my website ,right next to my full, correct name and birthyear.

> condition as it has a tear in the canvas, about 5/8" long just to the left of the man's knees, but still such a great painting. For those not familiar with Trombetta, here is information about her from off AskArt as they got it from her website: Annamarie Trombetta (1963 - )

EAI is responsible for creating the text in their ad in order to sell their painting on eBay.  Plaintiff  had nothing to do with creating the painting, therefore it stands,  I  nothing to do with consenting to  the use of the  text in the ad.   The Defendant willfully selected  what they chose to include in their ad which states that I had a website.  Plaintiff addressed  asked Defendants  in my Discovery why they did not contact me since they knew I had a website. in  my  first and second set of Interrogatories.  In  April  Plaintiff received a full  objection  and in August  Defendants also  objected and stated   Defendants object to this Interrogatory insofar as it asserts that  Defendants knew Plaintiff had a website.    Below is Plaintiff's interrogatory and direct response  set forth on August 3, 2022 by EAI Defendants who delayed responses for over a month and forced the Plaintiff to send several emails in pursuit of  Defendants responses.

**PLAINTIFF'S INTERROGATORY NO. 19]:**
Explain in DETAIL why Norb and Marie Novicin did not contact, phone or email the Plaintiff. Duly stated in the Estate Auction's ad is the claim " AskArt got the biography from Plaintiff's website" proving Estate Auctions Inc/Norb and Marie Novicin knew Plaintiff had a website.

**RESPONSE TO INTERROGATORY NO. 44 [PLAINTIFF'S INTERROGATORY NO. 19]:**
Defendants object to this Interrogatory because it exceeds the number of interrogatories one Party may serve on another Party pursuant to Federal Rule of Civil Procedure 33(a)(1). Defendants object to this Interrogatory insofar as it asserts that Defendants knew Plaintiff had a website.

Additionally, Plaintiff adds an affirmation  by Norb Novocin from his Sept. 21, 2022 deposition regarding Plaintiff's website.  When asked by WorthPoint's attorney the following question:

"*Did you ever see the website of artist Annamarie Trombetta?*"

Mr. Novocin affirmed on page 58 " *To this day [Sept. 21.2022] I have never been to that website."*

On the  following on  page 59 Mr. Novocin  was asked by WorthPoint's attorneys  if he "*copied the entirety of the biography on askART to include any listing or something else?*"      Mr. Novocin

# SA155

stated  *"It happened  entirely there"*    and when asked  by WorthPoint's attorneys

 *"Did you edit the biography in any way, shape or form?"*    Mr. Novocin   stated    *"No."*

Mr Novocin  stated on page 60 and 61, in his deposition,    *"When I compose a listing for eBay, I do what I call finding a hook to hang my hat on. What story am I going to tell that  allows  people to dig deeper into their wallet to spend more money.*

1) The first issue  Plaintiff brings to the Court's attention is the  length of  Plaintiff's biography used  in the EAI eBay ad for the 1972 oil painting. Both Defendants, WorthPoint Corp and EAI  now claim years later,  that my  full biography was used,  despite the visual  evidence  of the listing which verifies that Plaintiff's biography was truncated.  What disproves their claim is the authentic  visual proof of their ad which documents the  truncation.   My emails to Will Seippel dated Feb.  20, 2016 and my email dated Jan. 4, 2017 also document the full online text of the 1972 eBay EAI ad that was on the website of WorthPoint.   EAI Defendants failed to produce any visual  documents to substantiate any of  their claims .  WorthPoint as well failed to produce the original ad on the worthpoint.com website nor did WorthPoint produce any computer data.  It is a known fact that despite deleting the data, the hard drive still contains the information. Both Defendants  claim  they no longer have any  computer data for the internet posting.  The failure by both Defendants to produce  proof of their  computer data adds to the  number of  Defendants claims that are devoid of any  tangible proof.  Plaintiff is reliant on both  Defendants to produce such data and documents which is a  key element  in a claim for fraud.  Another  element  of fraud  the exhibits  that  the Plaintiff is justified in relying on the  falsehoods or  lies told by the defendant.  It is the  complete absence of  all evidence by EAI  and WorthPoint for and of the original eBay EAI advertisement on WorthPoint's website  that  makes their  claims impossible to believe.  Concurrently,  it is the Plaintiff's  positive visual proof that  supports my obvious claim that my full bio was truncated.

Plaintiff   has consistently written  and  filed the actually EAI eBay ad for the 1"972 Oil Painting Man With Red Umbrella"  in all my filings  with the Court which clearly documents that Plaintiff 's biography was truncated and mutilated mid sentence.  The last statement in the EAI/ WorthPoint ad is in a screen shot below and has four  dots  ….  depicted, and the rest of the sentence is missing.

Written under  the truncated sentence is a listing of "Similar Items" with  "No Image " and the title 1972 Original Oil……Red  Umbrella that is next to a gray square under the NO  Image Icon seen below in the boxed insert.

2)   The second issue is the documentation  that the Defendants listed the fact that I had a website. Mr. Novocin willfully denied ever visiting my website. This was and still is his conscious choice not to visit my  website  which is  duly listed in the ad, an ad  he wrote and composed as documented in his deposition.  Mr. Novocin's  negligent choices  duly affirmed,  are the root cause of Plaintiff's false misrepresentation.    Defendants objected to Plaintiff's direct interrogatory  question,  to state why EAI Defendants did not contact me to confirm their attribution. Their objections  further verifies a   willful negligence and a willful intent to conceal their negligence indicative of the character of one 's intent to willfully commit fraud, with  the intent , to get *" people to dig  deeper into their wallet to spend more money."* as Novocin stated.

The Defendants' misrepresentation, with visually displayed text  of  my my self  authored biography without my  authorization  was conjoined with  the written  notation of Plaintiff's website. This  a prime example of  identity theft.  Defendants took specific  personal,  self identifying  facts and information only applicable to the Plaintiff  and used it to  increase the financial worth of a damaged painting . The sole purpose of   the EAI  eBay ad is for commercial use and to render a greater  financial gain for the 1972 damaged painting.   Plaintiff's sole purpose for  bringing this legal action  against both Defendants is to impose  legal liability to this one action and to declare legally  remove my name from the 1972 oil painting that bares the red pencil signature.  Additionally it is also to impose  permanent inductive relief and  to  legally  prevent  any and   all future fabrication and false  attributions  by both  Defendants from  plaguing the Plaintiff.

5) **FRAUD ~ COUNT V ~ DEFENDANTS' WRITTEN DECLARATION MISREPRESENTATIONS TO WORTHPOINT DEFENDANT AND PLAINTIFF**

In  April 2022, EAI 's  attorney Anderson Duff  misrepresented to the WorthPoint  Defendants and Plaintiff  a willful  false misrepresentation and denial that documents existed  relating to  the research  conducted by EAI Defendants  in determining the authorship and attribution of Artwork.

**SA157**

Page 24 of 82

WorthPoint's attorneys requested by EAI Defendants documents regarding conduction research on

Plaintiff's attribution of the artwork. Mr. Duff' claimed no such documents exit.  SEE BELOW

**WORTHPOINT' S REQUEST NO. 3:**
*Documents and Communications relating to the research conducted by EAI Defendants  in determining the authorship and/or attribution of the Artwork.*

**EAI  RESPONSE TO REQUEST NO. 3:**
*No such documents exis*t.

Mr. Duff has willfully omitted producing or referencing the Court filed documents in   Doc.56

filed  June  26, 2020 Declaration of Norb Novocin Page 1 of 4  Novocin declaration includes four

pages.   Mr. Novocins Declartion is in **Plaintiff Evidence 000174,  thru Plaintiff000176**

Three  statements below assert research conducted by EAI Defendant to determine attribution.

*4. As was our typical practice, 1 conducted research t the Painting using online  research tools designed for that purpose to identify the artist who signed the Painting  using online research tools designed for that purpose  such as Ask.Art,com,,*

*5.  When researching the Painting, I found only one artist  whose name matchced "A. Trombetta" and that artist was the Plaintiff, Annamarie Trombetta. Because —Annamarie Trombetta" was written on the back stretcher of the painting, we concluded that Plaintiff created the Painting.*

*6. Before seeing the name Annamarie Trombetta on the Painting and researching the artist so that we could create accurate listing for the Estate Auctions storefront describing the Painting.  1 had never heard of Annamaric Trombetta*

Mr. Duff has willful omitted producing or referencing the Court filed documents in Marie

Novocin'sDeclaration Doc. 57  Filed 06/26/20 Page 1 of 4   to WorthPoint's attorneys and to the

Plaintiff   **in**   Marie Novocin's Declaration is in   **Plaintiff's Evidence 000332,  thru  Plaintiff's**

**Evidence 000335**

MARIE NOVOCIN   DECLARED  ON   JUNE 26, 2020 :

*4. As was our typical practice, my husband Norb conducted research to identify the artist who signed the Painting using online research tools designed for that purpose such as AskArt.com.*

*5. When researching the Painting, my husband Norb found only one artist whose name matched "A. Trombetta" and that artist was the Plaintiff, Annamarie Trombetta. Because "Annamarie Trombetta" was written on the back stretcher of the painting, we concluded that Plaintiff created the Painting.*

*6. Before talking to Norb about his research concerning the Painting, I had never heard of Annamarie Trombetta.*

**SA158**

EAI  Defendants and their attorney willful omitted the production and request by WorthPoint

request .is yet another example of willful denial and or concealment of any evidence that proves EAI

adequately researched the authorship and attribution for the 1972 Original Oil Painting Man With

Red Umbrella.as declared by both Defendants in their Declarations.

Moreover, both Maria and Norb . Novocin  Declarations states in the source of  Mr. Novocic created

eBay listing for the 1972 oil using Plaintiff's bio was from my biography listed on  askART.

**NORB NOVOCIN  DECLARED  ON   JUNE 26, 2020 :**

*7." I used biographical information about Plaintiff that 1 found on AskArt.com to ensure that the
Estate Auctions eBay listing for the Painting was as accurate as possible. All of  the information
about Plaintiff that l included in the eBay listing was gleaned from <u>askART.com</u>".*

**MARIE NOVOCIN DECLARED  ON   JUNE 26, 2020 :**

*7. "Estate Auctions used biographical information about Plaintiff that Norb found on AskArt.com to
ensure that the Estate Auctions eBay listing for the Painting was as accurate as possible. All of the
information about Plaintiff that Estate Auctions included in the eBay listing was gleaned from
<u>AskArt.com</u>."*

 Duly  documented in the Terms of Use on AskART's website is the clear statements that users

*"may not modify, create derivative works from.   participate in the transfer or sale of, on the World*

*Wide Web or in any way exploit the site or any portion thereof for any public or commercial use*

*without express written permission  of askART.   You are responsible for complying with all*

*applicable laws. rules and regulations regarding your use of any such downloaded Content.....*

An excerpt from the the askART Terms of Use is above and below is a more fulsome quote. .  The

askART Terms of  use  are in Plaintiff's Evidence 000668  Plaintiff's Evidence 000669.

askART owns, controls, licenses or has the right to use and provide the Site and all material on the Site, including, without limitation the askART Artist database, text, images, artist biographies, price valuation reports, articles, photographs, illustrations, audio and video clips, (collectively the "Content"). The Site is protected by copyright as a collective work and/or compilation, pursuant to U.S. copyright laws, international conventions, and other copyright laws. askART is the owner of the copyright in the entire Site. askART owns a copyright in the selection, coordination, arrangement and enhancement of the Site. You agree to abide by any and all copyright notices, information or restrictions displayed on the Site. askART does not grant permission to users of the site to reproduce images of original works of art.

You may not modify, create derivative works from, participate in the transfer or sale of, post on the World Wide Web, or in any way exploit the Site or any portion thereof for any public or commercial use without the express written permission of askART. You are responsible for complying with all applicable laws, rules and regulations regarding your use of any such downloaded Content. In the event of any permitted copying, redistribution or publication of material from the Site, no changes in or deletion of author attribution, trademark, legend or copyright notice shall be made.

**6)   FRAUD ~ COUNT VI ~ SIXTH FALSE WRITTEN MISREPRESENTATION**

**IN SWORN DECLARATION OF NORB AND MARIE NOVOCIN**

**NORB NOVOCIN DECLARED ON JUNE 26, 2020 :**

*1.   Together with my wife and co-defendant in this case ,Marie Novocin, I owned and   operated Estate Auctions, Inc.  from April 23, 2012. until 2019*

**MARIE NOVOCIN DECLARED ON JUNE 26, 2020 :**

*1. Together with my husband and co-defendant in this case, Norb Novocin, I owned and operated Estate Auctions, Inc. from April 23, 2012 until 2019.*

As written above the Declaration of Norb Novocin is  in   Doc.56  filed  June  26, 2020 Page 1 of 4  Novocin declaration includes four pages.   Mr. Novocins Declartion is in **Plaintiff Evidence 000174,  thru Plaintiff000176.**  Marie Novocin's Declaration Doc. 57  Filed June 26, /2020  Page 1 of 4  Marie Novocin's Declaration is in **Plaintiff's Evidence 000332,  thru Plaintiff's Evidence 000335.**  The Declarations by Marie and Norb Novocin are the only evidence that they have produced regarding their research on the Plaintiff's identity.  They did not produce any of the 12 photos described in the EAI ad. The production of the painting was a recent photo which does not verify when the painting was sold, since the 2012 photos have not been produced.  Aside from these omissions of evidence, the Novocin deposition reveals that there were three names referenced as Estate Auctions over a period of  years.  The Estate Auctions Inc. name brand was only in the year  *"April 23, 2012 until it went  defunct in July of 2013"* . After July of 2013 Mr. Novocin  stated  in his deposition   Estate Auctions Inc became Estate Auctions LLC.

Plaintiff  brings to the Court's attention the Declaration statements below  referencing the years of Estate Auction Inc. dates of operation  April 23,  2012  to 2019  written and declared by both Defendants Declarations.

Plaintiff  adds that in  both the  Novocin Declarations their  written  statements  made in 2020, these  statements  concerning the years of incorporation for Estate Auctions Inc and no other name contradict with Mr. Novocin's verbal statements that he made on Sept. 21, 2022  by  Norb Novocin

**SA160**

regarding the names of his company Estate  Auctions Inc and Estate Auctions LLC and the years of operation.  The names and years  differ in detail from  Defendants June 26, 2020 Declarations.    In Norb Novocin Sept. 21, 2022 deposition on page 198  Mr. Novocin stated " *We have three different Estate Auctions, Inc.  Estate Auctions Inc. in Florida  started in 2001 and ended in 2012. Estate Auctions in Delaware started April 23, 2012 until it went  defunct.  We stopped using it July of 2013 when we stated Estate Auctions LLC.  That started on July 15, 2013 —-January 31, 2019.*    On page 199  of Mr. Novocin's deposition he  stated     *"We just let it go defunct and Estate Auctions only had from April to July,   April 2012 to July 2013, correct.*    When I  asked if   April 2012 to July 2013 was the time period for the 1972 oil painting sale, Mr Novocin replied  <u>"Correct".</u>  ( on page 199).

      Plaintiff notes to the Court, the propensity  of EAI and Defendants Norb and Marie Novocin within both of their verbal and written  responses,  there is a consistent  pattern of subtle yet substantial  differences,  There is either a complete omission of facts,  a deficiency within their production of evidence, or a similar yet incorrect spelling or incorrect date, close to the original yet is renders thefact or statement "False"  Such is the case with the three names and three dates of incorporation for Estate Auctions Inc and Estate Auctions LLC.

       Below is another example by both Defendants who have made written Declarations which state that the 1972 Oil Painting Man With Red Umbrella was "Gifted" in  **1997**.  The EAI eBay ad and the signature in red on the stretcher bar state "Gifted" in  1977  and not **1997   which is incorrect.**  In like fashion, the Declarations of  both Defendants  state Estate Auctions Inc from April 23, 2012. until 2019 and does  not  state Estate Auction LLC.   The consistent subtle changes are evident in many of statements or production of evidence, most notably in the the three recent productions for the eBay 2012 sales receipt for the 1972 1972 Oil Painting Man With Red Umbrella.  The first production is dated April 27, 2022 and the other two differ in date and visual  elements that Plaintiff will describe in detail below.

**NORB NOVOCIN DECLARED  ON   JUNE 26, 2020 :**
*2. In 2012. Estate Auctions list painting on its eBay storefront that I personally inspected. The painting was signed on the front by "A.Trombetta" and featured an inscription reading "Annanarie Trombetta " "Gifted'* **1997** *"  Painted' 1972" in red along its back stretcher (the Painting).*

**SA161**

**MARIE NOVOCIN DECLARED  ON   JUNE 26, 2020 :**

*3. In 2012, Estate Auctions listed a painting on its eBay storefront that my husband Norb personally inspected. The painting was signed on the front by "A. Trombetta" and featured an inscription reading "Annamarie Trombetta  "Gifted' **1997** "   Painted' 1972" in red along its back stretcher (the "Painting").*

Plaintiff addresses  two statement made on Page 3 of  Doc. 57 filed on June 26, 2020 which is the Declaration by Marie Novocin.     In 2016,  Plaintiff  saw that he reposting for the 1972 oil painting was back on the internet after months of hard work contacting eBay and WorthPoint Corp to remove this false listing. In  2015 and 2016, he only source I never contacted was EAI due to eBay informing the Plaintiff that the 2012 eBay sale was "Undefined".   Upon discussions with a colleague and collector, I thought it best to have one of my former  collector's   Teri Meissner contact EAI to see if they had any information as to why the post was on the internet and  if EAI had  re posted the 1972 sale again etc.  Ms Meissner had one  brief chat and as advised by Marie Novocine  sent one email.   One phone call and one email is the extent of Teri Meissner's  minor involvement,  one  so minor she does not even remember. When Teri did not receive an email response from EAI, Plaintiff on Jan. 10, 2017 phoned EAI. I introduced myself and stated that Ms. Meisner had contacted her. I informed Marie Novocin that I am an artist however I did not paint their  1972 oil painting sold on eBay.  I asked Mrs. Novocin if EAI had anything to do with the current  internet link which was appearing under my name again.   I asked if I could have the owner  of the painting's contact information. Then I asked if they had any of the 12  photos etc. I also informed  her that the photo signature was not mine.  Shortly after Norb Novocin phoned me back which I found peculiar and unnecessary after conversing with his wife. I  and decided to record the conversation. His first statement explained his call " I have a wealth of no knowlege regarding this painting" Below are Marie Novocin's  statements from her Declaration. There were two calls one from Ms.  Meissner and one from the Plaintiff.  Again, Plaintiff called on Jan. 10, 2017 from home phone and I just  like the Novocins have  caller ID and as stated I  identified myself  stating  the misattribution and the reposting of the 1972 internet link as my purpose for contacting EAI.

*11.  I did not think about the Painting again until I received a phone call from a person identifying themselves as Teri Meissner in January 2017. Meissner followed up with an email on January 6, 2017. Meissner did not say anything about the Painting be misattributed. Meissner's sole stated concern was the chain of ownership of the Painting. Meissner demanded that Estate Auctions provide her with the name and contact information for the third party who purchased the Painting in 2012. Despite several additional phone calls from the person calling themselves Meissner, they never once stated that the Painting had been misattributed and focused solely on the identity of the purchaser of the Painting.*

*13. After roughly the third phone call we received from the person identifying themselves as "Meissner," my husband Norb saw that the caller ID identified Annamarie Trombetta and not Teri Meissner.*

The statements above by Marie Novocin falsely imply that their were *" several additional phone calls"* made by Teri Meissner when there was only one phone call.  As a result of the phone call an email was sent as suggested by Marie Novocin.

Plaintiff notes to the Court that in June 2020 EAI Defendants filed a Motion to Post a Bond against the Plaintiff in the amount of twenty thousand dollars.   The Declarations  that have false information were filed in support to impose a financial burden unto the Plaintiff.  Plaintiff's has explained in  many  documents, on Jan. 20, 2017 I phoned and identified myself.  I  informed Norb Novocin  and Marie Novocin that I did not create the 1972 painting, I  stated that his sold painting was  fraud . When Mr. Novocin asked me " *why is that fraud,?* I simply stated " *I did  not do this painting"*.   Despite informing  both of the  Novocins,   first  by a phone call to Marie and then Norb  Novocin response  phone call to   the Plaintiff, Plaintiff still hired an attorney to inform both parties,   in writing,   of the  infringements  upon my name, my rights and the biographical copyright  infringements.  As  aforementioned in Doc. 22 filed on April 24, 2019, Plaintiff requested the 12 photos, red signature etc and did not receive any  response.  Defendants' non response and non production to this Motion,  of requested items mainly the signature in red,   caused the Plaintiff  to lose  another three years of time.   In like fashion, in June 2020 Plaintiff lost   income due to my legal response to EAI's Motion to Post a Bond for twenty thousand dollars against the Plaintiff.  I had to turn down a  commission due to  Plaintiff's response required  time sensitive  answer to Defendants Motion to Post a Bond.  In like fashion Plaintiff  had just   begun  a private  tutoring

**SA163**

session  and had to postpone my availability until my Response Motion  was filed.  As a result the student decided to take an art  lessons elsewhere.

## 7)   FRAUD ~  COUNT  VII ~   FALSE  WRITTEN  MISREPRESENTATION OF  THREE EBAY RECEIPTS   FOR ONE  SALE  IN 2012 FOR 1972 OIL PAINTING

Plaintiff notes to the Court on April 27, 2022 EAI and attorney Anderson Duff produced the first version of the 2012 eBay receipt for the 1972 Oil Painting Man With Red Umbrella. Plaintiff on  June 2, 2022 Plaintiff set forth my second set of interrogatories and production of documents.   My requests  for the full copy of the EAI invoice, receipt etc were duly requested in No. 2, No. 4 , No.7,  No.8,  No. 13  and No. 16. As evidence below , a ll of the Plaintiff's Interrogatories that called for the  full productions of the ebay EAI  Dec. 1, 2012 sale of the 1972 oil painting received consistent objections.  The  willful failure by EAI to produce the full uncut version of the 2012 EAI eBay sales receipt  was also met within Plaintiff's Third set of requests as well.   Plaintiff asked the Court note that Mr. Duff alleges that he produce the EAI receipt in an eml on Sept. 21, 2022 yet objected and failed to produce the EAI receipt to the Plaintiff June, July, August and September when Plaintiff's third set was due on Sept. 20, 2022.

PLAINTIFF'S  INTERROGATORY No. 2
Submit the purchase invoice, check or receipt for the "1972 Original Oil Painting Man With Red Umbrella by Estate Auctions Inc. i.e. any proof of payment made out to Estate Auctions Inc.

**EAI DEFENDANT'S RESPONSE TO INTERROGATORY NO. 27 [PLAINTIFF'S INTERROGATORY NO. 2]:**
*" Defendants object to this Interrogatory as duplicative of Request Nos. 3 and 22.*
*Defendants object to this Interrogatory because it exceeds the number of interrogatories one Party may serve on another Party pursuant to Federal Rule of Civil Procedure 33(a)(1).*
*Defendants object to this Interrogatory because it seeks the production of documents and materials.   Subject to the foregoing general and specific objections, Defendants refer Plaintiff to Defendants' document production..*

PLAINTIFF'S INTERROGATORY No. 4
Identify any data or computer communications between Estate Auctions Inc (EAI's emails and website) and eBay for the "1972 Original Oil Painting Man With Red Umbrella allegedly sold on eBay.

**EAI DEFENDANT'S RESPONSE TO INTERROGATORY NO. 29 [PLAINTIFF'S INTERROGATORY NO. 4]:**
*"Defendants object to this Interrogatory because it exceeds the number of interrogatories one Party may serve on another Party pursuant to Federal Rule of Civil Procedure 33(a)(1).*

*Subject to and without waiver of any objections, Defendants state that no responsive materials are within Defendants' possession, custody, or control."*

PLAINTIFF'S  INTERROGATORY No. 7
Submit to the Plaintiff proof of evidence for the purchased painting that generated sales records for the "1972 Original Oil Painting Man With Red Umbrella.

**EAI DEFENDANT'S RESPONSE TO INTERROGATORY NO. 32 [PLAINTIFF'S INTERROGATORY NO. 7]:**
*"Defendants object to this Interrogatory as duplicative of Request Nos. 2.14 and 20. Defendants object to this Interrogatory because it exceeds the number of interrogatories one Party may serve on another Party pursuant to Federal Rule of Civil Procedure 33(a)(1). Defendants object to this Interrogatory because it seeks the production of documents and materials."*

PLAINTIFF'S  INTERROGATORY No. 8
Submit to the Plaintiff evidence for the purchased painting that generated sales records for the "1972 Original Oil Painting Man With Red Umbrella Include the shipping or delivery fees or signed receipts of payment/pickup.

**EAI DEFENDANT'S RESPONSE TO INTERROGATORY NO. 33 [PLAINTIFF'S INTERROGATORY NO. 8]:**
*"Defendants object to this Interrogatory as duplicative of Interrogatory 33 and Request Nos. 2.14 and 20. Defendants object to this Interrogatory because it exceeds the number of interrogatories one Party may serve on another Party pursuant to Federal Rule of Civil Procedure 33(a)(1). Defendants object to this Interrogatory because it seeks the production of documents and materials."Subject to and without waiver of any objections, Defendants state that no responsive documents are in Defendants possession, custody, or control."*

PLAINTIFF'S INTERROGATORY No. 13
Submit all the data or metadata for the ONLINE sale of the 1972 Original Oil torn canvas sized at 48 1/2 tall and 17 1/2 wide entitled " 1972 Original Oil Painting Man With Red Umbrella.

**EAI DEFENDANT'S RESPONSE TO INTERROGATORY NO. 38 [PLAINTIFF'S INTERROGATORY NO. 13]:**
*Defendants object to this Interrogatory because it exceeds the number of interrogatories one Party may serve on another Party pursuant to Federal Rule of Civil Procedure 33(a)(1). Defendants object to this Interrogatory because it seeks the production of documents and materials. Defendants object to this Request as duplicative of Request Nos. 3 and 14. Subject to and without waiver of any objections, Defendants state that they have produced all responsive materials within Defendants' possession, custody, or control.*

PLAINTIFF'S  INTERROGATORY  No. 16
State how Estate Auctions Inc released the sales records for "1972 Original Oil Painting Man With Red Umbrella that was Misattributed and allegedly Signed Annamarie Trombetta.

**EAI DEFENDANT'S RESPONSE TO INTERROGATORY NO. 41 [PLAINTIFF'S INTERROGATORY NO.16]:**
*Defendants object to this Interrogatory because it exceeds the number of interrogatories one Party may serve on another Party pursuant to Federal Rule of Civil Procedure 33(a)(1). Defendants object to this Interrogatory insofar as it asserts that Defendants released sales recordsfor Man with Red Umbrella.Subject to and without waiver of any objections, Defendants state that Defendants did not release the sales records for Man with Red Umbrella.*

**SA165**

In  June2, 2022,  Plaintiff's also requested for  my  Production of Documents in  at least three separate

requests from EAI Defendants,the full production of the 1972 oil painting "Man With Red Umbrella" sold

by EAI on eBay in 2012. Attorney Anderson Duff objected to my requests for this one receipt.

PLAINTIFF'S REQUEST NO. 12:
Produce written documents and explain how the information for the sale records for the1972
Original Oil Painting Man With Red Umbrella made by Estate Auction Inc. transferred and or
released to another source other than EAI on the internet?

**EAI DEFENDANT'S RESPONSE TO REQUEST NO. 20 [PLAINTIFF'S REQUEST NO. 12]:**
*Defendants object to this Request as duplicative of Request No. 2.14. Defendants objectto this Request
to the extent it asks for a narrative response. Subject to and without waiver of any objections,
Defendants state that no responsive documents are in Defendants possession, custody, or control.*

PLAINTIFF'S REQUEST NO. 14:
Produce copies of all documents and things that support Estate Auctions Inc. claimed date of the sale for
the " 1972 Original Oil Painting Man With Red Umbrella" allegedly sold on December 1, 2012.

**EAI DEFENDANT'S RESPONSE TO REQUEST NO. 22 [PLAINTIFF'S REQUEST NO. 14]:**
*Defendants object to this Request as duplicative of Request No. 3. Subject to and without waiver of any
objections, Defendants state that they have produced all responsive materials within Defendants'
possession, custody, or control.*

REQUEST NO. 16 :
Produce copies of all documents concerning the name of the companies that Estate Auctions Inc.
distributes the sales record for the 1972 Original Oil Painting Man with Red Umbrella.

**EAI DEFENDANT'RESPONSE TO REQUEST NO. 24 [PLAINTIFF'S REQUEST NO. 16]:**
*"Defendants object to this Request as duplicative of Request No. 8. Defendants object to
this request insofar as it implies Defendants distributed the sales record for Man With Red
Umbrella. Defendants object to the request for "all documents and things" as abusive, overly
broad, unduly burdensome, and not proportional to the needs of the case. Subject to and without
waiver of any objections, Defendants respond by stating that no responsive documents are within
Defendants' possession, custody, or control."*

EAI  Defendants now claim that o n Sept, 21, 2022,   WorthPoint during deposition brought to Mr.

Novocin's attention the  cut off areas of  the eBay email  on pages 72 , 73 and 77 in which WorthPoint

called for  the full production of the   EAI eBay receipt.  Despite the Plaintiff's requests EAI and their

attorney never set forth the full receipt.

To date,   there are now four versions of the ONE eBay sale receipt  by EAI made  on Dec. 1, 2012 for

the sale of the 1972 Original Oil Painting "Man With Red Umbrella" sold by EAI for  $181. 50.

**SA166**

THE **FIRST** EAI 2012 RECEIPT FOR 1972 OIL EAI00058/ 000059  PRODUCED ON APRIL 26, 2022

On April 8, 2022 the first Discovery between the Defendants and Plaintiff's evidence was due. On Wednesday, April 27, 2022 at 21:30:09 2022 Estate Auctions Inc.'s attorney Anderson Duff produced EAI000058 and EAI000059 after a Conference Call with Judge Cave. Plaintiff immediately noticed the following :

1) 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz is written twice in blue right — next to each other.
2) In EAI000058 the right side is cut off , deleting the date, the price, name and address of the buyer , etc. Again, this truncation was noted by WorthPoint's attorneys as EXHIBT #4 at the Novocin Deposition and called for a full production of this receipt.
3) the eBay logo is in a a box devoid of the colored LOGO in red, blue, yellow and green.
4) a plain type eBay is written in a lined box.
5) Also missing is the bold colored yellow button with "Go to My eBay" which is below the text "Provide shipping information "
6) Last, missing below the Blue type under 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz was either a the gray icon logo or what is a box with a blue square with a white question mark in it.

**SECOND** EAI 2012 RECEIPT FOR 1972 OIL EAI000060 NOVEMBER 16, 2022.

I remind the Court again that in Doc. 315, filed on Nov. 16, 2022, Plaintiff noted to the Court that Mr. Duff produced a complete uncut version of the alleged 2012 eBay receipt for the sale of the 1972 original oil also known as WorthPoint's Deposition Exhibit #4. There are obvious differences in the new Nov. 16, 2012 EAI eBay receipt, bate stamped as EAI000060. Most notable is the visual absence of a bold yellow line. The text is quite small and the receipt is one page. The EAI00060 differences from EAI00058 and EAI00059 are noted below

1) the 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz is NOT written twice in blue right next to each other.
2) In EAI000060 the right side is **NOT** cut off
3) the eBay logo is NOT simple type and EAI000060 has an ebay color LOGO red, blue, yellow and green
4) The Blue box (above) with a blue square with a white question mark IS under 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz.
5) MOST NOTEWORTHY is the MISSING YELLOW LINE through the bold type "Congratulations, your item sold !" 6) The 2017 email header is fully missing. Plaintiff notes to the Court, Mr. Duff submitted his EAI000060 by email on Nov. 16, 2022.

**EXHBIIT # 5   Nov. 16, 2022 Mr. Duff's email with EAI000066  EAI eBay receipt**
**EXHIBIT # 6   Second Production of Ebay receipt on Nov 16, 2022  numbered as  EAI000066**
**EXHIBIT # 7   Plaintif's Octobre 29, 2022 Request  for Ebay Receipt**

**SA167**

**THIRD EML**  EAI 2012 RECEIPT FOR 1972 OIL  PRODUCED TO PLAINTIFF  ON NOV. 17, 2022

The third EAI sales receipt with visual colored  icons differs from the other two eBay receipts:

1) It is NOT bate stamped or numbered. Documents needs to be numbered even if it is handwritten if it is to be evidence. Plaintiff submitted  hand written  numbered  evidence on Sept. 21, 2022 into evidence.
2) EAI's  eml eBay receipt   differs from  EAI receipt from the EAI000058 and EAI000060  near the top. Not written in the email is  Subject: Date: From: before the  To: Norb Novocin, marie novocain.
3) New and Different is a Logo EE circle up top, which is not on EAI0058-0059-or EAI 0060. Unlike EAI00060, this document has a yellow line under " Congratulations, your item sold !" It has the ebay color logo and box with blue question mark.
4) Again- as of Dec. 19, 2022 the  EAI  eml. text is not bate stamped by EAI Defendants and was NOT mentioned or produced to Plaintiff before or after  Nov. 16, 2022.  Mr. Duff  produced EAI000060 as evidence,  Plaintiff is requesting that the Court impeach or prohibit any possible use of EAI 's undocumented,  eml that was  emailed to Plaintiff AFTER  the production of EAI00060.

**FOURTH**   EAI00065 EEAI00066 EAI 2012  TEXT ONLY RECEIPT FOR 1972 OIL  PRODUCED TO PLAINTIFF ON DECEMBER 7, 2022.

1) Produced on Dec. 17, 2022 is the full text (only) for the eBay 2012 sale. There are no visual icons or authentic indications that the original email was simply printed out and submitted. Plaintiff is reliant upon EAI Defendants to simply produce one proof of purchase for the 1972 Original  Oil Painting that EAI sold on eBay on Dec. 1, 2012.  The fact that there are now four versions all of  which are different in content and  format, icons symbols and are optically different is very confusing and provokes inferences that contradict and confuse the facts.  To date Mr. Duff has not bate stamped the eml  that was allegedly sent to WorthPoint's attorneys  on Sept. 21, 2022.  As the Plaintiff and as a Pro Se` litigant, Mr. Duff failed to convey on  Oct. 28, 2022 nor on Octt 29, when I emailed Mr. Duff about the  full production of the EAI ebay receipt.  On Oct, 31, 2022 Mr. Duff did document in an email that when  his clients produce the email, he would pass it on to the Plaintiff.   On Nov 16, 2022 I reminded Mr. Duff  again and upon day's end he produced EAI00060.  The next day, Nov. 17, 2022  Mr. Duff and all the  attorneys from WorthPoint  alleged that Mr. Duff  produce the EAI eBay receipt. in an  eml text to the  other attorneys.

As a result of the  multiple misrepresentation of the  EAI 1972 oil painting  eBay sale  Plaintiff' was reliant upon the Defendants  <u>not</u>  to receive such  indirect and  misleading  contradictory responses.  To date the multiplicity of contradictory responses  by EAI Defendants contributed  to  Plaintiff's  emotional and physical  distress causing the Plaintiff become ill on or around Dec. 11, 2022 which ultimately  has

delayed filing my Proposed Amended Complaint.  I have been suffering profusely from emotional distress which has increased throughout the year.

Moreover and most recently, Plaintiff after the Thanksgiving weekend , was puzzled by the data produced by the WorthPoint's attorney Adam Bialek allegedly from EAI Defendants' eml for the 2012 eBay receipt.. As a result Plaintiff was forced to contact my internet expert witness to open up Mr. Duff's eml message and secondly to decode the coding that was sent to Plaintiff from Adam Bialek. Mr. O'Leary's Affidavit and report has cost the Plaintiff several thousand dollars, all due to the willful cryptic and convoluted, confusing information in the guise of producing evidence to the Plaintiff.

It has been an ongoing willful pattern by EAI to conceal or reveal in parts and pieces pertinent information that Plaintiff has a right to request. If the first EAI eBay receipt did not lack deficiencies or was not truncated on one side, Plaintiff would not to assert misrepresentation of EAI's multiple written receipts. The amount of time, involved in repeatedly requesting the same simple items and being met with unending, delays is disrespectful, unprofessional, subject to suspect and mistrust and ha delayed the end of Discovery, to the point where I as well as my expert witnesses are frustrated by the inability to progress forward and complete the objective of producing a sound, informative substantiating report that supports the Plaintiff's infringements and problems. Despite this and as duly documented in the Nov. 23, 2022 transcript, the Defendants are unyielding to settlement talks or ending this lawsuit. Plaintiff regrets but must inform the Court, post the Nov 23, 2022 Conference call I was sent an email from attorney Anderson Duff s who informed me of his fees for his time on the Conference call. He also informed me his clients would be seeking attorneys fees upon the conclusion of my case. WorthPoint's attorney, Adam Bialek has informed me of the same assertion to burden the Plaintiff with attorneys fees. Once again Plaintiff has produce irrefutable evidence of my childhood signature. The infliction of fear and requests for production since mid summer to the present has caused Plaintiff to add a claim for IIED and Tort in my Proposed Amended Complaint.

## *8)* **FRAUD ~ COUNT VIII ~ TANGIBLE CONVERSION (BIOGRAPHY IN CATALOG) TAKING AND MISAPPROPRIATION PLAINTIFF BIOGRAPHY**

**SA169**

**A)**   A party has a cause of action for conversion when (1) the plaintiff has an exclusive right of possession, (2) into which the defendant, (3) intentionally, (4) interferes with that right.  In general, conversion fraud deals with tangible goods.   The Plaintiff 's  claim for tangible conversion fraud is founded on  my exclusive  right of possession to my  original,  self authored biography.  My Biography   is a "literary work" written in prose, and  is an individual  artistic  expression and  exists in a tangible form  as   my self published catalog.  My self authored biography   is   also "fixed " and exists in a digital  form  on my professional and personal website.   A fraud  conversion  claim is applicable to  intellectual  property rights  if it is merged in the physical  form and in this instance it is.  My infringed biography exists in  two personal  tangible forms (my catalog and my website). Violations  occur when a   person  without authority or permission  intentionally takes  the personal property of  another or   deprives   the Plaintiff   of the  possession of  my exclusive rights  to my self authored  biography in my   personal catalog.  The original EAI eBay ad for the 1972 oil has used Plaintiff's statement from my  personal catalog which documents and references my personal property is   *"All of the imagery in this catalog was either created en plein air or from the subject directly.".*   This personal  statement referencing my catalog is in the Defendants  version  to include the Defendants EAI and WorthPoint's   and their Confidential evidence. using  my  Catalog biography   Both  Defendants included and   reference my statement regarding my  catalog  in the false ad for the 1972 oil  painting and both  Defendants partook in  the improper  and  unauthorized relocation of Plaintiff's  personal  property.

The subject  regarding the length of  Plaintiff's  biography in the EAI eBay sale  ad  was addressed on  Page 91.   A reference to the cut off  statement  that ends with the phrase "concentrated period of time"  followed by four …. dot dot -dot dots  was  noted by WorthPoint's attorneys Jana Farmer to Norb Novocin  who affirmed it's written presence.  On  Page 92  of Mr. Novocin's deposition he references  computer software issues that *" Might "* have  cut off  the biography. Again EAI failed to produce any documents/ data what-so-ever to affirm or verify any computer software cut off. Aside from this Plaintiff reiterates that  the use of my biography was incorrect and false.

**B)**   There are two "improper" connotations and uses by the Defendants regarding my biography. First and foremost, I did not paint the 1972 Original Oil Man With Red Umbrella nor did I sign the painting. This is a proven fact. Plaintiff produced my childhood signature . It is in **Plaintiff's evidence 000260, 000316** also in script and print number **Plaintiff's Evidence 000495**. The EAI signature in red produce in Discovery by EAI, in April 2022, misspells Plaintiff's first name and adds a space between ANNA and MARIA. The use of my personal self authored biography is "Improper" as it is wrongfully applied , I am not the artist who created. the 1972 oil. This conversion as aforementioned is unauthorized in every way. The EAI use of Plaintiff's biography was for commercial and selling purposes for a damaged 1972 oil painting. In like fashion, WorthPoint's website's chief purpose is to report the " commercial sales records" of items sold on eBay.   WorthPoint has a membership charge in order to view the sales price. It is not free to see the selling price. Both Defendants have used my biography for commercial gain, ergo it is not fair use, rather both Defendants attorneys are claiming my name and biography are fair game and falsely claim " fair use. Plaintiff's self expression in my biography is original was never authorized to be used by either Defendants as such . As a consequence of the unauthorized use of Plaintiff 's biography by both Defendants, WorthPoint Corp. in particular, I lost a sale of artwork to a prominent collector who most likely would donate her collection to a public museum. Aside from this, prominent gallerists who expressed interest in my work failed to follow through on our planned meetings. The financial and professional adverse effect that the infringement had on Plaintiff ( copyright owner) ability to earn income resulted in sustained inequitable financial and professional losses.

**C)**   To make a claim for conversion, a Plaintiff must show "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." (internal citation and quotation omitted) . As aforementioned, Norb Novocin admits in his Declaration filed on June 16, 2020 that he did not know or never heard of Plaintiff's name before. Allegedly he used one source, which Novocin designated as askART to

unethically cease or "Glean" Plaintiff's biography.  As of Sept. 21, 2022, for the first time since 2018  when this lawsuit began, Mr. Novocin now claims that the Plaintiff's full biography was taken from askART.com.  The visual proof of dated print out from 2015 to 2017 is in **Plaintiff's Evidence  000029  to Plaintiff's Evidence 000031  Plaintiff's Evidence000039, Plaintiff's Evidence 000048, Plaintiff's Evidence 000070, Plaintiff's Evidence 000048, Plaintiff's Evidence  000144 ( August 13,  2015)  Plaintiff's Evidence 000159 etc.**

**D)**   To prove conversion,   that claim out, a plaintiff must allege: "**(1)** the  property subject to conversion is  a specific identifiable thing;  Plaintiff  gives a personal, detailed  description of my life experiences, from childhood ( Regina Pacis Church) to my formal training in  high school at the Brooklyn Museum and ending with the names of my personal esteemed   colleagues in the art world.  **(2)** plaintiff had ownership, possession or control over the property before its conversion; and Plaintiff's catalog and website were printed  and  created in 2003. The EAI ad   for the damaged 1972 oil  painting (albeit incorrect) was allegedly sold in 2012, which was nine  years after my website biography  and catalog were created.  The EAI eBay ad for the 1972 oil painting documents that I have a catalog and a website.  **(3)** defendant exercised an  unauthorized dominion over the [property], to the alteration of its  condition or to the exclusion of  the plaintiff's rights." Moses v. Martin, 360 F. Supp. 2d 533, 541  (S.D.N.Y. 2004) (citation and internal quotation marks omitted). The "conversion " and addition of the EAI introduction and the description that precede the Plaintiff true biography  of the damaged  1972 oil painting (albeit incorrect)  is roughly  230 words was allegedly  created to sell a painting in  the year 2012.  Plaintiff's biography in the EAI eBay ad that appeared on the internet on the WorthPoint's website was roughly 420 words.  The word  count for my entire  biography is  roughly 1360 words.  Moreover, 1)  EAI  has failed to substantiate their claims  that their computer server had Plaintiff's entire biography documented in the 2012 eBay sale for the 1972 oil painting  2) Secondly and most important, the use and application of my biography as the designated artist  is incorrect, false. 3) Plaintiff's self authored biography was  unethically and not authorized  by the Defendants to obtained and use  whether it was from the Plaintiff's own personal website or from the website of  askART.com.   AskART prohibits any third party to

"re create " or use any content on their site  without written permission.  4) EAI has failed to identity the person who did paint the oil, Man With  Red Umbrella. As a totality, it is  precisely this unauthorized and incorrect conversion that constitutes  fraud.   Last, the Defendants demonstrated a false sense of entitlement simply due to the fact that my biography was listed on askART and Mr. Novocin has been a member of askART since 2001.  Again askART does not permit  any party to copy or transfer the information on their website.

## CONTRADICTION  AND DISCREPTANCY  IN  THE  YEAR  PLAINTIFF'S BIOGRAPHY  WAS LISTED  ON  ASKART  WEBSITE   IN 2015.

Prior to and throughout this litigation, Plaintiff has always maintained that Plaintiff extended my permission to writer Bob Bahr  to  have my biography added to AskART's website in the year 2015. Plaintiff has produced in  **Plaintiff's Evidence 000151** a dated email from March 5, 2015, which clearly documents Plaintiff thanking the Mr.Bahr for his recommendation of my biography to be included on the askART website.   In  **Plaintiff's Evidence 000150**  which is a dated email from June 6, 2015 documented the Plaintiff written communication to Bob Bahr that Plaintiff is delighted that my biography is listed on askART.   In **Plaintiff's Evidence 000153** and   **Plaintiff's Evidence 000154**  which is a third party name Wayback Machine that documents Plaintiff's  biography listing on askART was in the year 2015. Below is a screen shot with the askART webpage with Plaintiff's name and the page number code that is Annamarie_Trombetta/11156459/Annamarie….



Prior to commencing this lawsuit. Plaintiff contacted on Jan. 16, 2018 askART  requesting the name of the contact person who extended my biography from my personal website at

www.trombettaart.com   to askART's website . My email dated Jan. 16, 2018 is in **Plaintiff's**

**Evidence 000320** and **Plaintiff's Evidence 000321.**  On said date askART claimed that they did not

know the name of the  "Fan" that included my biography from my website which was transferred to

askART's website.   Again Wayback Machine documented the year as 2015.

On August 29, 2022, WorthPoint's attorneys and not Estate Auctions Inc. attorney Anderson Duff

emailed Plaintiff with a faded Wayback Machine Internet Archive  that infers there are two dates for

capture which is the year 2010 and 2014.  There is two significant differences in the Defendants

production of evidence and that of the Plaintiff's.  The Plaintiff's 2015 Wayback Machine search

window  has the Plaintiff's name and the code number *"Annamarie_Trombetta/11156459/*

*Annamarie....* and  the only year listed is 2015. Plaintiff's evidence does not list any prior years to

include 2010 or 2014.

WorthPoint's evidence that has been produced and numbered as WP000141 and WP000142 are

for the year 2010.  WorthPoint's evidence WP000143 and WP000144 represent the year 2014.

In the search window of both documents the Plaintiff's name is NOT listed in the search window.

**WorthPoint's Evidence WP000143 for the year 2010—DEVOID OF PLAINTIFF'S NAME**



**WorthPoint's Evidence WP000143 for the year 2014 —DEVOID OF PLAINTIFF'S NAME**



Within in most of both  Defendants evidence there is a consistent and apparent  absence of conclusive and complete information that prohibits their evidence from being verifiable.  Plaintiff's emails are dated and clearly state that my biography was going to be listed and was listed on askART in 2015. The third party Wayback machine lists the year as September 22, 2015 and does NOT include any previous years for my biography listing on askART.

Estate  Auctions Inc produce Plaintiff biography on askART in EAI000026 and EAI000027 which are both dated 3/ 25  in the year 2020. did not produce any documents other than an email from Kris from askART  produced on April 27, 2022  at 10:53:29 Eastern Daylight Time  is an email

Dated Tuesday, March 2, 2021 at 2:22:15 PM who claims  Plaintiff's biography was on askART since 2008  which is in  EAI evidence 000053.

Plaintiff  duly documented in an  email from Art Appraiser  Gayle A. Skluzacek who gave testimony in 2009 at the trial for Plaintiff  for the Staten Island Ferry Crash that there was NO biography listing on askART in 2008 or 2009. The dated email on April 6, 2022 was produced after Ms. Skluzacek  checked Plaintiff file any askART biography listings. **Plaintiff Evidence 000323** is Ms. Skluzacek April 6, 2022, affirmation. Plaintiff also wishes to bring to the Court's attention that Mr. Novocin has had a membership to askART since Nov. 23, 2001 to the present time.  Mr. Novocin's membership dates to askART are in **Plaintiff's evidence 000586** to  **Plaintiff's evidence 000592.**  Upon Plaintiff's inquiry, any artist's  inclusion of their artist biography on askART can be done at random and also anonymously.   Plaintiff affirms with conviction that in March of 2015, I gave my consent to have my biography listed on askART in the year 2015 and at no other time.

Once again, it is not clear why WorthPoint Corporation produced the askART evidence however Plaintiff included this information at the ending of  Estate Auctions Inc.  and prior to WorthPoint Corporation's Amended Complaint to include Fraud, Intentional Infliction of Emotional  Distress and Permanent Injunctive Relief.

**SA175**

**EXHIBIT # 8   Plaintiff's Evidence 000151 dated email March 5, 2015, Plaintiff email to Mr.Bahr for  biography  recommendation to askART.**
**EXHIBIT # 9  Plaintiff's Evidence 000150** dated email from June  6, 2015 documented the Plaintiff written communication to Bob Bahr  regarding Plaintiff's biography on askART.
**EXHIBIT # 10  Plaintiff's Evidence 000153 Wayback Machine confirming 2015 year for Plaintiff's askART biography on askART website.**
**EXHIBIT # 11 Plaintiff's Evidence 000154  Wayback Machine confirming 2015 year for Plaintiff's askART biography on askART website.**
**EXHIBIT # 12  WorthPoint's evidence WP000141 and WP000141 2010 askART listing for Plaintiff's askART biography on askART website MISSING PLAINTIFF's NAME**
**EXHIBIT # 13  WorthPoint's evidence WP000143 and WP000144 2014 askART listing for Plaintiff's askART biography on askART website MISSING PLAINTIFF's NAME.**

## A.   FIVE   ELEMENTS  OF  FRAUD RELATED TO ESTATE AUCTIONS INC .

**1. Misrepresentation**—   EAI's false references to the Plaintiff as the artist of the 1972 oil painting—ie caused a photo that inferred the Plaintiff initial  and last named to have a  fraudulent copyright management information (CMI) on the WorthPoint website,  The false attribution by EAI is  one of the root causes of this lawsuit. To  remove the fake ad, Plaintiff  followed  the instructions from  Defendants Plaintiff  made the effort to contact to inform EAI that I was not the artist and was  told to hire an attorney. Despite hiring an attorney, EAI ignored any settlement opportunities. The inability to produce EAI's  own records, receipts and computer data that the Plaintiff  requested  is proof that their information and directions misrepresented   the Plaintiff  and used my personal information to  sell the  fraudulent  1972 oil painting  EAI's denial of liability after Plaintiff produced my childhood signature and EAI produce a misspelling of a signature in red on the 1972 eBay sale is a direct false misrepresentation to the Plaintiff who is reliant upon Defenadants  for said information .  Plaintiff during litigation requested the red signature in 2019. Doc. 22 April 24, 2019.

**2) Knowledge of the material falsity** - Since August  2017 Plaintiff has consistently pursued both Defendants, particularlyEAI  by reporting and requesting  information and photos for the listing of  1972 oil painting and   to find out and confirm  who was the eBay seller.  Defendants admit they do not have  had  photos of the painting.  The proof  to the  red signature   is an example of  willful recklessness   misrepresentation.  by EAI    On Jan. 10, 2017 I directly informed Mr and Mrs. Novocin that I was Not the artist and followed their instructions  hired an attorney, EAI's failure to respond or produce evidence in a timely manner reveals a pattern to conceal the material evidence.

3) **Inducing the other party to rely upon it.** In 2012 the defendants misrepresented  and misdirecting   Plaintiff audience  Plaintiff never  failed to investigate the truth of the defendant's statements.  Plaintiff was reliant upon EAI for any photos or to see the signature in red.  In April 2022 Plaintiff saw for the first time since 2015  a photo of the painting . This tool over seven years. This painting still has a similar version of the  Plaintiff name on the strecther.  Plaintiff followed through iverbal contact consistently and in writing  to no avail.  Plaintiff was reliant  upon the Defendants documented communication  to eventually see and prove that there was painting Plaintiff is still reliant on  EAI to set forth known evidence that should be in EAI;s  possession.  The Defendants absence of evidence  and verified proof constitutes an  intentional and willful  motive to deceive.

# SA176

Page 43 of 82

**4) Justifiable reliance of the other party**  The Defendants long term failure to  produce receipts or any photos from the original eBay ad for the 1972  painting keeps the Plaintiff reliant on EAI and is subject to their production.   Plaintiff's actions in commencing  this lawsuit was in pursuit of seeking Declaratory Relief.  The Defendant s Declaration  willfully  intended  to declare fraudulent statements and  to Post a Bond for twenty thousand dollars.  The Court and the Plaintiff are  reliant upon the Declaration by to determine this case.  Defendants documented distortion of Plaintiff' biography and created confusion and   duly circulated on the internet for almost  several years false information. Plaintiff reliant upon  EAI to produce the information EAI created for the false listing of the 1972 Oil Painting Man With Red Umbrella.

**5)  Injuries  and Damages.**   The Defendants False  signature A. Trombetta  is  a significant causation for this  lawsuit.  The causation of  Plaintiff's losses are  numerous. In  2015, at a time of great expansion and artistic  opportunities , commissions, articles and sales— and fully immersed in advancing my career, Plaintiff was forced to deal with a destructive and fake internet  post.  In 2015,  Plaintiff  lost the sale of an $8500 oil painting, the opportunity for  gallery representation due to the false posting and association with eBay,  Estate  Auctions 's 99 cents auctions and WorthPoint Corporation.  Plaintiff has well over  lost seven   years of my  life to fight  false claims which  are still ongoing.   Plaintiff is requesting  Permanent Injunctive  Relief to prohibit the Defendants from using   the Plaintiff's name and exhibits filed and submitted  for the  purposes of this  lawsuit or any other images or  texts that are circulating on the internet .The  Plaintiff's causation of loss generated by this  litigation , repeats the same  harmful patterns  and makes the Plaintiff  a consistent  victim  to the  Defendants' fraudulent  claims  in order to satisfy the Defendants  deceptive fraudulent assertions.  The loss my time, and all and any related  of sales of  artwork, the loss of my professional credibility and the time dedicated to this lawsuit is beyond profession and emotional  measure and beyond  rehabilitation.

# Elements of Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress.

## TORT  CLAIM  FIRST COUNT   NEGLIGENCE

Negligence is  a civil tort which occurs when a person breaches his duty of care which he owed to another due to which that other person suffers some hard or undergoes some legal injury. Negligence can be explained as the failure of discharge or the omission to do something due to careless behavior.  First Count of Tort   Negligence  According to CPLR 213(2) the statutes of limitation in  New  York for  civil tort  is six years in writing or an oral contract.  The four elements of Tort are Duty, Breach ,Causation and Harm.

## Plaintiff's Claim for Civil Tort under the Six Year Statue of Limitations

Plaintiff for the first time, in early Jan. 2017 Plaintiff discussed and decided to have a colleague contact EAI regarding any information the regarding 1972 Original Oil painting. due to the reposting of the link on WorthPoint's website. A brief chat and Ms. Novocin's suggested to send an email ended my colleagues involvement in this matter. On Jan. 10, 2017, Plaintiff phoned and spoke with Marie Novocin. I identified myself and informed Mrs. Novocin that I was not the artist who painted the oil EAI had sold on eBay . I then asked if EAI had any information and if E AI had anything to do with the reposting on the internet. Plaintiff also asked for the owner's contact information. Again on Jan. 10, 2017, I informed Mrs. Novocin why I was contacting her, as internet listing for the 1972 Original Oil Painting was under the Plaintiff's name again on the

internet. Shortly after, Plaintiff received a phone call from Norb Novocin . His intent was to inform me that he had a wealth of no knowledge. As Plaintiff has documented, I confirmed to Mr. Novocin that I was not the artist . I attempted to inform Mr. Novocin it is not legal as the Visual Artist's Rights Act attests, to attribute an artist's name to a painting they did not crate. The call ended with his suggestion to get a lawyer. Since Jan. 2017, Plaintiff has taken all the steps to responsibly inform the Defendants about their infringing actions. The NY rules for Tort state : a rule in tort law: the statute of limitations for a cause of action does not begin to run until the time that the injured party discovers or reasonably should have discovered the injury. As stated on Jan. 10, 2017 Plaintiff for the first time confirmed by phone that Mr. Novocin sold a painting in 2012. On Sept. 21, 2022 Mr. Novocin claims that "To this day I have never been to Plaintiff's website." Novocin's statement demonstrates his failure to act while demonstrating careless actions regarding researching Plaintiff credential prior to Mr. Novocin's false attribution. It is since Sept. 21, 2022 that Plaintiff became aware of this point of ONE reference and the lack of references that Mr. Novocin used prior to his incorrect attribution. Plaintiff set forth a claim for Negligent tort due to the failure of both Defendants to act, in a responsible manner toward researching the

**SA178**

Plaintiff  credentials and for not contacting the Plaintiff.   Defendants have demonstrated  careless actions as aforementioned.  There are so many failures by Defendants to produce any evidence that supports  claims that they did not truncate or alter Plaintiff's biography. TheEAI  ad created by the Novocins  does infer   my  website.

EAI  Defendants had a duty to the Plaintiff as well as the buyer to correctly attribute the 1972 Oil  Painting to the  actual artist. To date, EAI has failed to do that.   As this case attests,  EAI has breached three claims,  significant are the VARA and Direct  Sopyright  Infringement claims and since EAI failed to produce any 2012 computer or documentation of the 2012 eBay ad , Plaintiff will assert DMAC infringement claims for the willful removal of my copyright management information. Defendants hav ewithout authorization and accuracy used Plaintiff personal property via my biography and as aforementioned caused Plaintiff the loss of sales of art, gallerists who were interested in my work, aside from the enormous loss of time and career opportunities all tainted and blocked by the causation of the false attribution and at present the rigorous responsibilities in litigation that the Plaintiff is having difficulty in managing such strenuous and unending demands. Plaintiff did not cause the infringements. Plaintiff made numerous attempts to directly contact each Defendant.  I  was patient, careful,  responsible  in both written and verbal contact and was espectful with each Defendant  prior to filing this lawsuit against EAI .  Plaintiff also waited until EAI stated in writing that they had no association to WorthPoint,  I then decided to Amend my Complaint to add WorthPoint, upon Judge Abrams intended  application to amend my complaint in late 2019.

EAI  Defendants and WorthPoint failed in their duty to  the Plaintiff  in the following ways and caused injury to the Plaintiff in the following ways"

A)As an immediate and initial reaction to the 2015 false internet posting and the  second re posting found by the Plaintiff months after it was allegedly permanently removed, Plaintiff  needed to return back to physical therapy and had regular doctor appointments with my Pain Management Specialist Plaintiff Evidence

B) Plaintiff  was experiencing substantial anxiety and fear due to the loss of income and the sale of artwork to a prominent collector due to the  Defendant falsities .  Plaintiff loss of interest by

prominent gallery owners in the artworld also contributed to Plaintiff's emotional distress. Plaintiff was unable to sleep at night and suffered functional deficits during the day as well as physical manifestations of emotional distress due to the nine month ordeal to remove the false posting from the internet. The return of this false listing once again repeated the anxiety and emotional distress. C) Prior to and throughout litigation, Plaintiff has had to divert time away from career opportunities and financial advancements to seek legal remedies and Declaratory Relief to protect and prevent further infringements and willful misattributions from both Defendants. As a result the quality of my life, earning potential, professional and personal responsibilities has been unnecessarily blocked due to the willful denial by the Defendants to resolve this lawsuit. Plaintiff has suffered simply due to the fact that I did not paint this oil and that I want to legally disassociate from the counterfeit oil painting. I have suffered a great loss of time to declare and legally document I am not the artist.

## TORT CLAIM SECOND COUNT NEGLIGENCE

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

On Feb. 1, 2022 at the request of WorthPoint's attorneys Plaintiff was requested to write a settlement letter. Attorney Anderson Duff duly communicated that his clients were in held up in Bankruptcy Court due to this litigation. Despite being advised to engaged or discuss settlement offers prior to litigation by friends and retired attorneys, Plaintiff did agree to writing a letter. As is Plaintiff;s way I responsibly found out what needed to be included in the Settlement letter. I gave a recap of all my actions to both Defendants . I found cases related to my claims and listed all the damages and rules pertaining to my claims. The letter was quite long as this has been going on for over seven years. Plaintiff wrote out in words the amount Plaintiff was seeking for my settlement offer. Plaintiff did not hear from a any of the attorneys. At the same time Plaintiff was experiencing for the first time ever Vertigo. At the same time due to the stress of interviewing lawyers for possible representation, Plaintiff in addition to the recent Vertigo developed a sty and swollen eye, As a result of the stress from litigation, and the sudden onset of Vertigo, Plaintiff fell and fractured a rib due to this lawsuit

**SA180**

and all the unexpected sudden demands that were imposed upon me.  I ask the Court to consider the time Plaintiff has  lost just to avoid litigation and to have the false listing permanently removed from the internet. Secondly, I simply did not do this painting and followed the advise of my legal colleague to declare I am not the artist for future documentation and records. Third the major denials of any wrongdoing and infringements in concert with the  minor  settlement offers by EAI have prompted the Plaintiff to be vigilent  in protecting my name and my rights. Plaintiff did not cause these infringement, nor did I immediately file a lawsuit.

**EXHIBIT #1  Doctor appointment with Benjamin Tweel for Vertigo     CONFIDENTIAL**
**EXHIBIT #2   Emergency Eye Infirmary Visit Sunday Feb. 20, 2022     CONFIDENTIAL**
**EXHIBIT #3  Doctor 's Letter and  Visit with  Benjamin Zaremski  Vertigo and fractured rub**

As a result this sudden intense bombardment of demands despite honoring my agreement by responsibly writing a letter, none of the Defendants attorneys contacted me regarding my letter. Instead, the attorneys wrote a letter to the Court and falsely stated that Plaintiff did not state a monetary amount, when in truth, Plaintiff most certainly did.   The reliance Plaintiff had on the Defendants to be responsive and communicative with the Pro Se Plaintiff was not experienced. Plaintiff did conduct a Meet and Confer as well as emailed the Defendant regarding my eye condition. I did communicate my sudden medical limitations to all the attorneys. The actions of the attorneys  falsely conveyed to the Court that I was disrespectful to the laws and  rules that I had agreed to producing. Plaintiff notes that this is an assault on my character and that  misleading and misinforming the Court was intentional.  This problem could have been avoided  through simple communication from the Defendants.  As aforementioned Plaintiff was experiencing  sudden health issues that needed immediate attention.  Plaintiff was then order to write another .  Settlement letter and was indeed concerned  due to threat of sanctions,  When your intentions are honorable and responsible, when they are perceived as anything less, injury occurred for the Plaintiff.

Despite failed settlement attempts on Plaintiff during the most recent  Nov. 23, 2022 Conference Call, Plaintiff brought up the subject of settlement discussion. Attorney Anderson Duff immediately rejected any possibilities for any discussions to take place. Immediately, following the Conference Call Attorney Anderson Duff emailed Plaintiff with the Subject matter Increased Attorneys Fees.

# SA181

*"I am again writing to remind you that my clients will be seeking an award of attorneys' fees under §*

*505 of the Copyright Act and/or because you rejected my clients' offer of judgment.".*   Plaintiff

reminds the Court that the sum of  both of EAI's settlement offers combined  equal an amount to be

less than three numbers.  The willful refusal of the EAI Defendants and their attorney to deny any

settlement discussions while concurrently sending emails to the Plaintiff taunting and informing me

that they are seeking an award for attorneys fees  constitutes  emotional distress. I am not the artist

who painted the 1972 oil nor should my biography been used to sell this painting.  Plaintiff reminds

the Court that in Feb. and March 2022 I wrote not one but two letters fo a settlement which  both

Defendants rejected.

**EXHIBIT #4  Nov. 23, 2022  Email Subject  Increased Attorney's Fees from Anderson Duff**

## CLAIM FOR RELIEF FOR ESTATE AUCTIONS INC. AND   NORB AND MARIE NOVOCIN

1. Plaintiff consistently informed  EAI  and Marie and Norb Novocin .that I did not paint the 1972 Original Oil Painting Man With Red Umbrellas that falsely attributed my biography and signature to be falsely attributed to the aforementioned oil painting.

2. Plaintiff consistently informed  EAI Norb and Marie Novocin and there attorney I was nine years old , did not paint in oils then and  I too small to paint an oil  four feet in height.

3. The Defendant's communication to the Plaintiff  resulted in Mr. Novocin's suggestion to hire an attorney .  Defendant's used to  Plaintiff ;s biography to exploit the Plaintiff notoriety to increase the value of a damaged painting.

3. As stated above , there was  never any  business relationship and own prior contact between the Plaintiff and the Defendants.

4. At no time did Plaintiff verbally of  ever signed or authorize EAI or the Novocin's to use or purport that I painting in oils at nine years old.

5. Defendants willfully stated   in the guise of evidence  during the Novocin Deposition and now claim that  my entire biography  was allegedly in  the eBay ad for  1972 oi  painting Man With Red  Umbrella

6   Hence, the Defendants willfully and intentionally violated the Plaintiff's exclusive copyright to my self-authored artistically  expressed biography. The Defendants exhibit

a pattern of repeated activity to willfully denying any liability in misattribution Plaintiff to 1972 ad on the internet under Plaintiff's name that is the proximate cause of the individual's harm.

7 . In summary no one has the right to alter, change or expose to the public, a false signature or rewrite the chronological facts of my life. No other source can falsely claim a copyright or falsely claim a licensing agreement when no proof of documents of proof to verify such claims exist. This is the root cause for commencing this lawsuit.

8. My case validates the inequitable and adverse effect that one false attribution during an artist's lifetime ccan "BLOCK and IMPEDE" an artist's professional progress and hinder one's status.

9. This lawsuit brings attention to the realization that any "source" can write, state or claim a false attribution or use an artist's name on a work of art— ( or what is ascribing to be art). A great deal of time and many opportunities were lost to refute the false 1972 misattribution, a causal loss that has harmed my integrity, caused me to lose my time, earn a living and blocked my ability to create my own new works of art.

10, The Discovery evidence and the lack of evidence has continued consume the Plaintiff life, while imposing unending demands upon someone who has been victimized and embarrassed by public identity theft. The misuse my name with malicious intent by the Defendants to burden an artist, who is not a lawyer is overwhelming. The question needs to be considered, how can the Defendants afford a lawyer when the Defendants refused my settlement offer back in 2017.

## SUMMARY OF ARGUMENT

Plaintiff nine Counts of Fraud are detailed while defining the circumstances and false

misrepresentation and the causal losses and harm all of the Defendants fraudulently actions

have had on the Plaintiff. The countless mistakes by EAI, can be literally be "counted" as

multiple Counts of Fraud defined in Plaintiff's Proposed Amended Complaint. The unending

problems, delays demonstrated and implemented by Estate Auctions Inc and Norb and Marie

Novocin have been a burden for many years. Plaintiff has been a victim to EAI's bumbling

business practices. In litigation of I have been a victim to EAI chicanery and attempts to

inflict both emotional distress and to inflict the financial debt for Mr. Duff;s legal fees upon the

**SA183**

Case 1:18-cv-00993-RA-SLC   Document 348   Filed 12/27/22   Page 50 of 82

Page 50 of 82

Plaintiff.  As a Pro Se Litigant,  Plaintiff asks the  Court to grant my   Proposed  Amended

Complaint to includes  applicable request to include FRCP Fraud  9(b), Intentional Infliction of

Emotion  Distress  and Tort.

Defendants will not suffer undue prejudice from the filing of Plaintiff's Proposed

Amended Complaint because **1)** the fraudulent allegations asserted in the Proposed  Amended

Complaint are more specific and conclusive  than that asserted in the  Original or  Operative

Amended Complaints **2)** both  Defendants alleged harm  to the Plaintiff from the   Original and

Amended  Complaint has **increased** with  the new evidence  **3)**  the more-specific fraudulent

definition is  being asserted  before the close  of the Discovery and  within the time frame to

amend pleadings set out in the modified  Scheduling Order  **4)** Both Defendants'  discovery has

only been through  admissions, production  of documents and interrogatories  and depositions **5)**

the newly- alleged  facts  and evidence in Plaintiff's  Motion of my Proposed Amended

Complaint are already  well-known to the  Defendants and in their  possession.  For these

reasons,  Plaintiffs respectfully ask that the Court grant  Plaintiff's Motion  for Leave to File the

Proposed  Amended Complaint to Include   for Permanent Injunction and Other Equitable Relief.

Plaintiffs  seeks a  Motion for Leave to  Propose  Plaintiff 's  Amended  Complaint, to

streamline this action when the Plaintiff  pleads factual content that allows the court to draw

the reasonable  inference that  all the  Defendants  are liable for the consistent and willful

fraudulent  misconduct  alleged in this filing.  Granting  Plaintiff's Motion to  Amend  Plaintiff's

Complaint, allows the  Plaintiff to submit  new evidence verifying  the  fraudulent  offenses described

below,  while demonstrating   the justification for the Plaintiff's  need to warrant  legal action against

both  Defendants. All  Defendants,  prior to litigation  have willfully contributed to  displaying and

purporting on the internet,  absurd ( 4 ft painting at age 9), facts altering information  adversing

effecting Plaintiff's  income producing ability and reputation.  and creating  falsities to include 1) a

photo of false  signature misattributed  to Plaintiff   2) misrepresentation  of my biographical history

3) visual  circulation on the internet  of   false  copyright and licensing claims by WorthPoint Corp. 4)

false, misleading claims  and association of the  Plaintiff's name and biography with EAI, eBay and WorthPoint Corporation and  5) a damaged 1972  painting  too large to  paint at  age  nine.  The seven Counts of Fraud  described  below begin   chronologically and end in  the order of importance.

## PLAINTIFF'S   PROPOSED  AMENDED  COMPLAINT
## TO   INCLUDE   FRAUD   BY  WORTHPOINT  CORP.

### 1)   FRAUD ~  COUNT  I ~  FIRST  FALSE  WRITTEN  MISREPRESENTATION

The  germination  of this  legal action against  WorthPoint Corp.  began in  August  2015.  At that time due to contradictory,  willful denial  from WorthPoint Corp, Plaintiff was consistently and verbally instructed to contact eBay,   to find who  the  buyer or seller was  in order for  eBay,  not WorthPoint Corporation,  to remove   the   fake 1972 oil painting ad  from the internet.  Countless calls to WorthPoint's  employee  Ms. Brooks  ended in  her claim that  WorthPoint does not  have the seller information.  Her direction was  to   *"contact eBay"* at all times. In a  state of   reliance, Plaintiff   requested   WorthPoint's  employee,  Ms. Brooks  to state in writing  that  the  removal  of the  1972  misattribution oil painting was eBays responsibility.  Ms.  Anita Brooks   produced  a written   affirmation  on Nov. 16, 2015 which is  a true  misrepresentation—BELOW .  The surviving excerpt  by Ms.  Brooks  below   was  extracted and emailed to eBay on Thu, Nov 26,  2015 at 10:07 AM.   Ms. Brooks repeatedly stated  in every phone call to pursue eBay.   Ms. Brooks stated that eBay  had  the user and seller information for  the1972 link on eBay's website  EBay  claimed the active link  to  eBay  website on WorthPoint's website  featuring  the false 1972 oil painting  ad with a signature A.  Trombetta, was only  on WorthPoint's website.  Plaintiff ask the Court to  note, since August 2015,  when Plaintiff  phoned eBay, I  suggested  to eBay  looking up Estate Auctions Inc. 2012  eBay sales records, however  eBay claimed they did not  have old  sales  records  from 2012.

**NOV 16, 2015**  |  08:35AM EST
**Anita B.** replied:
Hello,
We do not buy or sell anything on the site. Rather, **we buy sales records** from various auction houses and sites and compile them into a price guide to **help users determine the value** of antiques and collectibles.
**If this particular item sold on EBay. I recommend trying to contact EBay, as they may be able to provide you with the additional information you are seeking.**

**SA185**

**Kind Regards,**
**The WorthPoint Team**
**www.WorthPoint.com**
**(877) 481-5750**
**Regards,**
Customer Support Team
WorthPoint, Inc

When Plaintiff  contacted eBays' reps, all  of the eBays reps  saw,  when the eBay logo on WorthPoint 's  website  was  clicked,  eBay's website appeared due to their  active  link.  All  my efforts  were focused from August  2015 into  March 2016  on  removing  the  false 1972  Oil Painting  post, listed  publicly on the internet. Plaintiff 's email  to eBay with WorthPoint's  statement has been produced  to both  Defendants in  Discovery in  **Plaintiff 's  Evidence 000016.**  The statement by  Ms. Brooks below  is a prime example  of an  element to claim  fraud  in **#1**  *-A lie or falsehood is  made . and in  the fraud element #2 The  defendant intends to   cause the plaintiff  to do or not do  some particular act based upon   their  falsehood or lie.*  From  Nov. 2016 to  Jan. 2016 Plaintiff   kept contacting eBay  by phone,  after   sending an email in Nov, 2016. to remove the false post.  EBay   claimed the post was a spoof or a fake listing yet also  confirmed they could not remove it.  Plaintiff  lost  a  great  deal of time.  From November  2015  into   January 2016, Plaintiff saw more of   WorthPoint  webpage listings linked to the 1972 oil painting  such as Titanic Lithograph and Thomas  Kincade  were  appearing as separate links  on the internet listed  under Plaintiff' s name and profession.   This is in **Plaintiff's  Evidence 000046**  and  has  been produce to both Defendants.   The new posts  were WorthPoint's  website.  As a consequence   of Ms. Brooks false information,  Plaintiff called  eBay numerous times.   At one point,  Plaintiff  recorded  a 40 minute phone  conversation with four separate  eBay  employees.   All  eBay reps,  went  to  WorthPoint's website to see  the" 1972 oil painting  Man With  Red Umbrella signed  Annamarie Trombetta  " webpage  and clicked  onto the  eBay icon  which   brought  them to  eBay's  website. An  Ebay's senior rep  affirmed to  me the  1972   oil painting  eBay  2012  sale was  **UNDEFINED.**  In short the 2012 sale was not  in eBay record in 2015.  The  same senior  eBay rep affirmed  eBay did not have  the 1972  oil listing on eBay's  website,  it was on WorthPoint  website and that  EBay does not have  the right to  remove the 1972 webpage from  WorthPoint's  website.  My intent to record the

**SA186**

Page 53 of 82

eBay phone call was to have  proof  for  WorthPoint  that  the 1972  oil painting link was indeed on WorthPoint's website. The  documented  eBay  phone  recording. was  produced by Plaintiff to all Defendants in April 2022 and   bate stamped **Plaintiff  evidence 000328**.

Following  eBay's direction, in Jan. 2016,  Plaintiff called  WorthPoint  and left messages. On  Jan.22, 2016  Plaintiff spoke with Anita Brooks, sent emails to WorthPoint  all on the same day and  WorthPoint did not respond.  Plaintiff left  more phone  messages.  Two weeks  later on  Feb. 1, 2016,  I called again.  I spoke with Ms. Brooks  on the  same subject and referenced the fact that I did not  paint the 1972 oil painting advertised on WorthPoint's website under my name  on the internet. recorded in **Plaintiff evidence 000331**.  I reference my call to her on Jan. 22, 2016  and informed her that no one from WorthPoint contacted me.  Defendants and the WorthPoint staff  knew of the false posting  by my verbal and written communication. Their non response and   conditions of the mind then, supports my present  claim of fraud and contributes to the "condition of  mind" alleging the time, and content of the fraudulent  representation.  In  Discovery, Plaintiff  produced one recording with   the two call to  Anita Brooks on Jan. 22, 2016  and  on Feb. 1,  2016 (two weeks later) to Defendants bate stamped  by WorthPoint as   **Plaintiff evidence 000331.**  Plaintiff also produced the Jan. 22, 2016 emails  I was instructed to send to WorthPoint by  Ms. Brooks ' direction. In Discovery, I produced the Jan. 22nd emails in **Plaintiff's Evidence #000022 / Plaintiff's Evidence #000023.** I also produce it  in **Plaintiff's Deposition response 000351,  000352,  000362  and  000363** . From  August 2015 to 2017, WorthPoint  Corp. and their  employee  made  many  false verbal and the false written representation.  This  existing material facts  is susceptible  of being known to be false and  misleading. This caused Plaintiff to lose time, diverted from  my  professional and personal life,  to  pursue eBay in  order to remove the  false 1972 that was coming up  under my name. Defendants, WorthPoint Corp.  and their employees  did so  either knowing the  representation was false, or   without knowing or caring if  it was true or  false.  The email excerpt by Ms. Brooks in Nov. 2015   and her actions in Jan. 2016  is an example  of defendants intent  to cause  the plaintiff to do  or not  do some  particular act based upon   their  falsehood or lie." by pursuing eBay.  Duly document in  the Jan,22  and  Feb. 1 2016 is  Ms. Brooks  affirmation that eBay was  WorthPoint's

**SA187**

information source for the 1972 oil painting. /Defendant intended to induce the plaintiff to act in reliance on that representation.   As a consequence, from August 2015 to Feb. 2016 Plaintiff went around in circles trying to discern the source and which website was responsible for the 1972 internet posting.   More importantly, was trying to pinpoint which party I request a permanent removal for this fake information,   publicly listed under my name. As a consequence of the extended amount of time Plaintiff 's lost to remove the false 1972 internet posting, Plaintiff suffered a causal lost a sale of artwork valued at $8500 to a prominent art collector. Plaintiff inability to remove the false posting determined the buyer's decision not to complete the purchase.

## 2) FRAUD ~ COUNT II ~ SECOND FALSE WRITTEN MISREPRESENTATION

On Feb. 20, 2016 in a dated email response by Mr. Seippel to Plaintiff's first email, I encountered his ambiguous, contradictory statements such as " _**We unfortunately do not take the data from eBay you are asking for.    I do not think that data actually exists anywhere at this point as we are the only persons that have saved this to my knowledge.**_    Conversely and duly documented in Ms.Anita Brooks written statement above and also in phone on January 22, 2016 is her statement that eBay is WorthPoint source to of information. On Feb. 2, 2016, Mr. Watkins stated that the source of WorthPoint's information (and the 1972 oil painting) was from Terapeak.   Mr. Seippel's Feb. 20, 2016 response email to Plaintiff states his company did *"NOT take the the data from eBay "*. On Feb. 20, 2016 Mr. Seippel never stated the source that gave his company the "1972 oil painting allegedly sold on eBay on Dec. 1, 2012 by EAI.   The lack of confirmation or named source led to future problems for the Plaintiff.  Mr. Seippel's Feb. 20, 2016 response email is a prime element of fraud in concert with his June 29, 2022 Declaration This is Mr. Seippel's company. In element *# 3- the* defendant intended to cause the plaintiff to do or not do some particular act based upon their *falsehood or lie.* That act was to confuse or conceal the source of 1972 oil painting information .
In a claim for fraud Element #*4- The plaintiff is justified in relying on the falsehoods or lies told by the defendant.* Since Plaintiff did not create this painting nor have I ever done business with WorthPoint, I was reliant on WorthPoint and it's information they purported to permanently remove the false link from the internet.   In Feb, 2016 Plaintiff, due to Mr. Seippel's written affirmation , I

**SA188**

did not contact EAI to validate if a painting existed or if the eBay sale in 2012 occurred. As aforementioned the eBay senior rep informed Plaintiff that the sale of the 1972 oil painting was "UNDEFINED" . At that time my only care was to get the fake post off the internet. Defendants produced Mr. Seppel's Feb. 20, 2016 email response to Plaintiff RE 1972 Oil **in WP00062** and **WP Evidence. WP00096**. Plaintiff produced Seppel's Feb. 20,2016 email in **Plaintiff's Evidence #000034** and **Plaintiff's Evidence #000039 and #040.** The harm and causal loss to Plaintiff and that exhibits how I suffered was all due to Mr. Seippel's misrepresentation. I was left in a state of unanswered questions and a great loss of time taken away from earning a living and pursuing my artistic endeavors, all done to derail Plaintiff from requesting WorthPoint to remove it's false posting.

**3) FRAUD ~ COUNT III ~ THIRD FALSE WRITTEN MISREPRESENTATION**

Filed on June 29, 2020 in Doc. 61-1 is Mr.Seippel's Declaration, signed on June 24, 2020, Plaintiff produced this in Discovery, and is bate stamped as **Plaintiff's Evidence #000214, #000215, #000216.-** Written in Seippel's 6/24/20 Declaration . Mr. Seippel declared in his filed Declaration in Doc. 61-1 . Seippel alleges in **No.** 5. " *In or around January 2016, I became aware that Plaintiff Annamarie Trombetta contacted WorthPoint regarding an auction listing to the Worthopedia that the alleged infringed her copyrights (hereinafter, the "Allegedly Infringing Auction Listing"). And. on or around February 4, 2016, I caused the Allegedly Infringing Auction Listing, which was displayed at http://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-4892417, to be permanently deleted from WorthPoint's website. Once delete, the Allegedly Infringing Auction Listing was never reposted to Worthopedia."* . Mr. Seippel failed to realize the Plaintiff's Feb. 20, 2016 email had three attachments. Plaintiff's three attachment are seen in **WorthPoint's evidence WP000074.** The Google print out attachment is dated Feb. 17, 2016 . The same date of Feb. 17th

is listed under the Marilyn Monroe WorthPoint link which was also linked to the 1972 oil painting, is the written in statement blue is *"Last visited on Feb. 17, 2016"*. Plaintiff's produced the Feb. 20, 2016 email referencing the Feb. 2016 Google print out in **Plaintiff's evidence 00038.** The actual Google print out with the statement *" You visited this page many times. Last visited Feb. 17, 2016 "* was produced to both Defendants in **Plaintiff's evidence 00033, Plaintiff's evidence 000035B 000075A** and is in **Plaintiff's Deposition Evidence 000370** with an expanded view of the date in **000371**. This Google print out with the Feb. 17, 2016 date refutes and contradicts' Mr. Seippel's No. 5 Declaration statement, in which Mr. Seippel claims the false post was removed on Feb. 4, 2016. Plaintiff on Feb. 17, 2016 first visited the 1972 oil painting page and also visited the 1972 oil webpage site linked to the Marilyn Monroe 1988 WorthPoint webpage. In Mr. Seippel's Declaration statement # 6. Seippel wrote *"On February 20, 2016 I received an email from Plaintiff Trombetta which stated that a reference to the title of the Allegedly Infringing Auction Listing remained visible when she conducted a "google search for the painting "1972 Original Oil Painting Man with Red Umbrella signed Annamarie Trombetta." Shortly thereafter, on March 1, 2016 I responded to Plaintiff Trombetta's February 20, 2016 email and I informed her that "we have taken down any pages that you have asked to have taken down as a courtesy to you" and that any reference to the Allegedly Infringing Auction Listing in her Google search reflected the past" and was the result "of that search engine memory."* In Plaintiff's Feb. 20, 2016 email was an active link for the the fake 1972 internet ad and included this active, live link in my Feb. email. Further in **WorthPoint's evidence WP000134** there is proof that the false link was on the internet in 2017. On Jan. 4, 2017, Plaintiff sent an email to Will Seippel. Mr. Seippel failed to respond to me.

http://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-4892417,

It is evident , Seippel's 2020 Declaration contradicts the evidence produced by his own attorneys in

**WP00062** and **Evidence. WP00096** which is Mr. Seippel's Feb. 20, 2016 response to Plaintiff first email to Mr. Seippel also dated Feb. 20, 2016 . Mr. Seippel's Declaration filed with the Court in Doc. 61-1 has three elements of fraud **1** -A lie or falsehood is made. **2**- By the defendant with scienter, and the statement is false, or that there is no basis for believing that the information is factual .**3**- The defendant intends to cause the plaintiff to do or not do some particular act based upon their falsehood and lies..Will Seippel's Declaration was filed in support of Seippel's Motion to Dismiss Plaintiff's claims.

This caused the Plaintiff to address and filing a response with the Court to confront (ie to do some particular act based upon their falsehood or lie.) and to maintain and have my claims survive in my case. As a consequence of Mr. Seippel's false misrepresentation os the facts to the Court, Plaintiff's efforts and time were diverted to file responses to Seippel's false Declaration, in order to prevent the dismissal of my case. Plaintiff's evidence in this filing reveals Mr. Seppel's Declaration is not factually correct and reveals willful perjury on the part of Mr. Seippel.

**4) FRAUD ~ COUNT IV ~ FOURTH FALSE WRITTEN MISREPRESENTATION**

Plaintiff's fourth claim of fraud and false written misrepresentation is the the visual copyright



symbol vector © along with WorthPoints' statement © *Copyrighted work licensed by WorthPoint"* that is depicted to the left.

In general the definition and use of a "C" with a circle around the letter, or use the word "copyright," by any party, indicates to all who view it and is notice to the public that the work is copyrighted, The party/parties or company using the © is/ are the owner of the work. This false use a copyright symbol with my name and biography falsely nearby harmed me and absconded my exclusive copyrights while concurrently and falsely associating me with eBay, WorthPoint and Estate Auctions Inc., companies selling low quality goods. In Discovery, I addressed my concerns.

# SA191

Plaintiff begins illustrating my points with my <u>first</u> set of interrogatory questions WorthPoint's produced responses on April 8, 2022 to document my questions with Defendants answers.

<u>Plaintiff's Interrogatory #10.</u> Present and specifically identify what the WorthPoint Corporation's has copyrighted by the statement "Copyrighted work licensed by WorthPoint" with the copyright symbol vector © that was in added to the 1972 Original Oil Painting Man With Red Umbrella " that was misattributed to the Plaintiff Annamarie Trombetta. Ex. What in particular is being copyrighted by WorthPoint Corporation?

*__WORTHPOINT"S RESPONSE:__ WorthPoint objects to this Interrogatory on the grounds that it includes multiple requests under the guise of one. WorthPoint objects to this Interrogatory on the grounds that it incorrectly implies that WorthPoint misattributed the subject painting to plaintiff, which isexpressly denied. WorthPoint furthermore objects to this request to the extent that it seeks a legal conclusion. __Moreover, WorthPoint is not sure what the Plaintiff is seeking in this interrogatory as use of a copyright symbol is not the act of copyrighting a work.__*

Indeed the use of a copyright symbol is not the act of copyrighting, thus an improper application is a direct violation of the Plaintiff's DMCA rights- WorthPoint circulated false CMI on the internet. On July 1, 2022 WorthPoint attorneys responded to Plaintiff 's <u>second</u> Requests and wrote the following statement regarding the "© vector symbol and the phrase "Copyrighted work licensed by WorthPoint" which clarified what the © copyright vector was intended to convey,-—BELOW

*WorthPoint 's attorneys wrote on July 1, 2022 :*

*"you appear to be under the impression that WorthPoint is claiming copyright in the subject artwork, which Estate Auctions sold. WorthPoint is not claiming any copyright in the artwork or the listing. <u>The notation "© Copyrighted work licensed by WorthPoint" means that it is __somebody else's copyrighted work__ and that WorthPoint licensed the right to reproduce it.</u> As you can see from the confidential licensing agreement produced to you, WorthPoint has a contract with eBay's authorized distributor to download and publish certain information about past eBay listings. The subject listing was one of such eBay sales results that were mass-downloaded and posted as per WorthPoint's licensing agreement. "© Copyrighted work licensed by WorthPoint" is automatically placed by the computers on all such downloaded licensed listings.*

Plaintiff is the WorthPoint description of "somebody else " whose copyrighted works were NOT authorized by to license. For the record Plaintiff has never licensed my self authored biography at any time to another party. WorthPoint's explanation and description does not justify the use of my name, the use biography next to the Copyright symbol with WorthPoint's licensing claim.

The next issue Plaintiff brings to the Courts attention is the subject of the source of the eBay

source of  all  of WorthPoint;s sales records and or  information.  As noted aforementioned,

Plaintiff, on Feb. 3, 2016 spoke with Greg  Watkins, WorthPoint's official webmaster.  Mr. Watkins

stated that WorthPoint's "middleman"  for obtaining information  was Terapeak.  Moreover, on

April 8, 2022 WorthPoint's attorneys  produced bate stamped evidence  titled WorthPoint Evidence

titled "Confidential- trombetta- **terapeak**- extract  as  **WP000038, WP000039** and  **WP000040.**

WorthPoint used the Terapeak name  in their  Confidential documents  that contain Plaintiff's  full

biographical text. WorthPoint  has  no right to label   my biography as *"Confidential"* . WorthPoint

has absconded my copyrighted  information  without my CMI  and is using my full biography   as

evidence in this case.   The  EAI  ad is on WorthPoint's website was duly noted by the Plaintiff  to the

Court as being  truncated mid sentence.  The ad and the bate stamped evidence using the name

Terapeak,   differ in  size and content from  actual content in the  ad that was  on WorthPoint

website .  WorthPoint explanation is that they did not modify the text taken from  Terapeak . My

attempt to clarify who licensed  my biography was  met by WorthPoint in  a generic reply.

On July 1,  2022  WorthPoint's attorneys  responded to Plaintiff's No. 5 Interrogatory  Plaintiff's

PLAINTIFF"S  REQUEST  No. 5  Submit name of the Terapeak department contact source for the
"1972 Original Oil PaintingMan With Red Umbrella" that was bought by WorthPoint Corporation.

*WORTHPOINT'S RESPONSE: WorthPoint has no responsive information. Again, licensed listings are mass-downloaded and not individually licensed. WorthPoint does not have information as to whichdepartment at Terapeak, if any, was in charge of licensing any particular listing.*

On August 15, 2022 Plaintiff addressed this  issue of  WorthPoint's licensing rights again .

PLAINTIFF'S  INTERROGATORY No. 6
What is the basis for WorthPoint Corporation's claim for licensing rights for mass downloading?

*WORTHPOINT' S  REPSONSE  : WorthPoint objects to this request on the grounds that it exceeds the scope of a permissible Interrogatory under the Local Rules of the Southern District of New York. Subject to, and without waiving the foregoing objections, WorthPoint states that it licensed the right to republish certain eBay data from its licensing partner identified in WorthPoint's Production,WP000001-000035, which documents also set forth the terms under which WorthPoint may download <u>and use the subject  "eBay data".</u>*

# SA193

On Feb. 20, 2016  in a  dated email  response from Mr. Seippel  to Plaintiff, Mr.  Seippel said " ___We___

___unfortunately do not take the data from eBay you are asking for.___     ___I  do not think that  data___

___actually exists anywhere  at  this point as we are the only persons that have saved this to my___

___knowledge.___     Plaintiff notes to the Court, my interrogatory did not mention  or ask about "eBay"

rather the Defendants set forth " the subject eBay data.  WorthPoint's attorneys' response  in 2022

contradicts  Mr. Seippel CEO and owner of WorthPoint, statement in 2016.

Plaintiff's Interrogatory  regarding WorthPoint's licensing agreement  on August 15, 2022  was

attempted   once again in the following question:

PLAINTIFF'S  REQUEST  No. 6: July  2022
Produce all documents of or relating to the " 1972 Original Oil Painting Man With Red
Umbrella that were mass downloaded per WorthPoint's licensing agreement.

***WORTHPOINTS RESPONSE on  August 15, 2022***
*: WorthPoint objects to the characterizations employed by this to the extent that it implies that
a single listing may be mass-downloaded.   Subject to and without waiving theforegoing
objections, WorthPoint refers plaintiff to its document production, Bates Stamps WP000038-
WP000040. WorthPoint is not in possession of any further responsive documents.*

Once again,     **WorthPoint's  WP000038-WP000040**  response refers to Plaintiff's complete text

of my biography that WorthPoint unethically  obtained and are now using as  *" Confidential "*

evidenced deemed to be WorthPoints.  The emotional harm and stress that is inflicted by

Defendants continued attempts to dominant and gain possession of my self authored  copyrighted

biography is yet another violation and infringement.   WorthPoint's responses  are based in

WorthPoint's  falsehood and assumptions that are not legally valid and are  devoid of copyright

laws and licensing standards in any and  all  legitimate  agreements. WorthPoints claims are

undefined  for  their own personal gain and conceal their infringements against valid copyright

owners. In **Plaintiff'sEvidence 000406**  is a Declaration by Will Seippel in another case  filed

03/02/15 Page 3 of 4 Page ID #:74 for Case 2:15-cv-00112-MWF-E Document 21-1.  In March 2015

Will Seippel **claims to have a contractual agreement with Terapeak  which is the company**

named in 2016 by the WorthPoint Webmaster Greg Watkins.  Plaintifff, during Discovery was in

pursuit a the Terapeak  licensing agreement . Plaintiff was reliant on the information of the

**SA194**

WorthPoint employee Greg  Watkins and the legally documented WorthPoint Terapeak agreement duly documented in the Declaration of Will Seippel in 2015  in another lawsuit against WorthPoint. Allegedly the eBay sale took place in 2012 and I spoke with Mr.Watkins and asked who was the "source" or middleman for the 1972 oil ad in 2016. Below is an excerpt from **Plaintiff'sEvidence 000406** in  another 2015  Declaration by Will Seippel for Rosen vs. Terapeak.

*7. Much of the data in the Worthopedia was obtained pursuant to a contractual agreement between WorthPoint and the Canadian Company Terapeak,line.("Terapeak").WorthPoint's  contract with Terapeak was not executed in California and does not rely on California law.*

Element #2 is - (the statement is false, or that there is no basis for  believing   that the information is factual).   The explanations  above by WorthPoint Defendants  have no no basis  in reality and in believing   that the WorthPoint's  information is factual. The attorneys  keep referencing my copyrighted work  as  WorthPoint's  bate stamped confidential evidence.  This exemplifies   another element of fraud . WorthPoint 's false  presentation  of Plaintiff  biography  infers that I  authorized WorthPoint  to use to my biography which is not true particularly since I did not create oil painting and  the sales records are false.  Nothing in WorthPoint's evidence in WP00038- WP 00039 and WP00040 is authentic or true  which  exemplifies   WorthPoint 's  falsehood and false  claims with the intent to exploit the Plaintiff's copyrights and  cause Plaintiff  harm, particularly in this prolonged litigation.   Both Defendants have absconded  my rights and diminished the value of my copyrighted work which was unauthorized and  incorrectly and unethically used.  I  owned  the copyright  and my biography should be only  viewed on my  personal website or to those I gave  written permission such as askART in the year 2015. The adherence of a copyright  symbol falsely implies WorthPoint has the copyright to use my biography which is a false  misrepresentation.    This willful and caviler intent to take over other peoples' rights by circulating a false copyright management information "liberally by general false claims  is a  prime reason  why Plaintiff is  requesting  Permanent Injunctive  Relief.

### 5) FRAUD  ~  COUNT  V ~  TANGIBLE CONVERSION (BIOGRAPHY IN CATOLOG) TAKING  AND MISAPPROPRIATION PLAINTIFF BIOGRAPHY

**A)**  A  party has a cause of action for conversion when (1) the plaintiff has an exclusive right of possession, (2) into which the defendant, (3) intentionally, (4) interferes with that right.  In general, conversion fraud deals with tangible goods.   The Plaintiff 's  claim for tangible conversion fraud is founded on  my exclusive  right of possession to my  original,  self authored biography.  It is  is a "literary work" written in prose and  is an individual  artistic  expression which  exists  in a tangible form in    my self published catalog .   My self authored biography   is   also "fixed " and exists in a digital form  on my professional and personal website.   A  fraud  conversion  claim is applicable to intellectual  property rights  if it is merged in the physical  form and in this instance,  it is.   My infringed biography exists in  two personal  tangible forms.   Violations  occur when a   person without authority or permission  intentionally takes  the personal property of  another or   deprives the Plaintiff   of the limited  possession of  my exclusive rights  to my self authored  biography in my personal catalog.  Plaintiff produced to  both Defendants  in   **Plaintiff's Evidence  000086  to 000107**   my catalog that has my same  personal  biography that was infringed by  both Defendants. WorthPoint Evidence  titled "Confidential-trombetta-terapeak-extract  **WP000038, WP000039, WP000040** contain my self written  statement   _"All of the imagery in this catalog was either created en plein air or from the subject  directly."._    My statement referencing my catalog is in every version  to include  the Defendants EAI and WorthPoint's  and their Confidential evidence. using  my biography.   Both  Defendants included and  reference my catalog  in their  false  eBay ad for the 1972 oil painting and both  Defendant s partook in  the improper  and  unauthorized relocation of personal  property that appeared on eBay, the website of EAI and the website of WorthPoint Corp.

**B)**    There are two  "improper" connotations and uses by the Defendants regarding my biography. First and  foremost,  I  did not  paint the 1972 Original  Oil  Man With Red Umbrella nor did I sign the painting.  This is a  proven fact.  Plaintiff  produced  my childhood signature . It  is in **Plaintiff's evidence  000260,  000316** also  in script and print number  **000495**.  The EAI signature  in red

**SA196**

produced in Discovery by EAI, in April 2022,  misspells Plaintiff's first name and adds a space between ANNA and MARIA. The use of my personal, self authored biography is "Improper" as it is wrongfully applied, I am not the artist who created the 1972 oil. This conversion as aforementioned is unauthorized in every way. The EAI use of Plaintiff's biography was for commercial and selling purposes for a damaged 1972 oil painting. In like fashion, WorthPoint's website's chief purpose is to report the " commercial sales records" of items sold on eBay. WorthPoint has a membership fee/charge in order to view the sales price. It is not free to see the selling price. Both Defendants have used my biography for commercial gain, ergo it is not fair use, rather both Defendants perceive my name and biography as "fair game and falsely claim " fair use" . Plaintiff's self expression in my biography is original was never authorized to be used by Defendants as such . As a consequence of the unauthorized use of Plaintiff 's biography by both Defendants, WorthPoint Corp. in particular, Plaintiff lost a sale of artwork to a prominent collector who most likely would donate her collection to a public museum. The financial and professional adverse effect that this one infringement had on Plaintiff ( copyright owner) ability to earn income resulted in sustained inequitable financial and professional losses.

**C)**   To make a claim for conversion, a plaintiff must show "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." (internal citation and quotation omitted) . Defendants have produced as "**Confidential " WorthPoint evidence as WP00038,  WP00039 and WP00040** which contains the Plaintiff's complete biography as it is in my catalog and on my website. Defendants titled this document "Confidential-trombetta-terapeak-extract. Plaintiff brings to the Court attention the reason why I was requesting the WorthPoint Defendants to produce the "Terapeak " licensing agreement for two reasons:

First :Defendants' evidence labeled my biography as Terapeak extract and took over my biography.

Second, : on or around Feb. 3, 2016 Greg Watkins is duly recorded as stating that eBay gives date to s the middleman "Terapeak"  or source for WorthPoint's information. Plaintiff throughout this

seven  and a half  year ordeal (and counting)  has heard   multiple answers to the very simple questions. In some cases there  are multiple responses to one   question or request.  WorthPoint's "habit" or "technique"  of multiple , differing  answers is now collectively  presented to the Court in each count of Plaintiff's claims for  fraud.

**D)**      Defendants and their attorneys  present yet another contradiction to the Court  regarding the Plaintiff's biography and it's length.   Despite the visual documentation  within the  WorthPoint's webpage  for the 1972 oil painting  that reveals  the last sentence was cut off  and ends in  four numerous dots … ,  both Defendants  are now claiming  that Plaintiff's biography was fully used in the original  EAI eBay ad.  Estate Auctions Inc has failed to produce any evidence for their claim. EAI failed to produce the original 12 photos of the painting and failed to state in writing where the signature in red, which was in pencil, was duly  located.

For the sake of brevity, I will leave this claim to the Defendants to explain in detail.
 On the WorthPoint  website webpage duly documented   and in all of the Plaintiff's  emails to Will Seippel and Greg Watkins,  the last visible sentence  of my biography on the WorhtPoint website   for the 1972   damaged  oil painting  webpage ad   was   "***Viewing so many different cities and cultures in a concentrated period of  time ….***"  and was visible truncated and cut off.   The second half of my sentence that was  truncated  was     "***helped me to see the similarities  as well as the differences of each quite  clearly*** *.*  The  rest  of my biography was never  visible.   Plaintiff notes to the Court that WorthPoint's Confidential   "Terapeak  Extract"  contains my entire   biography. The last ending biographical sentence in    WorthPoint's evidence  and  also  now deemed WorthPoint's" Confidential"  evidence  are the names of my personal esteemed colleagues, probably unknown to both Defendants.

 ~   " *These individuals include Everett  Raymond  Kinstler, Raymond Steiner, Harvey Dinnerstein, Burton Silverman, the artist's in The Painting Group particularly Aaron Shikler, David Levine, Danny Schwartz, IreneHecht. I thank them for their help and guidance in my life. <br>   ~*
On my  website 's biography page. this last sentence has my copyright statement **"*All work on this site are ©Annamarie Trombetta. All rights reserved*"**.

**SA198**

Page 65 of 82

WorthPoint' self designated labeling of my copyrighted property should not be considered " the confidentiality designation 'Confidential' that is proprietary to WorthPoint. " WorthPoint's documents are devoid of any indication of any designated legitimate source. WorthPoint took the very first to the very last word of my copyrighted biography on my website and removed and or left out my copyright statement *"All work on this site are©Annamarie Trombetta. All rights reserved."* which is my CMI. The content of WorthPoint's falsified Discovery documents is in fact the text of the Plaintiff 's copyrighted biography and therefore, it is the Plaintiff's copyrighted property. WorthPoint's alleged evidence deemed as "Confidential" contains 1354 words from the Plaintiff's full biography. To prove conversion claim of fraud , a plaintiff must allege: "**(1)** the property subject to conversion is a specific identifiable thing; Plaintiff gives a personal, detailed description of my life experiences, from childhood ( Regina Pacis Church) to my formal training in high school at the Brooklyn Museum and ending with the names of my personal esteemed colleagues in the art world. **(2)** plaintiff had ownership, possession or control over the property before its conversion; and Plaintiff's catalog and website were printed created in 2003. The EAI ad for the damaged 1972 oil painting (albeit incorrect) was allegedly sold in 2012, which was nine years after my website biography and catalog were created. **(3)** defendant exercised an unauthorized dominion over the [property], to the alteration of its condition or to the exclusion of the plaintiff's rights." Moses v. Martin, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (citation and internal quotation marks omitted). The "conversion " and addition of the EAI introduction and the description that precede the Plaintiff true biography of the damaged 1972 oil painting (albeit incorrect) is roughly 230 words was allegedly created to sell a painting in the year 2012. Plaintiff's biography on WorthPoint's website was roughly 420 words. The word count for my entire biography is roughly 1360 words. Moreover, WorthPoint Corp. 's website and webpage added a copyright vector *" ©Copyrighted work licensed by WorthPoint"* which had the WorthPoint logo. The copyright vector and statement infers that WorthPoint and Plaintiff have a business agreement which misrepresents the Plaintiff and is a bonafide false association. It is precisely this unauthorized and incorrect conversion that constitutes fraud.

**SA199**

**6)** *COUNT  VI  FRAUD   ~   CONTRADICTORY  WRITTEN  DISCOVERY  RESPONSES MISREPRESENTATIONS TO PLAINTIFF  CONSTITUTING  FRAUDULENT  CONDUCT*

Throughout this case Plaintiff has repeatedly requested WorthPoint's attorneys to produce simple requests in writing or in documented evidence.  On many occasions  WorthPoint's attorneys set forth  "Boiler Plate"  responses  to Plaintiff's legitimate  questions.  One subject in particular  pertains to the  the date, year and  essentially the time frame  indicating when WorthPoint "ingested " as Ms. Farmer  wrote,   the internet posting on  WorthPoint's website for the "1972 Original  Oil Painting Man With Red Umbrella eBay sale by EAI.

Plaintiff  requests throughout the Discovery period began in Feb.2022.   I set forth my dated Interrogatories  and Production of Doc. requests before the Court.  My request for the day, month and year  for  the false link and when it was  added to Defendants website has been consistent. The  significance  to the  length of time  of  Defendant's  circulation of   " false" copyright management information with my name is relevant to the extent of  liability and   is contingent upon the length of time that the false post  was on the WorthPoint  website.   Knowing the date when the false  1972  posting using Plaintiff's name  on WorthPoint's website  may  potential increase Plaintiff's  damages  pertaining to the length of time that this   false  1972 eBay sale was circulated on the internet with false  copyright  management  information.   Below are Plaintiff's  direct requests  to  Defendants' attorneys for the time,  month and  year, when the 1972 listing was posted on WorthPoint's  website.

PLAINTIFF"S  FIRST RESPONSES FROM DEFENDANTS   **ON APRIL 8, 2022**  FOR DATE OF 1972 OIL PAINTING POST ING    ON  WORTHPOINT" S   WEBSITE

On **April 8, 2022**   Plaintiff' first set of Interrogatory requested  the times months, and years :

Plaintiff's Interrogatory 4.   List and describe WorthPoint Corporation's historical meta data from 2011 to  2018 to include the times, months and years when the WorthPoint ad for the "1972 Original Oil Painting Man With Red Umbrella " was added to the www. worthpoint.com website and internet. Include the dates and written proof ,meta data-for the ad.

***WORTHPOINT'S RESPONSE:***   *WorthPoint objects to this Interrogatory on the grounds that it is vague, ambiguous and incomprehensible in its entirety. WorthPoint objects to this request on the grounds that it is,  in part, a request for production and not an Interrogatory.   WorthPoint*

*objects to this Interrogatory on the grounds that it incorrectly implies that the subject listing was an advertisement as opposed to a record of a past sale.*  ***Subject to and without waiving the foregoing objections, WorthPoint is not in possession of any information as to any metadata related to the subject listing.***

Also on **April 8, 2022**  which is the first set of Interrogatory in Plaintiff' requested

PLAINTIFF' S   INTERROGATORY  # 5.    Identify, list and provide proof in writing detailing the month, year and   length / DURATION of time that WorthPoint Corporation listed the misattributed "1972 Original Oil Painting Man With Red Umbrella " Oil Painting.

***WORTHPOINT"S RESPONSE:*** *WorthPoint objects to this request on the grounds that it is, in part, a request for production and not an Interrogatory. WorthPoint objects to this Interrogatory on the grounds that it incorrectly implies that WorthPoint misattributed the subject painting to plaintiff, which is expressly denied. Subject to and without waiving the foregoing objections, at present* ***WorthPoint cannot respond with certainty as to the date the subject listing was posted to WorthPoint's website.***     ***It was removed on February 4, 2016.***

PLAINTIFF"S  SECOND  RESPONSES FROM DEFENDANTS  ON **JULY 1, 2022**  FOR DATE OF 1972 OIL PAINTING POSTING   ON  WORTHPOINT' S WEBSITE

On **July 1, 2022**  Plaintiff's  second set of Request for Production was

PLAINTIFF'S  REQUEST  No. 1:
Produce and/or Identify in writing the month and year when the "1972 Original Oil Painting Man With Red Umbrella WorthPoint Ad " was uploaded to the internet.

***WORHTPOINT' S RESPONSE:*** *WorthPoint is not in possession of any responsive documents or information.*

On **August 15, 2022**  Plaintiff  received Defendants Response to my Production of Documents

PLAINTIFF'S  REQUEST  No. 1: on July 15, 2022
Produce and/or Identify in writing the month and year when the "1972 Original Oil Painting Man With Red Umbrella WorthPoint Ad " was uploaded to the WorthPoint website. If you claim that part of any response is privileged or otherwise immune from discovery; (a) identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.

***WORHTPOINT' S RESPONSE:***     *WorthPoint is   **not**   in possession of any responsive documents or information.*

Plaintiff  brings to the Courts attention  this subject of the date and year when WorthPoint posted  the 1972 Original Oil Painting  on  WorthPoint's website with relative reason.   On August 23, 2022  in Doc. 267,   Jana Farmer filed a letter with the Court.   On Page 1 in bold type is written

**SA201**

 " *No information as to how long the  listing was* **"on the Internet":**  *Ms. Farmer wrote  "Plaintiff also noted that defendants did not state how long information about the sale of the subject painting was on the Internet. WorthPoint responded that it does not control the Internet, and WorthPoint does not know what other parties may have posted ontheir websites. Thus, WorthPoint could only respond approximately when the subject data about the eBay listing was ingested into WorthPoint's systems and when it was removed."*

 I note to the Court, Plaintiff  responded to Ms. Farmer's letter to the Court  and   filed letters addressing the dates  in Doc. 270 filed on August 25, 2022 and in  Doc.274 filed on August 29, 2022  and documented  in my  request for this date. It  has been met with the  same response omission  by  WorthPoint's attorneys, who   once again claimed at the end of August 2022 :

<u>"WorthPoint is not in possession of any responsive documents  or information.</u>

 First I  remind the  Court that WorthPoint's attorneys consist of   three   separate people, Adam Bialek. Jana Farmer and Nicole Haimson.  The date that  Plaintiff  sought and the responses were given by all three of  WorthPoint's attorneys.   I regret to inform the Court that  upon viewing evidence  there is a definite designated  date for WorthPoint  posted the 1972 oil painting ad. Plaintiff  sets  forth the  day, month  and year to be  March 5, 2013,  as the   time when  the 1972 Original Oil Painting Man With Red Umbrella was posted on WorthPoint's website.

 If  WorthPoint  had just one attorney, and the one attorney overlooked this date, one might surmise this was a simple mistake. To reiterate, I asked the same question at three different times and all of   three of WorthPoint's attorneys denied knowing the exact date when the 1972 listing was posted to  WorthPoint's website.  Plaintiff  now adds a  willful denial, omission and or a  knowledge of  a  falsity,  which  caused the Plaintiff  to be reliant upon  the Defendants for pertinent information that effects the degree of  damages in my  case.  The request of  this significant   information has been a  constant by  the Plaintiff.   The absence of a non defining period of time  minimizes the liability for the infringement  caused by the Defendants. Collectively, with the  other counts of fraud preceding this  finding, Plaintiff is inclined to  infer  negligence, recklessness  conduct that is also unprofessional and unethical.  Plaintiff  feels at this point,  any alleged evidence  produced by the

Defendants is suspect to be  questioned.  To deny not knowing  the date after a letter was filed with the Court on this subject, is a direct  false accusation by WorthPoints attorneys that jeopardized the integrity and  character of the Plaintiff,  in the eyes of  the Court and in the public filings of this case. Aside from  this Plaintiff was forced to respond and find the time to write letters to the Court to assuage the  Defendants accusations against the Plaintiff.  Given the numerous times I have requested the day-month year when  WorthPoint's website  posted the 1972 oil painting eBay sale,  I  assert that Defendants  either willfully concealed this information or were negligent in viewing this information. Each plausibility cause  has harmed the Plaintiff tremendously in time and in my public persona. and misrepresentation to the Court.    Plaintiff' was reliant upon the Defendants _not_ to receive such a   direct falsity and misleading  contradictory response.  To date the multiplicity of contradictory responses  by both  Defendants contributes to  Plaintiff's  emotional and physical  distress that has delayed filing my  Proposed Amended Complaint on December 12, 2022.  I have been suffering profusely from emotional distress   since I was abruptly and improperly served an additional summons and complaint on August 30, 2022  from  WorthPoint Corporation and owner Will Seippel; a complaint riddled with incorrect facts and  statements and filed in a state I have never entered.

**7)** *COUNT  VII  FRAUD  ~  WORTHPOINT'S  FRAUDULENT CONDUCT   BY*

*OMISSION  OF 2017  EMAIL  RESPONSE FROM  WILL SEIPPEL OR  JASON PACKER*

The next issue Plaintiff presents to the Court has to do with WorthPoint's omission of a response to Plaintiff's Jan. 4, 2017  email sent to  Will Seippel  to inform him of the reposting of   the  false 1972 internet link  which was on his company website andwon the internet again coming up under Plaintiff's name. ( **Defendants'  Evidence  WP000132 WP000133**) .   Despite my Jan, 4, 2017 email outreach to Will Seippel , regarding the reposting of the 1972 Original Oil  Painting internet listing ,  Plaintiff never received  any response from anyone at WorthPoint  Corp.  In April 2022, WorthPoint's attorneys  produced Plaintiff's  Jan. 4, 2017 email in Discovery.  I saw  written communication between Will Seippel  and Jason Packer  dated on  Jan. 4 and  on Jan. 5 2017, confirming  the internet post for the 1972 oil  painting  was on the internet  yet no one from

Worthpoint's staff ever responded to Plaintiff's Jan. 4, 2017 email. In Defendants' evidence in **WP000134** there is verified proof of Plaintiff's claim that the 1972 Oil Painting internet post was reposed and seen publicly on the internet. The failure by Will Seippel and WorthPoint Corp. to contact or respond to the Plaintiff and failure of WorthPoint to permanently remove the reported false 1972 Oil Painting in 2016, almost a year earlier, has contributed to my assertions that Mr. Seippel did not respond and did not permanently remove the false 1972 ad when I requested and reported this information to three of his staff to include Mr. Seippel. Mr. Seippel in 2017 did not inform me there was a technical problem or that WortthPoint was working on this issue. The willful silence by WorthPoint was alarming and created stress from 2017. This extreme denial and unyielding legal battle has pushed the Plaintiff to the brink of exhaustion and created unending stress.

Plaintiff reminds the Court of Mr. Seippel Declaration in Doc. 61-1 filed on June 29, 2020, Seippel alleges in **No.** 5. " *In or around January 2016, I became aware that Plaintiff Annamarie Trombetta contacted WorthPoint regarding an auction listing to the Worthopedia that the alleged infringed her copyrights (hereinafter, the "Allegedly Infringing Auction Listing"). And. on or around February 4, 2016, I caused the Allegedly Infringing Auction Listing, which was displayed at http://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-4892417, to be  permanently deleted from WorthPoint's website. Once delete, the Allegedly Infringing Auction Listing was never reposted to Worthopedia."* . WorthPoint's evidence in **WP000134** affirms that Mr. Seippel Declaraion claim that WorthPoint "PERMANENTLY DELETED" are false. The 1972 oil painting post is indeed yet another false misrepresentation to the Court and the Plaintiff. It is now evident that in 2017, the lack of an email response by WorthPoint, was willful and deliberately done to avoid or conceal the fact that WorthPoint looked up and knew the 1972 Oil Painting link was on the internet again. WorthPoint never admitted to any mistakes or issued any apology at any time. If this was done, Plaintiff would not assert willful concealments and omission. It is in litigation and in reading the WorthPoint evidence produced in Discovery that Plaintiff saw the Jan. 4 and 5th 2017 communication between Mr. Seippel and Mr. Packer. As a result Plaintiff has endured a plethora of problems. I suffered personal, emotional,

professional and  financial  losses  beyond  measure and belief.

Plaintiff ends the subject of  Fraud and Misrepresentation   by noting to the Court that most  of

the  Defendants evidence is has been  either concealed,  misrepresented,  deficient  or missing a

significant component that  prohibit the  Defendants evidence from being  trustworthy or verified.

Evidence such as the Jan. 4th and Jan. 5, 2017 email  between Will Seippel and Jason Packer was not

known to the Plaintiff until it was produced  five years later in 2022.  Additionally, the denial by all

three of WorthPoints' trio team of attorneys regarding the  day, month and year posting of the false

link on WorthPoint's website was indeed brought to  their attention and that of the Court's attention
numerous time by the Plaintiff.   All  of Plaintiff's inquires did not prompt any of  the attorneys to

review their  evidence  to check when    the  day, month  and year  could be. It is clearly noted to be

March 5, 2013, when  the 1972   Oil Painting Man With Red Umbrella was posted on WorthPoint's

website.

## A.  FIVE   ELEMENTS  OF  FRAUD RELATED TO WORHTPOINT CORP .

**1. Misrepresentation**—   WorthPoint's false references to the Plaintiff as the artist of the 1972 oil
painting—ie  fraudulent  copyright management information (CMI) on the WorthPoint website,  This
is  one of the root causes of this lawsuit. To  remove the fake ad, Plaintiff  followed  the instructions
from  Defendants staff to report and remove fraudulent content from the WorthPoint website and the
internet,  to no avail.  WorthPoint deceived the Plaintiff  into believing that the WorthPoint  website
technical support services and their staff  would assist in  immediately and permanently removing
the fraudulent listing from the internet which was  repeatedly requested  by Plaintiff.  WorthPoint's
present  inability to produce their  own records, receipts and computer data that the Plaintiff
submitted is proof that their information and directions misrepresented  to the Plaintiff ways to
permanently  remove  the  fraudulent  1972 oil painting links.  WorthPoints' denial of the date, month
and year when WorthPoint's website posted the ad for the 1972 eBay sale is a direct false
misrepresentation to the Plaintiff who is reliant upon Defendants  for their  purported  information

**2)  Knowledge of the material falsity** - Since August  2015,  Plaintiff has consistently pursued
both Defendants, particularly WorthPoint by reporting and requesting to remove the fraudulent
internet listing  of  1972 oil painting and   to find out and confirm  who was the eBay seller.
Defendants admit they  never had  photos of the painting. As a registered DMCA agent,  WorthPoint
Corporation and its staff are  responsible and liable  for adding and removing the CMI to any content.
The use of the  WPC logos and using the copyright vector  with the term" *copyrighted work licensed
by WorthPoint"* without any photos or verified proof  to the artist signature   is an example of  willful
recklessness,   misrepresentation and a willful attempt to deceive the public .  Registered DMCA
agent are required to know the rules for copyright and licensing claims and to immediately cease and
desist and remove reported false infringements. Plaintiff's continually contacted WorthPoint from
August till Nov. 2015.  On Jan. 22, 2016,  I directly informed Ms. Brooks and followed her
instructions and sent emails by WorthPoint's website.  No one contacted me despite leaving
phone messages and emails .On Feb 1, 2016 due to a lack of response Plaintiff made  a direct

phone call  again to Ms. Brooks . This eventually led to the start of the removal which still took weeks to removee .  Removing items from a website should be immediate and  not produce complications, waste so much time or surface on the internet after the item was properly removed.  Defendants within this lawsuit are implementing a delay and deny tactic, same as  that experienced by the Plaintiff back in 2015 to 2017. WorthPoint's failure of to produce their own take down tickets ##56607 and ticket # 57565 and emails  dated on and after Jan. 22, 2016 that I sent using their website address reveals a pattern to conceal WorthPoint;s   material evidence and the falsity of WorthPoint's  knowledge that WorthPoint  receive   Plaintiff's requests to report and to  request a permanently removal for the  false listing on Feb. 4, 2016.

3)  **Inducing the other party to rely upon it.** In  2015 and 2016, the defendants misrepresented  and  misdirecting  Plaintiff to 1) contact eBay 2) submit removal/ take down tickets and emails  to WorthPoint website3) speak withWebmaster GregWatkins who  then informed Plaintiff to email to CEO Will  Seippel.  Plaintiff never  failed to investigate the truth of the defendant's statements.  Plaintiff was reliant upon the  website webmaster/IT tech  and  staff at WorthPoint to inform Plaintiff  that WorthPoint would  removed the fake ad.  Plaintiff  followed through on  all written and verbal  instructions from WorthPont and relied upon agreements by WorthPoint that consistently  failed to achieve and remove the false 1972 eBay EAI internet post.  Plaintiff was reliant  upon the Defendants documented communication via the WorthPoint  website. Plaintiff is still reliant on WorthPoint to set forth known evidence that should be in WorthPoint;s  possession.  The Defendants absence of evidence  and verified proof of the dates of entry for the false 1972 internet posting  and concealed   Jan 2017 communication between Will Seippel and Jason Packer constitutes an  intentional and willful  motive to deceive the Plaintiff and the public.

4)  **Justifiable reliance of the other party**  The Defendants long term failure to permanently remove the fraudulent 1972 ad and links from the internet  determined  the course of Plaintiff's actions in commencing  this lawsuit.  The Defendants as DMCA registrants to the US Copyright Office are responsible to uphold the DMCA rules.  Defendant Will Seippel Declaration  willfully intended  to declare fraudulent statements and claim  the removal date for the false infringements as Feb. 4, 2016. Discovery by WorthPoint's own evidence and that of the Plaintiff reveal fraud.   The Court is reliant upon the Declaration by Will Seippel to determine this case.  Defendants documented distortion of Plaintiff's CMI created confusion and was  duly circulated on the internet for many years.  This false information caused the  Plaintiff reliant upon WorthPoint to remove false CMI that WorthPoint created and Plaintiff is now reliant upon the Defendants to end this lawsuit.

5)  **Injuries  and Damages.**   The Defendants False CMI clam under a  signature  A. Trombetta is  a significant causation for this  lawsuit.  The causation of  Plaintiff's losses are  numerous. In  2015, at a time of great expansion and artistic  opportunities, commissions, articles and sales— and fully immersed in advancing my career, Plaintiff was forced to deal with a destructive and fake internet  post.  In 2015,  Plaintiff  lost the sale of an $8500 oil painting, the opportunity for  gallery representation due to the false posting and association with eBay, Estate  Auctions 's 99 cents auctions and WorthPoint  Corporation's false CMI purported publically  a false licensing agreement. Plaintiff has lost seven   years of her life to fight  false claims which  are  still ongoing.   Plaintiff is requesting  Permanent Injunctive  Relief to prohibit the Defendants from  using   the Plaintiff's name and exhibits filed and submitted  for the  purposes of this  lawsuit or any other images or  texts that are circulating on the internet .The  Plaintiff's causation of loss generated by this  litigation , repeats the same  harmful patterns  and makes the Plaintiff  a consistent  victim  to the   Defendants' fraudulent  claims  in order to satisfy the Defendants  deceptive fraudulent assertions.  The loss my time, all and any related  of sales of  artwork, the loss of my professional credibility and the time dedicated to this lawsuit is beyond profession and emotional  measure and beyond  rehabilitation.

# Elements of Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress has four elements: (1) the defendant must act  intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress.

On August 30, 2022 Plaintiff was served by  WorthPoint Owner and CEO, Will Seippel with a Summons and Complaint for Intentional Infliction of Emotional Distress. The way in which I was served was not in a typical way.  Below is a summary of the servers actions and abrupt way that I was accosted  and served  a summons and complaint  from another state that has no personal jurisdiction over the Plaintiff. Plaintiff was vulnerable and liable to set forth an  immediate response to WorthPoint's frivolous lawsuit or else be subjected to summary judgement and financial debt to the unethical  filing by WorthPoint Corporation despite a lack of personal jurisdiction. The unending  legal responses work imposed upon the Plaintiff has adversely effected my health and emotional stability which in general, is very strong and stable.  Below are the true facts describing the Defendants'  abrupt and frightening service of their summons and complaint on the same day Plaintiff endured a nine hour deposition by four attorneys.

1)On Tuesday, August 30, 2022, on or around 9 :00 a.m. I, was scheduled to be deposed as a party witness in a deposition called for by defendant WorthPoint Corporation and conducted by the attorneys at Wilson, Elser, and Moskowitz, the law firm representing WorthPoint Corporation in the above identified litigation. The deposition took place at Wilson, Elser offices, located at 150 East 42nd street in NewYork, New York 10017. The deposition was nine hours long.

2)Prior to leaving the lobby at Wilson, Elser, Moskowitz at 150 East 42nd street New York, I reached into my satchel strapped across my shoulder, unzipping the front compartment to obtain my transit metro card. At that time I was about to leave the lobby and began to walk outdoors. While speaking on the phone, I walked outside along Third avenue and 42nd street to proceed home. I had one hand on my cell phone while speaking and had my metro card in the other hand.

3)As I reached the corner of 42nd street, the traffic light turned red which prohibited me and amass of people from crossing the street. While still speaking on the cell phone with one hand and holding my metro card in the other, I suddenly felt someone tugging at my satchel that was strapped across my shoulder. That sudden movement startled me and I became immediately frightened of being the victim of a pickpocket. I turned around and saw no one in the crowd yet saw pages of papers on the pavement. My thought was these came from the opened compartment of my satchel and picked them up, believing they were papers I had prepared from my nine hour deposition and stuffed them back into the unzipped compartment of my satchel. I was quite shaken by this encounter.

**SA207**

4)Moments later I inspected the papers and realized they were not from my satchel. Someone had dropped these papers near me on the sidewalk or even tried to put them on or in my satchel and the papers fell to the ground. This was perhaps a way to get me to pick up these papers.

5)Upon full inspection at home, I saw that the papers were a complaint of a law suit filed against me in Georgia by WorthPoint Corporation, the party in my New York federal copyright litigation. In addition, it named the owners of WorthPoint Corporation, Will and Shari Seippel whom I have never spoken to or met at any time. I did not see a date of entry or a signature on the bottom of the summons yet know that the absence of a date of entry for service is crucial to the timed response

6) I waited two week to see if a mailing of the summons and complaint from Plaintiffs, Will and Shari Seippel or WorthPoint Corporation would arrive at my home address at 175 East 96th Street (12 R) New York, New York. To date, I heard nothing from anyone in Georgia nor did I receive any mail by regular or certified mail that would be a copy of the summons and complaint from Will and Shari Seippel or WorthPoint Corporation.

7)Concerned of what would happen if the Georgia legal matter would proceed in this matter in which I believed I was completely improperly served, I contacted the Fulton County Superior Court in order to find out if an entry of an affidavit of service was ever filed. One source in particular called me back. Upon hearing that I was improperly served as a courtesy the employee in the civil rights unit at the Fulton County Superior Court, Mr. E Brian Watkins, emailed me the Affidavit of Service Index No, 2022CV 366175. See attached here to

8)When I perused the Affidavit of Service, I read what the process server had documented on Tuesday August 30, 2022 at 7:45. The process server stated: "I asked the DEFENDANT whether he/she was in the military service of the United States Government, or of theState of New York. and received a negative reply". I was shocked to read that, because of course at notime had anybody ever spoken to me on August 30, 2022 at 7:45 or before or any time after. The process server also wrote: " Upon information and belief based upon the conversation and observation as aforementioned that the DEFENDANT is not in the military. This cleary was not true. I was conversing with a friend of mine on my cell [phone call began at 7:40 from inside the lobby before and after I left the building where I was deposed. At no time did anyone speak with me, other than the party on the phone.

The WorthPoint Defendants intentionally served me an unsigned summons with incorrect facts in the complaint that render the listed  statements false and incorrect,  all  due to the lawsuit in The Southern District of  of New York for Copyright Infringement VARA and the DMCA violations which were ruled on in Dec. 21, 2021.  The Defendants did this on a day that I just had a nine hour deposition.  As a consequence of this sudden and abrupt lawsuit which was timed on the day that I was deposed. Since this frightful trauma,  Plaintiff has experienced a loss of sleep, a sever loss of concentration which is adversely  affecting my ability to keep up with the time sensitive filings for my case in New York.  Moreover  Plaintiff has never been to the state of Georgia, nor has ever conducted any business there.    Despite this, and upon losing much time and energy away from my

case and the deposition in New York,  Plaintiff  even though improperly served, was obligated to respond, or risk the Defendants tactic to  file a Motion for Summary Judgement.   On October  28, 2022 Plaintiff held a Meet and Confer and  several items were demanded of the Plaintiff which I produced immediately.  On October 31,2022 Fact Discovery for this case was scheduled to end. Defendants wrote a letter to the Court stating  Plaintiff did not comply with Defendants Discovery requests and as a result the Court extended the Discovery dates.  On the same day of October 31, 2022,  WorthPoint's attorneys in Georgia filed a Motion for Summary Judgement. Similar to the overt  factual mistakes in the first complaint, the summary judgement  stated that I filed a late response on  November 5, 2022. which is virtually y impossible and and  incorrect statement  as the date of filing by the  attorney in Georgia was on October 31, 2022.

Plaintiff reminds the Court that I have no legal training nor did I ever take any courses in law or legal procedures.   I say this because with each filing and with an additional lawsuit in another state of Georgia, Plaintiff has been burdened with the challenge of figuring out how to respond to the laws applicable in Georgia.  These deliberate lawsuits were imposed upon me to derail or exhaust me from my attention toward my case in New York.  Regrettably,  I  am feeling the effects and have been told by friends and family that I keep repeating my statements and that I look so fatigued and disheartened  with what has happened to me.  I simply did not sign or paint the 1972 oil painting nor did I sign it.  I have a right to have my name disassociated with a damaged painting that is not  mine yet bares a similar name.   My friends and family can see the difference and note that I am stressed from the tactics and demands from this case.

I HAVE HAD TO ENDURE UTTER TORTURE  ALL BECAUSE  I  CHOSE TAKE  A STAND  AND  PROTECT  MY  OWN  NAME  AND THE FACT OF MY OWN LIFE  SO THAT COMPLETE STRANGERS WHO HAVE  DEMONSTRATED  RECKLESS  BEHAVIOR  AND DO NOT HONOR OR ACT WITH INTEGRITY   CAN CONTINUE TO INCORRECTLY USE AND EXPLOIT MY NAME  FOR THEIR OWN  GAINS.  IT IS INDEED  PUZZLING AND PAINFUL TO THE POINT OF STATING  THIS TRAUMA HAS INFLICTED   PAIN  IN MY  **PAIN**TING CAREER THAT CAUSED IRREPARABLE AND  IRREVERSIBLE  DAMAGE.

Plaintiff,  due to the unnecessary sudden and litigious imbalances  was unable to file my Proposed Amended Complaint  due to illness on it's original due date.

## TORT  CLAIM  FIRST COUNT   NEGLIGENCE

Negligence is a civil tort which occurs when a person breaches his duty of care which he owed to another due to which that other person suffers some hard or undergoes some legal injury. Negligence can be explained as the failure of discharge or the omission to do something due to careless behavior.

First Count of Tort is  Negligence.    According to CPLR 213(2) the statutes of limitation in  New York for  civil tort  is six years in writing or with  an oral contract. Plaintiff on Jan. 4, 2017 contacted in writing Will Seippel regarding the re posting and re ingesting the false internet listing  for the  1972 Original Oil Painting that was under the Plaintiff's name again.   Despite a written documentation of my sent email there was no response from Will Seippel.  WorthPoint's Discovery documents reveal and confirm as duly documented  in written  email communication between Will Seippel  and Jason Packer  on  Jan. 4th and 5th  2017, confirming  the internet post for the 1972 oil  painting  was on the internet. At  no  time did any one respond to my email in 2017.   In Defendants'  evidence i  WP000134,  verified proof  of Plaintiff's  claim that the 1972 Oil Painting  internet post was  reposted  and  seen publicly on the  internet.  The failure to properly and permanently remove the  false  internet post for the 1972 oil  painting and the failure to respond or communicate to Plaintiff constitutes willful concealment and willful fraud.

## TORT  CLAIM  SECOND  COUNT   NEGLIGENCE

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

On Feb. 1, 2022  at the request of WorthPoint's attorneys Plaintiff was requested to write a settlement letter. Attorney Anderson Duff duly communicated that his clients were  held up in Bankruptcy Court due to Plaintiff's  litigation. Despite being advised  to engaged  or discuss settlement  offers

prior to  litigation by friends and retired attorneys, Plaintiff did agree to writing a letter.  As is

Plaintiff' s way,  I responsibly found out what needed to be included in the Settlement letter.  I gave a

recap of all my actions to both Defendants prior to litigation  .  I found cases related to my claims and

listed all the damages and rules  pertaining to each of  my claims.  The letter was quite long as this

has been going on for over seven years.

   Plaintiff  wrote out in words the amount Plaintiff was seeking for my settlement offer.  Plaintiff

did not hear from  any of the attorneys.  At the same time Plaintiff was experiencing for the first time

ever,  Vertigo.   At the same time due to the stress of interviewing lawyers for possible representation,

Plaintiff in addition to the recent Vertigo developed a sty and swollen eye,  As a result of the  stress

from litigation, and the sudden onset of Vertigo, Plaintiff fell and fractured a rib due to this lawsuit

and all the unexpected sudden demands that were imposed upon me, all at once..  I ask the Court to

consider the time Plaintiff has  lost just to avoid litigation and to have the false listing permanently
removed from the internet in a non litigious, civilized manner . Secondly, I simply did not do this

painting. When EAI failed to respond to my attorneys ' letter, I  followed the advise of my legal

colleague to legally  declare I am not the artist of the 1972 oil painting   for future documentation and

records. Third,  the major denials  of any wrongdoing and infringements in concert with the  minor

settlement offers by EAI,   prompted the Plaintiff to be vigilent  in protecting my name and my

rights. Plaintiff did not cause these infringement, nor did I immediately file a lawsuit.

**EXHIBIT #1  Doctor appointment with Benjamin Tweel for Vertigo**
**EXHIBIT #2   Emergency Eye Infirmary Visit Sunday Feb. 20, 2022**
**EXHIBIT #3  Doctor 's Letter and  Visit with  Benjamin Zaremski  Vertigo and fractured rub**

As a result this sudden intense bombardment of demands despite honoring my agreement by

responsibly writing a settlement  letter in mid Feb. 2022, none of the Defendants attorneys contacted

me regarding my  settlement letter. Instead, the attorneys wrote a letter to the Court and falsely stated

that Plaintiff did not write  a  monetary amount, when in truth, Plaintiff most certainly did.   The

reliance Plaintiff had on the  Defendants to be responsive and communicative with the Pro Se

Plaintiff was not experienced.  Plaintiff did conduct a Meet and Confer as well as emailed the

Defendant regarding my eye condition. I did communicate my sudden medical limitations to all the attorneys. The actions by the Defendants attorneys falsely conveyed to the Court that I was disrespectful to the laws and rules that I had agreed to in producing a settlement letter . Plaintiff notes that this is an assault on my character and is misleading and misinforming the Court and was intentional. This problem could have been avoided through simple communication from the Defendants. As aforementioned Plaintiff was experiencing sudden health issues that needed immediate attention. Plaintiff was then ordered to write another. settlement letter and was indeed concerned due to threat of sanctions. When your intentions are honorable and responsible, when they are perceived as anything less, injury occurred for the Plaintiff.

Despite past failed settlement attempts, the Plaintiff during the most recent Nov. 23, 2022 Conference Call, brought up the subject of settlement discussion again. Both Adam Bialek and EAI attorney Anderson Duff rejected any possibilities for any discussions to take place. Immediately, following the Conference Call attorney Anderson Duff sent Plaintiff an email with the subject entitled "Increased Attorneys Fees. Plaintiff reminds the Court that the sum of both of EAI's settlement offers combined equal an amount to be less than three numbers.

On Dec, 2, 2022, WorthPoint's attorney Adam Bialek emailed Plaintiff with the subject matter regarding citing the copyright Act 505. for attorneys fees. The willful rejection and refusal of the EAI Defendants and the WorthPoint Defendants and their attorneys to deny any settlement discussions while concurrently sending emails to the Plaintiff taunting and informing me that they are seeking an award for attorneys fees constitutes emotional distress. I am not the artist who painted the 1972 oil nor should my biography been used to sell this painting.

**EXHIBIT #14  Dec. 2, 2022  Email Subject   Attorney's Fees from Adam Bialek**

**EXHIBIT # 15 Summons of Complaint in Georgia WITHOUT SIGNATURE**

**EXHIBIT #16 Complaint in Georgia page 3 of 7 Wrong Dates and Facts for 18-Cv-0993 NYC**

**EXHIBIT #17 January 11,2021 Certified Mail Will Seippel**

**EXHIBIT # 18 Affidavit From Server Freddit Simon**

**EXHIBIT # 19 Summary Judgement in Georgia  Filed October 31, 2022**

## SUMMARY  OF  ARGUMENT

Plaintiff seven Counts of Fraud against WorthPoint Corporation  are  detailed while defining  the circumstances and  false misrepresentation and the  causal losses and harm  all of the Defendants fraudulent  actions have had on the Plaintiff.  The  countless mistakes by WorthPoint  can be literally be  "counted" as multiple  Counts of Fraud,  defined in  Plaintiff's  Proposed  Amended Complaint. The unending problems, delays demonstrated and  implemented by WorthPoint Corp. have been a burden  for many  years.  Plaintiff  has been a victim to WorthPoint's bumbling business practices.   In litigation of I have been  a victim to WorthPoint's  chicanery  and attempts to inflict both emotional distress and to inflict the financial debt  for WorthPoint's legal fees upon the Plaintiff.

## CLAIM FOR RELIEF

1. Plaintiff consistently informed all WorthPoint Corp. employees and  owner, Will Seippel  that I did not  paint the 1972 Original Oil Painting Man With Red Umbrella. This false attribution of my biography and a fake signature  to my name was attributed to the aforementioned oil painting. Plaintiff seeks damages for public identity theft and copyright infringements.

2. Plaintiff consistently informed all WorthPoint Corp. employees and  owner that I was nine years old , did not paint in oils then and  I too small to paint an oil  four feet in height.

3. The Defendant's communication to the Plaintiff  to contact eBay to remove this false post was a false and incorrect  communication to the Plaitnff. The Defendant's used to exploit the Plaintiff reliance on the Defendants while concurrently posting other WorthPoint links such as Marilyn Monroe or Thomas Kincade  with and  under Plaintiff's name on the internet.

4. As stated above , there was  never any  employer-employee relationship and or licensing agreement  between the Plaintiff and the Defendants.

5. At no time did Plaintiff verbally of  ever signed or authorize WorthPoint or WorthPoint's Licensee, undefined to be eBay, Terapeak or AERS that any entity could license my biography.

6. Defendants willfully extracted  in the guise of evidence   allegedly from Terapeak,  my full and complete biography  that WorthPoint now  alleges was used  in  EAI eBay ad for  the 1972 oil  painting  Man With Red  Umbrella. Plaintiff seeks statutory damages for direct copyright infringements.

7. Hence, the Defendants willfully and intentionally violated the Plaintiff's exclusive copyright to my self-authored artistically  expressed biography. A pattern of  repeated activity to willfully repost the false 1972 ad on the internet under  Plaintiff's name that is the proximate cause of the individual's harm. Plaintiff sets forth claims for  statutory and compensatory damages   for  WorthPoint's  willfull  and deceitfully   committing fraud.

8. In summary no one has the right to alter, change or expose to the public, a false signature or rewrite the chronological facts of my life. No other source can falsely claim a copyright or falsely claim a licensing agreement when no proof of documents of proof to verify such claims have been produce or even exist. This is the root cause for commencing this lawsuit. Plaintiff set forth claims for VARA, Direct Copyright Infringement, violations of the Digital Millenium Act and willfully committing fraud on a public worldwide internet platform.

9. My case validates the inequitable and adverse effect that one false attribution during an artist's lifetime can "BLOCK and IMPEDE" an artist's professional progress and hinder one's status. Plaintiff is requesting statutory, actual and compensatory damages for all infringements and willful actions to commit fraud.

10. The Discovery evidence and the lack of evidence has continued to consume the Plaintiff life, while imposing unending demands upon someone who has been victimized and embarrassed by public identity theft. The misuse my name with malicious intent by the Defendants and to burden an artist, who is not a lawyer with overwhelming litigation in multiple courts, has caused unending emotional distress, particularly since Plaintiff did not paint the 1972 oil painting and produced into evidence proof of my 1972 childhood signature

This lawsuit brings attention to the realization that any "source" can write, state or claim a false attribution or use an artist's name on a work of art— ( or what is ascribing to be art). A great deal of time and many opportunities were lost to refute the false 1972 misattribution, a causal loss that has harmed my integrity, caused me to lose my time, earn a living and blocked my ability to create my own new works of art and has presently given me emotional distress. The Discovery evidence and the lack of evidence has continued to consume the Plaintiff life, while violating the Plaintiff biography . The misuse my name with malicious intent by the Defendants to burden an artist, who is not a lawyer with two lawsuits in different states was overwhelming to any lawyer. The timing for such legal obligations and deadlines was deliberately orchestrated by both Defendants to overwhelm the Plaintiff. The voluminous demands and request by the Defendant s for Discovery have invaded Plaintiff's personal life, persona, facts and personal and professional contacts Each violation by Defendants warrants the Plaintiff's Request to include Fraud and Permanent Injunctive Relief against Norb and Marie Novicin, EAI and WorthPoint Corporation.

As a Pro Se Litigant, Plaintiff asks the Court to grant my Proposed Amended Complaint to includes applicable request to include FRCP Fraud 9(b), and IIED.

Defendants will not suffer undue prejudice from the filing of Plaintiff's Proposed Amended Complaint because **1)** the fraudulent allegations asserted in the Proposed

Amended Complaint are more specific and conclusive than that asserted in the Original or Operative Amended Complaints **2)** both Defendants alleged harm to the Plaintiff from the Original and Amended Complaint has **increased** with the new evidence **3)** the more-specific fraudulent definition is being asserted before the close of the Discovery and within the time frame to amend pleadings set out in the modified Scheduling Order **4)** Both Defendants' discovery has only been through admissions, production of documents and interrogatories and depositions **5)** the newly- alleged facts and evidence in Plaintiff's Motion of my Proposed Amended Complaint are already well-known to the Defendants and in their possession. For these reasons, Plaintiffs respectfully ask that the Court grant Plaintiff's Motion for Leave to File the Proposed Amended Complaint to Include Fraud, Intentional Infliction of Emotional Distress and the request for Permanent Injunction and Other Equitable Relief.

WHEREFORE, Plaintiff, on behalf of herself and others artists who have been victimized by Estate Auctions Inc. WorthPoint Corporation, I respectfully request that this Court grant Plaintiff's Proposed Amended Complaint to proceed forward to include Fraud, Intentional Infliction of Emotional Distress and Permanent Injunctive Relief and grant Plaintiffs such further relief as this Court deems just and proper.

Dated: December 23, 2022                                  Respectfully Submitted,


Annamarie Trombetta                          ——Electronic Signature——
175 East 96th Street
New York, New York 10128                    */s/ Annamarie Trombetta*
                                             _____

 Pro Se Litigant                                 Annamarie Trombetta

**SA215**

# EXHIBITS

**EXHIBIT #1  Doctor appointment with Benjamin Tweel for Vertigo     CONFIDENTIAL**

**EXHIBIT #2   Emergency Eye Infirmary Visit Sunday Feb. 20, 2022       CONFIDENTIAL**

**EXHIBIT #3  Doctor 's Letter and  Visit with  Benjamin Zaremski  Vertigo and fractured rub**

**EXHIBIT #4  Nov. 23, 2022  Email Subject  Increased Attorney's Fees from Anderson Duff**

**EXHBIIT # 5    Nov. 16, 2022 Mr. Duff's email with EAI000066  EAI eBay receipt**

**EXHIBIT # 6   Second Production of Ebay receipt on Nov 16, 2022  numbered as  EAI000066**

**EXHIBIT # 7   Plaintif's Octobre 29, 2022 Request  for Ebay Receipt**

**EXHIBIT  #  8   Plaintiff's Evidence 000151 dated email March 5, 2015, Plaintiff email to Mr.Bahr for  biography  recommendation to askART.**

**EXHIBIT  #  9  Plaintiff's Evidence 000150**  dated email from June   6, 2015 documented the Plaintiff written communication to Bob Bahr  regarding Plaintiff's biography on askART.

**EXHIBIT  #  10  Plaintiff's Evidence 000153 Wayback Machine confirming 2015 year for Plaintiff's askART biography on askART website.**

**EXHIBIT  # 11 Plaintiff's Evidence 000154  Wayback Machine confirming 2015 year for Plaintiff's askART biography on askART website.**

**EXHIBIT  # 12  WorthPoint's evidence WP000141 and WP000141 2010 askART listing for Plaintiff's askART biography on askART website MISSING PLAINTIFF's NAME**

**EXHIBIT  # 13  WorthPoint's evidence WP000143 and WP000144 2014 askART listing for Plaintiff's askART biography on askART website MISSING PLAINTIFF's NAME.**

**EXHIBIT # 14  Dec. 2, 2022  Email Subject   Attorney's Fees from Adam Bialek**

**EXHIBIT # 15 Summons of Complaint in Georgia WITHOUT SIGNATURE**

**EXHIBIT # 16 Complaint in Georgia page 3 of 7 Wrong Dates and Facts for 18-Cv-0993 NYC**

**EXHIBIT # 17 January 11,2021 Certified Mail Will Seippel**

**EXHIBIT #1 8 Affidavit From Server Freddit Simon**

**EXHIBIT # 19 Summary Judgement in Georgia  Filed October 31, 2022**

**SA216**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Annamarie Trombetta

Plaintiff, Artist

Write the full name of each plaintiff.

-against-

Estate Auctions Inc.

Norb and Marie Novocin

Defendants

WorthPoint Corporation

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

18 CV 00993

(Include case number if one has been assigned)

PROPOSED SECOND AMENDED COMPLAINT ⯆

Do you want a jury trial?
☐ Yes     ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

**SA217**

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case? .

☑   **Federal Question**

☑   **Diversity of Citizenship**

### A.  If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

Direct Copyright Infringement Act

Visual Artist Rights Act

Digital Millenium Copyright Act (CMI)

### B.  If you checked Diversity of Citizenship

#### 1.  Citizenship of the parties

Of what State is each party a citizen?

The plaintiff, __Annamarie Trombetta__ , is a citizen of the State of
(Plaintiff's name)

New  York

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

**SA218**

If the defendant is an individual:

The defendant, __Norb   and Marie Novocin__ , is a citizen of the State of
(Defendant's name)

__Delaware__

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, __Estate Auctions, Inc.__ , is incorporated under the laws of

the State of __Delaware__

and has its principal place of business in the State of __Delaware__

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

Annamarie Trombetta

| First Name | Middle Initial | Last Name |
| --- | --- | --- |

175 East 96th Street  (12  R)

Street Address

| New York | New York | 10128 |
| --- | --- | --- |
| County, City | State | Zip Code |

(212) 427-5990                atrombettaart@gmail.com

Telephone Number               Email Address (if available)

Page 3

**SA219**

If the defendant is an individual:

The defendant, **WorthPoint Corporation** , is a citizen of the State of
   (Defendant's name)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

If the defendant is a corporation:

The defendant, **WorthPoint Corporation** , is incorporated under the laws of

the State of **Georgia**

and has its principal place of business in the State of **Georgia**

or is incorporated under the laws of (foreign state)

and has its principal place of business in

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

Annamarie Trombetta

| First Name | Middle Initial | Last Name |
|---|---|---|

175 East 96th Street  (12  R)

Street Address

| New York | New York | 10128 |
|---|---|---|
| County, City | State | Zip Code |

(212) 427-5990                    atrombettaart@gmail.com

Telephone Number                    Email Address (if available)

Page 3

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

Norb                          Novocin
First Name                    Last Name

Owner Estate Auctions Inc
Current Job Title (or other identifying information)

12221  Old Furnace Road
Current Work Address (or other address where defendant may be served)

Seaford                       Delaware        19973
County, City                  State           Zip Code

Defendant 2:

Marie                         Novicin
First Name                    Last Name

12221  Old Furnace Road
Current Job Title (or other identifying information)


Current Work Address (or other address where defendant may be served)
Seaford                       Delaware        19973
County, City                  State           Zip Code

Defendant 3:

Estate Auctions Inc.
First Name                    Last Name


Current Job Title (or other identifying information)

12221  Old Furnace Road
Current Work Address (or other address where defendant may be served)

Seaford                       Delaware        19973
County, City                  State           Zip Code

**SA221**

Defendant 4:     **WorthPoint Corporation**

First Name                          Last Name

Current Job Title (or other identifying information)

**5 Concourse Parkway      NE   Suite 2850**

Current Work Address (or other address where defendant may be served)

**Atlanta                      Georgia              30328**

County, City                        State                Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence:     Fraudulent Internet Post  Counterfiet Artwork Copyright Infringement Identity Theft  IIED

Date(s) of occurrence:   **August 2015 to Present**

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

SEE ATTACHED     SHEETS FOR ESTATE AUCTIONS  INC.

NORB NOVOCIN A and MARIE NOVOCIN

SEE ATTACHED     SHEETS FOR WORTHPOINT CORPORATION

Page 5

**Attachment of Facts From Original Complaint with Defendants Norb and Marie Novicins**

**Estate Auctions Inc.**

1. In late summer of 2015, I found a Fraudulent internet posting using my name and biography . This painting was allegedly sold in December 2012 by Estate Auctions Inc, which is owned and operated by Marie and Norb Novocin who sold a painting that they falsely misattributed to me. Initially the seller was not known to be until months later. The first company I contacted was eBay.

2. In time I learned that on December 1, 2012 Marie and Norb Novocin sold an Oil painting dated 1972, entitled "Man with a Red Umbrella". In their description listing was an internet posting and link that the painting was signed Annamarie Trombetta and that I painted it in 1972. They also included in the description on the internet a photo of a signature on the painting which is not my signature. The photo signature is A. Trombetta. The painting description documents that it was signed Annamarie Trombetta. The Estate Auction Inc. description stated there were " 12 photos . The photos of the images were not visible online, only the photo of the A. Trombetta signature signed in oil.

3. In 1972 I was nine years old and was not painting at all. My website biography makes that clear. Estate Auctions Inc. copied information from my artistic website and listed my biography on their on-line store for their e-Bay internet site . This posting was listed under my name and profession/Artist listing on the internet. This is how I found and kept finding false links and additional information.

4. Value--The 1972 "Man with the Red Umbrella" sold for $181.50 and was described as a large oil approx. 17 1/2 wide X 48 1/2 tall. The description states that there is a tear in the canvas 5/8 long and is described as "shabby chic". Further, the EA Inc. listing stated that the painting was "signed on the bottom but on the back it has written in red on the stretcher, Annamarie Trombetta " Gifted" 1977, Painted 1972. I did not paint in oil until 1981.

5. This damaged low bid priced painting which is falsely attributed to my name posted on the internet greatly devalues my work and the integrity of the quality of my materials used to create my work. This is defamation.

6. The prices of my artwork at present are **not** listed **on the internet nor on my website.** The Estate Auction Inc. misappropriated sale which attributed a false damaged painting with a low price to my name undermines the value of my work which constitutes libel. Some examples of my current retail value is 2 inch by 2 inch miniature oil painting sold in 2016 for $500. A painting sold in 2017 is an oil size 16 inch by 20 inch which was purchased for $5500.

7. I created all the content--text(biography) and visuals on my website and I am the sole owner and author of that content. The Digital Millennium Copyright Acts permits others to use the text for education but does not for the use to gain a profit.

8. I never gave Estate Auctions Inc.the right to use my name nor to use the content of my biography. As the owner of the copyright I did NOT sell the reproduction rights nor did I sell the license to print while I retain the Copyrights. No such transaction with either EA Inc or WorthPoint happened.

9. I am a New York artist who creates, sells & exhibit my work in NY City. Most of my subject matter is of New York, Central Park in particular. In 2015 I had 2 solo exhibits on my Central Park artwork, one venue was at a museum. The false painting was posted on the internet and is visible throughout the world. The internet posting was up since the sale of December 1, 2012 until 2017.

10. This posting caused the value and sales of my work to decrease. I know of one lost sale due to this posting after my two solo exhibits in 2015.

11. Estate Auctions Inc. defines themselves under their description for the 1972 Original Olil Painting Man With Red Umbrella Signed Annamarie Trombetta YQZ as the " seller of Antiques, Collectibles and Quirky items on eBay. E Bay is described as an internet multi-national e-commerce corporation. Estate Auctions Inc states that they have been in business "since 1998. ALL of their auctions start at 99 cents.

12. The misappropriated painting and the use of my name in association has been posted on the internet since the sale of the fraudulent artwork on December 1, 2012 according to Gregory Watkins who is the website master at WorthPoint.com. WorthPoint is an internet website which posts the sales made by Estate Auctions Inc. The photo feature of the signature A.Trombetta--a signature that was NOT MINE featured the ebay logo and had with the © symbol & "Copyrighted work licensed by WorthPoint".

**To clarify my reason for this legal action I will give a brief history prior to commencing this lawsuit.**

13. **History**--Beginning in 2015 I had two solo exhibitions. There were four articles written on my exhibits which in time were on the internet.

14. In mid August 2015 a colleague brought to my attention the false posting using my personal and detailed biography which was listed on the Worthpoint,com website stating that the painting was sold . The e Bay logo and statement a copyright logo and the statement "Copyrighted work licensed by WorthPoint" appeared under a signature "A.Trombetta painted in oil on canvas which is not mine.

15. From late August to October 2015 I kept contacting e Bay by phone and via e-mail to no avail and /or derived any conclusive information.

16. From late October 2016 I kept contacting Worthpoint.com which was the website which listed the posting of the misappropriated painting sold by Estate Auctions Inc. I was unable to contact or receive a response until I signed onto their website Membership. Anita who worked at WorthPoint was my phone contact. After many calls I informed her that I was NOT the artist who painted this image etc. In February 2016 I spoke with Worthpoint's Web Master/Designer Gregory Watkins at (770) 344-9182. Mr. Watkins gave me the e-mail of William Sieppel will@worthpoint.com & I was given a removal ticket # 57675. In time the internet post disappeared.

17. In December 2016 I found the WorthPoint posting on the internet again under Annamarie Trombetta & Artist Annamarie Trombetta. This time I and one of my collectors, Teri Meissner contacted the original seller of the false painting which was Estate Auctions Inc. Upon receiving a no answer response, I phoned Marie Novocin on January 10th 2017. Shortly after I received a phone call from Norb Novocin . In short he stated they did nothing illegal and that I should "GO FOR IT and hire an attorney".

18. In January 2017 I also contacted Will Sieppel CEO at WorthPoint.com via e-mail to have the second posting removed AGAIN from the internet.

19. In September of 2017 Attorney Megan Noh of Cahill Cossu Noh & Robinson sent a Letter to Marie & Norb Novocin for Settlement Purposes. Megan Noh did not receive any response. She called to confirm receipt of the letter which Marie Novocin did confirm yet she refused to accept any liability.

20. In October 2017 I made a report with the BBB of Delaware. A response letter from November 28, 2017 was forwarded to the Delaware Better Business Bureau by Marie Novocin which contained either incorrect and or false statements. These Statements regarding myself and the Letter from Attorney Megan Noh are:

21. In March 2019, EAI Defendant issued a statement " *We now understand that at least one third-party internet site scraped information about the December 1, 2012 eBay sale that contained the mis-attribution naming Ms. Trombetta and reposted the same on its website at least twice. Because Estate Auctions has no control over this third party, Ms. Trombetta had difficulty removing this information from the website. We regret that this error added any stress to an artist's life, and, although this is the only misidentification of any painting sold by Estate Auctions about which we are aware, we have taken steps to ensure that such a misidentification does not occur in the future*

22. In April 2019 Judge Ronnie Abrams held a Settlement Conference in her chambers to resolve and end this issue. A nominal amount of meager means was

**SA225**

the end result. Plaintiff in Doc 22 did file a settlement proposal to attempt to see the painting and red signature and or the 12 original photos . Defendant made no attempt to respond.

23.   In October Judge Abrams granted Plaintiff VARA claims and to amend my complaint to include WorthPoint Corporation and Will Seippel.

24.   On January 17, 2020 Plaintiff Annamarie Trombetta submitted my first Proposed Amended Complaint to include Will Seipple and WorthPoint.com and or Corporation.

25.   On January 2020 EAI Defendants made another low settlement offer. On the date of response on February 1, 2022 the email for attorney Anderson Duff was blocked and no longer working.   Defendant's attorney frustrated communciation.

26.   On June 26, 2020 Defendants filed a Motion to Post a Bond against the Plaintiff for attorneys fees in the amount of twenty thousand dollars.  Both settlement offers combined are a few hundred dollars and yet they filed for thousands of dollars

27,   On March 2021 Plaintiff filed for a Motion for Sanctions against EAI which was denied.

28.   On December 21, 2021 Judge Ronnie Abrams granted three surviving Claims to include the Visual Artist Right Act,  Direct Copyright Infringement and the Digital Millennium Copyright Act.

29.    In February and March 2022 Plaintiff was asked to write and produce two letter for Settlement Offers . Both offers were rejected by Both Defendants

30.   In April 2022 Discovery was produced. EAI red signature misspelled the Plaintiff's name in multiple way. Plaintiff produced my signature from 1972 .

31,   Discovery has continued from February to December 16, 2022.

32.  Plaintiff submits a Proposed Amended Complaint to include Fraud, Intentional Infliction of Emotional Distress , Tort and Permanent Injuctive Relief.

**Attachment of Facts for Defendant Will Seipple and WorthPoint .com/Corporation**

1. In late summer of 2015, via the internet, Plaintiff found a false posting under her name Annamarie Trombetta and under "Artist" - Annamarie Trombetta . The false posting was on an internet website entitled WorthPoint .com. There was a photo with a © symbol and statement "Copyright work licensed by WorthPoint" which also had the e Bay logo in color that was next to a description of a painting that had authentic biographical content from the website of the artist, Annamarie Trombetta. Plaintiff/artist did not paint in oil in 1972 nor is the signature in oil paint by the hand of artist Annamarie Trombetta. This statement insinuates that a Licensing Agreement to establish a legally binding contract between the person who owns the intellectual property and a person who receives a license to use the IP is in existence. The image and statement next to the fraudulent use of my biography also communicates to the online viewer that the signature "A.Trombetta painted in oil is created by the Plaintiff which it is not. This constitutes identity theft and copyright infringement.

2. The Plaintiff's first attempt to find out who posted the internet link for the purpose of removing the false link was the company eBay and the company WorthPoint .com due to the logos on the photo featured signature A. Trombetta This signature in oil paint which is not of the hand of the Plaintiff had no indication to the company that was "hosting" or "posting" the link on the internet.

3. Months of endless phone calls to eBay and WorthPoint .com resulted in obtaining e-mail addresses which were frustratingly futile in finding out who admittedly sold the painting and who or why this posting of the fraudulent link was on the internet. More importantly which source could possibly take this link fraudulent link off the internet.

4. On November 16, 2015 I received a written response from WorthPoint .com from one of the employee's named "Anita B." In her e-mail she wrote " We do not buy or sell anything on the site. Rather we **buy** sales records from various auction houses and sites and compile them into a price guide to help user determine the value of antiques and collectibles. If this particular item sold on eBay I recommend trying to contact eBay as they may be able to provide you with the addition information you are seeking.   - Plaintiff 's Email to eBay with Worthpoint's response . I sent this notice to eBay who never offered any information other than to contact the spoof@ebay address and report the link to them. Ebay never stated how to remove the link. I did find out that eBay does not keep information longer than ninety days to six months.

5. On January 22, 2016 I subscribed to WorthPoint in order to view the entire listing of 1972, entitled "Man with a Red Umbrella" falsely misattributed in order to find out

as much as I could about this listing.  Secondly I was hoping that if I was a member of WorthPoint .com  someone from the company might return my phone calls or e-mails

6.  On January 22, 2016 I also e-mailed support@worthpoint.com with a series of questions to the Worthpoint staff  as to  who posted the 1972, entitled "Man with a Red Umbrella"  and that it was falsely misattributed to Annamarie Trombetta, etc.

7.  On or around January 22, 2016 I spoke at length with Anita B. from WorthPoint .com on the phone  regarding the misattributed painting. I informed Anita that I was NOT the artist and  yet the information for this painting was posted on the internet under my name.  Anita insisted that I had to contact ebay  to find out who the seller could be.  My  response to Anita was that I  had been in contact with ebay and they were not the  responsible party for posting the fraudulent posting on the internet. Plaintiff has a RECORDING OF THE PHONE CALLS TO ANITA-EMPLOYEE AT WORTHPOINT  AS PROOF .  THE PHONE CALL ALSO  PROVES  HOW DIFFICULT  IT  WAS  FOR THE PLAINTIFF  TO OBTAIN INFORMATION AND TO FIND OUT WHO CAN REMOVE THE FALSE  INTERNET POSTING.

8.  Another follow up phone call to Anita B. from Worthpoint .com by me took place on January 29, 2016. Secondly the Plaintiff submitted a Request for the Removal of Fraudulent Links to the Worthpoint .com website  resulting in a ticket number # 57565 entitled Fraudulent Artwork and  Links

9.  On February 3, 2016 I spoke with a  Mr. Gregg Watkins who was the webmaster and maintained the information on WorthPoint 's website via the phone.  We spoke  at length regarding  the internet posting.  I informed Mr. Watson that I was not the artist that created this  painting and  yet the listing was underneath my name with all my authentic credentials.  I asked Mr.Watkins if the post was up since 2012 when the painting had been sold   and he assumed it was up since 2012.  I first communicated to Mr. Watson that I was not the artist who executed this oil painting. and that this was a fraudulent listing  I then requested that the internet link beremoved.   Mr. Watson gave me the  name and e-mail address of the owner of the company Will Seipple.  A  RECORDING  OF  THE  PHONE  CALLS  TO  GREGG  WATKINS WEBSITE MASTER FOR  WORTHPOINT  AS PROOF OF THE DETAILS REGARDING THE POST ETC.  THE PHONE CALL ALSO  PROVES  HOW DIFFICULT  IT  WAS  FOR THE  PLAINTIFF  TO OBTAIN INFORMATION AND REGARDING THE SELLER AND HOW  LONG THE POST WAS LISTED AND WHO CAN PROVIDE INFORMATION ON THE POST.   Mr. Watkins stated he take down the posting.

10.  On February 20, 2016  the false post was still under my name.after I phoned and e-mailed both Gregg Watkins and Will Seipple CEO of Worthpoint on the 20th of February.informing both parties that I have  no  connection to any of the numerous false links that are under my name.  I requested  in this e-mail that WorthPoint

**SA228**

remove the links since under my name since they have not relation to my personal or professional credentials.

11. On February 29, 2016 I sent another email to Will Seipple and Greg Watkins due to a lack of response from Mr. Seipple while concurrently the false listings from Worthpoint were still on the internet under my name.

12. On March 1, 2016 I received an-email from Will Seipple with responses.

13. On March 7, 2016 I sent my final e-mail to Will Seipple. Mr. Seipple responded and in doing so sent the "String of Correspondence E-mails" one in particular to from a e-mail to Will Seipple  will.seippel@worthpoint.com   from Jason Packer  e-mail jason.packer@worthpoint.com dated **March 2, 2016**  with the subject F W: Artist Annamarie Trombetta—-Fraudulent Artwork—and links to Fraudulent Artwork. I Jason Packer states   " I can file a TEMPORARY removal request w/Google for this URL…….. Should I go ahead and do that ? They don't always process those but there's no real danger other than LOSING TRAFFIC for just one page.  This e-mail gives validation and explains Why in December 2016 the fraudulent link that I requested to be removed was again reposted.

14. Months later on or around December 2016 I found that the same 1972, entitled "Man with a Red Umbrella" and related posted were on the internet under my name again. Despite the verbal and written requests within the numerous e-mails to Will Seipple and Greg Watkins to remove this false information, I had to contact them again. This conscious posting after Worthpoint was informed constitutes a violation of Identity Theft and Assumption Deterrence Act holds that damages include " Any measurable value of loss individual victims have suffered as a result of the theft. This includes the harm of reputations, inconvenience and other consequences.

15. On January 4, 2017 I contacted Will Seipple of WorthPoint yet again reviewing and re-submitting all the information I sent a year earlier. I forwarded the Ticket # 57565 regarding the fraudulent links and the request to remove this information. I NEVER received a written response or phone call from WorthPoint .

16. On January 31, 2017 did receive an e-mail concerning investing in WorthPoint. The company that kept re posting a fraudulent link despite any verbal or written requests kept e-mailing investment solicitations—the classic insult to injury scenario.

17, While I am contacting Worthpoint again I finally tracked down the origins of the problem —the seller of the misattributed oil.

On January 11, 2017 I it was confirmed during a phone call from Norb Novicin that on December 1, 2012 Estate Auctions Inc, which is owned and operated by Marie and Norb Novocin sold a painting dated 1972, entitled "Man with a Red Umbrella" they falsely misattributed to Annamarie Trombetta, the Plaintiff. THEY WERE THE SELLERS which was confirmed in the phone recording. Estate Auction description listing was an internet posting and link that the painting was signed Annamarie Trombetta and that I painted it in 1972. They also included in the description on the internet a photo of a signature on the painting which is not my signature. The photo signature is A. Trombetta. The painting description documents that it was signed Annamarie Trombetta. The Estate Auction Inc. description stated there were " 12 photos . The photos of the images were not visible online, only the photo of the A. Trombetta signature signed in oil. Biographical information from the artist's website was used and altered in order to sell the painting which in turn was inaccurately listed under the Plaintiff's name.

18. In May 2017, Plaintiff found a listing of her credential on Google under 1972, entitled "Man with a Red Umbrella" . It is the association of this fraudulent painting with the Plaintiff's authentic credentials which constitutes and violates The Rights of Publicity Law , The Lanham Act, The Visual Artists Rights Act

19. In the fall of 2017 Attorney Megan Noh of Cahill Cossu Noh & Robinson sent a Letter to Marie & Norb Novocin for Settlement Purposes. Megan Noh did not receive any response. She called to confirm receipt of the letter which Marie Novocin did confirm yet she refused to accept any liability.

20. On February 5, 2018 , artist Annamarie Trombetta filed a law suit in against Estate Auctions Inc. and owners Norb and Marie Novicin.

21. On January 17, 2020 Plaintiff Annamarie Trombetta submitted my first Proposed Amended Complaint to include Will Seipple and WorthPoint .com and or Corporation

22, In November 2020 Defendants Motion to Dismiss was denied. Plaintiff was granted permission and Ordered to serve second Defendants Will Seippel and WorthPoint Corporation

23. In January February 2021 Defendant were served .

24. On December 21, 2021 Judge Ronnie Abrams granted three surviving Claims to include the Visual Artist Right Act, Direct Copyright Infringement and the Digital Millennium Copyright Act. Will Seippel was dismissed due to Personal Jurisdiction.

**SA230**

SEE  ATTACHED SHEETS

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

SEE   ATTACHED   SHEETS

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

SEE   ATTACHED   SHEETS

25.    In February and March 2022 Plaintiff was asked to write and produce two letter for Settlement Offers . Both offers were rejected by Both Defendants

26.    In April 2022 Discovery was produced. EAI red signature misspelled the Plaintiff's name  in multiple way. Plaintiff produced my signature from 1972 .

27.    On August 30, 2022 Plaintiff was deposed by WorthPoint Defendants. On the same day   WorthPoint CEO and Owner served Plaintiff with a summons that was not signed and a complaint that did not have the correct facts.

28.    Plaintiff has been experiencing severe emotional distress and has been overburdened by WorthPoint's additional lawsuit in Georgia.  Plaintiff has been overburdened with constant demands by WorthPoint's attorneys in New York.

29.  Discovery has continued from February to December 16, 2022. Plaintiff has Produce over nine hundred documents for Discovery.

30.  Plaintiff  submits a Proposed Amended Complaint to include Fraud, Intentional Infliction of Emotional Distress , Tort and Permanent Injuctive Relief.

## INJURIES

In January 2015  I had two Solo exhibitions after  a period of ten years.  The last Solo exhibition took place in 2005.   I had an accident in 2003 and was seriously injured and after my  last solo exhibit in 2005 I required surgery.   I was in physical and occupational therapy since 2003 until late 2013.  I emerged out of a difficult situation to have my first Solo exhibit in 10 years  at the Union League Club Gallery on Park Avenue and  East 34th Street in New York City.  The Union League Club was founded in part with the involvement of Frederick Law Olmsted designer of Central Park, the nation's first public urban park.  My solo exhibition featured my artwork based on the theme of Central Park.  The exhibit was one month.  My second Solo exhibition was at The Italian American Museum in "Little Italy" which also lasted one month.

In the months that followed I received four favorable write up and some sales ensued but not as I had hoped.  A friend in earnest contacted me about a listing found under my name on the internet.  I know the Estate Auction Inc.  posting  for certain cost me one definite sale.

The arduous task began to try and figure out who posted this listing and how do I remove this FALSE posting.  Months of Stress ---Worry---Work-- Loss of Income and Time---- Disappointment and Frustration required me to return back to  an Orthopedic Specialist.  He stated that stress and emotional turmoil can aggravate injuries .  I was in physical therapy for months.  Further my other  doctor who is a  general physician also found that I had thyroid issues.

This ordeal with a low bid --FALSE ORIGIN---that unethically used my personal biography without my consent was and still is a serious  and unjust hardship for me to endure.  I have lost a great deal of time---opportunities ---money and physical stamina from such an egregious and willful act.  All my efforts within the year of 2017 to contact the both companies  who committed the False misappropriation  and repetitive postings have been ignored. The owner who admitted to selling this false painting suggested that I  " hire an attorney" which I did  and who sent a letter to Estate Auctions Inc. They never replied to the attorney's letter, thus leading me to spend more time and agony to bring about a lawsuit.  I recorded a phone conversation between Norb Novocin and myself.  Worthpoint owner Will Seipple was several times in 2016 and once again in  January  2017 and yet a posting was found to include the false links with my name and credentials in May  of 2017.

The end of 2015 and most of 2016 required me to be in physical therapy and had continuous doctor visits.

No one can gage who saw the fraudulent internet posting or how it adveresely effected the plaintiff. The Plaintiff , therefore asks Judge Abrams to review the allegations and the laws that were violated in conjunction with the loss of time,  past and future sales of artwork and the damage this fake link that was up since 2012 has done to the Plaintiff.

Last,  the Plaintiff was aware of the arduous task of litigation and went through great effort and years of turmoil to avoid and or bring justice to what is clearly two  deliberate companies looking to drive traffic to their internet sites and the expense and irreparable damage to the Plaintiff.

Plaintiff  has been in a legal battle four years with unending demands to the point that Plaintiff is unable to paint, create or earn a living.  Plaintiff is currently suffering from PTSP due to the willful and never ending demands imposed by Defendants attorneys.

Plaintiff is exhibiting extreme emotional distress brought on the willful intent to sue Plaintiff in the state of Georgia by owner and CEO Will Seippel of WorthPoint Corporation

Plaintiff is unable to sleep , concentrate, focus , earn a living, pursue my artistic career due' to unending legal battles when Plaintiff has proven that I am not the artist who painted a low quality oil baring a name similar to mine that I did not sign.

Plaintiff had suffered a recent Flu due to intense stress which had interfered with the ability to manage my case and submit filings on time.

## RELIEF

I am seeking Relief for the Federal Laws Violated in which there are three plus the New York State Laws in which there are three.

The Federal Violations and Acts include and entitle me to the following:
1) **The Visual Artist Rights Act** entitle me to 1) Actual and 2) Statutory Damages
2) **The Digital Millennium Act**  1) Actual and 2 Statutory Damages
3) **The Copyright Infringement Act** Claim for an Actual Loss of Sale of Artwork
4) Intentional Infliction of Emotional Distress/ Tort 1) Actual 2)  Statutory and 3)Compensatory Damages
5) **Identity Theft** on a Public Platform  1.  18 U.S. Code § 1028. Fraud and related activity in connection with identification documents, authentication features, and information (a) Whoever, in a circumstance described in subsection (c) of this section  1) knowingly and without lawful authority produces an identification document, or a false identification document; (2)knowingly transfers an identification document, authentication feature, or a false identification document knowing that such document or feature was stolen or produced without  lawful authority;
2.   Under the Identity Theft and Assumption Deterrence Act, it is a federal crime when a person "knowingly transfers or uses,  without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law." **Any measurable value of loss individual victims have suffered as a result of the Identity Theft. This includes the harm of reputations, inconveniences and other consequences.**

Artist Authorship Rights  entitles me to see damages for the unauthorized use of my name.

In SUMMARY I am seek Monetary Damages in the Amount to equal and exceed the Damages Plaintiff has lost and incurred for over seven yearsf or these  Reasons.
1) The known loss of a sale of Artwork---$8000 which my attorney letter requested and was ignored and in addition a phone call was made to confirm receipt of the letter.  The effort to gain the name of the owner--a settlement---and to resolve this situation were exercised.
2) The  past -present and future damaging  effects to my artistic reputation. THE POSTING WAS UP SINCE DECEMBER 2012 --UNTIL DECEMBER 2016.  $8000 x 5 = $40,000.
3)  Physical and Emotional pain and suffering due to this false designation of origin and world wide internet posting.  The cost and time for legal consultations etc. have increased the relief to request the amount to be to be equal to the infringement  or whatever the court deems proper and suitable.

4) Monetary Damages  to withstand suing two Defendants  for almost five years.

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| December 23, 2022 | | _Annamarie Trombetta_ (signature) |
|---|---|---|
| Dated | | Plaintiff's Signature |
| Annamarie | | Trombetta |
| First Name | Middle Initial | Last Name |

175 East 96th Street (12 R)

Street Address

| New York | | New York | 10128 |
|---|---|---|---|
| County, City | | State | Zip Code |

| (212) 427-5990 | atrombettaart@gmail.com |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes   ☐ No

   If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.



United States District Court
Southern District of New York

## Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at
   www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

### IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

500 PEARL STREET | NEW YORK, NY 10007
300 QUARROPAS STREET | WHITE PLAINS, NY 10601

PRO SE INTAKE UNIT: 212-805-0175

rev. 2/9/15

**SA236**

## CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____

Trombetta,  Annamarie
_____
Name (Last, First, MI)

175 East 96th Street     New York          New York          10128
_____
Address            City             State           Zip Code

(212) 427-5990                    atrombettaart@gmail.com
_____
Telephone Number                  E-mail Address

December 23, 2022
_____
Date                              Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

# EXHIBITS

EXHIBIT #1  Doctor appointment with Benjamin Tweel for Vertigo    CONFIDENTIAL

EXHIBIT #2   Emergency Eye Infirmary Visit Sunday Feb. 20, 2022    CONFIDENTIAL

EXHIBIT #3  Doctor 's Letter and  Visit with  Benjamin Zaremski  Vertigo and fractured rub

EXHIBIT #4  Nov. 23, 2022  Email Subject  Increased Attorney's Fees from Anderson Duff

EXHBIIT # 5   Nov. 16, 2022 Mr. Duff's email with EAI000066  EAI eBay receipt

EXHIBIT # 6  Second Production of Ebay receipt on Nov 16, 2022  numbered as  EAI000066

EXHIBIT # 7  Plaintif's Octobre 29, 2022 Request  for Ebay Receipt

EXHIBIT  # 8  Plaintiff's Evidence 000151 dated email March 5, 2015, Plaintiff email to Mr.Bahr for  biography  recommendation to askART.

EXHIBIT  # 9  Plaintiff's Evidence 000150  dated email from June  6, 2015 documented the Plaintiff written communication to Bob Bahr  regarding Plaintiff's biography on askART.

EXHIBIT  # 10  Plaintiff's Evidence 000153 Wayback Machine confirming 2015 year for Plaintiff's askART biography on askART website.

EXHIBIT  # 11 Plaintiff's Evidence 000154  Wayback Machine confirming 2015 year for Plaintiff's askART biography on askART website.

EXHIBIT  # 12  WorthPoint's evidence WP000141 and WP000141 2010 askART listing for Plaintiff's askART biography on askART website MISSING PLAINTIFF's NAME

EXHIBIT  # 13  WorthPoint's evidence WP000143 and WP000144 2014 askART listing for Plaintiff's askART biography on askART website MISSING PLAINTIFF's NAME.

EXHIBIT # 14  Dec. 2, 2022  Email Subject  Attorney's Fees from Adam Bialek

EXHIBIT # 15 Summons of Complaint in Georgia WITHOUT SIGNATURE

EXHIBIT # 16 Complaint in Georgia page 3 of 7 Wrong Dates and Facts for 18-Cv-0993 NYC

EXHIBIT # 17 January 11,2021 Certified Mail Will Seippel

EXHIBIT #1 8 Affidavit From Server Freddit Simon

EXHIBIT # 19 Summary Judgement in Georgia  Filed October 31, 2022

**SA238**

# EXHIBIT #1

# CONFIDENTIAL

# DOCTOR'S APPOINTMENT

**SA239**

# EXHIBIT #2

# CONFIDENTIAL

# EYE
# APPOINTMENT

# EXHIBIT #3

# CONFIDENTIAL

# DOCTOR'S LETTER AND APPOINTMENT

Gmail - Increased Attorneys' Fees

## Gmail

Annamarie Trombetta <atrombettaart@gmail.com>

---

**Increased Attorneys' Fees**

---

**Anderson Duff** <ajd@hoganduff.com>                                    Wed, Nov 23, 2022 at 1:06 PM
To: Annamarie Trombetta <annamarietrombettalegal@outlook.com>, Annamarie Trombetta <atrombettaart@gmail.com>
Cc: "Farmer, Jana S." <Jana.Farmer@wilsonelser.com>, "Haimson, Nicole" <Nicole.Haimson@wilsonelser.com>, "Bialek, Adam" <Adam.Bialek@wilsonelser.com>

Ms. Trombetta:

Because you do not seem to understand the severity of the situation you have created, I am again writing to remind you that my clients will be seeking an award of attorneys' fees under § 505 of the Copyright Act and/or because you rejected my clients' offer of judgment. For your information, today's conference added roughly $1,500 in attorneys' fees for my clients alone.

Best,

-Anderson-

646.450.3607

HoganDuff.com

SA242

Exhibit #5

Mail - Annamarie Trombetta - Outlook

## Re: Norb Novocin Deposition Full Production of Exhibit #4 –2 Page eBay email

**Anderson Duff** <ajd@hoganduff.com>
Wed 11/16/2022 1:08 PM

To: Annamarie Trombetta <annamarietrombettalegal@outlook.com>
Cc: Adam Bialek <adam.bialek@wilsonelser.com>; Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>

■ 1 attachments (105 KB)
EAI000060-EAI000060.pdf;

Dear Ms. Trombetta:

Please find a version of the email previously produced as EAI000058-EAI000059 attached. As previously discussed, my clients are producing this email again solely because a small portion of the email was cutoff when it was converted to a .pdf. To avoid confusion, I have stamped the email as EAI000060 rather than reproducing it with the same bates number. Since you have taken the position in several filings that I fabricated evidence because the @ symbol did not appear in an email my clients produced, I made sure that the @ symbols were preserved when converting this email to a .pdf for production.

With respect to your request for "ALL eBay emails to the buyer Nina Correria's proof of payment and all eBay emails from Nina Correria to Norb Novocin and Estate Auctions Inc.," my clients cannot produce documents that do not exist. We have discussed this issue *many* times.

Best,

-Anderson-
646.450.3607
HoganDuff.com

---

**From:** Annamarie Trombetta <annamarietrombettalegal@outlook.com>
**Date:** Wednesday, November 16, 2022 at 8:59 AM
**To:** "Anderson J. Duff" <ajd@hoganduff.com>, Adam Bialek <adam.bialek@wilsonelser.com>, "Farmer, Jana S." <Jana.Farmer@wilsonelser.com>, "Haimson, Nicole" <Nicole.Haimson@wilsonelser.com>
**Subject:** Re: Norb Novocin Deposition Full Production of Exhibit #4 –2 Page eBay email

As per FRCP 30 (e) production of the two page document labeled Exhibit 4 and also EAI00058 and EAI00059 is due as per requested by WorthPoint's attorneys September 21, 2022 deposition.

On Page 75 of Mr. Norb Novocin's Deposition, Mr. Novocin has all his old emails from ebay sales. SEE ATTACHMENT.

Plaintiff is requesting as ALL eBay emails to the buyer
Nina Correria's proof of payment and all eBay emails from Nina Correria to Norb Novocin and Estate Auctions Inc. be produced as soon as possible. ATTACHED are
recent emails from Nina Correria who claims that she has no written proof.

Exhibit #6

EAI000060

From: eBay <ebay@ebay.com>
Date: Sat, Dec 1, 2012 at 9:54 PM
Subject: Your eBay item sold! 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (330833102936)
To: <ebay@novocin.com>

**ebay** eBay sent this message to Norb & Marie Novocin (estateauctionsinc).
Your registered name is included to show this message originated from eBay. Learn more.

## Congratulations, your item sold!

Dear estateauctionsinc,

You did it! Your item sold. Please ship this item to the buyer after your buyer pays. As soon as your buyer pays, print your eBay shipping label.

**Provide shipping information**

**Go to My eBay**

Complete one of the following:

- Print a shipping label Avoid a trip to the post office, print and pay for your label at home. Printing shipping labels on eBay also offers you reduced pricing on some shipping services, and when you print shipping labels on eBay, your tracking information is uploaded automatically.
- Provide shipping and tracking information. When you upload tracking information to eBay, we'll send it to your buyer and let them know the item is on its way. This will save you time, and may result in fewer questions from buyers and higher detailed seller ratings.
- Mark your item as shipped in My eBay. Do this, and we'll let your buyer know the item is on its way. This will save you time, and may result in fewer questions from buyers and higher detailed seller ratings.

You should always leave feedback for your buyer to encourage them to buy from you again.



1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz

| | |
|---|---|
| Sale price: | $181.50 |
| Quantity sold: | 1 |
| Sale date: | Dec-01-12 18:54:01 PST |
| Buyer: | nina correia |
| | 9naclock (ninascorreia@aol.com) |
| | [contact buyer] |
| Buyer's shipping address: | nina correia |
| | 14215 prairie flower ct |
| | reno, NV 89511-6710 United States |

Sell another item | Send invoice to buyer

**Select your email preferences**

- Want to reduce your inbox email volume? Receive this email as a daily digest. For other email digest options, go to Notification Preferences in My eBay
- Don't want to receive this email? Unsubscribe from this email.

**Email reference id: [#45d0df16f2ea40759d3656f834970b06#]**
Please don't remove this number. eBay customer support may ask you for this number, if you should need assistance.

Learn More to protect yourself from spoof (fake) emails.

eBay sent this email to you at ebay@novocin.com about your account registered on www.ebay.com.

eBay sends these emails based on the preferences you set for your account. To unsubscribe from this email, change your communication preferences. Please note that it may take up to 10 days to process your request. Visit our Privacy Policy and User Agreement if you have any questions.

Copyright © 2012 eBay Inc. All Rights Reserved. Designated trademarks and brands are the property of their respective owners. eBay and the eBay logo are trademarks of eBay Inc. eBay Inc. is located at 2145 Hamilton Avenue, San Jose, CA 95125.

12/19/2022                                    Mail - Annamarie Trombetta - Outlook

Plaintiff is requesting a response today, November 16, 2022 as to when the full and entire eBay email for the 1972 Original Oil Painting Man With Red Umbrella also

known as EXHIBIT # 4 in the Novocin Deposition will be produced.

B.      The deponent has 30 days to review the transcript after the court reporter notifies him that the transcript is available. FRCP 30(e)(1); *EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253 (3d Cir. 2010); *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F. 3d 1217 (9th Cir. 2005) (30-day period runs from court reporter's notice that transcript available, not from date deponent receives transcript). Notice to the deponent's attorney constitutes notice to the deponent and starts the running of the 30-day limit. *Welsh v. R.W. Bradford Transp.*, 231 F.R.D. 297 (N.D. III. 2005). The deponent must transmit the changes to the court reporter and certify the changes within 30 days of the notification; preparation of an errata sheet within 30 days does not satisfy the Rule. *Io.*

Submitted by,
Annamarie Trombetta

*E xhibit #17* (handwritten)

**From:** Annamarie Trombetta
**Sent:** Saturday, October 29, 2022 2:27 PM
**To:** ajd@hoganduff.com <ajd@hoganduff.com>; Adam Bialek <adam.bialek@wilsonelser.com>; Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>
**Subject:** Norb Novocin Deposition Full Production of Exhibit #4 -2 Page eBay email

Mr. Duff and to all parties,

Attached is are pages 74 to 79 of the September 21, 2022 Novocin Deposition. WorthPoint attorneys requested identified and called for the production of the two page December 1, 2012 email sale for the 1972 Original Oil Painting titled Man With Red Umbrella.

Production of this two page document labeled Exhibit 4 and also EAI00058 amd EAI00059 is requested immediately . Failure to produce these two documents will be noted to the Court in a letter on October 31, 2022.

Submitted October 29, 2022
Annamarie Trombetta

**SA245**

Yahoo Mail – Re: Annamarie Trombetta

4/5/22, 4:01 PM

## Re: Annamarie Trombetta

*Exhibit #8* (handwritten)

From: Bob Bahr (babahr@yahoo.com)

To: trombettaart@yahoo.com

Date: Thursday, March 5, 2015, 09:53 AM EST

*Date March 5 2015* (handwritten)

Thanks. Very glad you liked it. Yes, that is the right link.

I will try to send you a PDF later so you have it in that form as well.

Hope we can paint together sometime when it's above freezing!

Bob

From: Annamarie Trombetta <trombettaart@yahoo.com>
To: Bob Bahr <babahr@yahoo.com>
Sent: Thursday, March 5, 2015 9:47 AM
Subject: Annamarie Trombetta

*Ask Art Website* (handwritten)

Hi Bob,

Thank you so much for a wonderful article.   I have been sharing it with some of my collectors and  colleagues and will do so with many more people. Also thank you for your recommendation for the Ask Artwebsite . I consent to include  my biography  listing to their site. Can you send me a link that is just this piece or is this the link below??   Also is there a magazine version that I can purchase.

I am please with the work that you selected as one of my collectors expressed her delight as well.

With sincere gratitude,
Annamarie Trombetta

http://www.outdoorpainter.com/artist-profiles/central-park-s-plein-air-past.html?
utm_source=Art+List&utm_campaign=f24b0abe29-PAT_3_4_15&utm_medium=email&utm_term=0_6907cc7961-
f24b0abe29-232018861

Plaintiff000151

Yahoo Mail - A Big Thank you from Annamarie Trombetta

4/17/21, 9:27 PM

## A Big Thank you from Annamarie Trombetta

From:  Annamarie Trombetta (trombettaart@yahoo.com)

To:     babahr@yahoo.com

Date:  Saturday, June 6, 2015, 12:49 PM EDT

*Exhibit #9*
*Date June 2015*

Hi Bob,

My sincere appreciation for including me once again in Outdoor Painter!  I am indeed delighted as was the host of the show to learn that the link and a feature was in the Newsletter for Outdoor Painter.

It is the kind of situation that brings attention not just to me--the Magazine but also to the Hudson River School Painters who have done so much for this country's history in art, Parks and conservation.

Last thank you for the recommendation. I am delighted that my bio is now on AskArt-- Mille Grazie for that!

I hope to meet you in person one of these days. Let's plan a meeting if you live in the New York area. Take great care and all the best to you.

Warm Regards,
Annamarie Trombetta

*Ask Art*
*2015*

https://mail.yahoo.com/d/folders/1/messages/ALZEP5R_0374YH-2IgN6oAS_w4A

Page 1 of 1

Plaintiff000150

SA247

Exhibit 3A

Exhibit #10   Date September 22, 2015



Plaintiff#0001153

https://www.askart.com/artist/Annamarie_Trombetta/11156459/Annamarie_Trombetta.aspx

1 capture
22 Sep 2015

Go   AUG SEP OCT   22   2014 2015 2016   About this capture

## askART

What's my art worth?   Auction Records   Research Art   Buy / Sell   Our Services   Sign In   Subscribe

Enter artist name or use alphabet   a b c d e f g h i j k l m n o p q r s t u v w x y z

## Annamarie Trombetta (born 1963)

Annamarie Trombetta is active/lives in New York. Annamarie Trombetta is known for geometric still life arrangements-painting.

| The Artist | Auction Records | Buy / Sell | Resources |
|---|---|---|---|
| Overview | Auction Records (0) | For Sale (0) | Signatures (0) |
| Biography | Upcoming Auctions (0) | Wanted (0) | Related Artists |
| Quick Facts | What's my art worth? | Dealers (0) | Publications |
| Get Alerts | Charts | Place an Ad | Samples of work |

Discover art and art prices ...

Subscribe

Sign in

- Auction records and images
- Record prices, graphs, stats
- Artist signature examples
- More about subscribing

### Find, Learn, Price Art

Enjoy the comprehensive art database we've compiled since 1987

**Membership Details**
Images, sales charts, bios, signatures, 30 artist Alerts and more ...
Art auction records: Millions of references for pricing research

Or, register for **Free Alerts**
To track 10 artists.

Already a member? **Sign in here**

x

Exhibit #11

**Internet Archive** (Wayback Machine)

ABOUT   BLOG   PROJECTS   HELP   DONATE ♥   CONTACT   JOBS   VOLUNTEER   PEOPLE

SIGN UP | LOG IN   UPLO

Annamarie Trombetta
AskArt
LINK

INTERNET ARCHIVE
WayBack Machine

DONATE

Explore more than 680 billion web pages saved over time

https://www.askart.com/artist/Annamarie_Trombetta/11156459/Annam

Results: 50 100 500

Calendar · Collections · Changes · Summary · Site Map · URLs

Date
September 22, 2015

Saved 1 time September 22, 2015.

1999  2000  2001  2002  2003  2004  2005  2006  2007  2008  2009  2010  2011  2012  2013  2014  **2015**  2016  2017  2018  2019

Year 2015

Plaintiff000154

Case: 25-817, 07/17/2026, DktEntry: 80.3, Page 145 of 147

Case 1:18-cv-00993-LTS-SLC Document 34682 Filed 12/27/22 Page 13 of 27

SA249

web.archive.org/web/20100820213943/http://www.askart.com/askart/artist.aspx?artist=11156459

http://www.askart.com/askart/artist.asp?artist=11156459

WayBackMachine    2 captures
22 Aug 2010 - 29 Aug 2014

AUG
20
2010    2014

*Devoid of Plaintiff's Name*

Ask/ART  The Artists' Bluebook™ —Worldwide Edition!

Artist Search

artist last name    first name (optional)    GO

a b c d e f g h i j k l m n o p q r s t u v w x y z

▶ GO TO HOME PAGE

## Annamarie Trombetta (1963 - )

| Research : Annamarie Trombetta | | Marketplace : Annamarie Trombetta | | Login for full access |
|---|---|---|---|---|
| **Summary** | Examples of her work | For sale ads | Auction results* | Login \| Register |
| Quick facts | Exhibits - current | Wanted ads | Auctions upcoming for her* | View AskART Services |
| Biography* | Museums | Dealers | Auction sales graphs* | Ask/ART |
| Book references | Magazine references pre-2007 | What's my art worth? | Magazine ads pre-1998* | Sign up Here |
| Discussion board | Signature Examples | Market Alert - *Free* | Place a classified ad | |

Lived/Active: New York    Known for: geometric still life arrangements-painting    *may require subscription

**Back to Previous Page**

Available for Annamarie Trombetta:

Quick facts (Styles, locations, mediums, teachers, subjects, geography, etc.) (Annamarie Trombetta)    yes

Biographical information (Annamarie Trombetta)    yes

Book references (Annamarie Trombetta)    0

Magazine references (Annamarie Trombetta)    1

Discussion board entries (Annamarie Trombetta)    0

☐ Please send me Alert Updates for Annamarie Trombetta (free)
What is an alert list?

*Exhibit #12 A*

### This biography from the Archives of AskART:

The nature of an artist's life, creativity and growth may be synonymously expressed in the image of an archetypal tree. Beginning with the earthly descendent roots the artist like the tree branches out into its surrounding environmental and celestial world. Both ascend and descend, widening their girth of consciousness while producing visual imagery, weathering each season of change. Thus, I believe it is the nature of the artist and of nature itself to regenerate and manifest. All of the imagery in this catalog was either created en plein air or from the subject directly.

My journey to becoming an artist began many years ago. The consanguineous roots of my Italian family tree provided me with an innate constitution for my artistic profession. When I was a tiny seed of contemplative thought, my artistic nature began to sprout interest while gazing up at the ceiling paintings in a neighborhood church named Regina Pacis, meaning Queen of Peace. The church located in Brooklyn, NY features ceiling paintings, sculptures, marble interiors, and incorporates architectural elements for the façade and the belfry that are of Italianate design. Before the age of three I was able to surmise that the church in the ceiling painting was indeed the church I was in. The visual stimulation was a form of education. It fostered my sense of perception which became my strongest mode for acquiring knowledge.

As the years unfurled, my family moved to Staten Island. At this time it was a scenic field of luminosity, lush vegetation and a harbor view complete with sail boats and small yachts. A few years after we moved my tree of life was in jeopardy of loosing a limb. What appeared to be a swollen leg was indeed a cancerous tumor. It was an almost fatal or perhaps even a fated occurrence in my life. The struggle to survive the experience was lightened by my imagination and by my artistic ability to create. I seriously thought I would go into medicine but the posters and paintings in the hospital and doctor's office held my attention more intensely.

I began my formal training at The Brooklyn Museum School of Art while I was in high school. The exposure to various forms of art inspired me to expand my horizons and in the early Eighties I traveled on a summer tour to Europe. The tour comprised of six countries; Germany, Austria, France, Italy, Switzerland and England. Viewing so many different cities and cultures in a concentrated period of time helped me to see the similarities as well as the differences of each quite clearly.

Upon my return I enrolled in an art history course to examine the content of art in relation to its chronological, politic al and historical relevance while applying to art colleges. I was accepted to Parsons School of Design located in lower Manhattan. The pulsating pace of this compressed cosmopolitan city was reflected in the school's curriculum. Although I did enjoy the challenges and experiences which expanded my capabilities, I was not satisfied with the level of my drawing

WP000141

and painting skills. In the mid Eighties I attended The New York Academy of Art which focused on teaching the history and traditional techniques from periods of art, such as the Italian Renaissance, the classical and neoclassical periods in France, as well as the Spanish, Dutch and Fleming masters. Here I studied cast drawing, grisaille painting, anatomy, dissected cadavers, yet most influential to me was geometry and perspective.

During this period I traveled once again to France and Italy to study with my teachers who offered summer classes in art history, drawing and painting. I remember when I was in the French countryside feeling as if I was walking into a huge painting. The views felt so familiar due to the talents of Monet, Pissarro, VanGogh, etc. In my solitude I would envision them, particularly VanGogh in a wheat field painting or see the circular hay stacks change colors by sunset right before my eyes. The truth captured in their paintings a century ago felt so real to me, it spiraled an indelible influence. This experience still inspires me to strive towards capturing my subjects with a sense of presence and atmosphere. Visiting Italy again, my ancestral homeland, sharpened my acuity and attraction to works of art on uniquely shaped canvases. There were so many moments that will be with me throughout my life, most notable was to see the chariot markings while walking in the ruins of ancient Rome, or to hear bells toll in St. Mark's Square, and to be within inches of some of the most revered art in the world.

When I returned to the States, the desire to develop artwork in various mediums became the goal. I started attending The National Academy School of Fine Arts to explore and prefect the media of pastels and figure painting, and also to study printmaking. During this time I was employed at The National Academy Museum. The Academy and its intriguing history filled the chasm of my knowledge for the heritage of American art while also informing me of the cultural developments in my country, particularly those in New York. The opportunity to read the Academy's books while I was working at the Museum, was an enlightening experience. I learned, most importantly, about the Hudson River School painters and their personal involvement with writer/poet William Cullen Bryant. This relationship between artists and writers of that time initiated the unfoldment of Central Park. The Park, which is adjacent to The National Academy Museum was already charted territory for my artistic expression. Learning about the creation of the Park intensified my passion for depicting it.

During my tenure at The Academy, a conversation with a museum visit led to my interest in the W.B. Yeats Society of New York , and another trip abroad. Coincidentally and perhaps synchronistically I had been attending lectures on Theosophy about the same time I was learning about Yeats. Crucial to my personal and professional development at that time was my comprehension of why Theosophy influenced the modern movement in the Arts. Yeats, like many other writers, musicians, and artists such as Mondrian and Klee, etc. drew inspiration from the philosophical texts written by the robust Russian, Madame Blavatsky. Within a few months I had won a scholarship under the auspices of the Yeats Summer School in Sligo, Ireland via the Yeats Society of New York.

A short trip to London, preceded the Summer School, where I hunted down John Singer Sargent's charcoal sketch of Yeats at the National Portrait Gallery. This inspired a trip to the Tate, and several other collections. Traveling to England first set the stage for the political, personal, and historical dynamics that I was about to encounter regarding the legacy of Yeats and of Ireland. Before the school commenced, there was a ceremonial service at Drumcliff Church where Yeats is buried. The picturesque view and the enigmatic words of his icy epitaph became etched in my memory on that day and inspired me to create a painting titled after his poem "Under Benbulben" which elaborates on his immortal words. To learn about his family, his life and his vision motivated me to begin a new chapter in creating my own work.

To culminate my journey, when I returned home I gathered the metaphorical leaves and branches that had fallen from my artistic tree, be it ancestral or archetypal and concentrated "souly" on "The Holy Tree" described in Yeats' poem "The Two Trees." This image, inspired by the milieu of a mentor miles away is a tribute to his gifts and determined ways which regenerated and awakened the visionary in me. This catalogue highlights the pictorial progression from that trip and the time that followed.

I wish to acknowledge certain individuals who have enhanced my artistic sensibilities as a person, as well as an artist. These individuals include Everett Raymond Kinstler, Raymond Steiner, Harvey Dinnerstein, Burton Silverman, the artist's in The Painting Group particularly Aaron Shikler, David Levine, Danny Schwartz, Irene Hecht. I thank them for their help and guidance in my life.

Source:
The website of the artist

~ If you discover credit omissions or have additional information to add, please let us know at registrar@AskART.com.

copyright © 2000-2010 AskART all rights reserved ® AskART and Artists' Bluebook are registered trademarks.

A | B | C | D-E | F-G | H | I-K | L | M | N-P | Q-R | S | T-V | W-Z

frequently searched artists 1, 2, more...
art appraisals, art for sale, auction records, misc artists

WP000142

No Name of Plaintiff's

http://www.askart.com/askart/artist.aspx?artist=11156459    [Go]    AUG **AUG** SEP
2 captures    ◄ **29** ►
20 Aug 2010 - 29 Aug 2014    2010 **2014**

**Ask/ART** The Artists' Bluebook™ –Worldwide Edition!

Artist Search
[artist last name]  [first name (optional)]  [GO]

a b c d e f g h i j k l m n o p q r s t u v w x y z

## Annamarie Trombetta (1963 - )

>GO TO HOME PAGE

| About: Annamarie Trombetta | | Buy and Sell: Annamarie Trombetta | | Login for full access |
|---|---|---|---|---|
| **Summary** | Examples of her work | For sale ads | Auction results* | Login \| Register |
| Quick facts | Exhibits - current | Wanted ads | Auctions upcoming for her* | View AskART Services |
| Biography™ | Museums | Dealers | Auction sales graphs* | **Ask/ART** |
| Book references | Magazine references pre-2007 | What's my art worth? | Magazine ads pre-1998* | Sign up Here |
| Discussion board | Signature Examples* | Market Alert - *Free* | Place a classified ad | |

*may require subscription

**Lived/Active:** New York    **Known for:** geometric still life arrangements-painting

**Available for Annamarie Trombetta:**

Quick facts (Styles, locations, mediums, teachers, subjects, geography, etc.) (Annamarie Trombetta)    yes
Biographical information (Annamarie Trombetta)    yes
Book references (Annamarie Trombetta)    0
Magazine references (Annamarie Trombetta)    1
Discussion board entries (Annamarie Trombetta)    0

> Please send me Alert Updates for Annamarie Trombetta (free)
What is an alert list?

AdCode: 4

EXHIBIT #13A

WP000143

### This biography from the Archives of AskART:

The nature of an artist's life, creativity and growth may be synonymously expressed in the image of an archetypal tree. Beginning with the earthly descendent roots the artist like the tree branches out into its surrounding environmental and celestial world. Both ascend and descend, widening their girth of consciousness while producing visual imagery, weathering each season of change. Thus, I believe it is the nature of the artist and of nature itself to regenerate and manifest. All of the imagery in this catalog was either created en plein air or from the subject directly.

My journey to becoming an artist began many years ago. The consanguineous roots of my Italian family tree provided me with an innate constitution for my artistic profession. When I was a tiny seed of contemplative thought, my artistic nature began to sprout interest while gazing up at the ceiling paintings in a neighborhood church named Regina Pacis, meaning Queen of Peace. The church located in Brooklyn, NY features ceiling paintings, sculptures, marble interiors, and incorporates architectural elements for the façade and the belfry that are of Italianate design. Before the age of three I was able to surmise that the church in the ceiling painting was indeed the church I was in. The visual stimulation was a form of education. It fostered my sense of perception which became my strongest mode for acquiring knowledge.

As the years unfurled, my family moved to Staten Island. At this time it was a scenic field of luminosity, lush vegetation and a harbor view complete with sail boats and small yachts. A few years after we moved my tree of life was in jeopardy of loosing a limb. What appeared to be a swollen leg was indeed a cancerous tumor. It was an almost fatal or perhaps even a fated occurrence in my life. The struggle to survive the experience was lightened by my imagination and by my artistic ability to create. I seriously thought I would go into medicine but the posters and paintings in the hospital and doctor's office held my attention more intensely.

I began my formal training at The Brooklyn Museum School of Art while I was in high school. The exposure to various forms of art inspired me to expand my horizons and in the early Eighties I traveled on a summer tour to Europe. The tour comprised of six countries; Germany, Austria, France, Italy, Switzerland and England. Viewing so many different cities and cultures in a concentrated period of time helped me to see the similarities as well as the differences of each quite clearly.

Upon my return I enrolled in an art history course to examine the content of art in relation to its chronological, political and historical relevance while applying