# 25-817-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

————— ➤◄ —————

ANNAMARIE TROMBETTA, ARTIST,

*Plaintiff-Appellant,*

*v.*

NORB NOVOCIN, MARIE NOVOCIN,
ESTATE AUCTIONS, INC., WORTHPOINT CORPORATION,

*Defendants-Appellees,*

WILLIAM SEIPPEL, WORTHPOINT.COM,
JASON PACKER, EMPLOYEE AT WORTHPOINT CORPORATION,

*Defendants.*

————————

*On Appeal from the United States District Court
for the Southern District of New York*

## SUPPLEMENTAL APPENDIX
## VOLUME 2 OF 12
## Pages SA273 to SA464

WILSON ELSER MOSKOWITZ EDELMAN
& DICKER LLP
*Attorneys for Defendant-Appellee
WorthPoint Corporation*
150 East 42nd Street, 23rd Floor
New York, New York 10017
212-490-3000



**Table of Contents**

**Page**

## Volume 1

Proposed Amended Complaint, dated January 17, 2020,
with Exhibits .................................................................................. SA1

Plaintiff's Response in Opposition to Defendant's Motion to
Dismiss Amended Complaint, dated February 21, 2020,
with Exhibits .................................................................................. SA64

Opinion and Order of the Honorable Sarah L. Cave,
dated March 19, 2020 .................................................................... SA112

Protective Order of the Honorable Sarah L. Cave,
so-ordered on February 16, 2022 ................................................. SA126

Order of the Honorable Sarah L. Cave,
so-ordered on December 8, 2022 .................................................. SA130

Order of the Honorable Sarah L. Cave,
so-ordered on December 20, 2022 ................................................ SA131

Memorandum by Plaintiff in Support of Motion
for Leave to File a Proposed Amended Complaint,
dated December 23, 2022 .............................................................. SA134

Proposed Second Amended Complaint,
dated December 23, 2022 .............................................................. SA216

Exhibits to Memorandum by Plaintiff in Support of Motion
for Leave to File a Proposed Amended Complaint ....................... SA237

Order of the Honorable Sarah L. Cave,
dated December 29, 2022 .............................................................. SA264

Order of the Honorable Sarah L. Cave,
dated February 2, 2023 .................................................................. SA266

**Table of Contents**
**(Continued)**

**Page**

Defendant WorthPoint Corporation's Omnibus Motion
    *in Limine* Concerning Experts, dated April 10, 2023 .................... SA268

Declaration of Jana S. Farmer in Support of Defendant's
    Motion *in Limine*, dated April 7, 2023 ......................................... SA270

**Volume 2**

    Exhibit A to Farmer Declaration -
    Documented Communications from WorthPoint's
    Counsel to Plaintiff .................................................................... SA273

    Exhibit B to Farmer Declaration -
    Expert Affidavit of Patrick O'Leary,
    sworn to December 5, 2022, with Exhibits ............................ SA298

    Exhibit C to Farmer Declaration -
    Expert Disclosure and Expert Report of
    Joseph V. Scelsa, dated February 16, 2023,
    with Exhibits ........................................................................ SA327

    Exhibit D to Farmer Declaration -
    Transcript of Proceedings held before the
    Honorable Sarah L. Cave on November 23, 2022 ................. SA390

Notice of Motion by Defendant WorthPoint Corporation
    for Summary Judgment, dated April 17, 2023 ............................. SA458

Declaration of Jana S. Farmer in Support of Defendant's
    Motion for Summary Judgment, dated April 17, 2023 ................. SA460

**Volume 3**

    Exhibit A to Farmer Declaration -
    Deposition Testimony of Annamarie Trombetta,
    taken August 30, 2022 ........................................................... SA465
    *(cont'd in Vol 4)*

**Table of Contents**
**(Continued)**

**Page**

**Volume 5**

Exhibit B to Farmer Declaration -
Deposition Testimony of Norb Novocin,
taken September 21, 2022 ...................................................... SA837

Exhibit C to Farmer Declaration -
Redacted Deposition Testimony of Willie Chu,
taken October 7, 2022 ........................................................... SA1084

**Volume 6**

Exhibit D to Farmer Declaration -
Redacted Deposition Testimony of Vanessa Koi-Ploski,
taken October 17, 2022, with Cover Letter ........................... SA1136

Exhibit E to Farmer Declaration -
Redacted Defendant WorthPoint Corporation's
Expert Disclosure Pursuant to FRCP Rule 26(a)(2)
of Jessie Stricchiola, dated January 19, 2023,
with Report and Exhibits ...................................................... SA1237

Exhibit F to Farmer Declaration -
Redacted Declaration of Jason Packer,
dated January 19, 2023, with Exhibits .................................. SA1280

Exhibit G to Farmer Declaration -
Declaration of William H. Seippel,
dated April 17, 2023, with Exhibits ...................................... SA1303

Exhibit H to Farmer Declaration -
Expert Affidavit of Patrick O'Leary,
sworn to December 5, 2022, with Exhibits ........................... SA1349

**Volume 7**

Exhibit I to Farmer Declaration -
Deposition Testimony of Patrick O'Leary,
taken February 28, 2023 ...................................................... SA1382

**Table of Contents**
**(Continued)**

**Page**

Exhibit J to Farmer Declaration -
Google Search Results, dated March 15, 2017 ..................... SA1654

Exhibit K to Farmer Declaration -
Screenshots of the WorthPoint Report ................................ SA1655

**Volume 8**

Exhibit L to Farmer Declaration -
Defendant WorthPoint's First Request for Production,
dated February 25, 2022 ......................................................... SA1661

Exhibit M to Farmer Declaration -
Plaintiff's Response to WorthPoint's First
Request for Production, dated April 22, 2022 ....................... SA1674

Exhibit N to Farmer Declaration -
WorthPoint's Post-Deposition Demands to Plaintiff,
dated October 6, 2022 ............................................................ SA1691

Exhibit O to Farmer Declaration -
Plaintiff's Response to WorthPoint's Post-Deposition
Demands, dated October 20, 2022, with Attachments .......... SA1701

Exhibit P to Farmer Declaration -
Deposition Testimony of Scott Goodwillie,
taken October 6, 2022, with Cover Letter ............................ SA1800

Rule 56.1 Statement of Material Facts by Defendant
WorthPoint, dated April 17, 2023 ................................. SA1884

Letter from Jana S. Farmer to the Honorable Sarah L. Cave,
dated May 9, 2023 ......................................................... SA1896

Exhibit A to Letter -
Email from Adam Bialek to Annamarie Trombetta,
dated January 18, 2022 ......................................................... SA1901

iv

**Table of Contents**
**(Continued)**

**Page**

Exhibit B to Letter -
WorthPoint's First Set of Interrogatories,
dated February 25, 2022 ........................................................ SA1903

Exhibit C to Letter -
Plaintiff's Third Response to WorthPoint's
Interrogatories, dated June 27, 2022 .................................... SA1916

Exhibit D to Letter -
Various Email Correspondence,
dated July 19, 2022 through August 8, 2022 ......................... SA1926

Exhibit E to Letter -
Various Email Correspondence,
dated September 9, 2022 to September 12, 2022 ................... SA1935

Exhibit F to Letter -
Email from Annamarie Trombetta to Nicole Haimson,
*et al*., dated September 15, 2022 .......................................... SA1939

Exhibit G to Letter -
Various Email Correspondence,
dated September 15, 2022 to September 28, 2022 ................. SA1940

**Volume 9**

Exhibit H to Letter -
Post-Deadline Court Submissions
Regarding Expert Disclosure Issues ...................................... SA1943

Exhibit I to Letter -
Redacted Documents Relating to Dr. Joseph Scelsa's
Opinions and Qualifications .................................................. SA1952

Exhibit J to Letter -
Redacted Expert Report of Gayle Skluzacek,
dated February 21, 2023, with Attachments .......................... SA2016

**Table of Contents**
**(Continued)**

**Page**

Plaintiff's Opposition Response to Defendant WorthPoint's
    Motion to Preclude and Proffer Plaintiff's Expert Witnesses,
    dated May 19, 2023 ........................................................... SA2051

Defendant WorthPoint's Response to Plaintiff's (Trombetta's)
    First Set of Notice to Admit for Defendants [Sic] WorthPoint
    Corporation, dated April 8, 2022 ................................... SA2069

WorthPoint' s Responses and Objections to Plaintiff's
    Request for the Production of Documents and Photos,
    dated April 8, 2022 ......................................................... SA2087

Defendant Worth Point's Responses and Objections to
    Plaintiff's Request for the First Set of Interrogatories for
    Defendants WorthPoint Corporation, dated April 8, 2022 ........... SA2115

Defendant Worth Point Corp.'s Response to Plaintiff's
    Second Request for Admissions, dated July 13, 2022 ................. SA2132

Defendant WorthPoint Corp.'s Answers to Plaintiff's
    Second Set of Interrogatories for Defendant WorthPoint
    Corporation, dated July 1, 2022 ..................................... SA2146

Defendant WorthPoint Corp.'s Answers to Plaintiff's
    Second Request for Production of Documents,
    dated July 1, 2022 ......................................................... SA2157

Defendant WorthPoint Corp.'s Responses to Plaintiff's
    Third Request for Interrogatories, dated August 15, 2022 ........... SA2167

Defendant WorthPoint Corp.'s Responses and Objections
    to Plaintiff's Third Request For Production of Documents,
    dated August 15, 2022 ................................................... SA2182

Defendant WorthPoint Corp.'s Responses and Objections
    to Plaintiff's Fourth Request For Production of Documents,
    dated October 11, 2022 ................................................. SA2194

vi

**Table of Contents**
**(Continued)**

**Page**

**Volume 10**

Exhibits to Plaintiff's Opposition Response to Defendant
    WorthPoint's Motion to Preclude and Proffer Plaintiff's
    Expert Witnesses ............................................................ SA2208

Exhibits to Plaintiff's Opposition Response to Defendant
    WorthPoint's Motion to Preclude and Proffer Plaintiff's
    Expert Witnesses ............................................................ SA2241

Declaration of Jana S. Farmer in Opposition to Plaintiff's
    Various Motions *in Limine* and Motions to Proffer,
    dated May 30, 2023 ........................................................ SA2264

        Exhibit A to Farmer Declaration -
        First Initial Disclosure of Defendant WorthPoint
        Corporation Pursuant to FRCP 26(A)(1),
        dated February 25, 2022 ......................................... SA2267

        Exhibit B to Farmer Declaration -
        Redacted Declaration of Jason Packer,
        dated January 19, 2023, with Exhibits ................... SA2273

        Exhibit C to Farmer Declaration -
        Redacted Defendant WorthPoint Corporation's
        Expert Disclosure Pursuant to FRCP Rule 26(a)(2) of
        Jessie Stricchiola, dated January 19, 2023, with Exhibits ..... SA2296

        Exhibit D to Farmer Declaration -
        Email from Jana S. Farmer to Annamarie Trombetta,
        *et al*., dated October 11, 2022 ............................... SA2339

Plaintiff's Response to Defendants Estate Auctions Inc. and
    Norb and Marie Novocin's Motion for Summary Judgment,
    dated May 30, 2023 ........................................................ SA2340

Exhibits 1-12 of Plaintiff's Response to Defendants
    Estate Auctions Inc. and Norb and Marie Novocin's
    Motion for Summary Judgment ................................... SA2372

vii

**Table of Contents**
**(Continued)**

**Page**

Exhibits 13-21 of Plaintiff's Response to Defendants
Estate Auctions Inc. and Norb and Marie Novocin's
Motion for Summary Judgment ...................................................... SA2410

Exhibits 22-35 of Plaintiff's Response to Defendants
Estate Auctions Inc. and Norb and Marie Novocin's
Motion for Summary Judgment ...................................................... SA2445

**Volume 11**

Exhibits 36-38 of Plaintiff's Response to Defendants
Estate Auctions Inc. Motion for Summary Judgment .................. SA2482

Exhibit 41 of Plaintiff's Response to Defendants
Estate Auctions Inc. and Norb and Marie Novocin's
Motion for Summary Judgment ...................................................... SA2525

Exhibits 39-41 of Plaintiff's Response to Defendants
Estate Auctions Inc. Motion for Summary Judgement ................ SA2547

Letter from Annamarie Trombetta to the Honorable
Sarah L. Cave, dated June 1, 2023 ............................................... SA2582

Exhibit 1 to Letter -
Various Email Correspondence between Annamarie
Trombetta and Art Appraiser Gayle Skluzacek ..................... SA2584

Exhibit 2 to Letter -
Various Email Correspondence between
Annamarie Trombetta and Dr. Joseph Scelsa ........................ SA2596

Exhibit 3 to Letter -
Plaintiff's Communication with Defendants
for Witnesses ......................................................................... SA2618

Exhibit 4 to Letter -
Problems and Delays Caused by WorthPoint Defendants ..... SA2632

**Table of Contents**
**(Continued)**

**Page**

Exhibit 5 to Letter -
Plaintiff's Illness Beginning December 7, 2022
into Late January 2023 ........................................... SA2673

Exhibit 6 to Letter -
WorthPoint Attorneys 2023 Emailing Plaintiff
Requesting Expert Witness Depositions ............................... SA2676

Exhibit 7 to Letter -
Ebay Phone Call Transcript .................................... SA2682

Exhibit 8 to Letter -
List and Number by Month February to
December 2022 Plaintiff's Problems with Defendants ......... SA2708

Plaintiff's Response to Defendant WorthPoint Corporation's
Motion for Summary Judgment, dated June 7, 2023 ................... SA2721

**Volume 12**

Exhibits 1-9 to Plaintiff's Response to Defendant
WorthPoint Corporation's Motion for Summary Judgment ......... SA2759

Exhibit 10 to Plaintiff's Response to Defendant WorthPoint
Corporation's Motion for Summary Judgment ............................ SA2792

Exhibits 12-18D to Plaintiff's Response to Defendant
WorthPoint Corporation's Motion for Summary Judgment ......... SA2822

Exhibits 19A-24 to Plaintiff's Response to Defendant
WorthPoint Corporation's Motion for Summary Judgment ......... SA2857

Exhibits 25A-27 to Plaintiff's Response to Defendant
WorthPoint Corporation's Motion for Summary Judgment ......... SA2888

Exhibits 28-30D to Plaintiff's Response to Defendant
WorthPoint Corporation's Motion for Summary Judgment ......... SA2922

**Table of Contents**
**(Continued)**

**Page**

Letter from Jana S. Farmer to the Honorable Sarah L. Cave,
 dated June 8, 2023 .......................................................... SA2947

Opinion and Order of the Honorable Sarah L. Cave,
 dated June 22, 2023 ...................................................... SA2949

Order of the Honorable Laura Taylor Swain, dated July 5, 2023 ....... SA2966

x

**SA273**

---

## Ellick, Elizabeth

| | |
|---|---|
| **From:** | Bialek, Adam |
| **Sent:** | Monday, July 25, 2022 6:50 PM |
| **To:** | Annamarie Trombetta |
| **Cc:** | Farmer, Jana S.; Haimson, Nicole; Anderson Duff |
| **Subject:** | RE: Trombetta v WorthPoint Witness disclosure |

Dear Ms. Trombetta:

Despite your claim this morning that you did NOT ask WorthPoint to update its witness list, below is your email from Friday, where you actually do request that. I do not know why we continue to have this problem where you claim you did not do something you did, or you claim that you did something you didn't.

As for your witnesses, are these fact witnesses or experts? Your subject disclosure is confusing. Fact witness disclosure is different from expert witness disclosure. Fact witnesses are governed by FRCP Rule 26(a)(1) and experts are covered under FRCP Rule 26(a)(2).

And, again, please provide us with dates that you are available in September so we may schedule their depositions.

Thank you in advance for your attention to this matter.

Regards,

Adam

Adam Bialek
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212.915.5143 (Direct)
917.538.0616 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
adam.bialek@wilsonelser.com


**From:** Annamarie Trombetta [mailto:atrombettaart@gmail.com]
**Sent:** Friday, July 22, 2022 8:06 AM
**To:** Bialek, Adam <Adam.Bialek@wilsonelser.com>
**Cc:** Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>
**Subject:** Re: Trombetta v WorthPoint Witness disclosure


**[EXTERNAL EMAIL]**

Mr. Bialek, Ms. Farmer,

As per your interrogatory and your request, I have furnished you will the attorneys names in the Second Request.

1

I have complied with the addresses as per your Third Request as you can please review below.

I have also complied with for Federal Rule Civil Procedure 26 (a) (1) which states the name and if known the addresses. Please see below **FRCP 26(a)(1)(A)(i): The name, and, <span style="color:red">if known,</span> the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.**

Your firm asked Plaintiff for the names and addresses of all persons. and according to FRCP I am in compliance.
Please update and inform the Plaintiff on WorthPoint's names and addresses of your witnesses at trail.

Below are Plaintiff's responses to the subject matter which is to give testimony on behalf of Plaintiff.

1. Identify the names and addresses of all persons who are believed or known by Plaintiff, her agents, or her past or current attorneys to have any knowledge concerning any of the issues in this Lawsuit; and specify the subject matter about which the witness has knowledge.

**PLAINTIFF'S THIRD RESPONSE TO INTERROGATORY NO. 1**

1) Peter Trippi, Editor of Fine Art Connoisseur Magazine Streamline Publishing, Inc. Redacted - Confidential Information
2) Gayle Skluzacek Abigail Hartmann Associates PO Box Redacted - Confidential Information Redacted - Proprietary Redaction
3) Peter Drake, Provost New York Academy of Art, Redacted - Confidential Information Redacted - Propriet
4) Dr. Joseph V. Scelsa Director & Founder, Italian America Museum Redacted - Proprietary Redaction Redacted - Confidential Information
5) Alex Raspa Alex (Alejandro) Raspa Post Production Sound Senior Technician & Instructor Post Production CenterMaurice Kanbar Institute of Film & Television Tisch School of the Arts, New York University Redacted - Confidential Information Redacted - Proprietary Redaction
6) Vanessa Ploski Redacted -Confidential Information
7) Scott Goodwillie— Redacted - Confidential Information
8) Willie Chu Redacted - Confidential Information
9) Daniel Caropreso Magicx Studios Redacted - Confidential Information Redacted - Proprie
10) Eileen Guggenheim long standing Board Member at New York Academy of Art Redacted - Confidential Information

1) Peter Trippi will give testimony on the importance of an artist's name and reputation in reference to the financial net worth of an artist's name and the danger of a false circulation of an artist's signature on the internet.
2) Gayle Skluzacek in like fashion will give testimony on reputation in reference to the financial net worth of an artist's name. Specifically the danger of fakes and forgeries and how it can effect the values of the artist worth and the confusion in authenticating an artist's signature
3) Peter Drake is Provost/Artist will give testimony on the New York Academy, an artists's information, reputation in reference to the financial net worth of an artist's name and the danger of a false circulation of an artist's signature on the internet.
4)Dr. Scelsa, and in like fashion will give testimony on Plaintiff's successful exhibition in 2015, reputation in reference to the financial net worth of an artist's name -the success of my 2015 exhibition and the listing of the Italian American Museum with the WorthPoint False listing that appeared with the " 1972 Original Oil Man With Red Umbrella "and the danger of a false circulation of an artist's signature on the internet.
5) Alex Raspa will give testimony on the content of the ad and the impact this ad had on my personal and professional life and the danger of a false circulation of an artist's signature on the internet.

6)Vanessa Ploski will give testimony on the content of the ad and the impact this ad had on my personal and professional life and the danger of a false circulation of an artist's signature on the internet.

7)Scott Goodwillie will give testimony on the content of the ad and the impact this ad had on my personal and professional life related to obtaining gallery representation.

8) Willie Chu will give testimony on contacting G-suite /Google and the impact this ad had on my personal and professional life.

9) Daniel Caropreso will give testimony the impact this ad had on my personal and professional life and websites.

10) Eileen Guggenheim will give character witness testimony on my long standing reputation from art student to professional artist. Secondly she will give testimony on the importance of an artist's name and reputation in reference to the financial net worth of an artist's name and the danger of a false circulation of an artist's signature on the internet and the impact this ad had on my personal and professional life.

Please confirm receipt of this email.
Annamarie Trombetta

On Tue, Jul 19, 2022 at 8:27 PM Bialek, Adam <Adam.Bialek@wilsonelser.com> wrote:

Dear Ms. Trombetta:

In Plaintiff's Third Response to Interrogatory No. 1, you identify 10 witnesses. However, you failed to provide the phone number for each individual and you failed to "specify the subject matter about which the witness has knowledge." As such, and in accordance with Rule 26(a), please provide such information for each of the 10 witnesses you have identified.

Thank you in advance for your attention to this matter.

Regards,

Adam

Adam Bialek
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212.915.5143 (Direct)
917.538.0616 (Cell)
212.490.3000 (Main)

**SA276**

212.490.3038 (Fax)
adam.bialek@wilsonelser.com

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.
Thank you.

## Ellick, Elizabeth

| | |
|---|---|
| **From:** | Annamarie Trombetta <atrombettaart@gmail.com> |
| **Sent:** | Wednesday, July 27, 2022 9:59 AM |
| **To:** | Bialek, Adam |
| **Cc:** | Farmer, Jana S.; Haimson, Nicole; Anderson Duff |
| **Subject:** | Re: Trombetta v WorthPoint Witness disclosure |

**[EXTERNAL EMAIL]**

Mr. Bialek,

Please Note---Last week you and Ms. Farmer sent Plaintiff two individual and separate emails requests regarding the subject matter of my witnesses. I sent two separate replies to Ms. Farmer which did not include my inquiry regarding the updated witness list.
I specifically asked you alone Mr. Bialek for an update on your witnesses. I did not ask Ms. Farmer, for an update on the witnesses I only asked you in my response email to you. I did acknowledged and thanked Ms. Farmerfor her response.

I am not clear on the nuanced difference between factual witness and an expert. Many of my witnesses are experts in their field.
Peter Trippi --Expert
Gayle Skluzacek-Expert
Dr. Joseph Scelsa-Expert
Peter Drake-Expert
Alex Raspa -Fact
Scott Goodwillie-Fact
Willie Chu-Fact
Vanessa Ploski-Fact and Expert
Daniel Caropreso-Expert
Eileen Guggenheim-Expert

In response to your request for dates in September I already answered you below but will add on the 5th thru the 9th
And, again, please provide us with dates that you are available in September so we may schedule their depositions.

**To avoid further confusion and to accommodate your firm's schedule - Please set and confirm 3 dates----**
**August 26th Yes or No**
**---- August 25th Yes or No**
**---- any day the week of August 29th Yes or No**
**Upon confirming a date please indicate a TIME and the prospective length of the deposition.**
**Sincerely,**
**Annamarie Trombetta**

1

**SA278**

On Mon, Jul 25, 2022 at 6:49 PM Bialek, Adam <Adam.Bialek@wilsonelser.com> wrote:

Dear Ms. Trombetta:

Despite your claim this morning that you did NOT ask WorthPoint to update its witness list, below is your email from Friday, where you actually do request that. I do not know why we continue to have this problem where you claim you did not do something you did, or you claim that you did something you didn't.

As for your witnesses, are these fact witnesses or experts? Your subject disclosure is confusing. Fact witness disclosure is different from expert witness disclosure. Fact witnesses are governed by FRCP Rule 26(a)(1) and experts are covered under FRCP Rule 26(a)(2).

And, again, please provide us with dates that you are available in September so we may schedule their depositions.

Thank you in advance for your attention to this matter.


Regards,


Adam

Adam Bialek
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212.915.5143 (Direct)
917.538.0616 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
adam.bialek@wilsonelser.com


**From:** Annamarie Trombetta [mailto:atrombettaart@gmail.com]
**Sent:** Friday, July 22, 2022 8:06 AM
**To:** Bialek, Adam <Adam.Bialek@wilsonelser.com>
**Cc:** Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>
**Subject:** Re: Trombetta v WorthPoint Witness disclosure

**[EXTERNAL EMAIL]**

Mr. Bialek, Ms. Farmer,

As per your interrogatory and your request, I have furnished you will the attorneys names in the Second Request.

2

I have complied with the addresses as per your Third Request as you can please review below.

I have also complied with for Federal Rule Civil Procedure 26 (a) (1) which states the name and if known the addresses. Please see below **FRCP 26(a)(1)(A)(i): The name, and, <span style="color:red">if known,</span> the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.**

Your firm asked Plaintiff for the names and addresses of all persons. and according to FRCP I am in compliance.

Please update and inform the Plaintiff on WorthPoint's names and addresses of your witnesses at trail.

Below are Plaintiff's responses to the subject matter which is to give testimony on behalf of Plaintiff.

1. Identify the names and addresses of all persons who are believed or known by Plaintiff, her agents, or her past or current attorneys to have any knowledge concerning any of the issues in this Lawsuit; and specify the subject matter about which the witness has knowledge.

**PLAINTIFF'S THIRD RESPONSE TO INTERROGATORY NO. 1**

1) Peter Trippi, Editor of Fine Art Connoisseur Magazine  Streamline Publishing, Inc. Redacted - Confidential Information
2) Gayle Skluzacek Abigail Hartmann Associates Redacted - Confidential Information 12530.
3) Peter Drake, Provost New York Academy of Art, Redacted - Confidential Information
4) Dr. Joseph V. Scelsa Director & Founder, Italian America Museum Redacted - Confidential Information
5) Alex  Raspa Alex (Alejandro) Raspa   Post Production Sound Senior Technician & Instructor Post Production CenterMaurice Kanbar Institute of Film & Television Tisch School of the Arts, New York University Redacted - Confidential Information
6) Vanessa Ploski Redacted - Confidential Information
7) Scott Goodwillie
8) Willie Chu Redacted - Confidential Information
9) Daniel Caropreso Magicx Studios Redacted - Confidential Information
10) Eileen Guggenheim long standing Board Member at  New York Academy of Art Redacted -Confidential Information

1) Peter Trippi will give testimony on the importance of an artist's name and reputation in reference to the financial net worth of an artist's name and the danger of a false circulation of an artist's signature on the internet.

2) Gayle Skluzacek in like fashion will give testimony on reputation in reference to the financial net worth of an artist's name. Specifically the danger of fakes and forgeries and how it can effect the values of the artist worth and the confusion in authenticating an artist's signature

3) Peter Drake is Provost/Artist will give testimony on the New York Academy, an artists's information, reputation in reference to the financial net worth of an artist's name and the danger of a false circulation of an artist's signature on the internet.

4)Dr. Scelsa, and in like fashion will give testimony on Plaintiff's successful exhibition in 2015, reputation in reference to the financial net worth of an artist's name -the success of my 2015 exhibition and the listing of the

**SA280**

Italian American Museum with the WorthPoint False listing that appeared with the " 1972 Original Oil Man With Red Umbrella "and the danger of a false circulation of an artist's signature on the internet.

5) Alex Raspa will give testimony on the content of the ad and the impact this ad had on my personal and professional life and the danger of a false circulation of an artist's signature on the internet.

6)Vanessa Ploski will give testimony on the content of the ad and the impact this ad had on my personal and professional life and the danger of a false circulation of an artist's signature on the internet.

7)Scott Goodwillie will give testimony on the content of the ad and the impact this ad had on my personal and professional life related to obtaining gallery representation.

8) Willie Chu will give testimony on contacting G-suite /Google and the impact this ad had on my personal and professional life.

9) Daniel Caropreso will give testimony the impact this ad had on my personal and professional life and websites.

10) Eileen Guggenheim will give character witness testimony on my long standing reputation from art student to professional artist. Secondly she will give testimony on the importance of an artist's name and reputation in reference to the financial net worth of an artist's name and the danger of a false circulation of an artist's signature on the internet and the impact this ad had on my personal and professional life.

Please confirm receipt of this email.

Annamarie Trombetta

On Tue, Jul 19, 2022 at 8:27 PM Bialek, Adam <Adam.Bialek@wilsonelser.com> wrote:

Dear Ms. Trombetta:

In Plaintiff's Third Response to Interrogatory No. 1, you identify 10 witnesses. However, you failed to provide the phone number for each individual and you failed to "specify the subject matter about which the witness has knowledge." As such, and in accordance with Rule 26(a), please provide such information for each of the 10 witnesses you have identified.

Thank you in advance for your attention to this matter.

Regards,

Adam

Adam Bialek
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212.915.5143 (Direct)
917.538.0616 (Cell)
212.490.3000 (Main)

212.490.3038 (Fax)
adam.bialek@wilsonelser.com

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.

Thank you.

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.
Thank you.

**SA282**

---

## Ellick, Elizabeth

| | |
|---|---|
| **From:** | Haimson, Nicole |
| **Sent:** | Monday, August 8, 2022 3:50 PM |
| **To:** | Annamarie Trombetta |
| **Cc:** | Farmer, Jana S.; Anderson Duff; Bialek, Adam |
| **Subject:** | RE: Trombetta v WorthPoint Witness disclosure |

**Importance:** High

Ms. Trombetta,

To follow up on Adam's prior email and clarify, discovery for fact witnesses is governed by FRCP Rule 26(a)(1) and discovery for experts is governed by FRCP Rule 26(a)(2). See, https://www.law.cornell.edu/rules/frcp/rule_26.

The Federal Rules of Evidence address what a "fact witness" can do in Rule 701:

> *Rule 701. Opinion Testimony by Lay Witnesses*
>
> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The Federal Rules of Evidence address what an "expert witness" can do in Rules 702, 703, and 705:

> *Rule 702. Testimony by Experts*
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

> *Rule 703. Bases of an Expert*
>
> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

> *Rule 705. Disclosing the Facts or Data Underlying an Expert*
>
> Unless the court orders otherwise, an expert may state an opinion — and give the reasons for it — without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination.

1

**SA283**

As such, to the extent the witnesses you describe below as being "experts" intend to present evidence under Rules 702, 703, or 705 at trial, pursuant to FRCP Rule 26(a)(2), you must make an expert disclosure.

The expert disclosure must be in the form of a **written report prepared and signed by each expert** and which contains the following information: **a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.**

**Please confirm as soon as possible whether you will be making expert disclosures for these witnesses or whether they are fact witnesses.**

Thank you.


Nicole Haimson
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
518.320.3608 (Direct)
516.330.8099 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
nicole.haimson@wilsonelser.com

**From:** Annamarie Trombetta [mailto:atrombettaart@gmail.com]
**Sent:** Wednesday, July 27, 2022 9:59 AM
**To:** Bialek, Adam <Adam.Bialek@wilsonelser.com>
**Cc:** Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>
**Subject:** Re: Trombetta v WorthPoint Witness disclosure


**[EXTERNAL EMAIL]**

Mr. Bialek,

Please Note---Last week you and Ms. Farmer sent Plaintiff two individual and separate emails requests regarding the subject matter of my witnesses. I sent two separate replies to Ms. Farmer which did not include my inquiry regarding the updated witness list.
I specifically asked you alone Mr. Bialek for an update on your witnesses. I did not ask Ms. Farmer, for an update on the witnesses I only asked you in my response email to you. I did acknowledged and thanked Ms. Farmerfor her response.

I am not clear on the nuanced difference between factual witness and an expert. Many of my witnesses are experts in their field.
Peter Trippi --Expert
Gayle Skluzacek-Expert
Dr. Joseph Scelsa-Expert
Peter Drake-Expert

2

**SA284**

Alex Raspa -Fact
Scott Goodwillie-Fact
Willie Chu-Fact
Vanessa Ploski-Fact and Expert
Daniel Caropreso-Expert
Eileen Guggenheim-Expert

In response to your request for dates in September I already answered you below but will add on the 5th thru the 9th

And, again, please provide us with dates that you are available in September so we may schedule their depositions.

**To avoid further confusion and to accommodate your firm's schedule - Please set and confirm 3 dates----**
**August 26th Yes or No**
**---- August 25th Yes or No**
**---- any day the week of August 29th Yes or No**
**Upon confirming a date please indicate a TIME and the prospective length of the deposition.**
**Sincerely,**
**Annamarie Trombetta**

On Mon, Jul 25, 2022 at 6:49 PM Bialek, Adam <Adam.Bialek@wilsonelser.com> wrote:

Dear Ms. Trombetta:

Despite your claim this morning that you did NOT ask WorthPoint to update its witness list, below is your email from Friday, where you actually do request that. I do not know why we continue to have this problem where you claim you did not do something you did, or you claim that you did something you didn't.

As for your witnesses, are these fact witnesses or experts? Your subject disclosure is confusing. Fact witness disclosure is different from expert witness disclosure. Fact witnesses are governed by FRCP Rule 26(a)(1) and experts are covered under FRCP Rule 26(a)(2).

And, again, please provide us with dates that you are available in September so we may schedule their depositions.

Thank you in advance for your attention to this matter.

3

Regards,


Adam


Adam Bialek
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212.915.5143 (Direct)
917.538.0616 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
adam.bialek@wilsonelser.com

**From:** Annamarie Trombetta [mailto:atrombettaart@gmail.com]
**Sent:** Friday, July 22, 2022 8:06 AM
**To:** Bialek, Adam <Adam.Bialek@wilsonelser.com>
**Cc:** Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>
**Subject:** Re: Trombetta v WorthPoint Witness disclosure


**[EXTERNAL EMAIL]**

Mr. Bialek, Ms. Farmer,


As per your interrogatory and your request, I have furnished you will the attorneys names in the Second Request.

I have complied with the addresses as per your Third Request as you can please review below.


I have also complied with for Federal Rule Civil Procedure 26 (a) (1) which states the name and if known the addresses. Please see below **FRCP 26(a)(1)(A)(i): The name, and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.**


Your firm asked Plaintiff for the names and addresses of all persons. and according to FRCP I am in compliance.

4

**SA286**

Please update and inform the Plaintiff on WorthPoint's names and addresses of your witnesses at trail.

Below are Plaintiff's responses to the subject matter which is to give testimony on behalf of Plaintiff.

1. **Identify the names and addresses of all persons who are believed or known by Plaintiff, her agents, or her past or current attorneys to have any knowledge concerning any of the issues in this Lawsuit; and specify the subject matter about which the witness has knowledge.**

**PLAINTIFF'S THIRD RESPONSE TO INTERROGATORY NO. 1**

1) Peter Trippi, Editor of Fine Art Connoisseur Magazine Streamline Publishing, Inc. Redacted - Confidential Information
2) Gayle Skluzacek Abigail Hartmann Associates Redacted - Confidential Information Redacted - Witness
3) Peter Drake, Provost New York Academy of Ar Redacted - Witness Redacted - Proprietary Redaction
4) Dr. Joseph V. Scelsa Director & Founder, Italian America Museum Redacted - Confidential Information
5) Alex Raspa Alex (Alejandro) Raspa Post Production Sound Senior Technician & Instructor Post Production CenterMaurice Kanbar Institute of Film & Television Tisch School of the Arts Redacted -Confidential Information New York, NY 10003
6) Vanessa Plo Redacted -Confidential Information
7) Scott Good
8) Willie Chu
9) Daniel Caropreso Magicx Studios Redacted -Confidential Information Redacted - Prop
10) Eileen Guggenheim long standing Board Member at New York Academy of Art Redacted -Confidential Information

1) Peter Trippi will give testimony on the importance of an artist's name and reputation in reference to the financial net worth of an artist's name and the danger of a false circulation of an artist's signature on the internet.

2) Gayle Skluzacek in like fashion will give testimony on reputation in reference to the financial net worth of an artist's name. Specifically the danger of fakes and forgeries and how it can effect the values of the artist worth and the confusion in authenticating an artist's signature

3) Peter Drake is Provost/Artist will give testimony on the New York Academy, an artists's information, reputation in reference to the financial net worth of an artist's name and the danger of a false circulation of an artist's signature on the internet.

4)Dr. Scelsa, and in like fashion will give testimony on Plaintiff's successful exhibition in 2015, reputation in reference to the financial net worth of an artist's name -the success of my 2015 exhibition and the listing of the Italian American Museum with the WorthPoint False listing that appeared with the " 1972 Original Oil Man With Red Umbrella "and the danger of a false circulation of an artist's signature on the internet.

5) Alex Raspa will give testimony on the content of the ad and the impact this ad had on my personal and professional life and the danger of a false circulation of an artist's signature on the internet.

6) Vanessa Ploski will give testimony on the content of the ad and the impact this ad had on my personal and professional life and the danger of a false circulation of an artist's signature on the internet.

7) Scott Goodwillie will give testimony on the content of the ad and the impact this ad had on my personal and professional life related to obtaining gallery representation.

8) Willie Chu will give testimony on contacting G-suite /Google and the impact this ad had on my personal and professional life.

9) Daniel Caropreso will give testimony the impact this ad had on my personal and professional life and websites.

10) Eileen Guggenheim will give character witness testimony on my long standing reputation from art student to professional artist. Secondly she will give testimony on the importance of an artist's name and reputation in reference to the financial net worth of an artist's name and the danger of a false circulation of an artist's signature on the internet and the impact this ad had on my personal and professional life.

Please confirm receipt of this email.

Annamarie Trombetta

On Tue, Jul 19, 2022 at 8:27 PM Bialek, Adam <Adam.Bialek@wilsonelser.com> wrote:

Dear Ms. Trombetta:

In Plaintiff's Third Response to Interrogatory No. 1, you identify 10 witnesses. However, you failed to provide the phone number for each individual and you failed to "specify the subject matter about which the witness has knowledge." As such, and in accordance with Rule 26(a), please provide such information for each of the 10 witnesses you have identified.

Thank you in advance for your attention to this matter.

Regards,

Adam

Adam Bialek
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212.915.5143 (Direct)
917.538.0616 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
adam.bialek@wilsonelser.com

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.

Thank you.

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.
Thank you.

**SA289**

## Ellick, Elizabeth

| | |
|---|---|
| **From:** | Bialek, Adam |
| **Sent:** | Wednesday, August 10, 2022 9:22 AM |
| **To:** | Annamarie Trombetta |
| **Cc:** | Farmer, Jana S.; Haimson, Nicole; Anderson Duff |
| **Subject:** | RE: Plaintiff Annamarie Trombetta--Deposition Date |

Dear Ms. Trombetta:

We cannot continue to argue with you over dates. You are the plaintiff and must participate in your litigation, or let it go. You have made numerous *false* representations to the Court about our conduct and yours, and that must end. We have been extremely patient with you but your continued attacks with false claims is trying our patience. We confirmed your deposition for the 25th of August as it was one of the days you provided. We served you with a proper notice, and then you informed the court we had not and again said you were available. So, are you conceding you made false statements to the Court? Our client, who is traveling from Georgia, made arrangements based on your representation. I will be away for the next week and need to know for certain by today at noon whether you can come to your deposition on the 25th or not. If you want to be deposed on September 1, 2022, please let me know as soon as possible so I can check with my client. Anderson: Are you free that day if my client can do it that day? My schedule works.

We also need dates for the deposition of your witnesses that we choose to take. As you know, we have an investigator who is trying to speak with the witnesses to find out what they intend to say (despite your protest, this is permissible) to allow us to determine whether we even want to spend the time and money to depose them. We would think you would want us to do our due diligence before wasting any money, as our client intends to seek its fees if it prevails in this lawsuit as it is entitled under 17 USC 505.

We are also taking this opportunity to remind you that we still need you to provide the proper expert witness disclosure. You identified 7 experts, but have failed to provide the necessary information. Please refer to Rule 26. It provides:

(B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

    (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
    (ii) the facts or data considered by the witness in forming them;
    (iii) any exhibits that will be used to summarize or support them;
    (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
    (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
    (vi) a statement of the compensation to be paid for the study and testimony in the case.

Or:

(C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

    (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
    (ii) a summary of the facts and opinions to which the witness is expected to testify.

We cannot schedule the expert witness depositions until we receive this information. Your failure to provide this information will delay this case. As such, the sooner you can provide this information, the sooner we can schedule the depositions. The longer you wait, the longer it will take to schedule with your limited availability, and that may result in further extensions being required. As to scheduling, either provide us with dates that you can or cannot be available, or make arrangements after the fact to try to move them.

We are, of course, ready, willing and able to meet and confer with you on these issues.

Regards,

Adam

Adam Bialek
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212.915.5143 (Direct)
917.538.0616 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
adam.bialek@wilsonelser.com


**From:** Annamarie Trombetta [mailto:atrombettaart@gmail.com]
**Sent:** Tuesday, August 9, 2022 10:48 PM
**To:** Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Bialek, Adam <Adam.Bialek@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>
**Subject:** Plaintiff Annamarie Trombetta--Deposition Date


**[EXTERNAL EMAIL]**

Ta All Attorneys,

Pardon my delayed response.

It has been almost two weeks since I stated I might be able to change my schedule. Since I did not hear from any of the attorneys to confirm, I did not change my appointment. I have reached out to my source yet have not heard back to make the necessary changes .

To date I cannot confirm my availability for the 25th.

I am requesting to leave the September 1st date open for the deposition in case I am unable to change my prior commitment on the 25th

Sincerely,
Annamarie Trombetta

**SA291**

---

**Ellick, Elizabeth**

| | |
|---|---|
| **From:** | Farmer, Jana S. |
| **Sent:** | Monday, September 12, 2022 1:21 PM |
| **To:** | Annamarie Trombetta |
| **Cc:** | Bialek, Adam; Haimson, Nicole; Anderson Duff; Farmer, Jana S. |
| **Subject:** | RE: Where is my Deposition ? When is the Deposition of Norb and Marie NovocinWitness Status |

Ms. Trombetta,

Your deletion of three witnesses from your disclosure is noted. For new expert witnesses, please produce the required disclosures/reports as per the federal rules of civil procedure, we previously gave you the relevant section.

Additionally, I am not clear if any other witnesses on your list are expert witness besides Patrick O'Leary and Gayle Skluzacek. Please advise and provide expert disclosures for any such witnesses.

Jana S. Farmer
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, NY 10604
914.872.7247 (Direct)
914.552.9644 (Cell)
914.323.7000 (Main)
914.323.7001 (Fax)
jana.farmer@wilsonelser.com


**From:** Annamarie Trombetta [mailto:atrombettaart@gmail.com]
**Sent:** Monday, September 12, 2022 1:11 PM
**To:** Farmer, Jana S. <Jana.Farmer@wilsonelser.com>
**Cc:** Bialek, Adam <Adam.Bialek@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>
**Subject:** Re: Where is my Deposition ? When is the Deposition of Norb and Marie NovocinWitness Status


**[EXTERNAL EMAIL]**

To All Parties,

Witness Update--- Three Removals from Plaintiff's Witnesses
Please Review the Letter by Witnesses Eileen Guggenheim-- **Plaintiff's Evidence 000325** ---Remove as Witness
Please Review the Letter by Witnesses Peter Drake -- **Plaintiff's Evidence 000326** ---Remove as Witness
Please Review the Letter by Alex Raspa-- **Plaintiff's Evidence 000327** ---Remove as Witness

NEW EXPERT WITNESS Patrick Michael O'Leary is attached CV
EXPERT WITNESS Gayle Skluzacek is attached CV

Witnesses that I am awaiting Confirmation. It should happen if not today then this week.

1

1) Dan Caropreso
2) Dr. Joseph V. Scelsa

Submitted September 12, 2022
Annamaire Trombetta

On Sun, Sep 11, 2022 at 4:33 PM Farmer, Jana S. <Jana.Farmer@wilsonelser.com> wrote:

> Ms. Trombetta,
>
> The transcript is not yet ready from the court reporter. The turnaround is two weeks so we expect getting it this week.
>
> Novocins deposition was scheduled for September 21st. It was scheduled in your presence at your deposition.
>
> Please be advised that we will be serving subpoenas on your witnesses starting Monday. If any do not wish to appear and you will be withdrawing them, please advise as soon as possible.
>
> Jana S. Farmer
> Attorney at Law
> Wilson Elser Moskowitz Edelman & Dicker LLP
> 1133 Westchester Avenue
> White Plains, NY 10604
> 914.872.7247 (Direct)
> 914.552.9644 (Cell)
> 914.323.7000 (Main)
> 914.323.7001 (Fax)
> jana.farmer@wilsonelser.com
>
> **From:** Annamarie Trombetta [mailto:atrombettaart@gmail.com]
> **Sent:** Friday, September 9, 2022 7:18 PM
> **To:** Farmer, Jana S. <jana.farmer@wilsonelser.com>; Bialek, Adam <Adam.Bialek@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>
> **Subject:** Where is my Deposition ? When is the Deposition of Norb and Marie NovocinWitness Status
>
> **[EXTERNAL EMAIL]**
>
> To All Parties.
>
> It has been eleven days since my nine hour deposition. When will I be receiving it to correct and set forth the requested supplemental responses??

2

Secondly, Plaintiff is requesting the date and time for the deposition date for Norb and Marie Novocin. To date nothing has been scheduled or conveyed to the Plaintiff.

Last, upon the return and confirmation of all my witnesses I will be informing you of my updated status for witness as soon as possible on Monday September 12, 2022.

Please take note and review the email dated August 7, 2022 which states the return date of September 8, 2022 for Ms. Skluzacek.

Annamarie Trombetta

CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman & Dicker LLP, please see our website at www.wilsonelser.com or refer to any of our offices.
Thank you.

**SA294**

### Ellick, Elizabeth

| | |
|---|---|
| **From:** | Haimson, Nicole |
| **Sent:** | Monday, September 19, 2022 12:48 PM |
| **To:** | Annamarie Trombetta |
| **Cc:** | Farmer, Jana S.; Bialek, Adam; Anderson Duff |
| **Subject:** | RE: Expert Witnesses |

Ms. Trombetta,

Based on your recent emails, it is our understanding that the following individuals will be serving as your expert witnesses:

- Dr. Joseph V. Scelsa;
- Patrick Michael O'Leary; and
- Gayle Skluzacek

Please 1) confirm this is accurate; 2) provide your expert disclosures in accordance with FRCP Rule 26(a)(2) as soon as possible; and 3) let us know your availability for a meet and confer to discuss expert discovery.

Best,

Nicole Haimson
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
518.320.3608 (Direct)
516.330.8099 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
nicole.haimson@wilsonelser.com

**From:** Annamarie Trombetta [mailto:atrombettaart@gmail.com]
**Sent:** Thursday, September 15, 2022 4:51 PM
**To:** Farmer, Jana S. <jana.farmer@wilsonelser.com>; Bialek, Adam <Adam.Bialek@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>
**Subject:** Re: Expert Witnesses

**[EXTERNAL EMAIL]**

Please see the attached documents to accompany Dr. Scelsa'a CV

On Thu, Sep 15, 2022 at 3:55 PM Annamarie Trombetta <atrombettaart@gmail.com> wrote:

> To All Attorneys and Parties,

**SA295**

At the end of June 2022 I sent my list of witnesses to you.

To date three have been removed and have furnished letters stating the reasons for their departure.

Attached please find the CV of Expert Witness Dr. Joseph V. Scelsa --Founder and Director of the Italian American Museum and Advocate for Italian Americans.

Attached please find the response and rates from Expert Witness Patrick Michael O'Leary.

I am still waiting to hear from Peter Trippi and Dan Caropreso due to the unknown date of the trial and the schedules of these individuals.

Submitted September 15, 2022
Annamarie Trombetta

**SA296**

## Ellick, Elizabeth

| | |
|---|---|
| **From:** | Haimson, Nicole |
| **Sent:** | Wednesday, September 28, 2022 9:00 AM |
| **To:** | annamarietrombettalegal@outlook.com |
| **Cc:** | Farmer, Jana S.; Bialek, Adam; Anderson Duff |
| **Subject:** | RE: Expert Witnesses |

Ms. Trombetta,

Writing to follow up about the below.

Best,

Nicole Haimson
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
518.320.3608 (Direct)
516.330.8099 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
nicole.haimson@wilsonelser.com

---

**From:** Haimson, Nicole
**Sent:** Monday, September 19, 2022 12:48 PM
**To:** Annamarie Trombetta <atrombettaart@gmail.com>
**Cc:** Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Bialek, Adam <Adam.Bialek@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>
**Subject:** RE: Expert Witnesses

Ms. Trombetta,

Based on your recent emails, it is our understanding that the following individuals will be serving as your expert witnesses:

- Dr. Joseph V. Scelsa;
- Patrick Michael O'Leary; and
- Gayle Skluzacek

Please 1) confirm this is accurate; 2) provide your expert disclosures in accordance with FRCP Rule 26(a)(2) as soon as possible; and 3) let us know your availability for a meet and confer to discuss expert discovery.

Best,

1

Nicole Haimson
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
518.320.3608 (Direct)
516.330.8099 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
nicole.haimson@wilsonelser.com

**From:** Annamarie Trombetta [mailto:atrombettaart@gmail.com]
**Sent:** Thursday, September 15, 2022 4:51 PM
**To:** Farmer, Jana S. <jana.farmer@wilsonelser.com>; Bialek, Adam <Adam.Bialek@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>
**Subject:** Re: Expert Witnesses


**[EXTERNAL EMAIL]**


Please see the attached documents to accompany Dr. Scelsa'a CV

On Thu, Sep 15, 2022 at 3:55 PM Annamarie Trombetta <atrombettaart@gmail.com> wrote:

To All Attorneys and Parties,

At the end of June 2022 I sent my list of witnesses to you.

To date three have been removed and have furnished letters stating the reasons for their departure.

Attached please find the CV of Expert Witness Dr. Joseph V. Scelsa --Founder and Director of the Italian American Museum and Advocate for Italian Americans.

Attached please find the response and rates from Expert Witness Patrick Michael O'Leary.

I am still waiting to hear from Peter Trippi and Dan Caropreso due to the unknown date of the trial and the schedules of these individuals.

Submitted September 15, 2022
Annamarie Trombetta

**SA298**

*EXPERT Affidavit #1*

*PATRICK MICHAEL O'LEARY*

# Plaintiff's Expert Affidavit #1

Plaintiff000787

Monday, December 5, 2022

**SA299**

*EXPERT Affidavit #1*                                           *PATRICK MICHAEL O'LEARY*

# Table of Contents

| | |
|---|---|
| Plaintiff's Expert Affidavit #1 Sworn Statement | 3 |
| Plaintiff's Expert Affidavit #1 Conclusion | 17 |
| Plaintiff's Expert Affidavit #1 Signature | 19 |
| Exhibit A Plaintiff's Experts CV | 21 |

Plaintiff000788

EXPERT Affidavit #1

PATRICK MICHAEL O'LEAR

# Plaintiff's Expert

# Affidavit #1

# Sworn Statement



Plaintiff000789

**SA301**

EXPERT Affidavit #1                                                                                    PATRICK MICHAEL O'LEARY

**Plaintiffs:**          Trombetta                                           Southern District of New York
                                    **VS.**                        §

**Defendants:**                                                  §          **Case No.** CV18 0993
                                   Novocain

## AFFIDAVIT SWORN STATEMENT

**Date**: December 5th, 2022

My legal name is Patrick Michael O'Leary ("Affiant"), and I acknowledge I am:

  a) **Age**: 58 years old
  b) **Address**: 31 Par Ln N, Brentwood, New York, 11717
  c) **Residency**: New York

Being duly sworn, I hereby declare under oath that I (Patrick Michael O'Leary) have been retained as an expert by the Plaintiff to render my expert opinions in this matter. Accordingly, this document will serve as an expert witness affidavit for the Plaintiff.

I can state the following with absolute certainty:

I have **35** years of *relevant* and *recent* experience with *Internet* activities.

I have the *expertise, scientific/technical/specialized knowledge, skill, training, education, and personal experience* beyond the common knowledge **and** outside the executive function of the Trier that qualifies me to render expert opinions on this litigation matter.

*My analysis, recommendations, and opinions are with **Intellectual Rigor, Replicability, and Reliability** with **sufficient facts or data** as expected with expert witness affidavits and reports!*

Plaintiff000790

**SA302**

*EXPERT Affidavit #1*                                           PATRICK MICHAEL O'LEARY

To The Honorable Judge Cave,

I am writing to the Court on behalf of Annamarie Trombetta, the Plaintiff in this legal matter.

In **1987**, I completed a bachelor's degree in Electrical Engineering / Computer Science from the **NYU** / Polytechnic Institute of Brooklyn, New York *("Brooklyn Poly")*.

In **2000**, I sold an Internet Social media dot-com to *Lycos* for **45** million dollars.

In **2011**, I completed **seven** IT security certifications with ISC2, EC-Counsel, and Comp-TIA. (CISSP, CEH, CHFI, etc.)  The CISSP (**C**ertified **I**nformation **S**ystems **S**ecurity **P**rofessional) certification exam is to Information Technology as a Bar Exam would be to a lawyer.

In **2020**, I completed my **MBA** from Hofstra University with a **3.96** GPA.

Presently, I am *(slowly)* working on my **JD** law degree.

I have **thirty-five** plus years of post-college hands-on industry experience, from sitting in a cubicle programming and developing software to being the **Chief Technology Officer** (CTO) and **Chief Executive Officer** (CEO).

I have experience in **Internet business** areas of Planning, Strategy, Analysis, Operations Research, Sales, Marketing, Branding, Finances, Budgeting, Human Resources, Real Estate(Data Centers), Acquisitions, Mergers, Due Diligence, Risk Management, Sale of Company, Venture Capital, Investment Bankers, Social Media, Intellectual Property, Patents, Prior Art and Trademarks.

I have experience in the **Internet technical** areas of **Security**, **Programming**, Databases, Websites, SEO, Engineering, **Software**, Hardware, Networking (TCP/IP), Routing, Content. Filtering, **eMail (SMTP)**, Life-cycle, Risk Management, Information Technology (IT), Facility Maintenance/ Construction, Social Networking, Linux, Apache, MySQL, PHP, C#, HTML, Big Data platforms and content management systems like Drupal.

As a result, I have been admitted to the *1st, 2nd, 3rd, and 5th* Federal Circuits as an Internet subject matter expert.

I am currently an Internet Expert Witness and consult for law firms as an Internet Litigation Consultant.

**My full detailed CV is in Exhibit A.**                              Plaintiff000791

Case 1:18-cv-00993-RA-SLC   Document 494-2   Filed 04/07/23   Page 6 of 29

*EXPERT Affidavit #1*                                                            *PATRICK MICHAEL O'LEARY*

The Plaintiff, Ms. Trombetta engaged me a **few months ago** to assist her with **technology** and **business** matters for both *liability and damages* in the litigation.

On or about **November 27th, 2022**, Ms. Trombetta requested my assistance regarding **two** email messages sent to her from the Defendant's attorney, Adam Bialek.

1) The **first** was sent **November 17, 2022,** was unable to be opened on her computer as it was in a *".eml"* format.

2) The **second** concerned the content of coding she received from the Defendants attorney on **November 23rd, 2022.** *(The Wednesday before Thanks Giving.)*

The **first** email was in a format for use with an email application on a computer or handheld device. I opened the first email with the default mail program on an Apple MacMini running MacOS Monterey (12.4). This effort resulted in an email from eBay regarding an item sold, referencing a 1972 oil painting that Ms. Trombetta did not paint.

The **second** email only contained HTML coding for the body of an eBay receipt email. Ms. Trombetta requested the full raw email (in plain ASCII text) to include the entire *Simple Mail Transfer Protocol* (**SMTP**) message stream.

In a conference call, she explained the **three simple steps** for how the Defendants could export and send this information to her in compliance with this request. These three steps are as follows:



1. **Open** the message.

2. Click the **More Menu** *(shown with 3 dots)* in the top right of this message window.

3. In the drop-down menu, choose **View Raw Message** or **Original Message** option.

I confirm that her explanation and method are correct. Candidly, this is not difficult stuff, her instructions are pretty straightforward, as a person only needs to find the active drop-down menu (associated with an email message), which has the **View Raw Message** or **View Original** email.

A new window will appear showing the **raw email message** she requested, containing **all the SMTP** protocol data and the entire email message (in all its formats) with any attachments.

Plaintiff000792

*EXPERT Affidavit #1*                                                      *PATRICK MICHAEL O'LEARY*

## Simple Mail Transport Protocol (SMTP) Overview

 **Teaching Note:** The SMTP protocol data will include the *Name:Value* variable pairs, including (but not limited to) the sender's email, the date, the receiver's email address, etc. I show a general visual layout below.



An example of the full SMTP raw message is as follows.



Plaintiff000793

# SA305

---

*EXPERT Affidavit #1*                                                    *PATRICK MICHAEL O'LEARY*

Below, I show a partial screenshot of the **second** email sent to Ms. Trombetta from Mr. Bialek on **November 23rd, 2022.**

Mail · Annamarie Trombetta · Outlook

## RE: Email

**Bialek, Adam <Adam.Bialek@wilsonelser.com>**
Wed 11/23/2022 11:33 AM
To: 'Annamarie Trombetta' <annamarietrombettalegal@outlook.com>; 'Annamarie Trombetta' <atrombettaart@gmail.com>; 'ajd@hoganduff.com' <ajd@hoganduff.com>; 'ajd@andersonjduff.com' <ajd@andersonjduff.com>
Cc: Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>
Here is the Source Information from the email that I was able to capture. Being sent as a courtesy.

<html><head>
</head><body><div dir="ltr"><br><div class="gmail_quote">---------- Forwarded message ----------<br>From: <b class="gmail_sendername">eBay</b> <span dir="ltr">&lt;<a href="mailto:ebay@ebay.com">ebay@ebay.com</a>&gt;</span><br>Date: Sat, Dec 1, 2012 at 9:54 PM<br>Subject: Your eBay item sold! 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (330833102936)<br>To: <a href="mailto:ebay@novocin.com">ebay@novocin.com</a><br><br><br><div><div id="m_3729392004584666707Header"><div><table border="0" cellpadding="0" cellspacing="0" width="100%"><tbody><tr><td width="100%" style="word-wrap:break-word"><table cellpadding="2" cellspacing="3" border="0" width="100%"><tbody><tr><td width="1%" nowrap=""><img src="http://q.ebaystatic.com/aw/pics/logos/ebay_95x39.gif" height="39" width="95" alt="eBay"></td><td align="left" valign="bottom"><span style="font-weight:bold;font-size:xx-small;font-family:verdana,sans-serif;color:#666"><b>eBay sent this message to Norb &amp; Marie Novocin (estateauctionsinc).</b><br></span>



<span>Don't want to receive this email? <a href="http://my.ebay.com/ws/eBayISAPI.dll?EmailUnsubscribe&amp;emailType=12011" target="_blank">Unsubscribe from this email</a>.</span><br></span></li></ul></div></div></div></div><div id="m_3729392004584666707MarketPlaceSafetyTip"></div><div id="m_3729392004584666707Footer"><div><hr style="HEIGHT:1px"><table border="0" cellpadding="0" cellspacing="0" width="100%"><tbody><tr><td width="100%"><font style="font-size:10pt;font-family:arial,sans-serif;color:#000"><b>Email reference id: [#<wbr>45d0df16f2ea40759d3656f834970b<wbr>06#]</b><br>Please don't remove this number. eBay customer support may ask you for this number, if you should need assistance.</font></td></tr></tbody></table><br></div><hr style="HEIGHT:1px"><table border="0" cellpadding="0" cellspacing="0" width="100%"><tbody><tr><td width="100%"><font style="font-size:xx-small;font-family:verdana;color:#666"><a href="http://pages.ebay.com/education/spooftutorial/index.html" target="_blank">Learn More</a> to protect yourself from spoof (fake) emails.<br><br>eBay sent this email to you at <a href="mailto:ebay@novocin.com" target="_blank">ebay@novocin.com</a> about your account registered on <a href="http://www.ebay.com" target="_blank">www.ebay.com</a>.<br><br>eBay sends these emails based on the preferences you set for your account. To unsubscribe from this email, change your <a href="http://my.ebay.com/ws/eBayISAPI.dll?MyEbayBeta&amp;CurrentPage=MyeBayNextNotificationPreferences" target="_blank">communication preferences</a>. Please note that it may take up to 10 days to process your request. Visit our <a href="http://pages.ebay.com/help/policies/privacy-policy.html" target="_blank">Privacy Policy</a> and <a href="http://pages.ebay.com/help/policies/user-agreement.html" target="_blank">User Agreement</a> if you have any questions.<br><br>Copyright © 2012 eBay Inc. All Rights Reserved. Designated trademarks and brands are the property of their respective owners. eBay and the eBay logo are trademarks of eBay Inc. eBay Inc. is located at 2145 Hamilton Avenue, San Jose, CA 95125. </font></td></tr></tbody></table><img src="http://rover.ebay.com/roveropen/0/e12011/7?euid=45d0df16f2ea40759d3656f834970b06" height="1" width="1"></div></div></div><br></div></body></html>

Page   3 / 3   —   🔍   +

Plaintiff000794

**SA306**

*EXPERT Affidavit #1*                                                    *PATRICK MICHAEL O'LEARY*

This response from the Defendants is merely the HTML coding of the body of the eBay email, which is **NOT** compliant with the discovery request made by Ms. Trombetta.  As I explained above, Ms. Trombetta gave the Defendants step-by-step instructions, practically holding their hand on how to respond correctly.  *(Unfortunately, from the outside looking in, this behavior of the Defendants seems to occur frequently.)*

Nonetheless, I took this HTML code in the Defendant's second email response from **November 23rd, 2022,** and put it into a file on my *ExpertWitness.com* server.  The output of that file is as follows.



You can verify these by clicking on or directing your browser to the following web address URLs:

| Item | Date | Verification Link |
| --- | --- | --- |
| HTML from the *eml* file | November 17th, 2022 | http://www.expertwitness.com/at4.html |
| HTML from *sent* email | November 23rd, 2022 | http://www.expertwitness.com/at3.html |

Plaintiff000795

*EXPERT Affidavit #1*                                                                                 *PATRICK MICHAEL O'LEARY*

I am returning to the **first** email (eml file) the Defendants sent to Ms. Trombetta **on November 17, 2022**. The following screenshot shows this email opened by the email application program.

**HTML from EML file**

To be clear, the HTML source information sent to Ms. Trombetta on **November 17, 2022** (in email) produced the **same visual** document that she received on **November 23, 2022** *(in eml format* that she could not view before my assistance).



**Here is the first problem!**

Ms. Trombetta requested the Original or Raw Message Data for the 2012 eBay sale.

Unfortunately, from my analysis and inspection, I can state that she was **not** sent the raw email message with all the SMTP data as requested.

Plaintiff000796

# SA308

*EXPERT Affidavit #1*                                                    *PATRICK MICHAEL O'LEARY*

Defendant, Estate Auctions Inc. in discovery, turned over **two versions** of the receipt for the eBay sale in question.

**Bates 58-59**

EAI000058

Wednesday, April 27, 2022 at 21:30:09 Eastern Daylight Time

**Subject:** Fwd: Your eBay item sold! 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (330833102936)

**Date:** Tuesday, January 10, 2017 at 5:28:43 PM Eastern Standard Time

**From:** eBay EAI

**To:** Norb Novocin, marie novocin

---------- Forwarded message ----------
From: eBay <ebay@ebay.com>
Date: Sat, Dec 1, 2012 at 9:54 PM
Subject: Your eBay item sold! 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (330833102936)
To: ebay@novocin.com

eBay

eBay sent this message to Norb & Marie Novocin (estateauctionsinc).
Your registered name is included to show this message originated from eBay. Learn more

**Congratulations, your item sold!**

Dear estateauctionsinc,

You did it! Your item sold. Please ship this item to the buyer after your buyer pays. As soon as your buyer pays, print

Complete one of the following:

- Print a shipping label. Avoid a trip to the post office, print and pay for your label at home. Printing shipping la you reduced pricing on some shipping services, and when you print shipping labels on eBay, your tracking i automatically.
- Provide shipping and tracking information. When you upload tracking information to eBay, we'll send it to yo the item is on its way. This will save you time, and may result in fewer questions from buyers and higher det
- Mark your item as shipped in My eBay. Do this, and we'll let your buyer know the item is on its way. This wil result in fewer questions from buyers and higher detailed seller ratings.

You should always leave feedback for your buyer to encourage them to buy from you again.

1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz

1972 Original Oil Painting Man V
Annamarie Trombetta yqz
Sale price:          $181.!
Quantity sold:       1
Sale date:           Dec-0
Buyer:               nina c
                     9nack
                     [conta
Buyer's shipping address nina c
                     14215
                     reno, I

Sell another item | Send invoice

**Select your email preferences**

- Want to reduce your inbox email volume? Receive this email as a daily digest. For other email digest options, go to Notification Preferences in My eBay.
- Don't want to receive this email? Unsubscribe from this email.

Page 1 of 2

EAI000059

Email reference id: [#45d0df16f2ea40759d3656f834970b66#]
Please don't remove this number. eBay customer support may ask you for this number, if you should need assistance.

Learn More to protect yourself from spoof (fake) emails

eBay sent this email to you at ebay@novocin.com about your account registered on www.ebay.com

eBay sends these emails based on the preferences you set for your account. To unsubscribe from this email, change your communication preferences. Please note that it may take up to 10 days to process your request. Visit our Privacy Policy and User Agreement if you have any questions.

Copyright © 2012 eBay Inc. All Rights Reserved. Designated trademarks and brands are the property of their respective owners. eBay and the eBay logo are trademarks of eBay Inc. eBay Inc. is located at 2145 Hamilton Avenue, San Jose, CA 95125

Plaintiff000797

Monday, December 5, 2022                     Page 11 of 22                     CASE NO. CV16-0239

EXPERT Affidavit #1                                                                    PATRICK MICHAEL O'LEARY

Defendant, Estate Auctions Inc. turned over a discovery response of the receipt for the eBay sale in question.



Plaintiff000798

eBay I
Fwd: Y...   ...ginal Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (330833102936)
To: No...

January 10, 2017 at 5:28 PM

---------- Forwar...
From: eBay <e...
Date: Sat, Dec...
Subject: Your e...   ...il Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (330833102936)
To: ebay@novocin.com

*Plaintiff's*
*Evidence 000749.*

# ebay

eBay sent this message to Norb & Marie Novocin (estateauctionsinc).
Your registered name is included to show this message originated from eBay. Learn more.

## Congratulations, your item sold!

Dear estateauctionsinc,

You did it! Your item sold. Please ship this item to the buyer after your buyer pays. As soon as your buyer pays, print your eBay shipping label.

**Provide shipping information**

**Go to My eBay**

Complete one of the following:

- Print a shipping label Avoid a trip to the post office, print and pay for your label at home. Printing shipping labels on eBay also offers you reduced pricing on some shipping services, and when you print shipping labels on eBay, your tracking information is uploaded automatically.
- Provide shipping and tracking information. When you upload tracking information to eBay, we'll send it to your buyer and let them know the item is on its way. This will save you time, and may result in fewer questions from buyers and higher detailed seller ratings.
- Mark your item as shipped in My eBay. Do this, and we'll let your buyer know the item is on its way. This will save you time, and may result in fewer questions from buyers and higher detailed seller ratings.

You should always leave feedback for your buyer to encourage them to buy from you again.

1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz

| | |
|---|---|
| Sale price: | $181.50 |
| Quantity sold: | 1 |
| Sale date: | Dec-01-12 18:54:01 PST |
| Buyer: | nina correia |
| | 9naclock (ninascorreia@aol.com) [contact buyer] |
| Buyer's shipping address: | nina correia |
| | 14215 prairie flower ct |
| | reno, NV 89511-6710 United States |

Sell another Item | Send invoice to buyer

## Select your email preferences

- Want to reduce your inbox email volume? Receive this email as a daily digest. For other email digest options, go to Notification Preferences in My eBay.
- Don't want to receive this email? Unsubscribe from this email.

**Email reference id: [#45d0df16f2ea40759d3656f834970b06#]**
Please don't remove this number. eBay customer support may ask you for this number, if you should need assistance.

Learn More to protect yourself from spoof (fake) emails.

eBay sent this email to you at ebay@novocin.com about your account registered on www.ebay.com.

eBay sends these emails based on the preferences you set for your account. To unsubscribe from this email, change your communication preferences. Please note that it may take up to 10 days to process your request. Visit our Privacy Policy and User Agreement if you have any questions.

Copyright © 2012 eBay Inc. All Rights Reserved. Designated trademarks and brands are the property of their respective owners. eBay and the eBay logo are trademarks of eBay Inc. eBay Inc. is located at 2145 Hamilton Avenue, San Jose, CA 95125.

Plaintiff000799



*EXPERT Affidavit #1*                                                                                    *PATRICK MICHAEL O'LEARY*

## Timeline of the Ebay Receipt History

Looking at the eBay receipts from a birds eye view in a timeline, it is pretty obvious something underhanded is going on. You can scroll up to see bigger pictures of each image.

Plaintiff000800

*EXPERT Affidavit #1*                                                                    *PATRICK MICHAEL O'LEARY*

## Regarding Email Dated Feb 20, 2016 to Will/Support @ worthpoint.com

Here is the ORDER of the Court:

> ORDER: Pursuant to the telephonic discovery conference held today, November 23, 2022 (the "Conference"), the Court orders as follows: 1. Defendants Norb Novocin, Marie Novocin, and Estate Auctions Inc. (together, the "EAI Defendants") shall produce to pro se Plaintiff Annamarie Trombetta ("Ms. Trombetta"), the following: a. the eBay receipt of the 2012 sale of the 1972 original oil painting, in the native electronic format; and b. documentation of the medium by which the transaction occurred (i.e., Paypal, credit card, check, etc.), to the extent such information exists. 2. Defendant Worthpoint Corporation ("Worthpoint," together with the EAI Defendants, the "Defendants") shall produce to Ms. Trombetta the last known contact information for Greg Watkins and Anita Brooks. 3. Ms. Trombetta's request for EAI's 2012 tax returns and information relating to its computer server is DENIED. 4. As a result of Ms. Trombetta's representations at the Conference concerning the damages she is seeking in this action, Worthpoint's requests for Ms. Trombetta's tax and medical records, and sales records from 2018 through 2021, are DENIED WITHOUT PREJUDICE. 5. Ms. Trombetta shall produce to Defendants, the following: a. the February 20, 2016 email and attachments in native electronic format; and b. all communications Ms. Trombetta has had with any non-party witnesses relevant to the claims or defenses in this action. 6. The parties shall produce the documents set forth in this Order by no later than December 2, 2022. 7. Defendants shall order a transcript of the Conference and file it on the docket. The parties shall submit a single request to: etranscripts@nysd.uscourts.gov by Monday, November 28, 2022. The Clerk of Court is respectfully directed to mail a copy of this Order to Ms. Trombetta at the address below. SO ORDERED. (Signed by Magistrate Judge Sarah L Cave on 11/23/2022)

The following will show Ms. Trombetta's compliance with the above Court ORDER.

Plaintiff000801

**SA313**

*EXPERT Affidavit #1*                                                    *PATRICK MICHAEL O'LEARY*

The following is a screenshot of my email sent to the Defendant's lawyers on **Friday, Dec, 2nd, 2022** regarding this 2016 email.



This particular screenshot is taken from the Yahoo email inbox of the Plaintiff.

Plaintiff000802

*EXPERT Affidavit #1*                                              *PATRICK MICHAEL O'LEARY*

The attached file in the above email is Zip archive file *(a standard archive format)* that creates a folder named *"will worth point 2016 02 20"*.  The following screenshots show it contents.



**SMTP native email data (in plain text).**

**Screenshots showing the email in Plaintiff's Yahoo Inbox**

**Attachments downloaded and were confirmed as readable.**

Plaintiff000803

EXPERT Affidavit #1                                                    PATRICK MICHAEL O'LEARY

# Plaintiff's Expert

# Affidavit #1

# Conclusion



Plaintiff000804

*EXPERT Affidavit #1*                                                      *PATRICK MICHAEL O'LEARY*

---

### General Summary:

---

It appears the Defendant's lawyers just did a quick swipe of the mouse and then a cut-n-paste of the email body rather than properly extracting the full SMTP email message (in its entirety). This action resulted in something that is potentially not authentic. In light of the Defendants turning over three separate copies of the one receipt, in order to determine the authenticity, it is industry practice to forensically analyze the three separate SMTP raw email messages.

Per my advice, Ms. Trombetta based her request for the original SMTP raw email message on the fact that Defendants produced three different eBay receipts (which I have viewed and analyzed).

Two of the eBay receipts have numbers, and the last does not. I caution the Court to be aware of the HTML and eml email timeline. The HTML coding establishes and reveals that the raw or original message of the last unnumbered document (eml) should not be contained within the alleged 2012 eBay receipt due to the time frame of its release to Ms. Trombetta.

**It seems the Defendants are not being truthful, thus any reasonable person would likely conclude that they are concealing something.**

From a **qualitative** and logical high-level view, it is clear that Ms. Trombetta did **NOT** create this painting as she would have only been **9** years old in **1972**.

Hence, compounded with the **quantitative** alterations shown above, something nefarious has undoubtably taken place in this dispute that support Ms. Trombetta's liability and damages claims.

Regarding damages, while eBay in 2022, may be *far* more acceptable in the business mainstream, we need to consider that this unauthorized fraudulent transaction happened ten years ago in 2012 when such acceptance by the Art industry did not exist. Hence, further supporting Ms. Trombetta's claims for liability and damages against the Defendants.

Such undermining on the part of the Defendants would certainly impede Ms. Trombetta to market herself as a top-tier artist (and her work) in New York City and in other markets around the world.

Lastly, if the Defendants complied, Ms. Trombetta would not have incurred the expense for my services for this analysis.

Thank you.
Patrick Michael O'Leary, MBA, EE, CISSP

Plaintiff000805

EXPERT Affidavit #1                                    PATRICK MICHAEL O'LEARY

# Plaintiff's Expert

# Affidavit #1

# Signature



Plaintiff000806

---

> **Expert's Signature and Notarization:**

Under penalty of perjury, I hereby declare and affirm that the statements mentioned above are true and correct to the best of my knowledge.

*Patrick Michael O'Leary,*
MBA, EE, CISSP

**Date:** Monday, December 5th, 2022

## NOTARY ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which the certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of:** New York
**County of:** Suffolk

On **December** 05th, **2022** before me, BHADRESH ACHARYA personally appeared **Patrick Michael O'Leary** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity, and that by their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of **New York** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

BHADRESH ACHARYA
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01AC5002985
Qualified in Suffolk County
Commission Expires October 13, 2026

Plaintiff000807

**SA319**

*EXPERT Affidavit #1*                                                    *PATRICK MICHAEL O'LEARY*

# Exhibit
# A

# Plaintiff's Experts
# CV



Plaintiff000808

**See CV document (separately attached)**

Plaintiff000809

**SA321**

*Curriculum Vitae / Resume*  **Patrick Michael O'Leary**  *August 10, 2022*

## Overview:

For more than thirty (30) years, I have been an entrepreneur and have worked and been the C-level founder of several different startup companies.  This experience yielded me a diverse Business, Technical & Internet background and expertise with real-world post-college industry experience.

I was a founder & CEO of an early dot-com that sold for **44** million dollars. Many industry experts say it was the genesis of today's social media and the pinnacle of online dating (a sector now of $2B-$3B).

I have a unique talent for prototyping solutions to critical business problems quickly, thus, enabling a business team to make informed decisions more rapidly, staying ahead of the competition. In addition, my experience allows me to come up with unique and effective engineering solutions to solve real business problems.

I have patience, good communication skills, and a natural ability to teach and train at any skill level.

I have also testified in Federal Court as an expert witness and engaged by Yahoo, Twitter, and Google.

I have been a liaison between the management, business, legal and technical departments.

In my career, I have worked on just about every business and technical aspect of the Internet thus far.

## Skills:

**C-Level Management:**
CEO, COO, CTO

**Business:**
Planning, Strategy, Analysis, Operations Research, Sales, Marketing, Branding, Finances, Budgeting, Human Resources, Real Estate, Acquisitions, Mergers, Due Diligence, Risk Management, Software Piracy, Sale of Company, Venture Capital, Investment Bankers, Social Media, Information Technology, IP, Patents, Prior Art, Trademarks, Customer Service Rep Management, Day Trading (FOREX/Futures)

**Technology:**
Internet, Security, Programming, Databases, Websites, SEO, CMS, Engineering, Software, Hardware, Networking, Routing,  Life-cycle, Risk Management, Information Technology, Automation, Process Control, Facility Maintenance/ Construction, Social Networking, Training

**Expert Witness Testimony & Court Admissions:**
 • **Federal**: Texas, Pennsylvania, Massachusetts, New York, California
 • **State/Local:** Texas, Florida, Arizona

## Education:                                                       School:

| | | |
|---|---|---|
| JD | Currently working on my Law Degree | Novus Law School |
| *MBA* | Executive MBA Program:  *3.95 GPA* | Hofstra University |
| BSEE | Electrical Engineering / Computer Science | NYU / Brooklyn Polytechnic |
| AS | Engineering Science | SCCC |
| AAS | Liberal Arts | SCCC |
| — | Audited various Divinity graduate courses | Kings University |

**SA322**

*Curriculum Vitae / Resume*          **Patrick Michael O'Leary**                    *August 10, 2022*

## Skills (cont):

**Software:**
**OS**: UNIX, Linux, CentOS, OSX, Windows, MS-DOS, iOS, Android
**Data**: MySQL, Postgres, Oracle, Informix
**WEB**: CloudFlare, Varnish, Apache, SOLR, TIKI, Drupal 7/9, CMS
**Video**: Camtasia, Screenflow, Apple Motion, Final Cut

**Programming:** *(since 1982)*
PHP, R/Rstudio, Shiny, C#, C/C++, HTML, CSS, SQL, JavaScript
Python, Java, Shell Scripting, BASIC, Pascal, FORTRAN, X/Motif

**Hardware:**
Apple, Intel, PC, HP, Alienware, Cisco, Sun, Lucent, Livingston, Ascend

**Websites:**
- ExpertWitness.com.
- Social.net
- MatchMaker.com

**Intellectual Property:**
- Two Patent Applications Pending
- Others under conceptual development

**Expert Witness Testimony & Court Admissions:**
- **Federal**: Texas, Pennsylvania, Massachusetts, New York, California
- **State/Local:** Texas, Florida, Arizona

## Certifications:

| | | Organization: |
|---|---|---|
| CISSP | Certified Information Systems Security Professional #408201 | ISC2 |
| CEH | CEH Certified Ethical Hacker | EC-Counsel |
| CHFI | Certified Hacking Forensic Investigator | EC-Counsel |
| ECSA | Counsel Certified Security Analyst | EC-Counsel |
| LPT | Line Penetration Tester | EC-Counsel |
| Network+ | Network Plus | CompTIA |
| Security+ | Security Plus | CompTIA |
| PMP | Project Management Professional | Google |

## Short Narrative:

My career has given me experience in all business / technical / hardware/software aspects of the companies I have worked for or own. In addition, I have made it a focus of my career to be a liaison between various organizations' business, legal, and technology groups.

My software programming experience spans the last 30+ years. In high school, I started learning the absolute basics of various small computers (TI-99-4a, Commodore-64).   Then, in college, I worked on a whole host of mainframes, minicomputers, and PCs. These systems included the early Intel PCs, IBM 370, DEC PDP-11s, and many other platforms by Apollo, Gould, and Hewlett Packard. The programming languages used on these platforms were Basic, Pascal, C/C++, Assembler, FORTRAN, and various scripting languages. Every system had a unique operating system; I spent most of my time on UNIX, Linux, and OS-X(Apple) class machines.

While much of my recent experience has been that of a high-level abstracted expert witness on Internet business litigation matters, I still make it a point to stay current with the personal hands-on details of the technology. Such requires my willingness to learn new things about business, technology, security, and people every day.

*Curriculum Vitae / Resume*                    ***Patrick Michael O'Leary***                    *August 10, 2022*

My career started in 1987 with a degree in Electrical Engineering from the NYU / Polytechnic Institute of Brooklyn, New York. The industries I have worked in include: telecommunications, transportation, and the Internet. I have worked domestically and internationally for NEC, US West, American Airlines, Ryder Truck, Santa Fe Rail Roads, and Ansett Airlines. My general Internet application experience includes Social Networking/Media, Education, Legal, Dating, and many other business e-commerce applications.

I have been successful in the Internet and online businesses since the late 80s. An early business entry on the Internet started as a social hobby that became a defining milestone in my career. This hobby propelled me to become the CEO and a founder of an Internet site and Social Network known as MatchMaker.com. The website was profitable and self-funded (no venture capital) until February 1999. Over the course of MatchMaker.com's history, I was the founding President and CEO, the first full-time employee, and the largest single common shareholder. Under my leadership, media metrics rated us as the 2nd stickiest site on the Internet and grew at 8% or greater per month, making it the largest online dating site. In 1995, I decided to make MatchMaker.com my full-time job; I was the only employee. By 1999, I had created a fully functional corporation with 28 full-time employees and 11 remote, part-time employees, generating over **$7 million** in annual revenue.

In the early days of the mainstream Internet ('90-'97), MatchMaker.com had over 4 million users with up to 230 million page views per month. This explosive growth generated millions of dollars per annum. Unlike today's Internet companies, we accomplished our substantial growth with revenues solely created by the company and not infused or borrowed capital.

This rapidly growing network competed with today's well-known companies such as; Match.com, AOL, and Yahoo Personals. Even with this robust group of market competitors, it became the number one singles and dating social network site on the Internet. Unfortunately, while the company was growing, the "Internet Bubble" crash of 2000 took place. Despite that crash, the company garnered profound respect and sold to Lycos for 45 million US dollars in cash.

By the time it sold to Lycos in July 2000, MatchMaker.com had employed 124 people in 8 separate departments. I had developed experience and expertise in various fields to grow this company over this concise timeline.

My Matchmaker BBS and Internet business efforts were the first entities that brought mainstream awareness to the Internet electronic age and industry. The current owners of MatchMaker.com have credited my efforts as the pinnacle and genesis of today's Internet online dating and social media/networking.

This experience and creditability have allowed me to be an Internet Business and Technology Expert Witness in cases involving Social Networking, Real Estate, Oil and Gas, Aerospace, Securities, Family Assets / Business Disputes, Security Issues, Patents, Trademarks, and Intellectual Property. I have engaged as both a plaintiff and defense expert for Cisco, MCI, CompUSA, Fujitsu, Yahoo, eHarmony, Match.com, Twitter, and Google. In addition, I have admissions as an expert to many State/Federal courts for both civil and criminal litigation.

The MatchMaker.com network contained highly personal information about the customers, such as names, addresses, phone numbers, credit cards, etc. Given the nature of some of the applications and personal information contained therein, the network was highly targeted by "Phone-Freaks," today is known as computer and Internet hackers. The physical security of the facility was also very much of great concern. In the early days, there was no place you could turn to for help with these types of business and technology issues; you were effectively on your own! Therefore, there was a need for standardized electronic and Internet Security protocols and policies. Hence, due to such early efforts by technology and business entrepreneurs like myself, the earlier versions of the Internet Security Common Body of Knowledge (CBK) by organizations like ISC2, Comp-TIA, and EC-Counsel were birthed.

My career and business experience exposed me to such concepts as customer membership conversion, productizing, strategic partnerships, finances/budgeting, human resources, venture capital/investment banking, alternative revenue sources, and all the technology/networking of such.

I have patience, excellent communication skills, and a natural ability to teach and train at any skill level. I developed such through various roles I have held.

(A more detailed narrative of such is available upon request)

**SA324**

*Curriculum Vitae / Resume*          ***Patrick Michael O'Leary***                    *August 10, 2022*

## Work Experience:

| | |
|---|---|
| **21** | *years at "eWitness LLC" from 2001* |

In business on the Internet for over 16 years.

Expert Witness business is a $7+ billion annual space.

Internet Directory: ExpertWitness.com

Many personal Internet Expert Witness engagements.

- Admitted to 2nd, 3rd, 5th and 9th circuits as subject-matter expert
- Engagements with: Google, Twitter, Yahoo, Match.com, eHarmony and Cisco

Recently redesigned/coded the site using Drupal CMS

Researched Trademark potential on domains
    Confusion Issues
    Distinctiveness / Descriptive Marks

| | |
|---|---|
| **10** | *years at "MatchMaker.com" from 1990* |

Built and ran the world largest personals dating social network. This is still true to this day, since no company has ever acquired as much market share.

In the 90s, served over 200 million page views to the Internet every month.

Rated the second stickiest site on the Internet for many years by Media-Metrics

Managed and served millions of users on over 100 separate community web sites.

Customer service rep management

User/Client Privacy and associated Data Security issues

Current owners have called MatchMaker the pinnacle of online-dating.

Industry experts credit MatchMaker as the genesis of today's social media.

Researched Trademark potential on EDM
    Confusion Issues
    Distinctiveness / Descriptive Marks

| | |
|---|---|
| **25** | *years at "Always 24x7.com, LLC " from 1996.* |

As businesses grew, I needed more Internet bandwidth. In the early years, the cost of such telecom circuits was greater than my revenues. Hence, I launched an Internet Hosting Service Provider to be used in such businesses.

Designed, provisioned, and built-out complete facility for Internet hosting and service. Tasks included all hardware and software procurement, install, configuration, and maintenance.

Provided dial-up, dedicated and co-location Internet service and hosting for D/FW clients.

Website life-cycle: designed, development and maintenance.

Was the hosting company of MatchMaker.com

**SA325**

*Curriculum Vitae / Resume*   ***Patrick Michael O'Leary***   *August 10, 2022*

## Work Experience (cont):

**1** *year at "US Sprint" from 1995.*

> Worked on the US Sprint Voice Foncard system (with the TV commercials with Candice Bergan saying "you can hear a pin drop.").  I was tasked to develop a software middle-ware system to manage all platform processes.

**10** *years at "Airport Management Systems" from 1991*

> Designed and coded software for airport ground tracking system for use in FAA control towers used to manage airplanes on the ground for all tower positions.
>
> > Clearance Delivery (Center to Airport)
> > Ground Controller. (Terminal to Runway)
> > Local Controller (Take off to TRACON)
>
> Designed to 1) pass traffic to the TRACON in-air controllers 2) make airport ground/runways safer 3) reduce runway incursions and 4) secure the Flight Data
>
> Co-Authored white papers for the FAA on how the system was to work, such used for requirements documents for the FAA.

**5** *years at "American Airlines" from 1990*

> Worked for an Operations Research division of the AMR Corporation known as American Airlines Decision Technologies (AADT).  Developed software to implement the mathematical operations research algorithms on UNIX and Oracle based systems.  Such applications were Yield management, Capacity planning, Cargo, Routing, Resource and Risk Management.

**1** *year at "Lee Data" from 1989*

> At the time, the databases documenting the facilities for the telephone companies was handled by many people throughout the system.  Such databases frequently became out-of-sync and telephone facilities (ports, wire-pairs, etc) were lost.   Such losses became both a business and a security vulnerability.  The software  found such, thus recovering and securing these facilities.
>
> Downloaded telephone industry databases on to UNIX platform to flat files.  Converted such data and loaded into a Sybase SQL database.
>
> Built software tools to determine the synchronization problems with records in the various databases.
>
> Wrote reports for our clients, the 7 RBOC (Regional Bell Operating Companies).

**2** *years at "NEC America" from 1987*

> First post-college job.  Worked on Maintenance Administration Terminal Software of the private sector business Telephone System Switch called the NEAX 2400.  I wrote the first set of C language programs to interface with the switch and program / provision its hardware.  This required training in Japan and working abroad with other engineers / programmers on the design of such software.

**SA326**

*Curriculum Vitae / Resume*                    *Patrick Michael O'Leary*                                    *August 10, 2022*

## General Proficiency:

### Business

| Skill | Rating |
|---|---|
| Strategy | ●●●●○ |
| Planning | ●●●●● |
| Risk Management | ●●●●○ |
| Human Resources | ●●●○○ |
| Record Keeping | ●●●○○ |
| Organization | ●●●○○ |
| Time Management | ●●●○○ |
| Teamwork | ●●●●○ |
| Communication | ●●●●○ |
| Creativity | ●●●●● |
| SEO | ●●●○○ |
| Analysis | ●●●●● |
| People Skills | ●●●●○ |
| Sales | ●●●○○ |
| Marketing | ●●●●○ |
| Branding | ●●●●○ |
| Finances | ●●●○○ |
| Budgeting | ●●●○○ |
| Problem Solving | ●●●●● |
| Op. Research | ●●●○○ |
| Project Management | ●●●●○ |
| Patents | ●●●○○ |
| C-level Management | ●●●●○ |

### Technical

| Skill | Rating |
|---|---|
| Mac OS | ●●●●● |
| Database | ●●●●● |
| Networking | ●●●●○ |
| Web Skills | ●●●●● |
| Security | ●●●○○ |
| Programming | ●●●●● |
| Mobility | ●●●●○ |
| Software | ●●●●● |
| Hardware | ●●●●○ |
| HTML | ●●●●○ |
| SQL | ●●●●○ |
| Routing | ●●●○○ |
| CMS | ●●●●● |
| Linux | ●●●●● |
| Automation | ●●●●● |
| Process Control | ●●●●○ |
| Intel Prop | ●●●●○ |
| Graphics | ●●●○○ |
| Design | ●●●●○ |
| Engineering | ●●●●○ |
| Facilities | ●●●●○ |
| Life-Cycle | ●●●○○ |
| Integration | ●●●●○ |

## Contact:

| | |
|---|---|
| Phone | +1 (570) 231 - 3141 |
| eMail | Patrick@ExpertWitness.com |
| Web | PatrickOLeary.com |

**SA327**

In The United States District Court
For Southern District of New York

Annamarie Trombetta,

      Plaintiff,
        vs.

Civil Action No. 18-cv-0993-RA-HBP

Norb Novocin, Marie Novocin,
   Estate Auctions Inc.
       and
   WorthPoint Corporation

    Defendants

## PLAINTIFF, ANNAMARIE TROMBETTA'S EXPERT DISCLOSURE PURSUANT TO FRCP RULE 26(a)(2) OF EXPERT WITNESS JOSEPH V. SCELSA.

PLEASE TAKE NOTICE, that pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, Plaintiff ANNAMARIE TROMBETTA, hereby states the following as and for its expert witness disclosure :

1. Plaintiff, Annamarie Trombetta intends to call Dr. Joseph V. Scelsa, Founder and President of the Italian American Museum, Professor Emeritus, Queens College, The City University of New York, Psychotherapist, Professional Counselor, Mental Health and Human Relations, as an expert witness at trial in connection with this matter.

2. Dr. Joseph V. Scelsa's testimony will be based upon, but not limited to, the introduction to Annamarie Trombetta and the description of the Italian American Museum's presentation and events by Plaintiff's solo exhibition at the Italian American Museum, February to March, in 2015.

3. Expert witnesses, Dr. Joseph V. Scelsa's testimony will discuss the importance of Ms. Trombetta's contributions to the Italian American culture, as a female contemporary artist, who paints out of doors, in a tradition, significant to the Risorgimento. This will includes Plaintiff's involvement

**SA328**

with the National Organization of Italian American Women, which also hosted exhibitions by Italian American Female Artists at the Godwin-Ternbach Museum and other locations.

4. Dr. Joseph V. Scelsa's testimony will be based upon, but not limited to, knowledge regarding the success and write ups resulting from Ms Trombetta's talent, colleagues and circle of influence that resulted in the publicity for her solo exhibition in 2015. In 2017, the Museum hosted an exhibition entitled, " Artiste Italiane", a group exhibition of Italian American Women. Due to Ms. Trombetta's unique triangular painting, an International Magazine and online publication in Italy, entitled "The Florentine" reviewed the group exhibition "Artiste Italiane". The substance of the Plaintiff's 2015 and 2017 online article in "The Florentine" magazine is more fully set forth in Dr. Scelsa's report, which is annexed hereto as Exhibit "C"..

5. Dr. Joseph V. Scelsa's testimony will be based upon, but not limited to, his examination of the production of Plaintiff's 2016 evidence in which the Italian American Museum is listed and linked in tandem with the internet ad produced by the two Defendants, Estate Auctions Inc. and WorthPoint Corporation, due to a false misattribution painting on WorthPoint's website. Dr. Scelsa has viewed the printed documentations and the web page containing the listing alleged to be at issue in this matter, for the URL: https://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-48924172, that lists Italian American Museum under the Google Search with the listing "1972 Original Oil Painting Man With Red Umbrella". Dr. Scelsa will also opine as to why the title of the 1972 painting includes the Italian American Museum. Dr. Scelsa will attest that the WorthPoint link was in Google search for "artist Annamarie Trombetta" and Annamarie Trombetta, three separate locations.

6. Dr. Joseph V. Scelsa's testimony will be, based upon, but not limited to, his examination of the WorthPoint's 2017 evidence which was disclosed by WorthPoint's attorneys to the Plaintiff in April 2022 . Dr. Scelsa can attest upon reviewing Plaintiff's Jan. 4, 2017 to Will Seippel. Plaintiff sent an email to WorthPoint's CEO, Will Seippel, on Jan. 4, 2017 pertaining to URL https://www.worthpoint.com/worthopedia/1972-original-oil- painting-man-red-48924172. . Once again, the misattributed oil painting was linked with Annamarie Trombetta's other authentic professional achievements, in particular, the Italian American Museum. Dr. Scelsa reviewal of evidence produced by WorthPoint, dated Jan. 4, 2017 between WorthPoint's CEO, Will Seippel and WorthPoint's tech Jason Packer and can attest the false claim by WorthPoint for their permanent removal of the 1972 URL from WorthPoint's website after February 4, 2016. Within Ms. Trombetta's 2017 email to WorthPoint is the inclusion of the Italian American Museum internet post linked with the false 1972 oil painting URL on WorthPoint's website.

7. Dr. Scelsa will attest, based upon, but not limited to, his examination of the WorthPoint's 2017 evidence which was disclosed by WorthPoint's attorneys to the Plaintiff in April 2022, that there was no written correspondence from WorthPoint CEO nor Mr. Packer in response to Ms. Trombetta's January 4, 2017 email. Discovery emails between WorthPoint's CEO, Will Seippel and WorthPoint's tech Jason Packer on Jan. 4, 2017 affirms that the 1972 URL was reposed. Additionally, emails from WorthPoint were directly sent to Plaintiff/artitist Annamarie Trombetta with a noted date of April, 24, 2017, despite Ms. Trombetta unsubscribing from WorthPoint's email list. WorthPoint's email was sent four days after The Florentine reviewed and posted the group exhibition "Artiste Italiane" on the internet on April 20, 2017. The willful intent by WorthPoint to send a dated email to Ms. Trombetta, after she repeatedly unsubscribed from WorthPoint.com,

support's Ms. Trombetta need to take legal action . Plaintiff seeks a permanent inductive relief to prohibit both Defendants from incorrectly usingAnnamarie Trombetta's name in the future.

8. Additionally, Dr. Joseph V. Scelsa will give testimony regarding an in person meeting with Plaintiff, Annamarie Trombetta, in late September of 2022. Dr. Scelsa will attest to viewing the authentic childhood signatures in print and in script of Annamarie Trombetta on or around the year 1972. Dr. Scelsa will opine that the photo featured signature " A. Trombetta " with a copyright symbol and statement " Copyrighted work licensed by WorthPoint " in the false advertisement for the 1972 Oil Painting "Man With Red Umbrella" is very confusing to discern what exactly is copyrighted. The photo featured " A. Trombetta" in oil paint is very different from the misspelled signature in red pencil. Dr. Scelsa will also opine the violations of one's identity and the Plaintiff's anxiety.   The inability to remove this false information of a large, damaged, low bid oil painting falsely attributed on internet for such a long period of time, coupled with the ongoing legal battle has altered Ms. Trombetta's entire life. Dr. Scelsa will attest to the physical and visible discombobulated state that Annamarie exhibited once the the content of the case began at the Sept. 2022 in person meeting .

9. Additionally, Dr. Joseph V. Scelsa will also give testimony regarding an in person meeting with Plaintiff, Annamarie Trombetta , in the fall of 20 22  when Plaintiff revealed visual evidence and Dr. Scelsa 's suggested to obtain legal counsel in response  to hearing that there were four attorneys. At this time Ms. Trombetta  informed Dr. Scelsa that WorthPoint was suing her for Intentional Infliction of Emotional Distress in the state of Georgia, where the Plaintiff has never visited. Upon learning that this summons was served on the same day that Ms. Trombetta underwent a nine hour deposition, a suggestion of counseling, both legal and mental was duly endorsed.  Dr. Scelsa will

opine to his professional opinion as a Psychotherapist, and the adverse effects this is having on Ms. Trombetta, emotional, physical, professional and the adverse overall impact to Ms. Trombetta's life.

10. Dr. Joseph V. Scelsa will give testimony regarding the attorney suggested to Plaintiff at the end of September and Ms. Trombetta's followed up with the attorney suggested by Dr. Scelsa. He is an experienced trial attorney, particularly in the Southern District of New York.

11 Dr. Scelsa will give testimony and will be based upon, but not limited to, the trial attorney and Annamarie Trombetta agreement of legal representation regarding Settlement negotiations at the November 23, 2022, Court Ordered Conference Call. Ms.Trombetta addressed the subject of Settlement agreements and hoped to set forth the name of her intended attorney to initiate settlement discussions. Both Defendants declined to discuss or consider settlement talks. Ms. Trombetta's attempt to initiate settlement talks is duly documented in the November 23, 2022 transcript on page and is included in Dr. Scelsa's report.

12. Dr. Scelsa will give testimony and will be based upon, but not limited to Ms. Trombetta's post Conference Call phone call in early December 2022. Ms. Trombetta informed Dr.Scelsa of the lack of interest by Defendants to settle her case. Upon hearing this, Dr. Scelsa will attest he suggested another trial attorney. Additionally Dr. Scelsa will attest that he was unable to submit an expert report on or before December 19, 2022 due to prior commitments and holiday plans.

13. Dr. Scelsa will give testimony and will be based upon, but not limited to another phone call in early January 2023 upon his return from holiday. Dr. Scelsa will give testimony on another suggestion to contact Burford Capital, a corporation that take cases on consignment.to Ms. Trombetta and confirmed that Ms. Trombetta contacted the second trial attorney.

14. The substance of Dr. Joseph V. Scelsa's expected testimony will elaborate on the emotional

and psychological toll the ongoing legal battle sas taken on Ms. Trombetta, particularly due to the loss of two years to end this false posing by Estate Auction Inc and WorthPoint Corp.

15. The substance of Dr. Joseph V. Scelsa's expected testimony is more fully set forth in his report, which is annexed hereto as Exhibit "A."

16. Dr. Joseph V. Scelsa's qualifications are set forth in her curriculum vitae, which is annexed here to as Exhibit " B."

17. The substance of Dr. Joseph V. Scelsa's evidence in support of his expected testimony is more fully set forth in his report, which is annexed hereto as Exhibit "C."

PLEASE TAKE FURTHER NOTICE, PLAINTIFF, ANNAMARIE TROMBETTA reserves the right to offer further rebuttal of Defendants expert testimony in the event such expert testimony is permitted Plaintiff, Annamarie Trombetta further reserves the right to seek preclusion of Defendants 's expert testimony on several grounds). PLEASE TAKE FURTHER

NOTICE, PLAINTIFF, ANNAMARIE TROMBETTA reserves the right to supplement and/or amend this disclosure in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

Dated: New York, New York February 16, 2023

Annamarie Trombetta
175 East 96th Street (12 R)
New York. New York 10128
Pro Se Plaintiff

Annamarie Trombetta Pro Se Plaintiff

**SA333**

Attorneys for Defendant   WorthPoint Corporation
TO:Adam R. Bialek
   150 East 42nd Street
   New York, New York 10017 Telephone: (212) 915-5143 Fax: (212) 490-3038
   Adam.Bialek@wilsonelser.com


TO:   Jana Slavina Farmer
    1133 Westchester Avenue White Plains, New York 10604 Telephone: (914) 872-7247 Fax:
    (914) 323-7001 Jana.Farmer@wilsonelser.com
    Attorneys for Defendant   WorthPoint Corporation

TO:   Anderson Josiah Duff (via email)
    Hogan Duff, LLP
    43-10 Crescent St., Ste. 12173
    Long Island City, New York 11101 Telephone: (646) 450-3607
    Attorneys for Defendants   Norb Novocin, MarieNovocin, and Estate Auctions, Inc.

**SA334**

CaSase 1:18-cv-00993-RA-SCC Document 499-3 Filed 04/11/23 Page 2 of 63

# EXHIBIT A

# Expert Report By
# Dr. Joseph V. Scelsa

Trombetta vs. Estate Auctions Inc. The Novocins and

WorthPoint Corporation

**PRIVILEGED & HIGHLY CONFIDENTIAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ANNAMARIE   TROMBETTA
      Plaintiff,

      -against-

      ESTATE AUCTIONS, INC.,
NORB NOVOCIN, MARIE NOVOCIN,

AND WORTHPOINT CORPORATION,
      Defendants.

Civil Case No. 18-cv-00993-RA--HBP

EXPERT  REPORT  OF  EXPERT  WITNESS  DR.  JOSEPH V. SCELSA

Redacted - Confidential Information

**PRIVILEGED & HIGHLY CONFIDENTIAL**

PRIVILEGED & HIGHLY CONFIDENTIAL



PRIVILEGED & HIGHLY CONFIDENTIAL

PRIVILEGED & HIGHLY CONFIDENTIAL



PRIVILEGED & HIGHLY CONFIDENTIAL

**SA338**

PRIVILEGED & HIGHLY CONFIDENTIAL



PRIVILEGED & HIGHLY CONFIDENTIAL

PRIVILEGED & HIGHLY CONFIDENTIAL



PRIVILEGED & HIGHLY CONFIDENTIAL

PRIVILEGED & HIGHLY CONFIDENTIAL



PRIVILEGED & HIGHLY CONFIDENTIAL

**SA341**

PRIVILEGED & HIGHLY CONFIDENTIAL



PRIVILEGED & HIGHLY CONFIDENTIAL

**SA342**

PRIVILEGED & HIGHLY CONFIDENTIAL



Redacted -Confidential Information

PRIVILEGED & HIGHLY CONFIDENTIAL

**SA343**

PRIVILEGED & HIGHLY CONFIDENTIAL



PRIVILEGED & HIGHLY CONFIDENTIAL

PRIVILEGED & HIGHLY CONFIDENTIAL



PRIVILEGED & HIGHLY CONFIDENTIAL

PRIVILEGED & HIGHLY CONFIDENTIAL



PRIVILEGED & HIGHLY CONFIDENTIAL

Case: 18-cv-09936-TSASSCC   Document 394-3   Filed 04/07/23   Page 20 of 63

PRIVILEGED & HIGHLY CONFIDENTIAL



PRIVILEGED & HIGHLY CONFIDENTIAL

PRIVILEGED & HIGHLY CONFIDENTIAL

Redacted - Confidential Information

Joseph V. Scelsa, Ed.D, LMHC

PRIVILEGED & HIGHLY CONFIDENTIAL

**SA348**

# EXHIBIT   B

# Dr. Joseph V. Scelsa  Curriculum Vitae

Trombetta  vs. Estate Auctions Inc., The Novocins and
WorthPoint Corporation

**SA349**

Page 1 of 20

# CURRICULUM VITAE

### Joseph V. Scelsa, Ed.D.

**(212) 965-9000 (Office)**
**(917) 642-4922 (Mobile)**
**JVScelsa@ItalianAmericanMuseum.org**

## PROFESSIONAL EXPERIENCE

**President/CEO, 07/08 to Present**
**Professor Emeritus, Queens College, The City University of New York**

*Italian American Museum.* As first Dean of the John D. Calandra Italian American Institute in 1999 organized a four month long exhibition at the New York Historical Society entitled, " The Italians of New York: Five Centuries of Struggle and Achievement". As a result of this successful exhibition in 2001 founded the Italian American Museum, an educational institution chartered by the Board of Regents of the University of the State of New York on June 12, 2001. From 2001 to 2008, organized over twenty exhibits on The Italian American Experience, www.ItalianAmericanMuseum.org. On March 19, 2008, along with a group of investors, bought three historic buildings in the heart of New York City's Little Italy at a cost of $9.4 million one of which housed "Banca Stabile" in 1885. On October 8, 2008, Columbus Day the Museum opened its doors to the public. Since its inception, served as President and CEO of the Italian American Museum. The mission of the Museum is to raise public awareness and appreciation of the many accomplishments and contributions made by Italians and Italian Americans to our American society. Through exhibitions, lectures, symposia, festivals, and educational travel programs, the Italian American Museum explores the rich heritage of Italy and Italian Americans. It collects, preserves and showcases notable contributions of Italians and Italian Americans to the American culture. In doing so, the Museum presents the individual and collective struggles and achievements of Italians and their heirs to the American way of life. The Italian American Museum is a cultural and educational institution promoting constructive pluralism by educating Americans to the heritage of Italian Americans and their European roots, values, language and traditions. It houses precious collections of objects and memorabilia which tell the story of the Italian experience in America. Most notable in 2009 as President of the Museum upon hearing of the tragic news of the earthquake in Abruzzo spearheaded a national fundraising campaign which raised $110,000.00 which was delivered to the Italian Ministry of Culture in Rome, Italy which used the funds to restore La Madonna di Pietranico a 15th century terracotta Madonna destroyed in the earthquake. The restored Madonna was brought to the United States in 2011 and

exhibited at the Italian American Museum from April through May and at Cipriani 42nd Street for Italian National Day on June 2, 2011.

**Vice President, 10/00 to 06/08**
**Outreach and Cultural Affairs**
**Institutional Development**

_**Queens College, The City University of New York.**_  Appointed Vice President on July 1, 2005, previously appointed Acting Vice President on October 4, 2000; on leave as Dean of The Calandra Institute to serve as part of Interim President Russell Hotzler's plan for restructuring of Senior Administration at Queens College, to assist in a smooth transition between administrations.  From October 2000 through June of 2002 responsibilities included supervision of the following College offices: Sponsored Research, Corporate and Foundation Relations, Publications, Editorial Services, College Reprographics, Media Productions, Governmental Relations and all eight of the College's Academic Centers and Institutes (_Asian/American Center, Asian American/Asian Research Institute, Center for the Biology of Natural Systems, Center for Byzantine and Modern Greek Studies, Michael Harrington Center, John D. Calandra Italian American Institute, Center for Jewish Studies and Labor Research Center_).

During this time period with the assistance of the Interim President, a new college Development Coordinating Council was planned and implemented, which included individuals and offices involved in extramural funding for the college.  During the 2001-2002 Academic year, the College experienced an overall 33% increase in extramural funding, approximately five million dollars.

In June 2002, a new Dean for Institutional Advancement was appointed. The Office of Sponsored Research, and Corporate and Foundation Relations were reassigned to her supervision as well as all Queens College campus based Academic Centers. The Vice President for Institutional Development Office responsibilities were expanded to include the development and supervision of the College's Extension Center in Manhattan (outreach) (primary office), as well as the College's New Office of Public Relations which includes the Office of News and Information Services and has oversight of all College Offices involved in Communications both internal and external.  College Offices and programs at the Manhattan Extension Centers including: Asian American/Asian Research Institute, John D. Calandra Italian American Institute, Women and Work Program and Worker Education.  In addition to these added responsibilities the College's Office of Governmental Relations, remain under the Vice President's direct supervision. Included in these responsibilities is the development of The Italian American Museum, which is in transitional residence at the Calandra Institute (cultural).  The Italian American Museum was chartered by The New York State Board of Regents in June 2001 and is an outgrowth of the successful exhibit The Italians of New York: Five Centuries of Struggle and Achievement which was held The New York Historical Society, October 1999 through February of 2000.  Dr. Joseph V. Scelsa is the Museum's founding President and serves as its Chief Executive Officer.

**Dean 3/99, Executive Director 5/96**

*The John D. Calandra Italian American Institute.*
Professor, Student Personnel (5/99), Queens College/CUNY, Institute's Chief Officer and senior member of the University community. Responsibilities include working actively on research projects, communicating with pertinent authorities at campus and systems levels, maintaining rapport with elected and appointed officers, lobbying before funding sources in and outside CUNY, maintaining regular contact with the research ventures locally and nationally, spreading the word as to the work of the Institute and working constantly on advancing the Institute's mission, goals and objectives.

The Executive Director of the Calandra Institute reports to the President of Queens College or his/her designee (Vice President for Research and Graduate Studies) consistent with the policies and practices of Queens College. This reporting occurs at regular intervals during the year whenever consultation on specific decisions are needed and cumulatively at the end of every academic year in a formal report submitted to the pertinent governance bodies of the college and system. The Executive Director is responsible for all activities, personnel and programs of the Calandra Institute subject to the rules and procedures of Queens College. The Institute seeks to develop relationships in academic departments to meet its research and academic mission. The Calandra Institute operates independently of campus departments and divisions.

The Executive Director has an operating team made up of an Executive Assistant, Director, two Associate Directors and two Assistant Directors for the specific key areas of operations: Research and Education, Counseling, Community Programs, Exchange Programs with Italian universities and Cultural and Academic Programs. The annual budget for the Calandra Institute's operation is approximately $1.2 million with a total full time staff of 25 employees.

While serving as Director, Executive Director and Dean of the John D. Calandra Italian American Institute, I have had the opportunity to develop a number of skills necessary to accomplish several milestones.

First, development and implementation of the Calandra Institute's Outreach Services program, which is now in 23 public high schools through New York City. This program provides information necessary for junior and senior high school students to make informal choices in their college selection process.

Second, in 1995 the development and writing of the proposal, which transformed the Calandra Institute from a service program to a full "research and service institute." (The first of its kind to be approved by the Trustees of The City University of New York, September 27, 1995).

Third, through Governmental Relations, the Institute's State budget was increased from $125,000 in 1984 to $1,200,000 in 2000, and increase of 1,000%.

Page 4 of 20

Fourth, also through Governmental Relations, the Institute's budget was successfully moved from a legislative initiative (1984) to the Executive Budget request (1987) where it remains giving it a greater degree of stability and prominence.

Fifth, during this entire period, in addition to working with government officials, maintained constant communications with a variety of community organizations and their leaders. In fact, my work in this area was recognized and lead to my appointment as Vice Chairperson of the New York City Public Schools Multi-Cultural Advisory Board and later to the position of Co-Chairperson of the New York City Public Schools Chancellor's Advisory Committee on Inter-Group Relations. Both these groups are comprised of a wide range of ethnic, racial, religious and community organizations represented in New York City (e.g., NAACP, Urban League, ADL, American Jewish Committee, NECO, ASPIRA, etc.). Presently, contact with these organizations is maintained.

Sixth, since becoming a research and service institute, the Calandra Institute embarked on a most ambitious undertaking: the organization of a Museum Exhibition at the New York Historical Society on "The Italians of New York". In addition to overseeing academic research components of the exhibition, we undertook the responsibility to raise the outside funds necessary to mount the exhibition. We were asked by the New York Historical Society to raise $250,000. In fact, we raised $300,000, which allowed us to increase the educational and public programs and print the exhibition's "Collector's Catalogue". These funds were raised from a variety of sources: corporate, governmental, foundations, grass-root organizations and individuals. Over 30,000 people visited the exhibition during its four-month showing, making it the most successful exhibit of its kind ever undertaken.

Seventh, as head of the Calandra Institute it has been necessary to develop my skills in the area of public relations. This included the development of printed materials, newsletters, press releases, brochures, and flyers, etc. as well as video productions. Under my leadership, we developed our own monthly video magazine. This cable television program, ITALICS, is still seen on CUNY/TV and on cable stations from coast to coast. It is now in its seventeenth season, having already produced 150 half hour episodes of which as Executive Producer and Host continue to serve. In addition, we have also produced several documentaries and assisted in others.

- Also, in the area of media relations, I have represented the Institute in a number of mediums: radio, television and printed press, e.g., ABC, CBS, NBC, WPIX, MSNBC, NY1, Fox News, the History Channel, Arts and Entertainment Network, *The New York Times, Daily News, New York Post, Newsday, Chronicle of Higher Education*, etc.

**Director, 8/84 to 4/96**

***The John D. Calandra Italian American Institute (CUNY).*** Responsibilities include the supervision of the Institute's Administrative Operations, Counseling Programs (Career Counseling Center, Articulation Counseling Program, Outreach Program, and Campus Counseling Program), Community Projects (Mentoring Programs, conferences, Speakers Bureau, Resource and Video Library, and Italics: The Italian American TV Magazine seen on CUNY-TV, New York State and Cable Stations) and Research and Education (Institutional Research, Dissertation Library, Scholar Research Project, Policy Research and Faculty Fellow Program).

## EDUCATION

Ed.D. 1984
> Columbia University, Teachers College
> Philosophy, the Social Sciences and Education
> Sociology and Education

M.A. 1983
> Columbia University, Teachers College
> Philosophy, the Social Sciences and Education
> Sociology and Education

M.S. in Ed. 1978
> The City University of New York, Herbert H. Lehman College
> Specialized Services in Education
> Guidance and Counseling - 48 credits

Post-Masters Study 1974-1975
> The City University of New York, Herbert H. Lehman College
> Psychology – 22 credits

M.A. 1973
> The City University of New York, Herbert H. Lehman College
> Social Studies – Teaching

Post-Graduate Study 1969
> Long Island University, Richard L. Connolly College
> Psychology and Education – 12 credits

B.A. 1968

    Long Island University, Richard L. Connolly College
    Major: Political Science; Minor: Sociology

A.A. 1966

    Long Island University, Richard L. Connolly College
    Major: Social Sciences

## TEACHING

**Spring 2005 - Professor**

    Contemporary Issues in the Italian American Community
    Italian American Studies, Queens College

**Spring 1999 = Instructor**

    *Italian-Americans: A History of Struggle and Achievements*
    Department of History, Queens College

    This course explores the history of Italians in the United States with the emphasis on the era of mass migration in the 1880s to the complexities of Italian American identity in the 1990s. It begins with an examination of early encounters with America, the Italian background, and the process of immigration and settlement. Among the topics covered are family, religion, women, mobility, and immigrant culture as well as the sources and nature of anti-Italian prejudice. Lectures included discussion of labor and radicalism, politics, the Fascist era and World War II. For the more recent period, the course looked at the debate over assimilation and the persistence of Italian American identity in a multi-cultural society.

**Fall 1997 - Co-Instructor**

    *A History of Italian Americans*
    Department of History, Queens College

    This course explored the history of Italians in the United States from the era of mass migration in the 1880s to the complexities of Italian American identity in the 1990s. It began with an examination of early encounters with America, the Italian background, and the process of immigration and settlement. Among the topics covered were family, religion, women, mobility, and immigrant culture as well as the sources and nature of anti-Italian prejudice. Lectures included discussion of labor and radicalism, politics, the Fascist era, and World War II. For the more recent period the course looked at the debate

over assimilation and the persistence of Italian American identity in a multi-cultural society.

**Fall 1996 - Instructor**

*Italian-Americans:  An Interpretation of a People*
Italian American Studies, Queens College

An interdisciplinary study of Italian-Americans, using works of history, sociology and literature stressing the period from 1880 to the present.

**Spring 1996 – Instructor**

*Italian-Americans and Civil Rights*
Interdisciplinary and Special Studies, Queens College

This course explored the relationship between Italian-Americans and their civil rights from a sociological, political and historical perspective.  Some of the events that were examined and discussed were the mass lynchings of Italians in 1891 in New Orleans; the trial of Sacco and Vanzetti; the effect of the Civil Rights Movement in the United States; Affirmative Action; and recent Federal Court opinions and ruling which have established Italian-Americans as a "cognizable racial group" entitled to protection under Civil Right Statutes.

**2/80 to 6/84 - Adjunct Instructor, Graduate Faculty**

Department of Specialized Education, Guidance and Counseling
The City University of New York, Herbert H. Lehman College

**Courses Taught:**

*Counseling Foundation II*
Interdisciplinary approach to human development, organizational development and social systems.  Reading and review of research.

*Seminar in Counseling II*
Experience in individual and group counseling: content and process.  Cognitive, behavioral, developmental and other approaches to counseling.

*Strategies in Learning and Counseling I*

Integration of vocational learning theory and measure theory as used in counseling. Behavioral science concepts as applied to counseling. Reading and review of research.

*Seminar in Counseling III*
Advanced integration of vocational learning theory and measurement theory as used in counseling. Behavioral science concepts as applied to counseling. Reading and review of research.

**9/80 to 10/81 - Research Associate**
Coordinator, CUNY Assistant for Specialized Counseling Program
Office of Student Affairs and Special Programs
The City University of New York

**9/79 to 10/80 - Director of Counseling**
Italian American Institute to Foster Higher Education, Inc.
The City University of New York, Queens College

**The State University of New York (SUNY)**

Spring 1991 - Adjunct Professor
Department of Romance Languages (Italian)
Westchester Community College
Italian American Culture – *A Survey of the Italian American Experience From Columbus' Discovery to the Present Day* **New York City Board of Education**

**5/79 to 9/79     Coordinator**
Boroughs of Brooklyn & Staten Island,
Career and Occupational Education
Division of Educational Planning and Support
New York City Board of Education

**9/76 to 5/77     Social Science Lab Teacher**
P.S. 153, New York City

**9/74 to 6/76     Social Studies, Art and Math Teacher**
I.S. 158, Bronx, New York

**9/71 to 6/74     Teacher = Counselor**
Social Studies, Art and Health
C.S. 34, Bronx, New York

<u>Counseling and Professional Positions</u>

| | |
|---|---|
| 9/78 to present | *Professional Counselor, Consultant* <br> Mental Health and Human Relations |
| 9/76 to 6/79 <br> **(Part-time)** | *Psychotherapist – Group Leader* <br> Group work and Recreation Program <br> Federation of the Handicapped, New York City |
| 9/69 to 6/71 | *Per- Diem Teacher* <br> Mount Vernon, New York |
| 7/68 to 5/79 | *President* <br> Jolen Studios Ltd., Social Photography <br> Bronx, New York |
| 5/70 to 9/70 | *Life Insurance Agent* <br> Prudential Life Insurance Company <br> Bronx, New York |

## PUBLICATIONS

"The 80th Street Mafia", (<u>Unabridged Edition</u>) Calandra Institute, Spring 2002

"Fighting for Justice", <u>Ambassador</u>, National Italian American Foundation, Quarterly, No. 45, Summer, 2000.

"The 80th Street Mafia", Chapter in <u>Beyond the Godfather:  Italian American Writers on the Real Italian American Experience,</u> edited by A. Kenneth Ciongoli and Jay Parini, University Press of New England, October 1997.

"High School Dropout Rate Indicators for Italian American and other Race/Ethnic Populations", *To See the Past More Clearly:  The Enrichment of the Italian Heritage, 1880-1990*, edited by Harral E. Landry; Texas: The American Italian American Historical Association, 1994.

"Italian Americans and Civil Rights:  A Case Study at The City University of New York" <u>The Italian American Review</u>, Vol. 3, No. 2, October 12, 1994.

"The Man from Genoa:  Our Long Voyage" <u>New York Newsday</u>, New York Forum, Monday October 12, 1992.

"They Triumphed in 'La Merica'"
New York Times Book Review, La Storia by Jerre Mangione and Ben Morreale, September 27, 1992.

Statistical Profile of Italian Americans in Suffolk County: Socio-Demographics and Educational Achievement Level; Joseph V. Scelsa and Vincenzo Milione, John D. Calandra Italian American Institute, The City University of New York, July 1992.

"No Longer Little Italy, Ethnicity in America: the Italian American Experience",
Italy America, No. 20, December 1991.

Columbus: CUNY/Italy Exchange Program; Joseph V. Scelsa and Giuseppe Amendola, John D. Calandra Italian American Institute, The City University of New York, November 22, 1991.

Statistical Profile of Italian Americans in New York City Socio-Demographics and Educational Achievement Level; Joseph V. Scelsa and Vincenzo Milione, John D. Calandra Italian American Institute, The City University of New York, September 1991.

Statistical Profile of Italian Americans in New Jersey: Socio-Demographics and Educational Achievement Level; Joseph V. Scelsa and Vincenzo Milione, John D. Calandra Italian American Institute, The City University of New York, September 1991.

Statistical Profile of Italian Americans in Manhattan: Socio-Demographics and Educational Achievement Level; Joseph V. Scelsa and Vincenzo Milione, John D. Calandra Italian American Institute, The City University of New York, September 1991.

Statistical Profile of Italian Americans in U.S.A.: Socio-Demographics and Educational Achievement Level; Joseph V. Scelsa and Vincenzo Milione, John D. Calandra Italian American Institute, The City University of New York, September 1991.

Statistical Profile of Italian Americans in the Bronx: Socio-Demographics and Achievement Level; Joseph V. Scelsa and Vincenzo Milione, John D. Calandra Italian American Institute, The City University of New York, September 1991.

Statistical Profile of Italian Americans in Queens: Socio-Demographics and Achievement Level: Joseph V. Scelsa and Vincenzo Milione, John D. Calandra Italian American Institute, The City University of New York, September 1991.

Statistical Profile of Italian Americans in New York State: Socio-Demographics and Educational Achievement Level; Joseph V. Scelsa and Vincenzo Milione, John D. Calandra Italian American Institute, The City University of New York, September 1991.

Italian American Affairs at The City University of New York: Historical Overview; Joseph V. Scelsa, John D. Calandra Italian American Institute, The City University of New York, revised, September 1991.

Statistical Profile of Italian Americans in Staten Island: Socio-Demographics and Educational Achievement Level; Joseph V. Scelsa and Vincenzo Milione, John D. Calandra Italian American Institute, The City University of New York, July 30, 1991.

Contemporary Italy and the European Economic Community: Lectures and Seminars; Joseph V. Scelsa and Giuseppe Amendola, John D. Calandra Italian American Institute, The City University of New York, July 10, 1991.

"Missed Opportunities" Ambassador, National Italian American Foundation Quarterly, No. 9, Spring 1991.

"The Bias Against Italian American Literature" Mazzei Gazzette, No. 17, March 1991.

Scelsa, Joseph V. – Editor, *Italian Americans in Transition.*
American Italian Historical Association, NY, June 15, 1990.

Scelsa, Joseph V. – "Pluralism and the Social Stratification of Italian Americans: Present and Future Trends", Ethnicity 2000, National Italian American Foundation, Spring 1990.

Scelsa, Joseph V. – "Career Counseling in a Pluralistic Society: A Focus on The City University of New York's Specialized Programs for Italian Americans" in Incontro Con Erich Fromm, edited by Pier Lorenzo Eletti; Palazzo Vecchio, Firenze, November 1986.

Scelsa, Joseph V. – "Italian Americans and Public Higher Education: The Counseling Program at The City University of New York", Italian Americans Through the Generations, edited by Rocco Caporale; New York: American Italian Historical Association, 1983.
Scelsa, Joseph V. – *A Model Experiential Workshop To Promote Constructive Pluralism,* University Microfilms International, Ann Arbor, Michigan, 1985.

Scelsa, Joseph V. – "Italian American Women: Their Families and American Education", The Family and Community of Italian Americans, edited by Richard N. Juliani; New York: American Italian Historical Association, 1983.

Messina, James, J.; Breasure, Joyce; Jacobsen, Susan; Leymaster, Ron; Lindenberg, Steve; and Scelsa, Joseph V. (The AMHCA Certification Committee) The Board of Certified Professional Counselors Procedure, Journal of Mental Health Counseling, 1979, 19-22.

Messina, James, J.; Breasure, Joyce; Jacobsen, Susan; Leymaster, Ron; Lindenberg, Steve; and Scelsa, Joseph V.; *Blueprint for the Advancement of the Counseling Profession*, unpublished text, AMHCA, Washington, DC 1978.

## DOCTORAL DISSERTATION

Ed.D., Sociology and Education
  *"A Model Structured Experiential Workshop to Promote Constructive Pluralism"*.
  Columbia University, Teachers College, 1984.

## MASTERS THESIS

M.S. in Ed., Guidance and Counseling
  *"The College Community Counseling Center:  An Approach to Provide Practical Experience for Masters Level Counselors in Training."*  The City University of New York, Herbert H. Lehman College, 1978.

M.A., Social Studies
  *"The Relationship of Robert Livingston in the Historical Development Surrounding the Establishment of the Manor of Livingston:  1686."*  The City University of New York, Herbert H. Lehman College, 1973.

  *"Brazilian Slavery:  A Relationship to Economics."*
  The City University of New York, Herbert H. Lehman College, 1973.

## MEDIA

Television Production, Executive Producer and Host of ITALICS:  The Italian American Magazine.  ITALICS is a monthly television program jointly produced by the Calandra Italian American Institute and CUNY-TV and is seen nationally on local cable TV stations.  The purpose of ITALICS is to present accurate information on the Italian American experience.  Now in its thirteenth year of production, ITALICS received national recognition in 1991 by being named an "Official Quincentenary Project" by the Christopher Columbus Quincentenary Jubilee Commission in Washington, DC.
Historic consultant to the Art and Entertainment Network on a one-hour documentary, "The Italians of America", first aired on October 12, 1998 and subsequently aired on the History Channel during the 1999 Columbus Day Weekend.

In addition to scholarly works, frequently cited and quoted in the popular media including The New York Times, the New York Post, Newsday, America Oggi, and also interviewed on television and radio news shows on ABC, NBC, CBS, FOX5, MSNBC, WPIX, WOR and NY1.

## PROFESSIONAL ASSOCIATIONS- OFFICES, COMMITTEES AND MEMBERSHIPS

| 2002-present | Board of Advisors | New Jersey Italian American Studies Institute, Rutgers University |
|---|---|---|
| 2001-present | President and Founder | Italian American Museum |
| 2000-2008 | Board of Directors | Columbia University Club, NYC |
| 2000-present | Honorary Chair | Italian Heritage & Culture Month Committee |
| 2000-2008 | Honorary Board of Directors | Italian Welfare League, Inc. |
| 1999-2003 | Board of Directors | Italian Hospital Society |
| 1999-2008 | Regional Board Member | Nat. Italian American Foundation |
| 1997-2008 | Vice Chair | NIAF Professional Institutes |
| 1996-2008 | Publisher | Italian American Review |
| 1994-present | Member | Columbus Citizens Foundation |
| 1993-present | Member | Bronx Columbus Day Parade Committee |
| 1992-1996 | Community Editor | Italian American Review |
| 1992-1994 | Chair | Intergroup Relations Council New York City Board of Education |
| 1992-2005 | Board of Directors | Media Institute, Nat. Italian American Foundation |
| 1992-2002 | Member | Italian Apostolate, Archdiocese of New York |
| 1991-1998 | Vice Chairman | Italian Journal |

| | | |
|---|---|---|
| 1991-1994 | Member | Community Leadership Council New York State Mentoring Program |
| 1990-1994 | Member | NYS Education Department Advisory Committee, Italian American Heritage Project |
| 1990-2004 | Board of Directors | National Ethnic Coalition of Organizations, Inc. |
| 1989-present | Board of Advisors | Italian American Legal Defense & Higher Education Fund, Inc. |
| 1989-present | Board of Directors | Commission for Social Justice/ Order Sons of Italy in America |
| 1989-1993 | Vice Chair | Multi-Cultural Advisory Board New York City Board of Education |
| 1989-1992 | Board of Advisors | Columbus '92 Celebration Committee, National Italian American Foundation |
| 1989-1992 | Member | Westchester County Commission For Columbus Quincentennial Celebration |
| 1989-1994 | Member | Executive Council American Italian Historical Association |
| 1988-1990 | Coordinator | Tri-State Mentoring Project |
| 1988-2005 | Honorary Board of Directors | American Italian Cultural Roundtable |
| 1988-2005 | Member | National Italian American Foundation Scholarship Committee |
| 1987-2000 | Advisory Board | Italian Academy Foundation |

| 1987-present | Board of Directors | Coalition of Italo-American Associations, Inc. |
|---|---|---|
| 1986-1990 | Member | Balch Institute for Ethnic Studies |
| 1986-present | Member | Order Sons of Italy in America |
| 1986-present | Member | American Psychological Assoc. |
| 1985-2012 | Board of Directors | Italian Heritage & Culture Month Committee, Inc. |
| 1985-present | Member | National Italian American Foundation Council of 1000 |
| 1982-1984 | Board Member | Lehman College Alumni Assoc. |
| 1981-1984 | Chair | NYSACD-Licensure Committee |
| 1978-present | Member | National Academy of Certified Clinical Mental Health Counselors |
| 1978-present | Member | NYS Mental Health Counselors Assoc. (NYSMHCA) |
| 1978-1979 | Chair | Mid-Atlantic Screening Committee NACCMHC |
| 1978-1980 | Founder/1st President | NYSMHCA |
| 1978-1981 | Committee Member | NYSACD |
| 1978-1979 | Chair | Public Relations Comm.- AMHCA |
| 1977-1978 | Member | Certification Comm.- AMHCA |
| 1977-1978 | Chair | Governmental Relations Comm. AMHCA |
| 1977-1978 | Vice Chair/Legislative Affairs | University Student Senate (USS) CUNY |

| 1977-1978 | Student Representative | CUNY Board of Trustees/Long Range Planning Committee |
| 1976-1977 | Member | University Student Senate (USS) CUNY/delegate from Lehman |
| 1976-present | Charter Member | American Mental Health Counselors Assoc. (AMHCA) |
| 1975-1978 | President | Counseling Student Association Lehman College |
| 1975-present | Member | New York State Counseling Assoc. |
| 1975-present | Member | American Counseling Assoc. |
| 1966-1968 | President | Phi Kappa Theta Fraternity (PTK), Long Island University |
| 1965-1968 | Member | PKT, Long Island University |

## PROFESSIONAL CERTIFICATIONS

| Mental Health Counselor<br>New York State | Feb. 2006 |
| National Certified Counselor (NCC)<br>National Board of Certified Counselor | July 1983 |
| Certified Clinical Mental Health Counselor (CCMHC)<br>National Academy of Certified Clinical Mental Health Counselors | July 1979 |
| School Counselor, Permanent, New York State | Sept. 1978 |
| Teachers Social Studies, Permanent, New York State | Sept. 1975 |
| Teachers N-6, Permanent, New York State | Sept. 1975 |
| Teacher Common Branches, New York City | April 1969 |

## AWARDS AND HONORS

| | |
|---|---|
| Knight Commander<br>Equestrian Order of the Holy Sepulcher | 2012 |
| Grand Marshall<br>Bronx Columbus Day Parade | 2011 |
| Commendatore<br>Order of Merit of the House of Savoy | 2009 |
| Joseph P. Cianci Humanitarian Award<br>UNICO National | 2009 |
| Special Recognition Award<br>The Columbus Association of US Customs | 2009 |
| Marshall<br>Columbus Day Parade<br>Howard Beach Columbus Day Foundation | 2008 |
| Good Sheppard Award<br>Women and Work Program | 2005 |
| Knighthood<br>Equestrian Order of the Holy Sepulcher | 2005 |
| Citation of Merit<br>New York City Council<br>Italian American Legislative Caucus | 2003 |
| The Women and Work Program<br>Certificate of Appreciation | 2002 |
| Man of the Year<br>National Council of Columbus Association<br>Of Civil Service | 2002 |
| Commendation<br>City of New York Office of the<br>Comptroller | 2002 |

Page 18 of 20

| | |
|---|---|
| Kingsborough Community College<br>Italian American Clubs | 2000 |
| NYS Governor's Award for Excellence in Education<br>Governor's Proclamation of Italian Heritage<br>And Culture Month | 1999 |
| Citation of Honor<br>Borough President of Queens<br>Proclamation of Italian Heritage and Culture Month | 1999 |
| Certificate of Service<br>Borough President of the Bronx<br>Proclamation of Italian Heritage and Culture Month | 1999 |
| Citation<br>County Executive of Westchester, NYS | 1999 |
| Italian American Role Model Award<br>Columbus Alliance, Inc. | 1999 |
| Man of the Year Award<br>Italian Charities of America, Inc. | 1998 |
| *Ufficiale*, The Civil Order of Merit<br>The House of Savoy | 1997 |
| Ellis Island Medal of Honor | 1997 |
| AMICO Man of the Year | 1996 |
| Ocean Township Italian American Organization | 1996 |
| Distinguished Alumni, St. Lucy's School | 1996 |
| Appreciation Award, University Student Senate<br>The City University of New York | 1995 |
| Italian Civic Association, Columbus Day Award | 1995 |
| Education Award<br>National Council of Columbia Associations in<br>Civil Service | 1994 |
| The City University of New York<br>Student Presidents/PAC | 1993 |

| | |
|---|---|
| Fieri National "Leadership" Award | 1993 |
| Mazzei Award<br>Italian Civic Association of Mount Vernon | 1993 |
| Man of the Year<br>Il Club Italiano of Westchester Community College | 1993 |
| Association for Italian Fellowship<br>John Jay College for Criminal Justice, CUNY | 1993 |
| Man of the Year<br>Italian Apostolate, Archdiocese of New York | 1993 |
| *Cavaliere*, Order of Merit, Republic of Italy | 1991 |
| Who's Who Among Italian Americans | 1992 |
| Who's Who in America, 50th Edition<br>Honorary Marshal<br>Bronx Columbus Day Parade | 1991<br>1991 |
| Award of Appreciation<br>Inter-CUNY Italian American Student Association | 1991 |
| Award of Appreciation<br>Italian Clubs of Kingsborough Community College | 1991 |
| DaVinci Award<br>Circolo daVinci | 1991 |
| Pope Award<br>Fordham University | 1990 |
| Americus Award<br>Bronx Community College | 1989 |
| Certificate of Appreciation for Italian Studies<br>State University of New York at Stony Brook | 1989 |
| Organizational Leadership Award<br>Coalition of Italo-American Associations, Inc. | 1988 |

| | |
|---|---|
| Distinguished Leadership Brooklyn College Student Association of the Advance Certificate Program in Educational Administration of the School of Education | 1988 |
| Certificate of Recognition-Public Relations American Mental Health Counselors Association | 1988 |
| Certificate of Appreciation Columbus Alliance, Inc. | 1986 |
| Distinguished Alumni Award-Long Island University | 1985 |
| Counselor of the Year-American Mental Health Counselors Association | 1984 |
| Who's Who in the East | 1983-84 |
| Outstanding Young Men in America | 1981 |
| Outstanding Achievement Award for Organizational Development, New York State Mental Health Counselors Association (Founding President) | 1981 |
| Medal of the Province of Reggio Emilia Reggio Emilia, Italy | 1980 |
| Certificate of Recognition for Legislative Leadership American Mental Health Counselors Associations | 1979 |
| Service to College Award-Herbert H. Lehman College The City University of New York | 1979 |
| Outstanding Elementary Teacher of America | 1973 |

**SA369**

# EXHIBIT   C

# Dr. Joseph V. Scelsa  Exhibits for Report

Trombetta  vs. Estate Auctions Inc., The Novocins and
WorthPoint Corporation

 **WorthPoint**

Jason Packer <jason.packer@worthpoint.com>

---

### FW: Marilyn Monroe 1988 Vintage Michael Ochs Archive Chanel Perfume ...
### www.worthpoint.com › Worthopedia™------Artist Annamarie Trombetta

4 messages

Redacted -Confidential Information

Wed, Jan 4, 2017 at 11:48 AM

Hi Jason, is there anyway you can stop Google from indexing this to our site? There us nothing on our site from her, just this link that Google keeps recognizing.

**From:** Annamarie Trombetta [mailto:trombettaart@yahoo.com]
**Sent:** Wednesday, January 04, 2017 11:28 AM
**To:** will@worthpoint.com
**Subject:** Marilyn Monroe 1988 Vintage Michael Ochs Archive Chanel Perfume ... www.worthpoint.com › Worthopedia™------Artist Annamarie Trombetta

Mr. Sieppel,

Please allow me to Re-introduce myself.  My name is Annamarie Trombetta.  I am an artist . Last year  I found a MISATTRIBUTION of a painting that I did NOT create on your website--Worthpoint.com which came up  on the internet under my name.   Specific personal  content from my  professional  biography  on my personal artist  website  was copied,  transplanted  and posted on your site.  A picture of a  painted signature on canvas signed   A. Trombetta that was NOT MY signature was also photo featured on the Worthpoint.com website  listing.

On February  20, 2016  I contacted you via e-mail.  Prior to contacting you  I had spoken  several times  with  your employer Anita  and eventually  I  was on the phone at length  with your  webmaster  Mr. Gregory  Watkins  regarding the FRAUDULENT posting  of a painting  that I did not create.   I requested that this Fraudulent listing be permanently  removed.   I also sent  a notice to the company website.  SEE BELOW

---

#### Ticket #57565: Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

**WorthPoint** | Feb 20, 2016 10:24AM EST
Thank you for submitting your request. We have received your request and are working on responding to you as soon as possible. If you have any additional information to add to this case, please reply to this email.

Thanks in advance for your patience and support.

This message was sent to trombettaart@yahoo.com in reference to Case #57565.

---

I am contacting you once  again  **almost a year later** because I found  yet again a listing  from Worthpoint.com under my name--Annamarie Trombetta artist.  Below is today's  listing  January 4th 2017 of subjects and site which come up  when I  Google  **Annamarie Trombetta artist.  PLEASE REVIEW  ---   The Marilyn Monroe listing** was the **first** place where my name was  Falsely associated  along with the fraudulent painting and signature attributed to me that was listed on Worthpoint.com.

# SA371

A year ago I took time, energy and effort to contact you and your company regarding the false attribution and requested that it should be removed.     I have NEVER HAD ANY ASSOCIATION with WORTHPOINT.com---NOR have I ever had any business with Worthpoint.com   and yet in a Google search for Annamarie Trombetta Artist  your company is listed under my name.  **This listing is not authentic and has NO RIGHT TO BE LISTED UNDER MY NAME.  The Listing from Worthpoint.com is taking up space that should be for  my other TRUE  credentials ---and should not  BE OCCUPIED  by your company.**

I am requesting that you remove this IMMEDIATELY from the internet -- kindly contact Google and responsibly deal with this issue to bring about a PERMANENT ENDING.  I do NOT WISH TO BE ASSOCIATED with your company---in ANY WAY.   The numerous times that I have had to contact you regarding this issue is an outrage and a waste of my personal time.  This is costing me time,  effort and energy  needlessly and for  NO  LOGICAL REASON as AGAIN  I have contacted your company  numerous times.

I am requesting a written response to this e-mail as soon as possible as a confirmation for receipt of this e-mail.  Further,  I am requesting that you and your company PERMANENTLY remove the association --or connection that Google or the algorithms on any other  internet site thereof  have between your company ---Worthpoint.com---- and my name Annamarie Trombetta.

Sincerely,

Annamarie Trombetta

## Central Park's Plein Air Past | OutdoorPainter

www.outdoorpainter.com › Home › Artist Profile

Mar 2 2015 - "The Destructive Dance of 'Sandy,'" by Annamarie Trombetta . . all this history, and the connections generated by artists, gave me a mission.".

You've visited this page many times. Last visit: 11/2/16

## Artist Annamarie Trombetta working on her piano, which ... - Pinterest

https://www.pinterest.com/pin/177751516514603960/

Artist Annamarie Trombetta working on her piano, which commemorates the 10- year anniversary of 9/11. | See more about Piano, Anniversaries and Artists.

You've visited this page 2 times. Last visit: 2/16/16

## Page 1 - Italian American Museum

italianamericanmuseum.org/exhibitions/Pleinair.htm

Acclaimed artist Annamarie Trombetta presents a solo exhibition that celebrates the influence of the Italian Macchiaioli (Risorgimento) Artists and the American . ~

You've visited this page many times  Last visit: 10/14/16

## artist annamarie trombetta's imagery offers visionary interpretation of ...

www.italianamericanmuseum.org/news/news_plein.html

WP000133

Artist Annamarie Trombetta's "Central Park Imagery," a collection of en plein air works in oils, pastels, watercolors, etchings and drawings will be on display at ...

Staten Island native's passionate love affair with Central Park still ...

www.silive.com/entertainment/index.ssf/.../annamarie_trombetta_takes_a_wa.html

Jan 12, 2015 - STATEN ISLAND, N.Y. — After 20 years and well over a hundred works of art, painter Annamarie Trombetta still hasn't had her fill of Central ...

You've visited this page many times. Last visit: 11/2/16

# Marilyn Monroe 1988 Vintage Michael Ochs Archive Chanel Perfume ...

# www.worthpoint.com › Worthopedia™

.. Blue Hello Kitty Obey Giant Shepard Fairey Signed & Numbered Rare Print · Handmade New Mexican Folk Art Church Birdhouse LARGE Lark Sedona ...

Redacted - Confidential Information

Wed, Jan 4, 2017 at 9:49 PM

I filed a temporary removal request with Google which may help flush out that URL, but since that URL is showing up for that search based on off-page signals that may not be enough to get it to stop showing.

Beyond that the only thing we could do is remove the URL altogether, let me know if I should do that.

[Quoted text hidden]

Redacted -Confidential Information

Wed, Jan 4, 2017 at 9:51 PM

I would remove it if not too much trouble.

Happy New Year!

Will

[Quoted text hidden]

Redacted - Confidential Information

Thu, Jan 5, 2017 at 8:20 AM

Sure thing, removed.

[Quoted text hidden]

WP000134

Print           Plaintiff 000064         4/27/17, 12:40 PM

| | |
|---|---|
| **Subject:** |  WorthPoint for FREE for LIFE! |
| **From:** | WorthPoint Insider (insider@worthpoint.com) |
| **To:** | trombettaart@yahoo.com; |
| **Date:** | Monday, April 24, 2017 12:02 PM |

# WorthPoint®

## WorthPoint Insider
### April 24, 2017
Keeping you informed, connected, and involved in the antiques and collectibles industry

Rate WorthPoint!     Start Free Trial









# 1972 ORIGINAL OIL PAINTING MAN WITH RED UMBRELLA SIGNED ANNAMARIE TROMBETTA YQZ

**SOLD FOR:**

**ITEM CATEGORY:**

**SOURCE:** eBay

**SOLD DATE:** Dec 31,2015

**CHANNEL:** Online Auction

 



Welcome to EstateAuction.net! We are one of the Top Sellers of Antiques, Collectibles and Quirky items on eBay. We have been selling since 1999 and ALL of our auctions start at 99 cents. We are proud to announce that we maintain a "FIVE STAR Detailed Seller Rating" and our staff strives for 100% customer satisfaction. Our 100% feedback rating will vouch for that. We work with consignors from Coast-to-Coast and work hard to make sure we have top quality items. We are "Your Quality Zone" - search "YQZ" to see our other listings too!

★★★★★ UP IN THIS AUCTION ★★★★★ 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta New York Listed Artist - Shabby Chic Condition

DESCRIPTION: Please be patient there are 12 photos to be loaded in this auction. Up in this auction is a wonderful and delightful oil on canvas painting of a man it gives it could be a woman] with a red umbrella. This is by Annamarie Trombetta. It is signed on the bottom, but on the back it has written in cursive the signature, Annamarie Trombetta "Drawn" 1971, "Painted" 1972. To our eyes it being like it is after the style of Andre Kohn. It is quite large being approx 48 1/2" tall and 17 1/2" wide. We are calling it shabby chic condition as it has a tear in the canvas, about 5/8" long just to the left of the man's chest, but still such a great painting. For those not familiar with Trombetta, here is information about her from all AskArt as they got it from her website. Annamarie Trombetta (1963 - )

Literature: New York The nature of an artist's life, creativity and growth may be synonymously expressed in the image of an archetypal tree. Beginning with the earthly descendant roots the artist like the tree branches out into its surrounding environmental and celestial world. Both ascend and descend, widening their path of consciousness while producing visual imagery, weathering each season of change. Thus, I believe it is the nature of the artist and of nature itself to regenerate and manifest. All of the imagery in this catalog was either created on plein air or from the subject directly. My journey to becoming an artist began many years ago. The contemplative mood of my Italian family has provided me with an innate constitution for my artistic profession. When I was a tiny seed of contemplative thought, my artistic nature began to sprout interest while gazing up at the ceiling paintings in a neighborhood church named Regina Pacis, meaning Queen of Peace. The church located in Brooklyn, NY features ceiling paintings, sculptures, marble interiors, and incorporates architectural elements for the facade and the belfry that are of Italianate design. Before the age of three I was able to surmise that the church in its ceiling painting was indeed the church I was in. The visual stimulation was a form of education. It fostered my sense of perception which became my strongest mode for acquiring knowledge. As the years unfurled, my family moved to Staten Island. At this time it was a scenic field of luminosity, lush vegetation and a harbor view complete with sail boats and small yachts. A few years after we moved my tree of life saw in jeopardy of loosing a limb. What appeared to be a broken leg was indeed a condition far worse. It was an ordeal fatal or perhaps even a broad occurrence in my life. The struggle to survive the experience was lightened by my imagination and by my artistic ability to create. I seriously thought I would go into medicine but the prints and paintings in the hospital and doctors office held my attention more intensely. I began my formal training at The Brooklyn Museum School of Art while I was in high school. The exposure to various forms of art inspired me to expand my horizons and in the early teenies I traveled on a summer tour to Europe. The tour comprised of six countries; Germany, Austria, France, Italy, Switzerland and Ireland. Viewing so many different cities and cultures in a relaxed and period of time...

Case: 25-817, 07/17/2026, DktEntry: 81.1, Page 114 of 203

SA375



Plaintiff 000137

SA376



Not Plaintiff's First Name or Signature

Case 1:18-cv-00993-RA-SCC   Document 399-3   Filed 04/07/23   Page 51 of 63

N. NOVOCIN

words, the signature on the front of the painting was a garbled and it was kind of hard to read, when you turn it over, it had printed out what it was and if it were up to me, I would make it almost a law that all the artists had to print out the actual name and so forth. Because some artists pictures are so, so hard to read. So this allowed us to be able to look up Trombetta, Annamarie. This one says Maria. I didn't remember it saying Maria, but that's how I looked it up.

MR. BIALEK: Marlene, can you read back the beginning of his answer.

(Whereupon, the referred to answer was read back by the Reporter).

Q. Mr. Novocin, in your practice of dealing with antiques, have you ever encountered any ratings or stamps or labels glued to the back of the painting?

A. Yes.

Q. In your experience, is there

Case: 1:18-cv-00993-TS-SCC   Document 399-3   Filed 04/11/23   Page 52 of 63



annamarie trombetta - Google Search        Plaintiff 000052        12/19/15, 10:42 AM

Google+  Search  Images  Maps  Play  YouTube  News  Gmail  More ·        artofannemarie@gmail.com · ⚙

Google    annamarie trombetta                                    🔍

All    Images    Videos    News    Shopping    More ∨    Search tools

Page 2 of about 33,400 results (0.47 seconds)

**1972 Original Oil Painting Man With Red Umbrella Signed ...**
www.worthpoint.com › Worthopedia™ ∨
1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz.
Sold for: Start Free Trial or Sign in to see what it's worth. Item Category: ...
You've visited this page 3 times. Last visit 12/16/15

**Annamarie Trombetta | Whitepages**
www.whitepages.com/name/Annamarie-Trombetta ∨ Whitepages ·
Find Annamarie Trombetta's phone number, address and more on Whitepages, the
most trusted online directory with contact information for over 90% of US ...

**artist annamarie trombetta's imagery offers visionary ...**
italianamericanmuseum.org/news/news_plein.html ∨
Artist Annamarie Trombetta's "Central Park Imagery," a collection of en plein air works
in oils, pastels, watercolors, etchings and drawings will be on display at ...
You've visited this page 2 times. Last visit 12/11/15

**Annamarie Trombetta on Paddle8**
https://paddle8.com/artists/annamarie-trombetta/ ∨
Annamarie Trombetta Water Tower $300 Part of New York Academy of Art. You are
now following Annamarie Trombetta and will get email alerts when we add ...

**Annamarie Trombetta - Pollock Krasner Image Collection**
www.pkf-imagecollection.org/artist/Annamarie_Trombetta/biography/ ∨
Annamarie Trombetta. Contact Works. CONTACT. Annamarie Trombetta Studio: 175
East 96th Street (14P) New York, NY 10128. Phone/ Fax: 212-427-5990.
You've visited this page 2 times. Last visit 12/8/15

**annamarie trombetta - OneLook Dictionary Search**
www.onelook.com/?lang...annamarie+trombetta ∨ OneLook Dictionaries ·
We found one dictionary that includes the word annamarie trombetta: Art dictionaries
Art (1 matching dictionary). Annamarie Trombetta: Artist Search [ home, info] ·

**salem krieger on Twitter: "Painting Central, a short video ...**
https://twitter.com/salemk/status/269681283083403264 ∨
... @sslemk 16 Nov 2012. Painting Central, a short video about Annamarie Trombetta a
painter working in Central Park, NYC. http://vimeo.com/52924950 ...
You've visited this page 2 times. Last visit 12/5/15

**Annamarie Trombetta attends the Sing for Hope pop up ...**
www.gettyimages.com/.../annamarie-trombetta.../11550931... ∨ Getty Images ·
Annamarie Trombetta attends the Sing for Hope pop up pianos launch at the Sing For
Hope Piano Warehouse on June 7, 2011 in New York City. Get premium

**annamarie trombetta Pictures & Images - Photobucket**
photobucket.com/images/annamarie%20trombetta ∨
Browse Annamarie Trombetta pictures, photos, images, GIFs, and videos on
Photobucket.

**Flickr: Annamarie Trombetta**
https://www.flickr.com/people/annamarietrombettaart/
Annamarie Trombetta hasn't listed any contacts yet. Testimonials (0). Annamarie
Trombetta doesn't have any testimonials yet. Name: Annamarie Trombetta

Searches related to annamarie trombetta

artist annamarie trombetta        anna marie trombetta

annamarie trombetta facebook    judge annamarie trombetta

Plaintiff 000063                3/28/17, 3:21 PM



annamarie trombetta - Google Search

**Google**    annamarie trombetta

All    Images    News    Videos    Shopping    More ·    Search tools

artist annamarie trombetta's imagery offers visionary ...
nationalmuseum.org/news/news_plein.html
Artist Annamarie Trombetta's "Central Park Imagery," a collection of en plein air works
in oils, pastels, watercolors, etchings and drawings will be on display at ...

1972 Original Oil Painting Man With Red Umbrella Signed ...
www.worthpoint.com › Worthopedia™
1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz.
Sold for: Start Free Trial or Sign in to see what it's worth. Item Category: ...

Annamarie Trombetta | Whitepages
www.whitepages.com/name/Annamarie-Trombetta ▾  Whitepages
2 matches for Annamarie Trombetta. Find Annamarie Trombetta's phone, address,
etc. on Whitepages, the most trusted online directory."

Annamarie Trombetta on Paddle8
https://paddle8.com/artists/annamarie-trombetta/ ▾
Annamarie Trombetta. Follow. Consign Works. Consign works by Annamarie
Trombetta for auctions and private sales. Learn more ▸. Have suggestions for ...

salem krieger on Twitter: "Painting Central, a short video ...
https://twitter.com/salemk/status/269681283083403264 ▾
... @salemk 16 Nov 2012. Painting Central, a short video about Annamarie Trombetta a
painter working in Central Park, NYC.. http://vimeo.com/62824850 ...

Annamarie M Trombetta - Intelius
www.intelius.com/people/Annamarie-Trombetta/0cscfac91wf ▾
Get contact information on Annamarie M Trombetta, New York NY. Find out Annamarie
M Trombetta's age, gender, possible aliases, associates, professional , ...

Annamarie Trombetta - Pollock Krasner Image Collection
www.pkf-imagecollection.org/artist/Annamarie_Trombetta/biography/ ▾
Annamarie Trombetta. Contact Works. CONTACT. Annamarie Trombetta Studio: 175
East 90th Street (14P) New York, NY 10128. Phone/ Fax: 212-427-5990.

annamarie trombetta - OneLook Dictionary Search
www.onelook.com/?lang...annamarie+trombetta ▾  OneLook Dictionaries ·
We found one dictionary that includes the word annamarie trombetta: Art dictionaries
Art (1 matching dictionary). Annamarie Trombetta: Artist Search [ home, info] ...

Flickr: Annamarie Trombetta
https://www.flickr.com/people/annamarietrombettaart/
Following (0). Annamarie Trombetta hasn't listed any contacts yet. Testimonials ( 0).
Annamarie Trombetta doesn't have any testimonials yet. Name: Annamarie ...

annamarie trombetta Pictures & Images - Photobucket
photobucket.com/images/annamarie%20trombetta ▾

1972 original oil painting man with red umbrella signed annamarie trombetta yqz - Google Search

Plaintiff 000066

5/4/17, 8:21 AM

Google+ · Search · Images · Maps · Play · YouTube · More · Gmail · More ·

Annamarie Trombetta · Share

Go gle · 1972 original oil painting man with red umbrella signed annamarie trombetta yq

All · Shopping · Images · Videos · News · More · Search tools

## 1972 Original Oil Painting Man With Red Umbrella Signed .
www.worthpoint.com › Worthopedia™ ·
1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz. Sold for. Start Free Trial or Sign In to see what it's worth. Item Category. .

## Page 1 - Italian American Museum
italianamericanmuseum.org/exhibitions/Pleinair.htm ·
Acclaimed artist Annamarie Trombetta presents a solo exhibition that ... Ms. Trombetta has created works in printmaking, watercolor, oil and pastel and is . On view are works of art executed in oils, pastels, watercolors, etchings and drawing

## Annamarie Trombetta, Artist Interviewed by June Middleton .
https://www.youtube.com/watch?v=mEO3O3LVtns
Apr 29, 2015 · Uploaded by June Middleton
Annamarie Trombetta, an artist who's art has been exhibited around the world, has cr ... works in oil.

## Painting Central - artist Annamarie Trombetta on Vimeo
Vimeo.com › salem klinger › Videos · Various ·
Nov 6, 2012
Artist Annamarie Trombetta a NYC based painter working in Central Park. A profile of Annamarie as an artist

## Central Park's Plein Air Past | OutdoorPainter
www.outdoorpainter.com/central-parks-plein-air-past/ ·
So it's perfectly natural that plein air painting would go on in Bryce choice . "The Destructive Dance of Sandy," by Annamarie Trombetta , "Central Park Clockwork Made of Multicolored Apos," by Annamarie Trombetta, oil and mixed media

## Staten Island native's passionate love affair with Central ...
www.silive.com/entertainment/.../annamarie_trom... · Staten Island Advance ·
Jun 17, 2015 · Paintings, prints, drawings and photos by Annamarie Trombetta resident is showing 80 works -- etchings, oil paintings, watercolors, pastels ... 1972 man red umbrella yqz

## Original Oil Paintings
www.ugallery.com/Buy Original Art ·
Shop from a Large Range of Original Art. Free Shipping on all Artwork! New Art Released Weekly · Custom Packaging · Free Returns
The Showroom · Staff Favorites · New Arrivals · Most Popular Artists

## Collectible Original Art · Say No to Prints and Reproductions
www.zatista.com ·
Over 7000 Completely Original Works

## Original Paintings - Find Emerging Artists & Chic Prints
www.onekingslane.com/Paintings ·
Fabulous Sales Today! Join For Free

10 | FEBRUARY 26, 2015                     ITALIAN TRIBUNE

# 'En Plein Air' Exhibit



Annamarie Trombetta painting in Central Park

Artist Annamarie Trombetta's solo exhibition, "En Plein Air: Imagery of Central Park," is on display at the Italian American Museum, 155 Mulberry Street, New York, New York through March 1. She will host a lecture at the museum on February 28 at 7 p.m. where she will discuss her work.

"En Plein Air" encompasses a variety of works which vary in size, medium and compositional format. On view are works of art executed in oils, pastels, watercolors, etchings and drawing. The fusion of modern designs with a traditional execution is most evident in a stylistic depiction on traditional and shaped canvases. The works reveal a deep reverence and spiritual commitment to nature as they assert a serious element of a constructive, naturalistic yet traditional undertones.

The inspiration for this exhibit came when she was working at the National Academy Museum in the early 1990s. She saw a display of Italian paintings from the collection of Gaetano Marzotto which featured the works of the Macchiaioli artists who painted "En Plein Air." Through their works, Trombetta learned about Italy's "Risorigmento" and the artists' involvement that played a vital role in the country's unification and cultural development. Today, Trombetta is known for her unique compositional designs and for creating her works "en plein air."

For more information, visit www.trombettaart.com.

**JACKSON HEWITT®**
TAX SERVICE

*Working Hard for the Hardest Working*
**Vito Conenna, Manager**

**Staten Island Mall**
(Inside Sears, Second Floor)
283 Platinum Avenue
Staten Island, New York 10314
**718-701-2037**

**Main Office: St. George**
(Open year round next to South Ferry and Staten Isalnd Yankees)
36 Richmond Terrace
Staten Island, New York 10301
**718-273-9770**

Most offices are independently owned and operated

**SA382**



NEWS  PODCAST  INTERVIEWS  MAGAZINE  BOOKS  COLUMBUS  TEAM  EVENTS

HOME > SPORT & ENTERTAINMENT

## Artemisia: Lecture and Film Screening



Feb 25, 2015     924

You are cordially invited to attend a lecture by acclaimed artist Annamarie Trombetta celebrating the life and influence of noteworthy female artists and a screening of the 1997 French biographical film, Artemisia at the Italian American Museum this Saturday, February 26th.

Artemisia Gentileschi, daughter of Orazio Gentileschi, was a Baroque-period painter known for such works as "Madonna and Child," "Susanna and the Elders" and "Judith Slaying Holofernes." She was the first female in Art History to be reminiscence of her work and the first female member of the Academy in Florence.

About the Film: A widely acclaimed critical favorite honored with a Golden Globe nomination as Best Foreign Language Film, Artemisia is the highly provocative true story of a young woman whose bold pursuit of artistic freedom and physical desire threatened the elite powers of her time. Artemisia Gentileschi, the beautiful and talented daughter of one of Italy's greatest painters, is forbidden to fully pursue her own passion for painting. She later finds artistic liberation when she convinces a renowned and unconventional artist to tutor her.

Saturday, February 26th, 2:00PM - Italian American Museum - 155 Mulberry Street [Corner of Grand and Mulberry Streets] - New York, NY 10013

Suggested donation of $10 per person

RSVP Code: Artemisia0226

For reservations, please call the Italian American Museum at 212-965-9000

or Email: ItalianAmericanMuseum@gmail.com

### PARTNERS

DUAL CITIZENSHIP SERVICES

### ADVANCED SEARCH

From Italy

USA

SEARCH



THE STORE

### AREAS

NEW ENGLAND

NEW YORK

EAST



**THE FLORENTINE**

NEWS  THINGS TO DO  COMMUNITY  ART + CULTURE  FOOD + WINE  SHOP  CLASSIFIEDS

THINGS TO DO

# Artiste Italiane: Italian American Museum exhibition in New York

In Manhattan's "Little Italy", the Italian American Museum's exhibit, Artiste Italiane, coincides with International Women's Day and Women's History Month.

by **Cristina La Porta**    Share    Bookmark

Thu 20 Apr 2017 2:30 PM    ——— April 20, 2014

March 2017 marked the first exhibit of Italian-American women artists at the Italian American Museum in New York City founded as well as directed by Dr. J. Scelsa. Not all of these artists, however, were born in the United States. Some are natives from various regions of Italy; they came to the United States early in their careers in order to forge a new life, creating art that reflects cross-pollinations by way of immigration.

Located in the historic community of Manhattan's "Little Italy", the Italian American Museum's exhibit, *Artiste Italiane*, coincides with two important events: International Women's Day and Women's History Month, a yearly celebration in the United States. At the end of April, the museum will invite guests to hear poetry by the exhibiting artists, thereby connecting this exhibit to yet another important national cultural event, National Poetry Month.

The Italian American Museum was once La Banca Stabile, a bank designed to assist Italian immigrants for various services other than banking, such as employment, translation or help with travel. This small, unpretentious exhibit featuring 13 artists, known nationally and internationally, is in truth a significant historical occasion for the Italian community to gather, pause and reflect on what Italian heritage and immigration means to current-day Italian-Americans. Moreover, this show, however small in scale, is indeed a platform for the too often neglected voices of Italian-American women, their intimate connections with their current environment and their multifaceted Italian cultural and artistic heritage. Some of these artists are long-standing members of the National Organization of Italian American Women, founded in 1980 by Aileen R. Sirey and Geraldine Ferraro. The artists who are members of NOIAW are Barbara Gerard, B. Amore, Nancy Macina, Annamarie Trombetta and Janine Coyne.



TITANIC

Embark on an emotional journey to the past and unravel the story behind the Titanic

BUY TICKETS

## Titanic: The Exhibition

Walk through a recreation of the ship's interior, from first class to a third class cabin

NEWSLETTER

Stay up-to-date. The Florentine sends out a free weekly newsletter.

Sign Up

**LATEST**

Case: 1:18-cv-00993-RA-SC Document 394-3 Filed 04/07/23 Page 585 of 663

LATEST

The Festival of Song by the
International School of
Florence

International Holocaust
Remembrance Day 2023

4 cooking classes to try in
Florence

Restaurant to open in the
Uffizi's former royal post office
building

Concerns surround the future
of Thursday's flower market

Working in a plethora of mediums such as photography, graphic design, sculpture, collage and painting, the artists' works offer the viewer a rich visual experience of artistic confluences. Janine Coyne, of Sicilian heritage, is a curator at the Italian American Museum along with artist Antonio Petracca. A photographer and photojournalist, Coyne's photograph *Sassi di Matera*, taken from a high vantage point and aided by a natural diminishment of sunlight created by an azure sky strewn with enormous billowing white clouds, provides the onlooker with an aerial view of rooftops and prehistoric stone dwellings. Once abandoned in the Fifties and now revived through UNESCO and tourism, Coyne's snapshot of these ancient abodes becomes an ode to renewal and preservation of the fragile yet imperious past.

Native New Yorker **Annamaria Trombetta**, in a unique canvas, *The Patterns Within Create The Overall Shape of Our Lives*, shaped in a triangle with its apex pointing downward, a metaphor of the woman's womb, recreates in minute detail a specific location in New York City's historical landmark, Central Park. In her work, Trombetta depicts within this V-shaped canvas a bridge, beneath which an underpass where a narrow cement pathway draws the viewer to focus, to search for what lies beyond. With her canvas, along with this underpass, the artist creates, within the viewer, the feeling of passing through a mental portal as if in a daydream. Crowning the expertly rendered nineteenth-century stone bridge are verdant treetops. Currently a strictly *plein air* painter and equally adept at figurative painting and still lifes, Trombetta is influenced by the nature scenes of the Hudson River School painters and the French Impressionists. She is, however, more drawn to her Italian artistic heritage, the Macchiaioli painters of the Risorgimento period. Trombetta transforms their large swooping swatches of color, the *macchia*, into remarkable chromatically controlled feminine views of nature.



*Annamarie Trombetta, "The Patterns Within Create The Overall Shape Of Our Life"*

Her work also underscores influences that are not directly apparent to us. In an interview for this article, Trombetta stated that her V-shaped canvas was inspired by the American architect Buckminster Fuller's Geodesic Domes, which have been used as civic buildings, exhibition attractions and parts of military stations. Fuller was the grandnephew of another of Trombetta's inspirational figures, Margaret Fuller, the premier U.S. woman's activist, whose connection and admiration for Giuseppe Mazzini's efforts during Italy's unification trigger this artist's imagination and deep connection to her heritage's political past, as well as her commitment to gender issues in art. Trombetta's work has been exhibited in museums and galleries both nationally and internationally and her work has appeared in numerous magazines. Trombetta will be teaching *plein air* painting at Villa Nobile in Tuscany in summer 2017.

Louise Fili, an American-born graphic designer and owner of her own design firm, showcases her artistry in this exhibit through Art Deco-inspired typography in her digital designs of book jackets for Rizzoli International's reproduction of novels by Edmondo De Amicis (*Cuore*) and Federico De Roberto (*Vicerè*). These two authors of the later part of the Risorgimento period were concerned with class struggles during the long strife of Italy's unification, marking the beginning of Fascism. Fili's predilection for Art Deco typography and design is also evident in her digital display of her 19 Thirties-inspired Italian pencil boxes, *Perfetto Pencils*.

Michela Martello was born in Grosseto and has been working for many years in the U.S. as a children's book illustrator. With a current major solo show at the Pen & Brush gallery in NYC, Martello's *DNA Island* is a mixed media work on cotton canvas depicting a mandala-like circle. Colored in certain areas in bright pink and with letters also in bright pink forming the word Manhattan, the pink Tibetan-inspired mandala becomes a whimsical, child-like wheel of fortune. Around the wheel are small fairytale figures dressed in various forms of bright-colored folk dress.

B. Amore's *Worker's Mandala* is a large wall relief comprises a large drawing, a map of the United States. Upon it are little red dots indicating where some Mexican migrant workers worked across the United States before arriving at their final destination: the dairy farms of Vermont, which is the state where Amore now lives. Around the map, Amore glues workers' gloves and in between them she places fake red roses. At the bottom left is a small crucifix with depictions of the Virgin Mary and several saints. Amore's work is especially poignant in this current anti-immigration political culture, while she describes her work as representing the "ties that bind us."

Among her myriad accomplishments, **Maria Cocchiarelli**, former curator of collections at the Italian American Museum, opened the Museum of Friends in Walsenburg, Colorado. Born in Brooklyn, New York, Cocchiarelli dedicated her current work to earth's emanations of light. In her works, *Light Box 13* and *Light Box14*, inkjet transparencies with plexiglass, Cocchiarelli explores light's frequencies coupled with water and wind energies that resemble mysterious apparitions.

Similar in style to Cocchiarelli's inkjet series, Italian-born **Assunta Sera**, in her oil painting *A Vaulted Glass*, creates an abstracted vision of architectural structures alluding to a mystical cosmic vision through an aerial perspective in muted gray and green. Her color treatment of these abstracted structures are almost Morandi-like in quality.

Martina Secondo Rosso, a native of Genoa, Italy, and owner of MF gallery finds her inspiration through Italian film and pin-up shots of glamorous Italian movie stars of the Fifties and Seventies. In her painting, *Gina Lollobrigida A Fiascherino*, the depiction of Lollobrigida is foreshortened at the right corner of the painting, creating the illusion that the actress's beauty is larger than life. Lollobrigida reigns over the beautiful seascape of Fiascherino, where Russo spent her childhood days playing and creating necklaces from seashells.



Another artist who pays homage to women's physical beauty is **Daniela Day**, the manager of the Italian American Museum. Her *Goddesses of Good Housekeeping* is a collage inspired by 1950s advertisements of the *Better Houses and Gardens* magazine glorifying the perfect and happy American homemaker. At the center of the collage is a reclining woman represented as the Empress of the tarot cards. Radiating from the top of her head are rays of tape measure pointing to other depictions of woman's work: sewing and home economics. Day places, at the bottom of her work, numbered cards from a vintage *tombola* owned by her Italian grandparents, honoring the memory of her relations and the game exported from Italy to the United States.

*Artiste Italiane* is a thought-provoking show exemplifying how these artists use their Italian cultural roots and gender to shape and transform their art and heritage into an enduring legacy.



*Artiste Italiane* is a thought-provoking show exemplifying how these artists use their Italian cultural roots and gender to shape and transform their art and heritage into an enduring legacy.



*Artiste Italiane*

*Italian American Museum*

*155 Mulberry St, New York*

*Until April 30, 2017*

*www.italianamericanmuseum.org*

## The author



**Cristina La Porta**

Cristina La Porta holds a Ph.D. in Comparative Literature from Columbia University. A former college professor of Literature and Italian Studies, she is currently a freelance art writer, editor, translator and lecturer. Her articles can be found in Fine Arts Connoisseur, American Arts Quarterly and VIA (Voices of Italian Americana, online magazine). She was a recipient of a PSC-CUNY grant for her interdisciplinary work on Antonin Artaud and Maria Izquierdo. A travelling grant from the American Academy in Rome resulted in an article, The Matchstick: Personal Topographies and Nationalism, published in La Rivista di Studi Italiani.

## Related articles

  

*Motion To Dismiss* EXHIBIT C

Fulton County Superior Court
***EFILED***LW
Date: 6/14/2022 4:01 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
#### SUMMONS

WORTHPOINT CORP., SHARI SEIPPEL,

AND WILLIAM SEIPPEL
_____
Plaintiff,

vs.

ANNAMARIE TROMBETTA
_____
Defendant

) Case
) No.:        2022CV366175
)
)
)
)
)
)
)
)
)
)
)
)
)
) .

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon plaintiff's attorney, whose name and address is:

Mary Trachian-Bradley (mtrachian@briskinlaw.com)
BRISKIN, CROSS & SANFORD, LLC
33 S. Main Street, Suite 300, Alpharetta, GA 30009

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____6/14/2022_____ day of _____, 20____

Honoreble Cathelene "Tina" Robinson
Clerk of Superior Court
By_____
Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20____

_____
Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

No Date or Signature Empty

Plaintiff's Evidence 000478

10.

Trombetta was directed to file her purported Amended Complaint by January 17, 2020. On that date Trombetta filed a pleading entitled "Proposed Amended Complaint."

11.

Trombetta then untimely filed a pleading entitled the "Operative Amended Complaint" on February 21, 2020.

12.

Trombetta's Amended Complaint alleged claims against WorthPoint, worthpoint.com, WSeippel, and Jason Packer, a WorthPoint employee.

13.

On March 19, 2020, Trombetta was ordered to effect service of the Amended Complaint on WorthPoint and WSeippel. Ms. Trombetta failed to properly effect service.

14.

On April 6, 2020, Trombetta was again ordered to effect service of the Amended Complaint on WorthPoint and WSeippel no later than May 21, 2020. Ms. Trombetta failed to properly effect service.

15.

Approximately one (1) full year after filing the Amended Complaint, Trombetta arranged service of process on WorthPoint and WSeippel. On Jan 1, 2020, service was delivered via certified mail to WorthPoint. On January 4, 2020, service was delivered via Certified Mail to WSeippel and SSeippel's home residence.

**SA390**

```
                          UNITED STATES DISTRICT COURT
                          SOUTHERN DISTRICT OF NEW YORK

In re:                                    :
                                              Docket #18cv993
TROMBETTA,                                : 1:18-cv-00993-RA-SLC

                          Plaintiff,      :

   - against -                            :

NOVOCIN, et al.,                          : New York, New York
                                            November 23, 2022
                          Defendants.      :

------------------------------------- : REMOTE CONFERENCE

                          PROCEEDINGS BEFORE
                   THE HONORABLE SARAH L. CAVE,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:           ANNAMARIE TROMBETTA, PRO SE
                         175 East 96th Street, Apartment 12R
                         New York, New York 10128

For Defendant –          WILSON ELSER MOSKOWITZ EDELMAN &
WorthPoint Corporation:  DICKER, LLP
                         BY:  ADAM BIALEK, ESQ.
                              NICOLE HAIMSON, ESQ.
                         150 East 42nd Street
                         New York, New York 10017




Transcription Service:   Carole Ludwig, Transcription Services
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

Case 1:18-cv-09993-AS-SLC   Document 399-4   Filed 04/17/23   Page 22 of 68

APPEARANCES (CONTINUED):

For Defendants - Estate       DUFF LAW PLLC
Auctions, Inc. and Novocin:   BY:  ANDERSON DUFF, ESQ.
                              43-10 Crescent Street, Suite 1217
                              Long Island City, New York 11101

Case 1:18-cv-00993-RA-SLC Document 394 Filed 04/07/23 Page 33 of 68

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

SA393

4

HONORABLE SARAH L. CAVE (THE COURT): Good morning, this is Magistrate Judge Cave, we're here for a conference in Trombetta versus Novocin --

MS. ANNAMARIE TROMBETTA (THE PLAINTIFF): Good morning.

THE COURT: (continuing) -- case number 18cv993. Good morning, Ms. Trombetta?

THE PLAINTIFF: Yes, good morning.

THE COURT: All right, good morning. And for defendants, let's start with the Novocin.

MR. ANDERSON DUFF: Your Honor, this is Anderson Duff appearing on behalf of defendants Estate Auctions and Norb and Marie Novocin, thank you.

THE COURT: Great, good morning. And for WorthPoint?

MS. NICOLE HAIMSON: Nicole Haimson with my colleague, Adam Bialek from Wilson Elser on behalf of WorthPoint Corporation.

THE COURT: Okay, good morning, and apologies for the delay, my prior conference was trying to fit a lot in before the holiday so I had a lot of issues with the other parties so thank you all for being flexible about the time that we're getting started today.

SA394

5

Okay, so, you know, I have a few letters from the parties and I've been trying very hard to sort of discern what remains. I did get a couple of additional letters from the parties last night and so it seems to me, Ms. Trombetta, that one of the big issues that you were focused on in terms of the productions from the defendants was the complete sales receipt from the eBay auction of the 1972 original oil painting. It seemed like from Mr. Bialek's letter that that complete receipt has now been provided to you, is that the case, Ms. Trombetta?

THE PLAINTIFF: It has, I did state that in the November 16th letter that you had requested of me, however, I think it's important as I put in my letter on Monday that the original message or the wrong message, which is the coding for that email, be produced and the reason for my request is that usually with all eBay receipts there is an icon of a square, it almost looks like an old fashioned slide, and the receipts from 2012 from EAI or eBay is absent of that particular icon.

THE COURT: Okay, so --

THE PLAINTIFF: So why reason for the raw data or the original email, which will have the content in

SA395

Case: 18-cv-09936-SC Document 399-4 Filed 04/27/23 Page 66 of 68

6

that receipt as well as the coding for it, and it will just validate that the receipt transference was done. I have --

THE COURT: What you have now is just like a PDF version of that receipt?

THE PLAINTIFF: That is correct, Your Honor -- (interposing) --

THE COURT: Hold on, everybody will have a chance to talk, please wait until I call on you. Go ahead, Ms. Trombetta.

THE PLAINTIFF: Yeah, thank you. So the defendants, WorthPoint, in particular, requested of me several of those type of printouts. So not only did I print out the PDF, you know, the content, text content, but I also printed out the raw message or the original message which gives you all the text within the tracking and the coding of that email.

THE COURT: Okay, are you concerned about, that the PDF is somehow not authentic?

THE PLAINTIFF: The production of the original message will validate and verify that conclusively. I am just, I just noticed that in all of my eBay documents there's the icon of the gray square where the image should be and it usually says, you know,

SA396

Case 1:18-cv-00993-RA-SLC Document 392-4 Filed 04/07/23 Page 7 of 68

7

click on to view image.  But I did not see that in the PDF.  And, again, since that was asked of me and I understand why, then I just would like --

THE COURT:  There's no dispute that the eBay sale took place, right, that's not disputed?

THE PLAINTIFF:  Again, the verification of the original or the raw coding and email will conclusively validate that.  All I can tell you with most certainty is that I did not paint this image, I have produced my signature --

THE COURT:  I know.

THE PLAINTIFF:  And I've also cooperated to an extended amount. I had nothing to do with this.

THE COURT:  I know, and that goes to the merits of this case, so let me hear from --

MS. HAIMSON:  Your Honor, may I clarify quick, (indiscernible) was requested in terms of the actual email. So I think plaintiff just explained to the Court that counsel for WorthPoint had requested printouts of emails and that she was seeking basically the equivalent. That's actually inaccurate, what we have requested was essentially the native electronic format of that email which was exactly what we just sent her.  We sent her the native electronic format of

Case 1:18-cv-09993-AS-SLC Document 394 Filed 04/07/23 Page 38 of 68

8

that sales receipt. So she has exactly what we are requesting from her and I don't know what she's talking about when she's saying coding, but we have given her the native electronic format of that email. So I don't think there's really anything else to give.

THE COURT: Okay. All right, so, Ms. Trombetta, do you have -- Mr. Duff?

MR. DUFF: Yes, Your Honor, I just wanted to address this very briefly since this was our production, my client's production. The email that she's talking about, we originally produced in April, April 26th, and it was converted into a PDF and stamped. During the deposition of my clients, WorthPoint's counsel correctly pointed out that there were a few digits that were cut off when it was converted to a PDF on the right-hand side. So while the deposition was happening, I forwarded the raw email, the .eml file, which contains all the metadata, is unstamped, has everything that Ms. Trombetta could want, that was on September 21st. So she's had it since September 21st and she's continued to file these letters with the Court saying that she doesn't have it. And I know that everybody got the email because Adam Bialek recently, as counsel just stated,

Case 1:18-cv-00993-RA-SLC Document 394 Filed 04/17/23 Page 9 of 68

9

recirculated that file. Ms. Trombetta's had this since the raw file, since September 21st, and just to address Ms. Trombetta's concerns I went ahead and reproduced it, restamped it as a PDF that does not cut off an of the information on the right-hand side.  So Ms. Trombetta's had this since April.

THE COURT:  Okay. All right, Ms. Trombetta, do you now have the emails?

THE PLAINTIFF:  In my letter that I wrote yesterday or maybe the day before, I gave and produced -- no, it was yesterday, examples of what it was that I was looking for.  And I had also stated that in the email that was sent from Adam Bialek, when I clicked onto the attachment, the attachment activated my mailbox on the computer, and a drop down menu came up where you have to select either Gmail, Yahoo, whatever. I don't have that system operating. If Mr. Duff sends me the coding of the PDF I would appreciate it if he'd send it to the outlook.com. I cannot open what it is that he, that Mr. Bialek sent.

Now I have been asking repeatedly for the full uncut version of the PDF on numerous occasions --

THE COURT:  He said he sent it to you on September 21st, Ms. Trombetta.

SA399

10

THE PLAINTIFF: Yes, but on October 31st I sent Mr., well I put this in my letter, on the 29th I sent, which was a Saturday, I sent a sample of the April version of the PDF which was slightly truncated. Then I also sent the deposition pages 74 to 79 of my Mr. Novocin which states that he keeps all his emails. Another thing that I'm requesting is the transaction of the payment. Third, any type of receipt from the buyer which is still missing. This is just basic --

THE COURT: Okay, well it seems to me, Ms. Trombetta, that the defendants have produced to you in several different formats a copy of the receipt that you're asking for and I'm not going to require them to produce anything --

THE PLAINTIFF: Your Honor, I have to disagree. They produced in April the cut, truncated PDF, it's just the printout of the email --

THE COURT: And then he --

THE PLAINTIFF: What I'm requesting physically is the, I have received the full PDF but not the original and raw message of that particular email.

THE COURT: He just said --

THE PLAINTIFF: Secondly, there is no --

THE COURT: Ms. Trombetta, you have to listen

SA400

11

to me.  He sent it on September 21st.

THE PLAINTIFF:  That's what they are saying and I'm telling you that the email that they sent the other day I could not open it. I will send it to another person, I plan on doing that over the weekend, to see if they can open it, but I, personally, cannot open it.

THE COURT:  Okay --

THE PLAINTIFF:  They can actually print out all the data, that entire raw message, and scan it and send it to me.

MR. BIALEK:  Your Honor, if I can, this is Adam Bialek, I just want, I just want to say I sent I to two different email addresses for Ms. Trombetta, I sent it to the annatrombettalegal@outlook.com and then I also sent it to atrombettaart@gmail.com.  So it would have gone to two different servers.

THE COURT:  And that was attaching the native document, correct?

MR. BIALEK:  That attached the email that I had gotten from Mr. Duff which was, it looks like a January 10, 2017, mail form eBay@novocin.com to Norb Novocin and Marie Novocin that it forwards the December 1, 2012, at 9:54 p.m. email from eBay at

                                                          12

eBay.com to eBay@novocin.com, and that has, that's the original email that they have which has all of the sales price and the buyer's name, buyer's shipping address, et cetera.

THE PLAINTIFF: The buyer has not produced any receipts of the transaction of payment, nor have they indicated was it paid by check, PayPal, cash, credit card, that hasn't been produced nor the sales receipt. There's only one document that's been produced and, again, I am asking you, Judge Cave, to have the defendants print out the data and send it to me that way.

THE COURT: What data?

THE PLAINTIFF: That's what I did in my --

THE COURT: Ms. Trombetta --

THE PLAINTIFF: (continuing) -- responses, I printed out, I was requested to print out the February 20, 2016, email. I printed out the text, the actual email, then I went to the raw message and print out most of the coding. And then after the October 28th meet and confer I figured out a way to export the raw message into a PDF file and I forwarded that to both defendants as requested. I'm just asking for the same type of consideration as I am extending to the

**SA402**

Case 1:18-cv-00993-RA-SLC Document 394 Filed 12/07/23 Page 106 of 168

13

defendants.

THE COURT: Is that your exhibit 4 to your letter yesterday, is that the type of raw data that you're talking about?

THE PLAINTIFF: Correct, thank you, Your Honor, that's precisely what it is that I'm looking for. I printed out an example of the hard copy which is basically any time you open up an email you get the text or the, you know, the look of the email.

THE COURT: Why do you need the data for this email?

THE PLAINTIFF: As stated earlier, first and foremost there should be on the PDF an icon of the image in gray where it's highlighted on blue and it says click onto the image. It doesn't have that. Secondly, it's as requested of me as proof this is another verification that the sale took place. The whole case is hinged upon the importance of the proof of the sale because that's how WorthPoint became involved.

THE COURT: All right, stop talking for a minute please so I can ask the defendants a question. Ms. Haimson or, well actually let me ask Mr. Duff because I think this is your email --

**SA403**

14

MR. DUFF:  Yes, Your Honor.

THE COURT:  Are you able to ascertain the data for the email comparable to what appears in exhibit 4 to Ms. Trombetta's letter yesterday?

MR. DUFF:  Your Honor, just to be frank, I have no idea what she means when she says raw data. To the extent she is talking about the email headers which is what you can derive from the raw file which she's had, again, since September 21st, I'm happy to I guess convert to a PDF the email headers which she could do and has been able to do since September. But I'm happy to do that and circulate it.  I just want to quickly address the --

THE COURT:  I think it's something different, Mr. Duff, to be candid, I think -- I think what she's talking about is the metadata for the email and I realize that as a layperson, and I don't know the first thing about this either, but do you have someone in your office who could extract the metadata for the email and then produce it basically like in a PDF?

MR. DUFF:  Your Honor, I'm not, I guess I'm not sure what that, what that means, but to the extent that I can I'm happy to do that. I mean we sent her the raw file that contains all of that --

Case 1:18-cr-00993-RA   Document 394   Filed 12/07/23   Page 15 of 68

15

THE COURT:  I know.

MR. DUFF:  So if she knows how to do it, she should be able to do it.

THE COURT:  She's not able to open the raw email --

MR. DUFF:  Well, Your Honor --

THE COURT:  Go ahead.

MR. DUFF:  I'm sorry, Your Honor, go ahead.

THE COURT:  It's all right, go ahead.

MR. DUFF:  Well with respect, she did say that when she tried to open the raw file the mail program started opening, well that's how you open the file, that indicates that she can open the file because it is a mail app file. So if the mail app started opening she can open the file.  But because, just that she doesn't know how to do it doesn't mean she can't.

THE COURT:  Right.

MR. DUFF:  But to the extent that she will, if she can explain to me the steps I need to take to turn a PDF, give her a PDF that will resolve this issue for her, I'm happy to do that, even --

THE COURT:  What I'd like you to do, so, obviously there is going to be, all I'm, the reason to make a big deal about this is this is obviously a

**SA405**

16

seminal document in this case and the authenticity of the sales receipt is going to be something that, you know, maybe you're going to be able to agree, but maybe not. And so the authenticity of the document is important.

MR. DUFF: Sure.

THE COURT: And what I'm interpreting Ms. Trombetta to be saying is she wants to confirm that the PDF and the raw email that was sent to her are, in fact, the actual authentic documents. And so if you look at exhibit 4 to her letter yesterday, which is ECF number 317, it's a bunch of garbled characters that make no sense to me but I am sure to an IT person they'll say, yes, this is the metadata for an email. And so --

MR. DUFF: Your Honor, this is the -- and I'm sorry. I'm sorry, go ahead, I did not mean to interrupt.

THE COURT: Sorry, what I'm just trying to get at is that for the raw email that you provided to her, to extract the metadata for that email and produce that to her as a, like a PDF similar to exhibit 4 to her letter --

MR. DUFF: Yes. So, Your Honor, I'm looking

SA406

17

at exhibit 4 right now, that is -- that is the email headers, that's what I was talking about earlier.

THE COURT:  Okay.

MR. DUFF:  So that I know how to produce, I'm happy to do that, I can do that from the (indiscernible) EML file that we've already given her, I can do that immediately after this conference and I will do that and then hopefully we can put that to bed.

I would like to address one more point that Ms. Trombetta (indiscernible), plaintiff said that we have not produced documents, the sales receipts that the buyer has.  Well why would, we don't have documents that the buyer has and we can't produce things, we told her many, many times that we cannot produce documents that either do not exist or that are not within our possession, custody or control, those documents are not within our possession, custody and control, and we would have been able to explain that to her, at least try to explain that, had Ms. Trombetta met and conferred with us which she has consistently refused to do. In fact, last Thursday WorthPoint's counsel asked Ms. Trombetta if she would meet and confer with us on Monday of this week to try

SA407

18

to resolve some of these issues so that we wouldn't be wasting so much of the Court's time. Well, Ms. Trombetta responded and said that she couldn't possibly meet any time on Monday but then Monday morning she filed a two page, single spaced letter with the Court, so obviously she had time, she just wasn't willing to meet and confer. And that's just the most recent and one example, one tiny example of the continued bad faith with which Ms. Trombetta is proceeding in this case. And that's all I have to say about that, but I'll happy produce a PDF of the email header for this crucial email. Thank you.

THE COURT: Thank you, okay.

MR. BIALEK: Your Honor, if I may --

THE COURT: Let me just say I read all of your letters. I understand that there is a depth of loathing between the parties here that is almost immeasurable, and I understand that the parties are equally frustrated with where we are in the case. All I care about is getting you to the end of discovery. I'm not, I don't care about who shot John, I don't care about who behaved worse, if and when there is an appropriate time for the defendants' attorneys to be seeking sanctions or (indiscernible), we will address

**SA408**

Case 1:18-cv-00099-SLC Document 392-4 Filed 12/07/23 Page 109 of 368

19

that. In the meantime, it's not necessary and it is a waste of my time for the parties to be belying each other in writing and letters to me and during conferences with the Court. Today we are talking about what, if there are any remaining categories of documents that either party thinks the other party has and needs to be produced, that's what we're talking about today.

So, Ms. --

MR. DUFF: My apologies, Your Honor, thank you.

THE COURT: It's not necessary to apologize, I just needed to level set the conversation.

MR. BIALEK: Your Honor, may I --

THE COURT: Go ahead.

MR. BIALEK: Sorry. I just wanted to say that I just am sending over to everybody the header information or the source information that was pulled from the email. But to avoid having to come back for another conference, I just want to point out the email that Mr. Duff had sent to us was actually forwarding the original email. So the email that he sent was from 2017 and it came from the Novocin's eBay@novocin.com, they had kind of forwarded the email that

**SA409**

20

eBay@eBay.com had sent to them.

So while I just forwarded the source information that she's looking, that Ms. Trombetta is looking for, it's not going to have the source information from that December 1, 2012, email, it would only have it from 2017. So I just want to make sure that everybody is aware of that so we don't have to have another fight over it.

THE COURT:  Okay.  All right, thank you for that clarification. All right, so one way or another, Ms. Trombetta, whether it's from Mr. Bialek momentarily, or from Mr. Duff after this call, you are going to get the information about the eBay sales receipt email that we were just discussing.

THE PLAINTIFF:  Okay, Your Honor, if I may just say three things.  First and foremost, my letter on Monday was filed on Friday evening. Any letters that I wrote that were filed yesterday were written over the weekend. I did, as stated, had appointments, it's a holiday week, I had a lot of things to do.

That said, I will go to my Gmail account and if you go, if the email was sent from Gmail you go to the arrow, there's a circle with three dots and it says reply, forward, filter message, you click on show

Case 1:18-cv-00993-RA-SLC Document 394 Filed 12/07/23 Page 21 of 68

21

original and when you click on that what you get is message ID created at, which gives you the date, from/to/subject.  Underneath that you get the text of the email and all the coding that goes with it depending on how long the email is.

If it's a Yahoo account, then you go to the email, you go to more, you drop down the window and it says raw message. Now when WorthPoint asked me for the metadata, I didn't know how to produce it. But then I went to file, drop down window export PDF, and lo' and behold, it did it, it brought it to my desktop. This is what I put in my filing yesterday. Again, it's a printout of the original email which is what I have from Estate Auctions Inc. in full.

Again, in the spring of April it was truncated, on September 21st it was brought to the Novocins' attention, if Mr. Duff did, in fact, include the original or the raw message, it depends on the email platform.  Each email platform, Gmail, Outlook, they all have a different system but they all are consistent with being able to reveal and either print out or export to a desktop the original message with the coding and the text of the message.  Thank you.

THE COURT:  Okay.  Are there any other

**SA411**

22

categories of documents, Ms. Trombetta, that you have requested and you think the defendants have not produced that we need to discuss today?

THE PLAINTIFF: Thank you, yes, it is not the receipt from the buyer that I'm seeking, and I'm trying not to mention her name. But when something is purchased there's a transaction. I'm asking for how the buyer paid for, there had to have been some kind of transaction, either a check or PayPal or cash that occurred either electronically or by mail. This is the second thing that I'm seeking, the transaction, the monetary transaction proof.

The third is --

THE COURT: Let's just stop --

THE PLAINTIFF: When I purchase something at the supermarket --

THE COURT: Please, Ms. Trombetta -- Ms. Trombetta, when I talk you need to stop talking. Let's talk about that one first. But the transaction took place on eBay, right?

THE PLAINTIFF: I don't know. When I bought something off of eBay I used PayPal in order to pay for that.

THE COURT: Okay, so eBay knows the answer to

Case 1:18-cv-00993-RA-SLC   Document 394   Filed 04/07/23   Page 206 of 368

23

that question, right?

THE PLAINTIFF:  I have contacted eBay but since they received the funds, they meaning Estate Auctions Inc., since they received the funds they should have a document of payment of how the monetary transaction took place.  I know I do when I --

THE COURT:  Let me ask Mr. Duff.  Mr. Duff, do you have any information about how EAI received the payment for the painting?

MR. DUFF:  Your Honor, not at this moment, we were not aware until plaintiff's recently filing that she was so concerned with that.

THE COURT:  Okay.

MR. DUFF:  We also think that it's irrelevant to the claims in this proceeding. We will stipulate that my clients received payment. There's no dispute about whether my clients received payment --

THE COURT:  I know.

MR. DUFF:  (continuing) -- for this.

THE COURT:  All right, so --

THE PLAINTIFF:  There's no proof.

THE COURT:  (continuing) -- Ms. Trombetta, will you accept that there's no dispute that the sale took place and that EAI and the Novocins received

SA413

24

payment for the painting.

THE PLAINTIFF: I -- I am requesting proof of how the payment transacted.

THE COURT: Why does it matter?

THE PLAINTIFF: Because, again, the whole purpose for WorthPoint advertising this painting was to broadcast the sale and the sales record. That supposedly is WorthPoint's --

THE COURT: Right, they're not disputing that the sale took place. So why does it matter what form --

THE PLAINTIFF: I'm disputing, absent the verification of proof, whether this sale actually took place in 2012. And a receipt for the painting is not a tall ask. I have produced 700, over 750 documents in proof to answer the most expanded extraneous questions, and I fulfilled every request. Again, the backbone of this case is for the sale of a painting that I did not do that was attributed to me. So to ask for a receipt of the monetary transaction of how the buyer bought the painting, I really think this is not only significant but a vital component to the records --

THE COURT: Mr. Duff do you --

SA414

25

THE PLAINTIFF:  (continuing) -- have one piece of evidence that they've produced. And, again, it hasn't been verified through the raw or original message.  Thank you, Your Honor.

THE COURT:  All right, Mr. Duff, do you have a way to check and see how EAI received payment for the sale, would there be something between eBay and EAI that would show this or something in EAI's bank account from 2012?

MR. DUFF:  Your Honor, again, we would object to the production of this material but I'm happy to talk to my clients and if there, if they do have a document and, again, this is going back, I mean almost a decade I think, if my clients do have some kind of additional receipt, we'd be happy to produce it to the extent that it doesn't, you know, we'd want to redact confidential information. But I'll ask my clients, I don't know that they do. The reason that the email was forwarded to my client from an old account is that my client was losing access to the account that all these emails had originally been sent to and he was forwarding them to himself to preserve them. So I don't know that they actually even have access to this information anymore because of the length of time that

**SA415**

Case 1:18-cv-00993-RA-SLC   Document 394   Filed 12/07/23   Page 266 of 368

26

has elapsed, but I'm happy to ask.

THE COURT:  I understand and there may be, I'm not on eBay, I don't know what your account looks like at eBay, but there may be some account history or something that may show --

MR. DUFF:  Sure.

THE COURT:  You know, I don't remember the price of the painting, but that dollar amount coming in.

MR. DUFF:  It's $181.50, I think. And I will talk to my clients, if we have that, if my clients have that, but I guess we're happy to produce it if it means we will not hear about this issue again.

THE COURT:  Okay. All right, thank you.  All right, Ms. Trombetta, what else?

THE PLAINTIFF:  I, for EAI let me just -- I wanted, I was requesting the WorthPoint membership. So during the deposition Norb Novocin on September 21st stated that he was a member of WorthPoint and I requested the years and the written proof of membership.

THE COURT:  Okay.

MR. DUFF:  Your Honor, she --

THE COURT:  Okay, sorry.

Case 1:18-cv-00993-RA-SLC  Document 394  Filed 12/07/23  Page 27 of 68

27

THE PLAINTIFF:  Yeah, that was actually in February of 2020, request number 25 was all and any memberships between EAI and WorthPoint, that was never granted.

THE COURT:  Okay, let me Duff respond.

THE PLAINTIFF:  Thank you.

THE COURT:  Mr. Duff?

MR. DUFF:  Your Honor, I believe that those were, that information's requested in an interrogatory to which we have responded. And also we have --

THE PLAINTIFF:  (indiscernible) as well.

THE COURT:  One at a time, please, everybody will have a chance to talk but it's going to be a mess if everybody is talking over each other. So, Mr. Duff, you finish.

MR. DUFF:  Yeah, Your Honor, I'm not sure that there is any, I don't believe that my clients have any, I mean I'm not really sure what plaintiff's looking for here but there's no dispute that my clients have been members unless plaintiff is for some reason disputing that my clients have been a member of WorthPoint. I believe that we have produced documents, I don't have them right in front of me, but I believe that we have produced information, emails to that

SA417

28

effect, I don't have them in front of me, but my client has testified that they've been members and WorthPoint is not contesting that WorthPoint has also produced information showing that my client has been a member of WorthPoint during those years.

THE COURT: Okay, Ms. Haimson, do you recall what you produced showing the Novocins' membership?

MS. HAIMSON: Again, as Mr. Duff communicated to the Court, this was in response to a request for an interrogatory and we provided the dates of his paid subscription, of Mr. Novocin's paid subscription to WorthPoint, I confirmed that he's still a subscriber.

THE COURT: Okay. But do you have something like, is there like an account statement or some other form showing that he's a member?

MS. HAIMSON: I'll confirm before the conference is over in terms of what we produced. I don't, I don't know offhand if we produced any documents, I don't believe they were requested, I think it was just information that was requested.

THE COURT: Okay. Well --

MS. HAIMSON: But, again, as Mr. Duff said, I'd be happy to confirm if we have those in email.

THE COURT: What I'm interpreting her to be

Case 13183-cv-00009935RASSLC Document 39284 Filed 120417223 Page 29 of 68

29

doing is to be making a post deposition document request and so I realize that there may not have been a prior request but in deference to Ms. Trombetta's pro se status I'm interpreting what she's doing as to be a follow-up document request to deposition testimony.  And so that's why I'm asking the defendants, notwithstanding that there may not have been some prior written RFP, to be checking for these documents.

Okay, what else, Ms. Trombetta?

THE PLAINTIFF:  Thank you, Your Honor.  Before I continue, let me say this, I did send a subpoena to Ask Art and they produced the dates and the years that Mr. Novocin was, for his membership, and he's currently a member.  That's what I'm seeking from WorthPoint and Estate Auctions Inc., just as you very succinctly and clearly requested, I'm requesting the same, written proof. If they give me WP0074, fine, but I have reviewed WorthPoint's documents, evidence, and I've also reviewed EAI and neither one has produced my request which was made.

THE COURT:  They just said they were going to go look for it, so what's the next thing on your list?

THE PLAINTIFF:  Very good.  The next thing is

**SA419**

30

the 2012 tax records for EAI for this year of the sale. And also the name of the computer servers, programs that they used in 2012. One of the reasons when I spoke to them in 2017 and during the deposition they said that they switched servers or they moved servers and they lost all their data. So to know the name of the server or the program, I can forward this on to the expert witness and in hopes of -- I think I have an incoming call so pardon that sound, that's another thing, question from Estate Auctions --

THE COURT: Why do you need the tax return?

THE PLAINTIFF: Just proof of if that is registered, that sale was registered for that particular year.

THE COURT: Why would that be on the tax return?

THE PLAINTIFF: It's a way of seeing how much they made during that particular year.

THE COURT: But that's the sort of global figure, it's not going to -- anyway, they've provided you the receipt, they're going to provide you with the raw data for the email, that's sufficient, so your request for the 2012 tax returns is denied.

THE PLAINTIFF: Understood.

SA420

31

THE COURT:  Why do you need the server, what difference does the server name make?

THE PLAINTIFF:  The server, just to possibly do research on what kind of programs they were using because they said that they lost this data.

THE COURT:  So they said they lost it and so they lost it, why does the server, the name of the server make a difference?

THE PLAINTIFF:  I would have to pose that question specifically to the expert witness, but nonetheless, it would be like asking did the email come from Gmail or did it come from Yahoo, there are particular programs in place at particular times, like an Apple computer, an Apple computer, you know, what model is it, it's an OS 10.2. It gives a particular, to the layperson it's not as informative but to the expert witness, they can hone in on the specifics of the program, that's the most articulate way that I can formulate an answer to your question, Your Honor.

THE COURT:  Well the request for the information about the computer server is denied.  You haven't shown me that that's in any way relevant to any of the issues in dispute in this case.

THE PLAINTIFF:  Well basically, they're saying

Case 1:18-cv-09936-SLC   Document 394   Filed 04/07/23   Page 326 of 368

32

that they lost the data and they lost it --

THE COURT:  Ms. Trombetta, I made my ruling, is there anything else on your list?

THE PLAINTIFF:  For Estate Auctions Inc. at this point, no, it's important to get the means of payment.

THE COURT:  Okay.  Anything for WorthPoint?

THE PLAINTIFF:  Yes, WorthPoint I'm asking for the unemployment, proof of unemployment records for Gregory Watkins and Anita Brooks, these are the two people that I dealt with in trying, particularly Ms. Brooks, in August through November she kept telling me that WorthPoint wasn't responsible for the posting. Secondly, when I spoke to her in January of 2016, there was no progress, I had to keep calling her again. And, of course, the other person, not only do I want the unemployment, proof of termination basically, so when they were terminated.

Secondly, if it's possible to get the addresses of these people to see if I can contact them. I had asked for that --

THE COURT:  Okay, stop, stop --

THE PLAINTIFF:  (continuing) -- meet and confer in February.

SA422

33

THE COURT: Stop, please, let Ms. Haimson respond.

MS. HAIMSON: Sure, thank you, Your Honor. So we've provided employment information. There was never any previous or prior request for proof of employment dates we did submit in response to plaintiff's request for interrogatories employment dates and explained exactly when these two individuals were terminated by WorthPoint and when they, as of when they no longer have been employed by WorthPoint. This is not an employment case, the reason for them no longer being employed is completely irrelevant. Plaintiff did not list these individuals as witnesses that were relevant and needed for trial, nor did we. There is no justification at this point for these requests.

THE COURT: Do you --

THE PLAINTIFF: Your Honor, can I --

THE COURT: Hold on, they're no longer employed by you, do you still represent them for purposes of this case?

MS. HAIMSON: I don't know if a decision has been made one way or the other in terms of that but I believe the answer is no.

THE COURT: Okay. All right, so if there any

**SA423**

34

reason why you can't provide her with the addresses, the contact information for those two?

MS. HAIMSON:  We can provide last known addresses that we have on file, sure.  Again, we're not sure if those are current and if those are, you know, that's something that can flesh out but, yes, we are willing to provide their last known address.

THE COURT:  That's all you can do is the last known address, okay.  So, Ms. Trombetta, they'll provide you with the last known address but you already have in the response to an interrogatory the dates of their employment so that's sufficient, okay?

THE PLAINTIFF:  Your Honor, the dates are in, particularly for Mr. Watkins, his LinkedIn account states that he's still employed at WorthPoint, and I understand if he didn't update or change the information. That is the basis and the reason for the request, they made a particular date and, again, as a pro se litigant, not to -- not to fall back on that, but I did ask for the dates thinking that the implication of proof would be provided to me. And I've, I have asked repeatedly because of the recent finding with the LinkedIn, that's what I put in my most recent letter on this particular subject.

**SA424**

                                                                35

THE COURT:  But what's controlling is what WorthPoint says about their employment, not LinkedIn. LinkedIn is not a party, LinkedIn didn't employ them, so that's not controlling. What is controlling is evidence that's produced in this case and that's what WorthPoint has said about when they were employed. Do you have those dates and I'm not going to require them to produce anything further.

THE PLAINTIFF:  Without verification how do I know if LinkedIn is --

THE COURT:  They said it --

THE PLAINTIFF:  (continuing) -- if he's still employed there?

THE COURT:  It's a fact, they've said it and it's a fact that those are their dates of employment, that's evidence in this case. and interrogatory response, Ms. Trombetta, is evidence in the case. You may use that as a fact, you don't need to verify it, they've represented to you that it is the truth and you can use it in the case as those are the dates of their employment.

THE PLAINTIFF:  Understood.

THE COURT:  All right, anything else for WorthPoint?

36

THE PLAINTIFF: The February 20, 2016, email and the raw or original message, they had requested this of me, I am requesting it of them for one specific reason. We're at the crossroads or in direct opposition to whether the attachments within this email can be opened. WorthPoint claims that they cannot open those attachments yet in one of their pieces of evidence it's photos of my evidence is visible. I, on the other hand, have videotaped me being able to download, open and preview all the attachments. I've also in my deposition responses, I have provided the -- let me get the number, from 351 until 350, I think it's 359, no, that's January 22nd, hold on one second, I have a plethora of --

THE COURT: While you're looking at that, Ms. Haimson, I have, I have to move on, I have other matters I need to handle today and we're almost at an hour so, Ms. Haimson, the February 20, 2016, email in native format, do you have that and can you produce it?

MS. HAIMSON: That's actually a request that we made of plaintiff, that's an email from her that originated from her and the issue was that we were having trouble getting a good enough quality,

Case 1:18-cv-00993-RA-SLC   Document 394   Filed 12/08/23   Page 37 of 68

37

basically a copy of the attachments.  So we requested the raw native format of that email just as we discussed earlier this morning.

THE COURT:  Okay.

MS. HAIMSON:  I don't know why she's requesting it from us, this is a discovery demand that we've made to her, that's featured in our letters.

THE COURT:  Okay. All right --

THE PLAINTIFF:  I'm requesting it because they're stating that they can't open the attachments and I can. So there's a contradiction in that fact.

THE COURT:  Well but just earlier in the call, earlier in this call, Ms. Trombetta, there was an email that you said you couldn't open and I took your word for it.  I'm going to do the same thing in fairness to them and say that they can't open it. And so what they're doing is they're asking you to produce it in native format to them, can you do that?

THE PLAINTIFF:  I've already done it, Your Honor.

THE COURT:  You gave them the native format of the email?

MS. HAIMSON:  You produced a PDF version, you have not produced the native format.  We had discussed

SA427

38

you potentially downloading the email, so I think Mr. Duff communicated to you earlier that he downloaded the .eml format of the email that was sent around. We're requesting the same, it's the actual native format of the email that we're requesting, not a printout or not a PDF.

THE PLAINTIFF: So the, what I have produced --

THE COURT: Just forward it, that's what they're asking you to do.

THE PLAINTIFF: I will forward it to them, I've also videotaped me being able to open, I'm going to send that --

THE COURT: I totally believe you that you're able to open it, but they're not, and so they're asking you to forward the native version, just like what we talked about at the beginning of this call, I'm asking them to do for you about the receipt. So fair is fair and it's great that you're able to open it, but they're not. So because of that, you need to forward them the email in the native version, not as a PDF, not as a photograph, nothing else, just forward the actual email --

THE PLAINTIFF: Because there is a discrepancy

SA428

39

on whether they can open it or not.  I did speak to the computer expert and in forwarding it, because it's old I am concerned that the attachments may not be able to open, hence the reason why I videotaped it. So I'm going to send the videotaped version where I can open it. If I can cc you, that would be great --

THE COURT:  No, no --

THE PLAINTIFF:  If not, I will cc the expert witness --

THE COURT:  No, do not --

THE PLAINTIFF:  (continuing) -- and other people along with forwarding the email, is that okay.

THE COURT:  Do not copy the Court on that email, no.

THE PLAINTIFF:  Understood.

THE COURT:  All right, anything else for WorthPoint?

THE PLAINTIFF:  Hold on one second.  Yeah, I had, just to recap, the last known contact information, that's addresses and phone numbers, of the WorthPoint hard copy membership records, the raw message of the February 20th email and, again, those were my only five things.

THE COURT:  You're the one who is required to

**SA429**

Case 1:18-cv-00993-RA-SLC Document 394 Filed 12/07/23 Page 40 of 68

40

produce that to them, not the other way around.

THE PLAINTIFF: I'm just reiterating all my requests, Your Honor.

THE COURT: All right, I just want to clarify that's something that you're required to produce to them is the February 20th email in native format.

THE PLAINTIFF: Twentieth, 2-0.

THE COURT: That's what I said, February 20th.

THE PLAINTIFF: Yeah, I'm just clarifying.

THE COURT: All right. Okay, so, Mr. Duff, are there any issues about the plaintiff's document productions that we need to address today?

MR. DUFF: Your Honor, no. No, Your Honor.

THE COURT: All right, Ms. Haimson?

MS. HAIMSON: Thank you, Your Honor. First I just want to clarify, during today's call plaintiff has made reference to a computer expert, I just want to make sure she's aware and maybe you can confirm same that, you know, to the extent that she retains any experts, any computer experts, that she is required to disclose those in accordance with the most recent discovery order that you've set forth. This is the first that we're hearing that she's retained any such type of expert.

SA430

41

THE COURT: If she's going to use them in the -- yes, if they're going to offer a report and they're going to appear in the case then, yes, but if she's consulting with somebody about how to open emails and that kind of thing, then, no, she doesn't.

THE PLAINTIFF: Your Honor --

MS. HAIMSON: Thank you for the clarification, Your Honor.

THE COURT: Go ahead, Ms. Trombetta.

THE PLAINTIFF: Yes, I have three fact witnesses and to date I have three expert witnesses who are waiting in the wings. So that's who I'm referring to as the computer experts. So they have been named.

THE COURT: Okay, well expert disclosures are due on December 12th, that's when you have to provide to the defendants all the information about the expert that the rules require.

THE PLAINTIFF: I've already sent the resumes for the expert witnesses a few months ago.

THE COURT: All right, well you need to look at Rule 26 which talks about expert disclosures, and that tells you the information about the experts that needs to be disclosed. You need to comply with those

Case 1:18-cv-09936-SLC Document 394 Filed 12/07/23 Page 46 of 68

42

requirements even though you're a pro se plaintiff. Just forwarding their resumes is not sufficient.

THE PLAINTIFF: Understood.

THE COURT: Okay. All right, Ms. Haimson, what else is on your list?

MS. HAIMSON: Thank you. So I think in our letter to the Court dated November 7th we sort of outlined what our various objections and responses were. I don't know that we need to address every single one of them --

THE COURT: Let me just say categorically I'm not going to require Ms. Trombetta to go back and label which documents she's produced and how it corresponds to the defendants' requests. I think as a pro se plaintiff that's unduly burdensome for her. To the extent that there are, you know, missing pages or those types of things, I'm hoping that I don't need to go over all that with you today, that that can be done between the parties, but if you need my assistance doing that then I will do my best.

MS. HAIMSON: Thank you. And I think we've tried to go back and forth and she is maintaining, my understanding is that she is maintaining that she's produced everything. You know, to the extent that she

SA432

43

tries to admit or use any of these documents that have not been produced in full, I mean we're going to seek to preclude them so --

THE COURT:  That's --

MS. HAIMSON:  I would -- I'm sorry, go ahead, Your Honor.

THE COURT:  No, I was just going to say you have all the remedies of, you know, something that has not been produced in discovery cannot be used at summary judgment, trial or elsewhere in the case. And so that all the remedies that apply under the rules to nonproduction of documents are applicable here.

THE PLAINTIFF:  Your Honor, may I speak?

THE COURT:  Go ahead, yes.

THE PLAINTIFF:  Thank you.  I have in front of me plaintiff's August 30th deposition responses which I emailed to the plaintiff, or dropped off in person. I have dated October 24th notarized all my responses to Supplemental Rule 37.  As far as my evidence that was sent on October 24, 2022, from number 389 to 494, it's been notarized, everything has been meticulously spelled out and labeled.  Then I also have dated October 24th, 494 up until 593, from 612 into the 700s, all that, all those documents are labeled.

**SA433**

Case 1:18-cv-00993-RA-SLC   Document 392   Filed 12/07/23   Page 44 of 68

44

I will say this, that in reviewing some of the requests, one in particular that's very important is the defendants stating that I never gave medical records. So in reviewing my numbers, evidence 179 to 184 is physical therapy appointments from 2015 to 2018 and what is incorrectly stated in all letters to the Court is the office visits which are duly listed and the treatment within the office visit is listed, and that's from 185 to 190.

The last thing I am going to state is that within this whole case, some of the documents that I have, and most of them are printouts from the internet, it was one of two pages and on the secondary page it was insignificant information that wasn't relative. So a lot of the requests that only have the one page or two pages are items that I did not keep. And one of the reasons why I didn't keep them is because once, in 2016, once that internet post was taken down I saved some information but basically chucked a lot of it away. I never thought I would have to continue to, when it resurfaced I didn't know that I had to continue.

So just because there is one minor deletion I, as a pro se litigant, don't know why that information

**SA434**

45

is necessary if there's such menial forms of information on the page. I've explained that, I've answered --

THE COURT: I understand. I understand --

MS. HAIMSON: If I may, Your Honor --

THE COURT: The better course would have been to produce both pages, but if you don't have, you know, the second page, you don't have the second page.

THE PLAINTIFF: I don't have it, just like the defendants stated we don't have that information.

THE COURT: Okay, go ahead Ms. --

MS. HAIMSON: If I may, Your Honor, so in regards to the incomplete documents, so we've asked repeatedly for you just to confirm whether you have it or not. If you don't have it, you don't have it. But you --

THE PLAINTIFF: I just said one page, submitted one page. So how, how would you have liked me to phrase it?

MS. HAIMSON: We would like you to formally respond where we tell you, for example, that you're missing page two of a document, to simply say that it's not in your possession so that we know that it is not. Rather than that you have it in your possession,

**SA435**

Case 1:18-cv-00993-RA-SLC Document 394 Filed 12/07/23 Page 46 of 68

46

you've decided without giving us the opportunity to review it and determine whether we think it's relevant but you decided it is irrelevant and menial, as you say, and that you've discarded it and/or are intentionally withholding it. If you don't have it, you don't have it, you can't be compelled to produce anything you don't have, but we have the right to know what is in your possession. You've produced partial parts of documents and to the extent that you're in possession of the full document, we're asking for the full document which is a perfectly reasonable request. If you don't have it, that's also fine, but we have the right to know that information.

THE COURT: Ms. Haimson, the list in number 6 on page 2 of your letter, are those the documents where you're looking for confirmation about whether there are pages missing or not or is there some other list of documents?

THE PLAINTIFF: There's exhibit A and exhibit C --

THE COURT: I'm asking Ms. Haimson.

THE PLAINTIFF: I'm sorry.

THE COURT: The list of documents that you want to know whether or not she has any other pages

47

from, is that number 6 on page 2 of your letter?

MS. HAIMSON: Yes, I believe that's correct, Your Honor, yes.

THE COURT: All right. So, Ms. Trombetta, please look at number 6 on page 2 of their letter --

THE PLAINTIFF: Wait a minute, there's three letters, there's one from October --

THE COURT: 309 dated November 7th.

THE PLAINTIFF: I only have November 7th letter, number 6, the following documents, okay, so the only thing, I can go through each and every one of them, most of them --

THE COURT: No, no, you don't need to do it right now, I'm not letting you do it right now because we need --

THE PLAINTIFF: (indiscernible) those documents that are there, are produced, but there's only one of two pages and most of those documents are the Google printouts from 2015 to 2017. So everything that's highlighted there is usually just one page.

I will say this, in going through some of the information, I did find the printer, the formal printer in my building did it double sided. So number 611 and 612, 612 is -- is the way in which I know that

**SA437**

Case 1:18-cv-00993-RA-SLC Document 394 Filed 12/07/23 Page 486 of 668

48

there's insignificant information on --

THE COURT:  I don't need to know on this call. What I'm asking you to do, Ms. Trombetta, is look at number 6 of ECF number 109 and go through that and let Ms. Haimson know by the end of next week whether there are any additional pages that you have or if those are, or if you've produced everything that you have for those documents.

THE PLAINTIFF:  I will do it again but I've already sent that on October 24th and listed, I'm looking at it right now, number 51B, number 52, number -- all of it.

THE COURT:  Okay, you don't need to go through it all.  Ms. Haimson, do you have the October 24th email?

MS. HAIMSON:  I do.

THE COURT:  Does that answer your question then?

MS. HAIMSON:  No, I believe that these are still outstanding requests.

THE COURT:  All right, so I don't have time to parse through it all here so what I'm asking you to do after this call, Ms. Trombetta --

THE PLAINTIFF:  I will do it again, I promise.

**SA438**

Case 1:18-cv-00993-RA-SLC   Document 392   Filed 12/07/23   Page 49 of 68

49

THE COURT:  Okay, thank you.

THE PLAINTIFF:  Number 6 --

MS. HAIMSON:  There's a few other items that are outstanding, we can just try to go through those as quickly as possible, I know that Your Honor's time is precious here.

THE COURT:  All right, go ahead.

MS. HAIMSON:  So request number 12 from our deposition demands, we sought documents and communications showing all artwork sales plaintiff has made from 2017 to present.

THE COURT:  Okay.

MS. HAIMSON:  It's my understanding that she is in possession of additional sales records, above and beyond what we've received. We only received very minimal documents.

THE COURT:  Okay.

THE PLAINTIFF:  The receipts that I have -- it's a burden, Your Honor, and it's an invasion of my privacy.

THE COURT:  You brought this case, Ms. Trombetta, you brought this case --

THE PLAINTIFF:  That sounds really --

THE COURT:  They're entitled to defend

SA439

50

themselves. They're entitled to defend themselves. If you have other sales records that go to the extent of damages you can claim in this case, they're entitled to have it. I'm sorry if it's burdensome, but --

THE PLAINTIFF: The extent of the damages and the evidence that I have provided is within the range of the years that this occurred.

THE COURT: But what other --

MS. HAIMSON: Ms. Trombetta, you can't cherry pick which documents you think are representative of the value of your paintings, you have to, we're requesting things that show the extent of any damages that you suffered. You have to produce all these records.

THE PLAINTIFF: I provided --

MS. HAIMSON: You brought this lawsuit against my clients.

THE PLAINTIFF: We're in a disagreement because I have provided that information and you won't --

THE COURT: Which years are we talking about --

THE PLAINTIFF: (continuing) -- accept the fact that I have provided you this information, you

**SA440**

51

keep asking me over and over again.

MS. HAIMSON: I believe you've only provided one sale but, regardless, if there are additional sales, you haven't confirmed whether there are additional sales and that you've produced all the sales documents that you have. It seems like even from what you're saying in this conference that you don't want to do so because you feel it's burdensome, not because you don't have additional records.

THE PLAINTIFF: No --

THE COURT: What is the relevant time period, Ms. Haimson, just remind me?

MS. HAIMSON: 2017 to present.

THE COURT: Okay. So, Ms. Trombetta, since 2017 how many paintings have you sold?

THE PLAINTIFF: I don't -- in 2017, because it was on the internet, it was only one, I provided that information.

THE COURT: Okay, what about, what about 2018, how many paintings did you sell?

THE PLAINTIFF: I -- I don't recall and I would have to look up my records. I know that this year I only sold one because the whole year has been revolving around this lawsuit. I did not do this

SA441

52

painting, I have proven that. If I didn't produce --

THE COURT: What you're saying is that because, what you're saying in this case, Ms. Trombetta, is because of what the defendants did, you have not been able to sell other paintings. And this issue goes to your damages. So if you've been able to sell paintings or not, that's information that the defendants need to know because it impacts whether or not you've been damaged.

THE PLAINTIFF: I understand what it is that you're stating, I gave the information for 2000, I believe it was '14, '15, '16 and '17, this was the time that the, 2015 to 2017, I've already produced the sales or the lack of sales. Again, in 2017 I only was able to sell one very small painting.

THE COURT: All right, but we need to know 2018, 2019, 2020 and '21.

THE PLAINTIFF: But why is that, because it came off the internet?

THE COURT: Because what you've alleged in this case is what defendants did has impacted your ability to sell your other paintings since then.

THE PLAINTIFF: What I said was it diminished the value of -- I lost a sale in 2015, I've never been

**SA442**

Case 1:18-cv-00993-RA-SLC Document 394 Filed 12/07/23 Page 53 of 68

53

shy about bringing that to the Court's attention.

THE COURT:  I know.

THE PLAINTIFF:  I haven't stated that, Your Honor. I did produce from 2015 to 2017 the decline --

THE COURT:  Okay, are you disclaiming any damages since 2017?

THE PLAINTIFF:  Am I disclaiming any damages?

THE COURT:  Are you saying that what defendants did, did not impact you in 2018, 2019, 2020 and 2021 and 2022?

THE PLAINTIFF:  Well when this lawsuit commenced in 2018, and this year has precluded me from being able to actually actively sell my work --

THE COURT:  That's different --

THE PLAINTIFF:  And I also, I produced the one and only sale that I made in --

THE COURT:  Let me make this clear to you, Ms. Trombetta, if you do not produce any records of sale for 2018 through 2022, you will not be able to claim or seek any damages from defendants for that period.

THE PLAINTIFF:  Well I'm claiming statutory damages which are, to my knowledge, linked into the violations. That's what I'm claiming, Your Honor. I have specifically repeated that statement, statutory

**SA443**

54

damages.  So, and I have asked a retired attorney about this.

THE COURT:  All right, well if that's the case and you're disclaiming any attempt to recover any additional amount --

MS. HAIMSON:  Or actual damages, but I believe actual sales are still important to the analysis for statutory damages as well.

THE PLAINTIFF:  Well if you believe it I need to confirm it. You know, a belief is not, I'm the person who should be saying believe or not.

THE COURT:  Well, I mean --

THE PLAINTIFF:  Because I'm a pro se litigant.

THE COURT:  Ms. Trombetta, so --

THE PLAINTIFF:  I don't mean to be difficult, Your Honor --

THE COURT:  If you want to limit the amount of damages that you may be able to recover, that's fine, and if you do that by, you know, the impact of not producing documents for a particular period may mean that your recovery is limited if not precluded altogether. So I just want to make sure you understand the consequences of refusing to produce information about sales from 2018 through 2022.

**SA444**

Case 1:18-cv-00993-RA-SLC   Document 394   Filed 12/07/23   Page 55 of 68

55

THE PLAINTIFF:  I've produced 2014, 2015, 2016 --

THE COURT:  I understand.

THE PLAINTIFF:  And 2022, because these are years which have been, that were directly affected by the false posting on the internet, and this year, in particular, it has precluded me from being able to sell my work.

THE COURT:  All right, so you are not claiming any damages for 2018, 2019, 2020 and 2021, correct?

THE PLAINTIFF:  That, let's -- yes, that is correct.

THE COURT:  All right, so you have it, Ms. Haimson, no damages for 2018, 2019, 2020 and 2021.

THE PLAINTIFF:  It is specific to that particular posting and how it affected the drop in sales as soon as it was posted.

THE COURT:  All right, Ms. Haimson, anything else on your list?

MS. HAIMSON:  Thank you, yes.  Request number 13 about post deposition demands. We want written confirmation as to whether she's seeking damages for physical harm. The complaint, itself, references emotional distress, she has represented during her

**SA445**

56

deposition, as well, that she suffered some exacerbation of certain medical conditions due to the lawsuit and due to alleged actions by my client and the EIA defendants.  I'm not sure whether she actually is seeking those damages, we want confirmation about that, but to the extent that she is, in terms of medical records all we received are billing statements, we have not received any sort of authorizations which let us know in any way all the providers that she has sought and what treatment she has received for any such injuries or damages that she sustained.

THE COURT:  Which number is this?

THE PLAINTIFF:  May I respond to that, Your Honor?

THE COURT:  Just a second, yes, just let me --

MS. HAIMSON:  It's page 4 of exhibit A.

THE COURT:  Just tell me the number.

MS. HAIMSON:  It's request number 13, so written confirmation as to whether she is seeking damages for alleged physical harm and then there's a couple of requests that follow if she is.

THE COURT:  All right, Ms. Trombetta, are you seeking physical damages?

**SA446**

57

THE PLAINTIFF: I was asked in February to produce, because the original complaint with EAI I had listed that, Mr. Duff had requested me to produce that and I already have. Now at the beginning of the conversation or in the middle of our discussion I had mentioned office visits, evidence 179 to 184. Those are physical therapy appointments and records with the amount for the visit. Again, number 185 to 190 are the office visits that I --

THE COURT: Right, but you're not answering my question. You're not answering my question, my question is are you seeking damages for any physical impact as a result of the defendants' conduct, yes or no?

THE PLAINTIFF: At this time I am. I believe I'm going to, if I do the proposed amended complaint, add to that, but I've already produced documentation --

THE COURT: It sounds to me that what you have produced is not sufficient. So but we'll do, Ms. Haimson, is I'm going to hold this in abeyance until we see the amended complaint and then we'll reassess what, if any, medical records Ms. Trombetta needs to produce.

**SA447**

58

THE PLAINTIFF:  And that's exactly what I stated, Your Honor. I did state that in my reply, I can find it and read it to you --

THE COURT:  I cannot keep track, there are ten letters that came in for this conference, I cannot keep track of what everybody says, this isn't my only case I handled today, obviously, I'm trying to do my best.

THE PLAINTIFF:  I'm sorry, Your Honor --

THE COURT:  What else is on your list?

THE PLAINTIFF:  I keep trying to do my best. It's number 13 of --

THE COURT:  No, no, we're done with that one, I'm asking Ms. Haimson what else is on her list.

THE PLAINTIFF:  Got it.

MS. HAIMSON:  Next on the list is for, so if you look at exhibit B, page 5, it's request number 13 from our -- hold on one second, from our supplemental Rule 37 letter. So essentially seeking plaintiff's tax returns from 2010 to present, again pertaining to what damages, if any, and what income, if any, she's had since she says the defendants violated her copyright.

THE COURT:  Has she produced any tax returns?

MS. HAIMSON:  I believe she only produced a

**SA448**

Case 1:18-cv-00993-RA-SLC Document 394 Filed 12/07/23 Page 59 of 68

narrative regarding her income from the year 2022. And I think there was also maybe a tax return from the year 2000 and the year 2003, but certainly nothing that's contemporaneous with this posting, so, no.

THE COURT: All right, Ms. Trombetta, do you have tax returns for 2010 to the present?

THE PLAINTIFF: I have consulted with three attorneys on this, I am seeking statutory damages and do not wish to produce my taxes.

THE COURT: All right, without representation, Ms. Haimson, do you need the tax returns?

MS. HAIMSON: So is it your contention, Ms. Trombetta, that you are waiving all claims to any actual damages at all in this lawsuit?

THE PLAINTIFF: The actual damages is the proof of the loss of the sale for $8,500, that's the only actual damage I am going to claim, everything else is going to be statutory damages.

THE COURT: All right, so you're waiving --

MS. HAIMSON: I believe you have to choose one or the other pursuant to the Copyright Act.

THE COURT: All right, but in any event, whether or not that's the case, any actual damages she's agreeing, Ms. Trombetta, you're agreeing not to

**SA449**

Case 1:18-cv-00993-RA-SLC Document 394 Filed 12/07/23 Page 60 of 68

60

seek any more than $8,500, correct?

THE PLAINTIFF:  For the actual damage that I know of that I can prove, it was the loss of the sale. All other damages are linked to the violations of the (indiscernible) Act, the Copyright Act and the DMCA 1202(a) and 1202(b). I put that in the Rule 26 documents in February --

MS. HAIMSON:  If you're seeking any damages under any other statute, as well, again, those, those income records are essential. So if you're only claiming statutory damages in theory, I think we're probably okay with you not producing your income records. But if you're seeking any damages related to loss of income, it's our position that we have the right to know what your income was.

THE COURT:  Ms. Trombetta, are you claiming any lost income under any theory in this case?

THE PLAINTIFF:  The loss of sales was applicable to the dates -- statutory damages and the actual sale of the painting, Your Honor.

THE COURT:  All right, you're not seeking any other damages beyond that in this case under any theory?

THE PLAINTIFF:  I'm going to say no.

**SA450**

Case 1:18-cv-00993-RA-SLC   Document 394   Filed 12/07/23   Page 61 of 68

61

THE COURT:  Okay.

THE PLAINTIFF:  Just the statutory damages and the loss of the sale.

THE COURT:  All right, so with that, I mean the other way to deal with this, Ms. Haimson, you have that representation, we also have an amended complaint coming, so that could, that could change what you may or may not need to request, right?

MS. HAIMSON:  That's fine, Your Honor, thank you.

THE COURT:  So I'm going to deny the request for the tax returns without prejudice.

THE PLAINTIFF:  Okay.

MS. HAIMSON:  Thank you.  And the only other outstanding issue I believe is communications with nonparty witnesses.

THE COURT:  Okay.  Do you have any that have been produced?

THE PLAINTIFF:  So, Your Honor, as a pro se litigant I did discuss with my witnesses and my witnesses agreed to be witnesses sometime in August and I believe what the defendants are trying to obtain are emails and even text messages. I don't have text messages, I don't have that many emails --

**SA451**

62

THE COURT:  Do you have emails -- what are the names of these people, how many are there?

THE PLAINTIFF:  There's three fact witnesses which have been deposed.

THE COURT:  Have you communicated with any of them in writing?

THE PLAINTIFF:  Have I communicated with any of them in writing regarding this case?

THE COURT:  Yes.

THE PLAINTIFF:  Very minimally.

THE COURT:  Then you need to produce it.  That is not privileged, you're not an attorney, it's not privileged, it needs to be produced.

THE PLAINTIFF:  But, Your Honor, I am self-represented --

THE COURT:  You're not an attorney, there is no attorney-client relationship between you and those witnesses.

THE PLAINTIFF:  I understand, Your Honor, there's very little communication --

THE COURT:  It doesn't matter, you need to produce it. You need to produce it.

THE PLAINTIFF:  Please understand that. I will produce --

SA452

63

THE COURT: I don't care how much it is, it needs to be produced.

THE PLAINTIFF: Understood.

MS. HAIMSON: And we would also request that those communications not just be limited to specifically discussions about, you know, and in preparation of their deposition, but it would be any communications --

THE COURT: Anything about this case.

MS. HAIMSON: Your artwork or your biography as well.

THE COURT: Anything relevant to this case.

THE PLAINTIFF: Anything relative to this case, I don't mean to burst your bubble, but there's not much.

THE COURT: It doesn't matter, just produce it.

THE PLAINTIFF: No, I'm just letting you know, Your Honor.

THE COURT: Fine. Okay, anything else, Ms. Haimson?

MS. HAIMSON: Not at this time, Your Honor, thank you.

THE COURT: All right, if I could ask the

**SA453**

64

defendants to please order a transcript of today's conference. Ms. Trombetta, is there anything else you wanted to raise today?

THE PLAINTIFF: It has been a full day. So because I'm dealing with other people, meaning the expert witnesses, and we're approaching the holiday season, if for some reason they cannot submit a report by December 12th, what --

THE COURT: You need to make --

THE PLAINTIFF: Can I ask for an extension for them?

THE COURT: Yes.

MR. DUFF: Your Honor, we object, this is Anderson for defendants --

THE COURT: I know --

MR. DUFF: I'm sorry?

THE COURT: I know, but she can make an application and I'll --

MR. DUFF: Okay, yes, Your Honor, thank you.

THE COURT: I'm not going to prejudge it, but because it sounded like a hypothetical, so maybe we won't. You also have a deadline to file your motion for leave to amend and your proposed amended complaint on December 12th, Ms. Trombetta.

SA454

Case 1:18-cv-00993-RA-SLC   Document 392   Filed 12/07/23   Page 65 of 68

65

THE PLAINTIFF:  I understand, thank you for the reminder, Your Honor.

THE COURT:  All right, anything else then from you, Ms. Trombetta?

THE PLAINTIFF:  Well I might add this to propose the idea of a settlement conference, is that something that the defendants would be interested in at this time?

THE COURT:  Mr. Duff, I'll start with you?

MR. DUFF:  Your Honor, my clients are not interested in a settlement conference, we've already had several in this case and I know the Court has bent over backwards trying to accommodate settlement conferences. Every time we do that it just extends the inevitable conclusion of this case and the plaintiff's, the plaintiff's valuation of this case is just so far away from our client's valuation of this case that we do not believe a settlement conference would be, it would just be a waste of our client's resources and it would further delay the conclusion of this case.  Thank you, Your Honor.

THE COURT:  Okay, Ms. Haimson, what's your client's position?

MS. HAIMSON:  Yeah, we echo the same

**SA455**

66

sentiment, I don't think that it would be fruitful at this time, thank you.

THE COURT: Okay. All right, well I can't force anybody to come to a settlement conference, Ms. Trombetta. I mean you're certainly welcome to make an offer to them and see if they'll respond and if, you know, it looks like that might be productive, then you guys can let me know, you know, if anybody's mind changes about that, but at the moment it looks like a settlement conference is not going to be a productive use of our time.

THE PLAINTIFF: Well I just want to ask when was there a settlement conference? There was one scheduled in March and it was cancelled.

THE COURT: I think he's referring to your settlement discussions, not --

MR. DUFF: No, Your Honor, sorry, I did not mean to cut Your Honor off, but I'm referring to the two conferences, settlement conferences that Judge Abrams presided over in her chambers at the beginning of this case trying to settle this matter before it got to this stage. And we've made an offer of judgment and we've exchanged several settlement -- I'm specifically referring to Judge Abrams' two settlement

**SA456**

Case 1:18-cv-00993-RA-SLC Document 394 Filed 12/07/23 Page 67 of 68

67

conferences that she hosted in person quite graciously early on in this case.

THE COURT:  Right, okay.  I was not there for those.

MR. DUFF:  That's correct, Your Honor, I'm sorry, you would have no way of knowing that, but yes.

THE COURT:  Okay.  All right, okay, we will do an order that memorializes what was discussed today and, as I said, if the defendants could please order a transcript as well. I wish you all a very happy and relaxing Thanksgiving.

THE PLAINTIFF:  You, as well, Your Honor.

THE COURT:  We'll be adjourned. Thank you so much.

(Whereupon the matter was adjourned.)

**SA457**

                                                          68

                        C E R T I F I C A T E


          I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States

District Court, Southern District of New York,

Trombetta versus Novocin, et al., Docket #18cv993, was

prepared using digital electronic transcription

equipment and is a true and accurate record of the

proceedings.




Signature ___*Carole Ludwig*___

            CAROLE LUDWIG

Date:  December 8, 2022

**SA458**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| Annamarie Trombetta, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No: 18-cv-00993 (RA) (SLC) |
| v. | ) | |
| | ) | **NOTICE OF MOTION** |
| Norb Novocin, <u>et al.</u>, | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____)

### <u>DEFENDANT WORTHPOINT CORPORATION'S NOTICE OF MOTION FOR SUMMARY JUDGMENT</u>

**PLEASE TAKE NOTICE**, that upon (a) the Declaration of Jana Farmer, Esq., dated April 17, 2023 and the exhibits annexed thereto, (b) the Declaration of William H. Seippel, dated April 17, 2023, (c) WorhtPoint's Rule 56.1 Statement of Facts, (d) the Memorandum of Law, dated April 17, 2023, and (e) all of the prior pleadings and proceedings heretofore had herein, Defendant, WorthPoint Corporation, will move this Court by and through its attorneys, Wilson Elser Moskowitz Edelman & Dicker, LLP, before the Honorable Ronnie Abrams at the United States District Court, Southern District of New York, 40 Foley Square, Room 2203, New York, New York 10007, on a date to be determined by the Court, for an Order: granting summary judgment pursuant to Fed. R. Civ. P. 56(a), seeking dismissal of the entirety of Plaintiff's Second Amended Complaint and for such other, different and further relief as the Court in its discretion may deem just and proper.

281853446v.1

**SA459**

THEREFORE, WorthPoint respectfully requests that the instant motion be GRANTED in its entirety.

Date: April 17, 2023

Respectfully submitted,

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

*s/ Jana Farmer*

Adam R. Bialek, Esq.
Jana A. Slavina Farmer, Esq.
150 E. 42nd Street
New York, New York 10017
(212) 490-3000 (phone)
(914) 323-7001 (facsimile)
Adam.Bialek@wilsonelser.com
Jana.Farmer@wilsonelser.com

*Attorneys for Defendant WorthPoint*

TO:
Annamarie Trombetta
*Plaintiff Pro Se*
175 East 96th Street, Apt. 12R
New York, NY 10128

Anderson Duff
Hogan Duff, LLP
Attorney for Defendants
Norb Novocin, Marie Novocin
And Estate Auctions, Inc.
43-10 Crescent St. Ste. 1217
Long Island City, NY 11101
(646) 450-3607
ajd@hoganduff.com

281853446v.1

**SA460**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
Annamarie Trombetta,,

               Plaintiffs,

       -against-

Norb Novocin, et al.,

             Defendants

-----------------------------------------------------------------------X

Civil Action No: 18-cv-00993
(RA) (SLC)


**DECLARATION IN SUPPORT
OF DEFENDANT
WORTHPOINT'S MOTION
FOR SUMMARY JUDGMENT**

**JANA S. FARMER**, hereby declares the following under the penalties of perjury;

1.     I am a member of the law firm of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, attorneys of record for the defendant, WORTHPOINT CORPORATION (hereinafter "WorthPoint"). By virtue of my association with this firm, my work on this matter and my review of the file, I am fully familiar with the facts and circumstances of this action as set forth herein.

2.     I submit this declaration in support of WorthPoint's motion seeking an Order granting summary judgment pursuant to Fed. R. Civ. P. 56(a), seeking dismissal of the entirety of Plaintiff's Second Amended Complaint and for such other, different and further relief as the Court in its discretion may deem just and proper.

3.     This matter emanates from a claim that a painting that was sold by co-defendants (Estate Auctions, Inc. and the Novocins) on eBay in 2012 was wrongfully attributed to Plaintiff, and a claim that WorthPoint's subsequent publication of the reported sales information on its platform, which gives subscribers access to historical prices for the sale of art and collectibles, violated Plaintiff's copyright. As against WorthPoint, Plaintiff claims that the 2015 report of the

8563939v.1

sale of a painting she claims she did not paint, with the biographical information that was attached, damaged her.

4.    Plaintiff has amended her Complaint twice and now sits with a Second Amended Complaint that is defective insofar as it raises previously dismissed (with prejudice) claims, raised claims that cannot be supported as a matter of law, and raises claims for which she has not and cannot support with evidence in an admissible form.

5.    Moreover, Plaintiff has refused to fully participate in discovery on certain claims she does wish to pursue, severely prejudicing Defendant WorthPoint in its ability to mount a defense, if one is needed, with respect to those claims.

6.    Annexed hereto as **Exhibit "A"** is the Deposition Transcript of Plaintiff Annamarie Trombetta.

7.    Annexed hereto as **Exhibit "B"** is the Deposition Transcript of Defendant Norb Novocin, on behalf of himself and Estate Auctions, Inc.

8.    Annexed hereto as **Exhibit "C"** is the Transcript of non-party, Willie Chu.

9.    Annexed hereto as **Exhibit "D"** is the Transcript of non-party Vanessa Ploski.

10.    Annexed hereto as **Exhibit "E"** is WorthPoint's Expert Disclosure for Jessie Stricchiola.

11.    Annexed hereto as **Exhibit "F"** is the Declaration of WorthPoint employee, Jason Packer.

12.    Annexed hereto as **Exhibit "G"** is the Declaration of WorthPoint CEO and founder, William H. Seippel.

8563939v.1

13.     Annexed hereto as **Exhibit "H"** is the "Affidavit" from Plaintiff's claimed expert, Patrick O'Leary.[1]

14.     Annexed hereto as **Exhibit "I"** is the Deposition Transcript of Mr. O'Leary.

15.     Annexed hereto as **Exhibit "J"** is the March 15, 2017 Google Search results.

16.     Annexed hereto as **Exhibit "K"** are screen shots of the WP Report.

17.     Annexed hereto as **Exhibit "L"** is WorthPoint's First Request for Production, dated, February 25, 2022.

18.     Annexed hereto as **Exhibit "M"** is Plaintiff's response to WorthPoint's First Request for Production, dated. April, 22, 2022.

19.     Annexed hereto as **Exhibit "N"** is WorthPoint's Post-Deposition Demands to Plaintiff, dated October 6, 2022.

20.     Annexed hereto as **Exhibit "O"** is Plaintiff's deficient response to WorthPoint's Post-Deposition Demands, dated, October 20, 2022.

21.     Annexed hereto as **Exhibit "P"** is the Deposition Transcript of Scott Goodwillie.

22.     Plaintiff is seeking relief from a passive internet service provider who received a report of an art sale in 2012 through a licensing agreement to obtain eBay auction listings and results. eBay obtained sublicensable rights to the material that was posted by its seller and disseminated the Auction Listing among hundreds of thousands or millions of others, through an automated technical solution, to allow users of WorthPoint's Worthopedia to research and analyze data regarding art pricing and values, or for other purposes.  WorthPoint had a proper notice and takedown policy on its website, and had registered a DMCA Agent with the U.S. Copyright Office.

---

[1] WorthPoint has filed a motion to preclude Mr. O'Leary as an expert in this matter.  See ECF Dkt. 398, 399 and the exhibits annexed thereto.

8563939v.1

As such, it should be immune from suit. Regardless, Plaintiff sat on her hands and waited too long to commence her meritless claim.

23.    Plaintiff learned of the WorthPoint Report ("WP Report") of the 2012 Auction Listing in August 2015, yet she did not commence a claim against WorthPoint until February 21, 2020 (with service effectuated on or about May 12, 2020). Even if Plaintiff first "discovered" the WP Report in August 2015, the statute of limitations would have expired in August 2018, at least one and a half years before the claim against WorthPoint was filed. As such, the claim against WorthPoint is barred by the Statute of Limitations.

24.    Plaintiff's claims otherwise lack merit and support and should be dismissed accordingly as more fully described in the Memorandum of Law in Support to the Motion for Summary Judgment.

25.    Based upon the facts described in the attached Declaration of William Seippel, the Exhibits annexed here and thereto, the Rule 56.1 Statement, the lengthy history as set forth in the 400+ ECF entries, a significant number of which addressed Plaintiff's position in this case and her lack of support, and the proceedings heretofore had herein, WorthPoint is entitled to summary judgment in this matter.

**WHEREFORE**, WorthPoint hereby moves for summary judgment pursuant to Fed. R. Civ. P. 56(a), seeking dismissal of the entirety of Plaintiff's Second Amended Complaint. There is no genuine dispute as to any material fact and as such, WorthPoint is entitled to judgment as a matter of law. The reasons supporting this Motion are set forth in more detail in WorthPoint's Memorandum of Law, which is being filed contemporaneously with this Motion.

Date: April 17, 2023

_s/ Jana Farmer_____
Jana A. Slavina Farmer, Esq.

8563939v.1

**SA464**

WILSON ELSER MOSKOWITZ EDELMAN &
DICKER LLP
1133 Westchester Ave
White Plains, NY 10604
(914) 323-7000 (phone)
(914) 323-7001 (facsimile)
Jana.Farmer@wilsonelser.com

*Attorneys for Defendant WorthPoint*

TO:
Annamarie Trombetta
*Plaintiff Pro Se*
175 East 96th Street, Apt. 12R
New York, NY 10128

Anderson Duff
Hogan Duff, LLP
Attorney for Defendants
Norb Novocin, Marie Novocin
And Estate Auctions, Inc.
43-10 Crescent St. Ste. 1217
Long Island City, NY 11101
(646) 450-3607
ajd@hoganduff.com

8563939v.1