# 25-817-CV

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

————◆◆◆————

ANNAMARIE TROMBETTA, ARTIST,

*Plaintiff-Appellant,*

*v.*

NORB NOVOCIN, MARIE NOVOCIN,
ESTATE AUCTIONS, INC., WORTHPOINT CORPORATION,

*Defendants-Appellees,*

WILLIAM SEIPPEL, WORTHPOINT.COM,
JASON PACKER, EMPLOYEE AT WORTHPOINT CORPORATION,

*Defendants.*

————————

*On Appeal from the United States District Court
for the Southern District of New York*

## SUPPLEMENTAL APPENDIX
## VOLUME 8 OF 12
## Pages SA1661 to SA1942

WILSON ELSER MOSKOWITZ EDELMAN
& DICKER LLP
*Attorneys for Defendant-Appellee
WorthPoint Corporation*
150 East 42nd Street, 23rd Floor
New York, New York 10017
212-490-3000



**Table of Contents**

**Page**

**Volume 1**

Proposed Amended Complaint, dated January 17, 2020,
with Exhibits .................................................................................... SA1

Plaintiff's Response in Opposition to Defendant's Motion to
Dismiss Amended Complaint, dated February 21, 2020,
with Exhibits .................................................................................... SA64

Opinion and Order of the Honorable Sarah L. Cave,
dated March 19, 2020 .................................................................... SA112

Protective Order of the Honorable Sarah L. Cave,
so-ordered on February 16, 2022 ................................................. SA126

Order of the Honorable Sarah L. Cave,
so-ordered on December 8, 2022 ................................................. SA130

Order of the Honorable Sarah L. Cave,
so-ordered on December 20, 2022 ................................................ SA131

Memorandum by Plaintiff in Support of Motion
for Leave to File a Proposed Amended Complaint,
dated December 23, 2022 .............................................................. SA134

Proposed Second Amended Complaint,
dated December 23, 2022 .............................................................. SA216

Exhibits to Memorandum by Plaintiff in Support of Motion
for Leave to File a Proposed Amended Complaint ....................... SA237

Order of the Honorable Sarah L. Cave,
dated December 29, 2022 .............................................................. SA264

Order of the Honorable Sarah L. Cave,
dated February 2, 2023 .................................................................. SA266

**Table of Contents**
**(Continued)**

**Page**

Defendant WorthPoint Corporation's Omnibus Motion
in Limine Concerning Experts, dated April 10, 2023 .................... SA268

Declaration of Jana S. Farmer in Support of Defendant's
Motion in Limine, dated April 7, 2023 ......................................... SA270

**Volume 2**

Exhibit A to Farmer Declaration -
Documented Communications from WorthPoint's
Counsel to Plaintiff .................................................................... SA273

Exhibit B to Farmer Declaration -
Expert Affidavit of Patrick O'Leary,
sworn to December 5, 2022, with Exhibits ............................ SA298

Exhibit C to Farmer Declaration -
Expert Disclosure and Expert Report of
Joseph V. Scelsa, dated February 16, 2023,
with Exhibits ........................................................................ SA327

Exhibit D to Farmer Declaration -
Transcript of Proceedings held before the
Honorable Sarah L. Cave on November 23, 2022 ................. SA390

Notice of Motion by Defendant WorthPoint Corporation
for Summary Judgment, dated April 17, 2023 ............................. SA458

Declaration of Jana S. Farmer in Support of Defendant's
Motion for Summary Judgment, dated April 17, 2023 ................. SA460

**Volume 3**

Exhibit A to Farmer Declaration -
Deposition Testimony of Annamarie Trombetta,
taken August 30, 2022 ........................................................... SA465
*(cont'd in Vol 4)*

**Table of Contents**
**(Continued)**

**Page**

## Volume 5

Exhibit B to Farmer Declaration -
Deposition Testimony of Norb Novocin,
taken September 21, 2022 ....................................................... SA837

Exhibit C to Farmer Declaration -
Redacted Deposition Testimony of Willie Chu,
taken October 7, 2022 ........................................................... SA1084

## Volume 6

Exhibit D to Farmer Declaration -
Redacted Deposition Testimony of Vanessa Koi-Ploski,
taken October 17, 2022, with Cover Letter ........................... SA1136

Exhibit E to Farmer Declaration -
Redacted Defendant WorthPoint Corporation's
Expert Disclosure Pursuant to FRCP Rule 26(a)(2)
of Jessie Stricchiola, dated January 19, 2023,
with Report and Exhibits ....................................................... SA1237

Exhibit F to Farmer Declaration -
Redacted Declaration of Jason Packer,
dated January 19, 2023, with Exhibits .................................. SA1280

Exhibit G to Farmer Declaration -
Declaration of William H. Seippel,
dated April 17, 2023, with Exhibits ...................................... SA1303

Exhibit H to Farmer Declaration -
Expert Affidavit of Patrick O'Leary,
sworn to December 5, 2022, with Exhibits ........................... SA1349

## Volume 7

Exhibit I to Farmer Declaration -
Deposition Testimony of Patrick O'Leary,
taken February 28, 2023 ....................................................... SA1382

iii

**Table of Contents**
**(Continued)**

**Page**

Exhibit J to Farmer Declaration -
Google Search Results, dated March 15, 2017 ...................... SA1654

Exhibit K to Farmer Declaration -
Screenshots of the WorthPoint Report ................................. SA1655

**Volume 8**

Exhibit L to Farmer Declaration -
Defendant WorthPoint's First Request for Production,
dated February 25, 2022 ......................................................... SA1661

Exhibit M to Farmer Declaration -
Plaintiff's Response to WorthPoint's First
Request for Production, dated April 22, 2022 ....................... SA1674

Exhibit N to Farmer Declaration -
WorthPoint's Post-Deposition Demands to Plaintiff,
dated October 6, 2022 ............................................................ SA1691

Exhibit O to Farmer Declaration -
Plaintiff's Response to WorthPoint's Post-Deposition
Demands, dated October 20, 2022, with Attachments .......... SA1701

Exhibit P to Farmer Declaration -
Deposition Testimony of Scott Goodwillie,
taken October 6, 2022, with Cover Letter ............................. SA1800

Rule 56.1 Statement of Material Facts by Defendant
WorthPoint, dated April 17, 2023 ................................. SA1884

Letter from Jana S. Farmer to the Honorable Sarah L. Cave,
dated May 9, 2023 .......................................................... SA1896

Exhibit A to Letter -
Email from Adam Bialek to Annamarie Trombetta,
dated January 18, 2022 ......................................................... SA1901

**Table of Contents**
**(Continued)**

Page

Exhibit B to Letter -
WorthPoint's First Set of Interrogatories,
dated February 25, 2022 ........................................................ SA1903

Exhibit C to Letter -
Plaintiff's Third Response to WorthPoint's
Interrogatories, dated June 27, 2022 ..................................... SA1916

Exhibit D to Letter -
Various Email Correspondence,
dated July 19, 2022 through August 8, 2022 ......................... SA1926

Exhibit E to Letter -
Various Email Correspondence,
dated September 9, 2022 to September 12, 2022 ................... SA1935

Exhibit F to Letter -
Email from Annamarie Trombetta to Nicole Haimson,
*et al*., dated September 15, 2022 ........................................... SA1939

Exhibit G to Letter -
Various Email Correspondence,
dated September 15, 2022 to September 28, 2022 ................. SA1940

**Volume 9**

Exhibit H to Letter -
Post-Deadline Court Submissions
Regarding Expert Disclosure Issues ..................................... SA1943

Exhibit I to Letter -
Redacted Documents Relating to Dr. Joseph Scelsa's
Opinions and Qualifications .................................................. SA1952

Exhibit J to Letter -
Redacted Expert Report of Gayle Skluzacek,
dated February 21, 2023, with Attachments .......................... SA2016

**Table of Contents**
**(Continued)**

**Page**

Plaintiff's Opposition Response to Defendant WorthPoint's
  Motion to Preclude and Proffer Plaintiff's Expert Witnesses,
  dated May 19, 2023 ........................................................................  SA2051

Defendant WorthPoint's Response to Plaintiff's (Trombetta's)
  First Set of Notice to Admit for Defendants [Sic] WorthPoint
  Corporation, dated April 8, 2022  .................................................  SA2069

WorthPoint' s Responses and Objections to Plaintiff's
  Request for the Production of Documents and Photos,
  dated April 8, 2022 ........................................................................  SA2087

Defendant Worth Point's Responses and Objections to
  Plaintiff's Request for the First Set of Interrogatories for
  Defendants WorthPoint Corporation, dated April 8, 2022 ...........  SA2115

Defendant Worth Point Corp.'s Response to Plaintiff's
  Second Request for Admissions, dated July 13, 2022  .................  SA2132

Defendant WorthPoint Corp.'s Answers to Plaintiff's
  Second Set of Interrogatories for Defendant WorthPoint
  Corporation, dated July 1, 2022 ...................................................  SA2146

Defendant WorthPoint Corp.'s Answers to Plaintiff's
  Second Request for Production of Documents,
  dated July 1, 2022  ........................................................................  SA2157

Defendant WorthPoint Corp.'s Responses to Plaintiff's
  Third Request for Interrogatories, dated August 15, 2022 ...........  SA2167

Defendant WorthPoint Corp.'s Responses and Objections
  to Plaintiff's Third Request For Production of Documents,
  dated August 15, 2022 ...................................................................  SA2182

Defendant WorthPoint Corp.'s Responses and Objections
  to Plaintiff's Fourth Request For Production of Documents,
  dated October 11, 2022 .................................................................  SA2194

vi

**Table of Contents**
**(Continued)**

**Page**

**Volume 10**

Exhibits to Plaintiff's Opposition Response to Defendant
      WorthPoint's Motion to Preclude and Proffer Plaintiff's
      Expert Witnesses ............................................................. SA2208

Exhibits to Plaintiff's Opposition Response to Defendant
      WorthPoint's Motion to Preclude and Proffer Plaintiff's
      Expert Witnesses ............................................................. SA2241

Declaration of Jana S. Farmer in Opposition to Plaintiff's
      Various Motions *in Limine* and Motions to Proffer,
      dated May 30, 2023 ......................................................... SA2264

            Exhibit A to Farmer Declaration -
            First Initial Disclosure of Defendant WorthPoint
            Corporation Pursuant to FRCP 26(A)(1),
            dated February 25, 2022 ......................................... SA2267

            Exhibit B to Farmer Declaration -
            Redacted Declaration of Jason Packer,
            dated January 19, 2023, with Exhibits ................... SA2273

            Exhibit C to Farmer Declaration -
            Redacted Defendant WorthPoint Corporation's
            Expert Disclosure Pursuant to FRCP Rule 26(a)(2) of
            Jessie Stricchiola, dated January 19, 2023, with Exhibits ..... SA2296

            Exhibit D to Farmer Declaration -
            Email from Jana S. Farmer to Annamarie Trombetta,
            *et al*., dated October 11, 2022 ............................. SA2339

Plaintiff's Response to Defendants Estate Auctions Inc. and
      Norb and Marie Novocin's Motion for Summary Judgment,
      dated May 30, 2023 ......................................................... SA2340

Exhibits 1-12 of Plaintiff's Response to Defendants
      Estate Auctions Inc. and Norb and Marie Novocin's
      Motion for Summary Judgment ...................................... SA2372

**Table of Contents**
**(Continued)**

Page

Exhibits 13-21 of Plaintiff's Response to Defendants
Estate Auctions Inc. and Norb and Marie Novocin's
Motion for Summary Judgment ...................................... SA2410

Exhibits 22-35 of Plaintiff's Response to Defendants
Estate Auctions Inc. and Norb and Marie Novocin's
Motion for Summary Judgment ...................................... SA2445

**Volume 11**

Exhibits 36-38 of Plaintiff's Response to Defendants
Estate Auctions Inc. Motion for Summary Judgment .................. SA2482

Exhibit 41 of Plaintiff's Response to Defendants
Estate Auctions Inc. and Norb and Marie Novocin's
Motion for Summary Judgment ...................................... SA2525

Exhibits 39-41 of Plaintiff's Response to Defendants
Estate Auctions Inc. Motion for Summary Judgement ................ SA2547

Letter from Annamarie Trombetta to the Honorable
Sarah L. Cave, dated June 1, 2023 ............................... SA2582

Exhibit 1 to Letter -
Various Email Correspondence between Annamarie
Trombetta and Art Appraiser Gayle Skluzacek ..................... SA2584

Exhibit 2 to Letter -
Various Email Correspondence between
Annamarie Trombetta and Dr. Joseph Scelsa ........................ SA2596

Exhibit 3 to Letter -
Plaintiff's Communication with Defendants
for Witnesses ........................................................ SA2618

Exhibit 4 to Letter -
Problems and Delays Caused by WorthPoint Defendants ..... SA2632

**Table of Contents**
**(Continued)**

**Page**

Exhibit 5 to Letter -
Plaintiff's Illness Beginning December 7, 2022
into Late January 2023 ........................................... SA2673

Exhibit 6 to Letter -
WorthPoint Attorneys 2023 Emailing Plaintiff
Requesting Expert Witness Depositions ............................... SA2676

Exhibit 7 to Letter -
Ebay Phone Call Transcript ................................... SA2682

Exhibit 8 to Letter -
List and Number by Month February to
December 2022 Plaintiff's Problems with Defendants ......... SA2708

Plaintiff's Response to Defendant WorthPoint Corporation's
Motion for Summary Judgment, dated June 7, 2023 ................... SA2721

**Volume 12**

Exhibits 1-9 to Plaintiff's Response to Defendant
WorthPoint Corporation's Motion for Summary Judgment ......... SA2759

Exhibit 10 to Plaintiff's Response to Defendant WorthPoint
Corporation's Motion for Summary Judgment ............................ SA2792

Exhibits 12-18D to Plaintiff's Response to Defendant
WorthPoint Corporation's Motion for Summary Judgment ......... SA2822

Exhibits 19A-24 to Plaintiff's Response to Defendant
WorthPoint Corporation's Motion for Summary Judgment ......... SA2857

Exhibits 25A-27 to Plaintiff's Response to Defendant
WorthPoint Corporation's Motion for Summary Judgment ......... SA2888

Exhibits 28-30D to Plaintiff's Response to Defendant
WorthPoint Corporation's Motion for Summary Judgment ......... SA2922

**Table of Contents**
**(Continued)**

**Page**

Letter from Jana S. Farmer to the Honorable Sarah L. Cave,
    dated June 8, 2023 .......................................................... SA2947

Opinion and Order of the Honorable Sarah L. Cave,
    dated June 22, 2023 ...................................................... SA2949

Order of the Honorable Laura Taylor Swain, dated July 5, 2023 ....... SA2966

x

**SA1661**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNAMARIE TROMBETTA,<br>　　　　　　　　　Plaintiff,<br><br>　　　- against –<br><br>NORB NOVOCIN, MARIE NOVOCIN,<br>ESTATE AUCTIONS, INC., ~~WILLIAM SEIPPEL~~[1] and WORTHPOINT<br>CORPORATION,<br>　　　　　　　Defendants. | :<br>:<br>: Civil Action No. 18-cv-00993-RA-SLC<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

### DEFENDANT WORTHPOINT'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES TO PLAINTIFF

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the Local Civil Rules of the Southern District of New York, and pursuant to the Order of Judge Sarah Cave, dated February 1, 2022, WORTHPOINT CORPORATION  (hereinafter "WORTHPOINT") by their counsel, Wilson Elser Moskowitz Edelman & Dicker, LLP, hereby request that Plaintiff ANNAMARIE TROMBETTA (hereinafter "Plaintiff") provide the documents described below for inspection and copying by counsel for WorthPoint at the offices of Wilson, Elser Moskowitz, Edelman & Dicker LLP, 150 E. 42nd Street, New York, New York 10017, on or before **April 8, 2022**, with such inspection and copying to continue from day to day until completed. In the alternative, plaintiff may make copies of the requested documents available to all counsel for the parties on or before April 8, 2022.

WORTHPOINT also hereby requests that Plaintiff ANNAMARIE TROMBETTA answer under oath, in accordance with Rule 33 of the Federal Rules of Civil Procedure, the following interrogatories directed to Plaintiff, on or before **April 8, 2022**.

---

[1] Pursuant to the Court's December 21, 2021 Order, Defendant William Seippel was dismissed from this case.

266984886v.2

**Definitions**

A. The definitions and rules of construction contained in Rules 26 and 34(a) of the Federal Rules of Civil Procedure and in the Local Civil Rules of the Southern District of New York are incorporated herein by reference, and are made a part hereof, except insofar as such definitions or rules of construction are specifically amended or supplemented below.

B. "Artwork" means the artwork described as 1972 oil painting entitled "Man with Red Umbrella", which Plaintiff claims was misattributed to her by the Defendants.

C. "AskArt" means online research database, available at www.askart.com.

B. "Complaint" means the "Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff''s [sic] Amended Complaint" filed by Plaintiff in the above-captioned matter in the United States District Court for the Southern District of New York on or about February 21, 2020 (Docket Number #36), which was deemed by the Court to be the Operative Complaint by Opinion and Order of the Court, dated March 19, 2020 (Docket Number #40 at 2 n.2).

C. "Lawsuit" means the above-referenced case, styled as *Annamarie Trombetta v. Norb Novocin, Marie Novocin, Estate Auctions, Inc. and WorthPoint Corporation*, Case No. 18-cv-00993-RA-SLC (S.D.N.Y.).

D. "EAI Defendants" means co-defendants Norb Novocin, Marie Novocin, Estate Auctions, Inc, their representatives and agents.

E. "You," "Your," and "Plaintiff" means and refers to, Plaintiff Annamarie Trombetta, as identified in the Complaint, and any and all persons acting on behalf of Plaintiff, including without limitation, Plaintiff's current or former business and/or creative partners, associates, independent contractors, interns, draftsmen, managers, agents, vendors, partners, successors,

266984886v.2

predecessors, affiliates, attorneys acting in concert, representatives, and all other persons acting or purporting to act with, for, or on her behalf, including but not limited to collaborators, consultants, accountants, financial advisors, advisors, attorneys, or any person acting in an advisory or consulting capacity, unless specifically stated otherwise.

F.  "WORTHPOINT" means Defendant WORTHPOINT CORPORATION and any of their current or former business and/or creative partners, directors, officers, independent contractors, affiliates, predecessors, successors, parents, subsidiaries, partners, advisers, associates, employees, managers, agents, servants, representatives, corporate alter egos and all other persons acting or purporting to act with, for, or on its behalf, including but not limited to consultants, advisors, attorneys, or any person acting in an advisory or consulting capacity, unless specifically stated otherwise.

G.  "Plaintiff's Biography" means Plaintiff's biography, as it appears or previously appeared on her website during all relevant times and in which plaintiff claims copyright.

H.  The terms "and" and "or" shall each be construed broadly and shall each mean "and" or "or" or "and" and "or" wherever such meaning broadens the meaning of the sentence or phrase.

I.  "Concerning" means relating to, referring to, reflecting, describing, evidencing, interpreting, consisting of, pertaining to, regarding, or constituting, in whole or in part, directly or indirectly, the matter identified.

J.  The terms "relate to," "relates to," "relating to," and "related to" shall mean and include: refer, reflect, discuss, show, constitute or be in any way logically or factually connected with the matter discussed.

266984886v.2

**SA1664**

K.  "Document" includes all written, graphic matter, handwriting, typewriting, audio or video tape recordings, however produced or reproduced, of every kind and description, including but not limited to, the original and each copy thereof which is non-identical by reason of any mark, change, or other cause or reason whatsoever, of all correspondence, records, reports, memoranda, notes, facsimiles, messages and message books, email, text messages, WhatsApp or other electronic messages, social media messages, telephone logs, memoranda of telephone conversations, publications, books, brochures, booklets, manuals, flyers, leaflets, contracts, memoranda of agreement, books of account, ledgers, journals, working papers, records or summaries of personal interviews or conversations, appointment calendars, diaries, receipts, invoices, billing statements, files, tapes, discs, drives, data cards, films, data processing files and all other computer-readable records or programs, including any and all drafts or non-identical copies thereof. Documents in electronic or digital form stored in any format, discs, drives, data, cards, data processing files and other computer-readable records or programs must be produced in reasonably usable form (e.g., by printing or "downloading" such documents onto paper). In addition, all electronic documents must be produced in native electronic format on a DVD or CD or other common, easily- readable storage device, or through a secure online delivery system that is secure and contains no malicious code or code designed to record actions of the recipient or send information back to the sender. (The word "writing" may be used synonymously herein in place of "document.")

L.  "Communication" means any and all oral or written contact between two or more persons including, without limitation, any meetings, conferences, face-to-face conversations, telephone, teleconference, video conference, voice mail, audio recording, video recording, mails, electronic transmissions, electronic mail (email), text messaging, WhatsApp

266984886v.2

messaging, social media messaging, instant messaging (IM), facsimile or any other forms of oral or written communications by any other medium.

M.  When used in reference to a person, the term "identify" shall mean to state the full name and job title of such person and, in the event such person is currently not an employee of Plaintiff, such person's last known residence address and telephone number.

N.  When used in reference to a Document, the term "identify" shall mean to state the date the Document bears, if any, its author(s), location, and a brief description of its form (e.g., memorandum, e-mail, letter, etc.) and contents, as well as the identity of the person(s) known to have possession, custody, or control over the Document.

O.  "Agreements" shall mean and include any oral or written (in pen, typed, printed or electronic) arrangement between two or more parties.

**Instructions**

1.  WORTHPONT's First Request for the Production of Documents and First Set of Interrogatories to Plaintiff (the "Requests") adopt and incorporate by reference the rules of construction set forth in the Local Civil Rules of this Court.

2.  In construing these Requests, the singular form of the word should be interpreted in the plural and vice versa, as in each case is most appropriate. Wherever used, references to the masculine, feminine, or neither gender shall include the neuter, feminine and masculine genders, as the context requires.

3.  In producing responsive Documents for inspection and copying, Plaintiff is required to furnish all Documents known or available to Plaintiff regardless of whether the Documents are possessed directly by Plaintiff, her agents, consignees, representatives or investigators; or by its present or former attorneys or their agents, employees, representatives or investigators.

266984886v.2

4. Plaintiff is to produce each document in the form and condition in which it exists on the date of service of this request with all comments, notes, remarks or other material that may have been added to the document after its initial preparation, as well as the original version if it can be obtained. Plaintiff is to furnish a table of organization with her responses, which should indicate which Documents being produced correspond with which of the categories in the Requests.

5. Should Plaintiff object to or otherwise decline to respond to any portion of these requests, the grounds for objecting or otherwise declining to respond shall be stated with specificity and clarity and Plaintiff shall provide a statement specifying any document or communication withheld due to such objection, or withheld on any other asserted basis.

6. If any statement, communication, document, or information in any way responsive to these requests is withheld under any form of privilege or other basis for non-disclosure, whether based on statute or otherwise, state the following with regard to each statement, communication, document, or information:

(a) The date(s) the document was created, sent and received;

(b) The name, the current or last known home and business addresses, the telephone numbers, and the title (or position) and occupation of the individual(s) who authored or prepared the document and who were recipients of the document;

(c) A description of the document sufficient to identify it without revealing the information for which the privilege is claimed, including the general subject matter and character of the document (e.g., letter, memorandum, notes);

(d) The location of the document;

266984886v.2

**SA1667**

(e)  The name and address of the custodian having present custody or control of the document; and,

(f)  The privilege asserted with regard to the document and the specific basis of the claim of privilege;

7.  If Plaintiff has at any time relinquished possession, custody or control of, or destroyed any document responsive to any request, Plaintiff shall identify each document as set forth in paragraph 6 above and as to an existing document, identify the persons, if any, who currently have possession, custody or control of it.

8.  These requests are continuing in character, and the responses are to be modified or supplemented from time to time as appropriate should information requested be obtained by Plaintiff, her representatives, agents, or counsel after its initial responses, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

9.  If Plaintiff encounters any ambiguity in construing a request, definition, or instruction herein, Plaintiff shall use her best efforts to interpret the request, definition, or instruction within the context of this litigation and shall set forth the matter deemed ambiguous, and the construction or interpretation utilized in responding.

## DEMAND FOR DOCUMENTS

1.  Documents and Communications, including any emails, recordings of phone calls and any Agreements, as between two or more of Plaintiff, WorthPoint, EAI Defendants, and/or third-parties, from 2010 to present concerning or relating to the Artwork, Plaintiff's Biography, or requests for removal of the listing referencing or incorporating the Artwork (or any part thereof) and/or Plaintiff's Biography from WorthPoint's website and/or from Google;

266984886v.2

**SA1668**

2.  Documents and Communications showing that Plaintiff is the author or creator of Plaintiff's Biography.

3.  Documents and Communications that Plaintiff submitted to the U.S. Copyright Office for the purposes of registering the copyright in her website and/or Plaintiff's Biography.

4.  A copy of the deposit material Plaintiff submitted to the U.S. Copyright Office along with her copyright application for her website and/or Plaintiff's Biography.

5.  Samples of Plaintiff's signature from 2015 and from 1972;

6.  Samples of any artworks created by Plaintiff in or about 1972.

7.  A catalogue raisonné or images of all of Plaintiff's artworks that have been sold or transferred to others.

8.  Documents concerning Plaintiff's standing and recognition in the art market, including any catalogues raisonnés, other scholarly compilations of Plaintiff's body of work, reviews, curatorial statements, exhibition catalogues, or any other forms of recognition from art experts and the art community at large.

9.  Documents showing the full original listing on WORTHPOINT's website, in color, regarding the Artwork (or any part thereof) and/or Plaintiff's Biography.

10. Documents on which Plaintiff will rely in showing that the listing featuring the Artwork (including any part thereof) and/or Plaintiff's Biography remained on WORTHPOINT's website after January 1, 2017.

11. Documents and Communications, including any Agreements, as between Plaintiff and AskArt concerning the use of Plaintiff's Biography.

12. Documents and Communications regarding, referencing or relating to Plaintiff's licensing the use of Plaintiff's Biography to third parties, from 2010 to present, including but not

266984886v.2

**SA1669**

limited to any monetary compensation, if any, that Plaintiff may have received from third-parties for the use of Plaintiff's Biography.

13. Copies of Plaintiff's tax returns from 2010 to present.

14. Documents showing all artwork sales made by plaintiff from 2010 to present.

15. Copies of deposition transcripts from plaintiff's prior litigations, including the litigation concerning the Staten Island Ferry accident, in which Plaintiff testified as to her earnings as an artist.

16. Documents and Communications showing that Plaintiff lost art sales due to or after the publication of the listing incorporating the Artwork, Plaintiff's Biography (or any portions thereof) on WorthPoint's website.

17. Communications from and to any person other than the Defendants regarding the publication of the listing incorporating the Artwork or Plaintiff's Biography (or any portions thereof) on WorthPoint's website.

18. Copies of any receipts or proofs of any damages Plaintiff claims she suffered as alleged in this lawsuit.

### INTERROGATORIES

1. Identify the names and addresses of all persons who are believed or known by Plaintiff, her agents, or her past or current attorneys to have any knowledge concerning any of the issues in this Lawsuit; and specify the subject matter about which the witness has knowledge.

2. List all Documents that were provided to or returned to Plaintiff concerning the Artwork and/or Plaintiff's Biography, including but not limited to:

   a. communications from or to WORTHPOINT;

266984886v.2

    b. communications from or to EAI Defendants; and

    c. any documentation, notifications or otherwise related to the removal of the listing exhibiting the Artwork, Plaintiff's Biography (or any portion thereof) from WorthPoint's Website and/or from Google.

3. Describe each and every communication between Plaintiff and WORTHPOINT during the relevant time period, including whether such communication was in writing or be telephone.

4. Identify the date when Plaintiff first viewed the listing exhibiting the Artwork, Plaintiff's Biography (or any portion thereof) on WorthPoint's Website; the last date when Plaintiff viewed said listing and the URL at which such listing(s) appeared on WorthPoint's website.

5. Describe the steps taken by Plaintiff since 2016 to confirm whether the listing exhibiting the Artwork, Plaintiff's Biography (or any portion thereof) was removed from WorthPoint's Website.

6. Identify the names and addresses of all persons who prepared, created or assisted Plaintiff with the preparation of Plaintiff's Biography, and the time period when such person provided assistance.

7. Identify the names and addresses of all persons or entities to whom Plaintiff has given permission and/or license to use Plaintiff's Biography.

8. Identify the names and addresses of all persons with knowledge as to Plaintiff's standing and recognition in the art market.

9. Identify the names and addresses of all persons with knowledge as to Plaintiff's alleged loss of sales or income since the publication of the listing referencing or incorporating the Artwork (or any part thereof) and/or Plaintiff's Biography from WorthPoint's website.

266984886v.2

PLEASE TAKE NOTICE, that the foregoing are continuing demands and should Plaintiff

come into possession, custody or control of any responsive documents after her response, she

shall immediately supplement her response with the provision of such material.

Dated:  February 25, 2022

<div style="margin-left: 45%;">

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

By: ___*s/ Jana Slavina Farmer*_____

Adam R. Bialek
666 Old Country Road
Suite 602
Garden City, NY 11530
Telephone: (212) 915-5143
Fax:  (212) 490- 3038
Adam.Bialek@wilsonelser.com
Jana S. Farmer
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Ave.
White Plains, NY 10604
(914) 872-7247 (Direct)
(914) 323-7001 (Fax)
Jana.Farmer@wilsonelser.com

***Attorneys for Defendant WorthPoint Corporation***

</div>

To:     Annamarie Trombetta
        *Plaintiff Pro Se*
        175 East 96th Street
        Apt. 12R
        New York, NY 10128

        Anderson Duff
        Hogan Duff, LLP
        Attorneys for Defendants
        Norb Novocin, Marie Novocin
        and Estate Auctions, Inc.
        43-10 Crescent St.
        Ste. 1217
        Long Island City, NY 11101
        (646) 450-3607

266984886v.2

ajd@hoganduff.com

266984886v.2

**SA1673**

18-cv-00993-RA-SLC                                         File No. 19701.00006

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

ANNAMARIE TROMBETTA,

                Plaintiff,

    - against –

NORB NOVOCIN, MARIE NOVOCIN,
ESTATE AUCTIONS, INC., ~~WILLIAM
SEIPPEL~~ and WORTHPOINT
CORPORATION,

            Defendants.

---

---

---

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
**Attorneys for Defendant**
**WORTHPOINT CORPORATION**
**150 East 42nd Street**
**New York, New York  10017**
**(212) 490-3000**

266984886v.2

**SA1674**

United States District Court
Southern District of New York

_____

AnnamarieTrombetta
Plaintiff
vs.

Norb Novocin, Marie Novocin  and
Estate Auctions Inc.
William Sieppel and WorthPoint Corp.
5 Concourse Parkway NE, Suite 2850
Atlanta, Georgia 30328
Defendants

_____

**PLAINTIFF'S  RESPONSES  FOR THE**

**PRODUCTION  OF  DOCUMENTS  AND**

**PHOTOS  AND  INTERROGATORIES**

**FROM   DEFENDANTS**

**WORTHPOINT   CORPORATION**


### PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS FIRST REQUEST FOR DOCUMENTS AND FIRST SET OF INTERROGATORIES

Plaintiff , pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court, responds and objects to Defendants'  Norb and Marie Novicin and Estate Auctions Inc First Request for Documents and First Set of Interrogatories as follows:

#### PRELIMINARY STATEMENT

 1.  Plaintiff's investigation and development of all facts and  circumstances relating to this action is ongoing.  These responses and objections are made without prejudice to and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

2. By making the accompanying responses and objections to Defendant's requests for documents and interrogatories, Plaintiff does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Plaintiff makes the responses and objections herein without in any way implying that it considers the requests and interrogatories, and responses to the requests and interrogatories, to be relevant or material to the subject matter of this action.

3. Plaintiff will produce responsive documents only to the extent that such documents are in the possession, custody, or control of the Plaintiff , as set forth in the Federal Rules of Civil Procedure .Plaintiff's possession, custody, or control does not include any constructive possession that may be conferred by Plaintiff's right or power to compel the production of documents or information from third parties or to request their production from other divisions of the Department of Justice or agencies of the United States.

4.  A response to a document request or interrogatory stating that objections and/or indicating that documents will be produced shall not be deemed or construed that there are, in fact, responsive documents, that Plaintiff performed any of the acts described in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory, or that Plaintiff acquiesces in the characterization of the conduct or activities contained in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory.

5. Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

6. Plaintiff will make available for inspection at Plaintiff's offices responsive documents. Alternatively, Plaintiff will produce copies of the documents.

7. Publicly available documents including, but not limited to, newspaper clippings, court papers, and documents available on the Internet, will not be produced.

## GENERAL  OBJECTIONS

1. Plaintiff objects to each instruction, definition, document request, and interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2. Plaintiff objects to each document request and interrogatory that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

3. Plaintiff objects to each document request to the extent that it calls for production of a privilege log for internal documents of Plaintiff. A request for such a log is unreasonable and unduly burdensome in light of the work product doctrine, governmental deliberative process privilege, and other privileges protecting such internal documents from discovery.

4. Plaintiff objects to each instruction, definition, document request, and interrogatory to the extent that it seeks documents protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by Plaintiff occur, it is inadvertent and shall not constitute a waiver of any privilege.

5. Plaintiff objects to each instruction, definition, document request, and interrogatory as overbroad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Defendant from Defendant's own files, from documents or information in Defendant's possession, or from documents or information that Defendant

**SA1676**

previously produced to Plaintiff. Responding to such requests and interrogatory would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such requests and interrogatory is substantially the same or less for Defendant as for Plaintiff. This objection encompasses, but is not limited to, documents and answers to interrogatories previously produced by Plaintiff in the course of Plaintiff's civil investigation. All such documents and information will not be produced.

6. Defendant's document requests and interrogatory call for the production of documents and information that were produced by the Plaintiff and by other entities and that may contain confidential, proprietary, or privileged information.

7. To the extent any of Defendant's document requests or its interrogatory seek documents or answers that include expert material, including but not limited to survey materials, Plaintiff objects to any such requests and interrogatory as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court.

8. Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Plaintiff does not waive its right to amend its responses

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.Plaintiff objects to over broad and unduly burdensome to the extent it attempts to extend the scope of this document request to documents in the possession, custody, or control of individuals, agencies, or entities other than the Plaintiff and its present employees, principals, officials, agents, attorneys, economists, and or other consultants either involved to or reviewing this case.

2. Plaintiff objects to "document" or "documents" to the extent that it purports to impose obligations greater than those set forth in the Federal Rules of Civil Procedure. Plaintiff further objects t to the extent that it calls for documents protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege.

3. Plaintiff objects to"third party" to the extent it relies on the undefined term "third party" to those individuals and entities interviewed or somehow in connection to or by Plaintiff . In the course of its civil investigation, Plaintiff will treat the term "third party," as extending to all individuals and entities, not named as parties to this lawsuit, listed on Plaintiff's Rule 26(a)(1) Initial Disclosure.

**SA1677**

4. Plaintiff objects to regarding "statement" to the extent it relies on the undefined term and the defined term "third party." Therefore, there are no "statements" as that term is defined. Subject to and notwithstanding this objection, Plaintiff will use the more expansive definition of "third party" that it has provided i and it will treat "statements" as covering those made by the individuals and entities listed in Plaintiff's Rule 26(a)(1) Initial Disclosures during Plaintiff's civil investigation to the extent that it uses the undefined term "during." "During" can be construed to mean "at the time of," instead of "in the course of." To the extent that "during" is intended to mean "at the time of," Plaintiff objects to this definition as overbroad because it would call for materials unrelated to this action. Plaintiff will construe "during" to mean "in the course of."

5. Plaintiff objects to the extent that it calls for documents protected from disclosure  deliberative process privilege, attorney work product doctrine, or any other applicable privilege.

6. Plaintiff objects on the grounds that it is vague and ambiguous, that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence, and that it is overly broad and unduly burdensome, to the extent that it calls for the production of documents in the format as they may be maintained in files outside of the principal investigatory and case files. Copies of certain materials, including internal memoranda to which documents obtained from outside parties may have been attached, are circulated to and may be maintained in files kept in the WorthPoint  files other than the principal investigatory and case files. The originals of all such memoranda and documents are maintained in the principal investigatory and case files, and any handwritten annotations or comments that may be added to such documents by the Plaintiff in this case  would be protected by the work product doctrine, governmental deliberative process privilege, or other applicable protection  . Plaintiff objects to producing these duplicative, privileged materials from files other than the principal investigatory and case files. Plaintiff will produce responsive, non-privileged documents in the order or arrangement in which they are maintained within the principal investigatory and case files.

7. Plaintiff objects to documents "in your possession, custody, or control" and "created, transmitted, or received by you" to the extent that it purports to impose obligations greater than those set forth in the Federal Rules of Civil Procedure. Plaintiff further objects to this instruction as over broad and unduly burdensome to the extent it seeks (a) documents in the possession, custody, or control of individuals, agencies, or entities other than  the consultants either assigned to or reviewing this case, (b) documents and answers previously produced by Plaintiff in the course of Plaintiff's civil investigation (c) documents in possession, custody, or control or any other lawful privilege is applicable.

8.   Plaintiff objects to production of any documents or things that may be confidential prior to the entry of a protective order by the U.S. District Court, District of New York.

**SA1678**

## PLAINTIFF"S  OBJECTIONS  AND  RESPONSES  TO  DOCUMENT REQUESTS

**DEMAND FOR DOCUMENTS**

**1. Documents and Communications, including any emails, recordings of phone calls and any Agreements, as between two or more of Plaintiff, WorthPoint, EAI Defendants, and/or third-parties, from 2010 to present concerning or relating to the Artwork, Plaintiff's Biography, or requests for removal of the listing referencing or incorporating the Artwork (or any part thereof) and/or Plaintiff's Biography from WorthPoint's website and/or from Google;**
**RESPONSE**
Plaintiff objects to this document request as overly broad, burdensome, vague,  and ambiguous  to the extent that it relies on the term "agreements" which is not defined in in the Defendants Request for Documents and First Set of Interrogatories. Plaintiff will produce responsive, non-privileged documents in the order or arrangement in which they are maintained within the principal investigatory and case files. Plaintiff objects to this demand for documents , in part, because this request calls for documents already produced by the plaintiff  .  Notwithstanding Plaintiff need to clearly state—Plaintiff never had any business dealing with WorthPoint or Estate Auctions Inc. from 2010 to the present.   In August 2015 Plaintiff found a false internet posting misattributed alleged painting and alleged sale, yet to be seen, to the Plaintiff. Plaintiff submits will submit in a separate email  WorthPoints Demand for Documents #1 with Estate Auctions Inc Demand for Documents REQUEST NO. 11:
**All recordings of phone conversations or conversations between You and any of the Defendants, any employee or agent of Worthpoint, or any officer of this court including but not limited to any attorney representing Defendants or Worthpoint. three phone recording 1) Employees at eBay verifying that the post**

**2. Documents and Communications showing that Plaintiff is the author or creator of Plaintiff's Biography.**

**RESPONSE**
Plaintiff reserves all objections as to the competence, relevance, materiality, admissibility, or privileged status of any information provided in response to these Request for Documents, unless Plaintiff specifically states otherwise. Plaintiff further objects to this request, whether broadly or more narrowly construed, to the extent it seeks production of documents protected by the artist's/Plaintiff's  work product doctrine. Such documents include notes of Plaintiff's personal draft and final internal memoranda of Plaintiff, including private thought processes.etc. Notwithstanding the Plaintiff reminds the Defendants that my biography from my website and catalog have been filed. PLEASE NOTE—-My  self authored biography is the same on three locations  First—My 2003 catalog  Second My Website on my Biography page and Third since 2015 it was featured on the Ask Art website.  Plaintiff submits 3 forms of evidence
1)   T pages from the my draft/sketchbook from 2003—Plaintiff reserves the right to submit subsequent and additional pages in the future.

**SA1679**

2)Letter from Vanessa Ploski  Verifying Proof reading self authored biography
3) Receipt from 2003 from hired Copy Editor
Below are case file references to my catalog and website biography
Case 1:18-cv-00993-RA-SLC Document 33 Filed 01/17/20 Page 54 of 63
Case 1:18-cv-00993-RA-SLC Document 29-1 Filed 12/03/19 Page 12 thru  16
Catalog Pages 12 -13 -14  and Website text —-15 & 16.

**3. Documents and Communications that Plaintiff submitted to the U.S. Copyright Office for the purposes of registering the copyright in her website and/or Plaintiff's Biography.**

**RESPONSE**

Plaintiff  objects to the Interrogatories to the extent they require information from US Copyright in which  Plaintiff does not have a controlling interest.  Plaintiff objects to the Interrogatories to the extent they call for information which "concerns" or "relates to" a particular topic on the ground that providing information with any relationship to a particular topic is unduly burdensome and out of proportion to the information's the Plaintiff can obtain.   Without waiving any objections, Plaintiff  will use appropriate efforts to ensure all information is provided reasonably "concerning" or "relating to" a particular topic. Notwithstanding Plaintiff informs the Defendants and their Attorneys that the application for copyright registration is online
Please see Exhibit to Response #3 to confirm Plaintiff's 14

**4.  A copy of the deposit material Plaintiff submitted to the U.S. Copyright Office along with her copyright application for her website and/or Plaintiff's Biography.**

**RESPONSE**

Plaintiff  objects to the Interrogatories to the extent they require information from US  Copyright officin which Plaintiff  does not have a controlling interest.  Plaintiff objects to the Interrogatories to the extent they call for information which "concerns" or "relates to" a particular topic on the ground that providing information with any relationship to a particular topic is unduly burdensome and out of proportion to the information's the Plaintiff can obtain.  Without waiving any objections, Plaintiff  will use appropriate efforts to ensure all information is provided reasonably "concerning" or "relating to" a particular topic. Plaintiff objects because this interrogatory calls for pure conjecture and speculation. It is not the job of the plaintiff to guess what would have happened in after the Plaintiff deposited the required information online. Notwithstanding the Plaintiff submits an email confirming 14 uploaded online submissions. Submitted in several Case Documents is the Plaintiff's copyright  Certificate.

**5. Samples of Plaintiff's signature from 2015 and from 1972;**
Plaintiff objects to the extent that it calls for documents protected from disclosure  deliberative process privilege, attorney work product doctrine, or any other applicable privilege. Plaintiff

**SA1680**

objects to each document request and interrogatory that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding Request #5 has been submitted Signature from 2015 and from 1972

**6. Samples of any artworks created by Plaintiff in or about 1972.**
Plaintiff objects to this interrogatory as vague, ambiguous, argumentative, overbroad, and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff did not paint in oil in 1972.

**7. A catalogue raisonné or images of all of Plaintiff's artworks that have been sold or transferred to others.** Plaintiff  objects to this request as duplicative and burdensome to the extent that it calls for documents already produced to Defendant in response to Defendant's Request for Documents including  correspondence from third parties to Plaintiff.   Plaintiff further objects to this request as duplicative and burdensome to the extent that it calls for documents already produced to Defendants . Notwithstanding Plaintiff refers the Defendants to Case 1:18-cv-00993-RA-SLC Document 29-1 Filed 12/03/19 Page 12 thru  16 Catalog Pages 12 -13 -14  and Website text —-15 & 16.

**8. Documents concerning Plaintiff's standing and recognition in the art market, including any catalogues raisonnés, other scholarly compilations of Plaintiff's body of work, reviews, curatorial statements, exhibition catalogues, or any other forms of recognition from art experts and the art community at large.**

Plaintiff objects to"third party" to the extent it relies on the undefined term "third party" to those individuals and entities interviewed  or somehow in connection to or by Plaintiff .  In the course of its civil investigation, Plaintiff will treat the term "third party," as extending to all individuals and entities, not named as parties to this lawsuit, listed on Plaintiff's Rule 26(a)(1) Initial Disclosure. Notwithstanding Plaintiff refers Defendants to the Credential Page on my Website Artist Infor with Quotes on the Artist Section. **https://www.trombettaart.com/info.html** Secondly, there is the internet listings. Third I have attached photos of the Plaintiff with Mayor Bloomberg —Mayor Guiliani —His Holiness the Dalai Lama and with world renown celebrity Ryan Seacrest  artist and Mark Kostabi. in the Exhibits forEstate Auctions Inc.

**9. Documents showing the full original listing on WORTHPOINT's website, in color, regarding the Artwork (or any part thereof) and/or Plaintiff's Biography.**
Plaintiff  objects to this request as duplicative and burdensome to the extent that it calls for documents already produced to Defendant in response to Defendant's Request for Documents including  correspondence from third parties to Plaintiff.   Plaintiff further objects to this request as duplicative and burdensome to the extent that it calls for documents already produced to Defendants .  Notwithstanding Plaintiff has submitted colored images of the fake ad, etc.

**SA1681**

**10. Documents on which Plaintiff will rely in showing that the listing featuring the Artwork (including any part thereof) and/or Plaintiff's Biography remained on WORTHPOINT's website after January 1, 2017.** Plaintiff  objects to this request as duplicative and burdensome to the extent that it calls for documents already produced to Defendant in response to Defendant's Request for Documents including  correspondence from third parties to Plaintiff.   Plaintiff further objects to this request as duplicative and burdensome to the extent that it calls for documents already produced to Defendants. Notwithstanding Plaintiff has submitted at least four different print outs from WorthPoint aside from the website listing, Please review.

**11. Documents and Communications, including any Agreements, as between Plaintiff and AskArt concerning the use of Plaintiff's Biography.**

Plaintiff objects to this document request as overly broad, burdensome, vague, and ambiguous to the extent that it relies on cause and effect data regarding an internet link that is accessible to any source that accesses a computer. Notwithstanding Plaintiff has submitted an email to Bob Baker from Plaintiff giving my consent to have my website  biography and catalog biography for the askArt webste. Below is a link from web.archive and attached is a print out that verifies the Plaintiff's year of entry on askari to be 2015 as Plaintiff has stated consistently. See Exhibit #11 https://web.archive.org/web/2015*/https://www.askart.com/artist/ Annamarie_Trombetta/11156459/Annamarie_Trombetta.aspx

**12. Documents and Communications regarding, referencing or relating to Plaintiff's licensing the use of Plaintiff's Biography to third parties, from 2010 to present, including but not  limited to any monetary compensation, if any, that Plaintiff may have received from  third-parties for the use of Plaintiff's Biography.** Plaintiff objects to this interrogatory because it seeks information from third parties and information. Plaintiff objects to this document request as overly broad, burdensome, vague, and ambiguous to the extent that it relies on cause and effect data regarding an internet link. Notwithstanding Plaintiff has given permission in writing for my biography to appear on askArt and that is the only other site that my  website and catalog biography is presented. M

**13. Copies of Plaintiff's tax returns from 2010 to present.** Plaintiff objects  as this request is overly broad and unduly burdensome to the extent it attempts to extend the scope of this document request to documents in the possession, custody, or control of  other individuals, agencies, or entities.Plaintiff objects to the entirety of this request because it is not reasonably calculated to lead to admissible evidence. Instead, it was filed for the purpose of harassing, oppressing, embarrassing and annoy  the Plaintiff. Plaintiff objects to this interrogatory as vague, ambiguous, argumentative, overbroad  and unduly burdensome.  P

**SA1682**

The violations by both Defendant are consistent with the damages and fines that are awarded to any victim or Plaintiff whose claims have been proven. Plaintiff's taxes are  irrelevant  The law entitles Plaintiff  to damages without having to show earnings.In Plaintiff's first Settlement letter I clearly presented the statutes and awards for  Direct Copyright Infringement —-DMCA and violations of  willful VARA etc.

**14. Documents showing all artwork sales made by plaintiff from 2010 to present.**
Plaintiff objects to Instruction No. 14 on the grounds that it is vague and ambiguous,  overly broad and burdensome  andthat it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the entirety of this request because it is not reasonably calculated to lead to admissible evidence. Instead, it was filed for the purpose of harassing, oppressing, embarrassing and annoy the Plaintiff. Plaintiff objects to this interrogatory as vague, ambiguous, argumentative, overbroad  and unduly burdensome.  Plaintiff reserves the right to present such sales at trial.

**15. Copies of deposition transcripts from plaintiff's prior litigations, including the litigation concerning the Staten Island Ferry accident, in which Plaintiff testified as to her earnings as an artist.**
Plaintiff objects to REQUEST No. 15 on the grounds that it is  not applicable,  ambiguous, overly broad , burdensome  and that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence . Plaintiff objects to the REQUEST and any implied or express instruction or direction in this request  that impose or seeks to impose burdens greater than those imposed by the Federal Rules of Civil Procedure. Plaintiff objects to this interrogatory as ,ambiguous, argumentative, overly broad, and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.
Not withstanding the forgoing Plaintiff  informs the Defendants and their Attorneys who have brought to the Court's attention my injuries sustained in the 2003 Staten Island Ferry Crash. Plaintiff submits  Doctor Russel Silver — **A**ltman Physical Therapy from 2015 to 2018. The stress endured by the Plaintiff and the misinformation given to me by WorthPoint made it almost impossible to inform the company that 1972 fake painting was not created by the Plaintiff. Exhibits #22 is 7 pages This request is meant to harass and inflict emotional memories of a traumatic event that was very frightening and created severe injuries.  Plaintiff finds this to be a grave insult and disrespectful to the trauma I suffered. SEE EXHIBITS in Estate Auction Inc.

**16. Documents and Communications showing that Plaintiff lost art sales due to or after the publication of the listing incorporating the Artwork, Plaintiff's Biography (or any portions thereof) on WorthPoint's website.** Plaintiff objects to this interrogatory as overly broad and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects and finds this request overly broad burdensome. Plaintiff

**SA1683**

objects to this interrogatory because it calls for the plaintiff to make a "potential " conclusion. Plaintiff objects to No. 16 on the grounds that it is vague and ambiguous, that it calls for the production of documents that are not reasonably calculated or may lead to admissible evidence.

**17. Communications from and to any person other than the Defendants regarding the publication of the listing incorporating the Artwork or Plaintiff's Biography (or any portions thereof) on WorthPoint's website.** Plaintiff objects to this interrogatory. overly broad, and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to this request to the extent that it calls for production of a privilege log for internal documents of Plaintiff. A request for such a log is unreasonable and unduly burdensome it purports to impose obligations greater than those set forth in the Federal Rules of Civil Procedure. Notwithstanding Plaintiff has submitted to Estate Auctions Inc some email that relate to the request.

**18. Copies of any receipts or proofs of any damages Plaintiff claims she suffered as alleged in this lawsuit.** Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Plaintiff does not waive its right to amend its responses. Plaintiff objects to Definition No. 15 regarding the extent that it purports to impose obligations greater than those set forth in the Federal Rules of Civil Procedure The request is overly broad.

**INTERROGATORIES**

1. **Identify the names and addresses of all persons who are believed or known by Plaintiff, her agents, or her past or current attorneys to have any knowledge concerning any of the issues in this Lawsuit; and specify the subject matter about which the witness has knowledge.**
Plaintiff objects to this interrogatory as overly broad , duplicative and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to this request as duplicative and burdensome to the extent that it calls for documents already produced to Defendant in response to Defendant's Request for Documents including correspondence from third parties to Plaintiff. Plaintiff further objects to this request as duplicative and burdensome to the extent that it calls for documents already produced to Defendants .

**2. List all Documents that were provided to or returned to Plaintiff concerning the Artwork and/or Plaintiff's Biography, including but not limited to:**

**SA1684**

**a. communications from or to WORTHPOINT;**
**b. communications from or to EAI Defendants; and**
**c. any documentation, notifications or otherwise related to the removal of the listing exhibiting the Artwork, Plaintiff's Biography (or any portion thereof) from WorthPoint's Website and/or from Google.**

Plaintiff  objects to this request as duplicative and burdensome to the extent that it calls for documents already produced to Defendant in response to Defendant's Request for Documents including  correspondence from third parties to Plaintiff.   Plaintiff further objects to this request as duplicative and burdensome to the extent that it calls for documents. Notwithstanding the Plaintiff did not receive any confirmation at any time from WorthPoint or Will Seippel of Greg Watkins that the false internet post was removed from WorthPoint's website. No dater-email, written or verbal confirmation was sent or communicated to the Plaintiff. The burden to pursue to have this link removed was requested by the Plaintiff,  The false ad has been an ordeal since 2015.

**3. Describe each and every communication between Plaintiff and WORTHPOINT during the relevant time period, including whether such communication was in writing or be telephone.**
**REPONSE**

Plaintiff objects to this request as it is duplicative, . Plaintiff has answered this interrogatory and finds it to be a overly broad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Defendant  and also from Defendant's own files, from documents or information in Defendant's possession, or from documents or information that the Plaintiff has previously produced.

**4. Identify the date when Plaintiff first viewed the listing exhibiting the Artwork, Plaintiff's Biography (or any portion thereof) on WorthPoint's Website; the last date when Plaintiff viewed said listing and the URL at which such listing(s) appeared on WorthPoint's website.**
**RESPONSE**

Plaintiff objects to this request as  being overly broad and outside the scope of the Plaintiff's control or documentation  Plaintiff objects to each instruction, definition, document request, and interrogatory as overly  broad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Defendant from Defendant's own files. Notwithstanding the Plaintiff has filed in the case documents.  In mid or late August of 2015 the Plaintiff found  in a Google Search under my profession "Annamarie Trombetta Artist" , under Annamarie Trombetta  under "1972 Original OilMan With Red Umbrella"  a links to the WorthPoint website.  The links include "Marilyn Monroe Photo by Michael Ochs  1998.
  To recap, in August 2015, when the Plaintiff  first found the EAI misattribution, ad,   I diligently pursued  e Bay and WorthPoint in order to get the fake information under my name, professional listing "  etc. Artist Annamarie Trombetta"  off  the internet.   WorthPoint, was the first Defendant that I had to contact,  I was  presented with  incorrect information  which

**SA1685**

contributed to the extended amount of time I had to invest to  remove the Misattributed Painting, the photo with the signature "A. Trombetta" with the false  CMI.  Below is the response email from November 2015 from Anita B who kept telling me to contact eBay in order to get the listing off the internet. An abnormal amount of calls and emails proceeded the email below.  In like fashion, when I did communicate to Anita B. I was NOTt he artist,  a new series of emails and phone calls was required of the Plaintiff . All written communication   to WorthPoint is below.

**NOV 16, 2015** | 08:35AM EST
**Anita B.** replied:
Hello,
We do not buy or sell anything on the site. Rather, we buy sales records from various auction houses and sites and compile them into a price guide to help users determine the value of antiques and collectibles. **If this particular item sold on EBay. I recommend trying to contact EBay, as they may be able to provide you with the additional information you are seeking.**
**Kind Regards,**
**The WorthPoint Team**
**www.WorthPoint.com**
**(877) 481-5750**
**Regards,**
Customer Support Team
WorthPoint, Inc.

Filed in this case is a series of communication with / to WorthPoint from Plaintiff  to remove the Fraudulent link of the 1972 Original Oil Painting  with false  CMI . The facts remain, **WorthPoint** Corporation in February thru March 2016,  January 2017 **FAILED  to Contact me to inform me  WHY the post was still seen online nor did they CONFIRM the date or the fact that the False Trombetta Posting was permanently  taken down .  According to the DMCA rules WorthPoint had a legal  responsibility to remove it and to inform me ASAP.**

2)   On November 26, 2015 I emailed eBay and included the Nov. 16, 2015 email above and confronted eBay about the false post that was coming up on the internet under my name.

2) January 22, 2016  I email support@worthpoint.com to inquire about the false posting.
Case 1:18-cv-00993- Document 33 Filed 01/17/20 Page 23 of 63

3) January 29, 2016 to  support@worthpoint.desk-mail.com   I submitted the  Fraudulent Takedown  Ticket  #56607 Case 1:18-cv-00993- Document 33 Filed 01/17/20 Page 25 of 63

4) February 1, 2016 using the email support@worthpoint.com I contacted Anita B and allegedly WorthPoint webmaster Greg Watkins.

5) February 3, 2016  I spoke for almost 18 minutes with webmaster  Greg Watkins  and informed  Watkins that  I was not the Artist. I would have been nine years old and Mr. Watkins  laughed  when I said that. I asked Mr. Watkins to permanently  remove the FRAUDULENT  LINK from the WorthPoint website. Mr. Watkins gave me the email of Will Seippel and spelled it out. Watkins informed me that Seippel was at a conference in Vegas and that I should contact Seippel in writing .  I then gave and spelled my email at the time, "trombettaart@yahoo.com to Mr. Watkins to give to Mr. Seippel.will@worthpoint.com

# SA1686

I requested an immediate removal on 2/3/16. From Feb. 3rd to  Feb. 20th the internet post was still active on the internet.

6) **On February 20**, 2016  I emailed  will@worthpoint.com support@worthpoint.com In  Case 1:18-cv-00993-RA-SLC Doc.  33 Filed 01/17/20 Page 26-27-28 of  63. I also submitted a second Fraudulent **Ticket #57565- on Feb. 20, 2016 Doc.33 Page 29.**

7) I contacted Mr. Seippel and Mr. Watkins on **February 29, 2016  again**  regarding removing the fraudulent post  I still saw online WorthPoint never emailed to  confirm removal of it.

8) **On  March 1, 2016**,  I contacted  Mr. Seippel once again which is duly documented . I  still saw my  fake post online and did not receive any confirmed removal from WorthPoint Case 1:18-cv-00993-RA-SLC Document 33 Filed 01/17/20 Page 30 of 63

**9) On March 7, 2016 I once again emailed  Mr. Seippel.  I had  to confirm that the false links**
were permanently removed so that I would  NEVER  have to deal with this company AGAIN. Case 1:18-cv-00993-RA-SLC Document 33 Filed 01/17/20 Page 36 of 63

10) **March 8, 2016**  was my last email in the YEAR 2016 after 8 emails and several phone calls.  Duly documented  in an email above on March 3, 2016 Jason Packer requested from Mr. Seippel the active link regarding the TITANIC which was Linked to the 1972  Misattribution Mr. Packer  was informing Seippel if that he can file a "TEMPORARY  removal request from Google for the URL .  In addition in the same email is the same link that is a  GOOGLE CACHE. This   email was sent  to me in a string of responses by Will Seippel which included Mr. Packer.  **SEE  PAGE ABOVE .**

11) On **January 4, 2017,** it has been duly document in the Amended Complaint that  I, on said date, Jan. 4, 2017 ,   once again had to contact in writing  Will Seippel as I found the Fraudulent listing  on the WorthPoint website  under my name on the internet.  **IN THIS  EMAIL I REQUESTED A WRITTEN RESPONSE FROM WILL SEIPPEL WHO FAILED TO DO SO. Please Note** the **temporary removal** take down my Jason Packer—duly documented on the page above—Dates  March 2, 2016 & March 3, 2016—

12) On **April 27, 2017** I opened an email  from WorthPoint despite several "Unsubscribe" filings to be removed from WorthPoint's  email notification's listing. The  address was insider@ worthpoint.com with the date of April 24, 2017.  After opening this email, I Googled my name and once again found the Fraudulent listing under my name.  The last print out of the listing I have was  on May 7, 2017. The search to check for the Fraudulent listing under my name. was due to the unwanted email from insider@ worthpoint.com.

13) The last date that I have recorded regarding the False 1972 oil painting is May 7, 2017.

**5. Describe the steps taken by Plaintiff since 2016 to confirm whether the listing exhibiting the Artwork, Plaintiff's Biography (or any portion thereof) was removed from WorthPoint's Website.**

**SA1687**

Plaintiff  objects to this request as duplicative and burdensome to the extent that it calls for documents already produced to Defendant in response to Defendant's Request for Documents including  correspondence from third parties to Plaintiff.   Plaintiff further objects to this request as duplicative and burdensome to the extent that it calls for documents. Notwithstanding Plaintiff directs the Defendants to the information above.

**6. Identify the names and addresses of all persons who prepared, created or assisted Plaintiff  with the preparation of Plaintiff's Biography, and the time period when such person  provided assistance.** Plaintiff reserves all objections as to the competence, relevance, materiality, admissibility, or privileged status of any information provided in response to these Request for Documents, unless Plaintiff specifically states otherwise. Plaintiff further objects to this request, whether broadly or more narrowly construed, to the extent it seeks production of documents protected by the  artist's/Plaintiff's  work product doctrine. Such documents include notes of Plaintiff's personal draft and final internal memoranda of Plaintiff, including private thought processes.etc.
Notwithstanding the Plaintiff reminds the Defendants that my biography from my website and catalog have been filed. PLEASE NOTE—- I am the single person who wrote and created my biography. My  self authored biography began was completed in 2003, It  is  found in the same format in  three locations  First—My 2003 catalog  Second My Website on my Biography page and Third since 2015 it was featured on the Ask Art website.  Plaintiff submitted  3 forms of evidence.

**7. Identify the names and addresses of all persons or entities to whom Plaintiff has given permission and/or license to use Plaintiff's Biography.**  Plaintiff  objects to this request as duplicative and burdensome to the extent that it calls for documents already produced to Defendant in response to Defendant's Request for Documents including  correspondence from third parties to Plaintiff.   Plaintiff further objects to this request as duplicative and burdensome to the extent that it calls for documents. Notwithstanding Plaintiff directs the Defendants to the information above. Plaintiff has given permission to use my biography but has not issued any license for the use of any biographical information.

**8. Identify the names and addresses of all persons with knowledge as to Plaintiff's standing and recognition in the art market.**
Plaintiff objects to this interrogatory because it seeks information from third parties and information not within its possession, custody, control, or personal knowledge.    I object to the request  as it is overly broad, devoid of any  time frame. Plaintiff objects because the identification, photocopying, and production of the requested documents would be oppressively burdensome and costly. Notwithstanding the Plaintiff has submitted personal photos of the Artist Annamarie Trombetta with other noteworthy important, famous individuals.

**SA1688**

**9. Identify the names and addresses of all persons with knowledge as to Plaintiff's alleged loss of sales or income since the publication of the listing referencing or incorporating the Artwork (or any part thereof) and/or Plaintiff's Biography from WorthPoint's website.**

Plaintiff objects to this interrogatory because it seeks information from third parties and information not within its possession, custody, control, or personal knowledge.   I object to the request  as it is overly broad, devoid of any  time frame. Plaintiff objects to the entirety of this request because it is not reasonably calculated to lead to admissible evidence. Instead, it was filed for the purpose of harassing, oppressing, embarrassing and annoy  the Plaintiff.
Not withstanding the forgoing Plaintiff  once again submits  the fact that this lawsuit is under my name online at present   Plaintiff has already submitted the notarized letter.Plaintiff objects because the redundancy of this question .  Attached
1)is an email from Susan Golden dated January 9, 2015 with a price request for Wisteria Painting. Original and Filed copy Case 1:18-cv-00993-RA-SLC Document 72 Filed 07/13/20 Page 24 of 39  Case 1:18-cv-00993-RA-SLC Document 75 Filed 07/13/20 Page 32 of 34
2) Letter by Susan Goldstein dated March 4, 2029 regarding the "LOSS OF A SALE " for the Wisteria Arbor Mandala.Priced at $8500  with NY Sales $9244  Filed Copy
Case 1:18-cv-00993-RA-SLC Document 72 Filed 07/13/20 Page 25 of 39
Case 1:18-cv-00993-RA-SLC Document 75 Filed 07/13/20 Page 33 of 34
3) Color Image of Wisteria Arbor Mandala.Case 1:18-cv-00993-RA-SLC Document 72 Filed 07/13/20 Page 26 of 39  Case 1:18-cv-00993-RA-SLC Document 75 Filed 07/13/20 Page 34 of 34     4) Price List Case 1:18-cv-00993-RA-SLC Document 72 Filed 07/13/20 Page 27 of 39

**DEMAND FOR ADMISSIONS**

**Admit that the following statements are true:**
**1. Document annexed hereto as Exhibit A is a true and correct copy of the printout created by the Plaintiff.**

Plaintiff has never or will at any time "create" a document.  All documents filed within this case were  first and foremost , on the internet.  The Plaintiff on a computer in the resident  business center in  my building clicked onto the print out file which generated a verisimilitude version on the monitor of the computer.  Plaintiff Admits that a  true and correct print out was produced by the computer in the Plaintiff  business center. Plaintiff admits that it is is a true and correct copy of a computer printout. Plaintiff denies that it was created by Plaintiff.

**2. Plaintiff created the Document annexed hereto as Exhibit A by cutting and pasting the text of a listing from WorthPoint's website.**

**SA1689**

Plaintiff denies  creating any  Documents .Plaintiff simply hit the print out button on the computer and can only admit to this. Plaintiff denies "cutting and pasting the text of a listing from WorthPoint's website.

**3. Plaintiff created the Document annexed hereto as Exhibit A prior to 2017.**
Plaintiff denies creating any Documents.  The date on each document was imprinted by the printer  which  generated the document.   Plaintiff  admits to the use of a xerox machine and computer  that is not the personal property  of the Plaintiff.

**4. Plaintiff created a date-stamped printout of the previously-created Document annexed hereto as Exhibit A on May 7, 2017.**
The Plaintiff admits that the date on Exhibit A was  May 7, 2017.   As to the remainder of the admission request Plaintiff denies the same.

**5. Documents annexed hereto as Exhibit B are true and correct copies of Google search results performed by Plaintiff in 2017 regarding Plaintiff's name and the Artwork.**
Plaintiff  admits that the Google search was under Annamarie Trombetta Artist and is recorded in the search window.  Plaintiff Admits that the year is 2017 .As to the remainder of the admission request Plaintiff denies the same.

**6. Plaintiff did not access any of the underlying links to WorthPoint's website that referenced the Artwork as shown in the Documents annexed hereto as Exhibit B after January 1, 2017.**
   Deny.


**7. Plaintiff  is not in possession of any printouts of the listing featuring the Artwork from WorthPoints website (as distinguished from previously-created cut-and-pastes) that he obtained subsequent to January 1, 2017.**
   Deny.

**8. Plaintiff did not see any listing featuring the Artwork on WorthPoint's website subsequent to January 1, 2017.**
   Deny

**9.  Plaintiff is not claiming copyright in the Artwork.**
   Admit

**10. Plaintiff did not file a copyright application for the full text of her biography.**
   Deny.  Plaintiff's personal CMI is on the bottom of  my website biography page.

**SA1690**

**11. Plaintiff's earning capacity was not reduced or impaired as a result of WorthPoint's conduct as alleged in the Complaint.**
Deny.

**12. WorthPoint complied with Plaintiff's request to ask Google to remove the allegedly offending content from its search results.**
Deny.

Plaintiff admits that Google is a third party. Plaintif admits that I cannot verify or confirm that WorthPoint complied with Plaintiff's request to ask Google to remove the allegedly offending content from its search result. Plaintiff admits as evidenced in Document 33 filed on January 17, 2020 WorthPoint employee Jason Packer on March 3, 2016 admitted to filing a "temporary removal request w/Google. On the basis of the foregoing. Plaintiff denies the remainder of the allegation.

**13. Plaintiff did not lose any wages or income as a result of WorthPoint's conduct as alleged in the Complaint.**
Deny

**14. Plaintiff has photographs of the subject Artwork.**
Plaintiff denies any other photographs of the subject Artwork. Plaintiff admits to only one limited, cropped photo of a signature A. Trombetta .

**15. Plaintiff never signed any artwork "A. Trombetta."**
Plaintiff admits I would "Never" sign a large painting sized 48 .5 x 17 .5 inches as the 1972 Original Oil painting Man With Red Umbrella which described as "being quite large" and with the signature is "A. Trombetta" .

**16. Plaintiff created art, including oil paintings, in 1972.**    Deny

**SA1691**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------- X

ANNAMARIE TROMBETTA,                          :
                                              :
                          Plaintiff,          :    Civil  Action No. 18-cv-00993-RA-SLC
                                              :
            - against –                       :
                                              :
NORB NOVOCIN, MARIE NOVOCIN, ESTATE           :
AUCTIONS, INC., ~~WILLIAM SEIPPEL~~[1] and    :
WORTHPOINT CORPORATION,,                      :
                                              :
                          Defendants.         :
--------------------------------------------------------------------------- X

**DEFENDANT WORTHPOINT'S POST-DEPOSITION DEMANDS TO PLAINTIFF**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the Local Civil Rules of the Southern District of New York, Defendant WORTHPOINT CORPORATION (hereinafter "WorthPoint") by and through their counsel, WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP, hereby request that Plaintiff ANNAMARIE TROMBETTA (hereinafter "Plaintiff") produce at the offices of the undersigned within thirty (30) days after receipt of this notice, for discovery, inspection, copying, and photographing, the following documents and things:

**Definitions**

A.  The definitions and rules of construction contained in Rules 26 and 34(a) of the Federal Rules of Civil Procedure and in the Local Civil Rules of the Southern District of New York are incorporated herein by reference, and are made a part hereof, except insofar as such definitions or rules of construction are specifically amended or supplemented below.

B.  The following terms used in the below demands shall have the following meanings:

---

[1] Pursuant to the Court's December 21, 2021 Order, Defendant William Seippel was dismissed from this case.

1

- **"Artwork"** means the artwork described as 1972 oil painting entitled "Man with Red Umbrella", which Plaintiff claims was misattributed to her by the Defendants.

- **"AskArt"** means online research database, available at www.askart.com.

- **"Complaint"** means the "Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's [sic] Amended Complaint" filed by Plaintiff in the above-captioned matter in the United States District Court for the Southern District of New York on or about February 21, 2020 (Docket No. 36), which was deemed by the Court to be the Operative Complaint by Opinion and Order of the Court, dated March 19, 2020 (Docket No. 40, at 2 n.2).

- **"Lawsuit"** means the above-referenced case, styled as *Annamarie Trombetta v. Norb Novocin, Marie Novocin, Estate Auctions, Inc., and WorthPoint Corporation*, Case No. 18-cv-00993-RA-SLC (S.D.N.Y.).

- **"EAI Defendants"** means co-defendants Norb Novocin, Marie Novocin, Estate Auctions, Inc., their representatives, and their agents.

- **"You," "Your," and "Plaintiff"** means and refers to, Plaintiff Annamarie Trombetta, as identified in the Complaint, and any and all persons acting on behalf of Plaintiff, including, without limitation, Plaintiff's current or former business and/or creative partners, associates, independent contractors, interns, draftsmen, managers, agents, vendors, partners, successors, predecessors, affiliates, attorneys acting in concert, representatives, and all other persons acting or purporting to act with, for, or on her behalf, including but not limited to collaborators, consultants, accountants, financial advisors, advisors, attorneys, or any person acting in an advisory or consulting capacity, unless specifically stated otherwise.

**SA1693**

- **"WorthPoint"** means Defendant WorthPoint Corporation and any of their current or former business and/or creative partners, directors, officers, independent contractors, affiliates, predecessors, successors, parents, subsidiaries, partners, advisers, associates, employees, managers, agents, servants, representatives, corporate alter egos, and all other persons acting or purporting to act with, for, or on its behalf, including but not limited to consultants, advisors, attorneys, or any person acting in an advisory or consulting capacity, unless specifically stated otherwise.

- **"Plaintiff's Biography"** means Plaintiff's biography, as it appears or previously appeared on her website during all relevant times and in which Plaintiff claims copyright.

- The terms **"and" and "or"** shall each be construed broadly and shall each mean "and" or "or" or "and" and "or" wherever such meaning broadens the meaning of the sentence or phrase.

- **"Concerning"** means relating to, referring to, reflecting, describing, evidencing, interpreting, consisting of, pertaining to, regarding, or constituting, in whole or in part, directly or indirectly, the matter identified.

- The terms **"relate to," "relates to," "relating to," and "related to"** shall mean and include: refer, reflect, discuss, show, constitute, or be in any way logically or factually connected with the matter discussed.

- **"Document"** includes all written, graphic matter, handwriting, typewriting, audio or video tape recordings, however produced or reproduced, of every kind and description, including but not limited to the original and each copy thereof which

3

SA1694

is non-identical by reason of any mark, change, or other cause or reason whatsoever, of all correspondence, records, reports, memoranda, notes, facsimiles, messages and message books, email, text messages, WhatsApp or other electronic messages, social media messages, telephone logs, memoranda of telephone conversations, publications, books, brochures, booklets, manuals, flyers, leaflets, contracts, memoranda of agreement, books of account, ledgers, journals, working papers, records or summaries of personal interviews or conversations, appointment calendars, diaries, receipts, invoices, billing statements, files, tapes, discs, drives, data cards, films, data processing files, and all other computer-readable records or programs, including any and all drafts or non-identical copies thereof. Documents in electronic or digital form stored in any format, discs, drives, data cards, data processing files, and other computer-readable records or programs must be produced in reasonably usable form (e.g., by printing or "downloading" such documents onto paper). In addition, all electronic documents must be produced in native electronic format on a DVD or CD or other common, easily-readable storage device, or through a secure online delivery system that is secure and contains no malicious code or code designed to record actions of the recipient or send information back to the sender. (The word "writing" may be used synonymously herein in place of "document.")

- **"Communication"** means any and all oral or written contact between two or more persons including, without limitation, any meetings, conferences, face-to-face conversations, telephone, teleconference, video conference, voice mail, audio recording, video recording, mails, electronic transmissions, electronic mail (email),

**SA1695**

text messaging, WhatsApp messaging, social media messaging, instant messaging (IM), facsimile or any other forms of oral or written communications by any other medium.

- When used in reference to a person, the term **"identify"** shall mean to state the full name and job title of such person and, in the event such person is currently not an employee of Plaintiff, such person's last known residence address and telephone number.

- When used in reference to a Document, the term **"identify"** shall mean to state the date the Document bears, if any, its author(s), location, and a brief description of its form (e.g., memorandum, e-mail, letter, etc.) and contents, as well as the identity of the person(s) known to have possession, custody, or control over the Document.

- "Agreements" shall mean and include any oral or written (in pen, typed, printed, or electronic) arrangement between two or more parties.

**Instructions**

1. WorthPoint's Post-Deposition Demands to Plaintiff (the "Requests") adopt and incorporate by reference the rules of construction set forth in the Local Civil Rules of this Court.

2. In construing these Requests, the singular form of the word should be interpreted in the plural and vice versa, as in each case is most appropriate. Wherever used, references to the masculine, feminine, or neither gender shall include the neuter, feminine, and masculine genders, as the context requires.

3. In producing responsive Documents for inspection and copying, Plaintiff is required to furnish all Documents known or available to Plaintiff regardless of whether the Documents are possessed directly by Plaintiff, her agents, consignees, representatives, or investigators;

**SA1696**

or by its present or former attorneys or their agents, employees, representatives, or investigators.

4. Plaintiff is to produce each document in the form and condition in which it exists on the date of service of this request with all comments, notes, remarks, or other material that may have been added to the document after its initial preparation, as well as the original version if it can be obtained. Plaintiff is to furnish a table of organization with her responses, which should indicate which Documents being produced correspond with which of the categories in the Requests.

5. Should Plaintiff object to or otherwise decline to respond to any portion of these requests, the grounds for objecting or otherwise declining to respond shall be stated with specificity and clarity, and Plaintiff shall provide a statement specifying any document or communication withheld due to such objection, or withheld on any other asserted basis.

6. If any statement, communication, document, or information in any way responsive to these requests is withheld under any form of privilege or other basis for non-disclosure, whether based on statute or otherwise, state the following with regard to each statement, communication, document, or information:

   a. The date(s) the document was created, sent, and received;

   b. The name, the current or last known home and business address, the telephone numbers, and the title (or position) and occupation of the individual(s) who authored or prepared the document and who were recipients of the document;

   c. A description of the document sufficient to identify it without revealing the information for which the privilege is claimed, including the general subject matter and character of the document (e.g., letter, memorandum, notes);

**SA1697**

    d.   The location of the document;

    e.   The name and address of the custodian having present custody or control of the document; and,

    f.   The privilege asserted with regard to the document and the specific basis of the claim of privilege.

7. If Plaintiff has at any time relinquished possession, custody or control of, or destroyed any document responsive to any request, Plaintiff shall identify each document as set forth in Paragraph 6, above, and as to an existing document, identify the persons, if any, who currently have possession, custody, or control of it.

8. These requests are continuing in character, and the responses are to be modified or supplemented from time to time as appropriate should information requested be obtained by Plaintiff, her representatives, agents, or counsel after its initial responses, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

9. If Plaintiff encounters any ambiguity in construing a request, definition, or instruction herein, Plaintiff shall use her best efforts to interpret the request, definition, or instruction within the context of this litigation and shall set forth the matter deemed ambiguous, and the construction or interpretation utilized in responding.

**DEMANDS**

1. Pages 1 and 3-7 of the document partially marked as Defendant's Exhibit 6 (Bates Stamped Plaintiff000087), as well as the full and complete document from which this Exhibit was copied and/or reproduced. *See,* Deposition Transcript of Plaintiff dated August 30, 2022 ("Trombetta Tr."), Pages 93-100.

**SA1698**

2. Pages 1 and 4-7 of the document partially marked as Defendant's Exhibit 8 (Bates Stamped Plaintiff000069- Plaintiff000070), as well as the full and complete document from which this Exhibit was copied and/or reproduced. *See,* Trombetta Tr., Pages 155-156.

3. Documents and Communications evidencing that WorthPoint visited Plaintiff's website and/or accessed Plaintiff's Biography, prior to August 13, 2015. *See,* Trombetta Tr., Pages 177-179.

4. Page 2 of the document partially marked as Defendant's Exhibit 16 (Bates Stamped Plaintiff000021), as well as the full and complete document from which this Exhibit was copied and/or reproduced. *See,* Trombetta Tr., Pages 207-208.

5. Documents and Communications showing the date when Plaintiff subscribed to WorthPoint, including the "membership form." *See,* Trombetta Tr., Pages 213-214.

6. A full and complete copy of the document marked as Defendant's Exhibit 19 (Bates Stamped Plaintiff000033). *See,* Trombetta Tr., Page 223.

7. The native, electronic, version of Plaintiff's email to William Seippel dated February 20, 2016, including all attachments. *See,* Trombetta Tr., Pages 227-230.

8. A complete clear, legible, and unobstructed copy of the document marked as Defendant's Exhibit 20 (Bates Stamped Plaintiff000178). *See,* Trombetta Tr., Pages 238-239.

9. A full and complete copy of the document marked as Defendant's Exhibit 24 (Bates Stamped Plaintiff000226). *See,* Trombetta Tr., Page 264-269.

10. Page 2 of the document partially marked as Defendant's Exhibit 25 (Bates Stamped Plaintiff000062A), as well as the full and complete document from which this Exhibit was copied and/or reproduced. *See,* Trombetta Tr., Pages 269-271.

**SA1699**

11. Pages 2-5 of the document partially marked as Defendant's Exhibit 29 (Bates Stamped Plaintiff000314), as well as the full and complete document from which this Exhibit was copied and/or reproduced. *See,* Trombetta Tr., Pages 281-284.

12. Documents and Communications showing all artwork sales made by Plaintiff's from 2017 to present. *See,* Trombetta Tr., Pages 291-292.

13. Written confirmation as to whether Plaintiff is seeking damages from WorthPoint for any alleged physical harm Plaintiff suffered as a result of the allegations in the Complaint. *See,* Trombetta Tr., Page 294.

14. To the extent Plaintiff is seeking damages for alleged physical harm from WorthPoint, Documents and Communication showing that Plaintiff suffered such alleged damages, including records from Plaintiff's physicians and treating healthcare providers relating to any former or ongoing healthcare Plaintiff received. Id.

15. To the extent Plaintiff is seeking damages for alleged physical harm from WorthPoint, duly executed unrestricted authorizations enabling counsel for WorthPoint to inspect, examine, and copy such records for all of Plaintiff's treating providers. Id.

16. Contact information for Terry Mizner, including any known phone number(s), address(es), and current e-mail address(es). *See,* Trombetta Tr., Pages 297-300.

PLEASE TAKE NOTICE, that the foregoing are continuing demands and should Plaintiff come into possession, custody, or control of any responsive information and/or documents after her response, she shall immediately supplement her response with the provision of such material.

Dated:  October 6, 2022

<div style="margin-left:40%">

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

By:  ___*s/ Jana Slavina Farmer*_____

Adam R. Bialek
666 Old Country Road
Suite 602
Garden City, NY 11530
Telephone: (212) 915-5143
Fax:  (212) 490- 3038
Adam.Bialek@wilsonelser.com

Jana S. Farmer
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Ave.
White Plains, NY 10604
(914) 872-7247 (Direct)
(914) 323-7001 (Fax)
Jana.Farmer@wilsonelser.com

***Attorneys for Defendant WorthPoint Corporation***

</div>

To:    Annamarie Trombetta
       *Plaintiff Pro Se*
       175 East 96th Street
       Apt. 12R
       New York, NY 10128

       Anderson Duff
       Hogan Duff, LLP
       Attorneys for Defendants
       Norb Novocin, Marie Novocin
       and Estate Auctions, Inc.
       43-10 Crescent St., Ste. 1217
       Long Island City, NY 11101
       (646) 450-3607
       ajd@hoganduff.com

Annamarie Trombetta



October 20, 2022

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Adam Bialek Jana A. Slavina Farmer
Nicole Haimson 1133 Westchester Avenue
150 East 42nd Street White Plains, New York 10604
New York New York. 10017

Anderson Duff Hogan Duff, LLP
Attorneys for Defendants
Norb Novocin, Marie Novocin
and Estate Auctions, Inc.
43-10 Crescent St. Ste. 1217
Long Island City, NY 11101
(646) 450-3607

## Plaintiff's August 30, 2022 Deposition Responses

Attached is the listing of Plaintiff's Deposition Responses and numbered evidence.

Below is the Production of email from WorthPoint to ▮▮▮▮▮▮▮▮
and from Plaintiff Annamarie Trombetta to WorthPoint support@worthpoint.com
DATE January 22, 2016.

**Plaintiff's Deposition Response Plaintiff's Evidence 000351**
Production of January 22, 2016 Plaintiff's Email to WorthPoint using email address
support@ worthpoint.com with seven questions regarding 1972 Original Oil Man With
Red Umbrella.

**Plaintiff's Deposition Response Plaintiff's Evidence 000352**
Production of January 22, 2016 Plaintiff's Email to WorthPoint using email address
support@ worthpoint.com Page 2 to include WorthPoint Membership details.

**Plaintiff's Deposition Response Plaintiff's Evidence 000353**
Production of January 22, 2016 Plaintiff's 2016 Membership to WorthPoint.com Page 3

**Plaintiff's Deposition Response Plaintiff's Evidence 000354**
Production of January 22, 2016 Plaintiff's Email to WorthPoint using email address
support@ worthpoint.com and membership to WorthPoint.com   Meta Data of email

**Plaintiff's Deposition Response Plaintiff's Evidence 000355**
Production of January 22, 2016 Plaintiff's Email to WorthPoint using email address
support@ worthpoint.com and membership to WorthPoint.com   Meta Data of email

**Plaintiff's Deposition Response Plaintiff's Evidence 000356**
Production of January 22, 2016 Plaintiff's Email to WorthPoint using email address support@ worthpoint.com and membership to WorthPoint.com    Meta Data of email

**Plaintiff's Deposition Response Plaintiff's Evidence 000357**
Production of January 22, 2016 Plaintiff's Email to WorthPoint using email address support@ worthpoint.com and membership to WorthPoint.com    Meta Data of email

**Plaintiff's Deposition Response Plaintiff's Evidence 000358**
Production of January 22, 2016 Plaintiff's Email to WorthPoint using email address support@ worthpoint.com and membership to WorthPoint.com    Meta Data of email

**Plaintiff's Deposition Response Plaintiff's Evidence 000359**
Production of January 22, 2016 Plaintiff's Email to WorthPoint using email address support@ worthpoint.com and membership to WorthPoint.com    Meta Data of email

Below is the Production of email from WorthPoint to annamarie@trombettaart.com and from Plaintiff Annamarie Trombetta to WorthPoint support@worthpoint.com. PLEASE NOTE  PLAINTIFF NEVER FURNISHED WORTHPOINT WITH MY WEBSITE EMAIL ADDRESS  annamarie@trombettaart.com DATE  January 22, 2016.

**Plaintiff's Deposition Response Plaintiff's Evidence 000360**
Production of January 22, 2016 Plaintiff's Email to WorthPoint using email address support@ worthpoint.com and membership to WorthPoint.com    Meta Data of email

**Plaintiff's Deposition Response Plaintiff's Evidence 000361**
Production of January 22, 2016 Plaintiff's Email to WorthPoint using email address support@ worthpoint.com and membership to WorthPoint.com    Meta Data of email

Below is the Production of email from WorthPoint to █████████████████ and from Plaintiff Annamarie Trombetta to WorthPoint support@worthpoint.com DATE  January 25, 2016.

**Plaintiff's Deposition Response Plaintiff's Evidence 000362**
Production of January 25, 2016 Plaintiff's Email to WorthPoint using email address support@ worthpoint.com with seven questions regarding 1972 Original Oil Man With Red Umbrella.  This is the second  request to WorthPoint.com with No RESPONSE and that was NOT answered-Page 1.

**Plaintiff's Deposition Response Plaintiff's Evidence 000362  Page 2**
Production of January 25, 2016 Plaintiff's Email to WorthPoint using email address support@ worthpoint.com with seven questions regarding 1972 Original Oil Man With Red Umbrella.  This is the second  request to WorthPoint.com with No RESPONSE and that was NOT answered-Page 2.

**SA1703**

Below is the Production of email from WorthPoint to ▮▮▮▮▮▮▮▮▮▮▮▮▮
toPlaintiff Annamarie Trombetta to WorthPoint support@worthpoint.desk-mail.com
DATE  January 22, 2016 issued Ticket #56607 by WorthPoint.com Subscription

**Plaintiff's Deposition Response Plaintiff's Evidence 000363**
Production of email from WorthPoint to ▮▮▮▮▮▮▮▮▮▮▮▮▮
toPlaintiff Annamarie Trombetta to WorthPoint support@worthpoint.desk-mail.com
DATE  January 22, 2016 issued Ticket #56607 by WorthPoint.com Subscription


**Plaintiff's Deposition Response Plaintiff's Evidence 000364-Ticket #57565**
Plaintiff's Evidence  000364  Fraudulent Artwork and links to Fraudulent Artwork.
Production of email from WorthPoint to to Plaintiff Annamarie Trombetta to
WorthPoint support@worthpoint.desk-mail.comDATE  February 20, 2016 issued Ticket
#57565 from  WorthPoint.com

**Plaintiff's Deposition Response Plaintiff's Evidence 000364 Email Meta Data Page 1
Saturday February 20, 2016 email from WorthPoint Ticket #57565**
Production of META DATAemail from WorthPoint to to Plaintiff Annamarie Trombetta
to WorthPoint support@worthpoint.desk-mail.comDATE  February 20, 2016 issued
Ticket #57565 from  WorthPoint.com  Page 1.

**Plaintiff's Deposition Response Plaintiff's Evidence 000364 Email Meta Data Page 2
Saturday February 20, 2016 email from WorthPoint Ticket #57565**
Production of META DATAemail from WorthPoint to to Plaintiff Annamarie Trombetta
to WorthPoint support@worthpoint.desk-mail.comDATE  February 20, 2016 issued
Ticket #57565 from  WorthPoint.com  Page 2.

**Plaintiff's Deposition Response Plaintiff's Evidence 000365   Email to**
▮▮▮▮▮▮▮▮▮▮▮▮▮ **and** support@worthpoint.com **February 20, 2016 Page 1.**
Production of email from WorthPoint to to Plaintiff Annamarie Trombetta to
WorthPoint DATE  February 20, 2016 email Page 1

**Plaintiff's Deposition Response Plaintiff's Evidence 000365 META DATA Page 1.**
**Page1**  Production of email from WorthPoint to to Plaintiff Annamarie Trombetta to
WorthPoint DATE  February 20, 2016 META  DATA FROM email Page 1.

**Plaintiff's Deposition Response Plaintiff's Evidence 000366  Page 2  Email to**
▮▮▮▮▮▮▮▮▮▮▮▮▮ **and** support@worthpoint.com **February 20, 2016 Page 2**
Production of email from WorthPoint to to Plaintiff Annamarie Trombetta to
WorthPoint DATE  February 20, 2016 email Page 2.

**Plaintiff's Deposition Response Plaintiff's Evidence 000366   META DATA Page 2.**
**Page 2**  Production of email from WorthPoint to to Plaintiff Annamarie Trombetta to
WorthPoint DATE  February 20, 2016 META  DATA FROM email Page 2.

**Plaintiff's Deposition Response Plaintiff's Evidence 000367  Page 3.  Email to**
▮▮▮▮▮▮▮▮▮ **and** support@worthpoint.com **February 20, 2016**

**SA1704**

Production of email from WorthPoint to to Plaintiff Annamarie Trombetta to WorthPoint DATE  February 20, 2016 email Page 3.

**Plaintiff's Deposition Response Plaintiff's Evidence 000367 META DATA Page 3.**
Production of email from WorthPoint to to Plaintiff Annamarie Trombetta to WorthPoint DATE  February 20, 2016 META  DATA FROM email Page 3

**Plaintiff's Deposition Response Plaintiff's Evidence 000367 META DATA Page 4.**
Production of email from WorthPoint to to Plaintiff Annamarie Trombetta to WorthPoint DATE  February 20, 2016 META  DATA FROM email Page 4.

**Plaintiff's Deposition Response Plaintiff's Evidence 000367 META DATA Page 5.**
Production of email from WorthPoint to to Plaintiff Annamarie Trombetta to WorthPoint DATE  February 20, 2016 META  DATA FROM email Page 5.

**Plaintiff's Deposition Response Plaintiff's Evidence 000368  Attachment #1**
1972 Oil Painting Ad on worthpoint.com.

**Plaintiff's Deposition Response Plaintiff's Evidence 000369  Attachment #2**
"A. Trombetta Fake Signature" Copyrighted work licensed by WorthPoint".

**Plaintiff's Deposition Response Plaintiff's Evidence 000370  Attachment #3**
February 17, 2016  Google Listing of 1972 Oil Painting Ad on worthpoint.com.

**Plaintiff's Deposition Response Plaintiff's Evidence 000371  Attachment #3**
February 17, 2016  Google Listing of 1972 Oil Painting Ad on worthpoint.com.
ENLARGEMENT.

**Plaintiff's Deposition Response Plaintiff's Evidence 000372  WorthPoint Evidence WP 000074**
February 20, 2016— PROOF OF  attachments sent to WorthPoint as evidenced.

**Plaintiff's Deposition Response Plaintiff's Evidence 000373 WorthPoint email**
Production of Cancellation to WorthPoint.com membership  subscription. Email sent to Plaintiff's website email address ▇▇▇▇▇▇▇▇▇▇▇.com. Date Febraury 29, 2016.

**Plaintiff's Deposition Response Plaintiff's Evidence 000374**
Production of Definition of advertisement.

**Plaintiff's Deposition Response Plaintiff's Evidence 000375 Page 1**
Production of Plaintiff's September 1, 2015 Receipt of Payment for 2015 Website Design  email confirmation  from website Design Services—Page 1.

**Plaintiff's Deposition Response Plaintiff's Evidence 000376  Page 2**
Production of Plaintiff's September 1, 2015 Receipt of Payment for 2015 Website Design  email confirmation  from website Design Services—Page 2.

**Plaintiff's Deposition Response Plaintiff's Evidence 000377 Page 1**
Production of worth point.com website links connected to the

**SA1705**

1972 Original Oil Painting Man With Red Umbrella  four  other linked to 1972 Oil/

**Plaintiff's Deposition Response Plaintiff's Evidence 000378 Page 2**
**Plaintiff's Deposition Response Plaintiff's Evidence 000379 Page 1**
Production of worth point.com website email for Investing in Worth Point
dated April 14, 2016.

**Plaintiff's Deposition Response Plaintiff's Evidence 000380 Page 2**
Production of worth point.com website email for Investing in Worth Point
dated April 14, 2016 UNSUBSCRIBE

**Plaintiff's Deposition Response Plaintiff's Evidence 000381 Page 3**
Production of worth point.com website email for Investing in Worth Point
dated April 14, 2016 UNSUBSCRIBE  SUCCESSFUL  —SUBMIT

**Plaintiff's Deposition Response Plaintiff's Evidence 000382**
Production of 2003 Scott Goodwillie  Recommendation to John O'Hearn
Curator at Arnot Art Museum  Re-Presenting Representation V1 2003 Exhibit.

**Plaintiff's Deposition Response Plaintiff's Evidence 000383**
Production of 2003 Scott Goodwillie  Recommendation to John O'Hearn
Curator at Arnot Art Museum  Re-Presenting Representation V1 2003 Exhibit.

**Plaintiff's Deposition Response Plaintiff's Evidence 000384**
Production of 2003 Scott Goodwillie  Recommendation to John O'Hearn
Curator at Arnot Art Museum  Re-Presenting Representation V1 2003 Exhibit
Plaintiff's 2003 exhibition artwork Cardinal Numbers I from Arnot 2003 Catalog.

**Plaintiff's Deposition Response Plaintiff's Evidence 000385**
Production of 2003 Scott Goodwillie  Recommendation to John O'Hearn
Curator at Arnot Art Museum who wrote Plaintiff's Introduction to Plaintiff's
2003 catalog.

**Plaintiff's Deposition Response Plaintiff's Evidence 000386**
Production of worth point.com website email for Worth Point
dated April 24, 2017.

**Plaintiff's Deposition Response Plaintiff's Evidence 000387**
Production of Plaintiff's April 24, 2019 filing with the Court Docket 22 Pages 1 to 38.

**Plaintiff's Deposition Response Plaintiff's Evidence 000388**
Production of WorthPoint's Evidence Terms of Use WP 000050 to WP 000061

## Plaintiff's August 30, 2022  Deposition Document Extractions and Submission

PAGES : 43, 52, 57, 80, 82, 101, 103, 108, 109, 117, 118,  119, 120, 121, 122, 129, 130,

134, 135, 137,  138, 139, 140,  143, 144, 145, 148, 149, 153,  168, 169, 170, 171, 172,

173,  174, 175,  178, 179,  185, 186, 187,  188,  192,  193, 203, 205, 206, 207, 208,

PAGES : 209, 210,  214, 215, 216,  219, 220, 221, 222, 223,  224,  225,  226, 227, 228,

230,  231,  232,  233, 247, 248, 249,  257,  258,  259, 264, 265,  266.

I,  Annamarie Trombetta , state that I have read WorthPoint Corporation  Deposition
and to the best of my ability submit the requests for the production of Supplemental
Documents to the best of my ability.

The undersigned, being first duly sworn. states that she has read the Deposition and
the content and that all corrections and responses are true tot he best of her
knowledge and belief.

PLEASE TAKE NOTICE,   Plaintiff, Annamarie Trombetta  reserves the right to amend

and/or supplement this  response during the pendency of this action.

_____               _____
Annamarie Trombetta                                        Notary

Sworn to and subscribed before me this day __20th__ of October, 2022.

ROMA JAIPALI
Notary Public - State of New York
NO. 01JA6325243
Qualified in Queens County
My Commission Expires May 26, 2023

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 58 of 293

SA1707

Case 1:18-cv-00993-LTS-SLC    Document 425-15    Filed 04/17/23    Page 7 of 99

Yahoo Mail - Re: Welcome to WorthPoint - Your Subscription Has Been Created

Plaintiff's Deposition Response

Plaintiff's Evidence

0003252

**ITEM CATEGORY:**

**SOURCE:**

eBay

**SOLD DATE:**

Dec 01,2012

**CHANNEL:**

Online Auction

Domain Name: WORTHPOINT.COM

Registrar: GODADDY.COM, LLC

Sponsoring Registrar IANA ID: 146

Whois Server: whois.godaddy.com

Referral URL: http://registrar.godaddy.com

Name Server: NS1.P24.DYNECT.NET

Name Server: NS2.P24.DYNECT.NET

Name Server: NS3.P24.DYNECT.NET

Name Server: NS4.P24.DYNECT.NET

Status: clientDeleteProhibited

Status: clientRenewProhibited

Status: clientTransferProhibited

Status: clientUpdateProhibited

Updated Date: 30-apr-2013

Creation Date: 09-jan-2007

Expiration Date: 09-jan-2023

Flag item for content or copyright

Items in the Worthopedia are obtained exclusively from licensors and partners solely for our members' research needs.

January 22 2016

On Friday, January 22, 2016 11:29 AM,
WorthPoint <support@worthpoint.com> wrote:

Dear Annamarie Trombetta,

I would like to congratulate you on your recent decision to buy a WorthPoint product and welcome you into the WorthPoint community! When I founded this company in 2007, I wanted to provide an easy way for people to find the value of everything from their beloved items to the stuff in their closets. I am now proud to say we have become the largest database in the world for this type of information and our product families include:

-> About 300 million prices realized from online sources;

-> About 1 billion images of antiques and collectibles;

-> About 100,000 maker's marks, autographs, patterns and symbols;

-> A digital library of more than 1,000 reference books, catalogs and historic price guides.

If you should have any questions, contact our personable Atlanta-based customer support team via email at support@worthpoint.com or by phone at 877.481.5750 Monday through Friday from 8 a.m. to 6 p.m. EST.

Sincerely,

William Seippel
CEO and Founder of WorthPoint.com

Your Membership Details:
Account Email:

------------------------------------------------------------

Charge Name:            Monthly Membership Charge
Charge Type:            Recurring
Effective Start Date:   01/29/2016
Unit Price:             19.99

QTY:
Total:                       19.99

Plaintiff's
Deposition
Response

Plaintiff's Evidence  000353

------------------------------------------------------------

Charge Name:          Discount
Charge Type:          Recurring
Effective Start Date:  01/29/2016
Unit Price:           (0.00)
QTY:
Total:                (0.00)

We remind you that orders for http://www.worthpoint.com are processed by Zuora as the authorized vendor of WorthPoint products. Please note that zuora*worthpoint.com will appear on your card statement state.

Thank you for your business!

You can log in to WorthPoint.com at the top of any page on the site with your username/email and password. The username/email associated with this account is indicated above. To make updates to your account after signing in, simply click on "Account Settings" at the top of any page. You can change your password, update your method of payment and verify your subscription status. If you lose your login information, simply click on the "I've forgotten my password" link on the sign in page.

As a reminder, there is a free seven-day or seven-price look-up trial for Worthopedia subscriptions. If you utilize your seven price look ups before the seven days end, you must click on the "Activate Now" button to have further access to begin your monthly subscription to WorthPoint. If you subscribed to Marks or Library Products you have seven days until your trial expires.

Questions?

If you have questions, please contact our Customer Support team at 877-481-5750 or via email at Support@Worthpoint.com.

Case 1:18-cv-00993-LTS-SLC    Document 425-15    Filed 04/17/23    Page 9 of 99

Date: Fri, 22 Jan 2016 19:25:02 +0000 (UTC)
From: Annamarie Trombetta
Reply-To: Annamarie Tromb
To: "support@worthpoint.com" <support@worthpoint.com>
Message-ID: <120562697.7540325.1453490702985.JavaMail.yahoo@mail.yahoo.com>
In-Reply-To: <940605979.7377.1453476605443.JavaMail.zapp@19.bet.prod.slv.zuora>
References: <940605979.7377.1453476605443.JavaMail.zapp@19.bet.prod.slv.zuora>
Subject: Re: Welcome to WorthPoint - Your Subscription Has Been Created
MIME-Version: 1.0
Content-Type: multipart/alternative;
        boundary="-----=_Part_7540324_2021350889.1453490702935"
Content-Length: 49554

------=_Part_7540324_2021350889.1453490702935
Content-Type: text/plain; charset=UTF-8
Content-Transfer-Encoding: quoted-printable

Deposition
Response

Plaintiff's Evidence  000354

To The Worthpoint Staff,I found this link =C2=A0to Worthpoint under Artist =
Annamarie Trombetta. The link 1972 is associated with several of my persona=
l and professional links. =C2=A0 =C2=A0I signed on to Worthpoint to see the=
 value of this painting. =C2=A0 =C2=A0The worth is $181.50 =C2=A0. =C2=A0Se=
e below
1)Who is responsible for =C2=A0posing "1972 Original Oil Painting =C2=A0man=
 with Red Umbrella signed Annamarie Trombetta" =C2=A0information on Worthpo=
int.com website ??
2)Can I have the name of the person who is the Worthpoint webmaster?? =C2=
=A03)Can I have the name of the person who posted this information?4) Who w=
as the seller?? =C2=A0 I called eBay and they do not have the information? =
=C2=A0Does Worthpoint have this information??5) =C2=A0Please confirm if you=
r website was last update on=C2=A0Updated Date: 30-apr-2013--see below6) Wh=
y do you state that there are are 12 photos in the description. Below is th=
e text that is on the page for this painting. =C2=A0 I only see a photo of =
a signature =C2=A0 =C2=A0--see below7) Kindly forward any information that =
you have regarding this painting .Thankyou for your anticipated cooperation=
.>>>>> UP IN THIS AUCTION <<<<< 1972 Original Oil Painting Man With Red Umb=
rella Signed Annamarie Trombetta New York Listed Artist - Shabby Chic Condi=
tion=C2=A0- DESCRIPTION - Please be patient there are 12 photos to be loade=
d in this auction. Up in this auction is a wonderful and delightful oil on =
canvas painting of a man (I guess it could be a woman) with a red umbrella.=
 This is by Annamarie Trombette. It is signed on the bottom, but on the bac=
k it has written in red on the stretcher, Annamarie Trombetta "Gifted" 1977=
, "Painted" 1972. To our eyes it looks like it is after the style of Andre =
Kohn.=C2=A0

1972 Original Oil Painting Man With Red Umbrella Signed ...
 =20
www.worthpoint.com =E2=80=BA Worthopedia=E2=84=A2  =20
 -=20
1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta=
 yqz. Sold for: Start Free Trial or Sign In to see what it's worth. Item Ca=
tegory:=C2=A0...  =20
 =20
 -=20
Items in the Worthopedia are obtained exclusively from licensors and partne=
rs solely for our members=E2=80=99 research needs.Flag item for content or =
copyright  =20
 - HOME=C2=A0>=C2=A0WORTHOPEDIA=E2=84=A2=C2=A0>1972 ORIGINAL OIL PAINTING=
MAN WITH RED UMBRELLA SIGNED ANNAMARIE TROMBETTA YQZ

**SA1710**

Plaintiff's Evidence 000355

Plaintiff's
Deposition
Response

<html><head></head><body><div style=3D"color:#000; background-color:#fff; f=
ont-family:bookman old style, new york, times, serif;font-size:16px"><div i=
d=3D"yui_3_16_0_1_1453487167561_4140" dir=3D"ltr">To The Worthpoint Staff,<=
/div><div id=3D"yui_3_16_0_1_1453487167561_4139" dir=3D"ltr"><span id=3D"yu=
i_3_16_0_1_1453487167561_5864">I found this link  to Worthpoint under =
Artist Annamarie Trombetta. The link 1972 is associated with several of my =
personal and professional links.    I signed on to Worthpoint to =
see the value of this painting.    The worth is $181.50  . &=
nbsp;See below</span></div><div id=3D"yui_3_16_0_1_1453487167561_4139" dir=
=3D"ltr"><br></div><div id=3D"yui_3_16_0_1_1453487167561_4139" dir=3D"ltr">=
<b id=3D"yui_3_16_0_1_1453487167561_7981">1)Who is responsible for  po=
sing "1972 Original Oil Painting  man with Red Umbrella signed Annamar=
ie Trombetta"  information on Worthpoint.com website ??</b><br></div><=
div id=3D"yui_3_16_0_1_1453487167561_4139" dir=3D"ltr"><b>2)Can I have the =
name of the person who is the Worthpoint webmaster??  </b></div><div i=
d=3D"yui_3_16_0_1_1453487167561_4139" dir=3D"ltr"><b id=3D"yui_3_16_0_1_145=
3487167561_8650">3)Can I have the name of the person who posted this inform=
ation?</b></div><div id=3D"yui_3_16_0_1_1453487167561_4139" dir=3D"ltr"><b =
id=3D"yui_3_16_0_1_1453487167561_8648">4) Who was the seller??   I cal=
led eBay and they do not have the information?  Does Worthpoint have t=
his information??</b></div><div id=3D"yui_3_16_0_1_1453487167561_4139" dir=
=3D"ltr"><b id=3D"yui_3_16_0_1_1453487167561_9047">5)  Please confirm =
if your website was last update on </b><span style=3D"color: rgb(76, 7=
6, 76); font-family: Tahoma, Arial, Verdana, Helvetica, sans-serif; font-si=
ze: 12px;" id=3D"yui_3_16_0_1_1453487167561_9050" class=3D"">Updated Date: =
30-apr-2013--see below</span></div><div id=3D"yui_3_16_0_1_1453487167561_41=
39" dir=3D"ltr"><b id=3D"yui_3_16_0_1_1453487167561_9118">6) Why do you sta=
te that there are are 12 photos in the description. Below is the text that =
is on the page for this painting.   I only see a photo of a signature =
   --see below</b></div><div id=3D"yui_3_16_0_1_1453487167561_413=
9" dir=3D"ltr"><b>7) Kindly forward any information that you have regarding=
this painting .</b></div><div id=3D"yui_3_16_0_1_1453487167561_4139" dir=
=3D"ltr"><b>Thankyou for your anticipated cooperation.</b></div><div id=3D"=
yui_3_16_0_1_1453487167561_4139" dir=3D"ltr"><span style=3D"color: rgb(100,=
102, 115); font-family: 'Open Sans'; font-size: 15px;" id=3D"yui_3_16_0_1_=
1453487167561_9366" class=3D"">&gt;&gt;&gt;&gt;&gt; UP IN THIS AUCTION &lt;=
&lt;&lt;&lt;&lt; 1972 Original Oil Painting Man With Red Umbrella Signed An=
namarie Trombetta New York Listed Artist - Shabby Chic Condition </spa=
n></div><div style=3D"box-sizing: border-box; margin-top: 0px; margin-botto=
m: 11px; color: rgb(100, 102, 115); font-family: 'Open Sans'; font-size: 15=
px;" dir=3D"ltr" id=3D"yui_3_16_0_1_1453487167561_9368" class=3D"">- DESCRI=
PTION - Please be patient there are 12 photos to be loaded in this auction.=
Up in this auction is a wonderful and delightful oil on canvas painting of=
a man (I guess it could be a woman) with a red umbrella. This is by Annama=
ie Trombette. It is signed on the bottom, but on the back it has written i=
red on the stretcher, Annamarie Trombetta "Gifted" 1977, "Painted" 1972. =
to our eyes it looks like it is after the style of Andre Kohn. </div><=
div id=3D"yui_3_16_0_1_1453487167561_4139" dir=3D"ltr"><b><br></b></div><di=
v id=3D"yui_3_16_0_1_1453487167561_4139" dir=3D"ltr"><b><br></b></div><div =
id=3D"yui_3_16_0_1_1453487167561_4139" dir=3D"ltr"><b><br></b></div><div id=
=3D"yui_3_16_0_1_1453487167561_4139" dir=3D"ltr"><b><br></b></div><div id=
=3D"yui_3_16_0_1_1453487167561_4139" dir=3D"ltr"><a href=3D"http://www.wort=
hpoint.com/worthopedia/1972-original-oil-painting-man-red-48924172" id=3D"y=
ui_3_16_0_1_1453487167561_7807" class=3D"" style=3D"font-size: 18px; white-=
space: nowrap; font-family: arial, sans-serif; color: rgb(102, 0, 153); cur=
sor: pointer; text-decoration: none;">1972 Original Oil Painting Man With R=
ed Umbrella Signed ...</a><br></div><div data-async-context=3D"query:1972%2=
0original%20oil%20painting%20man%20with%20red%20umbrella%20signed%20annamar=
ie%20trombetta%20yqz" id=3D"ires" style=3D"padding-top: 6px; color: rgb(34,=
34, 34); font-family: arial, sans-serif;" class=3D""><ol eid=3D"wHWiVrqpMI=
AG9hKeoBg" id=3D"rso" style=3D"margin-top: 0px; margin-bottom: 0px; padd=

**SA1711**

Plaintiff's Evidence  000356

Plaintiff's
Deposition
Response

a26d3cd.jpg" style=3D"box-sizing: border-box; vertical-align: mi= ddle; max-width: 400px; width: 100% !important; min-height: auto !i= mportant; position: relative !important;" class=3D"" data-id=3D"b26c7e9b-09= fa-2cd2-4a90-0e720a6d960e"></div><div class=3D"" style=3D"box-sizing: borde= r-box; margin: 20px auto; position: relative; z-index: 1000; padding: 0px 2= 0px;" id=3D"yui_3_16_0_1_1453487167561_8144"><div class=3D"" style=3D"box-s= izing: border-box; position: relative; overflow: visible;" id=3D"yui_3_16_0= _1_1453487167561_8146"><ul id=3D"gallery1" class=3D"" style=3D"box-sizing: = border-box; margin: 0px auto; position: relative; -webkit-user-select: none= ; list-style-type: none; padding-left: 0px;"><div aria-live=3D"polite" clas= s=3D"" style=3D"box-sizing: border-box; position: relative; overflow: hidde= n; margin: 0px; padding: 0px; transform: translate3d(0px, 0px, 0px);" id=3D= "yui_3_16_0_1_1453487167561_8149"><div class=3D"" role=3D"listbox" style=3D= "box-sizing: border-box; position: relative; top: 0px; left: 0px; transform= : translate3d(0px, 0px, 0px); opacity: 1; width: 94px;" id=3D"yui_3_16_0_1_= 1453487167561_8151"><li class=3D"" data-slick-index=3D"0" aria-hidden=3D"fa= lse" tabindex=3D"0" role=3D"option" aria-describedby=3D"slick-slide00" styl= e=3D"box-sizing: border-box; display: block; float: left; min-height: 79px;= min-height: 1px; margin: 7.5px; text-align: center; outline: none; transit= ion: all 0.2s ease-out; -webkit-transition: all 0.2s ease-out; overflow: hi= dden; max-height: 145px; width: 79px;" id=3D"yui_3_16_0_1_1453487167561_815= 3"><a href=3D"http://www.worthpoint.com/worthopedia/1972-original-oil-paint= ing-man-red-48924172#" data-image=3D"http://thumbs.worthpoint.com/ARKGebO9V= 9sfZ09olxDo9hRCIOg=3D/400x0/images/images4/1/1212/01/1_d39eae6393d99d51efa3= 9d962a26d3cd.jpg" data-zoom-image=3D"http://images.cloud.worthpoint.com/wpi= mages/images/images4/1/1212/01/1_d39eae6393d99d51efa39d962a26d3cd.jpg" clas= s=3D"" tabindex=3D"0" style=3D"box-sizing: border-box; background-image: ur= l(http://thumbs.worthpoint.com/ARKGebO9V9sfZ09olxDo9hRCIOg=3D/400x0/images/= images4/1/1212/01/1_d39eae6393d99d51efa39d962a26d3cd.jpg); background-size:= 210%; color: rgb(0, 134, 201); text-decoration: none; -webkit-transition: = all 0.2s ease-out; transition: all 0.2s ease-out; display: block; min-heigh= t: 100px; width: 100px; margin-left: auto; margin-right: auto; -webkit-back= ground-size: 210%; -webkit-box-shadow: rgba(0, 136, 204, 0.6) 0px 0px 6px; = box-shadow: rgba(0, 136, 204, 0.6) 0px 0px 6px; background-position: 50% 50= %; background-repeat: no-repeat no-repeat;" id=3D"yui_3_16_0_1_145348716756= 1_8155"></a></li></div></div></ul></div></div><div class=3D"" style= =3D"box-sizing: border-box;" id=3D"yui_3_16_0_1_1453487167561_8157"><div cl= ass=3D"" align=3D"center" style=3D"box-sizing: border-box; text-align: cent= er;" id=3D"yui_3_16_0_1_1453487167561_8159"><div class=3D"" data-url=3D"htt= p://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-48924= 172" data-title=3D"1972 Original Oil Painting Man With Red Umbrella Signed = Annamarie Trombetta yqz (12/01/2012)" style=3D"box-sizing: border-box;" id= =3D"yui_3_16_0_1_1453487167561_8161"><div id=3D"atstbx" class=3D"" style=3D= "box-sizing: border-box; padding: 0px; margin: 0px; animation: 1s both; -we= bkit-animation: 1s both; opacity: 1 !important;"><a class=3D"" style=3D"box= -sizing: border-box; color: rgb(0, 134, 201); text-decoration: none; -webki= t-transition: none; transition: none; margin: 2px; display: inline-block; m= ax-width: 30px; max-height: 30px;" id=3D"yui_3_16_0_1_1453487167561_8164" h= ref=3D""><span class=3D"" style=3D"box-sizing: border-box; display: inline-= block; overflow: hidden; cursor: pointer; width: 32px; min-height: 32px; ba= ckground-size: 30px !important; background-color: rgb(59, 89, 152); line-he= ight: 32px;" id=3D"yui_3_16_0_1_1453487167561_8166"><svg xmlns=3D"http://ww= w.w3.org/2000/svg" xmlns:xlink=3D"http://www.w3.org/1999/xlink" viewBox=3D"= 0 32 32" class=3D"" title=3D"Facebook" alt=3D"Facebook" style=3D"width: 3= 2px; min-height: 32px;" id=3D"yui_3_16_0_1_1453487167561_8168"><g id=3D"yui= _3_16_0_1_1453487167561_8170" class=3D""><path d=3D"M21 6.144C20.656 6.096 = 19.472 6 18.097 6c-2.877 0-4.85 1.66-4.85 4.7v2.62H10v3.557h3.247V26h3.895v= 9.123h3.234l.497-3.557h-3.73v-2.272c0-1.022.292-1.73 1.858-1.73h2V6.143z" = fill-rule=3D"evenodd" id=3D"yui_3_16_0_1_1453487167561_8172" class=3D""></p= ath></g></svg></span></a><a class=3D"" style=3D"box-sizing: border-box; col= or: rgb(0, 134, 201); text-decoration: none; -webkit-transition: none; tran= sition: none; margin: 2px; display: inline-block; max-width: 30px; max-heig=

**SA1712**

1972 ORIGINAL OIL PAINTING MAN WITH RED UMBRELLA SIGNED ANNAMARIE/TROMBETTA
YQZ
=20
  - SOLD FOR:$181.50
  - ITEM CATEGORY:-
  - SOURCE:eBay
  - SOLD DATE:Dec 01,2012
  - CHANNEL:Online Auction  =20
Domain Name: WORTHPOINT.COM  =20
Registrar: GODADDY.COM, LLC  =20
Sponsoring Registrar IANA ID: 146  =20
Whois Server: whois.godaddy.com  =20
Referral URL: http://registrar.godaddy.com  =20
Name Server: NS1.P24.DYNECT.NET  =20
Name Server: NS2.P24.DYNECT.NET  =20
Name Server: NS3.P24.DYNECT.NET  =20
Name Server: NS4.P24.DYNECT.NET  =20
Status: clientDeleteProhibited  =20
Status: clientRenewProhibited  =20
Status: clientTransferProhibited  =20
Status: clientUpdateProhibited  =20
Updated Date: 30-apr-2013  =20
Creation Date: 09-jan-2007  =20
Expiration Date: 09-jan-2023  =20

Plaintiff's
Deposition
Response

Plaintiff's Evidence  000357

2)Can I have the name of the person who posted this information??

=20

    On Friday, January 22, 2016 11:29 AM, WorthPoint <support@worthpoint.co=
n> wrote:
=20

Dear Annamarie Trombetta,

I would like to congratulate you on your recent decision to buy a WorthPoin=
t product and welcome you into the WorthPoint community! When I founded thi=
s company in 2007, I wanted to provide an easy way for people to find the v=
alue of everything from their beloved items to the stuff in their closets. =
I am now proud to say we have become the largest database in the world for =
this type of information and our product families include:
=20
->=C2=A0 About 300 million prices realized from online sources;

->=C2=A0 About 1 billion images of antiques and collectibles;

->=C2=A0 About 100,000 maker=E2=80=99s marks, autographs, patterns and symb=
ols;

->=C2=A0 A digital library of more than 1,000 reference books, catalogs and=
historic price guides.

**SA1713**

If you should have any questions or if we can be of additional service, please contact our customer support team via email at support@worthpoint.com or by phone at 877.48=1.5750 Monday through Friday from 8 a.m. to 6 p.m. EST.

Sincerely,

William Seippel
CEO and Founder of WorthPoint.com

Plaintiff's
Deposition
Response

Plaintiff's Evidence 000358

Your Membership Details:
Account Email:=20
-------------------------------------------------------------------------=
----
Charge Name:=C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 Monthly Membership Ch=
arge
Charge Type:=C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 Recurring
Effective Start Date:=C2=A0 =C2=A0 01/29/2016
Unit Price:=C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 19.99
QTY:=C2=A0=C2=A0=C2=A0=20
Total:=C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0=
 =C2=A0 =C2=A0 19.99
-------------------------------------------------------------------------=
----
Charge Name:=C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 Discount
Charge Type:=C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 Recurring
Effective Start Date:=C2=A0 =C2=A0 01/29/2016
Unit Price:=C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 (0.00)
QTY:=C2=A0=C2=A0=C2=A0=20
Total:=C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0 =C2=A0=
 =C2=A0 =C2=A0 (0.00)


We remind you that orders for http://www.worthpoint.com are processed by Zu=
ora as the authorized vendor of WorthPoint products. Please note that zuora=
*worthpoint.com will appear on your card statement state.

Thank you for your business!

You can log in to WorthPoint.com at the top of any page on the site with yo=
ur username/email and password. The username/email associated with this acc=
ount is indicated above. To make updates to your account after signing in, =
simply click on =E2=80=9CAccount Settings=E2=80=9D at the top of any page. =
You can change your password, update your method of payment and verify your=
 subscription status. If you lose your login information, simply click on t=
he "I've forgotten my password" link on the sign in page.

As a reminder, there is a free seven-day or seven-price look-up trial for W=
orthopedia subscriptions. If you utilize your seven price look ups before t=
he seven days end, you must click on the =E2=80=9CActivate Now=E2=80=9D but=
ton to have further access to begin your monthly subscription to WorthPoint=
. If you subscribed to Marks or Library Products you have seven days until =
your trial expires.

Questions?

If you have questions, please contact our Customer Support team at 877-481-=
5750 or via email at Support@Worthpoint.com.


------=_Part_7540324_2021350889.1453490702935
Content-Type: text/html; charset=UTF-8
Content-Transfer-Encoding: quoted-printable

**SA1714**

Plaintiff's Evidence  000359

Plaintiff's
Deposition
Response

```
i-repeat:space</form></div><div class=3D"quoteparatdbk"><br>
<br></div><div class=3D"yahoo_quoted" style=3D"display: block;"> <div style=
=3D"font-family: bookman old style, new york, times, serif; font-size: 16px=
;"> <div style=3D"font-family: HelveticaNeue, Helvetica Neue, Helvetica, Ar=
ial, Lucida Grande, sans-serif; font-size: 16px;"> <div dir=3D"ltr"><font s=
ize=3D"2" face=3D"Arial"> On Friday, January 22, 2016 11:29 AM, WorthPoint =
&lt;support@worthpoint.com&gt; wrote:<br></font></div>  <br><br> <div class=
=3D"y_msg_container">Dear Annamarie Trombetta,<br><br>I would like to congr=
atulate you on your recent decision to buy a WorthPoint product and welcome=
 you into the WorthPoint community! When I founded this company in 2007, I =
wanted to provide an easy way for people to find the value of everything fr=
om their beloved items to the stuff in their closets. I am now proud to say=
 we have become the largest database in the world for this type of informat=
ion and our product families include:<br> <br>-&gt;  About 300 million=
 prices realized from online sources;<br><br>-&gt;  About 1 billion im=
ages of antiques and collectibles;<br><br>-&gt;  About 100,000 maker=
=E2=80=99s marks, autographs, patterns and symbols;<br><br>-&gt;  A di=
gital library of more than 1,000 reference books, catalogs and historic pri=
ce guides.<br><br>If you should have any questions, contact our personable =
Atlanta-based customer support team via email at <a ymailto=3D"mailto:suppo=
rt@worthpoint.com" href=3D"mailto:support@worthpoint.com">support@worthpoin=
t.com</a> or by phone at 877.481.5750 Monday through Friday from 8 a.m. to =
5 p.m. EST.<br><br>Sincerely,<br><br>William Seippel<br>CEO and Founder of =
WorthPoint.com<br><br>Your Membership Details:<br>Account Email: <br>------=
-------------------------------------------------------------------<b=
r>Charge Name:            Monthly Membership =
Charge<br>Charge Type:              Recu=
rring<br>Effective Start Date:    01/29/2016<br>Unit Price: =
              19.99<br>QTY: &nbsp=
;  <br>Total:                &=
nbsp;        19.99<br>-------------------------------------=
---------------------------------------<br>Charge Name:    &nbs=
p;       Discount<br>Charge Type:       =
       Recurring<br>Effective Start Date:    01/29=
/2016<br>Unit Price:               =
  (0.00)<br>QTY:    <br>Total:        &n=
bsp;            (0.00)<br><br><br>We=
 remind you that orders for <a href=3D"http://www.worthpoint.com/" target=
=3D"_blank">http://www.worthpoint.com </a>are processed by Zuora as the aut=
horized vendor of WorthPoint products. Please note that zuora*worthpoint.co=
m will appear on your card statement state.<br><br>Thank you for your busin=
ess!<br><br>You can log in to WorthPoint.com at the top of any page on the =
site with your username/email and password. The username/email associated w=
ith this account is indicated above. To make updates to your account after =
signing in, simply click on =E2=80=9CAccount Settings=E2=80=9D at the top o=
f any page. You can change your password, update your method of payment and=
 verify your subscription status. If you lose your login information, simpl=
y click on the "I've forgotten my password" link on the sign in page.<br><b=
r>As a reminder, there is a free seven-day or seven-price look-up trial for=
 Worthopedia subscriptions. If you utilize your seven price look ups before=
 the seven days end, you must click on the =E2=80=9CActivate Now=E2=80=9D b=
utton to have further access to begin your monthly subscription to WorthPoi=
nt. If you subscribed to Marks or Library Products you have seven days unti=
l your trial expires.<br><br>Questions?<br><br>If you have questions, pleas=
e contact our Customer Support team at 877-481-5750 or via email at <a ymai=
lto=3D"mailto:Support@Worthpoint.com." href=3D"mailto:Support@Worthpoint.co=
m.">Support@Worthpoint.com.</a><br><br></div>  </div> </div>  </div></div><=
/body></html>
------=_Part_7540324_2021350889.1453490702935--
```

*text from Email* (handwritten margin note)

Roundcube Webmail :: Welcome to WorthPoint - Your Subscription Has Been Created

| | |
|---|---|
| Subject | Welcome to WorthPoint - Your Subscription Has Been Created |
| From | WorthPoint <support@worthpoint.com> |
| To | ████████████████ |
| Reply-To | <support@worthpoint.com> |
| Date | 2016-01-22 10:30 |
| Priority | Normal |

roundcube

Plaintiff's
Deposition
Response

Plaintiff's Evidence  000360

Dear Annamarie Trombetta,

I would like to congratulate you on your recent decision to buy a WorthPoint product and welcome you into the WorthPoint community! When I founded this company in 2007, I wanted to provide an easy way for people to find the value of everything from their beloved items to the stuff in their closets. I am now proud to say we have become the largest database in the world for this type of information and our product families include:

-> About 300 million prices realized from online sources;

-> About 1 billion images of antiques and collectibles;

-> About 100,000 maker's marks, autographs, patterns and symbols;

-> A digital library of more than 1,000 reference books, catalogs and historic price guides.

If you should have any questions, contact our personable Atlanta-based customer support team via email at support@worthpoint.com or by phone at 877.481.5750 Monday through Friday from 8 a.m. to 6 p.m. EST.

Sincerely,

William Seippel
CEO and Founder of WorthPoint.com

Your Membership Details:
Account Email:
-----------------------------------------------------------------------

| | |
|---|---|
| Charge Name: | Monthly Membership Charge |
| Charge Type: | Recurring |
| Effective Start Date: | 01/29/2016 |
| Unit Price: | 19.99 |
| QTY: | |
| Total: | 19.99 |

-----------------------------------------------------------------------

| | |
|---|---|
| Charge Name: | Discount |
| Charge Type: | Recurring |
| Effective Start Date: | 01/29/2016 |
| Unit Price: | (0.00) |
| QTY: | |
| Total: | (0.00) |

We remind you that orders for http://www.worthpoint.com are processed by Zuora as the authorized vendor of WorthPoint products. Please note that zuora*worthpoint.com will appear on your card statement state.

Thank you for your business!

You can log in to WorthPoint.com at the top of any page on the site with your username/email and password. The username/email associated with this account is indicated above. To make updates to

Page 1 of 2

undcube Webmail :: Welcome to WorthPoint - Your Subscription Has Been Updated!

our account after signing in, simply click on "Account Settings" at the top of any page. You can hange your password, update your method of payment and verify your subscription status. If you ose your login information, simply click on the "I've forgotten my password" link on the sign in age.

s a reminder, there is a free seven-day or seven-price look-up trial for Worthopedia subscriptions. If you utilize your seven price look ups before the seven days end, you must click n the "Activate Now" button to have further access to begin your monthly subscription to WorthPoint. If you subscribed to Marks or Library Products you have seven days until your trial expires.

Questions?

If you have questions, please contact our Customer Support team at 877-481-5750 or via email at Support@WorthPoint.com.

Plaintiff's
Deposition
Response

Plaintiff's Evidence 000361

Fw: Welcome to WorthPoint - Your Subscription Has Been Created

Plaintiff's
Deposition
Response

Plaintiff's Evidence 000362

Page 1

From: Annamarie Trombetta

To: WorthpointSupport@

Date: Monday, January 25, 2016, 6:33 PM EST

Within this e-mail are several questions that I am requesting are answered as soon as possible.
I sent this to you on Friday January 22, 2016.

To The Worthpoint Staff,
I found this link to Worthpoint under Artist Annamarie Trombetta. The link 1972 is associated with several of my personal and professional links. I signed on to Worthpoint to see the value of this painting. The worth is $181.50 . See below

1) Who is responsible for posing "1972 Original Oil Painting man with Red Umbrella signed Annamarie Trombetta" information on Worthpoint.com website ??
2) Can I have the name of the person who is the Worthpoint webmaster??
3) Can I have the name of the person who posted this information?
4) Who was the seller?? I called eBay and they do not have the information? Does Worthpoint have this information??
5) Please confirm if your website was last update on Updated Date: 30-apr-2013--see below
6) Why do you state that there are are 12 photos in the description. Below is the text that is on the page for this painting. I only see a photo of a signature --see below
7) Kindly forward any information that you have regarding this painting .
Thankyou for your anticipated cooperation.
>>> UP IN THIS AUCTION <<<<< 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta New York Listed Artist - Shabby Chic Condition
DESCRIPTION - Please be patient there are 12 photos to be loaded in this auction. Up in this auction is a wonderful and delightful oil on canvas painting of a man (I guess it could be a woman) with a red umbrella. This is by Annamarie Trombetta. It is signed on the bottom, but on the back it has written in red on the stretcher, Annamarie Trombetta "Gifted" 1977, "Painted" 1972. To our eyes it looks like it is after the style of Andre Kohn.

1972 Original Oil Painting Man With Red Umbrella Signed ...

www.worthpoint.com › Worthopedia™ ▼

1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz.
Sold for: Start Free Trial or Sign In to see what it's worth. Item Category ...

On Friday, January 22. 2016 2:27 PM, WorthPoint Customer Support <support@worthpoint.desk-mail.com> wrote:

welcome to WorthPoint - Your Subscription Has Been Created

**WorthPoint** | Jan 22, 2016 02:26PM EST

Thank you for submitting your request. We have received your request and are working on responding to you as soon as possible. If you have any additional information to add to this case, please reply to this email.

Thanks in advance for your patience and support.

This was sent by client @trombettkent@yahoo.com in reference to Case #5607

Plaintiff's
Deposition
Response

000362
Page 2

**SA1719**

Yahoo Mail – Re: Welcome to WorthPoint – Your Subscription Has Been Created

## Re: Welcome to WorthPoint - Your Subscription Has Been Created

From: WorthPoint Customer Support (support@worthpoint.desk-mail.com)

To: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Date: Friday, January 22, 2016, 2:27 PM EST

Plaintiff's
Deposition
Response

Plaintiff's Evidence  000363

### Ticket #56607: Re: Welcome to WorthPoint - Your Subscription Has Been Created

WorthPoint | Jan 22, 2016 02:26PM EST
Thank you for submitting your request. We have received your request and are working on
responding to you as soon as possible. If you have any additional information to add to this
case, please reply to this email.

Thanks in advance for your patience and support.
This message was sent to ▮▮▮▮▮▮▮▮▮ in reference to Case #56607

[[c768dfffcc36a12e809f15c05f2719c32ecb5376-620688358]]

**SA1720**

Yahoo Mail - Re: Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

Plaintiff's
Deposition
Response    Plaintiff's Evidence  000364

## Re: Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

From: WorthPoint Customer Support (support@worthpoint.desk-mail.com)

To:

Date: Saturday, February 20, 2016, 10:25 AM EST

Ticket #57565: Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

**WorthPoint** | Feb 20, 2016 10:24AM EST
Thank you for submitting your request. We have received your request and are working on responding to you as soon as possible. If you have any additional information to add to this case, please reply to this email.

Thanks in advance for your patience and support.

This message was sent to                    in reference to Case #57565.

[ReqKSTotqu rc bt ctc bf93sb9ne92oa9leda46c9-64433961/6]]

Plaintiff's
Deposition
Response

**Plaintiff's Evidence  000364  Fraudulent Artwork and links to Fraudulent Artwork**

1/1

# SA1721

10/20/2022    https://apis.mail.yahoo.com/ws/v3/mailboxes/@.id==VjN-wNyUt1Gq-IqyaOw0dPDGQshezn6hTEyYYbzuUfxgK-8IfPj5XrFm6kPKHxkFSkrv4QS5...

```
X-Apparently-To: ████████████████  Sat, 20 Feb 2016 15:25:20 +0000
Return-Path: <pm_bounces@pm.mtasv.net>
Received-SPF: pass (domain of pm.mtasv.net designates 50.31.156.122 as permitted sender)
X-YMailISG: q3T3ojUWLDt6HAGZ4vF9MuDAp7cZAJOFfxIEVmWHeXTUrR1z
  hIIY15AJzD5FW_aBqKTueXEhAWMgqoRvWhhyvW3bIsdNevwKpaFm0SHv8Wsm
  Xep5Yhhjj24UJMjqvJHkilfAeDhpjzbkh9UY.rAnEkBIWUI19o0m0.f1hOdU
  FATKc0GwyQqPJSd4bwudLHnaiZrQuAA6Tb7CLxhq7tVYA9uAt87FHi6o8idz
  RIFApo9VqgrjVGWfXEMSEoJXUvEwC5yaqhPdg.Cfdf6TlteMbM4mHCw.z17i
  pN9cuddzC4_HNF8zaeFoqvt4AQdy9sWApMXjhoEtJkxR9tD1M1_0mjJDCodw
  QSH2k0y7raNrIK5OZHNO07wxSpXIP5Q32P9S13JiVkdUa.qFc3SsANFrdhVJ
  KbTxrWJcVtx3aQ_XtEosJddgdhkrnfk18otFM5wW.GwCRWQc2q6fO0Fm6DYz
  DzBHqaKP0re9OgnOD7Fa9GTjiOigXx3o8YwwzTjFg9M1MVujNsCNGyNcoyNU
  kdp4g3OwwuODEv7xUJCy5gP16mbPIa8dKXsZPiBv1ANrh.xN.oj_BRjIUpRn
  sIlUdk3fmdu4yWJBGFaXEQcmGs1XMnZvOd1rtil8GgsiuSwWUEJyvb6uzoqo
  aScCleJr_hLBUAWr2R53UX5OMJMZoi6q19GLhw4ASni9dG7SKJYZYEbivAQn
  mHaLmFdUcCqdRMeenPSInNAx3XKwolFsdPNXoPNWgDYXwvKh2.lcKXqX.s3W
  AA17bMJ8clSW9KkY7.pUPy7ubGE91f0cxyE8wc.UUDlTZLyBiuFYjXX55rbB
  WI30H4mccXXuqybcdPT2VJBa978MkSa.g3mst9BwKUUILm5cAC2uZa3BAHNh
  P.eK3wNXk0uEjg5zM5Ex1y3HpI.qHopZUDepCBGaioUi2wmMm7K86Y7_IGKp
  C3ciCLbPDASRto_14tapqGJbEkbzLWpIm6dTnw3QlEPSKaaMdWTg_8ZlToaw
  dtFosnEcw9hmZmLIXZ4hs0jJmJTtgVb169h73AFmpVLHtkD4dTOfq_sPUuM0
  QsVw3nMHloVfGH9wibq.iW3ShgqFpcUiA_GdkWluj8tTUcF1Yh3XnMBBRIr3
  PytdxbVyD35QqGU8cozxQQ8SE9xNYg5or8Rwaw8tOKOgar8YNT8Z78ExbEJR
  9XbAxwC3IdmJC4QudQIp863TfpxjPQFOV4Ic_wCjlfntjQV91UYOMGYswVFq
  tiu3vINb_Fz.SjbphZN0zU4cy4f5YKSwvxVXwzecVy6g5f6x7vSiqa6sI8vk
  1OdODwRvVm0CiHw2Pkfd7yxlbO3A6qvOPRSAT7neJ2MthIpL0LmVz0IJKWdi
  HJ5bFe99pPix_p4comJwfjPOaM4DVrVLG7jQ5Emi5GY_n4wWC4y_aG1feN9z
  4.UwpSXWc0u9jql1X2luVM0FDd0xotp_57Q1JZ.MDpX4Hk6w9TDROtSWEk1Q
  HB_AHlMGgkqyqcvIqNOseZjhIw--
X-Originating-IP: [50.31.156.122]
Authentication-Results: mta1486.mail.gq1.yahoo.com  from=worthpoint.desk-mail.com;
  domainkeys=neutral (no sig); from=pm.mtasv.net; dkim=pass (ok)
Received: from 127.0.0.1  (EHLO sc-ord-mta122.mtasv.net) (50.31.156.122)
  by mta1486.mail.gq1.yahoo.com with SMTPS; Sat, 20 Feb 2016 15:25:20 +0000
DKIM-Signature: v=1; a=rsa-sha1; c=relaxed/relaxed; s=pm; d=pm.mtasv.net;
  h=From:Date:Subject:MIME-Version:Content-Type:To:Reply-To:In-Reply-To:Message-ID;
  bh=Eplm7KCQvJIcZmUCTxml14U5dAo=;
  b=upw7dcdrADwBxRxmLku4nqUWMtTOdDAOewBfziJUoW/O+c5d8iopY4CwTAggbHv5+zg2NmWXlbvP
    rKPOXVeQmfA43ZyPZKUqAQIW9F5VzRPx1CdQALoLo4AA6wKBgngu0i49iiXHldvU78RY9u45wk84
    y960NMB15ZFSy7xkO90=
Received: by sc-ord-mta122.mtasv.net id hp22m01jk5k9 for ████████████████; Sat, 20
Feb 2016 10:25:19 -0500 (envelope-from <pm_bounces@pm.mtasv.net>)
X-IADB-IP: 50.31.156.122
X-IADB-IP-REVERSE: 122.156.31.50
From: "WorthPoint Customer Support" <support@worthpoint.desk-mail.com>
Date: Sat, 20 Feb 2016 10:25:19 -0500
Subject: Re: Artist Annamarie Trombetta----Fraudulent Artwork--and links
  to Fraudulent Artwork
MIME-Version: 1.0
Content-Type: multipart/alternative;
        boundary="_=aspNetEmail=_92c89c994f084ec389ee2ea30cad4ab2"
X-Mailer: aspNetEmail ver 4.0.0.38
X-Complaints-To: abuse@postmarkapp.com
X-PM-RCPT: |bTB8MjA4OD28Mjc0OTQxfHRryb21iZXR0YWFydEB5YWhvby5jb20=|
X-PM-Message-Id: 94df665e-e9cd-4d7e-b47d-9cf381e58918
To: ████████████
Reply-To: support@worthpoint.desk-mail.com
In-Reply-To: <1789304145.217902.1455981861074.JavaMail.yahoo@mail.yahoo.com>
X-Mailer: Desk.com Support Platform
Message-ID: <56c8854428220_fa05de53281518fa@worthpoint.desk.com>
Content-Length: 3235

--_=aspNetEmail=_92c89c994f084ec389ee2ea30cad4ab2
Content-Type: text/plain;
```

Plaintiff's Evidence 000364

META DATA PAGE 1

Plaintiff's
Deposition
Response

**SA1722**

10/20/2022        https://apis.mail.yahoo.com/ws/v3/mailboxes/@.id==VjN-wNyUtlGq-IqyaOw0dPDGQshezn6hTEyYYbzuUfxgK-8IfPj5XrFm6kPKHxkFSkrv4QS5...

```
                                   charset="UTF-8"
Content-Transfer-Encoding: quoted-printable


                                                =0D=0AType your response ABOVE THIS LIN=
E to reply=0D=0A=0D=0A---------------------------------------------------=
--------------------------------------------------------=0D=0A=0D=0ARe: =
Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent=
 Artwork=0D=0A=0D=0AWorthPoint =7C Feb 20, 2016 10:24AM EST=0D=0A=0D=0ATh=
ank you for submitting your request=2E  We have received your request and=
 are working on responding to you as soon as possible=2E  If you have any=
 additional information to add to this case, please reply to this email=2E=
=0D=0A=0D=0AThanks in advance for your patience and support=2E=0D=0A=0D=0A=
------------------------------------------------------------------------=
---------------------------------------=0D=0AThis message was sent to  trombe=
ttaart=40yahoo=2Ecom in reference to Case =2357565=2E=0D=0A---------------=
------------------------------------------------------------------------=
--------------------=0D=0A=0D=0A=0D=0A=5B=5B7e0d850a2b9039a31cbf23ab9ae5=
8ea3fc4a46c9-641339616=5D=5D
```

Plaintiff's
Deposition
Response

```
--_=aspNetEmail=_92c89c994f084ec389ee2ea30cad4ab2
Content-Type: text/html;
          charset="UTF-8"
Content-Transfer-Encoding: quoted-printable


<div style=3D=27color:=23ffffff; display: none =21important;=27>_____=
_____</div><table border=3D220=22 cellpadding=3D220=
=22 cellspacing=3D220=22 width=3D22100=25=22>=0D=0A<tr>=0D=0A<td align=3D=
=22center=22 valign=3D22top=22>=0D=0A=0D=0A<table border=3D220=22 cellp=
adding=3D220=22 cellspacing=3D220=22 width=3D22100=25=22>=0D=0A<tr>=0D=
=0A<td valign=3D22top=22 style=3D22color:=23333; font-family:Arial; fon=
t-size:14px; line-height:150=25; text-align:left;=22>=0D=0A=0D=0A<table b=
order=3D220=22 cellpadding=3D2210=22 cellspacing=3D220=22 width=3D221=
00=25=22>=0D=0A<tr>=0D=0A<td valign=3D22top=22>=0D=0A=0D=0A<div>=0D=0A=0D=
=0A<h2 style=3D=22text-align:center; color:white; background-color:steelb=
lue;=22>Ticket =2357565: Artist Annamarie Trombetta----Fraudulent Artwork=
--and links to Fraudulent Artwork</h2>=0D=0A=0D=0A<strong>WorthPoint</str=
ong> =26nbsp;=7C=26nbsp; <span style=3D=22font-size:80=25;=22>Feb 20, 201=
6 10:24AM EST</span>=0D=0A<br />=0D=0A=0D=0AThank you for submitting your=
 request=2E  We have received your request and are working on responding =
to you as soon as possible=2E  If you have any additional information to =
add to this case, please reply to this email=2E<br /><br />=0D=0A=0D=0ATh=
anks in advance for your patience and support=2E=0D=0A=0D=0A<div style=3D=
=22background-color:steelblue; border:0; font-size:80=25; color:white; pa=
dding:2px; text-align:center=22> This message was sent to  trombettaart=40=
yahoo=2Ecom in reference to Case =2357565=2E=0D=0A=0D=0A</div>=0D=0A</div=
>=0D=0A=0D=0A</td>=0D=0A</tr>=0D=0A</table>=0D=0A=0D=0A</td>=0D=0A</tr>=0D=
=0A</table>=0D=0A=0D=0A</td>=0D=0A</tr>=0D=0A</table>=0D=0A<span style=3D=
=27color:=23ffffff=27>=5B=5B7e0d850a2b9039a31cbf23ab9ae58ea3fc4a46c9-6413=
39616=5D=5D</span>


--_=aspNetEmail=_92c89c994f084ec389ee2ea30cad4ab2-=
```

Plaintiff's
Deposition
Response

Plaintiff's Evidence  000364  META DATA PAGE 2

Yahoo Mail - Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

## Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

From:  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

To:  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Cc:  support@worthpoint.com

Date:  Saturday, February 20, 2016, 10:24 AM EST

Plaintiff's
Deposition
Response  Plaintiff's Evidence 000365

Dear Mr. Seippel and Mr. Watkins,

Allow me to introduce myself to you Mr. Seippel.  I am  professional artist Annamarie Trombetta.  I as well as other people found a listing for a painting entitled 1972 Original Oil Painting Man with Red Umbrella signed Annamarie Trombetta.  This is not one of my paintings.  There is a photo of a signature A. Trombetta  with the eBay logo and Copyright symbol written "Copyrighted work licensed by Worthpoint " with your company logo in yellow next to it.  This is not my signature.  **Please see attachments**.

On February 3, 2016  I spoke with Mr. Gregory Watkins.  Mr. Watkins also stated that you were at a conference in Las Vegas.  I asked Mr. Watkins certain  questions regarding the artwork falsely attributed to me.  I requested that he e-mail me his answers regarding these questions that I had about this artwork  on Tuesday February 3, 2016.  Today is February 20, 2016  and  nothing has been forwarded  to me.  I have contacted eBay several times  prior to contacting your company.

EBay stated that they do not have the name of the seller  nor the name of the buyer or the listing for this painting.  Ebay expressed several times to me that I need to contact Worthpoint since the listing is on your site..

There are still listing for Worthpoint.com under my name.   Under google search for the painting "1972 Original Oil Painting Man with Red Umbrella signed Annamarie Trombetta there is a link entitled **Marilyn Monroe 1988 Vintage  Michael Ochs Archive and also Thomas Kinkade** .  Both  Worthpoint sites list 1972 Original Oil Painting Man with Red Umbrella signed Annamarie Trombetta which is why they are surfacing under my name and under 1972 Original Oil Painting Man with Red Umbrella signed Annamarie Trombetta.

When I spoke to Mr. Watkins on the phone on February 2, 2016  I asked Mr. Watkins  the following questions and asked him to forward me the information which he has not done.  I have contacted you in order to have these questions answered please:

1) HOW did  your company obtained this information -listing for  " 1972 Original Oil Painting Man with Red Umbrella signed Annamarie Trombetta "?
2) Can you forward me the name of the seller?
3) How long has this link been on your site??   The date of the sale is from December 1, 2012.  I will assume from December 1, 2012 and Mr. Watkins agreed during our phone conversation on February 3, 2016.

# SA1724

https://apis.mail.yahoo.com/ws/v3/mailboxes/@.id==VjN-wNyUt1Gq-IqyaOw0dPDGQshezn6hTEyYYbzuUfxgK-8lfPj5XrFm6kPKHxkFSkrv4QS5...

```
Date: Sat, 20 Feb 2016 15:24:20 +0000 (UTC)
From: Annamarie Trombetta
Reply-To: Annamarie Trombe
To: "will@worthpoint.com" <will@worthpoint.com>
Cc: Worthpoint Support <support@worthpoint.com>
Message-ID: <1789304145.217902.1455981861074.JavaMail.yahoo@mail.yahoo.com>
Subject: Artist Annamarie Trombetta----Fraudulent Artwork--and links to
 Fraudulent Artwork
MIME-Version: 1.0
Content-Type: multipart/mixed;
        boundary="-----=_Part_217901_1027004312.1455981861073
References: <1789304145.217902.1455981861074.JavaMail.yahoo.ref@mail.yahoo.com>
Content-Length: 4716321

-------=_Part_217901_1027004312.1455981861073
Content-Type: multipart/alternative;
        boundary="-----=_Part_217900_1844622739.1455981861065"

-------=_Part_217900_1844622739.1455981861065
Content-Type: text/plain; charset=UTF-8
Content-Transfer-Encoding: quoted-printable
```

Plaintiff's Evidence 000365
Email META DATA PAGE 1

Plaintiff's
Deposition
Response

Fraudulent Artwork and links to Fraudulent Artwork

```
Dear Mr. Seippel and Mr. Watkins,
Allow me to introduce myself to you Mr. Seippel. =C2=A0 I am =C2=A0professi=
onal artist Annamarie Trombetta. =C2=A0 I as well as other people found a l=
isting for a painting entitled 1972 Original Oil Painting Man with Red Umbr=
ella signed Annamarie Trombetta. =C2=A0This is not one of my paintings. =C2=
=A0 There is a photo of a signature A. Trombetta =C2=A0with the eBay logo a=
nd Copyright symbol written "Copyrighted work licensed by Worthpoint " =C2=
=A0with your company logo in yellow next to it. =C2=A0This is not my signat=
ure. =C2=A0Please see attachments.=C2=A0
=C2=A0On February 3, 2016 =C2=A0I spoke with Mr. Gregory Watkins. =C2=A0Mr.=
 Watkins also stated that you were at a conference in Las Vegas. =C2=A0 I a=
sked Mr. Watkins certain =C2=A0questions regarding the artwork falsely attr=
ibuted to me. =C2=A0I =C2=A0requested that he e-mail me his answers regardi=
ng these questions that I had about this artwork =C2=A0on Tuesday February =
3, 2016. =C2=A0 Today is February 20, 2016 =C2=A0and =C2=A0nothing has been=
 forwarded =C2=A0to me. =C2=A0I have contacted eBay several times =C2=A0pri=
or to contacting your company.
=C2=A0EBay stated that they do not have the name of the seller =C2=A0nor th=
e name of the buyer or the listing for this painting. =C2=A0Ebay expressed =
several times to me that I need to contact Worthpoint since the listing is =
on your site..

=C2=A0There are still listing for Worthpoint.com under my name. =C2=A0 Unde=
r google search for the painting "1972 Original Oil Painting Man with Red U=
mbrella signed Annamarie Trombetta there is a link entitled Marilyn Monroe =
1988 Vintage =C2=A0Michael Ochs Archive and also Thomas Kinkade . =C2=A0Bot=
h =C2=A0Worthpoint sites list 1972 Original Oil Painting Man with Red Umbre=
lla signed Annamarie Trombetta which is why they are surfacing under my nam=
e and under 1972 Original Oil Painting Man with Red Umbrella signed Annamar=
ie Trombetta. =C2=A0=C2=A0
When I spoke to Mr. Watkins on the phone on February 2, 2016 =C2=A0I asked =
Mr. Watkins =C2=A0the following questions and asked him to forward me the i=
nformation which he has not done. =C2=A0I have contacted you in order to ha=
ve these questions answered please:
1) HOW did =C2=A0your company obtained this information -listing for =C2=A0=
" 1972 Original Oil Painting Man with Red Umbrella signed Annamarie Trombet=
ta "?2) Can you forward me the name of the seller?3) How long has this link=
 been on your site?? =C2=A0 The date of the sale is from December 1, 2012. =
=C2=A0I will assume from December 1, 2012 and Mr. Watkins agreed during our=
 phone conversation on February 3, 2016.4) Who owns this painting?? =C2=A0T=
he description =C2=A0is a damaged painting. =C2=A0It also states that there=
 is a signature in RED on the =C2=A0back of the stretcher. =C2=A0This signa=
```

Plaintiff's
Deposition
Response

Plaintiff's Evidence 000366

Yahoo Mail - Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

4) Who owns this painting?? The description is a damaged painting. It also states that there is a signature in RED on the back of the stretcher. This signature is outside of the photo of a signature A.Trombetta. The painting is dated 1972--Do you know how old I would have been at the time the painting has been dated?

5) Who provided you with the photo of the signature A.Trombetta? Again I assure it is not my signature.

6) The Worthpoint description of this painting states that there are are 12 photos. Below is the text that is on the page for this painting. Where did you get my biography?? It is so specific it is definitely mine.

7) I did sign up for the Free Trial in order to obtain the information below. If there is a purchase price of $181. 50 duly documented and listed there was a financial transaction and there should be a receipt of payment for this item. May I have this information as well?

Kindly forward any information that you have regarding this painting .

Attached is a printout from February 2016 which lists items and links that are on Worthpoint.com These items are listed with my unrelated personal and professional links. I have no association to the Worthpoint.com company---data base nor the artwork that is associated with these link. Please review. I am requesting that you kindly remove your links since they have no relation to my personal and professional credentials.

Sincerely,
Annamarie Trombetta
1972 ORIGINAL OIL PAINTING MAN WITH RED UMBRELLA SIGNED
ANNAMARIE TROMBETTA YQZ

- SOLD FOR:
- $181.50
- ITEM CATEGORY:
-
- SOURCE:
- eBay
- SOLD DATE:
- Dec 01,2012
- CHANNEL:
- Online Auction

This is by Annamarie Trombette. It is signed on the bottom, but on the back it has written in red on the stretcher, Annamarie Trombetta "Gifted" 1977, "Painted" 1972. To our eyes it looks like it is after the style of Andre Kohn. It is quite large being approx. 48 1/2" tall and 17 1/2" wide. We are calling it shabby chic condition as it has a tear in the canvas, about 5/8" long just to the left of the man's knees, but still such a great painting. For those not familiar with Trombetta, here is information about her from off AskArt as they got it from her website: Annamarie Trombetta (1963 - ) Lived/Active: New York The nature of an artist's life, creativity and growth may be synonymously expressed in the image of an archetypal tree. Beginning with the earthly descendent roots the artist like the tree branches out into its surrounding environmental and celestial world. Both ascend and descend, widening their girth of consciousness while producing visual imagery, weathering each season of change. Thus, I believe it is the nature of the artist and of nature itself to regenerate and manifest. All of the imagery in this catalog was either created en plein air or from the subject directly. My journey to becoming an artist began many years ago. The consanguineous roots of my

Case 1:18-cv-00993-LTS-SLC Document 425-15 Filed 04/17/23 Page 26 of 99

ture =C2=A0is outside of the photo of a signature A.Trombetta. The painting=
is dated 1972--Do you know how=C2=A0old I would have been at the time the =
painting has been dated?5)Who provided you with the photo of the signature =
=C2=A0A.Trombetta? =C2=A0Again =C2=A0 I assure it is not my signature.6) Th=
e Worthpoint description of this painting =C2=A0states that there are are 1=
2 photos. Below is the text that is on the page for this painting. =C2=A0 W=
here did you get my biography?? It is so specific it is definitely mine.7) =
=C2=A0I did sign up for the Free Trial in order to obtain the information b=
elow. =C2=A0If there is a purchase price of $181. 50 duly documented and li=
sted =C2=A0there was a =C2=A0financial transaction and there should be a re=
ceipt of payment for this item. =C2=A0May I have this information as well?
Kindly forward any information that you have regarding this painting .

=C2=A0Attached is a printout from February =C2=A02016 which lists items and=
links that are on Worthpoint.com =C2=A0These items are listed with my unre=
lated personal and professional links. =C2=A0 I have no association to the =
Worthpoint.com company---data base nor the artwork that is associated with =
these link. =C2=A0 Please review. =C2=A0 I am requesting that you kindly re=
move your links since they have no relation to my personal and professional=
credentials.
Sincerely,Annamarie Trombetta
| 1972 ORIGINAL OIL PAINTING MAN WITH RED UMBRELLA SIGNED ANNAMARIE TROMBET=
TA YQZ  =20
    - SOLD FOR:
    - $181.50
    - ITEM CATEGORY:
    -=20
    - SOURCE:
    - eBay
    - SOLD DATE:
    - Dec 01,2012
    - CHANNEL:
    - Online Auction
|

Plaintiff's
Deposition
Response

Plaintiff's Evidence 000366  Fraudulent Artwork and links to Fraudulent Artwork
Email  META DATA PAGE 2

This is by Annamarie Trombette. It is signed on the bottom, but on the back=
it has written in red on the stretcher, Annamarie Trombetta "Gifted" 1977,=
"Painted" 1972. To our eyes it looks like it is after the style of Andre K=
ohn. It is quite large being approx. 48 1/2" tall and 17 1/2" wide. We are =
calling it shabby chic condition as it has a tear in the canvas, about 5/8"=
long just to the left of the man's knees, but still such a great painting.=
For those not familiar with Trombetta, here is information about her from =
off AskArt as they got it from her website: Annamarie Trombetta (1963 - ) L=
ived/Active: New York The nature of an artist=E2=80=99s life, creativity an=
d growth may be synonymously expressed in the image of an archetypal tree. =
Beginning with the earthly descendent roots the artist like the tree branch=
es out into its surrounding environmental and celestial world. Both ascend =
and descend, widening their girth of consciousness while producing visual i=
magery, weathering each season of change. Thus, I believe it is the nature =
of the artist and of nature itself to regenerate and manifest. All of the i=
magery in this catalog was either created en plein air or from the subject =
directly. My journey to becoming an artist began many years ago. The consan=
guineous roots of my Italian family tree provided me with an innate constit=
ution for my artistic profession. When I was a tiny seed of contemplative t=
hought, my artistic nature began to sprout interest while gazing up at the =
ceiling paintings in a neighborhood church named Regina Pacis, meaning Quee=
n of Peace. The church located in Brooklyn, NY features ceiling paintings, =
sculptures, marble interiors, and incorporates architectural elements for t=
he fa=C3=A7ade and the belfry that are of Italianate design. Before the age=
of three I was able to surmise that the church in the ceiling painting was=
indeed the church I was in. The visual stimulation was a form of education=
. It fostered my sense of perception which became my strongest mode for acq=
uiring knowledge. As the years unfurled, my family moved to Staten Island. =
At this time it was a scenic field of luminosity, lush vegetation and a har=

aintiff's
position          Plaintiff's Evidence  000367
lesponse                    Yahoo Mail - Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

Italian family tree provided me with an innate constitution for my artistic profession. When I was a tiny seed of contemplative thought, my artistic nature began to sprout interest while gazing up at the ceiling paintings in a neighborhood church named Regina Pacis, meaning Queen of Peace. The church located in Brooklyn, NY features ceiling paintings, sculptures, marble interiors, and incorporates architectural elements for the façade and the belfry that are of Italianate design. Before the age of three I was able to surmise that the church in the ceiling painting was indeed the church I was in. The visual stimulation was a form of education. It fostered my sense of perception which became my strongest mode for acquiring knowledge. As the years unfurled, my family moved to Staten Island. At this time it was a scenic field of luminosity, lush vegetation and a harbor view complete with sail boats and small yachts. A few years after we moved my tree of life was in jeopardy of loosing a limb. What appeared to be a swollen leg was indeed a cancerous tumor. It was an almost fatal or perhaps even a fated occurrence in my life. The struggle to survive the experience was lightened by my imagination and by my artistic ability to create. I seriously thought I would go into medicine but the posters and paintings in the hospital and doctor's office held my attention more intensely. I began my formal training at The Brooklyn Museum School of Art while I was in high school. The exposure to various forms of art inspired me to expand my horizons and in the early Eighties I traveled on a summer tour to Europe. The tour comprised of six countries; Germany, Austria, France, Italy, Switzerland and England. Viewing so many different cities and cultures in a concentrated period of time...

1972 Original Oil Painting ---Worthpoint Fraudulent Signature.png
576.1kB

Fraudulent Signature of A.Trombetta Copyrighted work licensed by Worthpoint.png
585.2kB

Listing under 1972 Original Oil Man w:Red Umbrella:signed Annamarie Trombetta.jpg
2.2MB

**SA1728**

https://apis.mail.yahoo.com/ws/v3/mailboxes/@.id==VjN-wNyUtlGq-IqyaOw0dPDGQshezn6hTEyYYbzuUfxgK-8IfPj5XrFm6kPKHxkFSkrv4QS5...

bor view complete with sail boats and small yachts. A few years after we mo=
ved my tree of life was in jeopardy of loosing a limb. What appeared to be =
a swollen leg was indeed a cancerous tumor. It was an almost fatal or perha=
ps even a fated occurrence in my life. The struggle to survive the experien=
ce was lightened by my imagination and by my artistic ability to create. I =
seriously thought I would go into medicine but the posters and paintings in=
 the hospital and doctor=E2=80=99s office held my attention more intensely.=
 I began my formal training at The Brooklyn Museum School of Art while I wa=
s in high school. The exposure to various forms of art inspired me to expan=
d my horizons and in the early Eighties I traveled on a summer tour to Euro=
pe. The tour comprised of six countries; Germany, Austria, France, Italy, S=
witzerland and England. Viewing so many different cities and cultures in a =
concentrated period of time...
 =20

Plaintiff's Evidence 000367 Fraudulent Artwork
Email  META DATA PAGE 3

and links to Fraudulent Artwork

------=_Part_217900_1844622739.1455981861065
Content-Type: text/html; charset=UTF-8
Content-Transfer-Encoding: quoted-printable

```
<html><head></head><body><div style=3D"color:#000; background-color:#fff; f=
ont-family:bookman old style, new york, times, serif;font-size:16px"><div i=
d=3D"yiv9035935622"><div id=3D"yui_3_16_0_1_1455981696389_2784"><div style=
=3D"color:#000;background-color:#fff;font-family:bookman old style, new yor=
k, times, serif;font-size:16px;" id=3D"yui_3_16_0_1_1455981696389_2783"><di=
v id=3D"yiv9035935622"><div id=3D"yiv9035935622yui_3_16_0_1_1455717991931_6=
1949"><div style=3D"color:#000;background-color:#fff;font-family:bookman ol=
d style, new york, times, serif;font-size:16px;" id=3D"yiv9035935622yui_3_1=
6_0_1_1455717991931_61948"><div id=3D"yiv9035935622"><div id=3D"yiv90359356=
22yui_3_16_0_1_1455630706667_2727"><div style=3D"color:#000;background-colo=
r:#fff;font-family:bookman old style, new york, times, serif;font-size:16px=
;" id=3D"yiv9035935622yui_3_16_0_1_1455630706667_2726"><div id=3D"yiv903593=
5622yui_3_16_0_1_1455624295596_11913">Dear Mr. Seippel and Mr. Watkins,</di=
v><div id=3D"yiv9035935622yui_3_16_0_1_1455624295596_11913"><br></div><div =
id=3D"yiv9035935622yui_3_16_0_1_1455624295596_11913" dir=3D"ltr">Allow me t=
o introduce myself to you Mr. Seippel.   I am  professional artis=
t Annamarie Trombetta.   I as well as other people found a listing for=
 a painting entitled 1972 Original Oil Painting Man with Red Umbrella signe=
d Annamarie Trombetta.  This is not one of my paintings.   There =
is a photo of a signature A. Trombetta  with the eBay logo and Copyrig=
ht symbol written "Copyrighted work licensed by Worthpoint "  with you=
r company logo in yellow next to it.  This is not my signature.  =
<b id=3D"yiv9035935622yui_3_16_0_1_1455717991931_120875" class=3D"">Please =
see attachments. </b></div><div id=3D"yiv9035935622yui_3_16_0_1_145562=
4295596_11913"><br></div><div id=3D"yiv9035935622yui_3_16_0_1_1455624295596=
_11913" dir=3D"ltr"> On February 3, 2016  I spoke with Mr. Gregor=
y Watkins.  Mr. Watkins also stated that you were at a conference in L=
as Vegas.   I asked Mr. Watkins certain  questions regarding the =
artwork falsely attributed to me.  I  requested that he e-mail me=
 his answers regarding these questions that I had about this artwork  =
on Tuesday February 3, 2016.   Today is February 20, 2016  and &n=
bsp;nothing has been forwarded  to me.  I have contacted eBay sev=
eral times  prior to contacting your company.</div><div id=3D"yiv90359=
35622yui_3_16_0_1_1455624295596_11913" dir=3D"ltr"><br></div><div id=3D"yiv=
9035935622yui_3_16_0_1_1455624295596_11913" dir=3D"ltr"> EBay stated t=
hat they do not have the name of the seller  nor the name of the buyer=
 or the listing for this painting.  Ebay expressed several times to me=
 that I need to contact Worthpoint since the listing is on your site..</div=
><div id=3D"yiv9035935622yui_3_16_0_1_1455624295596_11913" dir=3D"ltr"><br>=
</div><div id=3D"yiv9035935622yui_3_16_0_1_1455624295596_11913" dir=3D"ltr"=
><br></div><div id=3D"yiv9035935622yui_3_16_0_1_1455624295596_11913" dir=3D=
"ltr"> There are still listing for Worthpoint.com under my name. &nbsp=
; Under google search for the painting "1972 Original Oil Painting Man with=
 Red Umbrella signed Annamarie Trombetta there is a link entitled<b id=3D"y=
ui_3_16_0_1_1455981696389_7015"> Marilyn Monroe 1988 Vintage  Michael =
Ochs Archive and also Thomas Kinkade .  </b>Both  Worthpoint site=
```

# SA1729

https://apis.mail.yahoo.com/ws/v3/mailboxes/@.id==VjN-wNyUt1Gq-IqyaOw0dPDGQshezn6hTEyYYbzuUfxgK-8lfPj5XrFm6kPKHxkFSkrv4QS5...

```
5622">
<td valign=3D"top" style=3D"width:431px;min-height:192.5px;border:1px solid=
 rgb(214, 214, 214);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_13654" =
class=3D"yiv9035935622">
<div style=3D"margin-top:0px;margin-bottom:0px;font-size:13px;line-height:n=
ormal;font-family:Times;color:rgb(81, 83, 96);" id=3D"yiv9035935622yui_3_16=
_0_1_1455624295596_13656" class=3D"yiv9035935622">1972 ORIGINAL OIL PAINTIN=
G MAN WITH RED UMBRELLA SIGNED ANNAMARIE TROMBETTA YQZ</div>
<ul id=3D"yiv9035935622yui_3_16_0_1_1455624295596_13658" class=3D"yiv903593=
5622">
<li style=3D"margin:0px;font-size:13px;line-height:normal;font-family:Arial=
;color:rgb(81, 83, 96);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1366=
0" class=3D"yiv9035935622"><span style=3D"line-height:normal;font-family:Ti=
mes;color:rgb(39, 39, 39);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1=
3662" class=3D"yiv9035935622"></span><b id=3D"yiv9035935622yui_3_16_0_1_145=
5624295596_13664" class=3D"yiv9035935622">SOLD FOR:</b></li>
<li style=3D"margin:0px;font-size:13px;line-height:normal;font-family:Times=
;color:rgb(77, 173, 74);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_136=
66" class=3D"yiv9035935622"><span style=3D"color:rgb(39, 39, 39);" id=3D"yi=
v9035935622yui_3_16_0_1_1455624295596_13668" class=3D"yiv9035935622"></span=
>$181.50</li>
<li style=3D"margin:0px;font-size:13px;line-height:normal;font-family:Arial=
;color:rgb(81, 83, 96);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1367=
0" class=3D"yiv9035935622"><span style=3D"line-height:normal;font-family:Ti=
mes;color:rgb(39, 39, 39);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1=
3672" class=3D"yiv9035935622"></span><b id=3D"yiv9035935622yui_3_16_0_1_145=
5624295596_13674" class=3D"yiv9035935622">ITEM CATEGORY:</b></li>
<li style=3D"margin:0px;font-size:13px;line-height:normal;font-family:Times=
;color:rgb(39, 39, 39);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1367=
6" class=3D"yiv9035935622"></li>
<li style=3D"margin:0px;font-size:13px;line-height:normal;font-family:Arial=
;color:rgb(81, 83, 96);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1367=
8" class=3D"yiv9035935622"><span style=3D"line-height:normal;font-family:Ti=
mes;color:rgb(39, 39, 39);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1=
3680" class=3D"yiv9035935622"></span><b id=3D"yiv9035935622yui_3_16_0_1_145=
5624295596_13682" class=3D"yiv9035935622">SOURCE:</b></li>
<li style=3D"margin:0px;font-size:13px;line-height:normal;font-family:Times=
;color:rgb(1, 26, 153);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1368=
4" class=3D"yiv9035935622"><span style=3D"color:rgb(39, 39, 39);" id=3D"yiv=
9035935622yui_3_16_0_1_1455624295596_13686" class=3D"yiv9035935622"><a rel=
=3D"nofollow" target=3D"_blank" href=3D"http://www.worthpoint.com/source/eb=
ay" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_13688" class=3D"yiv903593=
5622"><span style=3D"color:rgb(1, 26, 153);" id=3D"yiv9035935622yui_3_16_0_=
1_1455624295596_13690" class=3D"yiv9035935622">eBay</span></a></span></li>
<li style=3D"margin:0px;font-size:13px;line-height:normal;font-family:Arial=
;color:rgb(81, 83, 96);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1369=
2" class=3D"yiv9035935622"><span style=3D"line-height:normal;font-family:Ti=
mes;color:rgb(39, 39, 39);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1=
3694" class=3D"yiv9035935622"></span><b id=3D"yiv9035935622yui_3_16_0_1_145=
5624295596_13696" class=3D"yiv9035935622">SOLD DATE:</b></li>
<li style=3D"margin:0px;font-size:13px;line-height:normal;font-family:Times=
;color:rgb(81, 83, 96);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1369=
8" class=3D"yiv9035935622"><span style=3D"color:rgb(39, 39, 39);" id=3D"yiv=
9035935622yui_3_16_0_1_1455624295596_13700" class=3D"yiv9035935622"></span>=
Dec 01,2012</li>
<li style=3D"margin:0px;font-size:13px;line-height:normal;font-family:Arial=
;color:rgb(81, 83, 96);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1370=
2" class=3D"yiv9035935622"><span style=3D"line-height:normal;font-family:Ti=
mes;" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_13704" class=3D"yiv9035=
935622"></span><b id=3D"yiv9035935622yui_3_16_0_1_1455624295596_13706" clas=
s=3D"yiv9035935622">CHANNEL:</b></li>
<li style=3D"margin:0px;font-size:13px;line-height:normal;font-family:Times=
;color:rgb(81, 83, 96);" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1370=
8" class=3D"yiv9035935622">Online Auction</li>
</ul>
```

Plaintiff's Deposition Response

Plaintiff's Evidence 000367 Fraudulent Artwork and links to Fraudulent Artwork
Email META DATA PAGE 4

https://apis.mail.yahoo.com/ws/v3/mailboxes/@.id==VjN-wNyUt1Gq-IqyaOw0dPDGQshezn6hTEyYYbzuUfxgK-8lfPj5XrFm6kPKHxkFSkrv4QS589m2ULn4HOf3kMCF_g/m

**SA1730**

```
s list 1972 Original Oil Painting Man with Red Umbrella signed Annamarie Tr=
ombetta which is why they are surfacing under my name and under 1972 Origin=
al Oil Painting Man with Red Umbrella signed Annamarie Trombetta.  &nb=
sp;</div><div id=3D"yiv9035935622yui_3_16_0_1_1455624295596_11913" dir=3D"l=
tr"><br></div><div id=3D"yiv9035935622yui_3_16_0_1_1455624295596_11913" dir=
=3D"ltr">When I spoke to Mr. Watkins on the phone on February 2, 2016 &nbsp=
;I asked Mr. Watkins  the following questions and asked him to forward=
 me the information which he has not done.  I have contacted you in or=
der to have these questions answered please:</div><div id=3D"yiv9035935622y=
ui_3_16_0_1_1455624295596_11913" dir=3D"ltr"><br></div><div id=3D"yiv903593=
5622yui_3_16_0_1_1455624295596_11913" dir=3D"ltr">1) HOW did  your com=
pany obtained this information -listing for  " 1972 Original Oil Paint=
ing Man with Red Umbrella signed Annamarie Trombetta "?</div><div id=3D"yiv=
9035935622yui_3_16_0_1_1455624295596_11913" dir=3D"ltr">2) Can you forward =
me the name of the seller?</div><div id=3D"yiv9035935622yui_3_16_0_1_145562=
4295596_11913" dir=3D"ltr">3) How long has this link been on your site?? &n=
bsp; The date of the sale is from December 1, 2012.  I will assume fro=
m December 1, 2012 and Mr. Watkins agreed during our phone conversation on =
February 3, 2016.</div><div id=3D"yiv9035935622yui_3_16_0_1_1455624295596_1=
1913" dir=3D"ltr">4) Who owns this painting??  The description  i=
s a damaged painting.  It also states that there is a signature in RED=
 on the  back of the stretcher.  This signature  is outside =
of the photo of a signature A.Trombetta. The painting is dated 1972--Do you=
 know how </div><div id=3D"yiv9035935622yui_3_16_0_1_1455624295596_119=
13" dir=3D"ltr">old I would have been at the time the painting has been dat=
ed?</div><div id=3D"yiv9035935622yui_3_16_0_1_1455624295596_11913" dir=3D"l=
tr">5)Who provided you with the photo of the signature  A.Trombetta? &=
nbsp;Again   I assure it is not my signature.</div><div id=3D"yiv90359=
35622yui_3_16_0_1_1455624295596_11913" dir=3D"ltr"><div class=3D"yiv9035935=
622" dir=3D"ltr" id=3D"yiv9035935622yui_3_16_0_1_1453487167561_4139"><span =
class=3D"yiv9035935622" id=3D"yiv9035935622yui_3_16_0_1_1453487167561_9118"=
>6) The Worthpoint description of this painting  states that there are=
 are 12 photos. Below is the text that is on the page for this painting. &n=
bsp; Where did you get my biography?? It is so specific it is definitely mi=
ne.</span></div><div class=3D"yiv9035935622" dir=3D"ltr" id=3D"yiv903593562=
2yui_3_16_0_1_1453487167561_4139"><span class=3D"yiv9035935622" id=3D"yiv90=
35935622yui_3_16_0_1_1453764529096_7639">7)  I did sign up for the Fre=
e Trial in order to obtain the information below.  If there is a purch=
ase price of $181. 50 duly documented and listed  there was a  fi=
nancial transaction and there should be a receipt of payment for this item.=
  May I have this information as well?</span></div><div class=3D"yiv90=
35935622" dir=3D"ltr" id=3D"yiv9035935622yui_3_16_0_1_1453487167561_4139"><=
span class=3D"yiv9035935622"><br></span></div><div class=3D"yiv9035935622" =
dir=3D"ltr" id=3D"yiv9035935622yui_3_16_0_1_1453487167561_4139"><span class=
=3D"yiv9035935622" id=3D"yiv9035935622yui_3_16_0_1_1455717991931_62344">Kin=
dly forward any information that you have regarding this painting .</span><=
/div><div class=3D"yiv9035935622" dir=3D"ltr" id=3D"yiv9035935622yui_3_16_0=
_1_1453487167561_4139"><br></div></div><div id=3D"yiv9035935622yui_3_16_0_1=
_1455624295596_11913" dir=3D"ltr"><br></div><div id=3D"yiv9035935622yui_3_1=
6_0_1_1455624295596_11913" dir=3D"ltr"> Attached is a printout from Fe=
bruary  2016 which lists items and links that are on Worthpoint.com &n=
bsp;These items are listed with my unrelated personal and professional link=
s.   I have no association to the Worthpoint.com company---data base n=
or the artwork that is associated with these link.   Please review. &n=
bsp; I am requesting that you kindly remove your links since they have no r=
elation to my personal and professional credentials.</div><div id=3D"yiv903=
5935622yui_3_16_0_1_1455624295596_11913" dir=3D"ltr"><br></div><div id=3D"y=
iv9035935622yui_3_16_0_1_1455624295596_11913" dir=3D"ltr">Sincerely,</div><=
div id=3D"yiv9035935622yui_3_16_0_1_1455624295596_11913" dir=3D"ltr">Annama=
rie Trombetta</div><table cellspacing=3D"0" cellpadding=3D"0" style=3D"bord=
er-collapse:collapse;" id=3D"yiv9035935622yui_3_16_0_1_1455624295596_13648"=
 class=3D"yiv9035935622">
<tbody id=3D"yiv9035935622yui_3_16_0_1_1455624295596_13650" class=3D"yiv903=
5935622">
<tr id=3D"yiv9035935622yui_3_16_0_1_1455624295596_13652" class=3D"yiv903593=
```

Plaintiff's
Deposition
Response

Plaintiff's Evidence 000367 Fraudulent Artwork and links to Fraudulent Artwork
Email META DATA PAGE 5

Deposition
Response    Plaintiff's Evidence  000368





© Copyrighted work licensed by WorthPoint

Case 1:18-cv-00993-LTS-SLC    Document 425-15    Filed 04/17/23 Evidence 000370    Page 33 of 99

1972 original oil painting man with red umbrella signed annamarie trombetta yqz - Google Search

Plaintiff's
Deposition
Response

2/17/16, 2:29 PM

Google    1972 original oil painting man with red umbrella signed annamarie trombett  🔍    Annamarie     A

All    Shopping    Images    Videos    News    More ▾    Search tools

👤    ⚙

7 results (0.41 seconds)

**Page 1 - Italian American Museum**
italianamericanmuseum.org/exhibitions/Pleinair.htm ▾
Acclaimed artist Annamarie Trombetta presents a solo exhibition that ... Ms. Trombetta
has created works in printmaking, watercolor, oil and pastel and is known ... was an
exhibition of Italian paintings from the collection of Gaetano Marzotto.
Missing: 1972 man red umbrella yqz

**Marilyn Monroe 1988 Vintage Michael Ochs Archive Chanel ...**
www.worthpoint.com › Worthopedia™ ▾
These posters are original from 1988 not remakes. ... 1972 Original Oil Painting Man
With Red Umbrella Signed Annamarie Trombe; Mustangs" Frank Rowland ...
You've visited this page many times. Last visit: 2/17/16

**THOMAS KINKADE -KINCAID "EVERETT"S COTTAGE 11 ...**
www.worthpoint.com › Worthopedia™ ▾
Sold for: Start Free Trial or Sign In to see what it's worth. ... 1972 Original Oil Painting
Man With Red Umbrella Signed Annamarie Trombe · Handmade New ...

**Annamarie Trombetta - Artist Info**
www.trombettaart.com/info.html ▾
2001, -Richmondtown Historic Museum,S.I, NY "Plein Air Paintings of Staten ...
representation may be, Annamarie Trombetta is enough of an artist to realize that ...
Missing: 1972 oil man red umbrella yqz
You've visited this page 5 times. Last visit: 1/29/16

**Central Park's Plein Air Past | OutdoorPainter**
www.outdoorpainter.com/central-park-s-plein-air-past/ ▾
So it's perfectly natural that plein air painting would go on in those choice ... 'The
Destructive Dance of 'Sandy,'" by Annamarie Trombetta ... "Central Park Clockwork
Mode of Multicolored Apps," by Annamarie Trombetta, oil and mixed media.
Missing: 1972 man red umbrella yqz
You've visited this page many times. Last visit: 1/7/16

**Staten Island native's passionate love affair with Central ...**
www.silive.com/entertainment/.../annamarie_trom... ▾ Staten Island Advance ▾
Jan 12, 2015 - Paintings, prints, drawings and photos by Annamarie Trombetta ...
resident is showing 80 works — etchings, oil paintings, watercolors, pastels, ...
Missing: 1972 red umbrella yqz
You've visited this page 3 times. Last visit: 1/7/16

[PDF] **2011 Newsletter - Artists' Fellowship, Inc.**
www.artistsfellowship.org/AFNewsletter2011.pdf ▾
Jul 1, 2011 - was immediately offered a one-man show, which was a sell-out. For the last
several decades Mr. Stobart's maritime paintings and limited edition prints have ... 12 x
16 inches, oil on canvas. Dear Friends and ... Annamarie Trombetta. Jasmine Sewell
..... The Library of Congress 2011 original print calendar ...
Missing: 1972 red umbrella yqz

*In order to show you the most relevant results, we have omitted some
entries very similar to the 7 already displayed.
If you like, you can repeat the search with the omitted results included.*

Original Oil Paintings
www.ugallery.com/Buy-Original-Art ▾
Original Art. Top Emerging Artists.
Expertly Curated – Free Shipping!

Collectible Original Art
www.zatista.com/ ▾
Say No to Prints and Reproductions.
Over 7000 Completely Original Works

Original Paintings
www.onekingslane.com/Paintings ▾
4.2 ★★★★  advertiser rating
Find Emerging Artists & Chic Prints
Fabulous Sales Today! Join For Free

Affordable Original Art
www.nickyspauldingart.etsy.com/ ▾
Buy Original affordable Art online.
Original paintings for sale here

See your ad here »



Plaintiff's
Deposition
Response

Plaintiff's Evidence  000371

2/17/16, 2:29 PM

1972 original oil painting man with red umbrella signed annamarie trombetta yqz - Google Search

Go gle    1972 original oil painting man with red umbrella signed annamarie trombett    🔍    Annamarie

All    Shopping    Images    Videos    News    More ▾    Search tools

7 results (0.41 seconds)

**Page 1 - Italian American Museum**
italianamericanmuseum.org/exhibitions/Pleinair.htm ▾
Acclaimed artist **Annamarie Trombetta** presents a solo exhibition that ... Ms. Trombetta
has created works in printmaking, watercolor, **oil** and pastel and is known ... was an
exhibition of Italian **paintings** from the collection of Gaetano Marzotto.
Missing: 1972 man red umbrella yqz

**Marilyn Monroe 1988 Vintage Michael Ochs Archive Chanel ...**
www.worthpoint.com › Worthopedia™ ▾
These posters are **original** from 1988 not remakes. ... **1972 Original Oil Painting Man
With Red Umbrella Signed Annamarie** Trombe; Mustangs" Frank Rowland ...
You've visited this page many times. Last visit: 2/17/16    *Date*

**THOMAS KINKADE -KINCAID "EVERETT"S COTTAGE 11 ...**
www.worthpoint.com › Worthopedia™ ▾
Sold for: Start Free Trial or Sign In to see what it's worth. ... **1972 Original Oil Painting
Man With Red Umbrella Signed Annamarie** Trombe - Handmade New ...

**Annamarie Trombetta - Artist Info**
www.trombettaart.com/info.html ▾
2001, -Richmondtown Historic Museum,S.I, NY "Plein Air **Paintings** of Staten ...
representation may be, **Annamarie Trombetta** is enough of an artist to realize that ...
Missing: 1972 oil man red umbrella yqz
You've visited this page 5 times. Last visit: 1/29/16

**Central Park's Plein Air Past | OutdoorPainter**
www.outdoorpainter.com/central-park-s-plein-air-past/ ▾
So it's perfectly natural that plein air **painting** would go on in those choice ... "The
Destructive Dance of 'Sandy,'" by **Annamarie Trombetta** ... "Central Park Clockwork
Mode of Multicolored Apps," by **Annamarie Trombetta**, oil and mixed media.
Missing: 1972 man red umbrella yqz
You've visited this page many times. Last visit: 1/7/16

Original Oil Paintings
www.ugallery.com/Buy-Original-Art ▾
Original Art. Top Emerging Artists.
Expertly Curated -- Free Shipping!

Collectible Original Art
www.zatista.com/ ▾
Say No to Prints and Reproductions.
Over 7000 Completely Original Works

Original Paintings
www.onekingslane.com/Paintings ▾
★ ★ ★ ★ ★    advertiser rating
Find Emerging Artists & Chic Prints
Fabulous Sales Today! Join For Free

Affordable Original Art
www.nickyspauldingart.etsy.com/ ▾
Buy Original affordable Art online.
Original paintings for sale here

See your ad here »

SA1734

*Page 228 of Plaintiff's Deposition*

3 attachments

(1)

Plaintiff's
Deposition
Response
Plaintiff's Evidence 000372

1972 Original Oil Painting ---Worthpoint Fraudulent    Signature.png
577K

(2)

Fraudulent Signature of A.Trombetta Copyrighted work    licensed by
Worthpoint.png
586K

© Copyrighted work licensed by WorthPoint

(3)

Listing under 1972 Original Oil Man w_Red Umbrella_signed    Annamarie Trombetta.jpg
2229K

---

Jason Packer                                          Wed, Mar 2, 2016 at 6:15 PM
To: Will Seippel

I took down all the URLs that were specified earlier. It sounds like she is talking about items that are still cached in Google results, which we have no control over.

Will Seippel wrote:

Have we taken all of these down? I am not sure if they are the same ones as in the last group she sent.

From: Annamarie Trombett
Sent: Monday, February 29, 2016 11:54 AM
To:
Cc: Worthpoint Support <support@worthpoint.com>
Subject: Fw: Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

Dear Mr Seippel and Mr Watkins,

*WorthPoint Evidence*

I am resending this e-mail as I have NOT received a response from either of you regarding my questions and concerns  Another link to Worthpoint.com  entitled Titanic still has the 1972 Original Oil Painting Man

WP000074

# SA1736

Yahoo Mail - Worthpoint- Your Account Cancellation was successful

Plaintiff's
Deposition
Response

## Worthpoint- Your Account Cancellation was successful

Plaintiff's Evidence  000373

From:  WorthPoint (support@worthpoint.com)

To:

Date:  Monday, February 29, 2016, 7:50 PM EST

Dear Annamarie Trombetta,

We are sorry to see you go! WorthPoint has successfully cancelled your monthly membership.

If you have further questions or concerns, please contact WorthPoint's Customer Support at 877-481-5750 or support@worthpoint.com.

We appreciate your business and hope to see you again! Feel free to visit WorthPoint for new products, services and updates! If you decide to come back, you can simply log in to your WorthPoint account using your email address, go to "Account Settings" and click re-subscribe.

Kind Regards,

The WorthPoint Team
www.WorthPoint.com
(877) 481-5750
support@worthpoint.com

1 1

Plaintiff's
Deposition
Response  Plaintiff's Evidence  000374

# Dictionary

Definitions from Oxford Languages · Learn more

Search for a word

## ad·ver·tise·ment

/ˈadvərˌtīzmənt,adˈvərdizmənt/

*noun*

a notice or announcement in a public medium promoting a product, service, or event or publicizing a job vacancy.
"advertisements for alcoholic drinks"

Similar:   notice   announcement   bulletin   commercial   promotion   blurb   ⌄

- **INFORMAL**
a person or thing regarded as a means of recommending something.
"unhappy clients are not a good advertisement for the company"

- **ARCHAIC**
a notice to readers in a book.

Feedback

Plaintiff's
Deposition
Respor --

Plaintiff's Evidence  000375

Yahoo Mail - [Design Services Central] Re: Welcome to Design Services - Tailored Website Design Profile Needed

## [Design Services Central] Re: Welcome to Design Services - Tailored Website Design Profile Needed

From:   Design Services Central (support@designservices.zendesk.com)

To:

Date:   Tuesday, September 1, 2015, 2:34 PM EDT

##- Please type your reply above this line -##

You have a new ticket with Design Services. Reply to this email or click the link below:
http://designservices.zendesk.com/requests/11513

**Anthony D (Design Services Central)**
Sep 1, 12:34 PM

Hello Annamarie,

Thank you for purchasing a Tailored Design! The first step in the build process is to select a layout.

Please visit the following link to select the layout that you want to use for your new website:
http://tailored-webdesign.com/

The next step in the project is to complete an Online Business Profile. The Business Profile will provide your Design Consultant with the critical information needed to build your website. The quality of the finished product is a direct correlation with the quality of the information and assets you provide. Be sure to list the SKU# of the layout you choose in this survey.

Please go to this link to fill out your Business Profile: http://survey2.tailored-webdesign.com/

Once you complete the Business Profile, we will then review your profile within two business days. After we have reviewed your completed profile, we will be in touch to schedule your Site Review appointment.

Site Review appointments are scheduled approximately 12 business days out. During that time your Design Consultant will build your website based on the information and assets you provide. All images and other files are to be entered on the Business Profile, but can also be sent through emails with your Design Consultant.

You will receive a link to the completed website an hour before your Site Review appointment. This will give you some time to look over the site directly before your appointment. On the call, the designer will review over the website with you and see if there are any changes before launching. You are entitled to one round of revisions, so these will be performed in 3-4 business days after

**SA1739**

Plaintiff's
Deposition
Response

Yahoo Mail - [Design Services Central] Re: Welcome to Design Services - Tailored Website Design Profile Needed

they are received. The goal is to have the website launched and project complete within 1 weeks of the Site Review call.

Plaintiff's Evidence  000376

Keep in mind, your project will not begin until we receive a completed business profile, so the sooner you are able to complete it, the better. We look forward to preparing and presenting your new website!

Anthony D.
Design Services
Project Coordinator

Monday –Friday
10:00 am– 4:00 pm

This email is a service from Design Services Central. Delivered by Zendesk.

[message id,212E0G0) of3era1f23b2 5132.fdf54ecn32r1620766 sprut

2/2

Plaintiff's
Deposition
Response

Yahoo Mail - Worthpoint---Websites

Plaintiff's Evidence  000377

## Worthpoint---Websites

From:

To:

Date:   Sunday, August 2, 2015, 8:01 AM EDT

1952 Brooklyn NY Msgr Angelo Cioffi & Diamond-Encrusted Gold Press Photo ner6993 (07/04/2014)

### 1952 Brooklyn NY Msgr Angelo Cioffi & Diamond-Encrusted Gold Press Photo ner6993 (07/04/2014)

1952 Brooklyn NY Msgr Angelo Cioffi & Diamond-Encrusted Gold Press Photo ner6993 (Part #: ner6993) You are bidding on an original 7 x 8 press photo of Brooklyn NY Msgr Angelo Cioffi & Di...from

View on www.worthpoint.com       *WorthPoint*       Preview by Yahoo       *link to Annamarie Trombetta*

Incredible Life Story of Sister Elena Aiello by Francesco Spadafora. 1964. Rare (09/03/2013)

### Incredible Life Story of Sister Elena Aiello by Francesco Spadafora. 1964. Rare (09/03/2013)

I had the privilege of being acquainted with Sister Elena Aiello of Cosenza. I corresponded with her. I know she lived constantly in the presence of God....Besides bearing on her body the stigmata or ...from

71909127

View on www.worthpoint.com                                           Preview by Yahoo

Marilyn Monroe 1988 Vintage Michael Ochs Archive Chanel Perfume 38x52" Poster . (12/01/2012)

### Marilyn Monroe 1988 Vintage Michael Ochs Archive Chanel Perfume 38x52" Poster .

1988 Vintage Michael Ochs Archive Marilyn Monroe Chanel Perfume 38x52" Poster . Prev Stop Play Next This is a Vintage Rare 1988 Michael Ochs Archive Marilyn Monroe Chanel Perfume Produced by ...from

46321626

View on www.worthpoint.com                                           Preview by Yahoo

1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (12/01/2012)

### 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (12/01/2012)

**SA1741**

Yahoo Mail - Worthpoint---Websites

Welcome to EstateAuctionsInc! We are one of the Top Sellers of
Antiques, Collectibles and Quirky items on eBay. We have been selling
since 1998 and ALL of our auctions start at .99 cents. We are p...from
1537357

View on www.worthpoint.com                    Preview by Yahoo

Plaintiff's
Deposition
Response            Plaintiff's Evidence  000378

# SA1742

Plaintiff's
Deposition
Response

Yahoo Mail - Follow up from the CEO

## Follow up from the CEO

Plaintiff's Evidence  000379

From:
To:   **Redacted**

Date:  Thursday, April 14, 2016, 04:57 PM EDT

Letter From The CEO                                    View in browser



Following-up on my previous email, two weeks ago WorthPoint launched a "testing the waters" campaign to gauge our community's interest in investing in WorthPoint.
We are pleased to announce that over the last two weeks, over 600 people have indicated $2.6 million dollars of investment interest in WorthPoint.

We are at an important stage in our company's lifecycle. We are growing and developing our database to make it easier for our users to make smart, informed choices whether buying or selling art, antiques, and vintage collectibles. Your support is essential for our on-going success.

If we proceed we are hoping to use the money raised to accelerate the databases for our Marks, Autographs, Patterns and Symbols (MAPS) database as well as non eBay auction results and to let you the user add content to our site. Our visual recognition Beta will be launching for MAPS later this month and we hope to have it in the entire Worthopedia complete by the end of the summer!

**Learn More**

Remember, our passion as collectors is contagious! Feel free to share with your

friends and pass this along this email.

Plaintiff's Evidence 000380

Thanks,

Will Seippel

**Founder & CEO WorthPoint Corporation**

*WorthPoint Corporation. ("WorthPoint") is "testing the waters" to gauge market demand from potential investors for an Offering under Tier II of Regulation A. No money or other consideration is being solicited, and if sent in response, it will not be accepted. No sales of securities will be made or commitment to purchase accepted until qualification of the offering statement by the Securities and Exchange Commission (the "Commission") and approval of any other required government or regulatory agency. An indication of interest made by a prospective investor is non-binding and involves no obligation or commitment of any kind. No offer to buy securities can be accepted and no part of the purchase price can be received without an offering statement that has been qualified by the Commission.*

Copyright © 2016 WorthPoint, All rights reserved.

Our mailing address is:

WorthPoint

5 Concourse Parkway NE

Suite 2850

Atlanta, Ga 30328

Add us to your address book

Want to change how you receive these emails?

You can update your preferences or unsubscribe from this list

**SA1744**

WorthPoint

Plaintiff's
Deposition
Response

Plaintiff's Evidence  000381

# WorthPoint Newsletter

## Unsubscribe Successful

You will no longer receive email marketing from this list.
**If you have a moment, please let us know why you unsubscribed:**

I no longer want to receive these emails

I never signed up for this mailing list

The emails are inappropriate

The emails are spam and should be reported

Other (fill in reason below)

Submit

« return to our website

Plaintiff's
Deposition
Response    Plaintiff's Evidence  000382

# RE-PRESENTING
# REPRESENTATION VI

ARNOT ART MUSEUM
ELMIRA, NEW YORK

RE-PRESENTING REPRESENTATION VI—THE WEST
ROCKWELL MUSEUM OF WESTERN ART
CORNING, NEW YORK

APRIL 11–AUGUST 31, 2003

SPONSORS

Co▢    ▢ Foundation

▢    g    ▢     ▢    ▢

▢    ▢ son — J            Foundation, Inc.

▢    , G. ▢    ▢

Mr. and Mrs. R▢ ▢ .d ▢    ▢

G ▢ ▢ and ▢ ▢ ▢et      ▢rg

P ▢ Gallery

ARNOT ART MUSEUM  1

good/bad, beautiful/ugly. The artist connects the prose and the passion of the body in a work of art with which we are invited to "Only connect."

Ruven Afanador and Flor Garduño are two photographers who make connections in very different ways. Afanador, in his images of young toreodors, brings together in one image the machismo and androgeny, the beauty and gore, and the strength and vulnerability of his subjects and their profession. Garduño celebrates the natural fecundity of her voluptuous models with that of Nature herself in the presence of enormous leaves and flowers.

Luis Tapia and Janet McKenzie have made connections between religious icons and unexpected manifestations. Tapia presents a young, Hispanic St. Michael. McKenzie presents a dark-skinned Jesus surrounded by Native American and Asian symbols.

After ten years of connecting with artists and their remarkable accomplishments I have been enriched beyond any reasonable expectation. Audiences who have seen our exhibitions go away marveling at the work they see. Artists leave inspired by the opportunity to examine a wide variety of work closely, in one place, at one time.

The works in these exhibitions have given us the opportunity to confront truths about ourselves, others, and the world. Each of us has connected in his own way with the art, the artists, and the universal conscious revealed in us all. We have encountered the "something else." Our isolation from the world, from others, and from parts of ourselves is lessened by our encounters with art. .

As Forster further advises us: "Live in fragments no longer."

John D. O'Hern
*Executive Director and Curator*
*Arnot Art Museum*

Plaintiff's
Deposition
Response        Plaintiff's Evidence 000383

Jan
*Jesu*
oil
Cou

Plaintiff's
Deposition
Response

Plaintiff's Evidence 000384



Annamarie Trombetta
American, b. 1963
*Cardinal Numbers I*, 2001
oil, 12 x 12"
Courtesy the Artist



painted wood, 11-3/4 x 50-1/2 x 12-3/4"
Courtesy Owings-Dewey Fine Art, Santa Fe, NM

RE-PRESENTING
REPRESENTATION VI

# Introduction

*Plaintiff's
Catalog Introduction*

© Confidential Plaintiff 000088

There are painters who transform the sun to a yellow spot, but there are others who with the help of their art and their intelligence, transform a yellow spot into the sun.
Pablo Picasso

Annamarie Trombetta, in an article she wrote for "Art Times," reminds the reader that Picasso, among other twentieth century greats, received classic, figurative, academic training. Classic training fell out of favor later in the century. In the past two decades, however, academic training and the pursuit of the figurative/representational tradition have come back into favor and have flourished. Far from being a restatement of all that has gone before, contemporary realism builds on tradition and incorporates twentieth century developments to confront issues and to encourage insights in a new millennium.

Picasso's "yellow spot" has a place in our experience of art both as abstraction and as representation. Annamarie has chosen to direct her training and talent to transforming pigment into a reality that allows the viewer to see in a new way. Her mounting and presentation of the painted images complement her point of view and stimulate the viewer to respond on yet another level.

Her Central Park paintings offer vignettes that enforce the scene. Cleopatra's Needle appears in four triangular views assembled to echo the pyramidal shape of the top of the ancient column. She views the monument from the four cardinal points, grounding it in eternity, and depicting it in it's visually complex contemporary setting.

The sculpture of the triumphant King Jagiello thrusting crossed swords over his head is represented by three triangular paintings assembled in a trapezoid. The triangles emphasize the shape of the crossed swords. The trapezoidal triptych almost begs for a fourth triangle to complete a triangular composition suggesting god and the Christian Trinity as well as Jagiello's role as the first Christian Grand Duke of Lithuania and King of Poland. King Jagiello presides over Central Park's Turtle Pond which is depicted in a series of five round paintings she calls "The Seasonal Series." We all know superficially that there are four "seasons" but Annamarie reminds us that there are infinite moments of infinite "seasons" as the flora progresses cyclically from bare branches to lush fullness and back again.

"The Croquet Game," subtitled "Active/Passive–Male/Female" is also a tondo, suggesting the croquet ball and the cyclical relationship of the three couples in the painting–each individual and each couple alternating between active and passive.

Annamarie's series of four views of the Voorlezer's House in historic Richmondtown on Staten Island are mounted in a oversized 26x78 inch wood ruler with a cooper edge. The voorlezer was a lay minister and teacher for the Reformed Dutch Church and the building served as church, school and home. The composition and presentation hint at the simplicity and discipline of the architecture and of the activities that occurred within it.

Annamarie Trombetta reveres what she calls "the eternal creative mind and spirit of humankind" and stirs our half-remembered awareness of our commonality. She encourages us to look, to see, and to respond.

JOHN D. O'HERN
*Executive Director and Curator*
Arnot Art Museum

Plaintiff's
Deposition
Response

Plaintiff's Evidence  000386    Plaintiff 000064    4/27/17, 12:40 PM

Print

| | |
|---|---|
| **Subject:** | 🐿 WorthPoint for FREE for LIFE! |
| **From:** | WorthPoint Insider (insider@worthpoint.com) |
| **To:** | trombettaart@yahoo.com; |
| **Date:** | Monday, April 24, 2017 12:02 PM |





about:blank

Page 1 of 10

**SA1750**



RECEIVED
SDNY PRO SE OFFICE

2019 APR 24  PM 4:39

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square , Courtroom
New York, New York 10007

Plaintiff's Evidence  000387

Re:  Annamarie Trombetta v Norb Novicin -Marie Novicin- Estate Auctions Inc.

Dear Judge Abrams:

   I am a Pro se' Litigant  in Case No.18-CV-0093-RA-HBP.  In preparation for the April 25, 2019 meeting with Defendants and Defendant's Attorney Anderson Duff Plaintiff Annamarie Trombetta respectfully submits information  Plaintiff writes to respectfully request that  this case and claim be stayed pending  recognition and resolution  of the Plaintiff's evidence.  The evidence validates and further supports  the  laws, the claims and  the charges here within this lawsuit. The  laws and evidence descriptively  and  visually enunciated  in these  submitted documents.  They are the quintessential examples related to the laws which prove the infringements and violations that the Defendant's have committed.

Secondly,  the Defendants have ignored any responsibility for their actions.  All  attempts taken  by the Plaintiff to offset this lawsuit have been documented. This submission of new information is to further inform  the Defendant's Attorney and the Defendants of their actions, violations and   liabilities.

Third,  Plaintiff Annamarie Trombetta is entering information  into the case that was sent via e-mail and  regular mail. This information was NOT solicited nor request by Plaintiff Annamarie Trombetta .  This information was  not  known to the Plaintiff  upon and at the time of the commencement of  this case in February 2018.   The new information entered  reveals the character of the Defendants and the Defendant's Attorney and will further supports the Plaintiff, Annamarie Trombetta -Artist and Sole Proprietor/ claim and the necessity to facilitate  a law suit against Defendant Norb Novicin, Marie Novicin and Estate Auctions Inc.

The Plaintiff's Settlement offer to end this case is within these documents.  In summary the amount of settlement  can decrease   depending upon the information that the Defendant are willing to exchange— for example—the 12  photos listed in the description  of the fraudulently sold painting and the Plaintiff's settlement letter sent by an attorney two years ago  are two examples how  the Defendants can submit requested information  to lower the  amount of the settlement. In essence the Defendants take part in reducing the settlement by submitting the requested information they should already  have in their possession.

## FIRST  ISSUE WHICH VALIDATES THE SUBMISSION AND THE VIOLATIONS COMMITTED

In Attorney's  Anderson Duff's  "Defendants' Memorandum in Support of Motion to Dismiss" the Plaintiff's claims  counsel wrote  " [ B ]efore proceeding to discovery, a complaint must allege facts suggestive of illegal  conduct.  Even good legal conclusions must be supported by well-pled factual allegations. Iqbal 556 U.S. at 678 "To survive a motion to dismiss, a

Case 1:18-cv-00993-RA-SLC   Document 22   Filed 04/24/19   Page 2 of 38

2 of 13

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   The Defendant's Attorney Anderson Duff  further states in his Memorandum " Viewing Plaintiff's claims through this prism, they {the Claims} should be dismissed with prejudice.  Plaintiff has not and cannot allege facts that nudge Plaintiff's claims from conceivable to plausible".


Plaintiff Annamarie Trombetta  based on the Defendant's  Memorandum settlement offer on April 15, 2019  will AGAIN DEFINE-each Law, Act, and claim  providing Irrefutable PROOF to each claim listed in this lawsuit.

I.    Lanham Act Claim   ---The Definition of the claim below states:

The Trademark Act of 1946 (Lanham Act)  (amended by the Trademark Revision Act of 1988) 15 U.S.C. § 1051 et seq.; 19 C.F.R. § 133.1 et seq.

Trademarks used in interstate commerce are protected under the Trademark Act of 1946, also known as the Lanham Act. Unlike copyrights and patents, trademarks may be protected under state law, federal law, or both. Registration is not necessary for the protection of a trademark. See Two Pesos, v. Taco Cabana, 505 U.S. 763 at 768 (1992). A trademark gains protection through distinctiveness and use. The benefit of federal registration of a mark is that the registration constitutes prima facie evidence of both the validity and ownership of the mark, as well as the right to use the mark in commerce. Registration also gives the owner the right to prevent the importation of counterfeit goods and the right to bring an action under 15 U.S.C. § 116(d) to prevent the use of counterfeit marks. In addition, a registered mark becomes incontestable after five years of continuous post-registration use.Title 15 U.S.C. §1125(a) provides for a cause of action for trademark infringement of unregistered marks. Remedies for infringement of a registered mark are at 15 U.S.C. § 1114 et seq. Trademark infringement is use in commerce of a mark identical or similar to that used by another seller in a way that confuses the public about the actual source of the goods or services in question. The test for liability for infringement is "likelihood of confusion." The law states that an infringer shall be liable in a civil action to any person who believes that he or she is likely to be damaged by the infringer's actions. Thus, in order to have standing to bring an action under § 1125(a), actual damage need not be shown, but rather a likelihood of damages. Most courts have held that the plaintiff need not be a direct competitor of the infringer, but that some level of competition is necessary. Some courts have concluded that competition need not exist at all. See Standing to Bring False Advertising Claim or Unfair Competition Claim Under § 43(a)(1) of Lanham Act, 124 A.L.R. Fed. 189. In addition, a plaintiff seeking injunctive relief under this section must only show "likelihood of confusion." Injury in terms of actual confusion is necessary to obtain monetary relief. 15 U.S.C. § 1114. The test for infringement of registered or unregistered marks is the same.

Plaintiff owns a protectable mark —logo —which is part of the artist's signature branding.

Case 1:18-cv-00993-RA-SLC   Document 22   Filed 04/24/19   Page 3 of 38

3 of 13

Plaintiff Annamarie Trombetta's website has been on the internet since 2003. This exceeds the Lanham Act requirement " a registered mark becomes incontestable after five years of continuous post-registration use. " All of the website pages have a copyright circle with the letter C and the statement " All work on this site are © Annamarie Trombetta".   In addition there is the **DMCA** logo.   Most importantly there is the artist's personal triangular shaped logo for business evidenced in the artist distinctive personally designed trademark designation logo which is on each and every page of the artist's website.

Plaintiff Annamarie Trombetta enters into evidence xerox copies of the Plaintiff's website.

**EXHIBIT A** -Home Page Website with copyright symbol and statement All rights reserved by Annamarie Trombetta .

**EXHIBIT B**— Biography Page --Estate Auction copied verbatim the first half of my biography.

**EXHIBIT C**— The Contact page on the Plaintiff's website with the Plaintiff's e-mail and telephone. Prior to using the Artist's Biography the Defendants could have contacted the Artist to authenticate any works.  The Defendants refuse to accept accountability for violations.

**EXHIBIT D**—Video Page from Artist Annamarie Trombetta's  duly documented an dated in 2004 Solo Exhibit "Central to Staten Island at the Staten Island Museum.

**EXHIBIT E**—Entered into evidence is the **Defendant's photo feature** of a signature in Oil Paint on canvas "A . Trombetta"

**EXHIBIT F**-description of the fraudulent painting Man with Red Umbrella signed Annamarie Trombetta

**The signature in the photo which was placed next to my biography creates a false illusion or confusion to anyone that views this signature to appear to belong to Artist Annamarie Trombetta.**  Last is the xerox of the description of the fraudulent painting Man(or Woman) with Red Umbrella signed Annamarie Trombetta **EXHIBIT F- as in fraudulent.** As the photo reveals the signature is A. Trombetta not Annamarie Trombetta and it was not by the Plaintiff's/Artist hand nor does it resemble the artist's true signature.

The exhibits and Lanham Act Laws 15 U.S. Code § 1125 and § 1125(a)] False designations of origin, false descriptions, and dilution forbidden 15 U.S.C. § 1051 et seq. validate and exceed the plausible evidence as positive proof of violations to the Plaintiff by the Defendants .

II.  The Visual Artist's Right's Act 17 U.S. Code §106A. Rights of certain authors to attribution and integrity .   This is a Federal Law that includes moral rights The Law below states:

(a)Rights of Attribution and Integrity.—Subject to section 107 and independent of the exclusive rights provided in section 106, the author of a work of visual art—
(1) shall have the right—
(A) to claim authorship of that work, and

Case 1:18-cv-00993-RA-SLC   Document 22   Filed 04/24/19   Page 4 of 38

4 of 13

(B) to prevent the use of his or her name as the author of any work of visual art which he or she did not create;

Moral rights include:

1.   disclosure or divulgation, which allows the artist to determine when a work is complete and may be displayed;

2.   paternity or attribution, which allows an artist to protect the identification of his name with his own work, and to disclaim it when applied to another's;

3.   the right of withdrawal, which permits the artist to modify or withdraw a work following publication; and

4.   integrity, which allows the artist to prevent his work from being displayed in an altered, distorted, or mutilated form.

The VARA CLAIM is a clear example of the law and the rights of Artist Annamarie Trombetta to claim damages for the fraudulent and unauthorized use of her name.

Plaintiff Annamarie Trombetta repeatedly conveyed to all parties that I did not and have not created the sold painting in a phone call that Norb Novicin initiated. At no time did the Plaintiff Annamarie Trombetta ever have contact with Estate Auctions nor did the Plaintiff ever do business with the Defendants prior to the internet posting. The Plaintiff does not know or has not seen the fraudulent Original Oil Painting. Despite the statement there are 12 Photos in the description online—no photos of the painting were visually available. A photo of "A. Trombetta painted in oil on canvas, that is not the Plaintiff's signature, was the only visual photo image. Again in 2017 Defendant Norb Novicin phoned Plaintiff Annamarie Trombetta to inform the artist that Estate Auction did not have any information on the painting nor could tell the Plaintiff the name of the purchaser of the fraudulent painting. During the conversation the Plaintiff informed the defendant that she did not create the painting and that by selling this painting using the name and biography Annamarie Trombetta was "fraud". In conclusion, Norb Novicin told the Plaintiff to "Go for It" and to "Hire an Attorney".

   The unauthorized use of the Plaintiff's name to sell a painting that the Plaintiff did not create is a quintessential example in the purest form of a violation of the Visual Artists Right Act. Further the painting 1972 Original Oil Painting "Man (or Woman) with Red Umbrella in 1972 was not only misappropriated —it was listed / classified and associated with the Plaintiff's name on the internet via Google-Bing etc. This painting was also described as "Shabby Chic" with two large tears. My name and reputation was associated with a damaged painting that was sold for a small fee of $181.50 which publicly undervalues the worth of my art my career and reputation .

Lastly on February 19, 2019 at the conference with Judge Ronnie Abrams the mentioning of Anderson Duff's exemplary case Carter vs. Hemsley- Spear, Inc came up. In the Plaintiff's case this example is not applicable nor a valid reference for dismissal of the Plaintiff's VARA claim for the following reasons:

In the case of Carter vs. Hemsley- Spear, Inc  Citation: 71 F.3d 77 in (1995) the sculptors were "HIRED" to create the artwork The Summary states :

- The right of "integrity" which allows the creator of the work to prevent any deforming or mutilating changes to a work, even after he or she has transferred ownership of the work.
- The right of "attribution" which generally consists of the artist's right to be recognized by name as the author of a work and to prevent creation of the work from being attributed to someone else. This right includes the right to prevent use of the author's name on works created by others, including distorted editions of the author's original work.

The court concluded the artists' sculpture here was **a work made for hire, it was not protected by VARA.** Factors considered in determining whether a work was produced for hire include the artist's right to control the manner and means by which the product was produced, the location of the work, the duration of the relationship between the parties, the method of payment and provision of employee benefits, and the tax treatment of the artist.

**Plaintiff Annamarie Trombetta did NOT create the painting  1972 Original Oil Painting "Man (or Woman) with Red Umbrella  in 1972.** The photograph of the signature A. Trombetta was not done by the Plaintiff .  Plaintiff's  biography was falsely used and secondly the false listing came up on the internet under the Plaintiff's name—-and under Artist Annamarie Trombetta.  This unlawful action entitles the Plaintiff to Actual and Statutory Damages.

Plaintiff enters into exhibit as VARA Damages  the three separate listings on the Internet

**EXHIBIT G**  Google listing of Fraudulent painting under  the name Annamarie Trombetta. This listing is "1972 Original Oil Painting Man with Red Umbrella Signed Annamarie Trombetta YQZ

**EXHIBIT H** Google listing of Fraudulent painting under  Artist Annamarie Trombetta This listing is "1972 Original Oil Painting Man with Red Umbrella Signed Annamarie Trombetta New York Listed Artist **Shabby** Chic Condition.    This word and the description profoundly damages my artistic reputation.  The Plaintiff asks the court to consider the extent of such a listing and description under the Google Listing for Artist Annamarie Trombetta.  This is my career, my business and my livelihood that has been adversely effected.

**The definition of Shabby :** impaired by wear, use, etc.; worn: shabby clothes. showing conspicuous signs of wear or neglect:    wearing worn clothes or having a slovenly or unkempt appearance: a shabby person.  run-down, seedy, or dilapidated: inferior; not up to par in quality, performance, etc.:

**EXHIBIT I**  Google listing of Fraudulent  painting in which bonafide  listings and links of artist Annamarie Trombetta are associated with this painting that the artist had no involvement.

III. Copyright Infringement Act

Copyright infringement is the act of violating any of a copyright owner's <u>exclusive rights</u> granted by the federal Copyright Act. There are three elements that must be in place in order for the infringement to occur.

The Plaintiff for the convenience of the court listed the Penalties and conditions:

Case 1:18-cv-00993-RA-SLC    Document 22    Filed 04/24/19    Page 6 of 38

6 of 13

1.  The copyright holder must have a valid copyright.
2.  The person who is allegedly infringing must have access to the copyrighted work. (In this case the Defendant had access to the Plaintiff's biography on the artist's website which is on the Internet).
3.  The duplication of the copyrighted work must be outside the exceptions.

The legal penalties for copyright infringement are:

1.  Infringer pays the actual dollar amount of damages and profits.
2.  The law provides a range from $200 to $150,000 for each work infringed.
3.  Infringer pays for all attorneys fees and court costs.
4.  The Court can issue an injunction to stop the infringing acts.
5.  **The Court can impound the illegal works.**
6.  **The infringer can go to jail.**

Plaintiff submits a copy of her Certificate of Registration with the Untied States Copyright Office Records. The Year of Completion is 2003. The Biographical Copyright Infringement took place in the range of years from 2012 to 2015 . Subsequent reposting after the Plaintiff contacted worthpoint.com occurred in the middle of 2016 and again into May 2017. The Defendants have not set forth any information regarding the data —photos—origin or provenance of the fraudulent painting that is misappropriated to the Plaintiff. The use of the Plaintiff's unauthorized -detailed and personalized artist's biography without the artist's knowledge or consent is the basis for the copyright infringement claim.

**EXHIBIT J Registration Certificate of Annamarie Trombetta's Website # TX-8-655-807.**

Plaintiff submits into evidence the biography of Annamarie Trombetta that was fraudulently used by Estate Auctions in the description for "1972 Original Oil Painting Man with Red Umbrella signed Annamarie Trombetta"

**EXHIBIT K Defendant's unauthorized use of Plaintiff's biography.**

The unauthorized use of the Plaintiff's Biography in association with a painting that the artist Annamarie Trombetta did not create constitutes copyright infringement. In the description of "1972 Original Oil Painting Man with Red Umbrella it is stated that there are 12 photos.

The Plaintiff does not know the look or image of the fraudulent painting . The Defendant's Attorney Anderson Duff referenced the infringed copyright case of "Kelly v. L.L. Cool J. 145 F.R.D. 32, 26 (S.D.N.Y. 1992). This fails to be an adequate example at this time as the Defendant has not set forth any imagery despite the fact the Plaintiff requested it and that the description lists 12 photos. The painting is dated 1972. The artist's bio states her formal training began in high school The visuals are absent. The biography of artist Annamarie Trombetta is verbatim to the Plaintiff's biography on the artist's website. The professional artist Annamarie Trombetta allegations "*made on information and belief*" met the plausibility standard for the Copyright Infringement claim because her general allegations put the Norb and Marie

Case 1:18-cv-00993-RA-SLC    Document 22    Filed 04/24/19    Page 7 of 38

7 of 13

Novicin and the company Estate Auctions on notice of how it infringed the copyrights, which is enough to survive a 12(b)(6) motion.

### IV. New York Consolidated Laws, Arts and Cultural Affairs Law - ACA § 14.03
This is a New York State Law.

1. Except as limited by subdivision three of this section, on and after January first, nineteen hundred eighty-five, no person other than the artist or a person acting with the artist's consent shall knowingly display in a place accessible to the public or publish a work of fine art or limited edition multiple of not more than three hundred copies by that artist or a reproduction thereof in an altered, defaced, mutilated or modified form if the work is displayed, published or reproduced as being the work of the artist, or under circumstances under which it would reasonably be regarded as being the work of the artist, and damage to the artist's reputation is reasonably likely to result therefrom, except that this section shall not apply to sequential imagery such as that in motion pictures.

2. (a) Except as limited by subdivision three of this section, the artist shall retain at all times the right to claim authorship, or, for just and valid reason, to disclaim authorship of such work. The right to claim authorship shall include the right of the artist to have his or her name appear on or in connection with such work as the artist. The right to disclaim authorship shall include the right of the artist to prevent his or her name from appearing on or in connection with such work as the artist. Just and valid reason for disclaiming authorship shall include that the work has been altered, defaced, mutilated or modified other than by the artist, without the artist's consent, and damage to the artist's reputation is reasonably likely to result or has resulted therefrom.

(b) The rights created by this subdivision shall exist in addition to any other rights and duties which may now or in the future be applicable.

Plaintiff Annamarie Trombetta has set forth a claim under New York Consolidated Laws Arts and Cultural Affairs Laws § 14.03 for the following reasons:

1) This Law is applicable to the artists that reside in the state of New York. VARA is Federal Law and deals with the moral rights of the artists.

2) Law § 14.03 number 1— specifically deals with the right of an artist or any designated artist agent's CONSENT to display in public or published a work of fine art etc as being the work of the artist. The Plaintiff did not consent or know about the public display and use of her name, identity and biography on the internet. This caused "damage" to the artist reputation due to the fact that the artwork described was damaged. This public forum coupled with the fact that the work was deemed "Shabby Chic" on the internet and was sold for below the artist's net worth — lowering the net worth and retail value of the artist in a public platform adds to the loss and damages and substantiates the right to  A) Personal Jurisdiciton in the State of New York    B) New York State's Right to Claim Ownership   C) Protects's the Artist that resides in New York State with the right of the

artist to have his or her name appear IN PUBLIC on or in connection with such work as the artist.

The rights ACA § 14.03 pertain to New York State Artists and pertain to the **"Right to Publicly display artwork by consent.** None of these rights were respected by the Defendant. All of this rights were violated. Plaintiff petitions the court to include the claims and violations under New York Consolidated Laws, Arts and Cultural Affairs Law.

### V. New York Right of Publicity Law Claim § 50 § 51

Plaintiff can sue for damages for Emotional Distress under the this law. Plaintiff is within the Statutes of Limitation and enters into evidence equalling three forms of Proof.

In January 2017 the Plaintiff contacted Estate Auctions Inc to inform the sellers that I did not create the painting sold and that EA Inc used my biography without my consent. On January 4, 2017 I contacted via e-mail Will Seipple of Worthpoint .com for the second time via e-mail. The re-posting the false sale of 1972 Original Oil Painting Man with Red Umbrella Signed Annamarie Trombetta YQZ and Estate Auctions Inc was reposted twice after the initial take down. The posting was on the internet until spring 2017. This Lawsuit was filed on February 5, 2018. Aside from being within the statutes of limitations Plaintiff also wishes to invoke the Discovery Rule: The discovery rule - the statute of limitations for a cause of action does not begin to run until the time that the injured party discovers or reasonably should have discovered the injury. The False posting was still on the internet after Feb. 5, 2017.

1) **EXHIBIT L** Phone call made by Defendant Norb Novicin to Plaintiff on Jan.10, 2017.

2) **EXHIBIT M** E-mail to Will Sieppel on January 4, 2017 Solicitation to invest in the company.

3) **EXHIBIT N** Third Reposting of Fraudulent painting in 2017 which led to this lawsuit.

§ 50 A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, **is guilty of a misdemeanor.**

§ 51 **To violate § 51, a use of a person's identity must be:**

- Within New York state;
- For advertising or trade purposes; and
- Without written consent.

The focus on advertising and trade means that a use designed to solicit sales of products or services is forbidden. But this category of advertising uses is somewhat narrow; § 51 contains a long list of exceptions to the right of publicity, which include protections for:

- professional photographers against suits by their subjects;
- the use of an author's name, in connection with the work of that author;
- owners of copyrights in sound recordings; and

Case 1:18-cv-00993-RA-SLC   Document 22   Filed 04/24/19   Page 9 of 38

9 of 13

- using a person's identity in connection with products, if the person manufactured or sold those products under their identity.

**Damages** —Section 51 provides for both injunctive relief and compensatory damages. A plaintiff can seek an injunction against continued use of her identity, and can recover monetary damages to compensate for the harm caused by past uses. The damage award primarily compensates for emotional distress. See Garis v. Uncut-RawTV, No. CV 06–5031, 2011 WL 4404035, at *3-4 (E.D.N.Y, July 5, 2011).

Section 51 also provides for punitive or exemplary damages, if certain conditions are met. A plaintiff can recover exemplary damages if the defendant knew that the plaintiff had not consented to the use of her identity. Id. at 4-5. Courts may award exemplary damages if necessary to deter future violations of Section 51.

## PLAINTIFF SUBMITS INTO EVIDENCE INFORMATION REFLECTING THE CHARACTER OF THE DEFENDANTS AND THE DEFENDANT'S ATTORNEY ANDERSON DUFF.

The Plaintiff once again must inform the court that Plaintiff has NOT requested or solicited the following information.  This information/evidence reflects the character and conduct of the Defendants Norb and Marie Novicin and Estate Auctions Inc.

**EXHIBIT O**  Mail From Delaware Bankruptcy Court Case # 19-10056-BLS—Filing for Ch 7 bankruptcy by Norbert William Novicin Jr. and Marie Ellen Novocin on January 9, 2019

**EXHIBIT P**  E-mail from Henry Weller who phoned the Plaintiff on August 11, 2018  at 6 a.m. Submitted was the e-mail documents of Anderson Duff's attempted Burglary  charge.

**EXHIBIT Q**  Delaware Business Times May 24, 2018 Article  stating "The Seaford-based company has eight employees and generates up $1 million in sales per year".   Exhibit O is from January 2019 filing for bankruptcy. This is quite a strong contradiction in a period of nine months.

**EXHIBIT R**  Posting by Wendy Maritnez  dated December 6, 2016  on Estate Auctions Inc Facebook page —Counterfeit Item listed as French porcelain by EA INC. which is from China. This is another example outside of the Plaintiff's claim that reveals a false posting.

In addition I will also state that the actions by the Novicins constitutes Identity Theft. When this began Plaintiff was advised by the NYPD to close out all credit cards etc. which caused the Plaintiff a great deal of work and inconvenience. In essence this was a form of Identity theft. This is a criminal action that the Plaintiff has the right to report . Please read definition  below:

I·den·ti·ty theft
noun: identity theft; plural noun: identity thefts
  1.   the fraudulent acquisition and use of a person's private identifying information, usually for financial gain.
  2.   **Identity theft** and **identity fraud** are terms used to refer to all **types of crime** in which someone wrongfully obtains and uses another person's personal data in some way that involves **fraud** or **deception**, typically for economic gain.

Case 1:18-cv-00993-RA-SLC   Document 22   Filed 04/24/19   Page 10 of 38

10 of 13

Laws 1. 18 U.S. Code § 1028. Fraud and related activity in connection with identification documents, authentication features, and information (a) Whoever, in a circumstance described in subsection (c) of this section 1) knowingly and without lawful authority produces an identification document, or a false identification document; (2)knowingly transfers an identification document, authentication feature, or a false identification document knowing that such document or feature was stolen or produced without lawful authority;2.  Under the Identity Theft and Assumption Deterence Act, it is a federal crime when a person "knowingly transfers or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law."

Plaintiff has endured for about four years the ordeal of fraudulent information removed and reposted on the internet. Every civilized and reasonable attempt to free the Plaintiff of this fraudulent posting —painting and purchase has caused a great deal of loss—frustration and insult to the Plaintiff. The signature of the artist on their painting increases the value of the work. Without the signature there is no authenticity to the artwork. To have my reputation associated with another unknown signature has caused my branding, my identity and my reputation to be severely compromised. The Defendants unacknowledged these facts which may indicate that they are susceptible to do it again; hence one of the reasons for this lawsuit.

Lastly this lawsuit and this submission holds valuable information to all artists. photographers, writers and the like that are sole proprietors vulnerable to misappropriation of their work. I sincerely hope this information can assist other should they find themselves in an unwanted litigation suit.

The Plaintiff  in the hope of a resolution  offers the Settlement terms before the Defendants and The Honorable Judge Ronnie Abrams for review as a means to end this legal matter.

### Settlement  Offer from Plaintiff  Annamarie Trombetta

The Plaintiff  had a conditional offer  A)  The Plaintiff Requests the amount of $70,000 to settle this case. If the Defendants can submit all the information —-documents —-photos and statements that were duly documented prior to this law suit and settlement —

-The Plaintiff agrees to deduct  the amount by each article of information that is supplied by the Defendant's Norb Novicin  and Marie Novicin—-Estate Auctions Inc

The Requested Articles —-Documented Statements are as follows

1.   Submission of the 12 photographs  duly written on the internet of the Actual Original  Oil Painting  Entitled Man (or Woman ) with the Red Umbrella.

2. The Name —Address —and Contact Phone Number of the Actual Owner of the painting. Notfication  Letter to the purchaser from Estate Auctions informing them that Artist Annamarie Trombetta is not the creator of this painting.

3. A photograph of the actual signature in Red described on the back of the painting.

4. Photographs of the tears or torn canvas in the description of the painting.

5.   The Name and Address  and a statement from the of the Lawyer that the Novicins consulted with regarding the Settlement Letter  sent by the Law Firm of Cahill Partners on behalf of the Plaintiff Annamarie Trombetta

6. The Letter Settlement Letter sent by Megan Noh of Cahill Partners Inc.

7.  A copy of the response letter by Marie Novicin to the Better Business Bureau

8. A written confirmation that all internal records and any publicly accessible data  including website metadata in regard to the sale of this painting have been corrected and removed.

9. If possible  a copy of the Defendant's 2012  Income taxes that reported the sale of the painting.

10.  An explanation and or  statement as to WHY the painting was sold in 2012  and is devoid of any proof  still on the internet in 2015.

For each piece of Proof that is entered by the Defendants and or their attorneys the Plaintiff will lower the amount of the  settlement.

I enter into the court documents for Case No.18-CV-0093-RA-HBP  Trombetta Vs. Norb

Novicin —Marie Novicin—Estate Auctions the information pertinent to  the validity, violations

and infringements set upon the Plaintiff.

Plaintiff Annamarie Trombetta wishes to thank the court for their consideration, time and effort

pertaining to this matter.

Respectfully submitted,

Annamarie Trombetta

Plaintiff , Pro se` Litigant

April  23, 2019

Anderson J. Duff

244  Fifth Avenue Stue 2230

New York, New York 11101

**SA1761**

Case 1:18-cv-00993-RA-SLC    Document 22    Filed 04/24/19    Page 12 of 38

12 of 13

# EXHIBITS

**EXHIBIT A** -Home Page Website with copyright symbol and statement All rights reserved by Annamarie Trombetta .

**EXHIBIT B**— Biography Page —Estate Auction copied verbatim the first half of my biography.

**EXHIBIT C**— The Contact page on the Plaintiff's website with the Plaintiff's e-mail and telephone. Prior to using the Artist's Biography the Defendants could have contacted the Artist to authenticate any works. The Defendants refuse to accept accountability for violations.

**EXHIBIT D**—Video Page from Artist Annamarie Trombetta's duly documented an dated in 2004 Solo Exhibit "Central to Staten Island at the Staten Island Museum.

**EXHIBIT E**—Entered into evidence is the **Defendant's photo feature** of a signature in Oil Paint on canvas "A . Trombetta"

**EXHIBIT F**-description of the fraudulent painting Man with Red Umbrella signed Annamarie Trombetta

**EXHIBIT G** Google listing of Fraudulent painting under the name Annamarie Trombetta. This listing is "1972 Original Oil Painting Man with Red Umbrella Signed Annamarie Trombetta YQZ

**EXHIBIT H** Google listing of Fraudulent painting under Artist Annamarie Trombetta This listing is "1972 Original Oil Painting Man with Red Umbrella Signed Annamarie Trombetta New York Listed Artist **Shabby Chic** Condition.

**EXHIBIT I** Google listing of Fraudulent painting in which bonafide listings and links of artist Annamarie Trombetta are associated with this painting that the artist had no involvement.

**EXHIBIT J** Registration Certificate of Annamarie Trombetta's Website # TX-8-655-807.

**EXHIBIT K** Defendant's unauthorized use of **Plaintiff's biography.**The unauthorized use of the Plaintiff's Biography in association with a painting that the artist Annamarie Trombetta did not create constitutes copyright infringement.

**EXHIBIT L** Phone call made by Defendant Norb Novicin to Plaintiff on Jan.10, 2017.

**EXHIBIT M** E-mail to Will Sieppel on January 4, 2017 . Solicitation to invest in the company.

**EXHIBIT N** Third Reposting of Fraudulent painting in 2017 which led to this lawsuit.

**SA1762**

Case 1:18-cv-00993-RA-SLC   Document 22   Filed 04/24/19   Page 13 of 38

13 of 13

**EXHIBIT O**  Mail From Delaware Bankruptcy Court Case # 19-10056-BLS—Filing for Ch 7 bankruptcy by Norbert William Novicin Jr. and Marie Ellen Novocin on January 9, 2019

**EXHIBIT P**  E-mail from Henry Weller who phoned the Plaintiff on August 11, 2018 at 6 a.m. Submitted was the content of the e-mail with attachments of Attorney Anderson Duff's

**EXHIBIT Q**  Delaware Business Times May 24, 2018 Article  stating "The Seaford-based company has eight employees and generates up $1 million in sales per year".   Exhibit O is from January 2019 filing for bankruptcy. This is quite a strong contradiction in a period of nine months.

**EXHIBIT R**  Posting by Wendy Maritnez  dated December 6, 2016  on Estate Auctions Inc Facebook page —Counterfeit Item listed as French porcelain by EA INC. which is from China.

4/24/2019      Case 1:18-cv-00993-RA-SLC    Document 22    Filed 04/24/19    Page 14 of 38

# Annamarie Trombetta



 HOME     PORTFOLIO     VIDEO    ARTIST INFO     BIOGRAPHY     CREDENTIALS

 CONTACT

**Welcome to My Website**

Exhibit A

**The Media that I work in are:**





Etching



Oil Painting

Pastels    TURN

# Annamarie Trombetta



| HOME | PORTFOLIO | VIDEO | ARTIST INFO | BIOGRAPHY | CREDENTIALS |
|---|---|---|---|---|---|

CONTACT

## Biography

Exhibit B



The nature of an artist's life, creativity and growth may be synonymously expressed in the image of an archetypal tree. Beginning with the earthly descendent roots the artist like the tree branches out into its surrounding environmental and celestial world. Both ascend and descend, widening their girth of consciousness while producing visual imagery, weathering each season of change. Thus, I believe it is the nature of the artist and of nature itself to regenerate and manifest. All of the imagery in this catalog (tba) was either created en plein air or from the subject directly.

My journey to becoming an artist began many years ago. The consanguineous roots of my Italian family tree provided me with an innate constitution for my artistic profession. When I was a tiny seed of contemplative thought, my artistic nature began to sprout interest while gazing up at the ceiling paintings in a neighborhood church named Regina Pacis, meaning Queen of Peace. The church located in Brooklyn, NY features ceiling paintings, sculptures, marble interiors, and incorporates architectural elements for the facade and the belfry that are of Italianate design. Before the age of three I was able to surmise that the church in the ceiling painting was indeed the church I was in. The visual stimulation was a form of education. It fostered my sense of perception which became my strongest mode for acquiring knowledge.



As the years unfurled, my family moved to Staten Island. At this time it was a scenic field of luminosity, lush vegetation and a harbor view complete with sail boats and small yachts. A few years after we moved my tree of life was in jeopardy of loosing a limb. What appeared to be a swollen leg was indeed a cancerous tumor. It was an almost fatal or perhaps even a fated occurrence in my life. The struggle to survive the experience was lightened by my imagination and by my artistic ability to create. I seriously thought I would go into medicine but the posters and paintings in the hospital and doctor's office held my attention more intensely.

I began my formal training at The Brooklyn Museum School of Art while I was in high school. The exposure to various forms of art inspired me to expand my horizons and in the early Eighties I traveled on a summer tour to Europe. The tour comprised of six countries; Germany, Austria, France, Italy, Switzerland and England. Viewing so many different cities and cultures in a concentrated period of time helped me to see the similarities as well as the differences of each quite clearly.



Upon my return I enrolled in an art history course to examine the content of art in relation to its chronological, political and historical relevance while applying to art colleges. I was accepted to Parsons School of Design located in lower Manhattan. The pulsating pace of this compressed cosmopolitan city was reflected in the school's curriculum. Although I did enjoy the challenges and experiences which expanded my

elaborates on his immortal words. To learn about his family, his life and his vision motivated me to begin a new chapter in creating my own work.

To culminate my journey, when I returned home I gathered the metaphorical leaves and branches that had fallen from my artistic tree, be it ancestral or archetypal and concentrated solely on 'The Holy Tree' described in Yeats's poem "The Two Trees." This image, inspired by the milieu of a mentor miles away is a tribute to his gifts and determined ways which regenerated and awakened the visionary in me. This upcoming catalogue highlights the pictorial progression from that trip and the time that followed.

I wish to acknowledge certain individuals who have enhanced my artistic sensibilities as a person, as well as an artist. These individuals include Everett Raymond Kinstler, Raymond Steiner, Harvey Dinnerstein, Burton Silverman, the artist's in The Painting Group particularly Aaron Shikler, David Levine, Danny Schwartz, Irene Hecht. I thank them for their help and guidance in my life.

All work on this site are ©Annamarie Trombetta. All rights reserved.



# Annamarie Trombetta



**HOME**     **PORTFOLIO**     **ARTIST INFO**     **BIOGRAPHY**     **CREDENTIALS**     **CONTACT**

Exhibit C

**Contact**

I can be reached by phone at **(212) 427-5990** or you can e-mail me either with the form below or at annamarie@trombettaart.com. If you are interested, you can also join my mailing list.

My E-mail address is

Type your message here.



Security Code:
Can't read the image? click here to refresh

Send



## Join my mailing List

Name:
Address 1:
Address 2:
City                    State:    ZIP:

Join



Exhibit D

Case 1:18-cv-00993-RA-SLC   Document 22   Filed 04/24/19   Page 19 of 38

Exhibit E



© Copyrighted work licensed by WorthPoint

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 120 of 293

Case 1:18-cv-00993-LTS-SLC    Document 425-15    Filed 04/17/23    Page 69 of 99

Case 1:18-cv-00993-RA-SLC    Document 22    Filed 04/24/19    Page 20 of 88

SA1769



Case 1:18-cv-00993-RA-SLC    Document 22    Filed 04/24/19    Page 21 of 38

marie trombetta - Google Search

artofannamarie@gmail.com

gle+ Search   Images   Maps   Play   YouTube   News   Gmail   More ▾

Google    annamarie trombetta

All    Images    Videos    News    Shopping    More ▾    Search tools

Page 2 of about 33,400 results (0.47 seconds)

**1972 Original Oil Painting Man With Red Umbrella Signed ...**
www.worthpoint.com › Worthopedia™ ▾
1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz.
Sold for: Start Free Trial or Sign In to see what it's worth. Item Category: ...
You've visited this page 3 times. Last visit 12/16/15

**Annamarie Trombetta | Whitepages**
www.whitepages.com/name/Annamarie-Trombetta ▾ Whitepages
Find Annamarie Trombetta's phone number, address and more on Whitepages, the
most trusted online directory with contact information for over 90% of US ...

**artist annamarie trombetta's imagery offers visionary ...**
italianamericanmuseum.org/news/news_plein.html ▾
Artist Annamarie Trombetta's 'Central Park Imagery," a collection of en plein air works
in oils, pastels, watercolors, etchings and drawings will be on display at ...
You've visited this page 2 times. Last visit 12/11/15

**Annamarie Trombetta on Paddle8**
https://paddle8.com/artists/annamarie-trombetta/ ▾
Annamarie Trombetta Water Tower $300 Part of New York Academy of Art. You are
now following Annamarie Trombetta and will get email alerts when we add ...

**Annamarie Trombetta - Pollock Krasner Image Collection**
www.pkf-imagecollection.org/artist/Annamarie_Trombetta/biography/ ▾
Annamarie Trombetta. Contact Works. CONTACT. Annamarie Trombetta Studio: 175
East 96th Street (14P) New York, NY 10128. Phone/ Fax: 212-427-5990.
You've visited this page 2 times. Last visit: 12/8/15

**annamarie trombetta - OneLook Dictionary Search**
www.onelook.com/?lang...annamarie+trombetta ▾ OneLook Dictionaries
We found one dictionary that includes the word annamarie trombetta: Art dictionaries
Art (1 matching dictionary). Annamarie Trombetta: Artist Search [ home, info] ...

**salem krieger on Twitter: "Painting Central, a short video ...**
https://twitter.com/salemk/status/269681283083403264 ▾
... @salemk 16 Nov 2012. Painting Central, a short video about Annamarie Trombetta a
painter working in Central Park, NYC.. http://vimeo.com/52924850 ...
You've visited this page 2 times. Last visit 12/5/15

**Annamarie Trombetta attends the Sing for Hope pop up ...**
www.gettyimages.com/.../annamarie-trombetta.../11550981... ▾ Getty Images
Annamarie Trombetta attends the Sing for Hope pop up pianos launch at the Sing For
Hope Piano Warehouse on June 7, 2011 in New York City. Get premium ...

**annamarie trombetta Pictures & Images - Photobucket**
photobucket.com/images/annamarie%20trombetta ▾
Browse Annamarie Trombetta pictures, photos, images, GIFs, and videos on
Photobucket.

**Flickr: Annamarie Trombetta**
https://www.flickr.com/people/annamarietrombettaart/ ▾
Annamarie Trombetta hasn't listed any contacts yet. Testimonials (0). Annamarie
Trombetta doesn't have any testimonials yet. Name: Annamarie Trombetta.

Searches related to annamarie trombetta
artist annamarie trombetta    anna marie trombetta
annamarie trombetta facebook    judge annamarie trombetta

*First Exhibit G* (handwritten annotation)

Page 1 of 2

# SA1771

Case 1:18-cv-00993-RA-SLC   Document 22   Filed 04/24/19   Page 22 of 38   1/5/16, 1:34 PM

ınnamarie trombetta - Google Search

o gle   artist annamarie trombetta

Annamarie



All    Images    Videos    News    Shopping    More ▾    Search tools

Page 2 of about 36,300 results (0.33 seconds)

**1972 Original Oil Painting Man With Red Umbrella Signed ...**
www.worthpoint.com › Worthopedia™ ▾
UP IN THIS AUCTION <<<<< 1972 Original Oil Painting Man With Red Umbrella Signed
Annamarie Trombetta New York Listed Artist - Shabby Chic Condition.
You've visited this page many times. Last visit: 1/5/16

**Central Park's Plein Air Past | OutdoorPainter**
www.outdoorpainter.com/central-park-s-plein-air-past/ ▾
"The Destructive Dance of 'Sandy.'" by Annamarie Trombetta ... Finding out about all
this history, and the connections generated by artists, gave me a mission.".
You've visited this page many times. Last visit: 12/13/15

**Annamarie M Trombetta - Intelius**
www.intelius.com/people/Annamarie-Trombetta/0csdtac91wf ▾
Annamarie M Trombetta's Pic Annamarie M Trombetta. Annamarie M Trombetta
Sagittarius Zodiac SignSagittarius. Annamarie M Trombetta Instructor at Art Lab.

**Annamarie Trombetta on Paddle8**
https://paddle8.com/artists/annamarie-trombetta/ ▾
Become a Paddle8 collector. Sign up to bid on our auctions. follow your favorite artists.
and receive complimentary auction estimates. Start Collecting. Already a ...

**Annamarie Trombetta - Address, Phone Number, Public ...**
radaris.com/p/Annamarie/Trombetta/
trombettaart.com The Process of Printmaking reveals some of the steps taken in order to
create an intaglio etching. The artist Annamarie Trombetta has made a ...

**Artist Annamarie Trombetta working on her piano, which ...**
https://www.pinterest.com/pin/177751516514603960/   Pinterest
Artist Annamarie Trombetta working on her piano, which commemorates the 10-year
anniversary of 9/11. | See more about Piano, Anniversaries and Artists.

**Video - Salem Krieger**
www.newyork-portrait-photography.com/gallery.html?gallery=Video
Painting Central - artist Annamarie Trombetta. Painter Donald Vaccino. Study #1 Daily
Chores: Bissel Gardens - Organic Community Garden - Bronx, NY ...

**CBS New York » Annamarie Trombetta**
newyork.cbslocal.com/tag/annamarie-trombetta/feed/   WCBS TV
Jun 7, 2011 - "To me, it sums up what music is about, what art is about, which is pulling
... Annamarie Trombetta works on her design for a public piano - New ...

**NOIAW Wishes Everyone Happy Holidays -- December ...**
www.noiaw.org/.../noiaw-wishes-everyone-happy-holidays-december-ne... ▾
Jan 9 2015  NOIAW member and artist, Annamarie Trombetta, will be featured in an
upcoming exhibition at the Union League Club in New York City from ...

**Annamarie Trombetta - artist - Marquis Who's Who Biography**
bios.marquiswhoswho.com/annamarie_trombetta/artist/3976399 ▾
New York, NY - artist
Marquis Who's Who Biography for Annamarie Trombetta, artist.

*(handwritten: First Exhibit H)*

Case 1:18-cv-00993-RA-SLC   Document 22   Filed 04/24/19   Page 23 of 38        1/20/16, 3:50 PM

Original Oil Painting Man with Red umbrella signed Annamarie Trombetta – Google Search

Google    1972 Original  Oil Painting Man with Red umbrella signed Annamarie Trombetta    🔍        ⋮⋮⋮   Sign In



⚙

All     Images     Shopping     News     Videos     More ˅     Search tools

8 results (0.59 seconds)

**1972 Original Oil Painting Man With Red Umbrella Signed ...**
www.worthpoint.com › Worthopedia™ ▾
1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta
yqz. Sold for: Start Free Trial or Sign In to see what it's worth. Item Category: ...

**THOMAS KINKADE -KINCAID - WorthPoint**
www.worthpoint.com › Worthopedia™ ▾
Sold for: Start Free Trial or Sign In to see what it's worth. ... 1972 Original Oil Painting
Man With Red Umbrella Signed Annamarie Trombe - Handmade New ...

**Marilyn Monroe 1988 Vintage Michael Ochs Archive Chanel ...**
www.worthpoint.com › Worthopedia™ ▾
Sold for: Start Free Trial or Sign In to see what it's worth. ... 1972 Original Oil Painting
Man With Red Umbrella Signed Annamarie Trombe · Mustangs" Frank ...

**Annamarie Trombetta - Artist Info**
www.trombettaart.com/info.html ▾
2001, -Richmondtown Historic Museum,S.I, NY "Plein Air Paintings of Staten ...
representation may be, Annamarie Trombetta is enough of an artist to realize that  ...
Missing: 1972 oil man red umbrella



**Annamarie Trombetta, Artist Interviewed by June Middleton ...**
https://www.youtube.com/watch?v=ufEQ3D3LWms
Apr 29 2015  Uploaded by JuneMindingBusiness
Annamarie Trombetta, an artist who's art has been exhibited
around the world, has created works in oil ...
► 26:02   Missing: 1972 man red umbrella



**Painting Central - artist Annamarie Trombetta on Vimeo**
vimeo.com › salem krieger › Videos    Vimeo
Nov 6 2012
Artist Annamarie Trombetta a NYC based painter working in
► 2:26    Central Pak. A profile of Annamarie as an artist.
Missing: 1972 oil man red umbrella

**Central Park's Plein Air Past | OutdoorPainter**
www.outdoorpainter.com/central-park-s-plein-air-past/ ▾
So it's perfectly natural that plein air painting would go on in those choice ... "The
Destructive Dance of 'Sandy,'" by Annamarie Trombetta ... "Central Park Clockwork
Mode of Multicolored Apps," by Annamarie Trombetta, oil and mixed media.

**Annamarie Trombetta Profiles | Facebook**
https://www.facebook.com/public/Annamarie-Trombetta ▾ Facebook
Search Results for Annamarie Trombetta. Search. Search Results for Annamarie
Trombetta. Find your friends on Facebook. Log in or sign up for Facebook to ...
Missing: 1972 oil painting man red umbrella

**Original Oil Paintings - Original Art. Top Emerging Artists**
www.ugallery.com/Buy-Original-Art ▾
Expertly Curated -- Free Shipping!
Expertly Curated Pieces · Happy Clients Worldwide   New Art Released Weekly

Case 1:18-cv-00993-RA-SLC   Document 22   Filed 04/24/19   Page 24 of 38

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karyn A. Temple*

Acting United States Register of Copyrights and Director

*Exhibit J*

Registration Number

**TX 8-655-807**

Effective Date of Registration:
June 18, 2018

### Title

Title of Work: Annamarie Trombetta Website www.trombettaart.com Biography --Portfolio-Credentials -- HomePage

### Completion/Publication

Year of Completion: 2003
Date of 1st Publication: September 30, 2003
Nation of 1st Publication: United States

### Author

- Author: Annamarie Trombetta
  Author Created: text, photograph(s), artwork
  Citizen of: United States
  Domiciled in: United States
  Year Born: 1963

### Copyright Claimant

Copyright Claimant: Annamarie Trombetta

### Certification

Name: Annamarie Trombetta
Date: June 18, 2018

Correspondence: Yes

# SA1774

Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (12/01/2012)                                    10/30/15, 3:31 PM

If you are the originator/copyright holder of this photo/item and would prefer it be excluded from our community, contact us here for removal.

- Home > Worthopedia™ > 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz

## 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz

- Sold for: Start Free Trial or Sign In to see what it's worth.
- Item Category: -
- Source: eBay
- Sold Date: Dec 01,2012
- Channel: Online Auction

Welcome to EstateAuctionsInc! We are one of the Top Sellers of Antiques, Collectibles and Quirky items on eBay. We have been selling since 1998 and ALL of our auctions start at .99 cents. We are proud to announce that we maintain a "FIVE STAR Detailed Seller Rating" and our staff strives for 100% customer satisfaction, our 100% feedback rating will vouch for that. We work with consigners from Coast-To-Coast and work hard to make sure we have top quality items. We are "Your Quality Zone" - search "YQZ" to see our other listings our !

---

>>>>> UP IN THIS AUCTION <<<<< 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta New York Listed Artist - Shabby Chic Condition

- DESCRIPTION - Please be patient there are 12 photos to be loaded in this auction. Up in this auction is a wonderful and delightful oil on canvas painting of a man (I guess it could be a woman) with a red umbrella. This is by Annamarie Trombette. It is signed on the bottom, but on the back it has written in red on the stretcher, Annamarie Trombetta "Gifted" 1977, "Painted" 1972. To our eyes it looks like it is after the style of Andre Kohn. It is quite large being approx. 48 1/2" tall and 17 1/2" wide. We are calling it shabby chic condition as it has a tear in the canvas, about 5/8" long just to the left of the man's knees, but still such a great painting. For those not familiar with Trombetta, here is information about her from off AskArt as they got it from her website: Annamarie Trombetta (1963 - ) Lived/Active: New York The nature of an artist's life, creativity and growth may be synonymously expressed in the image of an archetypal tree. Beginning with the earthly descendent roots the artist like the tree branches out into its surrounding environmental and celestial world. Both ascend and descend, widening their girth of consciousness while producing visual imagery, weathering each season of change. Thus, I believe it is the nature of the artist and of nature itself to regenerate and manifest. All of the imagery in this catalog was either created en plein air or from the subject directly. My journey to becoming an artist began many years ago. The consanguineous roots of my Italian family tree provided me with an innate constitution for my artistic profession. When I was a tiny seed of contemplative thought, my artistic nature began to sprout interest while gazing up at the ceiling paintings in a neighborhood church named Regina Pacis, meaning Queen of Peace. The church located in Brooklyn, NY features ceiling paintings, sculptures, marble interiors, and incorporates architectural elements for the façade and the belfry that are of Italianate design. Before the age of three I was able to surmise that the church in the ceiling painting was indeed the church I was in. The visual stimulation was a form of education. It fostered my sense of perception which became my strongest mode for acquiring knowledge. As the years unfurled, my family moved to Staten Island. At this time it was a scenic field of luminosity, lush vegetation and a harbor view complete with sail boats and small yachts. A few years after we moved my tree of life was in jeopardy of loosing a limb. What appeared to

Oil Painting Man With Red Umbrella (Photo of Surreal Realist Tomb Drawing (TP44-1-292)   Filed 04/24/19   Page 26 of 38    10/30/15, 3:31 PM
'72 Original

be   swollen leg was indeed a cancerous tumor. It was an almost fatal or perhaps even a fated occurrence in my life. The struggle to survive the experience was lightened by my imagination and by my artistic ability to create. I seriously thought I would go into medicine but the posters and paintings in the hospital and doctor's office held my attention more intensely. I began my formal training at The Brooklyn Museum School of Art while I was in high school. The exposure to various forms of art inspired me to expand my horizons and in the early Eighties I traveled on a summer tour to Europe. The tour comprised of six countries; Germany, Austria, France, Italy, Switzerland and England. Viewing so many different cities and cultures in a concentrated period of time...

**Similar Items**

No image available

- Oil painting, original oil painting, impressionism

No image available

- original oil painting on canvas

No image available

- Original oil painting

No image available

- Original Oil

Case 1:18-cv-00993-LTS-SLC   Document 425-15   Filed 04/17/23   Page 76 of 99

Case 1:18-cv-00993-RA-SLC   Document 22   Filed 04/24/19   Page 27 of 38



Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 128 of 293

...anonyaloo.com/#6650641469

**Subject:** Marilyn Monroe 1988 Vintage Michael Ochs Archive Chanel Perfume ... www.worthpoint.com ›
Worthopedia™-----Artist Annamarie Trombetta

**From:** [redacted]

**To:** [redacted]

Exhibit M

**Date:** Wednesday, January 4, 2017 11:28 AM

Mr. Sieppel,

Please allow me to Re-introduce myself. My name is Annamarie Trombetta. I am an artist . Last year I found a MISATTRIBUTION of a painting that I did NOT create on your website--Worthpoint.com which came up on the internet under my name. Specific personal content from my professional biography on my personal artist website was copied, transplanted and posted on your site. A picture of a painted signature on canvas signed A. Trombetta that was NOT MY signature was also photo featured on the Worthpoint.com website listing.

On February 20, 2016 I contacted you via e-mail. Prior to contacting you I had spoken several times with your employer Anita and eventually I was on the phone at length with your webmaster Mr. Gregory Watkins regarding the FRAUDULENT posting of a painting that I did not create. I requested that this Fraudulent listing be permanently removed. I also sent a notice to the company website. SEE BELOW

## Ticket #57565: Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

WorthPoint | Feb 20, 2016 10:24AM EST
Thank you for submitting your request. We have received your request and are working on responding to you as soon as possible. If you have any additional information to add to this case, please reply to this email.

Thanks in advance for your patience and support.
This message was sent [redacted] in reference to Case #57565.

[[7e0d850e2b9039a31cbf23ab9ae58ea3fc4a46c9-641

I am contacting you once again almost a year later because I found yet again a listing from Worthpoint.com under my name--Annamarie Trombetta artist. Below is today's listing January 4th 2017 of subjects and site which come up when I Google Annamarie Trombetta artist. PLEASE REVIEW
--- The Marilyn Monroe listing was the first place where my name was Falsely associated along with the fraudulent painting and signature attributed to me that was listed on Worthpoint.com.

A year ago I took time, energy and effort to contact you and your company regarding the false attribution ...........ted that it should be removed. I have NEVER HAD ANY ASSOCIATION with ........ ........ with Worthpoint.com and yet in a Google

search for Annamarie Trombetta Artist your company is listed under my name. This listing is not authentic and has NO RIGHT TO BE LISTED UNDER MY NAME. The Listing from Worthpoint.com is taking up space that should be for my other TRUE credentials ---and should not BE OCCUPIED by your company.

I am requesting that you remove this IMMEDIATELY from the internet -- kindly contact Google and responsibly deal with this issue to bring about a PERMANENT ENDING. I do NOT WISH TO BE ASSOCIATED with your company---in ANY WAY. The numerous times that I have had to contact you regarding this issue is an outrage and a waste of my personal time. This is costing me time, effort and energy needlessly and for NO LOGICAL REASON as AGAIN I have contacted your company numerous times.

I am requesting a written response to this e-mail as soon as possible as a confirmation for receipt of this e-mail. Further, I am requesting that you and your company PERMANENTLY remove the association --or connection that Google or the algorithms on any other internet site thereof have between your company —-Worthpoint.com---- and my name Annamarie Trombetta.

Sincerely,
Annamarie Trombetta

E+M

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 129 of 293

SA1778

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 130 of 293

SA1779

11/2/16, 10:53 AM

w: Suzanne A. Wells , the eBay Selling Coach, partners with WorthPoint! - Inbox - Yahoo Mail

YAHOO! MAIL

worthpoint          Search Mail    Search Web    Annemarie    Account Info ◇ 🔲    Sign Out    Home

Inbox    Contacts    Notepad    Calendar                                    Switch to the newest Yahoo Mail

Compose          Delete    Reply    Reply All    Forward    Actions    ◇ Apply    Back to Search Results

Inbox (6291)          🌐 www.WorthPoin...    Look Up It's Worth! | worthpoint.com - Antiq...    Sponsored

Drafts (557)

Sent              Fw: Suzanne A. Wells, the eBay Selling Coach,    Thursday, October 27, 2016 1:08 PM  ✎  ···
                  partners with WorthPoint!
Spam (98)    [Empty]

Trash (346)  [Empty]    From:

My Folders    [Edit]    To:                                    Full Headers Printable View

Archive (2)                  To protect your privacy, Yahoo Mail has blocked remote images in this message. Show Images

Dalai Lama (1)

Deleted Messag...

Drafts                    Sent: Thursday, October 27, 2016 10:46 AM

gertie de jong...         Subject: Suzanne A. Wells, the eBay Selling Coach, partners with WorthPoint!

Images of Pain...

My Documents              WorthPoint Update

Press Kit Foun...          View this email in your browser

saved E-mails

SAVED EMAILSSS... (7)

Sent Messages

Stern Doc

untitled                   Hello ,

untitled1                  WorthPoint is thrilled to welcome Suzanne A. Wells to the WorthPoint community.
washington Arc...          The veteran eBay selling coach and blogger has partnered with WorthPoint in the
                           mammoth task of listing and selling WorthPoint CEO Will Seippel's personal
Washington Squ...          collection on eBay. Will's eBay store currently lists almost 4000 items, with another
                           100,000 to be added -- Suzanne estimates this will keep her busy through 2017.

                           With over a decade of experience, Suzanne has made a career of selling on eBay
                           and teaching others this valuable skill. She is a trusted resource and influencer in the
                           eBay community as well as a writer on blogs and websites. She has built a loyal
                           following of at-home eBay sellers who visit her sites for advice, motivation, and
                           understanding of how to make money on one of the world's largest marketplaces.

                           Suzanne discusses the downsizing on her blog here, and if you'd like to follow along,
                           she is documenting the grand adventure from start to finish in her Youtube
                           channel here.

                           As any picker, collector, or seller knows, having up-to-date, first-hand access to
                           pricing information is key to a successful business or hobby -- WorthPoint offers
                           exactly that.

                           WorthPoint plans to invite the public to become shareholders in the company. To
                           learn more about this upcoming investment opportunity and to express your interest
                           to invest, click the button below.

                           INDICATE INTEREST

zulily

daily deals
— up to —
70% off

SHOP

*[handwritten]* Exhibit M

*[handwritten]* Invest not

972 ORIGINAL OIL PAINTING MAN WITH RED UMBRELLA SIGNED ANNAMARIE TROMBETTA - Google Search

Google+  Search  Images  Maps  Play  YouTube  News  Gmail  More ▾          ariolannamarie@gmail.com ▾  ⚙

Google  1972 ORIGINAL OIL PAINTING MAN WITH RED UMBRELLA SIGNED ANNAM  🔍

All   Shopping   Images   Videos   News   More ▾   Search tools          👤  <

About 17 results (0.64 seconds)

econd  1972 Original Oil Painting Man With Red Umbrella Signed ...
www.worthpoint.com › Worthopedia™ ▾
1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta
yqz. Sold for: Start Free Trial or Sign in to see what it's worth. Item Category ...
You've visited this page many times. Last visit: 12/30/15

irst  Marilyn Monroe 1988 Vintage Michael Ochs Archive Chanel ...
www.worthpoint.com › Worthopedia™ ▾
1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta
yqz - Mustangs" Frank Rowland ~ Original Serigraph ~ LARGE DRAMATIC ...
You've visited this page many times. Last visit: 12/30/15

urth  THOMAS KINKADE -KINCAID - WorthPoint
www.worthpoint.com › Worthopedia™ ▾
Sold for: Start Free Trial or Sign in to see what it's worth. ... 1972 Original Oil Painting
Man With Red Umbrella Signed Annamarie Trombetta yqz - Handmade New Mexican
Folk Art Church Birdhouse LARGE Lori Sedona - BLUE HELLO KITTY ...

Third  1789 bonnaterre original antique hand colored reptile ...
www.worthpoint.com › Worthopedia™
1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta
yqz - Handmade New Mexican Folk Art Church Birdhouse LARGE Lori Sedona ...
You visited this page on 12/18/15.

1789 bonnaterre original antique hand colored reptile ...
www.worthpoint.com › Worthopedia™
Category. Original Antique Print Egyptian Cobra, Egg Eating Snake Pl 22 Historical
Information: This ... 1972 Original Oil Painting Man With Red Umbrella Signed
Annamarie Trombetta yqz - 1789 BONNATERRE ORIGINAL ANTIQUE HAND ...

Annamarie Trombetta - Biography
www.trombettaart.com/bio.html ▾
When I was a tiny seed of contemplative thought, my artistic nature began to sprout
interest while gazing up at the ceiling paintings in a neighborhood church ...
Missing: 1972 oil man red umbrella yqz

Annamarie Trombetta - Artist Info
www.trombettaart.com/info.html ▾
EDUCATION 1999 - National Academy School of Fine Arts 1991 - William Butler Yeats
Summer School, Sligo,Ireland 1993 - New York Academy of Art 1997 - Art ...
Missing: 1972 oil man red umbrella yqz
You've visited this page 4 times. Last visit 11/12/15

fth  artist annamarie trombetta's imagery offers visionary ...
italianamericanmuseum.org/news/news_plein.html ▾
Artist Annamarie Trombetta's "Central Park Imagery," a collection of en plein air ... Ms.
Trombetta is an artist who has created works in printmaking, watercolor, oil ... The New
York Academy of Art, The National Academy Museum and School, ...
Missing: 1972 man red umbrella yqz
You've visited this page 2 times. Last visit 12/11/15

Annamarie Trombetta, Artist Interviewed by June Middleton ...
https://www.youtube.com/watch?v=ufEQ3D3LWms
Apr 28, 2015 - Uploaded by JuneMindingBusiness
Annamarie Trombetta, an artist who's art has been exhibited
around the world, has created works in oil ...
Missing: 1972 man red umbrella yqz

Painting Central - artist Annamarie Trombetta on Vimeo

Original Oil Paintings
www.ugallery.com/Buy-Original-Art ▾
Original Art. Top Emerging Artists.
Expertly Curated – Free Shipping!

Original Art Gallery
www.zatista.com/ ▾
Over 7000 Completely Original Works
Great Value. Buy Today. Save Big.

Original Art For Sale
www.saatchiart.com/ ▾
4.7 ★★★★✩ rating for saatchiart.com
Curated Main Collections.
Paintings  Sculpture, Photo & More!

Montclair Art Museum
www.montclairartmuseum.org/ ▾
(973) 746-5555
Celebrating American Art
for 100 Years!

Famous Paintings in NYC
www.drawingcenter.org/painting ▾
Visit The Drawing Center in SoHo.
A Museum Dedicated to Drawings
📍 35 Wooster St, New York, NY

Incredible Art for Sale
www.poba.org/shop ▾
Masterworks from artists who left
us too soon available only at POBA!

See your ad here »

Exhibit
N

SA1780

**Information to identify the case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Norbert William Novocin Jr. | | Social Security number or ITI |
| | First Name   Middle Name   Last Name | | EIN __-_____ |
| Debtor 2 (Spouse, if filing) | Marie Ellen Novocin | | Social Security number or ITI |
| | First Name   Middle Name   Last Name | | EIN __-_____ |
| United States Bankruptcy Court   District of Delaware | | | |
| Case number: 19-10056-BLS | | | Date case filed for chapter 7  1/8/19 |

**Official Form 309A (For Individuals or Joint Debtors)**
**Notice of Chapter 7 Bankruptcy Case — No Proof of Claim Deadline**          12/17

For the debtors listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered.

This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully.

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtors' property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

The debtors are seeking a discharge. Creditors who assert that the debtors are not entitled to a discharge of any debts or who want to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadlines specified in this notice. (See line 9 for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at  www.pacer.gov).

The staff of the bankruptcy clerk's office cannot give legal advice.

To help creditors correctly identify debtors, debtors submit full Social Security or Individual Taxpayer Identification Numbers, which may appear on a version of this notice. However, the full numbers must not appear on any document filed with the court.

Do not file this notice with any proof of claim or other filing in the case. Do not include more than the last four digits of a Social Security or Individual Taxpayer Identification Number in any document, including attachments, that you file with the court.

Debtors: Valid Picture ID is required for access to the J. Caleb Boggs Federal Building. Additionally, Debtor(s) must also present photo ID plus original verification of his/her social security number to the Bankruptcy Trustee. If you do not have a photo ID and/or original verification of your social security number, please contact the Office of the United States Trustee's (302-573-6491).

Redaction

SA1782





Exhibit D

'18/2019                                   Gmail - Anderson Duff - Criminal

M Gmail

**Anderson Duff - Criminal**
5 messages

Redacted - Proprietary Redaction                    Sat, Aug 11, 2018 at 7:06 AM

Hi Annamarie,

Henry

DocumentFragment_34115499.tif
104K

Case 1:18-cv-00993-LTS-SLC    Document 425-15    Filed 04/17/23    Page 84 of 99



SA1785

Case 1:18-cv-00993-LTS-SLC    Document 425-15    Filed 04/17/23    Page 85 of 99



Exhibit Q

Stay informed of more local and regional business news

# DELAWARE BUSINESS TIMES

F BA

Subscribe
Digital Edition
Customer Service
Buy the Book of Lists

NEWS    EVENTS    SPECIAL EDITIONS    LISTS    DIGITAL EDITION    ARCHIVE    INNOVATION    STUFF

**Small Business. Big Support.**    D Delaware
Visit www.DelBiz.com for one on one help with starting
or growing your business.

YOU ARE HERE: Home → Seaford-based Estate Auctions ranks among top ebay sellers

## Seaford-based Estate Auctions ranks among top ebay sellers

Alex Vuocolo    May 24, 2018    antiques, Auction Estates, eBay, Inc., Norb Novocin, online sales, seaford, Washington D.C.



Norb and Marie Novocin attending an eBay seller showcase at the Eastern Market in Washington D.C.

Norb Novocin, owner of Estate Auctions, Inc., built his entire business on eBay. The Seaford-based company has eight employees and generates up $1 million in sales per year. His key to success: Start every auction at $1 regardless of the item's value.

Online bidders reach the right price point on their own, he said. The average item sells for about $150, but some bids jump into the tens of thousands. Products range from antique paintings of 18th century aristocrats to obscure historical trinkets, such as Russian nuclear launch keys from the Cold War.

"We go out there to estate auctions and buy dead people's stuff," Novocin said. "We like quirky. We like unusual."

Novocin and his wife, Marie, first started selling on eBay back in 1998. Novocin had lost his full-time job three weeks before Christmas and six weeks before the birth of their first child. To make some extra cash, he decided to hunt down cheap antiques at yard sales and estate auctions and sell them on eBay.

"We had about $50 to work with," Novocin said. "We went out to yard sales with the rule that we could only spend $1 per item."

"Our $50 turned into $500 in sales.

Biz Insights

Water Heater Failure During a Snow Storm! What Do You Do?
by Jeff Palady

Keep it in the Fairway
by Chris Duhl

'Digital Health' is Technology in Action
by Edmondo Robinson

# LISTS
DELAWARE BUSINESS TIMES EVENTS
Party

## March 19th
5:30pm – 8:30pm
Christiana Hilton

**Purchase Tickets Here**

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 137 of 293    SA1786

**SA1787**

Case 1:18-cv-00993-LTS-SLC    Document 425-15    Filed 04/17/23    Page 87 of 99



Plaintiff's
Deposition
Response

4/7/22, 1:44 PM

Terms of use | Worthpoint

The Wayback Machine - https://web.archive.org/web/20160111200742/http://www.worthpoint.com:80/terms-...

Plaintiff's Evidence  000388

WorthPoint®

| All Categories ⌄ |

Search
Search

Sign In
Start Free Trial
Account Settings

- User Profile
- Subscription Settings
- Worthpoint Professional Plan
- Saved Searches
- Manage my Favorite Books
- Manage my Favorite Marks
- Upgrade my Subscription

Sign Out
×Close | Sign In

Username/Email: ⑦
Enter username/email
Password:
Enter Password
I've forgotten my password
Remember Me: ☐

Start Free Trial | Sign In

Toggle navigation

- News & Resources
  - Articles
  - Videos & Podcast
  - Site Updates
- Value It
  - Worthopedia™ Price Guide
- Research It
  - WorthPoint Marks
  - WorthPoint Library
- Buy & Sell
  - Worthpoint Reseller program
  - Become a Reseller
  - Classifieds

# Terms of use

Terms of Use

Before using or subscribing to our Websites and Services please carefully read these terms of use (the "terms of use") and the WorthPoint-Pricemuner privacy policy (the "privacy policy"). By using our Websites and Services

WP000060

1/12

https://web.archive.org/web/20160111200742/http://www.worthpoint.com/terms-use

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 139 of 293

SA1788

you agree to be bound by these terms of use, (ii) acknowledge and agree that the information you provide either directly or indirectly through the Websites and/or Services will be managed in accordance with the privacy policy, and (iii) acknowledge and agree that additional terms may apply.

These Terms of Use govern your access to and use of the websites located at www.worthpoint.com, www.worthpoint.co.uk, and www.priceminer.com, (each a "Website" and collectively the "Websites") and our related services, applications, and tools, including, without limitation, the Worthopedia™, PriceMiner®, and any mobile applications (collectively, the "Services"). The Services are owned and operated by WorthPoint Corporation and/or its subsidiaries ("WorthPoint" "we" or "us"). "You" and "User" means the persons accessing our Websites and Services.

Changes to the Terms of Use

We may amend the Terms of Use, at any time and in our sole discretion, by posting the amended terms on our Websites. Except as otherwise stated, all amended terms shall be automatically effective on the date they are posted. Your use of the website after the date the amendments are posted constitutes your agreement to any new or changed terms and conditions.

These Terms of Use were last updated in May 2015.

Our Websites and Services contain graphics, information, data, and other content accessible by any User, and similar content which is accessible only to our subscribing Members (collectively "Content"). Portions of our Services contain User provided Content. You may contribute Content only if you are a Member. We are a distributor only of any User provided Content.

Whether in the free section or in the subscription section of our Websites and Services, all Content is owned and/or copyrighted by WorthPoint or third party providers. The Content is protected under United States' and other countries' copyright, trademark and other laws and international treaty provisions, and may only be used in accordance with this limited use license.

eBay and the eBay logo are trademarks of eBay Inc.

The Websites and Services are available worldwide and may be operated from various locations both within and outside the United States of America ("USA"). Access to and use of the Websites and Services may be inappropriate, prohibited or restricted in countries outside the USA. If you access/use the Websites or Services from outside the USA, you are responsible for complying with the laws and regulations of the territory from which you access/use the Websites and Services, including, without limitation, all laws and regulations applicable to the sale, or purchase, of items.

Information You Provide/Submissions

The Privacy Policy governs the collection, use and disclosure of information gathered on or through the Websites, including, but not limited to, the information you provide while accessing and using the Websites and Services.

Limited Use License

You are licensed to use the Content on the Websites, the Worthopedia™, PriceMiner®, any related mobile applications, and the Services for personal research purposes only. Under no circumstances shall you use any Content (except Submitted Content provided by you) for any Commercial Use. "Commercial Use" means any use that yields a profit or monetizes in any way the use of the Content. Online or other republication of Content is prohibited. You may not remove, obscure or otherwise deface proprietary notices appearing on any Content, including copyright, trademark and other intellectual property notices. Violation of this License may result in legal action for injunction, damages, or both. All rights in and to the Content not expressly granted in these Terms of Use are retained by WorthPoint.

WP000051

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 140 of 293

SA1789

Plaintiff's
Deposition
Response

4/7/22, 1:44 PM                                    Terms of use | Worthpoint

This is a single user license. You agree that you will not permit anyone else to log in with your user name and password. If you are found to be in violation of this license, your service may be immediately terminated and all subscription fees forfeited.

Classified Ads and Items for Sale.

Items listed for sale in the classified ads on Worthpoint.com are not the property of WorthPoint. We are not involved in the actual transaction between the buyer and the seller and we do not transfer ownership of the items from the seller to the buyer. We have no control over and do not guarantee the quality, safety or legality of any items listed, the truth and accuracy of the listings, or the ability of the sellers to sell the items they list. Please review the seller's or dealer's payment and return policies before purchasing any items. WorthPoint is not responsible for any liabilities, costs or other issues of any nature arising from sales of items listed or posted on the Websites.

Content Appearing On or Accessed Through the Websites

We do not independently verify any Content appearing on or accessed through the Websites that has been provided by third parties (such third parties "Content Providers"), whether or not we have an agreement with such Content Provider. We do not guarantee or warrant that any Content appearing on or accessed through the Websites (including Content provided directly by us) is accurate, complete, truthful, or non-objectionable. We do not endorse any Content provided by Content Providers. We reserve the right, at any time and in our sole discretion, to remove any Content from the Websites without notice.

We reserve the right to modify or discontinue the Websites or any available features or Services, at any time, without notice.

How to Flag an Item for Review or Request Removal of an Item

If you believe that an item contains incorrect or inappropriate information, please click her to request review of that item.

IF YOU BELIEVE THAT CONTENT POSTED ON OUR WEBSITES AND/OR SERVICES HAS BEEN POSTED IN VIOLATION OF YOUR INTELLECTUAL PROPERTY RIGHTS, PLEASE CLICK HERE TO REQUEST REMOVAL OF THAT CONTENT.

Links

The Websites may display links to other websites or resources sponsored by third parties. Your access to and use of any linked websites is at your own risk. We do not endorse or provide warranties of any kind as to any Linked Websites (and any websites to which they link). You should review the policies and terms and conditions associated with Linked Websites closely before using, submitting information to such Linked Websites, and allowing children to visit Linked Websites

Using the Services

We request that while visiting the Websites and participating in, accessing and using the Services, you conduct yourself in a polite, courteous and respectful manner. Without limiting our remedies, we may limit, suspend or terminate Services to and prohibit access to our Websites or Services to any User whom we believe (in our sole discretion) is creating problems or possible legal liabilities, including, without limitation, users who we believe are:

taking any action that imposes or may impose (in our sole discretion) an unreasonable or disproportionately large load on our infrastructure;
infringing on the intellectual property rights of others;
interfering or attempting to interfere with the proper working of the Websites or the Services; or

                                                                    WP000052

https://web.archive.org/web/20160111200742/http://www.worthpoint.com/terms-use                3/12

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 141 of 293

SA1790

Plaintiff's
Deposition
Response

4/7/22, 1:44 PM                                    Terms of use | Worthpoint

using any data mining, robots, or similar data gathering and extraction tools in connection with the Websites or Services.

Applicability of Additional Terms and Conditions

Additional or different terms and conditions ("Additional Terms") may apply in connection with certain available features, including listing items for sale on the classifieds. If applicable, these Additional Terms will be set forth (i) where you are permitted to access or use the available features, or (ii) in a link adjacent to where you are permitted to access the available features. You should carefully review all Additional Terms before accessing and using the Available Features. In the event that any Additional Terms conflict with these Terms of Use, the Additional Terms shall control with respect to the subject matter to which such Additional Terms apply.

Reporting Violations of these Terms of Use

If you become aware of activities, or Content that violates these Terms of Use you should notify us immediately. Although we do not guarantee any action based on such information, we pledge to make every reasonable effort to respond to reported violations in a fair and timely manner.

Termination

We may, in our sole discretion, at any time and without prior notice, terminate your use of the Websites or terminate your rights under these Terms of Use for any or no reason. We may also, in our sole discretion discontinue providing the Website or any Services, with or without notice.

LIABILITY DISCLAIMER

The information and services included on the Websites and Services may include inaccuracies or typographical errors. All information provided on our Websites and Services in provided "as is." We expressly disclaim all express and implied warranties, including, but not limited to, implied warranties of merchantability, fitness for a particular purpose and non-infringement in connection with the Websites, the Services and the Content.

Without limitation to the foregoing, we do not warrant that: (a) there will be no interference with your enjoyment of the Websites or Services; (b) the Websites or Services will fulfill any particular purpose, need, requirement or specification or is complete, reliable or accurate; (c) the Websites and Services will be timely, secure or error free; (e) any errors in content will be corrected; (f) any item offered for sale and sold in a sale on the websites or any content on the Websites or Services is lawful, appropriate or available for sale, purchase or use in any particular location; or (g) other products or services displayed or referenced on the Websites or Services are available for use in a particular location.

We shall not be liable under any theory (including negligence) for any incidental, consequential, indirect, special, lost profits or punitive damages arising out of your access to or use of the Websites or Services, even if we have been advised of the possibility of such damages. In no event shall our liability for any damages (direct or otherwise) or penalties or loss, regardless of the form of action or claim, whether in contract, tort (including negligence), or otherwise of any type exceed the total of any membership fee, license fee or other similar fees paid by you to us for access to the content, item, product or service which is the subject of a claim.

Because some states/jurisdictions do not allow exclusions as broad as those stated above or limitations of liability for consequential or incidental damages, the above limitations may. in whole or in part, not apply to you. IF YOU ARE DISSATISFIED WITH ANY PORTION OF THE WEBSITES OR SERVICES, OR WITH ANY OF THESE TERMS OF USE, YOU SOLE AND EXCLUSIVE REMEDY IS TO DISCONTINUE USING THE WEBSITES AND/OR SERVICES.

Indemnification

WP000053

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 142 of 293

SA1791

Plaintiff's
Deposition
Response

4/7/22, 1:44 PM                                        Terms of use | Worthpoint

You agree to defend, indemnify and hold harmless WorthPoint and WorthPoint's affiliates, officers, directors, predecessors, successors in interest, shareholders, employees, and agents for all claims, losses, costs and liabilities, including, without limitation, reasonable attorneys' fees, that arise from or are related to your use of the Websites or Services or your violation of these Terms of Use.

Other

To the fullest extent permitted by law, these Terms of Use and any claim or dispute arising out of or relating to these Terms of Use, including but not limited to the Website, will be governed by and construed in accordance with the laws of the State of Georgia, without regard to its choice of law principles. Except as otherwise prohibited by law, any claim or dispute must be brought within one (1) year from the date the cause of action arises. Any claim or dispute arising out of or relating to these Terms of Use, including but not limited to the Website or Services, shall be subject to the exclusive jurisdiction of state or federal courts located in Fulton County, Georgia, and you hereby consent and submit to the personal jurisdiction of such courts. If any provision of these Terms of Use is held to be unlawful, void, or for any reason unenforceable, that provision will be deemed severable and will not affect the validity and enforceability of the remaining provisions. These Terms of Use constitute the entire agreement between you and WorthPoint relating to your use of the Website and Services, superseding any other agreement between you and WorthPoint with respect to the subject matter of these Terms of Use. Section headings in these Terms of Use are for convenience only and have no legal or contractual effect. If any provision of these Terms of Use shall be found to be unenforceable, the other provisions shall still remain in full force and effect.

Contact Us

For making a claim of copyright infringement please use the contact information set forth under "Notice and Procedure for Making Claims of Infringement."

For all other issues or questions please use the following contact information:

By Mail: Worthpoint, Inc.
5 Concourse Parkway NE, Suite 2850, Atlanta, Georgia 30328

By Email: support@worthpoint.com

ADDITIONAL MEMBER/ CONTENT PROVIDER TERMS

These additional Terms of Use govern the use of Membership Accounts.

Membership

If you are 18 years of age or older, you may register for a Membership Account through one or both of the Websites. Once your Membership Account is established, you can choose among various level(s) of membership for each Website or Service (each a "Membership Level"). If you would like to see a list of the Membership Levels available on each Website and Service and a description of those Membership Levels, including any applicable fees, please click here for the Worthpoint.com Membership Details. The Membership Level you choose will determine which Available Features you are permitted to access.

When you register for a Membership Account you must (i) provide accurate and truthful information about yourself, including, if applicable, billing information, and (ii) update such information from time to time as necessary to keep your registration information current and accurate. As a registered Member, you are responsible for keeping your password and Membership Account information confidential.

You are responsible for all activities that occur under your Membership Account. If you suspect someone is accessing or using your Membership Account or if you need to change your password or Membership Account

WP000054

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 143 of 293

SA1792

Plaintiff's
Deposition
Response

4/7/22, 1:44 PM                                    Terms of use | Worthpoint

information you should notify us as soon as possible using the contact information set forth under "Contact Us" and login to your account to make the necessary changes.

We reserve the right to terminate or suspend your Membership Account at any time for any or no reason. Therefore, you should keep copies and records of any content you may wish to access if your Membership Account is terminated.

Cancellations

If you would like to cancel your WorthPoint Account, login with your Username and Password. Click on "My Account" at the top of the page, then click on the "Account Settings" tab. You will see a link that reads "Billing Info", click this link and you'll see the "Cancel Account" button.

Submitting Content

You are entirely responsible for any Content that you contribute to the Websites and Services ("Submitted Content"). By submitting Content to our Websites and/or Services you grant us a non-exclusive, worldwide, perpetual, royalty-free, sublicensable (through multiple tiers) license to exercise any and all copyright, trademark, publicity and database rights (but no other rights) you have in the Submitted Content, in any media known now or in the future and to publicly display the Submitted Content. In addition, by posting Submitted Content to the Websites, you represent and warrant that (i) you own all right, title and interest in and to the Submitted Content, or you have the necessary licenses, approvals and permissions to use the Submitted Content and to post it on our Websites and to grant us the license described above, and (ii) the Submitted Content does not contain software viruses, spiders, spybots, commercial solicitation, chain letters, mass mailings, any form of spam, or any other content that is prohibited under these Terms of Use.

The Submitted Content shall not, nor shall Submitted Content provide a link or reference to content that:

misrepresent(s) you or any third party's identity, affiliation or connection with a person or entity;
imply(ies) or state(s) that we endorse or are in any way associated with Submitted Content;
contain(s) any false, misleading, deceptive, sexually suggestive, abusive or harassing content;
promote(s) hatred, racism, bigotry, physical violence or emotional abuse against any individual or group;
is unlawful, threatening, defamatory, obscene, libelous, or otherwise contain(s) offensive content;
contain(s) photographs or words containing or depicting objectionable subject matter, including but not limited to photos depicting or containing excessive violence, nudity, obscenity, sexual explicitness, or harassing content;
contain(s) any information or computer code that is intended to, or is likely to, damage, interfere with, alter, intercept or expropriate any data or system, such as Trojan horses, worms, time bombs, cancelbots and other unauthorized computer programming routines; or
contain(s) advertising or solicitation of any kind

We reserve the right, but do not have the responsibility, to monitor and remove any Submitted Content, at any time and without notice, in our sole discretion.

Posting Items for Sale

The following additional policies and terms and conditions relate to posting items for sale on the classified ads on Worthpoint.com are part of this agreement:

Listing Policy

Prohibited Items Policy

Listing Terms and Conditions:

In addition to the general terms and conditions contained in these Terms of Use, which apply to all activity conducted on the Websites, this Listing Policy sets forth additional terms and conditions that apply to the Sale of

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 144 of 293    SA1793

Plaintiff's
Deposition
Response

4/7/22, 1:44 PM                                    Terms of use | Worthpoint

Items on the Websites.

The following definitions shall apply in these Listing Terms and Conditions :

"Buyers" shall mean persons who intend to purchase on Items on the Websites.
"Dealer Policies" shall mean the policies, terms and conditions posted directly or linked to an Item Detail Page.
"Full Purchase Price" for an Item shall mean (i) the price of the Item (as set by the Seller in a fixed-price Sale;
(ii) Taxes; (iii) packing, shipping transportation and insurance charges, and customs fees and charges and duties,
if applicable; and (iv) any other amount due by the Buyer as set forth in the Seller's Policies for such Item.
"Item" shall mean an item offered for sale by a Seller on the Websites.
"Item Detail Page" shall mean the detail page of an Item listed for sale on a Website.
"Sale" shall refer to the sale by a Seller of an Item to a Buyer on the Websites.
"Sellers" shall mean Members of the Websites who intend to sell Items on the Websites.
"Seller Policies" shall mean the Dealer's Policies and any other terms and conditions agreed to by the Seller and
the Buyer during the process of consummating the Sale.
"Taxes" shall mean, for any Item, the amount, if any, of the sales, use or other taxes and governmental charges
due in connection with a Sale.

To be a Seller, a Member must subscribe to a Membership Level having such ability as an Available Feature.

Sellers are solely responsible for the descriptions of the Items, as well as any statements concerning the value,
characteristics, quality, authenticity, condition, title or other information about the Items. We have not seen or
evaluated the Items being offered for sale on our Websites, or confirmed the accuracy or reliability of statements
made with respect to any Items offered for sale. All inquiries relating to Items offered for sale on our Websites
should be directed to the Seller of such Items and a Buyer should resolve all questions and concerns prior to
purchasing an Item. We do not act as an agent for either the Seller or the Buyer in the transactions that take place
via the Websites and we shall have no liability for or with respect to any acts or omissions of either the Seller or
the Buyer in such transactions.

No Seller shall list for sale any Item on the Website unless such Item is in full compliance with our Prohibited
and Restricted Items Policy. We reserve the right to withdraw, for any reason and in our sole discretion, any Item
prior to its Sale and shall have no liability whatsoever for such withdrawal.

The Buyer shall pay the Seller directly the Full Purchase Price for any purchased Item. It is the responsibility of
the Seller and Buyer to comply in all respects with any applicable import/export rules and regulations with
respect to all Sales. Accepted forms of payment, shipments, deliveries, returns, exchanges, refunds any all other
matters concerning Sales shall be governed by the Seller Policies. The Seller of such Item is responsible for
delivering the Item to the Buyer. Any returns shall be made in accordance with the Seller Policies. Each Seller is
responsible for honoring and strictly adhering to their Seller Policies.

Each Buyer is responsible for reading carefully the Seller Policies for an Item prior to purchasing such Item. All
returns, refunds, exchanges, communications and disputes of any kind between Buyer and Seller relating to an
Item shall be governed by the Seller Policies for such Item. WorthPoint (and our affiliates, officers, directors,
agents, subsidiaries, joint ventures and employees) shall not be liable for any claims, liabilities, demands or
damages (including, without limitation, actual and consequential damages) of any kind or nature arising out of
or in any way connected with any dispute between the Buyer and the Seller.

Prohibited and Restricted Items Policy

Certain items may not be listed for sale on the websites provided by Worthpoint Corporatoion. ("we" or "us") or
are subject to restrictions. The sale of many items may be prohibited or restricted by law. In addition, when
selling items across country borders, you should be aware of international trading and import/export restrictions.
The sale of certain items may be legal in your location, but illegal elsewhere.

WP000056

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 145 of 293
SA1794

Plaintiff's
Deposition
Response

4/7/22, 1:44 PM                                         Terms of use | Worthpoint

Before you list an item for sale on our websites, you must determine if you are permitted to list the item for sale under this policy and under applicable laws, rules and regulations. Sellers may not disclaim knowledge of, or responsibility for, the authenticity or legality of the items they list on our websites. You must take all appropriate measures to ensure the legality and authenticity of your listing prior to listing it on our websites. If you cannot verify the authenticity of an item, you may not list it.

The seller and buyer of each item listed on our websites are responsible for complying with all applicable laws, rules and regulations when listing for sale, selling or buying any item on our websites. You are responsible for ensuring any transaction in which you engage is lawful in the applicable jurisdictions of the seller and the buyer. If you are not certain whether the sale or purchase of an item is lawful, consult your attorney or the appropriate law enforcement agency.

You may contact us to report suspected violations of this policy by contacting our Support Staff at support@worthpoint.com.

In the event we determine, in our sole and absolute discretion, that any listing or item violates this policy or is otherwise inappropriate for listing on our websites, we reserve the right, but do not have any obligation, to take measures against either party involved with the transaction, including, without limitation: 1) terminating any listing or transaction, 2) placing limits on the party's account, 3) suspending the party's account; and 4) requiring the listing party to forfeit fees associated with the terminated listing.

The following items are prohibited or are subject to restrictions:

Prohibited Items

Alcohol – the sale of alcohol, including wine, is prohibited. (See "Alcohol-related Collectibles" below in the Restricted Items section for further information on alcohol-related collectibles and memorabilia).

Animals and Animal Parts
Cat or Dog Fur – items containing cat or dog fur are prohibited.
Endangered Species – animal parts, including pelts and skins, from endangered or protected species are prohibited. Endangered species may include, but are not limited to, bears, leopards, tigers, cheetahs, jaguars, sable antelopes, and certain species of zebra.
Ivory – items made from ivory are prohibited (See "Ivory" below in Restricted Items section for further information).
Marine Mammals – items containing parts or products from marine mammals, including without limitation, seals, walruses, and whales are prohibited, unless the part has been transformed into an authentic Alaska Native article of handicraft or clothing. (See "Native American Crafts" below in the Restricted Items section for further information.)
Stuffed Birds – stuffed birds, and parts thereof, are prohibited.
Tortoise – items made in whole or in part from any species of turtle or tortoise which is identified as threatened or endangered by the U.S. Fish and Wildlife Services ("F&WS") are prohibited. Listings must identify the species of turtle or tortoise as non-threatened or endangered. Faux-tortoise items are permitted, provided the listing clearly identifies the item as faux-tortoise.
Traps – animal traps are prohibited.

Art – unauthorized copies, reproductions and items that otherwise violate applicable laws, including, without limitation, copyright and trademark laws, are prohibited (see "Art" below in the Restricted Items section for further information about listing art).

Artifacts
Artifacts from protected lands – items taken from federal, state or public lands, or lands owned or controlled by the Department of Interior Agencies or Department of Agriculture Agencies, Native American lands or battlefields are prohibited.
Cave Formations – speleothems, stalactites and stalagmites removed from federal lands or from state lands,

WP000057

https://web.archive.org/web/20160112200742/http://www.worthpoint.com/terms-use                                8/12

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 146 of 293

SA1795

4/7/22, 1:44 PM                                          Terms of use | Worthpoint

Plaintiff's
Deposition
Response

where such removal is prohibited by state law, are prohibited.

Native American grave-related items – Native American grave-related items, human remains and burial items are prohibited.

Counterfeit Items – counterfeits, unauthorized replicas, unauthorized items and unauthorized copies (including, but not limited to, copies that are pirated, duplicated, backed up or bootlegged) are prohibited. In addition, the following are prohibited: Chanel, Eberhard, Patek Phillippe, Tiffany jewelry, Breitling, Alexander Calder, Weiss, Kewpie and Girl Scout brand goods.

Currency – counterfeit, fraudulent and improperly described coins, paper money, stamps, bank notes, bonds, money orders and securities are prohibited.

Drugs and Drug Paraphernalia – drugs and drug paraphernalia are prohibited.

Embargoed Goods and Prohibited Countries – the sale of embargoed items from, with or to countries or persons against which any U.S. agency has sanctions in place that substantially regulate or ban trade is prohibited.

Firearms and Ammunition – all firearms (other than as forth in "Antique Firearms" below in the Restriction Items section), firearms parts and ammunition are prohibited.

Government Documents – internal, non-public manuals, documents and other materials are prohibited.

Government Uniforms – government uniforms are prohibited (except vintage uniform clothing as set forth in "Vintage Government and Transit Uniforms" below in the Restricted Items section).

Government IDs and Licenses – all government licenses and IDs are prohibited (except as set forth in "Expired Passports and Collectible Vehicle Licenses" below in the Restricted Items section).

Humans Remains and Body Parts - human remains, body parts, organs, fluids, waste, Native American skulls, bones and other grave-related items are prohibited (see "Items Containing Human Hair" below in the Restricted Items section for further information).

Items Encouraging Illegal Activity – items or links to items that encourage, promote, facilitate or instruct others to engage in illegal activity are prohibited.

Law Enforcement Items – current or recent law enforcement badges, patches, IDs, uniforms, emergency lights, sirens and traffic control devices are prohibited.

Lockpicking Devices – lockpicking and locksmithing devices are prohibited.

Medical Devices and Items – devices that may only be sold to authorized purchasers, and devices, items and units that require a prescription are prohibited.

Postage Meters – postage meters are prohibited.

Slot Machines – coin-operated slot machines are prohibited (except as set forth in "Antique or Non-Functional Slot Machines" below in the Restricted Items Section).

Stamps – counterfeit stamps, reproductions of stamps, and devices for counterfeiting stamps are prohibited.

Stocks - stocks, bonds, investments, credit and documentation that represents proof of a current investment interest in any entity are prohibited (see "Collectible Stock Certificates" below in the Restricted Items section for further information on collectible stock certificates).

Stolen Property – items which are stolen property, including items from which the serial number has been removed or altered, are prohibited.

WP000058

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 147 of 293
SA1796

Plaintiff's
Deposition
Response

4/7/22, 1 44 PM                                      Terms of use | Worthpoint

Tobacco – tobacco is prohibited (see "Tobacco-Related Collectibles" below in the Restricted Items section for further information on collectible items).

Weapons   - the following weapons and weapon parts are prohibited:

• assault weapon-related parts or accessories
• firearm receivers or frames
• parts or accessories prohibited for sale by federal or California law
• Silencers, converters, kits that can be used to create a firearm, barrels, slides, cylinders, magazines, firing pins, choke tubes, trigger assemblies, potato guns and cannons, flares, flare launchers, flare guns, flare gun receivers, short barrels and any illegal firearm-related items.
• nunchaku, brass, plastic or metal knuckles, leaded cane/staff/crutch/stick, zip guns, shurikens, throwing stars, knuckle knives, billy clubs/batons, sandclubs or sandbags and slingshots
• switchblade knives
• disguised knives
• push knives
• equipment and supplies issued to or used by the U.S. military that have not been disposed of in accordance with U.S. Department of Defense demilitarization policies
• ordnance (military weaponry, ammunition and related parts)
• grenades

Weeds and Seeds – noxious weeds and seeds are prohibited.

Restricted Items
The items below may be listed for sale on our websites, subject to certain conditions and restrictions. The restrictions below do not represent an exhaustive list of the rules and regulations that may apply to the sale of a particular item. You are responsible for determining the laws, rules and regulations that may apply and for complying with all laws, rules and regulations applicable to the transaction in which you are engaging. If you are not certain whether the sale or purchase of an item is lawful, consult your attorney or the appropriate law enforcement agency.

Adult Items   items that contain graphic nudity or depict sexual acts are prohibited; however, items that are artistic in nature may be permitted. We may, in our sole and absolute discretion, remove any listing we determine is inappropriate.

Alcohol-related Collectibles – the sale of alcohol-related collectibles and memorabilia, packaging and containers is permitted, provided that if a collectible still contains alcohol:

• The container is unopened
• The value of the item is in the collectible container, not the contents
• The item is not available at any retail outlet
• The container has a value that substantially exceeds the current retail price of the alcohol in the container
• The seller takes the necessary steps to ensure the buyer is of lawful age in both the buyer and the seller's jurisdictions
• Both the buyer and the seller ensure that the sale complies with applicable laws and shipped regulations.

Compliance with all of the above-stated conditions must be stated verbatim in the listing.

Antique Firearms – antique firearms built in 1898 or earlier are permitted. Firearms may not be sold in cross-national border transactions.

Antique or Non-Functional Slot Machines - antiques slot machines that are at least 25 years old, non-coin or currency operated slot machines and non-functional slot machines made solely for display or slot machines that have been permanently altered so they cannot accept coins and cannot be converted into operational slot machines are permitted. Replica slot machines that are operable and less than 25 years old are prohibited. Please

WP000050

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 148 of 293
SA1797

Plaintiff's
Deposition
Response

4/7/22, 1:44 PM                                    Terms of use | Worthpoint

note: buyers and sellers in certain states may be prohibited from participating in antique slot machine sales or subject to other restrictions under state law. Please check local laws to ensure the slot machine transaction in which you wish to engage in legal in your jurisdiction.

Art – Reproductions and replicas must be clearly labeled, both in the title and the description. Reproductions of a copyrighted artwork must display a copy of the artist's authorization. Items done "in the style of" a particular artist may not include the artists name in the listing. Sellers may not disclaim knowledge of, or responsibility for, the authenticity or legality of an item and may not market an item as genuine unless the seller can provide reasonable evidence of authenticity. Sellers must clearly and prominently disclose information about alterations, conservation or repairs performed on the work. Sellers may not advertise art in a deceptive or misleading manner.

Autographs – All autograph dealers must be reviewed by a Worthologist or a staff member specializing in autographs. Dealers will be reviewed initially upon enrollment and as future items are reported. We reserve the right to review/reject any items.

Collectible Stock Certificates – old or collectible stock certificates are permitted provided they have been cancelled or represent an interest in an entity that no longer legally exists. Single share stock certificates marketed for gift purposes are permitted, provided such certificates are marked and advertised as non-transferable, ownership is not transferred into the name of the purchaser and the minimum sale price is more than twice the current exchange trading price of the underlying single share security.

Cosmetics – Cosmetic sales are permitted, however, if the item has been used, it must be marked as such.

Expired Passports and Collectible Vehicle Licenses – expired passports may be listed if they were issued more than 20 years before the date of sale. Collectible vehicle license plates, other than those from Delaware, are permitted provided they are at least three years old. The age of the collectible vehicle license plate must be clearly stated in the listing. Collectible vehicle license plates from Delaware are not permitted.

Items Containing Human Hair – items containing human hair are permitted.

Ivory    items created before 1900 or which contain less than 5% actual ivory are permitted.

Native American Crafts – Native American crafts are permitted, provided sellers comply with all applicable laws, including, without limitation, the Indian Arts and Crafts Act. Numerous limitations may apply to items before they can be described as "Native American handicrafts." For example, arts or crafts offered for sale as American Indian or Alaska Native must be made by an enrolled member of a state or federally recognized Indian tribe or an individual certified as an Indian artisan by the governing body of an Indian tribe. You must include the name of the artisan who made the item, as well as the name of the tribe of which he or she is a member. Reproductions of Native American items, crafts and artifacts must be clearly and conspicuously marked as such. If you have questions regarding the sale of American Indian or Alaska Native arts or crafts, you should contact the Indian Arts and Crafts Board.

Jewelry – imitation, fake, simulated, and lab created stones are permitted, provided they are clearly labeled as such in the title and in the first three instance of the stone name in the description.

Offensive Materials – Worthpoint may, in its sole and absolute discretion, disallow any of the following:

• items or listings that glorify or promote hatred, violence, racial, ethnic or religious intolerance
• items or listings that promote organizations with such views
• graphic portrayals of violence or victims of violence which lack substantial social, artistic or political value
• crime scene or morgue photographs, items closely associated with individuals notorious for committing murderous acts within the last 100 years and listings where it appears that a person convicted of a violent felony is attempting to use our websites to profit financially from his or her criminal notoriety
• graphic portrayals of human tragedy or suffering, including natural disasters, which lack substantial social,

WP000060

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 149 of 293

SA1798

Terms of use | Worthpoint

Plaintiff's
Deposition
Response

artistic or political value
• racially or ethnically offensive historical items and reproductions and works of art.

Reproduction Political Memorabilia – reproduction political memorabilia is permitted provided sellers comply with all applicable laws, including, without limitation, the Hobby Protection Act. Reproduction political memorabilia must be clearly marked as a reproduction or fantasy items and must be legibly marked with the date of manufacture.

Tobacco-Related Collectibles – the sale of tobacco-related collectibles and memorabilia, packaging and containers is permitted, provided that if a collectible still contains tobacco:

• the value of the item is in the collectible packaging, not the tobacco itself
• the listing clearly states the package has not been opened but that the tobacco within is not for consumption
• the collectible tobacco packaging is not available at any retail outlet
• The collectible tobacco packaging has a value that substantially exceeds the current retail price of the tobacco product in the package
• The seller takes the necessary steps to ensure the buyer is at least 18
• Both the buyer and the seller ensure that the sale complies with applicable laws and shipped regulations.

Pipes traditionally intended for use with tobacco products are permitted, including hookah pipes, and pipes made from briar, clay, corncob, meerschaum or similar materials.

Vintage Government and Transit Uniforms    vintage commercial airline, train and subway clothing, and articles of clothing and identification related to transportation security or employment with a transportation-related industry are permitted provided it is at least 10 years old, is no longer in use and does not resemble any piece of a current uniform.

Vintage Transit-Related Items – official, internal documents, manuals and other materials which are obsolete and no longer in use are permitted, provided they are clearly marked as such.

• About Us
• Advertising
• Contact Us
• Careers
• Privacy Policy
• Terms of Use

© 2016 - WorthPoint Corporation | 5 Concourse Parkway NE, Suite 2850, Atlanta, Georgia 30328 | 877.481.5750

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 150 of 293

SA1799

**SA1800**



October 27, 2022

<div align="right">
Jana Farmer
914.872.7247 (direct)
Jana.Farmer@wilsonelser.com
</div>

**Certified Return Receipt**
Scott Goodwillie
5038 Foxwood Lane
Charleston, South Carolina 29418

> **Certified Article Number**
> 9414 7266 9904 2178 4681 44
> **SENDER'S RECORD**

Re:      Trombetta
         Our file No.: 19701.6

Dear Mr. Goodwillie:

Enclosed please find an original and one copy of your deposition taken on October 6, 2022 relative to the above captioned matter. Kindly review the original copy transcript, sign where indicated on page 63 and have your signature notarized.

If you wish to make any corrections, please make the corrections on the attached Errata Sheet (page 2 of this letter) indicating the page and line number and the correction to be made. Please sign the Errata sheet as well and have your signature notarized. When the transcript and Errata sheet noting the corrections have been signed and notarized, please return the original transcript to our office at your earliest convenience.

Please take notice that failing to return the signed transcript within sixty (60) days will permit use of this deposition in motion practice and at trial as if signed pursuant to CPLR 3116(a).

Should you have any questions or concerns about this matter, please do not hesitate to contact the undersigned

Wilson Elser Moskowitz Edelman & Dicker LLP
*Jana Slavina Farmer*
Jana Slavina Farmer
JSF:ab
Enclosure

1133 Westchester Avenue • White Plains, NY 10604 • p 914.323.7000 • f 914.323.7001

Albany • Baltimore • Boston • Chicago • Connecticut • Dallas • Denver • Garden City • Houston • Kentucky • Las Vegas • London • Los Angeles • Miami
Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Virginia • Washington, DC • West Palm Beach • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Munich • Paris
**wilsonelser.com**

276914839v.1

**SA1801**



WILSON ELSER
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

- 2 -

Re:    Annamarie Trombetta vs. Norb Novocin et al
       Our file No.: 19701.6


_____The following corrections, additions or deletions were noted on the transcript of the testimony which I gave in the above-captioned matter, held on DATE: October 6, 2022

| PAGE | LINE | SHOULD READ |
|------|------|-------------|
|      |      |             |
|      |      |             |
|      |      |             |
|      |      |             |
|      |      |             |
|      |      |             |
|      |      |             |
|      |      |             |
|      |      |             |
|      |      |             |
|      |      |             |
|      |      |             |
|      |      |             |
|      |      |             |


The reason for the above revisions is that my present recollection of the aforementioned facts is more accurate than it was on the date of my deposition.

Sworn to before me this
_____ day of _____, 2022

_____
Scott Goodwillie

_____
Notary Public

276914839v.1

**SA1802**

## Certified Original

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

ANNAMARIE TROMBETTA,

                    Plaintiff,

                                        Index No.:
against -                               18-cv-00993-RA-SLC


NORB NOVOCIN, MARINE NOVOCIN,
ESTATE AUCTIONS, INC. and WORTH
POINT CORPORATION,

                    Defendants.

- - - - - - - - - - - - - - - - - X

            (VIA VIRTUAL PROCEEDING)
            October 6, 2022
            12:25 P.M.

    DEPOSITION of SCOTT GOODWILLIE, the non-party
herein, taken by the Defendants herein, pursuant to
Rule 45 of the Federal Rules of Civil Procedure,
held at the above-mentioned time and place, before
Anita M. Cummo, a Notary Public of the State of New
York.

**SA1803**

Page 2

A P P E A R A N C E S :

ANNAMARIE TROMBETTA, Plaintiff Pro Se

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
Attorneys for Defendant WorthPoint Corporation
    1133 Westchester Avenue
    White Plains, New York 10604

BY:   JANA S. FARMER, ESQ.
      ADAM R. BIALEK, ESQ.
      File No.: 19701.00006

HOGAN DUFF, LLP
Attorneys for Defendants Novocin and Estate
Auctions, Inc.,
    43-10 Crescent Street, Suite 1217
    Long Island City, New York 11101
BY:   ANDERSON JOSIAH DUFF, ESQ.

Page 3

STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED by and among counsel for the respective parties hereto, that the filing, sealing and certification of the within deposition shall be and the same hereby waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to form of the question, shall be reserved to the time of trial;

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before the court.

IT IS FURTHER STIPULATED AND AGREED that counsel representing the witness examined herein shall be furnished with a copy of the within deposition without charge.

*    *    *

Case 1:18-cv-00993-LTS-SLC    Document 425-16    Filed 04/17/23    Page 6 of 84

Page 4

SCOTT GOODWILLIE

S-C-O-T-T  G-O-O-D-W-I-L-L-I-E, having first been duly affirmed by a Notary Public of the State of New York, was examined and testified as follows:

MS. FARMER:  Thank you for being here today.  My name is Jana Farmer. I am an attorney with the law offices of Wilson Elser.  We were here today because you were designated as a fact witness in a lawsuit that's commenced by AnnaMarie Trombetta who is here today, and that's against Mr. Norb Novocin, Mrs. Marie Novocin, Estate Auctions, Inc. and WorthPoint Corporation.  I am an attorney representing WorthPoint Corporation. You also see on the screen before you Mr. Anderson Duff.  He is an attorney representing Mr. and Mr. Novocin and Estate Auctions. Miss Trombetta is a pro se plaintiff.  She is not represented by an attorney.

Page 5

SCOTT GOODWILLIE

You just froze for a second. Did you ask something?

THE WITNESS: No. No, I didn't.

MS. FARMER: Have you ever been deposed before?

THE WITNESS: Never.

MS. FARMER: I'm going to give you some ground rules on how this process works. It's a little difficulties from a conversation that we would normally have between people.

Present here today is Anita Cummo who is our court reporter. Her role is that she's sitting there typing every word that I am asking you and every word that you say saw or any other person in the room says. Because of that, it's important that we keep our questions and answers verbal. When you speak normally, sometimes we nod our head yes or shake our head no or gesture. Unfortunately, the court reporter

Page 6

SCOTT GOODWILLIE

cannot write that down unless she looks up and sees do you that.

THE WITNESS: Understood.

MS. FARMER: Even then, you have to describe what's happening because she cannot be sure that we agree. It's best to verbally say yes, no or if you're pointing somewhere, you say "I am pointing at this."

THE WITNESS: I understand.

MS. FARMER: Same thing happens when we use some of the answers that again are typical for us in conversation but cannot be written down accurately. I might ask you a question, you mean to say yes and you say "Uh-hum," or "Uh-huh," and it's impossible to understand what that means when it's written down. If you don't mind, please also answer verbally. Okay?

THE WITNESS: Okay.

MS. FARMER: In this proceeding we want to be completely fair to

Page 7

SCOTT GOODWILLIE

everybody. If you don't understand any of the questions that I'm asking you, please let us know and I will be happy to rephrase the question. If you want me to repeat it, I can also repeat the question or ask the court reporter to read it back. That's completely fine. However, if you begin to answer the question, I'm going to assume that you understood that question. Is that fair?

THE WITNESS: Yes.

MS. FARMER: At any point in this proceeding, you can take a break. There is only one rule. If I've just asked you a question, we ask that you first answer the question and then you can take a break for any reason whatsoever anytime you need. Is that okay?

THE WITNESS: Yes.

EXAMINATION BY
MS. FARMER:

Q. Please state your full name for the

SA1809

Page 8

SCOTT GOODWILLIE

record.

A.    Scott Goodwillie.

Q.    What is your present home address?

A.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮

Q    Is there anything that's preventing you from testifying truthfully today such as medication, illness or anything like that that you can't really testify today?

A    No.  As I mentioned, I do have COVID but I feel -- I feel I'm able to testify.

MS. FARMER:  We hope you feel better soon.  Sorry to hear that you're sick.

THE WITNESS:  Thank you.

Q    You're here pursuant to a subpoena.

I would like to confirm with you, did you receive the service of the subpoena on you in this matter?

A    Yes.

Q    Accompanying the subpoena, you should have received a $40 check.

Have you received that?

A    Yes, I have.

Page 9

SCOTT GOODWILLIE

MS. FARMER:   I'm going to ask you some background questions which is typical for every time we speak to a witness.

Q    Is Scott Goodwillie your full, legal name?

A    Yes.

Q    Have you ever gone by any other names?

A    No.

Q    You presently reside at 5038 Foxwood Lane, Charleston, North Carolina; is that correct?

A    South Carolina.

Q    I apologize, South Carolina?

A    Yes.

Q    Do you still maintain an address at 200 West 99th Street, apartment 3E, New York, New York 10025?

A    No.

Q    I understand that you are an artist; is that correct?

A    That's true.

Q    May I ask you, what is your highest

Page 10

SCOTT GOODWILLIE

level of education?

A    A private training with a school master.

(Technical difficulty experienced.)

MS. FARMER:  We just lost him.

It seems like you disconnected for a second.

Q    If you can hear us, would you mind repeating to us, what was your highest level of education?

A    I studied at a private atelier with Michael Aviano.

Q    When did you finish your studies with Mr. Aviano?

A    I don't recall.  Sometime maybe 1996 through '98.  I don't really recall.

Q    Do you also have any college degrees, in addition to your studies at the private atelier

A    No, I don't.

Q    How about a high school degree?

A    Well, yes, high school.  I graduated in 1982.

Q    Just for the record, can we get the

Page 11

SCOTT GOODWILLIE

name of your high school or where you attended?

A      It's a bit of a -- it's Henry-Senachwine.  It's S-E-N-A-C-H-W-I-N-E.  That's in Henry, just like the name, Henry, Illinois.

Q      I understand that you know Miss Trombetta; is that correct?

(Technical difficulty experienced.)

THE WITNESS:  I'm back.  I don't understand what's going on.

MS. FARMER:  If it's okay for everybody concerned, maybe in order to have a better connection, Scott could be off video.  Is that okay with everybody?

MR. DUFF:  I'm fine with that.

MS. TROMBETTA:  I'm fine with that.

MS. FARMER:  If you want to switch off your video, maybe the sound would be better.

THE WITNESS:  I'm not sure how to switch off.

MS. FARMER:  Off the record.

**SA1813**

Page 12

SCOTT GOODWILLIE

(Discussion held off the record.)

MS. FARMER:  You can still hear us; is that correct?

THE WITNESS:  I can hear you perfectly.

Q    My last question to you is, I understand that you know Miss Trombetta; is that correct?

A    That's correct.

Q    Do you recall when did you and Miss Trombetta first meet?

A    I don't recall the year.  It's been about 20 years or so.

Q    Before you met Miss Trombetta in person, did you know anything about her from maybe reading about her or somebody told you about her or anything like that?

A    No.

Q    Do you recall how did you meet?

A    We -- I believe we attended a lecture hosted by Steven Assael, one of the best realist painters alive today, and it was in front of the Whitney Museum.  Then we connected

SA1814

Page 13

SCOTT GOODWILLIE

at the Art Students League on 57th Street.

Q    Over the years, you kept up your acquaintance with Miss Trombetta; is that right?

A    Yes, I have.

Q    Were you approached to give a letter to Miss Trombetta, in connection with this lawsuit?

A    Approached with a letter?  I don't understand.

Q    Did Miss Trombetta ask you to write a letter to her, in connection with this lawsuit?

A    We shared e-mails back and forth but no physical letter.

MS. FARMER:  We are going to mark as Defendant's Exhibit 1 for today's date.  I'm going to share with you right now.

(Whereupon, at this time, the above-mentioned 6/7/2022 letter was marked by the reporter as Defendant's Exhibit 1, for identification, as of this date.)

Q    Are you able to see my screen?

Page 14

SCOTT GOODWILLIE

A       Yes, very tiny.  I'm on a phone.

MS. FARMER:  Let me see if I can magnifying.  This better?

THE WITNESS:  Okay, yes.

MS. FARMER:  I have magnified the document, but I'll represent to you that this is a one-page document. It is Bates-stamped Plaintiff 000074. Bates-stamp is just a numbering system used in litigation to keep track of documents.

THE WITNESS:  Okay.

Q       Do you see that this seems to be an e-mail from Scott Goodwillie?

A       This is from me, yes.

MS. FARMER:  You guessed right where I was going.

Q       There is from you.

Is this to Miss Trombetta?

A       I'm sorry.  What was the question?

Q       Is this your e-mail to Miss Trombetta?

A       Yes, it is.

Q       Do you recall sending this e-mail on

Page 15

SCOTT GOODWILLIE

April 7th, 2022, earlier this year?

    A    I do.

    Q    I'm going to go through what you say in this e-mail and pull off on a few things.

    A    Okay.

    Q    It says that you are a professional artist, you already told us that you are.

    You say "a colleague of AnnaMarie Trombetta;" is that correct that you are Miss Trombetta's colleague?

    A    Yes.

    Q    How did you mean?

    Did you work together in the same company or that you are both artists?

    A    We were both -- we're both classically-trained artists.  We are representational artists which is a very small -- a much smaller field.  So, we bonded on that particular issue.

    Q    Just to confirm, you have not worked for a single company together, at any point; correct?

    A    No, that is correct.

    Q    That's just another meaning of the

Page 16

SCOTT GOODWILLIE

word colleague that I wanted to confirm.

A    Yes.

Q    It further says "AnnaMarie Trombetta, whom I have known for over 20 years," you confirmed that. The next sentence "In January 2015, I attended her first solo exhibition at the Union League Club Gallery on Park Avenue in New York City."

Do you recall that?

A    I do recall seeing her and being at her opening, yes.

Q    When you say it was her first solo exhibition, did you mean that this was the first solo exhibition that you attended or is this that first exhibition that AnnaMarie Trombetta had?

A    I don't recall. It was the first -- it was the first show that I went to of hers.

Q    Again, it says here "First solo exhibition."

I wanted to confirm, have you ever been before to any of Miss Trombetta's exhibitions perhaps that were not solo but with other artists?

Page 17

SCOTT GOODWILLIE

A    I don't recall.

Q    It further says that you were impressed by her work?

A    Yes.

Q    And with the number of pieces in her show; that's correct, right?

A    That is correct, yes.

Q    Before you attended this solo exhibition in January of 2015, had you ever seen any other work by Miss Trombetta?

A    Yes.

Q    When you say that you were impressed by her work, are you referring specifically to this exhibition or in general as you've known Miss Trombetta over the years?

A    In general.

Q    Then it says "When I was informed that Miss Trombetta did not have gallery representation, I offered to speak with gallerists whom I knew in Chelsea on her behalf."

Who informed you, Mr. Goodwillie, that Miss Trombetta did not have gallery representation?

Page 18

SCOTT GOODWILLIE

A    She did.

Q    If you recall, when did that discussion with her take place?

A    I don't recall that.

Q    Would it have been at that show or at some other time?

A    I don't recall.

Q    Do you recall offering to Miss Trombetta to speak to gallerists on her behalf?

A    Yes.

Q    Did you, in fact, reach out to any gallerists in Chelsea on Miss Trombetta's behalf?

A    I did.

Q    Did you also reach out to any gallerists outside of Chelsea on Miss Trombetta's behalf?

A    I reached out to a John Ahern who was, at the time, the director of the Arnot Art Museum in Elmira, New York.

Q    The next sentence in this e-mail says "I have done so in the past and, in fact, in 2002 I made an introduction to the Arnot Museum director John Ahern on Miss Trombetta's

Page 19

SCOTT GOODWILLIE

behalf;" is that accurate?

(Technical difficulty experienced.)

MS. FARMER: We are still here. You broke up for a second. Did you hear my last question?

THE WITNESS: Could you please repeat?

Q     The next sentence in the e-mail said "I had done so in the past and, in fact, in 2002 I made an introduction to the Arnot Museum director John Ahern on Miss Trombetta's behalf."

Do you recall giving an introduction back in 2002 to the Arnot Museum director?

A     Yes.

Q     Beside that introduction in 2002, have you made other introductions for Miss Trombetta between from 2002 and the 2015 solo exhibition?

A     Not direct introductions. However, I did provide information to the John Cacciola Gallery and Tazza Gallery, both of which I was showing at.

Q     It says that as a result of your introduction to the Arnot Museum she was

Page 20

SCOTT GOODWILLIE

included in the prestigious 2003 representational exhibit at the Arnot Art Museum in Corning, New York.

Do you recall that Miss Trombetta was included in that exhibit, as a result of your introduction?

A    I do.

Q    Do you recall how many of her art works were exhibited in 2003, as part of this exhibit?

A    I do not.

Q    Do you recall whether or not she made any sales, as a result of that exhibit?

A    I do not, and a museum show is not a retail show.  It is for prestige and to the growth of an artist's career.

Q    You don't know if whether or not the artworks that may have been shown had subsequently been sold to collectors?

A    I do not.

Q    Do you know whether or not that exhibit resulted in any further exhibits or opportunities for Miss Trombetta?

A    I do not know.

Case 1:18-cv-00993-LTS-SLC    Document 425-16    Filed 04/17/23    Page 23 of 84

Page 21

SCOTT GOODWILLIE

Q    The next paragraph says "Months later in the summer of 2015, I presented photos of Miss Trombetta's artwork to some of my contacts."

You just mentioned that you presented some information to the John Cacciola and Tazza Gallery.

Was that what you were referring to as some of your contacts?

A    That is.

Q    Just to make certain that we are not missing anything, were there any other contacts that you presented the information to?

A    Not that I'm aware of.

MS. FARMER:  You mentioned two galleries in particular were interested, John Cacciola and Tazza Gallery both located in Chelsea, New York City.  Let me ask you one by one.

Q    With John Cacciola Gallery, you mentioned that you were showing there; correct?

A    Yes.

Q    Do you recall during what years you

Page 22

SCOTT GOODWILLIE

were showing there?

A       Probably in the late -- late 90s, mid to late 90s.  I don't have the exact dates.

Q       In 2015, you were no longer showing there; is that correct?

A       Correct.

Q       Do you recall which specific person or persons did you speak to at John Cacciola's gallery?

A       John Cacciola.

Q       Do you still maintain a connection with Mr. Cacciola?

A       No.

Q       Do you know that Mr. Cacciola's gallery is no longer in business?

A       I do.  I know he relocated somewhere in New Jersey, and I think he became a private dealer.  But that's as far as I know.

Q       Do you know the reason why that happened?

A       No.

Q       Do you know when he relocated to New Jersey and became a private dealer?

A       Somewhere in the 90s but I don't

Page 23

SCOTT GOODWILLIE

have the exact dates.  It was after -- after I was represented.

MS. FARMER:  Let me just clarify.

Q    In 2015 when you approached John Cacciola, was he still in Chelsea or was he already in New Jersey?

A    Already in New Jersey.

Q    Do you know if he had a space in Chelsea back then?

A    No, he did not.

Q    When you spoke to Mr. Cacciola about Miss Trombetta and showed photographs of her artwork to him, what did he say to you?

A    He thought she was very talented.

Q    Did he ask to arrange any introductions or meetings?

A    That I don't recall.  I just know he was interested in her work.

Q    After that initial conversation with John Cacciola about Miss Trombetta's work, can you tell me what happened next to that connection?

A    Well, from talking, apparently there was a painting attributed to her that was found

Page 24

SCOTT GOODWILLIE

on eBay. When an art gallery director is thinking about representing somebody or having them in a show, they do research and apparently, this painting, very poorly-done painting, not at all up to her quality, was found to be sold on eBay, and this is -- this is the crux of the matter in that I know as a professional if I have something attributed to me which is inferior to my work and it's sold on eBay, then why would a collector of my works, which go for around $20,000, why would somebody, a collector, pay $20,000 when a horrible painting is found on eBay for a hundred or a couple of hundred bucks?

MS. FARMER: Let me just unpack what you just said simply because we always need to know who is saying what.

Q    When you said from talking, when the art gallery director does research, did Mr. Cacciola tell you that he did some research on Miss Trombetta?

A    It's hard for me to recall if he was in touch with AnnaMarie or if I spoke with him.

Q    You don't recall if you had a

Page 25

SCOTT GOODWILLIE

conversation with him or if Miss Trombetta had a conversation with him; is that right?

A    I did the initial introduction.

Q    As you sit here today, can you definitively remember who told you that an art gallery director, and when we talk about art gallery director, do we mean John Cacciola here?

A    Yes.

Q    As you sit here today, do you definitively know who told you that John Cacciola did research on AnnaMarie Trombetta and found the eBay painting?

A    I do not recall.

Q    Do you know whether or not when John Cacciola did research on the painting, he saw the price for which the painting was sold?

A    Well, the records would be on eBay, so, yes, obviously.

Q    Do you know whether or not John Cacciola saw the records on eBay or on some other website?

A    I do not know.

Q    Do you know if there were follow-up discussions between Mr. Cacciola and Miss

Page 26

SCOTT GOODWILLIE

Trombetta about representation?

A    I think that was basically it.  Once something like that is seen, there's no follow-up.

Q    Certainly, John Cacciola did not follow up with you; is that right?

A    That is correct.

Q    Going to Tazza Gallery, you mentioned that's another gallery that you showed Miss Trombetta's artwork photographs to; is that right?

A    That is correct.

Q    At Tazza Gallery, who did you speak to on behalf of Miss Trombetta?

A    Let me see.  It was Dana, who was the director.  I forget the last name.  I'm sorry.  I'm sorry.  Daniel.  Daniel.

Q    Is Daniel a gentleman or a lady?

A    A gentleman.

Q    Is that by any chance Daniel Haddad Troconis?

A    I believe that's his last name, yes.

Q    Did you speak to anybody else about Miss Trombetta at Tazza Gallery?

SA1828

Page 27

SCOTT GOODWILLIE

A    No.

Q    Did you also show at Tazza Gallery yourself?

A    I did.

Q    When was the last time that you had showings at Tazza?

A    I think that was 2012, 2013.

Q    Again, in the summer of 2015, you were no longer showing there; is that correct?

A    Correct.

Q    Do you know that Tazza Gallery is also currently out of business?

A    I do.

Q    Do you know when they went out of business?

A    I do not.  I was -- I was in e-mail correspondence with Daniel for many years.

Q    Do you know what Daniel is doing now?

A    I do not.

Q    When you introduced Miss Trombetta's artwork to Daniel, did you do that in person or by e-mail or something else?

A    I believe e-mail.

Page 28

SCOTT GOODWILLIE

Q    Do you still have the e-mail exchange between you and Daniel about Miss Trombetta?

A    I do not know.

MS. FARMER:  If I may ask you to please check if you have any such e-mail and let us know and Miss Trombetta know, that would be very helpful.  If you don't, just let us know that you don't.  I know you have my e-mail address, Miss Trombetta's e-mail address in that chain for the deposition.  Just let us know.

THE WITNESS:  Okay.

Q    Once you e-mailed Daniel with pictures of Miss Trombetta's artwork, did Daniel respond to you?

A    I believe so.  I think he was very -- I think he was interested.  I think once he closed Tazza Gallery, like John Cacciola, he went into becoming a private dealer.  A lot of art galleries do that.

Q    They get out of the white-cube space

SA1830

Page 29

SCOTT GOODWILLIE

and become dealers without the physical gallery?

A    Yes.

Q    Do you know if Daniel still does business as an art dealer?

A    I am no longer in touch with him so I don't know.

Q    Do you know if John Cacciola still does business as an art dealer?

A    I do not.

Q    Do you recall whether or not Daniel responded to you by e-mail, verbally or something else, in relation to Miss Trombetta?

A    It would've been via e-mail.

Q    What was the sum and substance of his response to you?

A    He liked her work.  I don't recall anything more.

Q    As you sit here today, do you have an understanding about what happened next with Tazza?

A    I'm trying to remember.  I know that again the eBay posting did have residual effects for her career.

Q    How did you come to learn that eBay

Page 30

SCOTT GOODWILLIE

posting had a residual effect?

A    Well, through talking to AnnaMarie and the fact that any dealer would see that would not be interested because that would affect their collectors' list, their clients, et cetera.

Q    That's based on your personal experience; correct?

A    Yes.

Q    I wanted to confirm that you did not hear from Daniel that he was looking at the eBay or some other listing; is that correct?

A    I don't recall.  I really don't know.  I just know he -- initially, he liked her work.

Q    After the initial communication telling you that he liked her work, did you yourself get any other communications from Daniel about Miss Trombetta?

A    No, I did not.

MS. FARMER:  Off the record.

(Discussion held off the record.)

MS. FARMER:  Going back to

Page 31

SCOTT GOODWILLIE

Exhibit 1, the e-mail that we were discussing earlier, the next sentence here says "In late August, upon scheduling a personal introduction, one of the gallerists found the eBay listing under AnnaMarie Trombetta's name and the owner of the gallery was no longer interested."  I have a question for you.

Q    With which gallery did you schedule the personal introduction?

A    I believe it was John Cacciola.  I think I tried scheduling it with both directors.

Q    Were you going to attend that in-person introduction?

A    No.

Q    Do you know whether or not one was actually scheduled like a date was set?

A    I do not.

Q    This sentence also says "One of the gallerists found the eBay listing under AnnaMarie Trombetta's name."

Do you know which one you're

Page 32

SCOTT GOODWILLIE

referring to in this sentence?

A    I believe it was Cacciola.

Q    Did you mean by this that it was only one of the galleries that found the listing or one that you know about or something else?

A    It was the one that I knew about. However, AnnaMarie and I have talked for years, and I know that this listing had also affected the other introduction that I tried making with Daniel.

Q    Just to confirm, when you say "this listing," you mean the listing on eBay; is that correct?

A    Correct.

Q    Have you yourself ever seen the listing on the Internet or any of the websites of this painting attributed to AnnaMarie Trombetta that was inexpensive?

A    I have seen the link that she sent to me, the image.

Q    When you say that you have seen the link or the image, in what form did that arrive to you?

Was it the link that you clicked on

SA1834

Page 33

SCOTT GOODWILLIE

or was it a PDF or something else?

A    I believe it was a PDF.

Q    Did you yourself go and click on any links to that listing to find it independently?

A    No.

Q    Do you know which website was that link in PDF taken from?

A    She told me it was Worth -- I forget the name of the company.

Q    WorthPoint?

A    WorthPoint, yeah.

MS. FARMER:  I'm going to stop sharing my screen for a second so I can share a different exhibit.

THE WITNESS:  Okay.

MS. FARMER:  I'm now showing you what was previously marked as Defendant's Exhibit 6 at the deposition of Norb Novocin in this matter on September 21st, 2022.  I know you're on mobile, so I'm trying to magnifying this document for your.  I'll tell you that this is a one-page document.

Page 34

SCOTT GOODWILLIE

THE WITNESS:  Okay.  I see it.  I see it.

MS. FARMER:  I will now come up to the top of this document.

THE WITNESS:  By the way, I must point out something.  In 1972 she would have been around nine years old.  So, I find the date on this kind of ludicrous, to tell you the truth.

Q    Is this the PDF that Miss Trombetta sent to you about the posting that she found?

A    Yes.

Q    Did you receive this PDF from any other sources?

A    No.

Q    In the PDF that you got, were there anymore pictures beside this blown-up picture of a signature?

A    I don't believe so.  I'm not exactly sure because we've been talking about this for years.

Q    As you sit here today, have you ever seen the full painting?

Page 35

SCOTT GOODWILLIE

A    Yes.

Q    You have?

A    Yes, I have, yes.

Q    Under what circumstances have you seen that?

A    AnnaMarie sent that to me.

Q    Have you ever yourself gone to WorthPoint.com to look for this 1972 original oil painting listing?

A    No.

Q    Before AnnaMarie Trombetta sent you this PDF, did you ever go on WorthPoint's website?

A    No.

Q    As you sit here today, do you know what does WorthPoint do?

Do they sell anything?

What do they do; do you know?

A    I believe they sell paintings.

MS. FARMER:    We don't want you to guess.    This is also not a memory test.    Just what you know and what you remember.

THE WITNESS:    Okay, so no.

**SA1837**

Page 36

SCOTT GOODWILLIE

Q        You don't remember?

A        No.

Q        When you looked at this painting, did you understand whether or not it was currently for sale or already sold, when you got that PDF from Miss Trombetta?

A        Well, it was previously sold on eBay, to my understanding.

Q        You understood that you were looking at the record of an old sale; is that correct?

A        Correct.

Q        In the PDF that Miss Trombetta sent to you, was there a price?

A        That it was sold on eBay?

Q        How much did it sell for?

A        It was about $181.

Q        The reason I ask is, do you see this PDF that we are looking at right now, Exhibit 6?

A        Yes.

MS. FARMER:  That does not actually have a price.  It says "Sold for" and "Start free trial."

Q        The PDF that you got, did that have a price or no?

Page 37

SCOTT GOODWILLIE

A    No.

Q    Was Miss Trombetta your only source of information as far as how much did it sell for?

A    Yes.

Q    Did you ever get in touch with WorthPoint about this listing?

A    No.

Q    Did you ever get in touch with eBay for that listing?

A    No.

MS. FARMER:  It might be difficult for you to see.  I'll represent to you that the first line in this listing in the description says "Welcome to Estate Auctions, Inc."

Q    My question to you is, do you know who Estate Auctions, Inc. is?

A    No.

Q    No?

A    No.

Q    I assume that you also have never spoken or written to them; correct?

Page 38

SCOTT GOODWILLIE

A       Correct.

THE WITNESS:  Thank you.  Oh, wait, that's the first letter.

MS. FARMER:  I just went back to the first letter that we were talking about, Exhibit 1 of today's date.

THE WITNESS:  Okay.

MS. FARMER:  I just wanted to come back and double-check with you, Scott.

Q       Your sentence here says "One of the gallerists found the eBay listing."

Again, do you know if they found it on eBay or somewhere else?

A       I do not.  I do not know.

Q       Your next sentence says "For those of us in the professional field of art, particularly in the year 2015, anyone selling artwork, particularly on eBay or any other online platform, is considered an amateur artist;" is that accurate?

A       That is very accurate.

Q       What was special about the year

Page 39

SCOTT GOODWILLIE

2015?

You said, "particularly in the year 2015."

A      I think I just meant the purveyance of the Internet being all -- well, all pervasive.  All information on any artist is on the Internet, at this point.

Q      By this, you meant that there was a lot of information and a lot of artists on the Internet?

A      Yes.  It's obvious.

Q      Then you said, "Anyone selling artwork, particularly on eBay or other online platform," why was eBay -- why did you isolate eBay in particular?

What was so special about eBay?

A      Nothing is special about eBay.  EBay is a very low form of online -- of online sales.  If an artist was going to do anything online, maybe they would go with Saatchi.com who -- Saatchi was -- is one of the top collectors in England or worldwide actually, and he developed his own platform.  So, that has a little more cachet.  EBay is for amateurs, essentially.  As

Page 40

SCOTT GOODWILLIE

it were though, for the most part, I would never sell anything online because any art dealer who would look at my work in the future, having found that, would -- that would devalue my work. It's very -- the dealers want to make sure that they're the ones doing the sales, and really, if an artist has to sell the work on their own that shows that galleries are generally not interested in selling their work.

Q    Artworks can be sold from the artist on the primary market, as well as on the secondary market; correct?

A    Correct.

Q    It's sometimes difficult for an artist to control what the collector does; correct?

A    That is correct.

Q    In your experience, have you seen good artwork sometimes sold by collectors on the secondary market on one of the online platforms?

A    I haven't seen that in particular, but I know that it is done. I have seen my own work which was sold through an auction house. I forget the exact auction house. It was in

Page 41

SCOTT GOODWILLIE

Philadelphia.

Q    As you mentioned, dealers are typically trying to control the artist market to ensure the best prices for the artist; is that correct?

A    That's correct; yes.

Q    And the artist like yourself would like to avoid having collectors sell their artworks on online platforms, especially if it's sold for a little money because that can affect their market; is that right?

A    That's right.

Q    But again, with these collectors, what somebody else does on a secondary market is very hard to control; correct?

A    You cannot control that, no.  Once an artwork is sold, that's -- that belongs to the collector.

Q    As an artist in this space, have you ever dealt with, let's say, your own artwork being sold on a secondary market with you being unhappy about how much it's sold for?

A    Like I said, I have seen my work online that had been sold by an auction house.

Page 42

SCOTT GOODWILLIE

But I have no idea the -- the price because then you'd have to log in, start a password. It's just -- it's too much.

Q    Just like with WorthPoint where you needed to have a subscription or a free trial to see the price, is that what you're referring to?

A    I presume so.

Q    Are there websites in the art world that exist as a price reference data basis such as --

THE WITNESS:  You're breaking up.

MS. FARMER:  I'll repeat.

Q    I said, in fact, are there websites in the art market that exist for the purposes of referencing prices such as askART, Artprice, et cetera?

A    I suppose so.

Q    Have you ever subscribed to any of them?

A    No.

Q    Do you know if Miss Trombetta was ever represented by any gallery?

(Technical difficulty experienced.)

THE WITNESS:  Oh, and by the way,

SA1844

Page 43

SCOTT GOODWILLIE

I don't know why but suddenly your voice is breaking up. Let me go to another area of the house. Maybe I'll get better reception. It might be you, it might be me. I'm not sure. Okay, let's try. Can you ask the question again?

MS. FARMER: Can you hear me?

THE WITNESS: Yes, it's really staticky. A lot of static.

MS. FARMER: Let's try it. If you cannot hear me, let me know and I will repeat. Okay?

THE WITNESS: Okay.

Q    Do you know if Miss Trombetta was ever represented by any gallery?

A    I do not know.

Q    You just know that in 2015 she was not; correct?

A    Correct.

Q    If an artist finds their own artwork on an online platform for a price they don't like, what can the artist do about that?

A    I'm not sure.

Case 1:18-cv-00993-LTS-SLC    Document 425-16    Filed 04/17/23    Page 46 of 84

Page 44

SCOTT GOODWILLIE

Q     In this e-mail, the next sentence that we have not yet read is "The Internet listing once discovered by the galleries sabotaged the interest in Miss Trombetta's work."

I want to confirm, the fact that it sabotaged the gallery's interest specifically, you know that based on your discussions with Miss Trombetta; is that right?

A     That is correct.

Q     Then it says "I attest to this from personal experience that the Internet link ended all possibilities of gallery reputation."

Scott, can you tell me please, what is that personal experience that you are referring to?

A     That's just common sense, common knowledge. In my discussions with dealers in particular that anything which, you know, again, in the past ten years, even 20 years, with everything being online, anything that's bad or casts a negative light on somebody, and this is not just artwork, obviously. This can be applied to all measures of life that things can

SA1846

Page 45

SCOTT GOODWILLIE

affect your reputation, and that's just common sense.

Q     When you say that this posting ended all possibilities of gallery representation, do you mean forever?

A     No.

Q     Would it be possible for the artist to advise the gallery that the painting was misattributed?

A     I presume so.

Q     Would that have reopened the representation opportunity, do you think?

A     I don't know.  I can't speak for the other galleries.

Q     Do you know if Miss Trombetta ever advised John Cacciola that the painting was misattributed?

A     I'm sure she did.

Q     When you said you're sure, did she tell you that she did?

A     Well, this is many years ago, but yeah.

MS. FARMER:  She did tell you that she advised John Cacciola that

Page 46

SCOTT GOODWILLIE

the painting was misattributed.

Q    How about Daniel at Tazza Gallery?

Did Miss Trombetta advise you that she advised Daniel at the Tazza Gallery that the painting was misattributed?

Please don't guess.

A    Well, not everything is yes or no. You know that.

MS. FARMER:  I do know that.  But again, we are here --

THE WITNESS:  I understand.  I'm just answering the best to my knowledge and I cannot give a definitive yes or no sometimes.

Q    Is it fair to say that you don't definitively remember if Miss Trombetta told you that; correct?

A    Well, she told me that she had had a discussion with both Cacciola and Daniel.

Q    Did she summarize to you the nature of the discussion?

A    How do you mean?

Q    Did she tell you "I said this and that to Daniel and John Cacciola, and they

Page 47

SCOTT GOODWILLIE

responded in such a way?"

A    Okay. Basically, if -- what they saw on the Internet, they made the decision not to represent her or curate any of her work. So, it was -- it was a deal breaker, basically.

Q    Again, you know that from Miss Trombetta herself; is that correct?

A    Correct.

Q    The next sentence here says "I encouraged Miss Trombetta to get the listing removed from the Internet as soon as possible."

Did you have a suggestion to Miss Trombetta on how to go about it?

A    No, I do not.

Q    Have you ever had any personal experience trying to remove any listing from the Internet?

A    I have not.

Q    Do you know what prices does Miss Trombetta charge for her artworks?

A    You know, anything from like probably $8,000. She was -- she was due to sell a painting for about 8,000 or 8500 to a collector.

**SA1849**

Page 48

SCOTT GOODWILLIE

Q      You said from 8,000 to 8500 and what's the closing value?

A      I have no idea.  8500 I suppose.

Q      What I mean is, you knew that her prices were from 8,000.

Do you know what her top art price was for any of her artwork she ever sold?

A      I do not have an itinerary, no.

Q      Do you know how much Miss Trombetta would make per year with her annual art sales back in 2015?

A      I do not.

Q      Do you know this information for any of the years?

A      No.

Q      You said there was a lost sale for around 8,000 or 8500; correct?

A      Correct.

Q      How do you know about that lost sale?

A      AnnaMarie.

Q      Do you know what painting did she not sell?

A      A beautiful painting of a bridge.  I

Page 49

SCOTT GOODWILLIE

think it was in Central Park with wisteria, purple wisteria.

Q    Other than that sale that AnnaMarie told you fell through, do you know if that painting was ultimately sold?

A    I do not.

Q    Do you know how many artworks AnnaMarie Trombetta would sell per year?

A    I do not.

Q    Do you know by how much, if at all, did Miss Trombetta's income decrease since 2015?

A    I do not know.

Q    Did you ever help AnnaMarie Trombetta contact Google, in order to remove information about this listing from Google's surface?

A    No.  I would have no idea how to do that.

MS. FARMER:  Off the record.

(Discussion held off the record.)

Q    Beside talking to the museum and the two galleries that you already testified about, do you remember specifically introducing Miss

**SA1851**

Page 50

SCOTT GOODWILLIE

Trombetta's artwork to anyone else?

A    I do not.

Q    Are you aware of any appraisals of plaintiff's work that were ever performed?

A    I do not.

Q    Do you know whether Miss Trombetta had to undertake any medical treatment, as a result of this Internet posting?

A    I do not.  Not that I'm aware of.

Q    After the 2015 discussions with the galleries, you have continued communicating with Miss Trombetta about this case; correct?

A    Correct.

Q    On average, how often would you speak to Miss Trombetta?

A    Oh, couple of times a month. Sometimes, you know, I mean, it all varies.

Q    I presume since you are colleagues, this case is not the only topic of your discussions?

A    That's correct.

Q    Since you first introduced Miss Trombetta to the galleries in 2015, did you try to assist Miss Trombetta with this issue with

SA1852

Page 51

SCOTT GOODWILLIE

the listings in any other way?

A    No.

Q    Do you know that Miss Trombetta has a website?

A    I'm sorry.  What?

Q    Do you know that Miss Trombetta has a website?

A    Yes, but I don't recall the last time I was on it.

Q    Did you visit it, at all, at some point?

A    Oh, many, many years ago.

Q    Do you recall reading Miss Trombetta's biography?

A    I'm sure at one point I did, but I don't recall specifically.

Q    Do you know whether or not this biography is a copyrighted work?

A    I do not know.  Why would somebody copyright their biography though?

MS. FARMER:  I don't know the answer to that question, Scott.  I just have to ask you that question. I'm sorry about that.

SA1853

Page 52

SCOTT GOODWILLIE

THE WITNESS:  Okay.  Okay.

Q    When you introduce an artist to, let's say, a gallery, would it be typical for you to maybe send them also Miss Trombetta's biography, if you had that?

A    No.  I would direct them to the website.

Q    If an artwork was sold, I know you mentioned that online sales were not common for professional artists back in 2015, but let's take any sale of artwork.

If you were selling artwork to a third party, would it be typical to include some sort of biographical information about the artist?

A    Yes.

Q    So you know, that biographical information is not typically copyrighted; is that right?

A    I never thought about it, but no.

Q    Beside the lost sale of the wisteria painting that you referenced, do you know if Miss Trombetta specifically lost any other sales?

Case 1:18-cv-00993-LTS-SLC    Document 425-16    Filed 04/17/23    Page 55 of 84

Page 53

SCOTT GOODWILLIE

A    I am not aware of.

MS. FARMER:  Scott, I don't have any questions.  Mr. Duff is here so he might have some more questions.

THE WITNESS:  Okay.

MR. DUFF:  Thank you very much, Scott.  I appreciate you bearing with us here and being so forthright.  I really do appreciate it.  We all do.  I only have a few questions.

EXAMINATION BY
MR. DUFF:

Q    One of first is, this may be kind of naive, but I was looking at some of your artwork online and I'm just curious because I'm not in this world.

If I wanted to purchase one of your paintings and you said, I believe you said earlier that your work goes for 20 grand was the example that you gave, maybe more or less for different works.

A    Yes.

Q    How would I go about purchasing one of those paintings?

SA1855

Page 54

SCOTT GOODWILLIE

A    Well, if currently I'm not represented by any gallery, so obviously that would -- when people contact me they contact me directly.  If I was currently with a gallery, just to stay in the gallery's good graces, if the painting in question that you were asking about is in their inventory, than obviously I would recommend that you get in touch with the gallery.  If it's a painting I have in my studio, then I would make the sale.

Q    Does that affect the price of the piece, whether or not it's sold through a gallery or by you individually?

A    No, it does not.

Q    Forgive me if I'm saying this incorrectly, but have you been represented by a gallery during the past five years?

A    No, not in the last five years.

Q    Have you sold paintings in the last five years, personally?

A    Not paintings.  I went through a personal trauma, a tragedy.  I lost my stepdaughter and fiancee in an accident, and basically, I lost my apartment.  I stopped

Page 55

SCOTT GOODWILLIE

painting because I moved into a four-foot-by-seven-foot room. That's the reason for my transition here to Charleston so I can start painting again. Essentially, I started doing very small charcoals and pastels.

MR. DUFF: Scott, I'm sorry to have brought that up. I had no way of knowing. But I do appreciate your answering.

THE WITNESS: Thank you.

MR. DUFF: I think all I have left is -- I found -- I just would like to share -- I want to share nine images. I would like you to confirm that they are or are not your paintings.

THE WITNESS: Okay.

MR. DUFF: If it's unclear because obviously a small image is not going to do an oil painting justice.

THE WITNESS: That's okay. Just go ahead and send it.

MR. DUFF: What's the best way

**SA1857**

Page 56

SCOTT GOODWILLIE

for me to do this, Jana?

MS. FARMER:  Thumbnails.  Off the record.

(Discussion held off the record.)

Q    Do you see the one that I've just blown up?

A    Not yet.

Q    Do you see that image?

A    Yes.  Yes.

Q    That's yours?

A    Yes.

Q    Do you know whether you sold that painting?

A    I sold that many years ago and that was sold through, I forgot the auction house name, but an auction house in Philadelphia.

Q    You do not remember the year that was sold?

A    I do not, no.

Q    But it was sold?

A    Oh, yes.

Q    You should be seeing another image.

A    Yes.

Page 57

SCOTT GOODWILLIE

Q    When you say "yes," you're saying yes, this is one of your paintings?

A    That is one of my paintings also sold but I don't remember who. I've been doing this -- I've been doing this for three decades so. I've been selling works for three decades. So, I really don't know who specifically owns any of the paintings. Some of the images I do but some I don't.

MR. DUFF: I'm not so much interested in who purchased them, but I'm more interested in how they were sold.

Q    Do you know whether this painting was sold through a gallery or through you individually?

A    It was -- it showed at the Allan Stone Gallery on the Upper East Side. I'm not sure how it was sold.

Q    Do you have any idea when it was sold?

A    I do not.

MR. DUFF: I have nine of these. We are about to be on three. I'm

Page 58

SCOTT GOODWILLIE

getting the hang of it here.

THE WITNESS:  Okay.

Q     Do you see that?

A     Yeah.   That's kind of the reverse image of the other one, the Ganesha-type.   Same pose just reversed.

Q     Just to be clear, this is one of your paintings?

A     It is.

Q     Do you know if this one sold?

A     It sold but I don't recall when or through which gallery.

MR. DUFF:  Those were two of my favorites, for whatever it's worth. I'm not an art critic.

THE WITNESS:  Thank you.

Q     Is this one of your paintings?

A     Yes, it is.

Q     Do you recall if this was sold?

A     Yes.

Q     Do you recall when this was sold and how it was sold?

A     That was the beginning of my representation with Eleanor Ettinger Gallery in

SA1860

Page 59

SCOTT GOODWILLIE

Soho.  I think that might have been 20 years ago.

MR. DUFF:  Jana, I have these photographs numbered.  I think we should be marking them.

MS. FARMER:  We only had Exhibit 1 marked so we can mark them consecutively.

(Whereupon, at this time, the above-mentioned Nine photos were marked by the reporter as Defendant's Exhibits 2 through 10, for identification, as of this date.)

Q    Is this painting one of yours?

A    It looks like one of my very, very old paintings.  I probably -- oh, my God.  I think it is.  I'm pretty sure it is.  I do not recall when -- I was probably 20 years old or something when I did that.  Maybe a little older.  It was before -- it was before my professional period.  I was doing a lot of images like that.

MR. DUFF:  It looks good to me.

Page 60

SCOTT GOODWILLIE

THE WITNESS:  Thank you.

Q    Do you recall if this sold and, if so, how it was sold?

A    I don't recall how it was sold. Where did you find that anyway?  I didn't even know that was online.

Q    I'm trying to learn about you for today, and that's part of the reason I want you to verify because for all I know --

A    Yeah, that looks like something in the style I was working in many years ago.

Q    Do you see this next painting?

A    Yes.

Q    This is one of your paintings?

A    It is.

Q    Do you recall if this painting sold and, if so, how it sold?

A    I sold that privately.

Q    You sold that individually?

A    Yes.

Q    Do you recall when you sold that painting?

A    Many years ago, but I don't recall exactly.

SA1862

Page 61

SCOTT GOODWILLIE

Q     When you say "many," do you mean 20 years ago, ten years ago?

A     No.  Probably ten to 12 years, maybe a little more.  I don't remember.

MR. DUFF:  Moving right along.  I only have a couple more of these.

THE WITNESS:  Oh, geez.  Sorry.

I think I was 18 when I did that.

Q     This is one of your paintings?

A     Yes, it is.

Q     Do you recall if you sold this painting?

A     I am sure I did, but I don't recall to who and the circumstances.

MR. DUFF:  We've got two more of these left.

Q     Is this one of your paintings?

A     Yes.

Q     Do you recall this if painting was sold and, if so, when and how?

A     It sold through a gallery.  I forget the name in Mexico City.

Q     Do you recall when?

A     Maybe 20-something years ago.  I

SA1863

Page 62

SCOTT GOODWILLIE

don't recall. I really don't. That was -- I did that as a commission. The gallery owner in Mexico City asked me to do the painting.

Q    I'm now sharing the last image.

A    Yes; that's mine.

Q    Do you recall if this painting was sold?

A    It was sold but I don't recall to who.

Q    Do you recall the year during which it was sold?

A    Maybe late 90s, early 2000s. I'm not sure.

MR. DUFF: Thank you very much. I appreciate you being here and answering our questions. I have no further questions.

THE WITNESS: Okay. Thank you.

MS. FARMER: If there is nothing further then, Mr. Goodwillie, we'll be sending you a copy of the transcript of today's deposition.

THE WITNESS: Oh, by the way. Did you -- I can -- I looked at a

Page 63

SCOTT GOODWILLIE

letter and it's 5038 Foxwood Drive, 29418, Charleston, South Carolina.

MS. FARMER: Do you prefer that we send to this address by mail?

THE WITNESS: By mail is fine.

MS. FARMER: Alright, we'll do that. Okay.

(Whereupon, at 1:45 P.M., these proceedings were concluded.)

-------------------------------

SCOTT GOODWILLIE

Subscribed and sworn to

before me on this _____day

of _____, 2022.

_____
NOTARY PUBLIC

Page 64

SCOTT GOODWILLIE

I N D E X

| WITNESS | EXAMINATION BY | PAGE | LINE |
|---------|----------------|------|------|
| SCOTT GOODWILLIE | MS. FARMER | 7 | 25 |
| SCOTT GOODWILLIE | MR. DUFF | 53 | 14 |

| REQUESTS | | PAGE | LINE |
|----------|--|------|------|
| Provide e-mails. | | 28 | 16 |

INDEX TO DEFENDANT'S EXHIBITS

| EXHIBIT | DESCRIPTION | PAGE | LINE |
|---------|-------------|------|------|
| Exhibit 1 | 6/7/2022 letter | 13 | 25 |
| Exhibits 2 through 10 | Nine photos | 59 | 16 |

**SA1866**

Page 65

SCOTT GOODWILLIE

CERTIFICATION

I, ANITA M. CUMMO, a notary public in and for the State of New York, do hereby certify:

THAT the witness whose testimony is hereby before set forth, was duly sworn by me; and that the within transcript is a true record of the testimony given by said witness.  I further certify that I am not related, either by blood or marriage, to any of the parties to this action; and

THAT I am in no way interested in the outcome of this matter.

IN witness whereof, I have hereunto set my hand this nineteenth day of October, 2022.

*Anita M. Cummo*

_____

ANITA M. CUMMO

Page 66

ERRATA SHEET

VERITEXT/NEW YORK REPORTING, LLC

1-800-727-6376

330 Old Country Road        7 Times Square

Mineola, New York          New York, New York

Name of Case: Trombetta v Novocin, et al

Date of Deposition:  10/6/2022

Name of Deponent:  Scott Goodwillie

PAGE LINE            CHANGE                    REASON

---- ----   -----------------------   ----------

---- ----   -----------------------   ----------

---- ----   -----------------------   ----------

---- ----   -----------------------   ----------

---- ----   -----------------------   ----------

---- ----   -----------------------   ----------

---- ----   -----------------------   ----------

---- ----   -----------------------   ----------

---- ----   -----------------------   ----------

---- ----   -----------------------   ----------

                          _____
                          SCOTT GOODWILLIE

SUBSCRIBED AND SWORN TO BEFORE

ME THIS ___DAY OF_____, 2022.

_____       _____
NOTARY PUBLIC               COMMISSION EXPIRES

[& - answering]                                                        Page 1

| & | | | |
|---|---|---|---|
| **&** 2:8 | **20** 12:15 16:5 44:21 53:20 59:2,20 61:2,25 | **57th** 13:2 | **advise** 45:9 46:4 |
| | | **59** 64:12 | **advised** 45:17,25 46:5 |
| **0** | **20,000** 24:12,13 | **6** | **affect** 30:6 41:11 45:2 54:12 |
| **000074** 14:10 | **200** 9:19 | **6** 1:11 33:19 36:19 | **affirmed** 4:3 |
| **00993** 1:5 | **2000s** 62:13 | **6/7/2022** 13:21 64:11 | **ago** 45:22 51:13 56:16 59:3 60:12,24 61:3,3 61:25 |
| **1** | **2002** 18:24 19:10 19:14,16,18 | **7** | |
| **1** 13:17,23 31:2 38:7 59:8 64:11 | **2003** 20:2,10 | **7** 64:4 66:4 | **agree** 6:7 |
| **1-800-727-6376** 66:3 | **2012** 27:8 | **7th** 15:2 | **agreed** 3:6,11,14 3:18 |
| **10** 59:13 64:12 | **2013** 27:8 | **8** | **ahead** 55:24 |
| **10/6/2022** 66:6 | **2015** 16:7 17:10 19:18 21:3 22:5 23:5 27:9 38:20 39:2,4 43:19 48:12 49:12 50:11,24 52:11 | **8,000** 47:23,24 48:2,6,18 | **ahern** 18:19,25 19:12 |
| **10025** 9:20 | | **8500** 47:24 48:2 48:4,18 | **al** 66:6 |
| **10128** 2:5 | | **9** | **alive** 12:24 |
| **10604** 2:9 | | **90s** 22:3,4,25 62:13 | **allan** 57:18 |
| **11101** 2:16 | **2022** 1:11 15:2 33:21 63:15 65:15 66:22 | **96th** 2:4 | **alright** 63:7 |
| **1133** 2:9 | | **98** 10:17 | **amateur** 38:22 |
| **12** 61:4 | **21st** 33:21 | **99th** 9:19 | **amateurs** 39:25 |
| **1217** 2:15 | **25** 64:4,11 | **a** | **anderson** 2:17 4:20 |
| **12:25** 1:11 | **28** 64:7 | **able** 8:12 13:25 | **anita** 1:17 5:14 65:4,20 |
| **12r** 2:4 | **29418** 63:3 | **accident** 54:24 | |
| **13** 64:11 | **3** | **accompanying** 8:22 | **annamarie** 1:3 2:4 4:13 15:9 16:4,16 24:24 25:12 30:3 31:8 31:24 32:8,18 35:7,12 48:22 49:4,9,14 |
| **14** 64:4 | **330** 66:4 | **accurate** 19:2 38:23,24 | |
| **16** 64:7,12 | **3e** 9:19 | **accurately** 6:16 | |
| **175** 2:4 | **4** | **acquaintance** 13:4 | |
| **18** 1:5 61:9 | **40** 8:23 | **action** 65:11 | **annual** 48:11 |
| **181** 36:17 | **43-10** 2:15 | **adam** 2:11 | **answer** 6:22 7:10,19 51:23 |
| **19701.00006** 2:11 | **45** 1:15 | **addition** 10:19 | |
| **1972** 34:7 35:9 | **4940** 65:18 | **address** 8:4 9:18 28:12,13 63:5 | **answering** 46:13 55:10 62:17 |
| **1982** 10:24 | **5** | | |
| **1996** 10:16 | **5038** 8:5 9:12 63:2 | | |
| **1:45** 63:9 | **53** 64:4 | | |
| **2** | | | |
| **2** 59:13 64:12 | | | |

[answers - cacciola's]                                          Page 2

answers  5:21
  6:13
anybody  26:24
anymore  34:19
anytime  7:21
anyway  60:6
apartment  2:4
  9:19 54:25
apologize  9:16
apparently
  23:24 24:4
applied  44:25
appraisals  50:4
appreciate  53:8
  53:10 55:9
  62:16
approached  13:6
  13:9 23:5
april  15:2
area  43:4
arnot  18:20,24
  19:11,14,25 20:3
arrange  23:16
arrive  32:23
art  13:2 18:20
  20:3,9 24:2,20
  25:6,7 28:24
  29:5,9 38:19
  40:3 42:9,15
  48:7,11 58:16
artist  9:22 15:8
  38:23 39:7,20
  40:8,11,16 41:4
  41:5,8,20 43:22
  43:24 45:8 52:3
  52:16
artist's  20:17

artists  15:15,17
  15:18 16:25
  39:10 52:11
artprice  42:16
artwork  21:4
  23:14 26:11
  27:23 28:18
  38:21 39:14
  40:20 41:18,21
  43:22 44:24
  48:8 50:2 52:9
  52:12,13 53:15
artworks  20:19
  40:11 41:10
  47:21 49:8
askart  42:16
asked  7:18 62:4
asking  5:17 7:3
  54:7
assael  12:23
assist  50:25
assume  7:11
  37:24
atelier  10:12,20
attend  31:16
attended  11:2
  12:22 16:7,15
  17:9
attest  44:12
attorney  4:8,17
  4:21,25
attorneys  2:8,14
attributed  23:25
  24:9 32:18
auction  40:24,25
  41:25 56:17,18
auctions  1:7
  2:15 4:16,22

37:17,20
august  31:4
avenue  2:9 16:9
average  50:15
aviano  10:13,15
avoid  41:9
aware  21:15
  50:4,10 53:2

            b

back  7:8 11:10
  13:14 19:14
  23:10 30:25
  38:5,11 48:12
  52:11
background  9:3
bad  44:22
based  30:8 44:9
basically  26:3
  47:3,6 54:25
basis  42:10
bates  14:9,10
bearing  53:8
beautiful  48:25
becoming  28:23
beginning  58:24
behalf  17:22
  18:10,14,18 19:2
  19:12 26:15
believe  12:22
  26:23 27:25
  28:20 31:14
  32:3 33:3 34:21
  35:20 53:19
belongs  41:18
best  6:8 12:23
  41:5 46:13
  55:25

better  8:14
  11:14,22 14:4
  43:5
bialek  2:11
biographical
  52:15,18
biography  51:15
  51:19,21 52:6
bit  11:3
blood  65:10
blown  34:19
  56:8
bonded  15:19
break  7:16,20
breaker  47:6
breaking  42:12
  43:3
bridge  48:25
broke  19:5
brought  55:8
bucks  24:14
business  22:16
  27:13,16 29:5,9

            c

c  2:2 4:2 11:4
cacciola  19:21
  21:7,18,22 22:11
  22:13 23:6,12,21
  24:21 25:8,12,16
  25:21,25 26:6
  28:22 29:8
  31:14 32:3
  45:17,25 46:20
  46:25
cacciola's  22:9
  22:15

[cachet - data]                                                                        Page 3

cachet  39:25
career  20:17
  29:24
carolina  8:6 9:13
  9:15,16 63:3
case  50:13,20
  66:6
casts  44:23
central  49:2
certain  21:12
certainly  26:6
certification  3:8
  65:2
certify  65:5,9
cetera  30:7
  42:17
chain  28:14
chance  26:21
change  66:8
charcoals  55:6
charge  3:21
  47:21
charleston  8:5
  9:13 55:4 63:3
check  8:23 28:7
  38:11
chelsea  17:21
  18:13,17 21:19
  23:6,10
circumstances
  35:5 61:15
city  2:16 16:9
  21:20 61:23
  62:4
civil  1:15
clarify  23:4
classically  15:17

clear  58:8
click  33:4
clicked  32:25
clients  30:6
closed  28:22
closing  48:3
club  16:8
colleague  15:9
  15:11 16:2
colleagues  50:19
collector  24:11
  24:12 40:16
  41:19 47:25
collectors  20:20
  30:6 39:22
  40:20 41:9,14
college  10:18
come  29:25 34:4
  38:11
commenced  4:12
commission  62:3
  66:23
common  44:18
  44:18 45:2
  52:10
communicating
  50:12
communication
  30:17
communications
  30:19
company  15:15
  15:22 33:10
completely  6:25
  7:9
concerned  11:13
concluded  63:10

confirm  8:18
  15:21 16:2,22
  30:11 32:12
  44:7 55:16
confirmed  16:6
connected  12:25
connection
  11:14 13:7,12
  22:12 23:23
consecutively
  59:9
considered
  38:22
contact  49:15
  54:4,4
contacts  21:5,10
  21:13
continued  50:12
control  40:16
  41:4,16,17
conversation
  5:11 6:15 23:20
  25:2,3
copy  3:20 62:22
copyright  51:21
copyrighted
  51:19 52:19
corning  20:4
corporation  1:7
  2:8 4:17,18
correct  9:14,23
  11:8 12:5,10,11
  15:10,23,24 17:7
  17:8 21:23 22:6
  22:7 26:8,13
  27:10,11 30:9,13
  32:14,15 36:11
  36:12 37:25

38:2 40:13,14,17
  40:18 41:6,7,16
  43:20,21 44:11
  46:18 47:8,9
  48:18,19 50:13
  50:14,22
correspondence
  27:18
counsel  3:7,19
country  66:4
couple  24:14
  50:17 61:7
court  1:2 3:17
  5:15,25 7:8
covid  8:11
crescent  2:15
critic  58:16
crux  24:7
cube  28:25
cummo  1:17
  5:14 65:4,20
curate  47:5
curious  53:16
currently  27:13
  36:6 54:2,5
cv  1:5

                d

d  4:2 64:2
dana  26:16
daniel  26:18,18
  26:19,21 27:18
  27:19,23 28:3,17
  28:18 29:4,11
  30:12,20 32:11
  46:3,5,20,25
data  42:10

[date - exhibit]                                                    Page 4

date  13:18,24
  31:20 34:9 38:8
  59:15 66:6
dates  22:4 23:2
day  63:14 65:15
  66:22
deal  47:6
dealer  22:19,24
  28:23 29:5,9
  30:4 40:3
dealers  29:2
  40:6 41:3 44:19
dealt  41:21
decades  57:6,7
decision  47:4
decrease  49:12
defendant  2:8
defendant's
  13:17,23 33:19
  59:13 64:9
defendants  1:8
  1:14 2:14
definitive  46:15
definitively  25:6
  25:11 46:17
degree  10:22
degrees  10:19
deponent  66:7
deposed  5:6
deposition  1:13
  3:9,15,21 28:14
  33:20 62:23
  66:6
describe  6:6
description
  37:16 64:10
designated  4:11

devalue  40:5
developed  39:23
dicker  2:8
different  33:15
  53:22
difficult  37:14
  40:15
difficulties  5:11
difficulty  10:5
  11:9 19:3 42:24
direct  19:20 52:7
directly  54:5
director  18:20
  18:25 19:12,14
  24:2,20 25:7,8
  26:17
directors  31:15
disconnected
  10:7
discovered  44:4
discussing  31:3
discussion  12:2
  18:4 30:23
  46:20,22 49:21
  56:5
discussions
  25:25 44:9,19
  50:11,21
district  1:2,2
document  14:7,8
  33:23,25 34:5
documents
  14:12
doing  27:19 40:7
  55:6 57:5,6
  59:23
double  38:11

drive  63:2
due  47:23
duff  2:14,17 4:20
  11:17 53:4,7,13
  55:7,12,19,25
  57:11,24 58:14
  59:4,25 61:6,16
  62:15 64:4
duly  4:3 65:7

        e

e  2:2,2 4:2 11:4,4
  13:14 14:15,22
  14:25 15:5
  18:22 19:9
  27:17,24,25 28:2
  28:8,12,13,17
  29:12,14 31:2
  44:2 64:2,7
earlier  15:2 31:3
  53:20
early  62:13
east  2:4 57:19
ebay  24:2,7,10
  24:14 25:13,18
  25:21 29:23,25
  30:12 31:7,23
  32:13 36:9,15
  37:10 38:14,16
  38:21 39:14,15
  39:16,17,18,18
  39:25
edelman  2:8
education  10:2
  10:11
effect  3:16 30:2
effects  29:23

either  65:10
eleanor  58:25
elmira  18:21
elser  2:8 4:9
encouraged
  47:11
ended  44:13
  45:4
england  39:23
ensure  41:5
errata  66:2
especially  41:10
esq  2:10,11,17
essentially  39:25
  55:5
estate  1:7 2:14
  4:16,22 37:17,20
et  30:6 42:16
  66:6
ettinger  58:25
everybody  7:2
  11:13,16
exact  22:4 23:2
  40:25
exactly  34:21
  60:25
examination
  7:24 53:13 64:3
examined  3:19
  4:4
example  53:21
exchange  28:3
exhibit  13:17,23
  20:3,6,11,14,23
  31:2 33:15,19
  36:19 38:7 59:7
  64:10,11

[exhibited - goodwillie]                                            Page 5

| | | | |
|---|---|---|---|
| exhibited 20:10 | 49:20 51:22 | forth 13:14 65:7 | 31:12 42:23 |
| exhibition 16:8 | 53:3 56:3 59:7 | forthright 53:10 | 43:17 44:14 |
| 16:14,15,16,21 | 62:20 63:4,7 | found 23:25 24:6 | 45:5,9 46:3,5 |
| 17:10,15 19:19 | 64:4 | 24:13 25:13 | 52:4 54:3,5,10 |
| exhibitions | favorites 58:15 | 31:7,23 32:5 | 54:14,18 57:16 |
| 16:24 | federal 1:15 | 34:13 38:14,15 | 57:19 58:13,25 |
| exhibits 20:23 | feel 8:12,12,13 | 40:5 55:13 | 61:22 62:3 |
| 59:13 64:9,12 | fell 49:5 | four 55:3 | gallery's 44:8 |
| exist 42:10,15 | fiancee 54:24 | foxwood 8:5 | 54:6 |
| experience 30:9 | field 15:19 38:19 | 9:12 63:2 | ganesha 58:6 |
| 40:19 44:13,16 | file 2:11 | free 36:23 42:6 | geez 61:8 |
| 47:17 | filing 3:8 | front 12:25 | general 17:15,17 |
| experienced | find 33:5 34:9 | froze 5:2 | generally 40:9 |
| 10:5 11:9 19:3 | 60:6 | full 7:25 9:6 | gentleman 26:19 |
| 42:24 | finds 43:22 | 34:25 | 26:20 |
| expires 66:23 | fine 7:9 11:17,18 | furnished 3:20 | gesture 5:24 |
| **f** | 63:6 | further 3:11,14 | getting 58:2 |
| fact 4:11 18:12 | finish 10:14 | 3:18 16:4 17:3 | give 5:8 13:6 |
| 18:23 19:10 | first 4:3 7:19 | 20:23 62:18,21 | 46:14 |
| 30:4 42:14 44:7 | 12:13 16:7,13,14 | 65:9 | given 65:9 |
| fair 6:25 7:13 | 16:16,18,19,20 | future 40:4 | giving 19:13 |
| 46:16 | 37:15 38:4,6 | **g** | go 15:4 24:11 |
| far 22:19 37:4 | 50:23 53:14 | g 4:2 | 33:4 35:13 |
| farmer 2:10 4:6 | five 54:18,19,21 | galleries 21:17 | 39:21 43:3 |
| 4:7 5:5,8 6:5,12 | follow 25:24 | 28:24 32:5 40:9 | 47:14 53:24 |
| 6:24 7:15,24 | 26:5,7 | 44:4 45:15 | 55:24 |
| 8:13 9:2 10:6 | follows 4:5 | 49:24 50:12,24 | god 59:18 |
| 11:12,20,25 12:4 | foot 55:3,3 | gallerists 17:21 | goes 53:20 |
| 13:16 14:3,6,17 | force 3:16 | 18:10,13,17 31:6 | going 5:8 7:11 |
| 19:4 21:16 23:4 | forever 45:6 | 31:23 38:14 | 9:2 11:11 13:16 |
| 24:15 28:6 | forget 26:17 | gallery 16:8 | 13:18 14:18 |
| 30:22,25 33:13 | 33:9 40:25 | 17:19,24 19:22 | 15:4 26:9 30:25 |
| 33:17 34:4 | 61:22 | 19:22 21:8,19,22 | 31:16 33:13 |
| 35:21 36:21 | forgive 54:16 | 22:10,16 24:2,20 | 39:20 55:21 |
| 37:13 38:5,10 | forgot 56:17 | 25:7,8 26:9,10 | good 40:20 54:6 |
| 42:13 43:9,12 | form 3:12 32:23 | 26:14,25 27:3,12 | 59:25 |
| 45:24 46:10 | 39:19 | 28:22 29:2 31:9 | goodwillie 1:13 |
| | | | 4:1 5:1 6:1 7:1 |

[goodwillie - january]                                          Page 6

| | | | |
|---|---|---|---|
| 8:1,3 9:1,6 10:1 11:1 12:1 13:1 14:1,15 15:1 16:1 17:1,23 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 62:21 63:1,12 64:1,4,4 65:1 66:7,19 | happened 22:21 23:22 29:20 happening 6:6 happens 6:12 happy 7:5 hard 24:23 41:16 head 5:23,24 hear 8:14 10:9 12:4,6 19:6 30:12 43:9,13 held 1:16 12:2 30:23 49:21 56:5 help 49:14 helpful 28:10 henry 11:4,5,5 hereto 3:7 hereunto 65:14 high 10:22,23 11:2 | **i** idea 42:2 48:4 49:18 57:21 identification 13:24 59:14 illinois 11:6 illness 8:9 image 32:21,23 55:20 56:10,24 58:6 62:5 images 55:15 57:9 59:24 important 5:20 impossible 6:19 impressed 17:4 17:13 include 52:14 | initial 23:20 25:4 30:17 initially 30:15 interest 44:5,8 interested 21:18 23:19 28:21 30:5 31:10 40:10 57:12,13 65:12 internet 32:17 39:6,8,11 44:3 44:13 47:4,12,18 50:9 introduce 52:3 introduced 27:22 50:23 |
| google 49:15 google's 49:16 graces 54:6 graduated 10:23 grand 53:20 ground 5:9 growth 20:17 guess 35:22 46:7 guessed 14:17 | highest 9:25 10:10 hogan 2:14 home 8:4 hope 8:13 horrible 24:13 hosted 12:23 house 40:24,25 41:25 43:4 56:17,18 | included 20:2,6 income 49:12 incorrectly 54:17 independently 33:5 index 1:5 64:9 individually 54:14 57:17 60:20 | introducing 49:25 introduction 18:24 19:11,13 19:16,25 20:7 25:4 31:6,13,17 32:10 introductions 19:17,20 23:17 inventory 54:8 |
| **h** h 11:4 haddad 26:21 hand 65:15 hang 58:2 | huh 6:18 hum 6:18 hundred 24:14 24:14 | inexpensive 32:19 inferior 24:10 information 19:21 21:7,14 37:4 39:7,10 48:14 49:16 52:15,19 informed 17:18 17:23 | island 2:16 isolate 39:15 issue 15:20 50:25 itinerary 48:9 **j** jana 2:10 4:7 56:2 59:4 january 16:7 17:10 |

[jersey - meant]                                                                 Page 7

| | | | m |
|---|---|---|---|
| jersey 22:18,24 | 47:22 48:7,10,14 | link 32:20,23,25 | |
| 23:7,8 | 48:20,23 49:5,8 | 33:8 44:13 | m 1:17 65:4,20 |
| john 18:19,25 | 49:11,13 50:7,18 | links 33:5 | magnified 14:6 |
| 19:12,21 21:7,18 | 51:4,7,18,20,22 | list 30:6 | magnifying 14:4 |
| 21:22 22:9,11 | 52:9,18,23 56:14 | listing 30:13 | 33:23 |
| 23:5,21 25:8,11 | 57:8,15 58:11 | 31:7,23 32:5,9 | mail 14:15,22,25 |
| 25:15,20 26:6 | 60:7,10 | 32:13,13,17 33:5 | 15:5 18:22 19:9 |
| 28:22 29:8 | knowing 55:9 | 35:10 37:8,11,16 | 27:17,24,25 28:2 |
| 31:14 45:17,25 | knowledge 44:19 | 38:14 44:4 | 28:8,12,13 29:12 |
| 46:25 | 46:14 | 47:11,17 49:16 | 29:14 31:2 44:2 |
| josiah 2:17 | known 16:5 | listings 51:2 | 63:5,6 |
| justice 55:22 | 17:15 | litigation 14:11 | mailed 28:17 |
| **k** | **l** | little 5:10 39:24 | mails 13:14 64:7 |
| keep 5:21 14:12 | l 4:2,2 | 41:11 59:21 | maintain 9:18 |
| kept 13:3 | lady 26:19 | 61:5 | 22:12 |
| kind 34:10 53:14 | lane 8:5 9:13 | llc 66:2 | making 32:10 |
| 58:5 | late 22:3,3,4 | llp 2:8,14 | marie 4:15 |
| knew 17:21 32:7 | 31:4 62:13 | located 21:19 | marine 1:6 |
| 48:5 | law 4:8 | log 42:3 | mark 13:16 59:8 |
| know 7:4 11:7 | lawsuit 4:12 | long 2:16 | marked 13:22 |
| 12:9,17 20:18,22 | 13:8,13 | longer 22:5,16 | 33:18 59:8,12 |
| 20:25 22:15,17 | league 13:2 16:8 | 27:10 29:6 31:9 | market 40:12,13 |
| 22:19,20,23 23:9 | learn 29:25 60:8 | look 35:9 40:4 | 40:21 41:4,12,15 |
| 23:18 24:8,17 | lecture 12:23 | looked 36:4 | 41:22 42:15 |
| 25:11,15,20,23 | left 55:13 61:17 | 62:25 | marking 59:6 |
| 25:24 27:12,15 | legal 9:6 | looking 30:12 | marriage 65:10 |
| 27:19 28:5,8,9 | letter 13:6,9,12 | 36:10,19 53:15 | master 10:4 |
| 28:11,11,15 29:4 | 13:15,21 38:4,6 | looks 6:3 59:17 | matter 8:20 24:8 |
| 29:7,8,22 30:15 | 63:2 64:11 | 59:25 60:11 | 33:21 65:13 |
| 30:15 31:19,25 | level 10:2,10 | lost 10:6 48:17 | mean 6:17 15:13 |
| 32:6,9 33:7,22 | life 44:25 | 48:20 52:22,24 | 16:14 25:8 32:4 |
| 35:16,19,23 | light 44:23 | 54:23,25 | 32:13 45:6 |
| 37:19 38:15,17 | liked 29:17 | lot 28:23 39:10 | 46:23 48:5 |
| 40:23 42:22 | 30:15,18 | 39:10 43:11 | 50:18 61:2 |
| 43:2,13,16,18,19 | line 37:15 64:3,5 | 59:23 | meaning 15:25 |
| 44:9,20 45:14,16 | 64:10 66:8 | low 39:19 | means 6:20 |
| 46:9,10 47:7,20 | | ludicrous 34:10 | meant 39:5,9 |

[measures - paintings]                                                    Page 8

measures  44:25
medical  50:8
medication  8:9
meet  12:13,21
meetings  23:17
memory  35:22
mentioned  1:16
  8:11 13:21 21:6
  21:16,23 26:10
  41:3 52:10
  59:11
met  12:16
mexico  61:23
  62:4
michael  10:13
mid  22:4
mind  6:21 10:9
mine  62:6
mineola  66:4
misattributed
  45:10,18 46:2,6
missing  21:13
mobile  33:22
money  41:11
month  50:17
months  21:2
moskowitz  2:8
moved  55:2
moving  61:6
museum  12:25
  18:21,25 19:11
  19:14,25 20:3,15
  49:23

**n**

n  2:2 11:4,4 64:2
naive  53:15

name  4:7 7:25
  9:7 11:2,5 26:17
  26:23 31:8,24
  33:10 56:18
  61:23 66:6,7
names  9:10
nature  46:21
need  7:22 24:17
needed  42:6
negative  44:23
never  5:7 37:24
  40:2 52:21
new  1:2,17 2:5,5
  2:9,16 4:4 9:19
  9:20 16:9 18:21
  20:4 21:19
  22:18,23 23:7,8
  65:5 66:2,4,4,4
nine  34:8 55:15
  57:24 59:11
  64:12
nineteenth  65:15
nod  5:23
non  1:13
norb  1:6 4:15
  33:20
normally  5:12
  5:22
north  9:13
notary  1:17 3:15
  4:3 63:17 65:4
  66:23
novocin  1:6,6
  2:14 4:15,15,22
  33:20 66:6
number  17:6
numbered  59:5

numbering
  14:11

**o**

o  4:2,2,2
objections  3:12
obvious  39:12
obviously  25:19
  44:24 54:3,8
  55:20
october  1:11
  65:15
offered  17:20
offering  18:9
offices  4:9
oh  38:3 42:25
  50:17 51:13
  56:23 59:18
  61:8 62:24
oil  35:10 55:21
okay  6:22,23
  7:22 11:12,15
  14:5,13 15:6
  28:16 33:16
  34:2 35:25 38:9
  43:7,14,15 47:3
  52:2,2 53:6
  55:18,23 58:3
  62:19 63:8
old  34:9 36:11
  59:18,20 66:4
older  59:22
once  26:3 28:17
  28:21 41:17
  44:4
ones  40:7
online  38:22
  39:14,19,19,20

40:3,21 41:10,25
43:23 44:22
52:10 53:16
60:7
opening  16:12
opportunities
  20:24
opportunity
  45:13
order  11:13
  49:15
original  35:9
outcome  65:12
outside  18:17
owner  31:9 62:3
owns  57:8

**p**

p  2:2,2
p.m.  1:11 63:9
page  14:8 33:25
  64:3,5,10 66:8
painters  12:24
painting  23:25
  24:5,5,13 25:13
  25:16,17 32:18
  34:25 35:10
  36:4 45:9,17
  46:2,6 47:24
  48:23,25 49:6
  52:23 54:7,10
  55:2,5,21 56:15
  57:15 59:16
  60:13,17,23
  61:13,20 62:4,7
paintings  35:20
  53:19,25 54:20
  54:22 55:17

[paintings - realist]                                                    Page 9

57:3,4,9 58:9,18
59:18 60:15
61:10,18
paragraph  21:2
park  16:9 49:2
part  20:10 40:2
  60:9
particular  15:20
  21:17 39:16
  40:22 44:20
particularly
  38:20,21 39:3,14
parties  3:7 65:11
party  1:13 52:14
password  42:3
pastels  55:6
pay  24:13
pdf  33:2,3,8
  34:12,15,18
  35:13 36:7,13,19
  36:24
people  5:13 54:4
perfectly  12:7
performed  50:5
period  59:23
person  5:19
  12:17 22:8
  27:23 31:17
personal  30:8
  31:5,13 44:13,16
  47:16 54:23
personally  54:21
persons  22:9
pervasive  39:7
philadelphia
  41:2 56:18
phone  14:2

photographs
  23:13 26:11
  59:5
photos  21:3
  59:11 64:12
physical  13:15
  29:2
picture  34:19
pictures  28:18
  34:19
piece  54:13
pieces  17:6
place  1:16 18:4
plains  2:9
plaintiff  1:4 2:4
  4:24 14:9
plaintiff's  50:5
platform  38:22
  39:15,24 43:23
platforms  40:21
  41:10
please  6:21 7:4
  7:25 19:7 28:7
  44:15 46:7
point  1:7 7:15
  15:22 34:7 39:8
  51:12,16
pointing  6:9,10
poorly  24:5
pose  58:7
possibilities
  44:14 45:5
possible  45:8
  47:12
posting  29:23
  30:2 34:13 45:4
  50:9

prefer  63:4
present  5:14 8:4
presented  21:3,7
  21:14
presently  9:12
prestige  20:16
prestigious  20:2
presume  42:8
  45:11 50:19
pretty  59:19
preventing  8:7
previously  33:18
  36:8
price  25:17
  36:14,22,25 42:2
  42:7,10 43:23
  48:7 54:12
prices  41:5
  42:16 47:20
  48:6
primary  40:12
private  10:3,12
  10:20 22:18,24
  28:23
privately  60:19
pro  2:4 4:23
probably  22:3
  47:23 59:18,20
  61:4
procedure  1:15
proceeding  1:10
  6:24 7:16
proceedings
  63:10
process  5:10
professional
  15:7 24:8 38:19
  52:11 59:23

provide  19:21
  64:7
public  1:17 3:16
  4:3 63:17 65:4
  66:23
pull  15:5
purchase  53:18
purchased  57:12
purchasing
  53:24
purple  49:3
purposes  42:15
pursuant  1:14
  8:17
purveyance  39:5

q

quality  24:6
question  3:12
  6:17 7:5,7,10,12
  7:18,19 12:8
  14:21 19:6
  31:10 37:19
  43:8 51:23,24
  54:7
questions  5:21
  7:3 9:3 53:4,5
  53:12 62:17,18

r

r  2:2,11
ra  1:5
reach  18:12,16
reached  18:19
read  7:8 44:3
reading  12:18
  51:14
realist  12:24

[really - scott]                                                                    Page 10

really  8:10 10:17
  30:14 40:7
  43:10 53:10
  57:8 62:2
reason  7:21
  22:20 36:18
  55:3 60:9 66:8
recall  10:16,17
  12:12,14,21
  14:25 16:10,11
  16:18 17:2 18:3
  18:5,8,9 19:13
  20:5,9,13 21:25
  22:8 23:18
  24:23,25 25:14
  29:11,17 30:14
  51:9,14,17 58:12
  58:20,22 59:20
  60:3,5,17,22,24
  61:12,14,20,24
  62:2,7,9,11
receive  8:19
  34:15
received  8:23,24
reception  43:5
recommend  54:9
record  8:2 10:25
  11:25 12:3
  30:22,24 36:11
  49:20,22 56:4,6
  65:8
records  25:18,21
reference  42:10
referenced  52:23
referencing
  42:16
referring  17:14
  21:9 32:2 42:7

44:17
related  65:10
relation  29:13
relocated  22:17
  22:23
remember  25:6
  29:22 35:24
  36:2 46:17
  49:25 56:19
  57:5 61:5
remove  47:17
  49:15
removed  47:12
reopened  45:12
repeat  7:6,7 19:8
  42:13 43:14
repeating  10:10
rephrase  7:5
reporter  5:15,25
  7:8 13:22 59:12
reporting  66:2
represent  14:7
  37:15 47:5
representation
  17:20,25 26:2
  45:5,13 58:25
representational
  15:18 20:3
represented  4:24
  23:3 42:23
  43:17 54:3,17
representing
  3:19 4:18,21
  24:3
reputation  44:14
  45:2
requests  64:5

research  24:4,20
  24:21 25:12,16
reserved  3:13
reside  9:12
residual  29:23
  30:2
respective  3:7
respond  28:19
responded  29:12
  47:2
response  29:16
result  19:24 20:6
  20:14 50:9
resulted  20:23
retail  20:16
reverse  58:5
reversed  58:7
right  13:4,19
  14:17 17:7 25:3
  26:7,12 36:19
  41:12,13 44:10
  52:20 61:6
road  66:4
role  5:15
room  5:19 55:3
rule  1:15 7:17
rules  1:15 5:9

s
s  2:2,10 4:2 11:4
saatchi  39:22
saatchi.com
  39:21
sabotaged  44:5,8
sale  36:6,11
  48:17,21 49:4
  52:12,22 54:11

sales  20:14 39:19
  40:7 48:11
  52:10,25
saw  5:18 25:16
  25:21 47:4
saying  24:17
  54:16 57:2
says  5:19 15:7
  16:4,20 17:3,18
  18:23 19:24
  21:2 31:4,22
  36:22 37:17
  38:13,18 44:12
  47:10
schedule  31:12
scheduled  31:20
scheduling  31:5
  31:15
school  10:3,22
  10:23 11:2
scott  1:13 4:1
  5:1 6:1 7:1 8:1,3
  9:1,6 10:1 11:1
  11:14 12:1 13:1
  14:1,15 15:1
  16:1 17:1 18:1
  19:1 20:1 21:1
  22:1 23:1 24:1
  25:1 26:1 27:1
  28:1 29:1 30:1
  31:1 32:1 33:1
  34:1 35:1 36:1
  37:1 38:1,12
  39:1 40:1 41:1
  42:1 43:1 44:1
  44:15 45:1 46:1
  47:1 48:1 49:1
  50:1 51:1,23

[scott - stipulated]                                                     Page 11

| | | | |
|---|---|---|---|
| 52:1 53:1,3,8 54:1 55:1,7 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1,12 64:1,4,4 65:1 66:7,19 | sending 14:25 62:22 | simply 24:16 | source 37:3 |
| screen 4:19 13:25 33:14 | sense 44:18 45:3 | single 15:22 | sources 34:16 |
| se 2:4 4:23 | sent 32:20 34:13 35:7,12 36:13 | sit 25:5,10 29:19 34:24 35:16 | south 8:5 9:15 9:16 63:3 |
| sealing 3:8 | sentence 16:6 18:22 19:9 31:4 31:22 32:2 38:13,18 44:2 47:10 | sitting 5:16 | southern 1:2 |
| second 5:2 10:8 19:5 33:14 | | slc 1:5 | space 23:9 28:25 41:20 |
| secondary 40:13 40:21 41:15,22 | september 33:21 | small 15:19 55:6 55:20 | speak 5:22 9:4 17:20 18:10 22:9 26:14,24 45:14 50:16 |
| see 4:19 13:25 14:3,14 26:16 30:4 34:2,3 36:18 37:14 42:7 56:7,10 58:4 60:13 | service 8:19 | smaller 15:19 | |
| | set 31:20 65:7,14 | soho 59:2 | special 38:25 39:17,18 |
| | seven 55:3 | sold 20:20 24:6 24:10 25:17 36:6,8,15,23 40:11,20,24 41:11,18,22,23 41:25 48:8 49:6 52:9 54:13,20 56:14,16,17,20 56:22 57:5,14,16 57:20,22 58:11 58:12,20,22,23 60:3,4,5,17,18 60:19,20,22 61:12,21,22 62:8 62:9,12 | specific 22:8 |
| | shake 5:24 | | specifically 17:14 44:8 49:25 51:17 52:24 57:8 |
| | share 13:18 33:15 55:14,14 | | |
| | shared 13:14 | | spoke 23:12 24:24 |
| seeing 16:11 56:24 | sharing 33:14 62:5 | | spoken 37:25 |
| seen 17:10 26:4 32:16,20,22 34:25 35:6 40:19,22,23 41:24 | sheet 66:2 | | square 66:4 |
| | show 16:19 17:7 18:6 20:15,16 24:4 27:3 | | stamp 14:10 |
| | showed 23:13 26:10 57:18 | solo 16:7,13,15 16:20,24 17:9 19:18 | stamped 14:9 |
| sees 6:3 | showing 19:23 21:23 22:2,5 27:10 33:17 | | start 36:23 42:3 55:5 |
| sell 35:18,20 36:16 37:4 40:3 40:8 41:9 47:23 48:24 49:9 | | somebody 12:18 24:3,12 41:15 44:23 51:20 | started 55:5 |
| | showings 27:7 | | state 1:17 4:4 7:25 65:5 |
| | shown 20:19 | soon 8:14 47:12 | states 1:2 |
| | shows 40:9 | sorry 8:14 14:21 26:18,18 51:6,25 55:7 61:8 | static 43:11 |
| selling 38:20 39:13 40:10 52:13 57:7 | sick 8:15 | | staticky 43:11 |
| | side 57:19 | | stay 54:6 |
| | signature 34:20 65:18 | sort 52:15 | stepdaughter 54:24 |
| senachwine 11:4 | | | steven 12:23 |
| send 52:5 55:24 63:5 | signed 3:15,16 | sound 11:22 | stipulated 3:6,11 3:14,18 |

[stipulations - trombetta]                                          Page 12

stipulations  3:1
stone  57:19
stop  33:13
stopped  54:25
street  2:4,15
  9:19 13:2
students  13:2
studied  10:12
studies  10:14,19
studio  54:11
style  60:12
subpoena  8:17
  8:19,22
subscribed
  42:19 63:13
  66:21
subscription
  42:6
subsequently
  20:20
substance  29:15
suddenly  43:2
suggestion  47:13
suite  2:15
sum  29:15
summarize
  46:21
summer  21:3
  27:9
suppose  42:18
  48:4
sure  6:7 11:23
  34:22 40:6 43:7
  43:25 45:19,20
  51:16 57:20
  59:19 61:14
  62:14

surface  49:17
switch  11:21,24
sworn  3:17
  63:13 65:7
  66:21
system  14:11

              t

t  4:2,2
take  7:16,20
  18:4 52:12
taken  1:14 33:8
talented  23:15
talk  25:7
talked  32:8
talking  23:24
  24:19 30:3
  34:22 38:7
  49:23
tazza  19:22 21:8
  21:18 26:9,14,25
  27:3,7,12 28:22
  29:21 46:3,5
technical  10:5
  11:9 19:3 42:24
tell  23:22 24:21
  33:24 34:10
  44:15 45:21,24
  46:24
telling  30:18
ten  44:21 61:3,4
test  35:23
testified  4:5
  49:24
testify  8:10,12
testifying  8:8
testimony  65:6,9

thank  4:6 8:16
  38:3 53:7 55:11
  58:17 60:2
  62:15,19
thing  6:12
things  15:5
  44:25
think  22:18 26:3
  27:8 28:20,21,21
  31:15 39:5
  45:13 49:2
  55:12 59:2,5,19
  61:9
thinking  24:3
third  52:14
thought  23:15
  52:21
three  57:6,7,25
thumbnails  56:3
time  1:16 3:13
  9:4 13:20 18:7
  18:20 27:6
  51:10 59:10
times  50:17 66:4
tiny  14:2
today  4:7,10,14
  5:14 8:8,10
  12:24 25:5,10
  29:19 34:24
  35:16 60:9
today's  13:17
  38:7 62:23
told  12:18 15:8
  25:6,11 33:9
  46:17,19 49:5
top  34:5 39:22
  48:7

topic  50:20
touch  24:24 29:6
  37:7,10 54:9
track  14:12
tragedy  54:23
trained  15:17
training  10:3
transcript  62:23
  65:8
transition  55:4
trauma  54:23
treatment  50:8
trial  3:13 36:23
  42:6
tried  31:15
  32:10
troconis  26:22
trombetta  1:3
  2:4 4:13,23 11:8
  11:18 12:9,13,16
  13:4,7,11 14:20
  14:23 15:10
  16:5,16 17:11,16
  17:19,24 18:10
  19:18 20:5,24
  23:13 24:22
  25:2,12 26:2,15
  26:25 28:4,9
  29:13 30:20
  32:19 34:12
  35:12 36:7,13
  37:3 42:22
  43:16 44:10
  45:16 46:4,17
  47:8,11,14,21
  48:10 49:9,15
  50:7,13,16,24,25
  51:4,7 52:24

[trombetta - year]                                                          Page 13

66:6
trombetta's
  15:11 16:23
  18:13,18,25
  19:12 21:4
  23:21 26:11
  27:22 28:13,18
  31:8,24 44:5
  49:12 50:2
  51:15 52:5
true  9:24 65:8
truth  34:11
truthfully  8:8
try  43:7,12
  50:24
trying  29:22
  33:22 41:4
  47:17 60:8
two  21:16 49:24
  58:14 61:16
type  58:6
typical  6:14 9:4
  52:4,14
typically  41:4
  52:19
typing  5:16

              u

uh  6:18,18
ultimately  49:6
unclear  55:19
understand  6:11
  6:19 7:2 9:22
  11:7,11 12:9
  13:10 36:5
  46:12
understanding
  29:20 36:9

understood  6:4
  7:12 36:10
undertake  50:8
unfortunately
  5:25
unhappy  41:23
union  16:8
united  1:2
unpack  24:15
upper  57:19
use  6:13

              v

v  66:6
value  48:3
varies  50:18
verbal  5:22
verbally  6:8,22
  29:12
verify  60:10
veritext  66:2
video  11:15,21
virtual  1:10
visit  51:11
voice  43:3

              w

w  4:2 11:4
wait  38:4
waived  3:10
want  6:25 7:6
  11:20 35:21
  40:6 44:7 55:14
  60:9
wanted  16:2,22
  30:11 38:10
  53:18
way  34:6 42:25
  47:2 51:2 55:8

55:25 62:24
  65:12
we've  34:22
  61:16
website  25:22
  33:7 35:14 51:5
  51:8 52:8
websites  32:17
  42:9,14
welcome  37:17
went  16:19
  27:15 28:23
  38:5 54:22
west  9:19
westchester  2:9
whatsoever  7:21
whereof  65:14
white  2:9 28:25
whitney  12:25
wilson  2:8 4:9
wisteria  49:2,3
  52:22
witness  3:19
  4:11 5:4,7 6:4
  6:11,23 7:14,23
  8:16 9:5 11:10
  11:23 12:6 14:5
  14:13 19:7
  28:16 33:16
  34:2,6 35:25
  38:3,9 42:12,25
  43:10,15 46:12
  52:2 53:6 55:11
  55:18,23 58:3,17
  60:2 61:8 62:19
  62:24 63:6 64:3
  65:6,9,14

word  5:17,18
  16:2
work  15:14 17:4
  17:11,14 23:19
  23:21 24:10
  29:17 30:16,18
  40:4,5,8,10,24
  41:24 44:6 47:5
  50:5 51:19
  53:20
worked  15:21
working  60:12
works  5:10
  20:10 24:11
  53:22 57:7
world  42:9 53:17
worldwide  39:23
worth  1:7 33:9
  58:15
worthpoint  2:8
  4:16,18 33:11,12
  35:17 37:8 42:5
worthpoint's
  35:13
worthpoint.com
  35:9
would've  29:14
write  6:2 13:11
written  6:15,20
  37:25

              x

x  1:3,9 64:2

              y

yeah  33:12 45:23
  58:5 60:11
year  12:14 15:2
  38:20,25 39:3

[year - york]                                                    Page 14

48:11 49:9
56:19 62:11
**years**   12:15 13:3
16:5 17:16
21:25 27:18
32:8 34:8,23
44:21,21 45:22
48:15 51:13
54:18,19,21
56:16 59:2,20
60:12,24 61:3,3
61:4,25
**york**   1:2,18 2:5,5
2:9,16 4:4 9:19
9:20 16:9 18:21
20:4 21:20 65:5
66:2,4,4,4

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

**SA1884**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

Annamarie Trombetta,,

               Plaintiffs,

        -against-

Norb Novocin, et al.,

               Defendants

------------------------------------------------------------------------X

Civil Action No: 18-cv-00993
(RA) (SLC)

**RULE 56.1 STATEMENT OF
MATERIAL FACTS**

Defendant, WORTHPOINT CORPORATION, (hereinafter "moving defendant" or "WorthPoint"), by and through its counsel, Jana Farmer, of Wilson, Elser, Moskowitz, Edelman & Dicker LLP, declares the following under the penalties of perjury, and submits the following Statement of Undisputed Facts, pursuant to Local Rule 56.1 of the United States District Court for the Southern District of New York, in support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

1.      As per the Court's direction, this motion is to be filed on or before April 17, 2023. As such, it is timely made.

2.      Defendant WorthPoint is an online resource for researching and valuing antiques, art, and other collectables. *See* Ex. G, "Seippel Dec.", at ¶3.

3.      WorthPoint's primary offering, the Worthopedia (also referred to as WorthPoint's "Price Guide"), is a searchable online database that provides users with historical pricing data from actual auction and retail sales. *Id.,* at ¶ 4.

4.      WorthPoint's Price Guide is a resource for researching and valuing art, antiques, and collectibles. *Id.*, at ¶4.

8563947v.1

**SA1885**

5.     WorthPoint partners with a diverse group of auction houses and online marketplaces including prominent auction houses in the country.  *Id.,* at ¶ 4.

6.     The Worthopedia is accessible to users from www.worthpoint.com, and it currently provides access to more than 720 million historical auction listings and one billion images, including historical listings from the online auction website www.ebay.com. *Id.,* at ¶5.

7.     WorthPoint obtains historical sales data from various auction houses and online marketplaces. *Id*., at ¶4.

8.     WorthPoint does not derive profit directly from any specific entry in its Price Guide.  *Id.,* at ¶7.

9.     WorthPoint has a license to obtain historical sales information for items sold on eBay. *Id*., at ¶8.

10.     During the relevant time period, WorthPoint was provided with a download of hundreds of thousands of auction results on a periodic basis. *Id*., at ¶9.

11.     WorthPoint's system ingests data supplied to it regarding eBay sales through an automated technical process. *Id*., at ¶10.

12.     WorthPoint does not select any specific auction results from eBay. *Id*., at 10.

13.     WorthPoint does not manually review any auction listings it receives from the eBay auction results. *Id*.

14.     WorthPoint does not manually edit the auction listings it receives before publishing them on its platform. *Id*.

15.     With over 700 million entries in its Price Guide, WorthPoint cannot reasonably or feasibly review every entry. *Id*., at ¶6.

8563947v.1

16.     To the extent eBay's data provided to WorthPoint contained images, WorthPoint automatically added a copyright notice providing that the copyrighted work was licensed by WorthPoint. *Id*., at ¶11.

17.     As part of the WorthPoint licensing arrangement for eBay data, WorthPoint relied on eBay's term and conditions which gave eBay a sublicensable right to the content posted by the seller. *Id*., at ¶12.

18.     EBay's terms and conditions changed from time to time and can be found on the Wayback Machine at Archive.org.  Copies of the terms and conditions as they existed in 2012-2015 are attached to the Affidavit of William Seippel at Exhibit A. *Id*., at ¶12.

19.     WorthPoint did not create or participate in the creation of the auction listing on eBay (the "Auction Listing") that is the subject of this action. *Id*., at ¶13.

20.     WorthPoint never saw the painting that was mentioned in the Auction Listing. *Id*., at ¶13.

21.     WorthPoint never saw the Auction Listing before it was posted on eBay. *Id*., at ¶13.

22.     Prior to the Plaintiff contacting WorthPoint, WorthPoint never saw the Auction Listing.   *Id*., at ¶13.

23.     The Auction Listing was one of millions of listings that were ingested through an automated technical process.  *Id*., at ¶13.

24.     In August of 2015, Plaintiff claims to have discovered a Worthopedia entry reporting on the historical sale ("WP Report") of an oil painting titled "Man With Red Umbrella" (hereinafter, the "Painting") that she claims inaccurately attributed the creation of the Painting to her. *See* Doc. 348-1, p. 11, ¶1. *See also*, Exhibit "A", Plaintiff's deposition, p. 117, ll. 6-8.

WorthPoint takes no position on the accuracy of Plaintiff's claim that she did not create the painting.

25.    The WP Report **partially** reproduced an eBay auction listing for the Painting (for clarity, the eBay listing is referred to as the "Auction Listing" and the Worthopedia historical report is referred to as the "WP Report"). See Doc. 348-1 at p. 7, ¶¶1-2; p. 11, ¶1; *see also*, Ex. "A", at pp. 93-94; Exhibit "B", Novocin deposition, at p. 93.

26.    The Auction Listing was authored by Defendant Norb Novocin of Estate Auctions, Inc. ("EAI") in connection with EAI's sale of the Painting on eBay in 2012. *See* Doc. 348-1 at pp. 13-14, ¶17. *See*, Ex. "B", p. 25, l. 24 through p. 27, l. 4.

27.    The Auction Listing included an excerpt from https://www.askart.com/ that reproduced the biography section of Plaintiff's website (the "Biography"). Ex. "B" at p. 20; *see also* Doc. 56 at 1-2.

28.    Mr. Novocin copied the Biography from the Ask Art website. Ex. "B", at p. 59, ll. 2-18.

29.    WorthPoint did not create or have any input into the content of the Auction Listing. *Id*, at p. 79, l. 24, through p.80, l. 3.

30.    The Auction Listing included 12 photographs of the Painting, taken by Mr. Novocin. Ex. "B", at p. 131, ll. 18-20.

31.    The WP Report contained only one photograph, showing a close up of a signature on the Painting.  Ex. "A", at p. 89, ll. 18-22.

32.    The photograph annexed to the WP Report contained a notice "Copyrighted work licensed by WorthPoint."("Copyright License Notice"). *Id*., at p.144, ll. 18-23; *see also*, Ex. K.

8563947v.1

33.     The text of the biography partially reproduced in the WP Report did not contain the Copyright License Notice. Ex. "B", at p. 50; Ex. K.

34.     Plaintiff does not claim copyright in the Painting, as she maintains that it was misattributed to her. Ex. "A", p. 88, ll. 13-18.

35.     After discovering the WP Report in August of 2015, Plaintiff contacted a WorthPoint employee Anita Brooks in December 2015 to find out who purchased the Painting, among other things, noting that Plaintiff did not make the Painting. *See* Doc. 348-1, p.11, ¶4.

36.     In January of 2016, Plaintiff emailed WorthPoint "with a series of questions…as to who posted the [Auction Listing]." *See* Doc. 348-1 at p.11, ¶6.

37.     In January 2016, Plaintiff submitted a request to remove the WP Report. *See* Doc. 348-1 at p.11, ¶8.

38.     On February 3, 2016, Plaintiff spoke with WorthPoint's "Website Master" Gregory Watkins to reiterate her concerns about the inaccurate WP Report and WorthPoint's use of the Copyright License Notice in connection with a photograph contained in the Auction Listing. *See* Doc. 348-1, p.11, ¶9,

39.     During this call, Mr. Watkins informed Plaintiff that the WorthPoint Copyright License Notice was affixed to the Auction Listing's photograph because it was licensed from eBay pursuant to a licensing agreement and that he would "take down" the Auction Listing. *See* Doc. 348-1, p.11, ¶9,

40.     On February 4, 2016, WorthPoint permanently removed the WP Report for the Auction Listing. *See* Exhibit G, ¶16 ("on or around February 4, 2016, I [William F. Seippel] caused the Allegedly Infringing Auction Listing, which was displayed at https://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-4892417, to be

8563947v.1

**SA1889**

permanently deleted from WorthPoint's website."); Doc. 33 at 30-33 ("The item was removed at your request.").

41.    After February 4, 2016, the text of the Biography no longer existed on WorthPoint's website. *Id.* at ¶17

42.    The WP Entry for the Auction Listing was never reposted to the Worthopedia. See Doc. 61-1 at ¶ 5. Ex. "G' at ¶16

43.    In 2015 and 2016, WorthPoint had a Notice and Takedown Policy in compliance with the Digital Millennium Copyright Act.  Ex. "G", at ¶20-21.

44.    From 2012 (when the eBay Account Listing shows the Painting was sold) through 2016 (when the Plaintiff spoke to Gregory Watkins about the WP Report), WorthPoint had a designated DMCA Agent filed with the U.S. Copyright Office.  Ex. "G", at ¶20.

45.    WorthPoint's DMCA Agent from 2012-2016 was Gregory Watkins.  Ex. "G", at ¶20.

46.    On February 20, 2016, Plaintiff sent an email to WorthPoint, in which she stated that a reference to the title of the Auction Listing remained visible when she conducted a "Google search for the painting '1972 Original Oil Painting Man with Red Umbrella signed Annamarie Trombetta…" *See* Doc. 348-1 at pp. 11-12, ¶10.

47.    On March 1, 2016, WorthPoint responded to Plaintiff's February 20, 2016 email and informed her that "we have taken down any pages that you have asked to have taken down as a courtesy to you" and that any reference to the allegedly infringing Auction Listing in her Google search "reflected the past" and was the result "of that search engine's memory."  Doc. 61 at ¶5.

48.    WorthPoint also responded as follows:

8563947v.1

I do not see anything on these pages you are referring to. Yes you show up in that specific search on google and you are likely to for some time but no content relating to you is any longer on the pages that are presented. It will take some time for that to disappear out of Google's memory…

Doc. 33 at 33.

49.    To further address Plaintiff's concerns, WorthPoint's CEO instructed WorthPoint employee Jason Packer to submit a removal request to Google on March 3, 2016. Ex. "G", at ¶19 *See also*, Doc. 36 at 46.

50.    Notwithstanding WorthPoint's removal request to Google, "in the fall of 2016," Plaintiff alleges that references to the Auction Listing reappeared "on the internet." Doc. 348-1 at p. 13, ¶14.

51.    On January 4, 2017, Plaintiff once again contacted WorthPoint and complained that "in a Google search for Annamarie Trombetta Artist your company is listed under my name." *See* Doc. 348-1, p. 13, l. 14.

52.    The Google results attached to Plaintiff's January 4, 2017 email do <u>not</u> actually reference Plaintiff or indicate that the Auction Listing, the WP Report or the Biography continued to be displayed on WorthPoint. *See* Doc. 36 at 32; Doc. 33 at 38-42.

53.    WorthPoint is not affiliated with Google and does not control Google's actions. Ex. "G", at ¶19.

54.    The only listing in Plaintiff's January 2017 Google search that refers to WorthPoint's website is an auction result for "Marilyn Monroe…Chanel Perfume" that is entirely unrelated to Plaintiff and does not contain Plaintiff's Biography. *See* Doc 93 at 12, 93-33, 93-34.

8563947v.1

55.     Plaintiff alleges that on March 15, 2017, she conducted a Google Search for "1972 original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta". Ex. "A", at 269.

56.     The Google search on March 15, 2017 referenced a 1972 original oil painting, however, Plaintiff does not recall if she clicked the link to see if it was valid. Ex. "A", p. 270, ll. 6-9.

57.     The March 15, 2017 Google search does not indicate that Plaintiff actually accessed the underlying web page or that the Auction Listing, the WP Report or the Biography continued to reside on WorthPoint's server. *Id.*, at p. 271, ll. 19-25.

58.     When questioned on whether Plaintiff visited WorthPoint's site on March 15, 2017, Plaintiff could not recall. Ex. "A", p. 270, ll. 6-9.

59.     On May 7, 2017, Plaintiff conducted yet another Google search for "1972 ORIGINAL OIL PAINTING MAN WITH RED UMBRELLA SIGNED ANNAMARIE TROMBETTA" and she alleges that her search returned multiple results which referenced the Auction Listing. *See* Doc. 36 at 42; Doc. 22 at 31; *see also* Doc. 36 at 7, 20, 22.

60.      The May 7, 2017 Google search result for the Auction Listing also does not indicate that Plaintiff actually accessed the underlying web page or that the Auction Listing, the WP Report, or the Biography continued to reside on WorthPoint's server. *See* Doc. 36 at 42; Doc. 22 at 31 ("Last visit 12/30/15").

61.     In fact, the upside-down triangle icon next to the URL in Plaintiff's Google search for the Auction Listing supports the fact that the URL for the complained of search result was a historical copy of the underlying webpage that was stored in Google's cache (and not on

8563947v.1

WorthPoint's server). See https://support.google.com/websearch/answer/1687222?hl=en. Ex. E, Stricchiola Disclosure, at ¶24; Ex. "F", Packer Dec, at ¶24.

62.    Since February of 2016, Ms. Trombetta has not verified on WorthPoint's website whether the posting remains active, despite observing the link in several Google Search results. Ex. "A", at pp. 263-264.

63.    After February 4, 2016, Ms. Trombetta could not have verified the results on WorthPoint's website as referenced in WorthPoint's SEO analytics.  Ex. "F" at ¶¶ 4, 5.

64.    The absence of results at the URL for the webpage where the WP Report resolved is confirmed through WorthPoint's Google Analytics account. *Id* .at ¶6.

65.    WorthPoint's Google Analytics report revealed that no person accessed the URL before August of 2015. *Id*., at ¶7.

66.    From August of 2015 through February of 2016, the URL received 128 page views[1]. *Id*., at ¶ 6.

67.    On February 3, 2016, the URL had one pageview. *Id*., at ¶10.

68.    On February 4, 2016, the URL had three pageviews. *Id*., at 11.

69.    Of the three page views on February 4, 2016, one page view displayed the valid page view title *Id*.

70.    The two later pageviews displayed a "404 Page not found" error message. Id

71.    On February 20, 2016, there was one pageview and the viewer received a "404 Page not found" message. *Id*., at ¶14.

72.    After February 20, 2016, there was one additional page view on March 8, 2017. *Id*.,

---

[1] Page views are counted based on sessions and are not indicative of individual people. Ex. "F", Packer Dec. at ¶6.

73.    The viewer on May 8, 2017 also encountered the "404 page not found" error. Id., at ¶15.

74.    Google does not immediately or automatically delete a URL from its index when the URL returns a 404 error. Ex. "E", at p. 12, ¶21.

75.    The delay between Google's removal of the URL from the Google index could result in the web page's title and description, and link to its URL, appearing in a Google search result. Ex., "E", p. 11, 1. ¶ 11.

76.    While the cached version of Plaintiff's page may have remained on Google's servers for an extended period of time, anyone who clicked the link would have received a "404 Page not found" error. Ex. F., at ¶24

77.    There were no known issues with WorthPoint's Google Analytics implementation which could have caused inaccurate Google Analytics data. Ex., "E", p. 11, 1. ¶ 11.

78.    WorthPoint's text file log further confirms that the URL in question was deleted on February 4, 2016, and never reposted. *Id.*, at p. 11, at ¶20.

79.    Dates that a browser or printer include on paper when printing, are an unreliable indicator that the webpage was viewable on the date shown. *Id.*, at p. 13, ¶ 23.

80.    Plaintiff's fact and expert witnesses did not verify that the WP Report would appear if one clicked on the links in the search results in 2017.  Exhibit "C", Chu Deposition, at pp. 18-19, 23-24; Ex. "D", Ploski Deposition, at p. 56; Ex. "P", Goodwillie Deposition, at p. 33; Ex. "I", O'Leary Deposition, at pp.117-118.

81.    Plaintiff's acquaintance, Willie Chu, was informed *by Plaintiff* that the link "re-appeared" in a Google Search in 2017.  Ex. "C", at pp. 23-24.

82.    Mr. Chu never independently verified whether the link was live. *Id*.

8563947v.1

83.    Similarly, another fact witness, Vanessa Ploski  never independently verified if the link to the WP Report was actually live in 2017, and her knowledge of the link existing derives solely from information supplied *by Plaintiff*. Ex. "D", at p. 56.

84.    Patrick O'Leary, plaintiff's disclosed "expert witness", never independently verified if the WP Report link was live. Ex. "I", pp. 118-119.

85.    The first time Mr. O'Leary visited WorthPoint.com was in 2022. Ex. "I", at pp.117-118.

86.    Scott Goodwillie testified that he never accessed worthoint.com website. Ex. "P", at p. 33.

87.    Plaintiff was aware of the WP Report in 2015. Doc, 348-1, p.1.

88.    Plaintiff first filed a lawsuit against WorthPoint on February 21, 20020. Doc. 36.

89.    WorthPoint demanded that Plaintiff produce medical records related to any treatment she received arising out of her claims.  *See*, Exhibit "L"; Exhibit "N".

90.    Plaintiff was requested to produce medical reports for treatment she received for her alleged injuries. See, Doc. 309, 309-1, 309-2.

91.    Plaintiff never produced medical reports for treatment she received arising out of her claims. *See*, Doc. 384, p. 9.

92.    Plaintiff was requested to produce authorizations for any treating providers. *See*, Exhibit "L"; Exhibit "N".

93.    Plaintiff never produced authorizations for any treating providers. *See*, Exhibit "O"; Doc. 384, p. 9.

94.    Plaintiff was requested to produce her tax returns for the years 2010 to present. *See*, Exhibit "L"; Exhibit "N".

**SA1895**

95.    Plaintiff never produced her tax returns for the years 2010 to present. *See*, Doc 328, pp. 58-62.

96.    Plaintiff conceded she is not seeking actual damages other than one lost sale she values at $8,500.  *See*, Doc 363, at 58-61.

97.    Plaintiff conceded that she is not seeking damages from 2018 through 2021. Doc. 328, at p. 55.

98.    Plaintiff "had a fully adequate" opportunity to produce medical records and authorizations during discovery and failed to do so. Doc. 384, p. 9.

Date: April 17, 2023                         Respectfully submitted,

                                            WILSON ELSER MOSKOWITZ EDELMAN
                                            & DICKER LLP

                                            *s/ Jana S. Farmer*
                                            Jana S. Farmer, Esq.
                                            Adam R. Bialek, Esq.
                                            Wilson Elser Moskowitz Edelman & Dicker LLP
                                            150 E. 42nd Street
                                            New York, New York 10017-5639

8563947v.1

**SA1896**



May 9, 2023

**Jana S. Farmer**
Phone: 914-323-7000
Jana.farmer@wilsonelser.com

**VIA ECF**
Honorable Sarah L. Cave
United States District Court
Southern District of New York
500 Pearl St., Courtroom 18A
New York, NY 10007-1312

      Re:    *Annamarie Trombetta v. Norb Novocin, et.al.*
             Civil Action No. 18-cv-993

Dear Judge Cave:

Pursuant to Your Honor's request (See Order, ECF No. 449), the within letter motion on behalf of Defendant WorthPoint Corp. ("WorthPoint") seeks to preclude the untimely and insufficient expert disclosures of Dr. Scelsa, served on February 16, 2023, and Ms. Skluzacek, served on February 22, 2023.[1] Ms. Trombetta cannot justify the over two-month delay in serving these expert disclosures and, therefore, must be precluded from relying on these experts and reports in her motions for summary judgment and in the event of trial.

### APPLICABLE PROCEDURAL HISTORY

Since the inception of this case, the Court has apprised Plaintiff of the applicable fact and expert discovery deadlines. Specifically, since February 1, 2022, the Court has issued six (6) separate Orders stating the deadlines for expert discovery:

**ECF No.: 195** - February 1, 2022, Case Management Plan set the expert report deadline for August 17, 2022, after these and other proposed deadlines were discussed with all parties at length during the February 1, 2022, conference with Judge Cave;

**ECF No.: 234** - June 13, 2022, Order extending Expert Report Deadline to September 23, 2022, following a compliance conference with Judge Cave. This conference was preceded by a series of submissions by Plaintiff posing various discovery-related inquiries to the Court (ECF Nos. 228, 230, 232), which the Court addressed during the compliance conference;

---

[1] We have limited our argument to ensure the letter does not run over the 5-page limit. We have also refrained from detailing all of the inadequacies of the disclosures or why the experts should otherwise be precluded under *Daubert*. To the extent necessary, WorthPoint would seek to preclude the experts under *Daubert* as well.

150 East 42nd Street • New York, NY 10017 • p 212.490.3000 • f 212.490.3038

Alabama • Albany • Atlanta • Austin • Baltimore • Beaumont • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Hartford • Houston
Indiana • Kentucky • Las Vegas • London • Los Angeles • Miami • Michigan • Milwaukee • Mississippi • Missouri • Nashville • New Jersey • New Orleans
New York • Orlando • Philadelphia • Phoenix • San Diego • San Francisco • Sarasota • Stamford • Virginia • Washington, DC • Wellington • White Plains

**wilsonelser.com**

280625195v.1
280625195v.1



- 2 -

**ECF No.: 268** – August 24, 2022, Order extending the discovery deadline to October 10, 2022, after WorthPoint submitted a letter motion (ECF No.: 267) explaining that it apprised Plaintiff of the Fed. R. Civ. P. 26(a) requirements and was awaiting updated disclosures from Plaintiff.

**ECF No.: 291** – October 7, 2022, Order on Plaintiff's motion (ECF No. 289) to extend discovery, resetting the deadline for expert disclosures for November 4, 2022, for Plaintiff and December 2, 2022 for Defendants;

**ECF No.: 308** – November 2, 2022, Order extending deadlines for expert disclosures to December 12, 2022, for Plaintiff and Thursday, January 12, 2023, for Defendants, following WorthPoint's submission (ECF No. 306) advising the Court of the continuing deficiencies in Plaintiff's discovery production; and,

**ECF No.: 333** – December 12, 2022, Order extending expert disclosure deadlines to December 19, 2022 for Plaintiff and January 19, 2023, for Defendants following Plaintiff's applications (ECF Nos. 330-331) specifically requesting extensions of time to submit Plaintiff's expert disclosures.

In addition, during a November 23, 2022, conference with Judge Cave, Your Honor explained to the Plaintiff that the deadline for expert discovery was impending and that she needed to look at Rule 26 to ensure that she complied with its requirements, and Plaintiff indicated she understood. *See*, ECF No. 328, pp. 40-42.

Aside from the Court's guidance, counsel for WorthPoint and Estate Auctions have made every effort to ensure that Plaintiff was aware of the requirements of Fed. R. Civ. P. 26(a) (2) (B). Ms. Trombetta has been aware that written reports are required for any expert since her January 18, 2022, call with WorthPoint's counsel, when the parties agreed that written reports by any expert must be served by August 17, 2022, and depositions of experts were to be completed by September 23, 2022. *See*, Ex. "A".

Within WorthPoint's First Set of Interrogatories, served on February 25, 2022, WorthPoint requested the names and addresses of Plaintiff's witnesses. Ex. "B". On June 27, 2022, four months later, Plaintiff provided its third response to WorthPoint's interrogatories and finally included the names and addresses of 10 witnesses. *See*, Ex. "C".

On July 19, 2022, counsel for WorthPoint inquired with the Plaintiff regarding her identification of 10 witnesses and noted that Plaintiff failed to specify the subject matter about which the witness has knowledge. Ex. "D". Plaintiff supplemented her discovery response on July 22, 2022, specifying the subject matter of her proposed experts, but failed to identify which witnesses were fact witnesses and which were expert witnesses. WorthPoint's counsel requested that Plaintiff address these deficiencies on July 25, 2022. *Id*. Notably, within the correspondence, WorthPoint advised that the requirements for Fed. R. Civ. P. 26(a) (1) (B) and Fed. R. Civ. P. 26(a) (2) were different. *Id*. Plaintiff responded on July 27, 2022, detailing "Peter Trippi, Gayle Skluzacek, Dr. Scelsa, Peter Drake, Vanessa Ploski-Fact and Expert Daniel Caropreso-Expert and Eileen Guggenheim-as expert witnesses." *Id*.

280625195v.1

**SA1898**

**WILSON ELSER**
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

- 3 -

On August 8, 2022, WorthPoint e-mailed Plaintiff advising that she was required to properly disclose her experts pursuant to Fed. R. Civ. P. 26(a) (2). *Id*. Further, counsel explained:

> The expert disclosure must be in the form of a **written report prepared and signed by each expert** and which contains the following information: **a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.** *Id*.

On August 17, 2022, the parties had a meet and confer where Defendants, again, explained the differences between fact and expert witnesses. ECF No.: 267. Following the August 17, 2022, WorthPoint, again, provided the expert disclosure requirements to Plaintiff. *Id*. On August 24, 2022, WorthPoint was forced to request an extension of time to complete discovery where WorthPoint advised the Court of the issues with Plaintiff's experts. ECF No.: 367. On August 24, 2022, the Court granted WorthPoint's request and extended the discovery deadline (fact and expert) to October 10, 2022. ECF No.: 368.

On September 12, 2022, Plaintiff provided the Curricula Vitae of Patrick Michael O'Leary and Gayle Skluzacek. Ex. "E". She further advised that she was "awaiting confirmation" on Dan Caropreso and Dr. Joseph Scelsa. *Id*. Ms. Trombetta sent an additional email on September 15, 2022, attaching the Curriculum Vitae of Dr. Scelsa and the rates for Mr. O'Leary. Ex. "F". Plaintiff also advised that she was still waiting to hear from Peter Trippi and Dan Caropreso. *Id*. On September 19, 2022, counsel for WorthPoint inquired into whether Dr. Scelsa, Mr. O'Leary and Ms. Skluzacek would be serving as plaintiff's expert witnesses. Ex. "G". Counsel asked that Ms. Trombetta: "1) confirm this is accurate; 2) provide her expert disclosures in accordance with FRCP Rule 26(a) (2) as soon as possible; and 3) let us know [her] availability for a meet and confer to discuss expert discovery." *Id*. No response was ever received from Plaintiff.

Rather than use November and December of 2022 to complete her expert disclosures, Plaintiff continued to seek irrelevant discovery and make incredulous accusations about Defendants (ECF No.: 287; 289; 292; 295; 310; 312; 313; 316; 317; 320; 331), while simultaneously disregarding Your Honor's expert discovery deadlines (ECF Nos: 291; 308; 333).[2]

### LEGAL AUTHORITY

Fed. R. Civ. P. 26 (a) (2) of the Federal Rules of Civil Procedure requires parties to disclose the identities of expert witnesses and to produce those experts' reports "at the times and in the sequence directed by the court." Fed. R. Civ. P. 26(a) (2) (D). Pursuant to Fed. R. Civ. P. 37(c)(1), "a party [who] fails to provide information or identify a witness as required by Rule 26(a) ... is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a

---

[2] In addition to the Court submissions prior to the expert disclosure deadline, there have been numerous post-deadline submissions regarding this very issue, where the Court upheld its prior rulings, reaffirming the deadlines. See Ex. "H".

280625195v.1



- 4 -

trial, unless the failure was **substantially justified** or is harmless." Fed. R. Civ. P. 37(c) (1). "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004).

While a degree of leniency is afforded to pro se plaintiffs, Courts have routinely precluded plaintiffs from relying on expert evidence when the party was aware of the deadlines and requirements. *See Abraham v. Leigh*, 471 F. Supp. 3d 540, 555 (S.D.N.Y. 2020) (denying pro se plaintiff from relying on her expert disclosures in her motion for summary judgment that were provided five months after the discovery deadline because she failed to demonstrate the delay was substantially justified); *Harbec v. N. Country Hosp. & Health Pracs.*, No. 22-1228, 2023 U.S. App. LEXIS 10148, at *4 (2d Cir. Apr. 26, 2023) (precluding pro se plaintiff from relying on her experts at trial because plaintiff failed to provide any reason for not complying with Rule 26 and the Court repeatedly warned plaintiff of the impending deadlines); *See*, *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 263 F. Supp. 3d 446, 452 (S.D.N.Y. 2017) (collecting cases); *see also Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 47, 52 (S.D.N.Y. 2014).

Furthermore, the court may only extend the deadline for "good cause" shown. The primary consideration in assessing good cause is the diligence of the moving party. *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Courts also consider a variety of other factors: (1) imminence of trial; (2) whether the request is opposed and prejudice to non-moving party; (3) when the moving party learned of the issue that is the subject of discovery; (4) likelihood that discovery will lead to relevant evidence; (5) how the discovery might affect rulings on pending motions; (6) the length of the discovery period; and (7) whether the adverse party was responsive to discovery requests. *See* 3 Moore's Federal Practice - Civil § 16.14[1] [a] (3d ed.).

Here, each factor weighs in favor of precluding the expert disclosure of Dr. Scelsa and Ms. Skluzacek, and not extending the expert discovery deadline.

While trial has not been scheduled, the parties have already submitted their motions for summary judgment and motions in limine under *Daubert*. The deadline for Plaintiff's initial expert report was December 19, 2022, the deadline for rebuttal reports was February 7, 2023, and the deadline to complete expert depositions was March 1, 2023 (See ECF No. 367). Expert discovery has long since closed. Despite Plaintiff's numerous attempts to re-open fact and expert discovery (ECF. Nos: 338; 359; 364; 365; 373; 381; 386) she has failed to demonstrate "good cause". The Court and WorthPoint inquired into Plaintiff's expert disclosures on many occasions and informed Plaintiff of the deadlines and requirements. To re-open expert discovery after Plaintiff sat idly by for several months would not only prejudice WorthPoint by incurring additional costs but would also lead to unnecessary and irrelevant discovery.

Additionally, Plaintiff has known since January 18, 2022, that expert reports were required pursuant to Fed. R. Civ. P. 26. Counsel for WorthPoint informed Plaintiff of the Fed. R. Civ. P. 26 requirements on July 25, 2022, August 8, 2022, and August 17, 2022. More importantly, Plaintiff represented to the Court during the November 23, 2022, conference that she "understood" the requirements for a proper expert disclosure. As stated by Your Honor, "Ms. Trombetta has been made aware that expert discovery shall follow fact discovery (see, e.g., ECF

280625195v.1



- 5 -

Nos. 195; 234; 291; 308; 333),” and was advised by the Court of her responsibilities. (ECF No. 328 at 41-42). ECF No.: 340. Any argument to the contrary by Plaintiff is simply false.

The experts Plaintiff seeks to untimely disclose will also not lead to relevant evidence. While Plaintiff claims that Dr. Scelsa is a licensed psychotherapist, it is unclear if Plaintiff has treated with him arising out of the “emotional distress” she claims to have suffered or if he is only meant to provide expert evidence in regard to her claim of “emotional distress.” However, Plaintiff has failed to set forth any evidence demonstrating her “emotional distress” claim, and an opinion on same would be irrelevant. She never provided a medical report, any medical records, and there is no basis upon which an expert could testify. Further, to the extent Plaintiff claims that Dr. Scelsa is an expert in the field of art, he offers no education or training credentials in art valuation, art authentication, handwriting authentication, or a basis for his opinion that the Plaintiff lost opportunities and sales of artwork. Ex. “I”. Furthermore, he offers conclusory statements on the impact of artwork he has never seen and signatures he has never seen. *Id*. Whether Dr. Scelsa is used as a “mental health” expert or an “art” expert, his testimony will not lead to any relevant evidence. He would be subject to preclusion under *Daubert*.

Similarly, Ms. Skluzacek’s untimely expert report reveals a myriad of issues as to the admissibility of any opinions that would be rendered. Ms. Skluzacek offers opinions on artwork she has never seen, values such artwork without taking into account its damaged status, and incorporates hearsay evidence and inadmissible material to fashion her opinions. Ex. “J”. She offers legal opinions without a law degree, has failed to set forth any education about copyright law, and otherwise adopts Plaintiff’s statements without any independent verification. *Id*.

### CONCLUSION

Here, Plaintiff’s attempt to disclose two experts months after the deadline set by the Court is the precise "sandbagging" Rule 37 (c) protects against. Plaintiff cannot offer any reasonable excuse for the untimely delay. The untimely disclosure can only be attributed to Plaintiff’s willful disregard of Your Honor’s deadlines. Your Honor has extended the deadline on numerous occasions to appease Ms. Trombetta as a pro se Plaintiff. Despite her attempts, Ms. Trombetta has failed to proffer one credible reason for her delay. Furthermore, the delay cannot be attributed to her status as a pro se Plaintiff as WorthPoint advised Ms. Trombetta of the Fed. R. Civ. P. 26 requirements on several occasions, and Plaintiff represented to this Court that she "understood" the requirements for a proper expert disclosure. As such, WorthPoint respectfully requests that the expert disclosures of Dr. Scelsa and Ms. Skluzacek be precluded.

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

*Jana S. Farmer*

Jana S. Farmer, Esq.

cc:     All counsel
        Annamarie Trombetta

280625195v.1

**Cahill, John**

| | |
|---|---|
| **From:** | Bialek, Adam <Adam.Bialek@wilsonelser.com> |
| **Sent:** | Tuesday, January 18, 2022 2:49 PM |
| **To:** | Annamarie Trombetta |
| **Cc:** | Farmer, Jana S.; Anderson Duff |
| **Subject:** | Trombetta v. Worthpoint et al |

Dear Ms. Trombetta:

It was nice speaking with you earlier today.  I am glad we could be civil and cooperative.  I am copying Anderson on this email so he is aware of the information we discussed which should make your call with him easier.

We agreed on the following schedule to be inserted into each party's "Case Report and Proposed Case Management Plan for Pro Se Case":

Para 3:

- All discovery to be completed by July 31, 2022
- Initial Requests for Documents must be made by February 25, 2022
- Depositions shall be completed by May 26
- While we offered to limit the depositions, we agreed to keep them with the FRCP's standard 10 depositions per party.
- Subpoenas to be served by June 11, 2022
- Written reports by any expert must be served by August 17, 2022
- Depositions of experts to be completed by September 23, 2022

Para 4:

- Settlement conference no later than April 22, 2022.  You will advise me if you want to tender a settlement demand.

Para 5:

   We understand you will be including the fact that you are not going to be available in March 2022.

Please let us know if you have any questions.

Anderson:  I hope these dates work for you.  If after speaking with Ms. Trombetta you want changes, please let us know.

1

SA1901

Regards,
Adam

Adam Bialek
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212.915.5143 (Direct)
917.538.0616 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
adam.bialek@wilsonelser.com

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.
Thank you.

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 253 of 293

SA1902

**SA1903**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNAMARIE TROMBETTA,<br>　　　　　　　　　Plaintiff,<br><br>- against –<br><br>NORB NOVOCIN, MARIE NOVOCIN,<br>ESTATE AUCTIONS, INC., ~~WILLIAM<br>SEIPPEL~~[1] and WORTHPOINT<br>CORPORATION,<br>　　　　　　　Defendants. | :<br>:<br>: Civil Action No. 18-cv-00993-RA-SLC<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**DEFENDANT WORTHPOINT'S FIRST REQUEST FOR THE PRODUCTION OF
DOCUMENTS AND FIRST SET OF INTERROGATORIES TO PLAINTIFF**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the Local Civil Rules

of the Southern District of New York, and pursuant to the Order of Judge Sarah Cave, dated

February 1, 2022, WORTHPOINT CORPORATION  (hereinafter "WORTHPOINT") by their

counsel, Wilson Elser Moskowitz Edelman & Dicker, LLP, hereby request that Plaintiff

ANNAMARIE TROMBETTA (hereinafter "Plaintiff") provide the documents described below

for inspection and copying by counsel for WorthPoint at the offices of Wilson, Elser Moskowitz,

Edelman & Dicker LLP, 150 E. 42nd Street, New York, New York 10017, on or before **April 8,**

**2022**, with such inspection and copying to continue from day to day until completed. In the

alternative, plaintiff may make copies of the requested documents available to all counsel for the

parties on or before April 8, 2022.

WORTHPOINT also hereby requests that Plaintiff ANNAMARIE TROMBETTA answer under

oath, in accordance with Rule 33 of the Federal Rules of Civil Procedure, the following

interrogatories directed to Plaintiff, on or before **April 8, 2022**.

---

[1] Pursuant to the Court's December 21, 2021 Order, Defendant William Seippel was dismissed from this case.

266984886v.2

**Definitions**

A. The definitions and rules of construction contained in Rules 26 and 34(a) of the Federal Rules of Civil Procedure and in the Local Civil Rules of the Southern District of New York are incorporated herein by reference, and are made a part hereof, except insofar as such definitions or rules of construction are specifically amended or supplemented below.

B. "Artwork" means the artwork described as 1972 oil painting entitled "Man with Red Umbrella", which Plaintiff claims was misattributed to her by the Defendants.

C. "AskArt" means online research database, available at www.askart.com.

B. "Complaint" means the "Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff''s [sic] Amended Complaint" filed by Plaintiff in the above-captioned matter in the United States District Court for the Southern District of New York on or about February 21, 2020 (Docket Number #36), which was deemed by the Court to be the Operative Complaint by Opinion and Order of the Court, dated March 19, 2020 (Docket Number #40 at 2 n.2).

C. "Lawsuit" means the above-referenced case, styled as *Annamarie Trombetta v. Norb Novocin, Marie Novocin, Estate Auctions, Inc. and WorthPoint Corporation*, Case No. 18-cv-00993-RA-SLC (S.D.N.Y.).

D. "EAI Defendants" means co-defendants Norb Novocin, Marie Novocin, Estate Auctions, Inc, their representatives and agents.

E. "You," "Your," and "Plaintiff' means and refers to, Plaintiff Annamarie Trombetta, as identified in the Complaint, and any and all persons acting on behalf of Plaintiff, including without limitation, Plaintiff's current or former business and/or creative partners, associates, independent contractors, interns, draftsmen, managers, agents, vendors, partners, successors,

266984886v.2

**SA1905**

predecessors, affiliates, attorneys acting in concert, representatives, and all other persons acting or purporting to act with, for, or on her behalf, including but not limited to collaborators, consultants, accountants, financial advisors, advisors, attorneys, or any person acting in an advisory or consulting capacity, unless specifically stated otherwise.

F.  "WORTHPOINT" means Defendant WORTHPOINT CORPORATION and any of their current or former business and/or creative partners, directors, officers, independent contractors, affiliates, predecessors, successors, parents, subsidiaries, partners, advisers, associates, employees, managers, agents, servants, representatives, corporate alter egos and all other persons acting or purporting to act with, for, or on its behalf, including but not limited to consultants, advisors, attorneys, or any person acting in an advisory or consulting capacity, unless specifically stated otherwise.

G.  "Plaintiff's Biography" means Plaintiff's biography, as it appears or previously appeared on her website during all relevant times and in which plaintiff claims copyright.

H.  The terms "and" and "or" shall each be construed broadly and shall each mean "and" or "or" or "and" and "or" wherever such meaning broadens the meaning of the sentence or phrase.

I.  "Concerning" means relating to, referring to, reflecting, describing, evidencing, interpreting, consisting of, pertaining to, regarding, or constituting, in whole or in part, directly or indirectly, the matter identified.

J.  The terms "relate to," "relates to," "relating to," and "related to" shall mean and include: refer, reflect, discuss, show, constitute or be in any way logically or factually connected with the matter discussed.

266984886v.2

**SA1906**

K.  "Document" includes all written, graphic matter, handwriting, typewriting, audio or video tape recordings, however produced or reproduced, of every kind and description, including but not limited to, the original and each copy thereof which is non-identical by reason of any mark, change, or other cause or reason whatsoever, of all correspondence, records, reports, memoranda, notes, facsimiles, messages and message books, email, text messages, WhatsApp or other electronic messages, social media messages, telephone logs, memoranda of telephone conversations, publications, books, brochures, booklets, manuals, flyers, leaflets, contracts, memoranda of agreement, books of account, ledgers, journals, working papers, records or summaries of personal interviews or conversations, appointment calendars, diaries, receipts, invoices, billing statements, files, tapes, discs, drives, data cards, films, data processing files and all other computer-readable records or programs, including any and all drafts or non-identical copies thereof. Documents in electronic or digital form stored in any format, discs, drives, data, cards, data processing files and other computer-readable records or programs must be produced in reasonably usable form (e.g., by printing or "downloading" such documents onto paper). In addition, all electronic documents must be produced in native electronic format on a DVD or CD or other common, easily- readable storage device, or through a secure online delivery system that is secure and contains no malicious code or code designed to record actions of the recipient or send information back to the sender. (The word "writing" may be used synonymously herein in place of "document.")

L.  "Communication" means any and all oral or written contact between two or more persons including, without limitation, any meetings, conferences, face-to-face conversations, telephone, teleconference, video conference, voice mail, audio recording, video recording, mails, electronic transmissions, electronic mail (email), text messaging, WhatsApp

266984886v.2

messaging, social media messaging, instant messaging (IM), facsimile or any other forms of oral or written communications by any other medium.

M. When used in reference to a person, the term "identify" shall mean to state the full name and job title of such person and, in the event such person is currently not an employee of Plaintiff, such person's last known residence address and telephone number.

N. When used in reference to a Document, the term "identify" shall mean to state the date the Document bears, if any, its author(s), location, and a brief description of its form (e.g., memorandum, e-mail, letter, etc.) and contents, as well as the identity of the person(s) known to have possession, custody, or control over the Document.

O. "Agreements" shall mean and include any oral or written (in pen, typed, printed or electronic) arrangement between two or more parties.

### Instructions

1. WORTHPONT's First Request for the Production of Documents and First Set of Interrogatories to Plaintiff (the "Requests") adopt and incorporate by reference the rules of construction set forth in the Local Civil Rules of this Court.

2. In construing these Requests, the singular form of the word should be interpreted in the plural and vice versa, as in each case is most appropriate. Wherever used, references to the masculine, feminine, or neither gender shall include the neuter, feminine and masculine genders, as the context requires.

3. In producing responsive Documents for inspection and copying, Plaintiff is required to furnish all Documents known or available to Plaintiff regardless of whether the Documents are possessed directly by Plaintiff, her agents, consignees, representatives or investigators; or by its present or former attorneys or their agents, employees, representatives or investigators.

266984886v.2

**SA1908**

4.  Plaintiff is to produce each document in the form and condition in which it exists on the date of service of this request with all comments, notes, remarks or other material that may have been added to the document after its initial preparation, as well as the original version if it can be obtained. Plaintiff is to furnish a table of organization with her responses, which should indicate which Documents being produced correspond with which of the categories in the Requests.

5.  Should Plaintiff object to or otherwise decline to respond to any portion of these requests, the grounds for objecting or otherwise declining to respond shall be stated with specificity and clarity and Plaintiff shall provide a statement specifying any document or communication withheld due to such objection, or withheld on any other asserted basis.

6.  If any statement, communication, document, or information in any way responsive to these requests is withheld under any form of privilege or other basis for non-disclosure, whether based on statute or otherwise, state the following with regard to each statement, communication, document, or information:

(a)  The date(s) the document was created, sent and received;

(b)  The name, the current or last known home and business addresses, the telephone numbers, and the title (or position) and occupation of the individual(s) who authored or prepared the document and who were recipients of the document;

(c)  A description of the document sufficient to identify it without revealing the information for which the privilege is claimed, including the general subject matter and character of the document (e.g., letter, memorandum, notes);

(d)  The location of the document;

266984886v.2

(e) The name and address of the custodian having present custody or control of the document; and,

(f) The privilege asserted with regard to the document and the specific basis of the claim of privilege;

7. If Plaintiff has at any time relinquished possession, custody or control of, or destroyed any document responsive to any request, Plaintiff shall identify each document as set forth in paragraph 6 above and as to an existing document, identify the persons, if any, who currently have possession, custody or control of it.

8. These requests are continuing in character, and the responses are to be modified or supplemented from time to time as appropriate should information requested be obtained by Plaintiff, her representatives, agents, or counsel after its initial responses, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

9. If Plaintiff encounters any ambiguity in construing a request, definition, or instruction herein, Plaintiff shall use her best efforts to interpret the request, definition, or instruction within the context of this litigation and shall set forth the matter deemed ambiguous, and the construction or interpretation utilized in responding.

## **DEMAND FOR DOCUMENTS**

1. Documents and Communications, including any emails, recordings of phone calls and any Agreements, as between two or more of Plaintiff, WorthPoint, EAI Defendants, and/or third-parties, from 2010 to present concerning or relating to the Artwork, Plaintiff's Biography, or requests for removal of the listing referencing or incorporating the Artwork (or any part thereof) and/or Plaintiff's Biography from WorthPoint's website and/or from Google;

266984886v.2

**SA1910**

2. Documents and Communications showing that Plaintiff is the author or creator of Plaintiff's Biography.

3. Documents and Communications that Plaintiff submitted to the U.S. Copyright Office for the purposes of registering the copyright in her website and/or Plaintiff's Biography.

4. A copy of the deposit material Plaintiff submitted to the U.S. Copyright Office along with her copyright application for her website and/or Plaintiff's Biography.

5. Samples of Plaintiff's signature from 2015 and from 1972;

6. Samples of any artworks created by Plaintiff in or about 1972.

7. A catalogue raisonné or images of all of Plaintiff's artworks that have been sold or transferred to others.

8. Documents concerning Plaintiff's standing and recognition in the art market, including any catalogues raisonnés, other scholarly compilations of Plaintiff's body of work, reviews, curatorial statements, exhibition catalogues, or any other forms of recognition from art experts and the art community at large.

9. Documents showing the full original listing on WORTHPOINT's website, in color, regarding the Artwork (or any part thereof) and/or Plaintiff's Biography.

10. Documents on which Plaintiff will rely in showing that the listing featuring the Artwork (including any part thereof) and/or Plaintiff's Biography remained on WORTHPOINT's website after January 1, 2017.

11. Documents and Communications, including any Agreements, as between Plaintiff and AskArt concerning the use of Plaintiff's Biography.

12. Documents and Communications regarding, referencing or relating to Plaintiff's licensing the use of Plaintiff's Biography to third parties, from 2010 to present, including but not

266984886v.2

**SA1911**

limited to any monetary compensation, if any, that Plaintiff may have received from third-parties for the use of Plaintiff's Biography.

13. Copies of Plaintiff's tax returns from 2010 to present.

14. Documents showing all artwork sales made by plaintiff from 2010 to present.

15. Copies of deposition transcripts from plaintiff's prior litigations, including the litigation concerning the Staten Island Ferry accident, in which Plaintiff testified as to her earnings as an artist.

16. Documents and Communications showing that Plaintiff lost art sales due to or after the publication of the listing incorporating the Artwork, Plaintiff's Biography (or any portions thereof) on WorthPoint's website.

17. Communications from and to any person other than the Defendants regarding the publication of the listing incorporating the Artwork or Plaintiff's Biography (or any portions thereof) on WorthPoint's website.

18. Copies of any receipts or proofs of any damages Plaintiff claims she suffered as alleged in this lawsuit.

## **INTERROGATORIES**

1. Identify the names and addresses of all persons who are believed or known by Plaintiff, her agents, or her past or current attorneys to have any knowledge concerning any of the issues in this Lawsuit; and specify the subject matter about which the witness has knowledge.

2. List all Documents that were provided to or returned to Plaintiff concerning the Artwork and/or Plaintiff's Biography, including but not limited to:

   a. communications from or to WORTHPOINT;

266984886v.2

    b.   communications from or to EAI Defendants; and

    c.   any documentation, notifications or otherwise related to the removal of the listing exhibiting the Artwork, Plaintiff's Biography (or any portion thereof) from WorthPoint's Website and/or from Google.

3. Describe each and every communication between Plaintiff and WORTHPOINT during the relevant time period, including whether such communication was in writing or be telephone.

4. Identify the date when Plaintiff first viewed the listing exhibiting the Artwork, Plaintiff's Biography (or any portion thereof) on WorthPoint's Website; the last date when Plaintiff viewed said listing and the URL at which such listing(s) appeared on WorthPoint's website.

5. Describe the steps taken by Plaintiff since 2016 to confirm whether the listing exhibiting the Artwork, Plaintiff's Biography (or any portion thereof) was removed from WorthPoint's Website.

6. Identify the names and addresses of all persons who prepared, created or assisted Plaintiff with the preparation of Plaintiff's Biography, and the time period when such person provided assistance.

7. Identify the names and addresses of all persons or entities to whom Plaintiff has given permission and/or license to use Plaintiff's Biography.

8. Identify the names and addresses of all persons with knowledge as to Plaintiff's standing and recognition in the art market.

9. Identify the names and addresses of all persons with knowledge as to Plaintiff's alleged loss of sales or income since the publication of the listing referencing or incorporating the Artwork (or any part thereof) and/or Plaintiff's Biography from WorthPoint's website.

PLEASE TAKE NOTICE, that the foregoing are continuing demands and should Plaintiff come into possession, custody or control of any responsive documents after her response, she shall immediately supplement her response with the provision of such material.

Dated:  February 25, 2022

<div style="margin-left: 40%;">

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

By: ___*s/ Jana Slavina Farmer*_____

Adam R. Bialek
666 Old Country Road
Suite 602
Garden City, NY 11530
Telephone: (212) 915-5143
Fax:  (212) 490- 3038
Adam.Bialek@wilsonelser.com
Jana S. Farmer
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Ave.
White Plains, NY 10604
(914) 872-7247 (Direct)
(914) 323-7001 (Fax)
Jana.Farmer@wilsonelser.com
***Attorneys for Defendant WorthPoint Corporation***

</div>

To:     Annamarie Trombetta
        *Plaintiff Pro Se*
        175 East 96th Street
        Apt. 12R
        New York, NY 10128

        Anderson Duff
        Hogan Duff, LLP
        Attorneys for Defendants
        Norb Novocin, Marie Novocin
        and Estate Auctions, Inc.
        43-10 Crescent St.
        Ste. 1217
        Long Island City, NY 11101
        (646) 450-3607

266984886v.2

**SA1914**

ajd@hoganduff.com

266984886v.2

**SA1915**

18-cv-00993-RA-SLC                                              File No. 19701.00006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ANNAMARIE TROMBETTA,

                Plaintiff,

    - against –

NORB NOVOCIN, MARIE NOVOCIN, ESTATE AUCTIONS, INC., ~~WILLIAM SEIPPEL~~ and WORTHPOINT CORPORATION,

                Defendants.

*WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP*
*Attorneys for Defendant*
*WORTHPOINT CORPORATION*
*150 East 42nd Street*
*New York, New York  10017*
*(212) 490-3000*

266984886v.2

**SA1916**

United States District Court
Southern District of New York

_____

   Annamarie  Trombetta
      Plaintiff
         vs.

  Norb Novocin, Marie Novocin  and
     Estate Auctions Inc.
William Sieppel and WorthPoint Corp.
       Defendants
 5 Concourse Parkway NE, Suite 2850
    Atlanta, Georgia 30328

_____

Case No.  18- CV- 0993-RA-HBP

**(RESPONSES TO RULE 37)**

**PLAINTIFF'S   THIRD  RESPONSE**

**TO      DEFENDANT**

**WORTHPOINT   CORPORATION**

**INTERROGATORIES**

  **I,  Annamarie Trombetta , state that I have read WorthPoint Corporation Requests**

**for Interrogatories,  Production of Documents and Notice of Admissions and my answers**

**to  those requests, which are true to the best of my knowledge, information, and belief.**

**I  declare under penalty of perjury that the foregoing is true and correct.**

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS THIRD**

**REQUESTS  FOR   INTERROGATORIES**

Plaintiff , pursuant to Rules 33  of the Federal Rules of Civil Procedure and the Local Rules of this Court, responds and objects to Defendants'  WorthPoint Corporation  Third  Request for Interrogatories as follows:

**PRELIMINARY STATEMENT**

1.  Plaintiff's investigation and development of all facts and  circumstances relating to this action is ongoing.  These responses and objections are made without prejudice to and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

2. By making the accompanying responses and objections to Defendant's requests for interrogatories and  documents .  Plaintiff does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this

**SA1917**

action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Plaintiff makes the responses and objections herein without in any way implying that it considers the requests and interrogatories, and responses to the requests and interrogatories, to be relevant or material to the subject matter of this action.

3.  A response to interrogatory  request or  an interrogatory stating that objections and/or indicating that documents will be produced shall not be deemed or construed that there are, in fact, responsive documents, that Plaintiff performed any of the acts described in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory, or that Plaintiff acquiesces in the characterization of the conduct or activities contained in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory.

4. Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

## GENERAL   OBJECTIONS

1. Plaintiff objects to each instruction, definition, and interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

 2. Plaintiff objects to each document request and interrogatory that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

3. Plaintiff objects to each interrogatory  request to the extent that it calls for production of a privilege log for internal documents of Plaintiff.  A request for such a log is unreasonable and unduly burdensome in light of the work product doctrine, governmental deliberative process privilege, and other privileges protecting such internal documents from discovery.

4. Plaintiff objects to each instruction, definition,, and interrogatory to the extent that it seeks, deliberative process privilegek product doctrine, or any other applicable privilege. Should any such disclosure by Plaintiff occur, it is inadvertent and shall not constitute a waiver of any privilege.

 5. Plaintiff objects to each instruction, definition, interrogatory request  as overbroad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Defendant from Defendant's own files, from documents or information in Defendant's possession, or from documents or information that Defendant previously produced to Plaintiff. responding to such requests and interrogatory would be oppressive, unduly burdensome, and

**SA1918**

unnecessarily expensive, and the burden of responding to such requests and interrogatory is substantially the same or less for Defendant as for Plaintiff. This objection encompasses, but is not limited to, documents and answers to interrogatories previously produced by Plaintiff in the course of Plaintiff's civil investigation.  All such documents and information will not be produced.

6. Defendant's interrogatory calls for the production of documents and information that were produced by  the Plaintiff and by other entities and that may contain confidential, proprietary, or privileged information.

7. To the extent any of Defendant's d interrogatory seek documents or answers that include expert material, including but not limited to survey materials, Plaintiff objects to any such requests and interrogatory as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court.

8. Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Plaintiff does not waive its right to amend its responses

## OBJECTIONS  TO  INSTRUCTIONS  AND  DEFINITIONS

1.Plaintiff objects to over broad and unduly burdensome to the extent it attempts to extend the scope of this document request to documents in the possession, custody, or control of individuals, agencies, or entities other than the  Plaintiff and its present employees, principals, officials, agents, attorneys, economists, and or other  consultants either involved   to or reviewing this case.

2. Plaintiff objects to  Defendants interrogatories to the extent that it purports to impose obligations greater than those set forth in the Federal Rules of Civil Procedure. Plaintiff further objects  to the extent that it calls for documents protected from disclosure by the  Plaintiff's privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege.

3. Plaintiff objects to"third party" to the extent it relies on the undefined term "third party" to those individuals and entities interviewed  or somehow in connection to or by Plaintiff .  In the course of its civil investigation, Plaintiff will treat the term "third party," as extending to all individuals and entities, not named as parties to this lawsuit, listed on Plaintiff's Rule 26(a)(1) Initial Disclosure.

**SA1919**

4. Plaintiff objects to regarding "statement" to the extent it relies on the undefined term and the defined term "third party." Therefore, there are no "statements" as that term is defined. Subject to and notwithstanding this objection, Plaintiff will use the more expansive definition of "third party" that it has provided i and it will treat "statements" as covering those made by the individuals and entities listed in Plaintiff's Rule 26(a)(1) Initial Disclosures during Plaintiff's civil investigation to the extent that it uses the undefined term "during." "During" can be construed to mean "at the time of," instead of "in the course of." To the extent that "during" is intended to mean "at the time of," Plaintiff objects to this definition as overbroad because it would call for materials unrelated to this action. Plaintiff will construe "during" to mean "in the course of."

5. Plaintiff objects on the grounds that it is vague and ambiguous, that it calls for the production of documents that are irrelevant to this action and not reasonably calculated to lead to the discovery of admissible evidence, and that it is overly broad and unduly burdensome, to the extent that it calls for the production of documents in the format as they may be maintained in files outside of the principal investigatory and case files. Copies of certain materials, including internal memoranda to which documents obtained from outside parties may have been attached, are circulated to and may be maintained in files kept in the WorthPoint files other than the principal investigatory and case files. The originals of all such memoranda and documents are maintained in the principal investigatory and case files, and any handwritten annotations or comments that may be added to such documents by the Plaintiff in this case would be protected by the work product doctrine, governmental deliberative process privilege, or other applicable protection . Plaintiff objects to producing these duplicative, privileged materials from files other than the principal investigatory and case files. Plaintiff will produce responsive, non-privileged documents in the order or arrangement in which they are maintained within the principal investigatory and case files.

6. Plaintiff objects to documents "in your possession, custody, or control" and "created, transmitted, or received by you" to the extent that it purports to impose obligations greater than those set forth in the Federal Rules of Civil Procedure. Plaintiff further objects to this instruction as over broad and unduly burdensome to the extent it seeks (a) documents in the possession, custody, or control of individuals, agencies, or entities other than the consultants either assigned to or reviewing this case, (b) documents and answers previously produced by Plaintiff in the course of Plaintiff's civil investigation (c) documents in possession, custody, or control or any other lawful privilege is applicable.

7. Plaintiff objects to interrogatories and or the production of any documents or things that may be confidential prior to the entry of a protective order by the U.S. District Court, District of New York.

**SA1920**

## PLAINTIFF'S  RESPONSE  TO  WORTHPOINT

## CORPORATION'S  THIRD SET OF   INTERROGATORIES

1.  **Identify the names and addresses of all persons who are believed or known by Plaintiff, her agents, or her past or current attorneys to have any knowledge concerning any of the issues in this Lawsuit; and specify the subject matter about which the witness has knowledge.**

**PLAINTIFF'S THIRD RESPONSE TO  INTERROGATORY NO. 1**

1)   Peter Trippi, Editor of Fine Art Connoisseur Magazine  Streamline Publishing, Inc. Redacted - Proprietary Redaction

2)   Gayle Skluzacek Abigail Hartmann Associates Redacted - Proprietary Redaction

3)  Peter Drake, Provost New York Academy of Art, Redacted - Proprietary Redaction

4)  Dr. Joseph V. Scelsa Director & Founder, Italian America Museum Redacted - Proprietary Redaction

5) Alex  Raspa Alex (Alejandro) Raspa   Post Production Sound Senior Technician & Instructor Post Production CenterMaurice Kanbar Institute of Film & Television Tisch School of the Arts, New York University Redacted - Proprietary Redaction

6) Vanessa Ploski Redacted - Proprietary Redaction

7) Scott Goodwillie— Redacted - Proprietary Redaction

8) Willie Chu Redacted - Proprietary Redaction

9)  Daniel Caropreso Magicx Studios Redacted - Proprietary Redaction

10) Eileen Guggenheim long standing Board Member at  New York Academy of Art Redacted - Proprietary Redaction

2. **List all Documents that were provided to or returned to Plaintiff concerning the Artwork and/or Plaintiff's Biography, including but not limited to:**
   **a. communications from or to WORTHPOINT;**
   **b. communications from or to EAI Defendants; and**
   **c. any documentation, notifications or otherwise related to the removal of the listing exhibiting the Artwork, Plaintiff's Biography (or any portion thereof) fromWorthPoint's Website and/or from Google.**

**PLAINTIFF'S THIRD RESPONSE TO  INTERROGATORY NO.2**
**a.   communications from WORTHPOINT;**

  Attached here to  are a series of solicitations    email sent to Plaintiff email AFTER Plaintiff
   ended her one month membership to  WorthPoint's webssite in 2016.

 1) Email to and from Will Seippel dated February 20, 2016
 2) Email from WorthPoint   to Plaintiff on October 13, 2016
 3) Plaintiff unsubscribed from WorthPoint October 26, 2016.
 4)  Email from WorthPoint  to Plaintiff on October 27, 2016
 5)  Email from WorthPoint  to Plaintiff on  December 24, 2016
 6)  Email from WorthPoint  to Plaintiff  on  January 31, 2017
 7) Email from WorthPoint  on  April 24, 2017 Bate Stamped  Plaintiff 00036.
 8) Plaintiff unsubscribed from WorthPoint January 31, 2017  Bate Stamped  Plaintiff 00052.
 9) Plaintiff unsubscribed from WorthPoint February 2, 2017  Bate Stamped  Plaintiff 00048.
 10) Plaintiff unsubscribed from WorthPoint March 15 2017  Bate Stamped  Plaintiff 00035.

**b. communications from or to EAI Defendants;**

  Attached  hereto  see photo of
1) Jan 10, 2017 phone call from Norb Novicin to Plaintiff.  The
   Novicin  Placeholder  Plaintiff's Evidence 0045.
 2) Anderson Duff Feb. 11 2020 Offer of Judgement -2page
 3)  Two emails to Revision Legal and Samantha Troiani

**c.  any documentation, notifications or otherwise related to the removal of the listing**
    **exhibiting the Artwork, Plaintiff's Biography (or any portion thereof) from**
    **WorthPoint's Website and/or from Google**  Documents sent  on June 7, 2022

No,  00016 to 00050  and on June 8, 2022   00050 to 00075.
  Attached hereto are artists Anne Trombetta and Anita Trombetta who did not sign
  "A.Trombetta"

**3.  Describe each and every communication between Plaintiff and**
    **WORTHPOINT  during the relevant time period, including whether such**
    **communication was in  writing  or be  telephone.**

**PLAINTIFF'S THIRD RESPONSE TO  INTERROGATORY NO.3**

Plaintiff objects to this request as  being overly broad and outside the scope of the Plaintiff's
control or documentation  Plaintiff objects to each instruction, definition, document request, and

**SA1922**

interrogatory as overly broad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Defendant from Defendant's own files. Notwithstanding the Plaintiff has filed in the case documents. In mid or late August of 2015 the Plaintiff found in a Google Search under my profession "Annamarie Trombetta Artist" , under Annamarie Trombetta under "1972 Original OilMan With Red Umbrella" a links to the WorthPoint website. The links include "Marilyn Monroe Photo by Michael Ochs 1998.

To recap, in August 2015, when the Plaintiff first found the EAI misattribution, ad, I diligently pursued e Bay and WorthPoint in order to get the fake information under my name, professional listing " etc. Artist Annamarie Trombetta" off the internet. In 2015 Plaintiff did not receive a return phone call or email from WorthPoint. I then pursued eBay . Around the fall of 2015 I did speak with Anita Brooks from WorthPoint by phone. Ms. Brooks informed me that WorthPoint was not the seller of the 1972 Original Oil Painting. In order to remove the fake 1972 interent posting, Plaintiff was told by Anita Brooks that I had to contact eBay to locate the seller. The seller was then to contact eBay. In November 26, 2016 in Plaintiff's evidence bate stamped as 00019 this misinformation to the Plaintiff is duly documented.
Plaintiff's date of first finding the WorthPoint false "1972 Original Oil Man With Red Umbrella on the internet" in early August 2015 See Plaintiff's evidence 00020 Email to NYPD Detective Randy Rose and September 3, 2015 email to lawyer Aaron M. Rubin. he last date that I have recorded regarding the False 1972 oil painting is May 7, 2017.
WorthPoint, was the first source that I had to contacted. I was presented with incorrect information which contributed to the extended amount of time I had to invest to remove the Misattributed Painting, the photo with the signature "A. Trombetta" with the false CMI. Below is the response email from November 2015 from Anita B who kept telling me to contact eBay in order to get the listing off the internet. An abnormal amount of calls and emails proceeded the email below. In like fashion, when I did communicate to Anita B. I was NOT the artist, a new series of emails and phone calls was required of the Plaintiff . All written communication to WorthPoint is below. Email from Bate stamped 00019 **NOV 16, 2015** | 08:35AM EST
**<u>Anita Brooks</u>** <u>WorthPoint, Inc.</u>

Filed in this case is a series of communication with / to WorthPoint from Plaintiff to remove the Fraudulent link of the 1972 Original Oil Painting with false CMI . The facts remain, **WorthPoint** Corporation in February thru March 2016, January 2017 **FAILED to Contact me to inform me WHY the post was still seen online nor did they CONFIRM the date or the fact that the False Trombetta Posting was permanently taken down . According to the DMCA rules WorthPoint had a legal responsibility to remove it and to inform me ASAP.**

1) Plaintiff's email **o**n November 26, 2015 email to eBay that included the Nov. 16, 2015 email confronted eBay about the false post that was coming up on the internet under my name.

2) Plaintiff's email onJanuary 22, 2016 to support@worthpoint.com to inquire about the false posting. Case 1:18-cv-00993- Document 33 Filed 01/17/20 Page 23 of 63

**SA1923**

3) Plaintiff's email on January 29, 2016 to support@worthpoint.desk-mail.com  I submitted the  Fraudulent  Takedown  Ticket  #56607 Case 1:18-cv-00993- Document 33 Filed 01/17/20 Page 25 of 63

4) Plaintiff's email  on February 1, 2016 to the email support@worthpoint.com  to Anita B and WorthPoint webmaster Greg Watkins.

5) Plaintiff's  phoned on February 3, 2016  an d  spoke for almost 18 minutes with webmaster Greg Watkins.  I informed  Watkins that  I was not the Artist. I would have been nine years old and Mr. Watkins  laughed.     I asked Mr. Watkins to permanently  remove the FRAUDULENT  LINK from the WorthPoint website. Mr. Watkins gave me the email of Will Seippel and spelled it out. Watkins informed me that Seippel was at a conference in Vegas and that I should contact Seippel in writing .  I gave and spelled my email at the time, "trombettaart@yahoo.com to Mr. Watkins to give to Mr. Seippel.will@worthpoint.com I requested an immediate removal on 2/3/16. From Feb. 3rd to  Feb. 20th the internet post was still active on the internet.

6) Plaintiff's on February 20,  2016   emailed  will@worthpoint.com support@worthpoint.com In  Case 1:18-cv-00993-RA-SLC Doc.  33 Filed 01/17/20 Page 26-27-28 of  63. I also submitted a second Fraudulent **Ticket #57565- on Feb. 20, 2016 Doc.33 Page 29.**

7) Plaintiff contacted Mr. Seippel and Mr. Watkins on **February 29, 2016  again**  regarding removing  the fraudulent post  I still saw online WorthPoint never emailed to  confirm removal of it.

8) Plaintiff's on  March 1, 2016,   contacted  Mr. Seippel once again which is duly documented . I  still  saw my  fake post online and did not receive any confirmed removal from WorthPoint  Case 1:18-cv-00993-RA-SLC Document 33 Filed 01/17/20 Page 30 of 6.

9) Plaintiff's on March 7, 2016again emailed  Mr. Seippel.  I had  to confirm that the false links   were permanently removed . **Case 1:18-cv-00993-RA-SLC Document 33 Filed 01/17/20 Page 36 of 63**

10) Plaintiff's on March 8, 201**6**  was my last email in the YEAR 2016 after 8 emails and several phone calls  Duly documented  in an email above on March 3, 2016 Jason Packer requested from Mr. Seippel the active link regarding the TITANIC which was Linked to the 1972 Misattribution Mr. Packer  was informing Seippel if that he can file a "TEMPORARY removal request   from Google for the URL .  In addition in the same email is the same link that is a  GOOGLE  CACHE. This   email was sent  to me in a string of responses by Will Seippel which included  Mr. Packer.

11) **Plaintiff's onJanuary 4, 2017,**  once again had to  email and contact in writing  Will Seippel as I found the Fraudulent listing  on the WorthPoint website  under my name on the internet.  **IN THIS  EMAIL I REQUESTED A WRITTEN RESPONSE FROM WILL SEIPPEL WHO FAILED TO DO SO.   Please Note** the **temporary removal** take down

**SA1924**

my Jason Packer—duly documented on the page above—Dates March 2nd and March 3, 2016.

12) Plaintiff's on April 27, 2017  opened an email  from WorthPoint despite several "Unsubscribe" filings to be removed from WorthPoint's  email notification's listing. The address was insider@ worthpoint.com with the date of April 24, 2017.  After opening this email, I Googled my name and once again found the Fraudulent listing under my name. The last print out of the listing I have was  on May 7, 2017. The search to check for the Fraudulent listing under my name. was due to the unwanted email from insider@ worthpoint.com.

13) The last date that I have recorded regarding the False 1972 oil painting is May 7, 2017.


**6. Identify the names and addresses of all persons who prepared, created or assisted Plaintiff  with the preparation of Plaintiff's Biography, and the time period when such person  provided assistance.** Plaintiff reserves all objections as to the competence, relevance, materiality, admissibility, or privileged status of any information**. Please SEE WorthPoint's Stamped documents of Plaintiff's evidence 000004-Vanassa Ploski letter—000036 and 000037 Plaintiff's draft notes of my biography—-Ellen Cimini Editor June 2003 two sessions evidence # 000038  and Website Designer Amy Kirchman-See Evidence sent to Anderson Duff**

### PLAINTIFF'S THIRD RESPONSE TO  INTERROGATORY NO.6


1)   Plaintiff  self authored my Biography from  spring/ summer 2003 Produced Bate Stamped 00025 and 0026.

2)  I read my self authored my Biography in the  summer 2003 to Vanessa Ploski Vanassa Ploski  letter—Bate Stamped  00004 with the  address is on April 2022 Letter PO Box 854,  Nyack, New York 10960.

3 )  In 2003 I hired Editor Ellen Cimini to edit and  proof read my self authored Biography Ellen Cimini Editor  in June 2003 I  two sessions evidence # 000027 .

4)   My self authored biography and website were coded and co-designed with Website Designer Amy Kirchman- in 2003  Produced Bate Stamped 00073.

**SA1925**

**8. Identify the names and addresses of all persons with knowledge as to Plaintiff's standing  and recognition in the art market.**

Plaintiff  generally objects to this interrogatory because it seeks information from third parties and information not within its possession, custody, control, or personal knowledge.   Plaintiff further  object to  each and every  request  as it is overly broad, devoid of any  time frame.

**PLAINTIFF'S THIRD RESPONSE TO  INTERROGATORY NO. 8**

1)   Peter Trippi, Editor of Fine Art Connoisseur Magazine  Streamline Publishing, Inc. 331 SE Mizner Blvd Boca Raton, Florida 33432.   Art Status
2) Gayle Skluzacek Abigail Hartmann Associates PO Box 11 Hollowville New York 12530   Art Status
3) Peter Drake, Provost New York Academy of Art, 111 Franklin Street New York NY 10013 Art Status
4) Dr. Joseph V. Scelsa Director & Founder, Italian America Museum 155 Mulberry Street New York New York  10013   Art Status
5) Alex  Raspa Alex (Alejandro) Raspa   Art Status  and finding fake listing
   Post Production Sound Senior Technician & Instructor
   Post Production CenterMaurice Kanbar Institute of Film & Television
   Tisch School of the Arts, New York University  721 Broadway, Room 1163
   New York, NY 10003
6) Vanessa Ploski  PO Box 854, Nyack, New York 10960 Art Status /Website Designs
7) Scott Goodwillie— Gallery Tour Guide/Artist
8) Willie Chu  92 St. Paul's Avenue Staten Island New York. 10301 Google Search
9)  Daniel Caropreso Magicx Studios  248 Rose Ave  Staten Island, NY 10306  Websites
10) Eileen Guggenheim Board Member  New York Academy of Art  111 Franklin Street New York  NY  10013  Art Status

June 27,  2022                                    Respectfully Submitted,
Annamarie Trombetta
175 East 96th Street  (12 R)        ——-  Annamarie Trombetta  ————-
New York, New York, 10128
Tel. (212) 427-5990

_____

                              Annamarie Trombetta

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 277 of 293    SA1926

**Cahill, John**

| | |
|---|---|
| **Subject:** | RE: Trombetta v WorthPoint Witness disclosure |

**From:** Haimson, Nicole
**Sent:** Monday, August 8, 2022 3:50 PM
**To:** Annamarie Trombetta ▮▮▮▮▮▮
**Cc:** Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>; Bialek, Adam <Adam.Bialek@wilsonelser.com>
**Subject:** RE: Trombetta v WorthPoint Witness disclosure
**Importance:** High

Ms. Trombetta,

To follow up on Adam's prior email and clarify, discovery for fact witnesses is governed by FRCP Rule 26(a)(1) and discovery for experts is governed by FRCP Rule 26(a)(2).  See, https://www.law.cornell.edu/rules/frcp/rule_26.

The Federal Rules of Evidence address what a "fact witness" can do in Rule 701:

*Rule 701. Opinion Testimony by Lay Witnesses*

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The Federal Rules of Evidence address what an "expert witness" can do in Rules 702, 703, and 705:

*Rule 702. Testimony by Experts*
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Rule 703. Bases of an Expert*

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the

1

opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

*Rule 705. Disclosing the Facts or Data Underlying an Expert*

Unless the court orders otherwise, an expert may state an opinion — and give the reasons for it — without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination.

As such, to the extent the witnesses you describe below as being "experts" intend to present evidence under Rules 702, 703, or 705 at trial, pursuant to FRCP Rule 26(a)(2), you must make an expert disclosure.

The expert disclosure must be in the form of a **written report prepared and signed by each expert** and which contains the following information: **a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.**

**Please confirm as soon as possible whether you will be making expert disclosures for these witnesses or whether they are fact witnesses.**

Thank you.

Nicole Haimson
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
518.320.3608 (Direct)
516.330.8099 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
nicole.haimson@wilsonelser.com

**From:** Annamarie Trombetta Redacted - Proprietary Redaction
**Sent:** Wednesday, July 27, 2022 9:59 AM
**To:** Bialek, Adam <Adam.Bialek@wilsonelser.com>
**Cc:** Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>
**Subject:** Re: Trombetta v WorthPoint Witness disclosure

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 278 of 293

SA1927

**[EXTERNAL EMAIL]**

Mr. Bialek,

Please Note---Last week  you  and Ms. Farmer sent  Plaintiff  two  individual and separate emails requests regarding the subject matter of my witnesses.  I sent two separate replies to Ms. Farmer which did not include my inquiry regarding the updated witness list.
 I specifically  asked you alone Mr. Bialek for an update on your witnesses.   I did not ask Ms. Farmer, for an update on the witnesses I only asked you in my response email to you.   I did  acknowledged and thanked Ms. Farmerfor her response.

  I am not clear on the nuanced  difference between  factual witness and an expert.  Many of my  witnesses are experts in their  field.
Peter Trippi --Expert
Gayle Skluzacek-Expert
Dr. Joseph Scelsa-Expert
Peter Drake-Expert
Alex Raspa -Fact
Scott Goodwillie-Fact
Willie Chu-Fact
Vanessa Ploski-Fact and Expert
Daniel Caropreso-Expert
Eileen Guggenheim-Expert

In response to your request for dates in September I already answered you below but will add on the 5th thru the 9th
And, again, please provide us with dates that you are available in September so we may schedule their depositions.

**To avoid  further confusion and to accommodate your firm's schedule - Please set and confirm  3 dates---- August 26th  Yes or No**
**---- August 25th  Yes or No**
**---- any day the week of  August 29th  Yes or No**

**Upon confirming a date please indicate a TIME and the prospective length of the deposition.**
**Sincerely,**
**Annamarie Trombetta**

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 279 of 293

SA1928

On Mon, Jul 25, 2022 at 6:49 PM Bialek, Adam <Adam.Bialek@wilsonelser.com> wrote:

Dear Ms. Trombetta:

Despite your claim this morning that you did NOT ask WorthPoint to update its witness list, below is your email from Friday, where you actually do request that. I do not know why we continue to have this problem where you claim you did not do something you did, or you claim that you did something you didn't.

As for your witnesses, are these fact witnesses or experts? Your subject disclosure is confusing. Fact witness disclosure is different from expert witness disclosure. Fact witnesses are governed by FRCP Rule 26(a)(1) and experts are covered under FRCP Rule 26(a)(2).

And, again, please provide us with dates that you are available in September so we may schedule their depositions.

Thank you in advance for your attention to this matter.

Regards,

Adam

Adam Bialek
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212.915.5143 (Direct)
917.538.0616 (Cell)
212.490.3000 (Main)

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 280 of 293

SA1929

212.490.3038 (Fax)
adam.bialek@wilsonelser.com

**From:** Annamarie Trombetta [mailto<span style="background-color:red">Redacted - Proprietary Redaction</span>
**Sent:** Friday, July 22, 2022 8:06 AM
**To:** Bialek, Adam <Adam.Bialek@wilsonelser.com>
**Cc:** Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>
**Subject:** Re: Trombetta v WorthPoint Witness disclosure

**[EXTERNAL EMAIL]**

Mr. Bialek, Ms. Farmer,

As per your interrogatory and your request, I have furnished you will the attorneys names in the Second Request.

I have complied with the addresses as per your Third Request as you can please review below.

I have also complied with  for Federal Rule Civil Procedure 26 (a) (1) which states the name and  if known the addresses. Please see below  **FRCP 26(a)(1)(A)(i): The name, and, <span style="color:red">if known,</span> the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.**

Your firm asked Plaintiff for the names and addresses of all persons. and according to FRCP I am in compliance.

Please update and inform the Plaintiff on WorthPoint's names and addresses of your witnesses at trail.

Below are Plaintiff's responses to the subject matter which is to give testimony on behalf of Plaintiff.

5

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 281 of 293     SA1930

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 282 of 293

SA1931

1.  **Identify the names and addresses of all persons who are believed or known by Plaintiff, her agents, or her past or current attorneys to have any knowledge concerning any of the issues in this Lawsuit; and specify the subject matter about which the witness has knowledge.**

**PLAINTIFF'S THIRD RESPONSE TO INTERROGATORY NO. 1**

1) Peter Trippi, Editor of Fine Art Connoisseur Magazine  Streamline Publishing, Inc. Redacted - Proprietary RedactionRedacted - Proprietary Redaction

2) Gayle Skluzacek Abigail Hartmann Associates Redacted - Proprietary Redaction Redacted - Propriet

3) Peter Drake, Provost New York Academy of Art, Redacted - Proprietary Redaction Redacted - Propri

4) Dr. Joseph V. Scelsa Director & Founder, Italian America Museum Redacted - Proprietary Reda Redacted - Proprietary Redaction

5) Alex  Raspa Alex (Alejandro) Raspa   Post Production Sound Senior Technician & Instructor Post Production CenterMaurice Kanbar Institute of Film & Television Tisch School of the Arts, New York University Redacted - Proprietary Redaction
Redacted - Proprietary Redaction

6) Vanessa Ploski Redacted - Proprietary Redaction

7) Scott Goodwillie Redacted - Proprietary Redaction

8) Willie Chu Redacted - Proprietary Redaction

9) Daniel Caropreso Magicx Studios Redacted - Proprietary Redaction Redacted -

10) Eileen Guggenheim long standing Board Member at  New York Academy of Art Redacted - Proprietary Redaction

1) Peter Trippi  will give testimony on the importance of an artist's name and reputation in reference to the financial net worth of an artist's name and the danger  of a false circulation of an artist's signature on the internet.

 2) Gayle Skluzacek  in like fashion will give testimony on reputation in reference to the financial net worth of an artist's name. Specifically the danger of fakes and forgeries and how it can effect the values of the artist worth and the confusion in authenticating an artist's  signature

3) Peter Drake is Provost/Artist   will give testimony on  the New York Academy,  an artists's information, reputation in reference to the financial net worth of an artist's name and the danger  of a false circulation of an artist's signature on the internet.

4)Dr. Scelsa,  and in like fashion will give testimony on Plaintiff's successful exhibition in 2015, reputation in reference to the financial net worth of an artist's name -the success of my 2015 exhibition and the listing of the Italian American Museum with the WorthPoint  False listing that appeared with the " 1972 Original Oil Man With Red Umbrella "and the danger  of a false circulation of an artist's signature on the internet.

5) Alex Raspa will give testimony on the content of the ad and the impact this ad had on my personal and professional life and the danger  of a false circulation of an artist's signature on the internet.

 6)Vanessa Ploski will give testimony on the content of the ad and the impact this ad had on my personal and professional life and the danger  of a false circulation of an artist's signature on the internet.

7)Scott Goodwillie will give testimony on the content of the ad and the impact this ad had on my personal and professional life related to obtaining gallery representation.

8) Willie Chu will give testimony on contacting G-suite /Google and the impact this ad had on my personal and professional life.

9) Daniel Caropreso will give testimony the impact this ad had on my personal and professional life and websites.

10) Eileen Guggenheim will give character witness testimony on my long standing reputation from art student to professional artist.  Secondly  she will give testimony on the importance of an artist's name and reputation in reference to the financial net worth of an artist's name and the danger  of a false circulation of an artist's signature on the internet and the impact this ad had on my personal and professional life.


Please confirm receipt of this email.

Annamarie Trombetta




On Tue, Jul 19, 2022 at 8:27 PM Bialek, Adam <Adam.Bialek@wilsonelser.com> wrote:

  Dear Ms. Trombetta:

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 283 of 293

SA1932

In Plaintiff's Third Response to Interrogatory No. 1, you identify 10 witnesses. However, you failed to provide the phone number for each individual and you failed to "specify the subject matter about which the witness has knowledge." As such, and in accordance with Rule 26(a), please provide such information for each of the 10 witnesses you have identified.

Thank you in advance for your attention to this matter.

Regards,

Adam

Adam Bialek
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212.915.5143 (Direct)
917.538.0616 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
adam.bialek@wilsonelser.com

CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system.

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 284 of 293
SA1933

For further information about Wilson, Elser, Moskowitz, Edelman & Dicker LLP, please see our website at www.wilsonelser.com or refer to any of our offices.

Thank you.

CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman & Dicker LLP, please see our website at www.wilsonelser.com or refer to any of our offices.
Thank you.

SA1934

**Cahill, John**

| | |
|---|---|
| **From:** | Annamarie Trombetta <span style="background:black">██████████</span> |
| **Sent:** | Monday, September 12, 2022 1:11 PM |
| **To:** | Farmer, Jana S. |
| **Cc:** | Bialek, Adam; Haimson, Nicole; Anderson Duff |
| **Subject:** | Re: Where is my Deposition ? When is the Deposition of Norb and Marie NovocinWitness Status |
| **Attachments:** | PL EV000326Peter Drake Dean Provost NYAA Letter Endorsement REMOVAL AS WITNESS 1.pdf; PL EV 000325Eileen Guggenheim Letter endorsement REMOVAL AS WITNESS .pdf; PL.EV 000327Alex Raspa NYU Letter REMOVAL AS WITNESS.pdf; Patick Michael CV.pdf; Gayle Skluzacek-A Full Resume 2022.pdf |

**[EXTERNAL EMAIL]**

To All Parties,

Witness Update--- Three Removals from Plaintiff's Witnesses
Please Review the Letter by Witnesses Eileen Guggenheim-- **Plaintiff's Evidence 000325** ---Remove as Witness
Please Review the Letter by Witnesses Peter Drake -- **Plaintiff's Evidence 000326** ---Remove as Witness
Please Review the Letter by  Alex Raspa-- **Plaintiff's Evidence 000327** ---Remove as Witness

NEW  EXPERT WITNESS   Patrick Michael O'Leary  is attached CV
EXPERT WITNESS  Gayle Skluzacek   is attached CV

Witnesses that I am awaiting  Confirmation.  It should happen if not today then  this week.
 1) Dan Caropreso
 2) Dr. Joseph V. Scelsa

Submitted September 12, 2022
Annamaire Trombetta


On Sun, Sep 11, 2022 at 4:33 PM Farmer, Jana S. <Jana.Farmer@wilsonelser.com> wrote:

> Ms. Trombetta,

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 286 of 293

SA1935

The transcript is not yet ready from the court reporter. The turnaround is two weeks so we expect getting it this week.

Novocins deposition was scheduled for September 21st.  It was scheduled in your presence at your deposition.

Please be advised that we will be serving subpoenas on your witnesses starting Monday. If any do not wish to appear and you will be withdrawing them, please advise as soon as possible.

Jana S. Farmer
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, NY 10604
914.872.7247 (Direct)
914.552.9644 (Cell)
914.323.7000 (Main)
914.323.7001 (Fax)
jana.farmer@wilsonelser.com

**From:** Annamarie Trombetta [mailto:█████████████]
**Sent:** Friday, September 9, 2022 7:18 PM
**To:** Farmer, Jana S. <jana.farmer@wilsonelser.com>; Bialek, Adam <Adam.Bialek@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>
**Subject:** Where is my Deposition ? When is the Deposition of Norb and Marie NovocinWitness Status

**[EXTERNAL EMAIL]**

To All Parties.

It has been eleven days since my nine hour deposition. When will I be receiving it to correct and set forth the requested supplemental responses??

2

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 287 of 293

SA1936

Secondly, Plaintiff is requesting the date and time for the deposition date for Norb and Marie Novocin.  To date nothing has been scheduled or conveyed to the Plaintiff.

Last, upon the return and confirmation of all my witnesses I will be informing you of my updated status for witness as soon as possible on Monday September 12, 2022.

 Please  take note and review the email dated August 7, 2022 which states the return date of September 8, 2022 for Ms. Skluzacek.

Annamarie Trombetta

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to

SA1937

SA1938

any of our offices.

Thank you.

4

**Cahill, John**

| | |
|---|---|
| **From:** | Annamarie Trombetta |
| **Sent:** | Thursday, September 15, 2022 3:56 PM |
| **To:** | Haimson, Nicole; Farmer, Jana S.; Bialek, Adam; Anderson Duff |
| **Subject:** | Expert Witnesses |
| **Attachments:** | Curriculum Vitae Joseph V. Scelsa .pdf; Expert Witness Patrick Michael O'Leary.pdf |

**[EXTERNAL EMAIL]**

To All Attorneys and Parties,

At the end of June 2022 I sent my list of witnesses to you.

To date three have been removed and have furnished letters stating the reasons for their departure.

Attached please find the CV of Expert Witness Dr. Joseph V. Scelsa --Founder and Director of the Italian American Museum and Advocate for Italian Americans.

Attached please find the response and rates from Expert Witness Patrick Michael O'Leary.

I am still waiting to hear from Peter Trippi and Dan Caropreso due to the unknown date of the trial and the schedules of these individuals.

Submitted September 15, 2022
Annamarie Trombetta

**Cahill, John**

| | |
|---|---|
| **From:** | Haimson, Nicole <Nicole.Haimson@wilsonelser.com> |
| **Sent:** | Wednesday, September 28, 2022 9:00 AM |
| **To:** | █████████████████████ |
| **Cc:** | Farmer, Jana S.; Bialek, Adam; Anderson Duff |
| **Subject:** | RE: Expert Witnesses |

Ms. Trombetta,

Writing to follow up about the below.

Best,

Nicole Haimson
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
518.320.3608 (Direct)
516.330.8099 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
nicole.haimson@wilsonelser.com

**From:** Haimson, Nicole
**Sent:** Monday, September 19, 2022 12:48 PM
**To:** Annamarie Trombetta <████████████████████>
**Cc:** Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Bialek, Adam <Adam.Bialek@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>
**Subject:** RE: Expert Witnesses

Ms. Trombetta,

Based on your recent emails, it is our understanding that the following individuals will be serving as your expert witnesses:

- Dr. Joseph V. Scelsa;
- Patrick Michael O'Leary; and

1

- Gayle Skluzacek

Please 1) confirm this is accurate; 2) provide your expert disclosures in accordance with FRCP Rule 26(a)(2) as soon as possible; and 3) let us know your availability for a meet and confer to discuss expert discovery.

Best,



Nicole Haimson
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
518.320.3608 (Direct)
516.330.8099 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
nicole.haimson@wilsonelser.com

**From:** Annamarie Trombetta ████████████████████
**Sent:** Thursday, September 15, 2022 4:51 PM
**To:** Farmer, Jana S. <jana.farmer@wilsonelser.com>; Bialek, Adam <Adam.Bialek@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>
**Subject:** Re: Expert Witnesses


**[EXTERNAL EMAIL]**


Please see the attached documents to accompany Dr. Scelsa'a CV

On Thu, Sep 15, 2022 at 3:55 PM Annamarie Trombetta <████████████████> wrote:

To All Attorneys and Parties,

At the end of June 2022 I sent my list of witnesses to you.

To date three have been removed and have furnished letters stating the reasons for their departure.

Case: 25-817, 07/17/2026, DktEntry: 87.1, Page 292 of 293

SA1941

Attached please find the CV of Expert Witness  Dr. Joseph V. Scelsa --Founder and Director of the Italian American Museum and Advocate for Italian Americans.

Attached please find the response and rates  from Expert Witness Patrick Michael O'Leary.

I am still waiting to hear from Peter Trippi and Dan Caropreso due to the unknown date of the trial and the schedules of these individuals.

Submitted September 15, 2022
Annamarie Trombetta

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.
Thank you.