# 25-817-cv

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT

➤◄

ANNAMARIE TROMBETTA, ARTIST,

*Plaintiff-Appellant,*

*v.*

NORB NOVOCIN, MARIE NOVOCIN,
ESTATE AUCTIONS, INC., WORTHPOINT CORPORATION,

*Defendants-Appellees,*

WILLIAM SEIPPEL, WORTHPOINT.COM,
JASON PACKER, EMPLOYEE AT WORTHPOINT CORPORATION,

*Defendants.*

———————————

*On Appeal from the United States District Court
for the Southern District of New York*

---

## SUPPLEMENTAL APPENDIX
## VOLUME 10 OF 12
## Pages SA2208 to SA2481

---

WILSON ELSER MOSKOWITZ EDELMAN
& DICKER LLP
*Attorneys for Defendant-Appellee
WorthPoint Corporation*
150 East 42nd Street, 23rd Floor
New York, New York 10017
212-490-3000



**Table of Contents**

**Page**

**Volume 1**

Proposed Amended Complaint, dated January 17, 2020,
with Exhibits ................................................................... SA1

Plaintiff's Response in Opposition to Defendant's Motion to
Dismiss Amended Complaint, dated February 21, 2020,
with Exhibits ................................................................... SA64

Opinion and Order of the Honorable Sarah L. Cave,
dated March 19, 2020 ..................................................... SA112

Protective Order of the Honorable Sarah L. Cave,
so-ordered on February 16, 2022 .................................... SA126

Order of the Honorable Sarah L. Cave,
so-ordered on December 8, 2022 ..................................... SA130

Order of the Honorable Sarah L. Cave,
so-ordered on December 20, 2022 ................................... SA131

Memorandum by Plaintiff in Support of Motion
for Leave to File a Proposed Amended Complaint,
dated December 23, 2022 ................................................ SA134

Proposed Second Amended Complaint,
dated December 23, 2022 ................................................ SA216

Exhibits to Memorandum by Plaintiff in Support of Motion
for Leave to File a Proposed Amended Complaint ......................... SA237

Order of the Honorable Sarah L. Cave,
dated December 29, 2022 ................................................ SA264

Order of the Honorable Sarah L. Cave,
dated February 2, 2023 ................................................... SA266

**Table of Contents**
**(Continued)**

**Page**

Defendant WorthPoint Corporation's Omnibus Motion
  *in Limine* Concerning Experts, dated April 10, 2023 .................... SA268

Declaration of Jana S. Farmer in Support of Defendant's
  Motion *in Limine*, dated April 7, 2023 ........................................ SA270

**Volume 2**

Exhibit A to Farmer Declaration -
Documented Communications from WorthPoint's
Counsel to Plaintiff .................................................................. SA273

Exhibit B to Farmer Declaration -
Expert Affidavit of Patrick O'Leary,
sworn to December 5, 2022, with Exhibits ............................ SA298

Exhibit C to Farmer Declaration -
Expert Disclosure and Expert Report of
Joseph V. Scelsa, dated February 16, 2023,
with Exhibits ........................................................................ SA327

Exhibit D to Farmer Declaration -
Transcript of Proceedings held before the
Honorable Sarah L. Cave on November 23, 2022 ................. SA390

Notice of Motion by Defendant WorthPoint Corporation
  for Summary Judgment, dated April 17, 2023 ............................. SA458

Declaration of Jana S. Farmer in Support of Defendant's
  Motion for Summary Judgment, dated April 17, 2023 ................. SA460

**Volume 3**

Exhibit A to Farmer Declaration -
Deposition Testimony of Annamarie Trombetta,
taken August 30, 2022 ........................................................... SA465
*(cont'd in Vol 4)*

ii

**Table of Contents**
**(Continued)**

Page

**Volume 5**

Exhibit B to Farmer Declaration -
Deposition Testimony of Norb Novocin,
taken September 21, 2022 ......................................................... SA837

Exhibit C to Farmer Declaration -
Redacted Deposition Testimony of Willie Chu,
taken October 7, 2022 .............................................................. SA1084

**Volume 6**

Exhibit D to Farmer Declaration -
Redacted Deposition Testimony of Vanessa Koi-Ploski,
taken October 17, 2022, with Cover Letter ............................ SA1136

Exhibit E to Farmer Declaration -
Redacted Defendant WorthPoint Corporation's
Expert Disclosure Pursuant to FRCP Rule 26(a)(2)
of Jessie Stricchiola, dated January 19, 2023,
with Report and Exhibits .......................................................... SA1237

Exhibit F to Farmer Declaration -
Redacted Declaration of Jason Packer,
dated January 19, 2023, with Exhibits .................................... SA1280

Exhibit G to Farmer Declaration -
Declaration of William H. Seippel,
dated April 17, 2023, with Exhibits ........................................ SA1303

Exhibit H to Farmer Declaration -
Expert Affidavit of Patrick O'Leary,
sworn to December 5, 2022, with Exhibits ............................. SA1349

**Volume 7**

Exhibit I to Farmer Declaration -
Deposition Testimony of Patrick O'Leary,
taken February 28, 2023 .......................................................... SA1382

iii

**Table of Contents**
**(Continued)**

**Page**

Exhibit J to Farmer Declaration -
Google Search Results, dated March 15, 2017 ...................... SA1654

Exhibit K to Farmer Declaration -
Screenshots of the WorthPoint Report ................................. SA1655

**Volume 8**

Exhibit L to Farmer Declaration -
Defendant WorthPoint's First Request for Production,
dated February 25, 2022 ........................................................ SA1661

Exhibit M to Farmer Declaration -
Plaintiff's Response to WorthPoint's First
Request for Production, dated April 22, 2022 ....................... SA1674

Exhibit N to Farmer Declaration -
WorthPoint's Post-Deposition Demands to Plaintiff,
dated October 6, 2022 ........................................................... SA1691

Exhibit O to Farmer Declaration -
Plaintiff's Response to WorthPoint's Post-Deposition
Demands, dated October 20, 2022, with Attachments .......... SA1701

Exhibit P to Farmer Declaration -
Deposition Testimony of Scott Goodwillie,
taken October 6, 2022, with Cover Letter ............................ SA1800

Rule 56.1 Statement of Material Facts by Defendant
WorthPoint, dated April 17, 2023 ................................. SA1884

Letter from Jana S. Farmer to the Honorable Sarah L. Cave,
dated May 9, 2023 ........................................................ SA1896

Exhibit A to Letter -
Email from Adam Bialek to Annamarie Trombetta,
dated January 18, 2022 ......................................................... SA1901

iv

**Table of Contents**
**(Continued)**

Page

Exhibit B to Letter -
WorthPoint's First Set of Interrogatories,
dated February 25, 2022 ........................................................ SA1903

Exhibit C to Letter -
Plaintiff's Third Response to WorthPoint's
Interrogatories, dated June 27, 2022 .................................... SA1916

Exhibit D to Letter -
Various Email Correspondence,
dated July 19, 2022 through August 8, 2022 ......................... SA1926

Exhibit E to Letter -
Various Email Correspondence,
dated September 9, 2022 to September 12, 2022 ................... SA1935

Exhibit F to Letter -
Email from Annamarie Trombetta to Nicole Haimson,
*et al*., dated September 15, 2022 .......................................... SA1939

Exhibit G to Letter -
Various Email Correspondence,
dated September 15, 2022 to September 28, 2022 ................. SA1940

**Volume 9**

Exhibit H to Letter -
Post-Deadline Court Submissions
Regarding Expert Disclosure Issues ..................................... SA1943

Exhibit I to Letter -
Redacted Documents Relating to Dr. Joseph Scelsa's
Opinions and Qualifications .................................................. SA1952

Exhibit J to Letter -
Redacted Expert Report of Gayle Skluzacek,
dated February 21, 2023, with Attachments .......................... SA2016

v

## Table of Contents
### (Continued)

<div align="right"><b><u>Page</u></b></div>

Plaintiff's Opposition Response to Defendant WorthPoint's
Motion to Preclude and Proffer Plaintiff's Expert Witnesses,
dated May 19, 2023 ........................................................................ SA2051

Defendant WorthPoint's Response to Plaintiff's (Trombetta's)
First Set of Notice to Admit for Defendants [Sic] WorthPoint
Corporation, dated April 8, 2022 ................................................. SA2069

WorthPoint' s Responses and Objections to Plaintiff's
Request for the Production of Documents and Photos,
dated April 8, 2022 ....................................................................... SA2087

Defendant Worth Point's Responses and Objections to
Plaintiff's Request for the First Set of Interrogatories for
Defendants WorthPoint Corporation, dated April 8, 2022 ........... SA2115

Defendant Worth Point Corp.'s Response to Plaintiff's
Second Request for Admissions, dated July 13, 2022 ................. SA2132

Defendant WorthPoint Corp.'s Answers to Plaintiff's
Second Set of Interrogatories for Defendant WorthPoint
Corporation, dated July 1, 2022 .................................................. SA2146

Defendant WorthPoint Corp.'s Answers to Plaintiff's
Second Request for Production of Documents,
dated July 1, 2022 ........................................................................ SA2157

Defendant WorthPoint Corp.'s Responses to Plaintiff's
Third Request for Interrogatories, dated August 15, 2022 ........... SA2167

Defendant WorthPoint Corp.'s Responses and Objections
to Plaintiff's Third Request For Production of Documents,
dated August 15, 2022 .................................................................. SA2182

Defendant WorthPoint Corp.'s Responses and Objections
to Plaintiff's Fourth Request For Production of Documents,
dated October 11, 2022 ................................................................ SA2194

<div align="center">vi</div>

**Table of Contents**
**(Continued)**

Page

**Volume 10**

Exhibits to Plaintiff's Opposition Response to Defendant
WorthPoint's Motion to Preclude and Proffer Plaintiff's
Expert Witnesses ............................................................. SA2208

Exhibits to Plaintiff's Opposition Response to Defendant
WorthPoint's Motion to Preclude and Proffer Plaintiff's
Expert Witnesses ............................................................. SA2241

Declaration of Jana S. Farmer in Opposition to Plaintiff's
Various Motions *in Limine* and Motions to Proffer,
dated May 30, 2023 ......................................................... SA2264

    Exhibit A to Farmer Declaration -
    First Initial Disclosure of Defendant WorthPoint
    Corporation Pursuant to FRCP 26(A)(1),
    dated February 25, 2022 ........................................... SA2267

    Exhibit B to Farmer Declaration -
    Redacted Declaration of Jason Packer,
    dated January 19, 2023, with Exhibits ................... SA2273

    Exhibit C to Farmer Declaration -
    Redacted Defendant WorthPoint Corporation's
    Expert Disclosure Pursuant to FRCP Rule 26(a)(2) of
    Jessie Stricchiola, dated January 19, 2023, with Exhibits ..... SA2296

    Exhibit D to Farmer Declaration -
    Email from Jana S. Farmer to Annamarie Trombetta,
    *et al*., dated October 11, 2022 ............................... SA2339

Plaintiff's Response to Defendants Estate Auctions Inc. and
Norb and Marie Novocin's Motion for Summary Judgment,
dated May 30, 2023 ......................................................... SA2340

Exhibits 1-12 of Plaintiff's Response to Defendants
Estate Auctions Inc. and Norb and Marie Novocin's
Motion for Summary Judgment .................................... SA2372

vii

**Table of Contents**
**(Continued)**

**Page**

Exhibits 13-21 of Plaintiff's Response to Defendants
    Estate Auctions Inc. and Norb and Marie Novocin's
    Motion for Summary Judgment ...................................................... SA2410

Exhibits 22-35 of Plaintiff's Response to Defendants
    Estate Auctions Inc. and Norb and Marie Novocin's
    Motion for Summary Judgment ...................................................... SA2445

**Volume 11**

Exhibits 36-38 of Plaintiff's Response to Defendants
    Estate Auctions Inc. Motion for Summary Judgment .................. SA2482

Exhibit 41 of Plaintiff's Response to Defendants
    Estate Auctions Inc. and Norb and Marie Novocin's
    Motion for Summary Judgment ...................................................... SA2525

Exhibits 39-41 of Plaintiff's Response to Defendants
    Estate Auctions Inc. Motion for Summary Judgement ................ SA2547

Letter from Annamarie Trombetta to the Honorable
    Sarah L. Cave, dated June 1, 2023 .............................................. SA2582

        Exhibit 1 to Letter -
        Various Email Correspondence between Annamarie
        Trombetta and Art Appraiser Gayle Skluzacek ..................... SA2584

        Exhibit 2 to Letter -
        Various Email Correspondence between
        Annamarie Trombetta and Dr. Joseph Scelsa ........................ SA2596

        Exhibit 3 to Letter -
        Plaintiff's Communication with Defendants
        for Witnesses ........................................................................ SA2618

        Exhibit 4 to Letter -
        Problems and Delays Caused by WorthPoint Defendants ..... SA2632

**Table of Contents**
**(Continued)**

**Page**

Exhibit 5 to Letter -
Plaintiff's Illness Beginning December 7, 2022
into Late January 2023 ........................................... SA2673

Exhibit 6 to Letter -
WorthPoint Attorneys 2023 Emailing Plaintiff
Requesting Expert Witness Depositions .............................. SA2676

Exhibit 7 to Letter -
Ebay Phone Call Transcript ................................... SA2682

Exhibit 8 to Letter -
List and Number by Month February to
December 2022 Plaintiff's Problems with Defendants ......... SA2708

Plaintiff's Response to Defendant WorthPoint Corporation's
    Motion for Summary Judgment, dated June 7, 2023 ................... SA2721

**Volume 12**

Exhibits 1-9 to Plaintiff's Response to Defendant
    WorthPoint Corporation's Motion for Summary Judgment ......... SA2759

Exhibit 10 to Plaintiff's Response to Defendant WorthPoint
    Corporation's Motion for Summary Judgment ........................... SA2792

Exhibits 12-18D to Plaintiff's Response to Defendant
    WorthPoint Corporation's Motion for Summary Judgment ......... SA2822

Exhibits 19A-24 to Plaintiff's Response to Defendant
    WorthPoint Corporation's Motion for Summary Judgment ......... SA2857

Exhibits 25A-27 to Plaintiff's Response to Defendant
    WorthPoint Corporation's Motion for Summary Judgment ......... SA2888

Exhibits 28-30D to Plaintiff's Response to Defendant
    WorthPoint Corporation's Motion for Summary Judgment ......... SA2922

**Table of Contents**
**(Continued)**

**Page**

Letter from Jana S. Farmer to the Honorable Sarah L. Cave,
dated June 8, 2023 .......................................................... SA2947

Opinion and Order of the Honorable Sarah L. Cave,
dated June 22, 2023 ....................................................... SA2949

Order of the Honorable Laura Taylor Swain, dated July 5, 2023 ....... SA2966

x

# EXHIBITS

EXHIBIT #1 Emails to and from Art Appraiser, Gayle Skluzacek and her expert witness report.

EXHIBIT #2 Emails to and from Dr. Joseph V. Scelsa, and his expert witness report.

EXHIBIT #3 Plaintiff requesting an application for extension due to holiday season page 64.

EXHIBIT #4 Plaintiff's January 12, 2023 Doctor's appointment.

EXHIBIT #5 Jason Packer's declaration with wrong email page 9 and 10.

EXHIBIT #6 Plaintiff's Roundcube Website Email address NO sent emails to WorthPoint.

EXHIBIT #7 Will Seippel Feb. 20, 2016 email response to Plaintiff's same day email.

EXHIBIT #8 Will Seippel June 29, 2020 Declaration No. 6 false statement

EXHIBIT #9 dated print out October 16, 2016. Plaintiff Evidence 000058

EXHIBIT #10 Plaintiff's Evidence 000163 A. Trombetta signature and false CMI

EXHIBIT #11 Plaintiff's Evidence 000285 Item Removal Request Page 1

EXHIBIT #12 Plaintiff's Evidence 000286 Item Removal Request Page 2

EXHIBIT #13 WorthPoint's Oct. 11, 2022 Interogatory Responses Plaintiff Evidence 000602 Plaintiff Evidence 000609

EXHIBIT #14 WorthPoint's Oct. 11, 2022 Interrogatory Responses Plaintiff Evidence 000605 Plaintiff Evidence 000606

EXHIBIT #15 WP Evidence WP000130 and WP000131 Packer & Watkins emails date of post.

EXHBIIT#16 Feb 3, 2016 Phone Call Greg Watkins - Plaintiff's Evidence 001004 and 001005

EXHIBIT #17 Plaintiff Four Sets of Interrogatories, and Prod. of Docs. and Admissions.

THIS PAGE INTENTIONALLY LEFT BLANK

**SA2209**

# EXHIBIT #1

## EMAILS TO AND FROM

## PLAINTIFF ANNAMARIE TROMBETTA

## AND ART APPRAISER GAYLE SKLUZACEK

1-June 15, 2022 From Ms. Skluzacek
2-Sept. 9, 2022 To Ms. Skluzacek
3-Sept.12,2022 To Ms. Skluzacek
4-Sept. 12, 2022 From Ms. Skluzacek
5-Sept. 16, 2022 From Ms. Skluzacek
6-Oct. 2, 2022 To Ms. Skluzacek
7-Dec. 6, 2022 From Ms. Skluzacek
8-Jan. 20, 2023 From Ms. Skluzacek
9-Feb. 10 2023 To Ms. Skluzacek


February 21, 2023 Letter to the Court From Ms. Skluzacek

SA2210

# M Gmail

EXHIBIT
#1-1

Annamarie Trombetta <artofannamarie@gmail.com>

## Hi from Gayle

**gskluzacek (Gayle Skluzacek)** <gskluzacek@aol.com>
Reply-To: "gskluzacek (Gayle Skluzacek)" <gskluzacek@aol.com>
To: artofannamarie@gmail.com

Wed, Jun 15, 2022 at 10:08 AM

Hi Anna Marie!
My office sent your message.  Whats going on with the case?

I have had laryngitis for the past 2 days (bad cold) and it hurts to talk.  May I call you on Friday?  What number?

Best regards, Gayle

 Gmail     Annamarie Trombetta <artofannamarie@gmail.com>

## Annamarie Trombetta--Checking in about Expert Witness

Annamarie Trombetta <artofannamarie@gmail.com>                    Fri, Sep 9, 2022 at 3:49 PM
To: "gskluzacek (Gayle Skluzacek)" <Gskluzacek@aol.com>

Dear Gayle,

I hope that you had a refreshing trip.  Usually when one returns from such a long
vacation it is difficult to get back to one's routine.

Welcome back and I hope that the news about the Queen was not upsetting. (i
on the 8th of September). The passing of time and people is a constant in life--one that you really never get used to and I
think that is healthy and a sign of sensitivity.

I am contacting you with unpleasant news.                              I did not paint this  oil and in   2015  the
willful reluctance and wall  that I faced then is the same with WorthPoint  now. It is  repeated in this lawsuit.

I am sorry to say I need to know if you can be an Expert Witness.  I am surprised they did not contact you as they did to
my other witnesses who issued letters on my behalf as proof of their involvement. By this I mean a friend who contacted
G-Suite--and Google in 2015 when I was trying to figure out how to remove this false and harmful internet link from under
my name.  In short, google at that time was not able to assist.  Only the website or the webmaster  can remove
information off their website which in turn is on the internet.  Hostage then and Hostage now. BTW --since February I was
asked to write a Settlement Letter which gives a synopsis of my actions and timeline.  It might be helpful to send it to you
if you are on board.

Please let me know if I can contact you or if you can contact me over the weekend.

With Appreciation,
Annamaire Trombetta
Tel (212) 427-5990

EXHIBIT #1

1

 Gmail

Annamarie Trombetta <artofannamarie@gmail.com>

---

## Annamarie Trombetta---Expert Witness

---

**Annamarie Trombetta** <artofannamarie@gmail.com>                Mon, Sep 12, 2022 at 11:57 AM
To: appraisersaha@gmail.com

Dear Gayle,

I am contacting you regarding my legal case.  The last time we spoke on the phone and emailed you were about to go away on holiday.  I believe you said you were back on September 8, 2022.

I just need to confirm with you and will need your CV  for this case.

Please let me know your thoughts.
With Appreciation,
Annamarie Trombetta

EXHIBIT #1

3

**SA2213**

 Gmail

Annamarie Trombetta <artofannamarie@gmail.com>

---

## Annamarie Trombetta---Expert Witness

---

Abigail Hartmann <appraisersaha@gmail.com>                    Mon, Sep 12, 2022 at 12:46 PM
To: Annamarie Trombetta <artofannamarie@gmail.com>

Here is my CV
[Quoted text hidden]

---

📄 Gayle-A Full Resume 2022.pdf
   106K

EXHIBIT #1

#4



Annamarie Trombetta <artofannamarie@gmail.com>

---

## Annamarie Trombetta---Expert Witness

**Abigail Hartmann** <appraisersaha@gmail.com>                    Fri, Sep 16, 2022 at 6:58 AM
To: Annamarie Trombetta <artofannamarie@gmail.com>

Annamarie, I am teaching on Tuesday and Wednesday next week at the appraisers office.  I will NOT be there on Monday as we discussed.
Sorry, Gayle
[Quoted text hidden]

M Gmail     EXHIBIT #1                    Annamarie Trombetta <artofannamarie@gmail.com>

## Annamarie Trombetta

**Annamarie Trombetta** <artofannamarie@gmail.com>                    Sun, Oct 2, 2022 at 1:53 PM
To: "gskluzacek (Gayle Skluzacek)" <Gskluzacek@aol.com>

Hi  Gayle ,

I hope this email finds you in better health and good spirits.   I hope that your daughter and your husband have recovered from Covid.

Pardon my delay in getting back to you.  On the day I was deposed on August 30th 2022 I was improperly served a summons and complaint from WorthPoint Corporation located in the state of  Georgia  who is the internet company that kept reposting the false claim and attribution that I painted in  1972 Painting that I did not create or sign.

 I did contact the Court in Georgia and the Affidavit of Service claimed that the process server spoke with me which was impossible since I was on the phone. I submitted an Affidavit with my proof of a phone call etc.

                                                                                                or make a
proposed amended complaint.  My opponent  WorthPoint in the legal document on page 2 of the Georgian Complaint wrote the WRONG date and WRONG YEAR for the service of mail.

The point is ----- the root cause and basis of my lawsuit  is the false information purported by WorthPoint on the internet. My new evidence is proof that no matter  what the year----or the location of the Court ---or whether it is the internet link or a legal document filed in a Court in the State of Georgia---Will Seippel and Worth Point have once again purported FALSE INFORMATION.

 See No. 10 which states I filed my Amended Complaint on Jan. 17, 2020.  On the same page WorthPoint claims they received my certified mail  for the summons and complaint on Jan. 1, 2020 which is New Year's day plus the year should be 2021     Also the date of Jan. 4th of 2020 is the wrong year as well.

I hope to have a Meet and Confer- with the Defendants attorneys --either on Monday or Tuesday .

Please  let me know your schedule mid or at the end of the week.
With Appreciation,
Annamarie Trombetta
Tel (212) 427-5990

---

📄 **F Mot.to DISMISS EXHIBIT F  Seippel Complaint  Page 3  No. 10  No. 11 and No. 15  WRONG FACTS.pdf**
    764K

EXHIBIT#1  #7

 Gmail

Gmail - Past Appraisal Letter

Annamarie Trombetta <atrombettaart@gmail.com>

---

## Past Appraisal Letter

---

**Abigail Hartmann** <appraisersaha@gmail.com>
To: Annamarie Trombetta <atrombettaart@gmail.com>

Tue, Dec 6, 2022 at 10:23 AM

Hi Annamarie, unfortunately due to our workload, I cannot complete a report by you 12/12 deadline. We are completely booked until at least early January.
Best wishes, Gayle Skluzacek
[Quoted text hidden]

**SA2217**

M Gmail                                                    Annamarie Trombetta <atrombettaart@gmail.com>

EXHIBIT #1

## Schedule report
1 message

gskluzacek (Gayle Skluzacek) <gskluzacek@aol.com>                  Fri, Jan 20, 2023 at 1:20 PM
Reply-To: "gskluzacek (Gayle Skluzacek)" <gskluzacek@aol.com>
To: atrombettaart@gmail.com

Dear Annamarie,
As mentioned, I have taken on other assignments since you contacted me on Nov. 1st.

In addition to my teaching schedule, I have a 1/25 deadline for large appraisal, followed by a 4 day trip to Florida
scheduled for January 26-29, then another deadline in mid February.  The earliest I could look at doing your report
would be February 15.

I am sorry that I cannot be more accommodating.

Gayle

Gayle Skluzacek, AAA
Fine and Decorative Art Services
415 Central Park West, Fifth Floor
New York, New York 10025
Tel: 212-316-5406
Cell:  917-301-2243
www.abigailhartmann.com

Gmail - Annamarie Trombetta - Need Report ASAP

**M Gmail**    Annamarie Trombetta <atrombettaart@gmail.com>

## Annamarie Trombetta-- Need Report ASAP

**Annamarie Trombetta** <atrombettaart@gmail.com>                    Fri, Feb 10, 2023 at 7:39 AM
To: gskluzacek@aol.com

Dear Gayle,
I am contacting you with a request for an immediate response. I called you on Wed. Feb. 8, 2023 in response to the email I received on the same date from the Defendants' attorneys.

I do know that you did receive health news that is a priority. However the Defendants are trying to block my expert witnesses.

I need to submit your report as soon as possible. Please Contact me immediately.

(212) 427-5990
Sincerely,
Annamarie Trombetta

Below is an email sent to me on Wed --which is whenI called you. Kindly call today ASAP

Farmer, Jana S. <Jana.Farmer@wil
sonelser.com>
Wed 2/8/2023 10:54 AM
To: You; ajd@hoganduff.com
Cc: Bialek, Adam; Farmer, Jana S.

Ms. Trombetta and Mr. Duff,

We have not received any rebuttal expert reports by the February 7, 2023 deadline and we therefore understand that not such reports were served.
WorthPoint has not served any rebuttal expert reports given that no other party served any Rule 26 expert disclosures to which a rebuttal report may be submitted. The report of WorthPoint's expert Stricchiola, which was served on January 19, 2023, had already addressed the earlier O'Leary report.

EXHIBIT #1

## Abigail Hartmann Associates

Fine and Decorative Art Services
415 Central Park West - Fifth Floor
New York, New York 10025
Tele: 212-316-5406
www.abigailhartmann.com

February 21, 2023

Re: Civil Case No. 18-cv-00993-RA--HBP

To whom it may concern,

Annamarie Trombetta had asked me to provide an expert witness report to support her case. Unfortunately, I was not able to provide this document until the New Year due to my obligations to other clients. I had a medical emergency in my immediate family last week which further delayed the completion of my report for Ms. Trombetta. This sequence of events should not reflect upon nor be considered neglect on the part of Ms. Trombetta.

Sincerely,

Gayle M. Skluzacek

Gayle M. Skluzacek, AAA

**SA2220**

Gmail – Past Appraisal Letter

6/16/22, 11:15 AM

 Gmail

EXHIBIT #1

B

Annamarie Trombetta <artofannamarie@gmail.com>

---

## Past Appraisal Letter

---

**Abigail Hartmann** <appraisersaha@gmail.com>
To: artofannamarie@gmail.com

Mon, Mar 28, 2022 at 2:46 PM

Hi Annamarie,
I am reaching out today to let you know I had a chance to look through your file and did not see an ASKART bio, I believe you were interested in it for possible lawsuit purposes. If you would like, Gayle can get back to you in late April or early May to discuss your options further regarding your past appraisal letter. Your files will surely not be destroyed in the meantime. We are currently working to meet tax deadlines for other clients and appreciate your patience.

Molly Gallo
Client Services
Abigail Hartmann Associates

Plaintiff000198

# EXHIBIT #2

## EMAILS  TO  AND FROM

## PLAINTIFF  ANNAMARIE TROMBETTA

## AND  Dr. Joseph Scelsa

1-August 19, 2022 To Dr. Joseph Scelsa
2-August 26, 2022 To Dr. Joseph Scelsa
3-August 26, 2022 From Dr. Joseph Scelsa

TO WORTHPOINT ATTORNEYS   on Sept. 15, 2022
CV of Dr. Joseph Scelsa Sept. 19, 2022

4-Oct. 9, 2022     To Dr. Joseph Scelsa
5-Oct. 9, 2022     From Dr. Joseph Scelsa
6-Nov. 16, 2022  To Dr. Joseph Scelsa
7-Nov. 16, 2022  From Dr. Joseph Scelsa
8-Nov. 23, 2022  To Dr. Joseph Scelsa
9-Dec.6 , 2022    To Dr. Joseph Scelsa
10- Jan. 2, 2023   To Dr. Joseph Scelsa
11- Jan. 6, 2023   From Dr. Joseph Scelsa
12-Feb. 10, 2023   To Dr. Joseph Scelsa
13-Feb.16, 2023  To Dr. Joseph Scelsa



## Gmail

Annamarie Trombetta <artofannamarie@gmail.com>

### Annamarie ---An Update for

1 message

Annamarie Trombetta <artofannamarie@gmail.com>                    Fri, Aug 19, 2022 at 3:13 PM
To: scelsa/joseph <jvscelsa@italianamericanmuseum.org>





Dear Dr. Scelsa,
So sorry for the delay in getting back to you--                     r. The Judge ordered the first defendant to
give me my requested information . It is due today.
If I may  or if need be  can I   call you over the weekend ??

I may need for you to submit information as per an expert witness. CV  resume.  What books you have authored.  When it
is due I am not sure......Some time next week - but I will check on this.-After I receive the defendants responses today I
will know.

Some of the defendants responses are absolutely ridiculous and aside from being worked into the point of
exhaustion......they keep heaping more demands upon me.

Please know Dr. Scelsa,  when I started this it was to simply  declare that I did not do this painting.  In time who know who
would have claimed it as mine

Unfortunately one  have to prove your claims . Over time I have 3 surviving  and serious claims---Visual Artist Rights Act-
-(no one can use an artist  name to a painting (artowrk)  the artist did not create)   Direct Copyright infringement--the use
of my self authored biography without knowledge or consent   and third the Digital Millenium Copyright Act . This has to

**SA2223**

do with removing my copyright management information from my website. This is the CMI from my website All work on this site are ©Annamarie Trombetta. All rights reserved.

Additionally the attached photo of the A. Trombetta is not by my hand. WorthPoint wrote a statement " © Copyrighted work licensed by WorthPoint" WorthPoint's claim and the use of the circle C means that they circulated on the internet false copyright management information. This is a big No No....Just so that you are aware of the claims in my case. Also ---it is not my signature.

I hope you are enjoying the weather--Dr. Scelsa
With Heartfelt Appreciation,
Annamarie

---

2 attachments

📄 P.#2Federal Rules for Witnesses Requirements.pdf
193K

📄 P. #1 Federal Rules for Witnesses Requirements.pdf
317K

EXHIBIT #1 (1)

 Gmail

Annamarie Trombetta <artofannamarie@gmail.com>

## Annamaire--Witness disclosures extended

Annamarie Trombetta <artofannamarie@gmail.com>
To: scelsa/joseph <jvscelsa@italianamericanmuseum.org>

Fri, Aug 26, 2022 at 9:29 AM

Thank you once again for your willingness to be involved in this ridiculous yet clear cut production of a false secondary market.

This week my opponents asked the Judge to extend time for witnesses. Mind you I gave them the names on June 27th . When I was away the first week of August they contacted people named as witnesses.

In short--I will try and get you the draft next week after I have my deposition on the 30th which is Tuesday---I need to study and prepare.

-- With Sincere Appreciation

--
Annamarie

EXHIBIT
#2
2

 Gmail

Annamarie Trombetta <artofannamarie@gmail.com>

## Annamaire--Witness disclosures extended

Italian American Museum <italianamericanmuseum@gmail.com>                Fri, Aug 26, 2022 at 3:39 PM
To: Annamarie Trombetta <artofannamarie@gmail.com>

Annmarie,
I will be away till Sept 8, and will have limited internet service
Joseph
[Quoted text hidden]
--
**Cav. Uff. Joseph V. Scelsa, Ed.D.**
**Founder and President**
**Italian American Museum**
Professor Emeritus
Queens College
The City University of New York



155 Mulberry Street
New York, NY 10013
Tel 212.965.9000
Fax 212.965.9004
Cell 917.642.4922
JVScelsa@ItalianAmericanMuseum.org
www.ItalianAmericanMuseum.org

EXHIBIT #2 3

 Gmail

Annamarie Trombetta <atrombettaart@gmail.com>

---

## Expert Witnesses

---

Annamarie Trombetta <atrombettaart@gmail.com>                                    Thu, Sep 15, 2022 at 3:55 PM
To: "Haimson, Nicole" <Nicole.Haimson@wilsonelser.com>, "Farmer, Jana S." <jana.farmer@wilsonelser.com>, "Bialek, Adam" <Adam.Bialek@wilsonelser.com>, Anderson Duff <ajd@hoganduff.com>

To All Attorneys and Parties,

At the end of June 2022 I sent my list of witnesses to you.

To date three have been removed and have furnished letters stating the reasons for their departure.

Attached please find the CV of Expert Witness  Dr. Joseph V. Scelsa --Founder and Director of the Italian American Museum and Advocate for Italian Americans.

Attached please find the response and rates  from Expert Witness Patrick Michael O'Leary.

I am still waiting to hear from Peter Trippi and Dan Caropreso due to the unknown date of the trial and the schedules of these individuals.

Submitted September 15, 2022
Annamarie Trombetta

2 attachments

Curriculum Vitae Joseph V. Scelsa .pdf
227K

Expert Witness Patrick Michael O'Leary.pdf
475K

*Plaintiff's Expert Witnesses*

*EXHIBT #2*

 Gmail

Annamarie Trombetta <atrombettaart@gmail.com>

## Expert Witnesses

**Annamarie Trombetta** <atrombettaart@gmail.com>                    Thu, Sep 15, 2022 at 4:51 PM
To: "Farmer, Jana S." <jana.farmer@wilsonelser.com>, "Bialek, Adam" <Adam.Bialek@wilsonelser.com>, Anderson Duff <ajd@hoganduff.com>, "Haimson, Nicole" <Nicole.Haimson@wilsonelser.com>

Please see the attached documents to accompany Dr. Scelsa'a CV
[Quoted text hidden]

---

**2 attachments**



Google List Italian American Museum Listing under 1972 Original Oil Man w_Red Umbrella_signed   Annamarie Trombetta.tif
11677K

Scelsa v. CUNY_Motley 11.18.92.pdf
4034K

EXHIBIT #2

 Gmail

Annamarie Trombetta <atrombettaart@gmail.com>

---

## Expert Witnesses

**Haimson, Nicole** <Nicole.Haimson@wilsonelser.com>                    Mon, Sep 19, 2022 at 12:47 PM
To: Annamarie Trombetta <atrombettaart@gmail.com>
Cc: "Farmer, Jana S." <Jana.Farmer@wilsonelser.com>, "Bialek, Adam" <Adam.Bialek@wilsonelser.com>, Anderson Duff <ajd@hoganduff.com>

Ms. Trombetta,

Based on your recent emails, it is our understanding that the following individuals will be serving as your expert witnesses:

·    Dr. Joseph V. Scelsa;

·    Patrick Michael O'Leary; and

·    Gayle Skluzacek

Please 1) confirm this is accurate; 2) provide your expert disclosures in accordance with FRCP Rule 26(a)(2) as soon as possible; and 3) let us know your availability for a meet and confer to discuss expert discovery.

Best,

Nicole Haimson
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
518.320.3608 (Direct)
516.330.8099 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
nicole.haimson@wilsonelser.com

**From:** Annamarie Trombetta [mailto:atrombettaart@gmail.com]
**Sent:** Thursday, September 15, 2022 4:51 PM
**To:** Farmer, Jana S. <jana.farmer@wilsonelser.com>; Bialek, Adam <Adam.Bialek@wilsonelser.com>; Anderson Duff <ajd@hoganduff.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>
**Subject:** Re: Expert Witnesses

 Gmail

Annamarie Trombetta <artofannamarie@gmail.com>

## Annamarie---Happy Columbus Day-- Lawyer info.

Annamarie Trombetta <artofannamarie@gmail.com>          Sun, Oct 9, 2022 at 8:39 AM
To: scelsa/joseph <jvscelsa@italianamericanmuseum.org>

Hi Dr. Scelsa,

First Happy Columbus Day. I am sure you are busy and have lots to do either today tomorrow and perhaps this week

In like fashion, since we last spoke on Thursday September 29th, I have been
beyond busy with deadlines, witness depositions and the intentional subpoenas the defendants sent to my withdrawn witnesses.
In short---I am happy to report that I have won every battle this week and brought the intentional chaotic deceptive problems by the defendants to the Court's attention with proof. Based on Friday's Order by the Judge, I have an extension for the expert witness disclosures and other matters.

This morning is the first chance I had to come up for air. I wanted to reach out to know when I could call you and who is the person or lawyer in mind that you referred to when we last spoke.

Please let me know when you can
Enjoy all the Celebrations of our Heritage,
With Appreciation,
Annamarie
Tel 202 427-5990

--
Annamarie Trombetta

EXHIBIT #2

4

**SA2230**

 Gmail

Annamarie Trombetta <artofannamarie@gmail.com>

## Annamarie---Happy Columbus Day-- Lawyer info.

**Italian American Museum** <italianamericanmuseum@gmail.com>                    Sun, Oct 9, 2022 at 8:20 PM
To: Annamarie Trombetta <artofannamarie@gmail.com>

I sent the lawyer an email to see if he is interested in your case

On Sun, Oct 9, 2022 at 8:39 AM Annamarie Trombetta <artofannamarie@gmail.com> wrote:
[Quoted text hidden]
[Quoted text hidden]

EXHIBIT #2 5

 Gmail

Annamarie Trombetta <atrombettaart@gmail.com>

## Annamarie Trombetta ---Lawsuit

**Annamarie Trombetta** <atrombettaart@gmail.com>                     Wed, Nov 16, 2022 at 10:50 AM
To: /           <          . . jdlaw.com>, jvscelsa@italianamericanmuseum.org

To /       and  Dr. Scelsa,

Thank you for taking the time to listen to my legal plight. I appreciate the introduction to    . . . _, Dr. Scelsa and I am truly grateful for your involvement.

As I stated,  I needed to access my every changing legal situation regarding outstanding Discovery. To date, the eBay email receipt for the sale of the misattributed 1972 Oil Painting has not been produced in it's entirety. The second Defendants (WorthPoint) have called for the full production in their Deposition which is due this week.  For the Record--I have attached it within this email if you care to review it which is not confidential.  This receipt is devoid of the gray image icon and cut off on the right side.

 Last week I filed three letters with the Court in New York.  On Monday I had to file a response with the Court in the State of Georgia for a premature false filing for an entry of Motion for Default by WorthPoint for IIED.  These tasks have delayed my response and outreach in  contacting to the both of vou. '                      _   :, in response to my letters to the Court in New York,  the Magistrate Judge                          he  scneduled a Conference call for the 23rd of November.

I will know upon the conclusion of this phone conference if I want to attempt  at settle this lawsuit                                                                       .  I will know for certain on the 23rd after the Conference call.

I appreciate your patience regarding this lawsuit and what has become a true ordeal.

With Respect and Gratitude,
Annamarie Trombetta

Ebay ITem Sold for 1972 Painting  --EAI000058-EAI000059.pdf
107K

EXHIBIT #2

6

 Gmail

Annamarie Trombetta <atrombettaart@gmail.com>

---

## Annamarie Trombetta ---Lawsuit

Ar       al        gdlaw.com>                               Wed, Nov 16, 2022 at 10:58 AM
To: Annamarie Trombetta <atrombettaart@gmail.com>
Cc: jvscelsa@italianamericanmuseum.org

Annamarie:

Thank you for the update. As stated previously, I ca.
us.  Please let me know if you wish to retain us for settlement negotiations after the November 23 hearing. I look forward
to hearing from you.
Sincerely,

[Quoted text hidden]

EXHIBIT

#2

ꞁ

 Gmail

Annamarie Trombetta <artofannamarie@gmail.com>

---

## Annamarie Trombetta

---

**Annamarie Trombetta** <artofannamarie@gmail.com>
To: scelsa/joseph <jvscelsa@italianamericanmuseum.org>

Wed, Nov 23, 2022 at 1:15 PM

---

Hello Dr. Scelsa,

I wanted to wish you a Happy Thanksgiving . I also wanted to touch base
with you about my case.

At the end of the Conference Call today I mentioned a Settlement Conference to the Judge and both Defendants declined any offers.

I also stated to the Judge that the Expert witness reports which are due on December 12, 2022 but that with the Holiday Season this may not be possible.
I have to make an application to the Court for an extension.

When you can please call me to discuss the production of the report.
With Appreciation,
Annamarie Trombetta
Tel (212) 427-5990

EXHIBIT #2

 Gmail

Annamarie Trombetta <artofannamarie@gmail.com>

## Annamarie Trombetta Request on Expert Report due on Dec. 12, 2022

Annamarie Trombetta <artofannamarie@gmail.com>　　　　　　Tue, Dec 6, 2022 at 12:35 PM
To: scelsa/joseph <jvscelsa@italianamericanmuseum.org>

Good Day Dr. Scelsa,

Last week I phone you to find out if your schedule would allow you to complete the
expert report that is due on December 12, 2022.

I am contacting you again  if there are any updates.  If this is not possible, I will
need to make an application with the Court for an extension.

Kindly advise as soon as possible.
With Appreciation,
Annamarie Trombetta

EXHIBIT #2

 Gmail

## Annamarie Trombetta--Happy New Years Wishes

**Annamarie Trombetta** <artofannamarie@gmail.com>
To: scelsa/joseph <jvscelsa@italianamericanmuseum.org>

Mon, Jan 2, 2023 at 11:16 AM

Hello Dr. Scelsa,

I do hope that you had a memorable and pleasant holiday season.

At this time of the year may I extend all the best wishes to you for the New Year.

When you have some time, can you kindly phone me at (212) 427-5990,

-- Best Wishes,
  Annamarie

EXHIBIT #2

16

 Gmail  Annamarie Trombetta <artofannamarie@gmail.com>

## Availability
1 message

Italian American Museum <italianamericanmuseum@gmail.com>                 Fri, Jan 6, 2023 at 4:59 PM
To: Annamarie Trombetta <artofannamarie@gmail.com>

Dear Ms. Trombetta,

As you know I was out of the country over the Holidays  and was unable to write an expert report for you ..
I am however  available now if it is still needed
Please advise.

Buon Anno,

Dr. Scelsa

--
**Cav. Uff. Joseph V. Scelsa, Ed.D.**
**Founder and President**
**Italian American Museum**
Professor Emeritus
Queens College
The City University of New York



155 Mulberry Street
New York, NY 10013
Tel  212.965.9000
Fax 212.965.9004
Cell 917.642.4922
JVScelsa@ItalianAmericanMuseum.org
www.ItalianAmericanMuseum.org



 Gmail

Annamarie Trombetta <artofannamarie@gmail.com>

---

## Annamarie--Second Request from Defendants Attorneys to Schedule Depositons

---

Annamarie Trombetta <artofannamarie@gmail.com>
To: scelsa/joseph <jvscelsa@italianamericanmuseum.org>

Wed, Feb 1, 2023 at 8:47 AM

Hello Dr. Scelsa,

I hope that you are well and that you have returned from your trip to Florida as a guest speaker.

My outreach, aside from finding out when you could produce your expert witness report was in reference to the Defendant's attorneys' request to schedule depositions on Jan. 25th--Please see email below.

Last night, on Jan. 31st I received another request. Your cell phone from last week was full, I could not leave a message or contact you. Clearly you are quite a busy person and I appreciate your patience with the all the scheduled changes regarding when and if your expert witness report will be accepted by the Court.

The Defendants attorneys are requesting a scheduled date for a deposition.If it is not given, the Defendants will move to preclude you as an expert witness.

Are you available any time from Feb 22nd to March 1st?? Please advise and confirm a date. Kindly contact me in writing or by phone at your earliest convenience.

With Appreciation,
Annamarie Trombetta
Tel 212 427-5990

*EXHIBIT #2*

> **BA** Bialek, Adam <Adam.Bialek@wilsonelser.cc
> To: You +3 others                          Wed 1/25/2023 10:03 AM
>
>  Trombetta 362 Duff letter.pdf
> 149 KB
>
> I am sure Anderson will forward, but as a courtesy,
> please see attached.
>
> We would appreciate it if you would do us the
> courtesy of having meet and confer conferences
> before you file letters as the Court has often directed.
>
> Separately, please let us know your availability
> between Feb 22 and March 1 for your expert's
> deposition.
>
> Thanks,
> Adam
>
> Adam Bialek
> Attorney at Law

**SA2238**

**From:** "Bialek, Adam" <Adam.Bialek@wilsonelser.com>
**Date:** Tuesday, January 31, 2023 at 8:37 PM
**To:** 'Annamarie Trombetta' <annamarietrombettalegal@outlook.com>, "Farmer, Jana S." <Jana.Farmer@wilsonelser.com>, "Anderson J. Duff" <ajd@hoganduff.com>, "Deplas, Alexandra" <Alexandra.Deplas@wilsonelser.com>, 'Annamarie Trombetta' <atrombettaart@gmail.com>, "Anderson J. Duff" <ajd@andersonjduff.com>
**Subject:** Pltf's expert's deposition

Dear Ms. Trombetta and Mr. Duff:

Last week, I requested your availability between February 22 and March 1 for Ms. Trombetta's expert's deposition. I have yet to receive a response. If we do not hear back by Thursday, we will select a day and time for the expert's deposition that works for us, and if the expert or Ms. Trombetta cannot make it, we will request that the expert be precluded.

Thanks,

Adam

Adam Bialek
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212.915.5143 (Direct)
917.538.0616 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
adam.bialek@wilsonelser.com

--

EXHIBIT #2

((

 Gmail

Annamarie Trombetta <artofannamarie@gmail.com>

---

## Rule 26 Plaintiff Disclosure to Defendants on Testimony

**Annamarie Trombetta** <artofannamarie@gmail.com>
To: scelsa/joseph <jvscelsa@italianamericanmuseum.org>

Fri, Feb 10, 2023 at 10:17 AM

Hello Dr. Scelsa,

As per out discussion, I as a self represented Plaintiff need to submit     what is
a Rule 26 Disclosure on the subject of your expected expert testimony.

I have attached the document I sent to you last week  for your convenience.
Please review and either call or respond to me regarding your report.
I need your reposne and the report  immediately
With Anticipation and Appreciation,
Annamarie Trombetta

---

Rule 26  Plaintiff's Expert Witness Disclosure Dr. Scelsa.docx
17K

EXHIBIT
#2

/ 2K

 Gmail

Annamarie Trombetta <artofannamarie@gmail.com>

## Annamarie Trombetta -How is your virus?--Time for Expert Report?

**Annamarie Trombetta** <artofannamarie@gmail.com>
To: scelsa/joseph <jvscelsa@italianamericanmuseum.org>

Thu, Feb 16, 2023 at 12:11 PM

Dear Dr. Scelsa,

I am checking in with you once again. As s per our conversations on Friday February 10th and again on February 13th regarding your health, I could hear from your coughing that you are not well. I was pleased to know that you went to your physician and I hope the antibiotics are helping you with your recovery.

I am reaching out with my apologies, but I must ask if you when you might be finished with your expert report.

Below is a ruling. the Magistrate JudgeThe court has granted me an extension for the production of your report. In short, the ultimate decision as to who will give testimony as an expert witness for each party be it
the Defendants or I, the Plaintiff is up to the Trial Judge
Please read the attached.

Right now it is important that the report is submitted as soon as possible,
Please contact me or forward me your report as soon as possible.
With Appreciation,
Annamarie Trombetta

supersedes the default deadlines in FRCP 26(a)(2)(D). See Fed. R. Civ. P. 26(a)(2)(D) ("A party must make these disclosures at the times and in the sequence that the court orders."). (2) Ms. Trombetta may request leave to call at trial witnesses whom she previously proposed as experts, but Defendants will have the right to oppose her request, and the ultimate determination of which witnesses Ms. Trombetta (and Defendants, for that matter), may call at trial, will be made by the Honorable Ronnie Abrams, who will preside over the trial. The deadline for a final pretrial order, in which the parties will list the witnesses they intend to call at trial, has not been set, and will not be set, until after the parties complete expert discovery and any dispositive motions have been decided. The Clerk of Court is respectfully

EXHIBIT #2
B

16 of 18

# EXHIBITS

EXHIBIT #1 Emails to and from Art Appraiser, Gayle Skluzacek and her expert witness report.

EXHIBIT #2 Emails to and from Dr. Joseph V. Scelsa, and his expert witness report.

EXHIBIT #3 Plaintiff requesting an application for extension due to holiday season page 64.

EXHIBIT #4 Plaintiff's January 12, 2023 Doctor's appointment.

EXHIBIT #5 Jason Packer's declaration with wrong email page 9 and 10.

EXHIBIT #6 Plaintiff's Roundcube Website Email address NO sent emails to WorthPoint.

EXHIBIT #7 Will Seippel Feb. 20, 2016 email response to Plaintiff's same day email.

EXHIBIT #8 Will Seippel June 29, 2020 Declaration No. 6 false statement

EXHIBIT #9 dated print out October 16, 2016. Plaintiff Evidence 000058

EXHIBIT #10 Plaintiff's Evidence 000163 A. Trombetta signature and false CMI

EXHIBIT #11 Plaintiff's Evidence 000285 Item Removal Request Page 1

EXHIBIT #12 Plaintiff's Evidence 000286 Item Removal Request Page 2

EXHIBIT #13 WorthPoint's Oct. 11, 2022 Interogatory Responses Plaintiff Evidence 000602 Plaintiff Evidence 000609

EXHIBIT #14 WorthPoint's Oct. 11, 2022 Interrogatory Responses Plaintiff Evidence 000605 Plaintiff Evidence 000606

EXHIBIT #15 WP Evidence WP000130 and WP000131 Packer & Watkins emails date of post.

EXHBIIT #16 Feb 3, 2016 Phone Call Greg Watkins - Plaintiff's Evidence 001004 and 001005

EXHIBIT #17 Plaintiff Four Sets of Interrogatories, and Prod. of Docs. and Admissions.

SA2242

EXHIBIT # 3

64

defendants to please order a transcript of today's conference. Ms. Trombetta, is there anything else you wanted to raise today?

THE PLAINTIFF: It has been a full day. So because I'm dealing with other people, meaning the expert witnesses, and we're approaching the holiday season, if for some reason they cannot submit a report by December 12th, what --

THE COURT: You need to make --

THE PLAINTIFF: Can I ask for an extension for them?

THE COURT: Yes.

MR. DUFF: Your Honor, we object, this is Anderson for defendants --

THE COURT: I know --

MR. DUFF: I'm sorry?

THE COURT: I know, but she can make an application and I'll --

MR. DUFF: Okay, yes, Your Honor, thank you.

THE COURT: I'm not going to prejudge it, but because it sounded like a hypothetical, so maybe we won't. You also have a deadline to file your motion for leave to amend and your proposed amended complaint on December 12th, Ms. Trombetta.


**Northwell**
**Health**
Physician Partners

EXHIBIT #4 *(handwritten)*

Name:     ANNAMARIE TROMBETTA
Address:  175 E 96TH ST APT 12R
          NEW YORK, NY  10128

Date of Visit·  May 16 2023
MRN:

May 16, 2023

To Whom it May Concern:

Ms. Annamarie Trombetta was seen and evaluated in the office on 1/12/23 for fatigue and possible covid related syndrome.

Sincerely,

Christine Miglino, DO

Electronically signed by : CH.            'NO, MD; May 16 2023  9:34AM EST (Author)

1085 .     Avenue ,Suite 1N, New York, NY, 1      , Tel (212) 8    . /6 Fax (212) ⁻    39

EXHIBIT #5

15.     Figure 9 shows, once again, that the visitor on May 8, 2017 also encountered the "404 Page not found" error, which demonstrates with a reasonable degree of professional certainty that the URL had not returned any content and had not been reloaded.

16.     I further declare that there have not been any tagging errors or outages that would have caused significant data loss to WorthPoint's data processing server or Google Analytics account during the relevant time periods from 2012 to present.

17.     WorthPoint monitors their Google Analytics account closely and logs issues in Google Analytics as annotations. There are no relevant annotations in Google analytics indicating any tagging errors or outages during the relevant time period.

18.     WorthPoint does not sell any artworks or collectables. Rather, visitors and subscribers to WorthPoint's website are given an opportunity to view available information on sales of artwork. Further, only paid subscribers can view the price for which listed artworks or collectibles previously sold. WorthPoint was not involved in the sale of the 1972 Man with Red Umbrella painting, did not create the content in the listing, did not participate in identifying the artist of the painting, and was not party to the inclusion of plaintiff's biography in the original listing.

19.     According to WorthPoint's log of price lookups (a true and correct screenshot of which is annexed hereto as Exhibit 3 and Figure 10 below) made from the price guide detail page, only two users made those requests for the artwork described in the subject URL. Upon information and belief, annamarie@trombettaart.com is plaintiff's email address, meaning that one of the two users looking up the price for the subject painting was plaintiff herself. Upon information and belief, the other visitor, with an address of Simianarts@cs.com appears to have been plaintiff's friend.

9

257342712v.2

EXHIBIT #5B

**Figure 10:**

```
worthpoint=> select email,date_unsubscribed from price_lookup, wpuser where wpuser.id = price_lookup.user_id
and inventory_id='368924172';
                email          |    date_unsubscribed
-------------------------------+--------------------------
 annamarie@trombettaart.com    | 2016-02-03 23:25:13.404
 simianarts@cs.com             | 2015-08-31 10:10:54.099
(2 rows).
```

20.  I have searched WothPoint's records and confirmed that neither user referenced in Figure 10 was an active subscriber to WorthPoint's services after February 3, 2016. Once they were inactive, they would not have been able to see the price that the painting previously sold at.

21.  WorthPoint's website currently receives approximately 650,000 Googlebot spidering data refresh requests per day to price guide detail pages, which Google does in order to capture the content of those pages for their search engine, as well as cache versions of pages. WorthPoint currently has over 670 million price guide detail pages, which means that on average, each individual page may be spidered by Google and refreshed approximately once per 1,031 days. The frequency at which Googlebot returns to an individual URL may vary greatly, but on average individual price guide detail pages such as the URL in question are requested very infrequently if at all.

22.  In my personal experience serving as the SEO lead for WorthPoint since 2008, the overall volume of price guide detail pages and spidering rates were different in 2015-2017 vs currently, but the ratios of how often each page may be crawled and refreshed has remained quite consistent. Annexed hereto as Exhibit 4 and Figure 11 is a true and correct screenshot of WorthPoint's crawl request data:

**Figure 11:**

10

257342712v.2



Plaintiff's Evidence Expert Dis. 000879

Sent Folder from Plaintiff's Website Email

EXHIBIT #6

Nothing Sent To Worth Point By Plaintiff

SA2246

**SA2247**

(W) WorthPoint
THE INTERNET OF STUFF

EXHIBIT #7

Jason Packer <jason.packer@worthpoint.com>

## RE: Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

9 messages

**Will Seippel** <will.seippel@worthpoint.com>                          Sat, Feb 20, 2016 at 10:35 AM
To: Annamarie Trombetta <trombettaart@yahoo.com>, will@worthpoint.com, Jason Packer <jason.packer@worthpoint.com>
Cc: Worthpoint Support <support@worthpoint.com>

Hi, Annamarie. The art world is a very dark world and it is our goal to remove as many shadows as possible and supply equal information, and a lot of it, to all. To achieve this goal many auction houses allow us to use their data, including eBay.

We unfortunately do not take the data from eBay you are asking for. We only obtain selling price, pictures and the description. We do not obtain sellers, buyers and all such information you are asking for. I am sorry we do not do that but we never had and it is more information than we are allowed to collect. I do not think that data actually exists anywhere at this point as we are the only persons that have saved this to my knowledge. Since you are the artists, and I have no reason to doubt that, and you feel this is fraudulent, we will remove the item from the site so that it does not mislead anyone on your paintings.

If I can be of any other help, please let me know.

**From:** Annamarie Trombetta [mailto:trombettaart@yahoo.com]
**Sent:** Saturday, February 20, 2016 10:24 AM
**To:** will@worthpoint.com
**Cc:** Worthpoint Support <support@worthpoint.com>
**Subject:** Artist Annamarie Trombetta----Fraudulent Artwork--and links to Fraudulent Artwork

Dear Mr. Seippel and Mr. Watkins,

Allow me to introduce myself to you Mr. Seippel. I am professional artist Annamarie Trombetta. I as well as other people found a listing for a painting entitled 1972 Original Oil Painting Man with Red Umbrella signed Annamarie Trombetta. This is not one of my paintings. There is a photo of a signature A. Trombetta with the eBay logo and Copyright symbol written "Copyrighted work licensed by Worthpoint " with your company logo in yellow next to it. This is not my signature. **Please see attachments.**

On February 3, 2016 I spoke with Mr. Gregory Watkins. Mr. Watkins also stated that you were at a conference in Las Vegas. I asked Mr. Watkins certain questions regarding the artwork falsely attributed to me. I requested that he e-mail me his answers regarding these questions that I had about this artwork on Tuesday February 3, 2016. Today is February 20, 2016 and nothing has been forwarded to me. I have contacted eBay several times prior to contacting your company.

EXHIBIT #8

Case 1:18-cv-00993-RA-SLC   Document 61-1   Filed 06/29/20   Page 3 of 4

4.      WorthPoint's primary offering, the Worthopedia, is a searchable online database that provides subscribing users with historical pricing data from actual auction and retail sales. The Worthopedia is accessible to users from the website www.worthpoint.com. And it provides subscribers with access to more than 525 million historical auction listings, including historical listings from the online auction website www.ebay.com.

5.      In or around January 2016, I became aware that Plaintiff Annamarie Trombetta contacted WorthPoint regarding an auction listing in the Worthopedia that she alleged infringed her copyright rights (hereinafter, the "Allegedly Infringing Auction Listing"). And, on or around February 4, 2016, I caused the Allegedly Infringing Auction Listing, which was displayed at https://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-4892417, to be permanently deleted from WorthPoint's website. Once deleted, the Allegedly Infringing Auction Listing was never reposted to the Worthopedia.

6.      On February 20, 2016, I received an email from Plaintiff Trombetta which stated that a reference to the title of the Allegedly Infringing Auction Listing remained visible when she conducted a "google search for the painting '1972 Original Oil Painting Man with Red Umbrella signed Annamarie Trombetta...'" Shortly thereafter, on March 1, 2016, I responded to Plaintiff Trombetta's February 20, 2016 email and informed her that "we have taken down any pages that you have asked to have taken down as a courtesy to you" and that any reference to the Allegedly Infringing Auction Listing in her Google search "reflected the past" and was the result "of that search engine's memory."

7.      On February 5, 2018, Plaintiff Trombetta filed a complaint against Estate Auctions, Inc., Marie Novocin, and Norb Novocin in the United States District Court for the

2

Plaintiff000215

**SA2249**

Plaintiff 000058

Date                          10/26/16, 5:19 PM

annamarie trombetta artist – Google Search

EXHIBIT #9

**Google**    annamarie trombetta artist    🔍

All    Images    News    Videos    Shopping    More ▾    Search tools

Page 3 of about 28,400 results (1.13 seconds)

**Holistic Baby Acupressure System: 12 Acupressure Points for ...**
https://books.google.com/books?isbn=1499047401
Jennifer Chellis Taveras, L.Ac. - 2014 - Health & Fitness
It was to my artist friend, Annamarie Trombetta, that I turned to when I needed to create the Holistic Baby logo image. She was able to manifest my idea into a ...

**12 Acupressure Points for Pediatric Sleep Improvement and Wellness ...**
https://books.google.com/books?isbn=1499047398
Jennifer Chellis Taveras, L.Ac. - 2014 - Acupressure for children
It was to my artist friend, Annamarie Trombetta, that I turned to when I needed to create the Holistic Baby logo image. She was able to manifest my idea into a ...

**Annamarie Trombetta | Biography | Pollock Krasner Image Collection**
www.pkf-imagecollection.org/artist/Annamarie_Trombetta/biography/ ▾
Annamarie Trombetta. Contact Works. CONTACT. Annamarie Trombetta Studio: 175 East 96th Street
(14P) New York, NY 10128. Phone/ Fax: 212-427-5990.
You've visited this page 3 times. Last visit: 6/15/16

**From "Catcher In The Rye" - Hartford Courant**
www.courant.com/travel/hc-catcher007-jpg-20130502-photo.html ▾ Hartford Courant ▾
May 2, 2013 - ... make people more aware of the role that artists and writers have in the park's
development." New York City artist Annamarie Trombetta paints ...

**Marilyn Monroe 1988 Vintage Michael Ochs Archive Chanel Perfume ...**
www.worthpoint.com › Worthopedia™ ▾
... Blue Hello Kitty Obey Giant Shepard Fairey Signed & Numbered Rare Print · Handmade New
Mexican Folk Art Church Birdhouse LARGE Lark Sedona ...
You've visited this page many times. Last visit: 10/24/16

**Flickr: Annamarie Trombetta**
https://www.flickr.com/people/annamarietrombettaart/
Realist Professional Fine Artist ... Annamarie Trombetta hasn't listed any contacts yet. Testimonials
(0). Annamarie Trombetta doesn't have any testimonials yet.

**Sing for Hope — CBS New York**
newyork.cbslocal.com/tag/sing-for-hope/feed/ ▾ WCBS-TV ▾
"These pianos are all painted by volunteer artists," Vrtiak said. .... Annamarie Trombetta works on her
design for a public piano - New York, NY - Jun 7, 2011 ...

(PDF) * **AF Newsletter 2009 - Artists' Fellowship, Inc.**
www.artistsfellowship.org/AFNewsletter2010.pdf ▾
Sep 22, 2010 - Our Artists' Fellowship Annual Awards Dinner will again feature a silent auction
including the work of .... Annamarie Trombetta. Babette Bloch ...

**Buy Past Issues Online - Fine Art Connoisseur - MediaSpan**
zpla.fimc.net/article.asp?id=41902 ▾
If you cannot find Fine Art Connoisseur in your bookstore, PLEASE make a .... the immense talents of
Kamille Corry, Tony Pro, and Annamarie Trombetta

**A Portrait of 'Portrait Of the Artist, Running' - The New York Sun**
www.nysun.com/on-the-town/portrait-of-portrait-of-the-artist-running/13079/
Apr 29, 2005 - Part of the bewitching power of the painting "Portrait of the Artist, Running" ... Others
seen at the party were artist Annamarie Trombetta, who ...

‹ Goooooooooogle ›



https://www.google.com/#q=annamarie+trombetta+artist&start=20                    Page 1 of 2

Plaintiff000163

Case: 25-817, 07/17/2026, DktEntry: 89.1, Page 56 of 190

SA2251

Case 1:18-cv-00993-LTS-SLC    Document 470-11    Filed 05/19/23    Page 11 of 23

*Request Item Removal 2016-01-14 at 8.47.43 AM.png*

Date Jan 14 2016

Item Review Request | Worthpoint

www.worthpoint.com/about-item-review?URL=http://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-48924172

Apple  iCloud  Facebook  Twitter  Yahoo!  News ▾  Popular ▾

EXHIBIT #11

# ITEM REVIEW REQUEST

WorthPoint is a web site for collectors and consumers that provides price history and other information for all types of collectible items. These items are not for sale by WorthPoint.

We license the data displayed in the Worthopedia from a variety of sources. We are an official licensee of eBay and many of the leading auction houses. Our agreements permit us to display all art, antiques and collectible items – with full attribution – that are contained in eBay's and the respective auction house partners' product catalogs, along with the price paid for such item. Our licenses permit our members to use completed sales results and images displayed on the Worthopedia solely for research purposes. You may review our content policy here.

If you believe you own the rights to the image/item and prefer it not be displayed, do not complete the form provided here. Instead, request removal here.

## Item Review

If you believe the item listed on the previous page is fraudulent or otherwise inappropriate for view, please supply the information requested below.

**URL \***

http://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-4892

SEE000398

URL See Plaintiff
Evidence
PL
285

**Reason for review**

The URL above is incorrect and the information is not legitimate. My name and biography were used in this fake advertisement. Your ad from your website is coming up o the internet under my name, I am not the artist. Your listing is FALSE and the ad states there are 12 photos in the description but no photos are visible except a signature that is NOT mine. Please remove this immediately.

## Additional Items

If you know of additional items which were believ...

EXHIBIT #

10128                                                            United States ˅

ZIP / Postal Code                                              Country

**Email** *

trombettaart@yahoo.com

**Telephone**

(212) 427-5990

## Addendum to Removal Request

If you believe the listed item infringes on your intellectual property rights, please designate the reason or reasons for the Claimed Infringement below.

☑ Trademark - *item* infringement
Item is a counterfeit product which infringes the trademark owner's rights.

☐ Trademark - *listing content* infringement
Listing contains unlawful use of trademark

☑ Copyright - *listing content* infringement
Listing uses unlawful copy of copyrighted text.
Listing uses unlawful copy of copyrighted image.
Listing uses unlawful copy of copyrighted image and text.

## Additional Items

If you have additional items listed in Worthopedia which you believe present infringement issues, you can either repeat the above process for each item or complete the information below:

**Work(s) believed to be infringed** (please include trademark registration or application number with each)

Listed on your website at the URL above is an ad for an Original Oil Painting from 1972. My name and self written biography from my website was used without my consent or knowledge. I am requesting that your infringing ad on your website be permanently removed. This information is fraudulent. Your company is claiming that I am the artist who painted the Original Oil Man With Red Umbrella in 1972, I did not paint this oil. I would have been 9 years old. PLEASE remove this false listing from your website and the internet immediately.

Plaintiff 000286

Paged
Dated 420
June

PL
286

Plaintiff's Evidence 000602

EXHIBIT #13

A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Annamarie Trombetta,

                    Plaintiff                    C.A. NO. 18-CV-993 (RA) (SLC)

VS.

Norb Novocin, Marie Novocin and
Estate Auctions Inc. and WorthPoint Corp.,

                    Defendants

### DEFENDANT'S WORTHPOINT CORP. RESPONSES AND OBJECTIONS TO PLAINTIFF'S FOURTH REQUEST FOR INTERROGATORIES

Pursuant to Rule 33 for the Federal Rules of Civil Procedure, Defendant WorthPoint Corp.

("WorthPoint") hereby responds to Plaintiff's Fourth Request for Interrogatories.

**Plaintiff's Interrogatory No. 1**
State in writing if Norb Novocin ever had or has a membership with to WorthPoint Corporation website. If you claim that part of any response is privileged or otherwise immune from discovery; (a) identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.

**RESPONSE:** WorthPoint objects to this request on the grounds that this request is duplicative as

testimony to this effect has previously been elicited from Norb Novocin in this matter.

WorthPoint further objects to the extent that this request seeks proprietary business information

and information as to WorthPoint's members. Subject to and without waiving the foregoing

objections, WorthPoint confirms that Norb Novocin is a paid subscriber to worthpoint.com.

**Plaintiff's Interrogatory No. 2**
State the years and dates when Norb Novocin has membership with WorthPoint Corporation. If you claim that part of any response is privileged or otherwise immune from discovery; (a) identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.

1
CONFIDENTIAL

**SA2254**

EXHIBIT #13B

Plaintiff's Evidence 000604

**RESPONSE**: WorthPoint objects to this request on the grounds that it is more appropriately directed to Norb Novocin. WorthPoint further objects to the extent that this request seeks proprietary business information and information as to WorthPoint's members.

Subject to and without waiving the foregoing objections, WorthPoint confirms that Norb Novocin is a paid subscriber to worthpoint.com from May 15, 2014 to present.

**Plaintiff's Interrogatory No. 3**
State in writing the dates of employment (the months and years) when Gregory Watkins was employed at WorthPoint Corporation. **If you claim that part of any response is privileged or otherwise immune from discovery; (a) identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.**

**RESPONSE:** September 2008 through April 2016.

**Plaintiff's Interrogatory No. 4**
State in writing the **last** day of employment (the months and years) when Gregory Watkins was no longer employed at WorthPoint Corporation. **If you claim that part of any response is privileged or otherwise immune from discovery; (a) identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.**

**RESPONSE:** WorthPoint objects to this request on the grounds that it is duplicative insofar as Interrogatory No. 3 requests the last date of employment as well. Mr. Watkins was no longer employed by WorthPoint after April 2016; the exact date is not available. Mr. Watkins performed services for WorthPoint in an independent contractor capacity until September 2016.

**Plaintiff's Interrogatory No. 5**
State in writing the dates of employment (the month and years) when Anita Brooks was employed at WorthPoint Corporation. **If you claim that part of any response is privileged or otherwise immune from discovery; (a) identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information**

2
CONFIDENTIAL

Case 1:18-cv-00993-LTS-SLC    Document 470-11    Filed 05/19/23    Page 15 of 23

Plaintiff's Evidence 000605

which responds to this request and does not fall within your claim of privilege or other immunity.

RESPONSE: June 2015 to March 2017.

EXHIBIT #130

**Plaintiff's Interrogatory No. 6**
State in writing the **last** day of employment (the month and year) when Anita Brooks was no longer employed at WorthPoint Corporation. **If you claim that part of any response is privileged or otherwise immune from discovery; (a) identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.**

RESPONSE: WorthPoint objects to this request on the grounds that it is duplicative insofar as Interrogatory No. 5 requests the last date of employment as well. Ms. Brooks was no longer employed by WorthPoint after March 2017; the exact date is not available.

**Plaintiff's Interrogatory No. 7**
State the name of the WorthPoint Corporation employee who **POSTED** the "1972 Man With Red Umbrella Oil Painting sold on eBay by Estate Auctions Inc with Plaintiff's biography to the www.worthpoint.com website. **If you claim that part of any response is privileged or otherwise immune from discovery; (a) identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.**

RESPONSE: WorthPoint objects to this request on the grounds that it is duplicative of

plaintiff's prior similar request, and it mischaracterizes the manner in which eBay data is made

available on WorthPoint's service. Subject to and without waiving the foregoing objections,

WorthPoint states that there were no such employees that manually posted this specific listing.

**Plaintiff's Interrogatory No. 8**
State in writing the month and year when the WorthPoint Corporation employee posted "1972 Original Oil PaintingMan With Red Umbrella WorthPoint Ad "to the WorthPoint website. **If you claim that part of any response is privileged or otherwise immune from discovery; (a) identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.**

3

CONFIDENTIAL

**SA2256**

Plaintiff's Evidence 000606

**RESPONSE:** WorthPoint objects to this request on the grounds that it is duplicative of plaintiff's prior similar request, and it mischaracterizes the manner in which eBay data is made available on WorthPoint's service. Subject to and without waiving the foregoing objections, WorthPoint states that there were no such employees that manually posted this specific listing. Furthermore, WorthPoint is not in possession of any information as to when this listing was posted on WorthPoint's website. Based on the Google Analytics records WorthPoint previously produced, this listing had no traffic (i.e., no person had viewed it) prior to August 2015.

**Plaintiff's Interrogatory No. 9**
State in writing the month and year WHEN the WorthPoint Corporation employee REMOVED the "1972 Original Oil PaintingMan With Red Umbrella WorthPoint Ad" from the WorthPoint website. **If you claim that part of any response is privileged or otherwise immune from discovery; (a) identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.**

**RESPONSE:** WorthPoint objects to this request on the grounds that it is duplicative of plaintiff's multiple prior requests, and mischaracterizes the listing. Subject to and without waiving the foregoing objections, WorthPoint removed the subject listing on February 4, 2016.

**Plaintiff's Interrogatory No. 10**
State the **name** of the WorthPoint Corporation employee that REMOVED the "1972 Man With Red Umbrella Oil Painting sold on eBay by Estate Auctions Inc with Plaintiff's biography from the www.worthpoint.com website. **If you claim that part of any response is privileged or otherwise immune from discovery; (a) identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.**

**RESPONSE:** WorthPoint objects to this request on the grounds that it mischaracterizes the listing. Subject to and without waiving the foregoing objections, Jason Packer, who is an independent contractor to WorthPoint, removed the subject listing from WorthPoint's website.

4
CONFIDENTIAL

Plaintiff's Evidence 000607

EXHIBIT#13

E

**Plaintiff's Interrogatory No. 11**
Explain and state then how mass-downloaded listings can obtain licensing rights by WorthPoint. **If you claim that part of any response is privileged or otherwise immune from discovery; (a) identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.**

RESPONSE: WorthPoint objects to this request on the grounds that it is incomprehensible insofar as it is uncertain what is meant by "then how mass-downloaded listings can obtain licensing rights by WorthPoint." Subject to and without waiving the foregoing objections, and trying its best to interpret the request, WorthPoint states that it licenses the use of eBay data in several categories of eBay's past sales, including the category of art, as opposed to licensing the use of individual results of past sales. The listings in the licensed categories are then made available to WorthPoint by its licensing partner for download and WorthPoint then downloads multiple listings made available to it at the same time. WorthPoint refers plaintiff to its document production, Bates Stamps WP000001-WP000035, which sets forth the relevant category that the subject listing came under and how this data is licensed.

**Plaintiff 's Interrogatory No. 12**
Explain and identify the text in WorthPoint Corporation's licensing agreement that allows WorthPoint Corporation to claim and state in writing "© Copyrighted work and licensed by WorthPoint". **If you claim that part of any response is privileged or otherwise immune from discovery; (a)identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.**

RESPONSE: WorthPoint objects to this request on the grounds that it is duplicative of plaintiff's multiple prior requests. This request is furthermore vague and ambiguous as to the instruction to "explain and identify the text in WorthPoint Corporation's licensing agreement that allows WorthPoint Corporation to claim and state in writing "© Copyrighted work and licensed by

CONFIDENTIAL

Plaintiff's Evidence000608

EXHIBIT #13 F

WorthPoint," and that the request assumes facts not in evidence. Subject to and without waiving the foregoing objections, WorthPoint again encourages plaintiff to read its document production, Bates Stamps WP000001-WP000035, as it sets forth the conditions of WorthPoint's license of eBay data for the relevant time period. WorthPoint furthermore refers plaintiff to responses Nos. 14, 19, and 20 to WorthPoint's Responses to Plaintiff's Second Set of Interrogatories, dated July 1, 2020.

**Plaintiff 's Interrogatory No. 13**
Explain what rights or authority WorthPoint claims to mass download the 1972 Oil painting. **If you claim that part of any response is privileged or otherwise immune from discovery; (a)identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.**

**RESPONSE:** WorthPoint objects to this request on the grounds that it calls for a legal conclusion and on the grounds that the request itself is vague, ambiguous and virtually-incomprehensible. WorthPoint did not mass download the "1972 Oil Painting." In addition, one cannot "mass-download" a single record of a past sale nor is it possible to "download" an oil painting. *See also,* Response No. 11, which sets forth that WorthPoint did not license the use of a single past sale but rather licensed the use of multiple past eBay listings in various categories.

**Plaintiff 's Interrogatory No. 14**
Explain the terms of the Fair Use legal rules that permits WorthPoint Corporations to use Plaintiff 's self authored Biography. **If you claim that part of any response is privileged or otherwise immune from discovery; (a)identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.**

**RESPONSE:** WorthPoint objects to this request on the grounds that it calls for a legal conclusion, to which no response is required.

**Plaintiff 's Interrogatory No. 15**

6
CONFIDENTIAL

*EXHIBIT #B6*

Plaintiff's Evidence 000609

Explain in detail WorthPoint Corporation licensing agreement that was mentioned in the 2015 lawsuit Rosen vs. Terapeak SEE ATTACHMENTS **If you claim that part of any response is privileged or otherwise immune from discovery; (a)identify the grounds for your claim of privilege or immunity (b) identify the privileged documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.**

**RESPONSE**: WorthPoint objects to this request on the grounds that this request is not reasonably calculated to lead to the discovery of admissible evidence, on the grounds that it is not reasonably limited in subject matter, time or scope, it seems to seek a legal conclusion to which no response is required and it is vague as to what is meant by "Explain in detail WorthPoint Corporation licensing agreement that was mentioned in the 2015 lawsuit Rosen vs. Terapeak."

As such, WorthPoint will not be responding to this request.

PLEASE TAKE NOTICE, WorthPoint reserves the right to amend and/or supplement the above responses during the pendency of this action.

DATED: October 11, 2022

Very Truly Yours,

Wilson Elser Moskowitz Edelman & Dicker LLP

/s Jana S. Farmer_____
Adam R. Bialek
150 E. 42nd Street
New York, NY 10017
(212) 490-3000 (phone)
(212) 490-3038 (facsimile)
Adam.Bialek@wilsonelser.com

Jana A. Slavina Farmer
1133 Westchester Ave
White Plains, NY 10604
(914) 323-7000 (phone)
(914) 323-7001 (facsimile)
*Attorneys for Defendant WorthPoint*

TO:    Annemarie Trombetta
*Plaintiff Pro Se*

7

CONFIDENTIAL

**SA2260**

She would like to know when it was posted (the date) and if there are any other photos that came with the file ... she's very unreasonable...

Please let me know what you can find out.

Thanks,

-g

--
**Gregory Watkins**
Editor
WorthPoint Corporation

**t.** 877-481-5750   **c.** 770-344-9182

WorthPoint.com :: GoAntiques.com :: MarksandLibrary.com

EXHIBIT # 13B

WP000131



EXHIBIT
#15A

take down a WP page

Jason Packer <jason.packer@worthpoint.com>

2 messages

**Gregory Watkins** <greg.watkins@worthpoint.com>                    Wed, Feb 3, 2016 at 9:53 AM
To: Jason Packer <jason.packer@worthpoint.com>
Cc: Antoine Lyseight <antoine.lyseight@worthpoint.com>

Hi Jason,

A woman has called several times saying that a painting attributed to her that sold on eBay was not painted by her and she would like the page taken down.

Here is the link:

http://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-48924172

She would like to know when it was posted (the date) and if there are any other photos that came with the file ... she's very unreasonable...

Please let me know what you can find out.

Thanks,

-g

--

**Gregory Watkins**
Editor
WorthPoint Corporation

**t.** 877-481-5750    **c.** 770-344-9182

WorthPoint.com :: GoAntiques.com :: MarksandLibrary.com

**Jason Packer** <jason.packer@worthpoint.com>                    Thu, Feb 4, 2016 at 9:12 AM
To: Gregory Watkins <greg.watkins@worthpoint.com>
Cc: Antoine Lyseight <antoine.lyseight@worthpoint.com>

Hi Greg,
That's removed.

It was posted 2013-03-05, and we do not have any other photos with it.

Gregory Watkins wrote:

> Hi Jason,
>
> A woman has called several times saying that a painting attributed to her that sold on eBay was not painted by her and she would like the page taken down.
>
> Here is the link:
>
> http://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-48924172

WP000130

**SA2262**

EXHIBIT #16 A

Plaintiff's Evidence Expert Dis.001004

00;05;46;14 - 00;05;54;03

Speaker Gregory Watkins

Yes. The problem that I think you are going to face is.. ah.. I'll ask my IT guy, if there's any metadata attached to the page, but I don't think so.

00;05;57;03 - 00;06;23;01   CONTINUED Speaker Gregory Watkins

The best that I can do is to down the listing so it disappears. It will it won't umm.. it won't .. be on our site anymore. And if the Google listing… It is going to take a while for it to work all the way through Google, if somebody clicks on that Google link ..they'll just get an error Page.. 404 error page… The page that you are looking for doesn't exit.

00;06;26;11 - 00;06;28;08 CONTINUED Speaker Gregory Watkins

And eventually Google will clear that out when they re-spider the site.

00;06;28;18 - 00;06;33;05

**Speaker Annamarie Trombetta Plaintiff**

Mm hmm. Do I need to contact Google ?

00;06;35;04 - 00;06;40;13

Speaker Gregory Watkins

They don't even have a phone number on their site.

**Speaker Annamarie Trombetta Plaintiff**

Yeah, well, that's the prob.

Speaker Gregory Watkins

You could try that.

00;06;40;13 - 00;06;58;27

**Speaker Annamarie Trombetta Plaintiff**

That's the problem with, you know, initially what your company as well as umm.. eBay. And I need to ask you this, How long, to your knowledge, do you know that this ah.. listing has been up there?

EXHIBIT #16B

Plaintiff's Evidence Expert Dis.001005

00;07;00;03 - 00;07;06;08
Speaker Gregory Watkins

Well, if it sold in 2012. We usually get the data about six months.. there's a six month lag ..

00;07;06;28 - 00;07;20;09

**Speaker Annamarie Trombetta Plaintiff**

There's a six month lag. OK. That's why it's important for me to umm… to get the name of the seller, because they did it once. They could do it again.

00;07;21;09 - 7;22;07
Speaker Gregory Watkins

Well, yes, they can.

**Speaker Annamarie Trombetta Plaintiff**

Yes, they can.

Speaker Gregory Watkins

00;07;24;19 - 00;07;35;08

The problem that.. that.. we have with the information that we have, is that we never got any of the information about the sellers.

00;07;37;17 - 00;07;49;04
All the, you know.. um..All the 300 million pages that we have of these sales documents ..ah.. none of them have any connection to the sale, the seller, as far as eBay.

00;07;49;10 - 00;07;55;19

**Speaker Annamarie Trombetta Plaintiff**

But isn't that information? Aren't you responsible for that information? That you're putting on your site ?

00;07;56;20 - 00;08;09;02

Speaker Gregory Watkins

Well, we're not we're not given that. We don't have.. we are.. all we are trying to do is show what an item has sold for. And if there's a problem with the item. We will take it down.

00;08;09;13 - 00;08;09;24

**Speaker Annamarie Trombetta Plaintiff**

**SA2264**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

Annamarie Trombetta,,

                Plaintiffs,

        -against-

Norb Novocin, et al.,

               Defendants

-------------------------------------------------------------------X

Civil Action No: 18-cv-00993
(RA) (SLC)

**<u>DECLARATION IN
OPPOSITION TO
PLAINTIFF'S VARIOUS
MOTIONS IN LIMINE AND
MOTIONS TO PROFFER</u>**

**JANA S. FARMER**, hereby declares the following under the penalties of perjury;

      1.     I am a member of the law firm of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, attorneys of record for the defendant, WORTHPOINT CORPORATION (hereinafter, "WorthPoint"). By virtue of my association with this firm and my work with this file, I am fully familiar with the facts and circumstances of this action as set forth herein.

      2.     I submit this Declaration in support of WorthPoint's opposition to Plaintiff's motions: 1) Plaintiff's Motion *in Limine* to preclude the Declaration of Jason Packer and Expert Disclosure of Jessie Stricchiola; 2) Plaintiff's Motion to Proffer the Expert Disclosure of Patrick O'Leary; 3) Plaintiff's Motion to Proffer the untimely disclosure of Dr. Joseph Scelsa; 4) Plaintiff's Motion to Proffer the untimely disclosure Gayle Skluzacek; and, 5) for such other, different and further relief as the Court in its discretion may deem just and proper.

      3.     Annexed hereto as **Exhibit "A"** is a true and correct copy of WorthPoint's Rule 26 disclosure, which specifically lists Jason Packer as a fact witness on behalf of WorthPoint.

      4.     During the course of discovery in this matter, Plaintiff never sought to depose any witness on behalf of WorthPoint, including Jason Packer.

**SA2265**

5.      Annexed hereto as **Exhibit "B"** is a true and correct copy of the Declaration of Jason Packer, dated January 19, 2023.

6.      Annexed hereto as **Exhibit "C"** is a true and correct copy of the disclosure of WorthPoint's expert, Jessie Stricchiola, timely served on January 19, 2023.

7.      Annexed hereto as **Exhibit "D"** is a true and correct copy of WorthPoint's October 11, 2022 e-mail to Plaintiff, via which WP000132 was produced as an attachment.

8.      Based upon the facts described in the accompanying Memorandums of Law, and the exhibits annexed hereto, and the proceedings heretofore had herein, Plaintiff's Motion *in Limine* and Motions to Proffer must be denied in their entirety.

**WHEREFORE**, WorthPoint respectfully requests that this Court issue an Order: 1) denying Plaintiff's Motion *in Limine* to preclude the Declaration of Jason Packer and Expert Disclosure of Jessie Stricchiola; 2) denying Plaintiff's Motion to Proffer the expert disclosure of Patrick O'Leary; 3) denying Plaintiff's Motion to Proffer the untimely expert disclosure of Dr. Joseph Scelsa; 4) denying Plaintiff's Motion to Proffer the untimely expert disclosure Gayle Skluzacek; and, 5) for such other, different and further relief as the Court in its discretion may deem just and proper.

Date: May 30, 2023

Respectfully submitted,

WILSON ELSER MOSKOWITZ EDELMAN
& DICKER LLP

*s/ Jana Farmer*

Jana A. Slavina Farmer, Esq.
1133 Westchester Ave
White Plains, NY 10604
(914) 323-7000 (phone)

**SA2266**

(914) 323-7001 (facsimile)
*Attorneys for Defendant WorthPoint*

TO:
Annamarie Trombetta
*Plaintiff Pro Se*
175 East 96th Street, Apt. 12R
New York, NY 10128

Anderson Duff
Hogan Duff, LLP
Attorney for Defendants
Norb Novocin, Marie Novocin
And Estate Auctions, Inc.
43-10 Crescent St. Ste. 1217
Long Island City, NY 11101
(646) 450-3607
ajd@hoganduff.com

283491512v.1
283491512v.1

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------ X

ANNAMARIE TROMBETTA,                                     :
                                                        :
                              Plaintiff,                 :    Civil  Action No. 18-cv-00993-RA-SLC
                                                        :
              - against –                                :
                                                        :
NORB NOVOCIN, MARIE NOVOCIN, ESTATE                      :
AUCTIONS, INC., and                                      :
WORTHPOINT CORPORATION,,                                 :
                                                        :
                              Defendants.                :
------------------------------------------------------------------------ X

### FIRST INITIAL DISCLOSURE OF DEFENDANT WORTHPOINT CORPORATION PURSUANT TO FRCP 26(A)(1)

Defendant WorthPoint Corporation, ("Defendant"), by and through undersigned counsel, hereby makes these initial disclosures pursuant to Federal Rules of Civil Procedure 26(a)(1). Defendant reserves the right to amend, supplement, or modify these disclosures in future discovery responses and/or as required or provided by Federal Rules of Civil Procedures 26(e) and as additional investigation and discovery are completed.

**FRCP 26(a)(1)(A)(i):  The name, and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.**

| Individual | Subject of Information |
|---|---|
| Jason Packer | WorthPoint's data architecture, including stages of data acquisition, processing, injection and publication; |
| William Seippel | WorthPoint's business operations, lack of profit from the alleged infringement and |

9886270v.1

|  |  |
|---|---|
|  | communications with plaintiff regarding the auction listing in question and its removal |
| Norb Novocin | Information regarding the development of the auction listing of the artwork at issue, including inclusion of plaintiff's biographical information and communications with Plaintiff |
| Marie Novocin | Information regarding the development of the auction listing of the artwork at issue, including inclusion of plaintiff's biographical information and communications with Plaintiff |
| Plaintiff Annamarie Trombetta | Plaintiff's art sales before and after the subject auction result was published and effect of the publication on her sales; plaintiff's alleged loss of income; Plaintiff's copyright registration; Plaintiff's copyright application related to her biography; plaintiff's licensing/monetization of her biography; plaintiff's communications with the defendants and the allegations in the Complaint. |
| Representatives of Google | Google's practices in 2016-2016 concerning collection and preservation of cached Internet pages; the date Google first saw the posting, the date Google first crawled the posting, the date Google indexed the URL, the date Google de-indexed the URL and the date Google received a removal request and took action |

**FRCP 26(a)(1)(A)(ii):  A copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.**

- Documents setting forth WorthPoint's Data Flow procedures and data removal procedures (in possession of WorthPoint);

2

9886270v.1

**SA2269**

- Communications with plaintiff, including any recordings of telephone conversations that plaintiff represented she had made (in part, in possession of WorthPoint; and believed to be in possession of plaintiff and co-defendants);

- Complete copy of the subject auction listing and images of the subject artwork (believed to be in possession of plaintiff and co-defendants);

- Date-stamped printouts of the republished auction listing on WorthPoint's website (believed to be in the possession of plaintiff);

- Date-stamped search engine searches for the plaintiff's name or the subject artwork, which plaintiff maintains purport to show that WorthPoint did not remove and/or reposted the information as the subject artwork from/ onto their website after January 1, 2017 (believed to be in possession of the plaintiff.

**FRCP 26(a)(1)(A)(iii):  A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;**

The Defendant is are unaware of any damages sustained by Plaintiff at this time.  The Defendant, however, has sustained damages by incurring legal fees and costs which are continuing.  Support, including legal bills will be submitted if and when a fee claim is litigated.

**FRCP 26(a)(1)(A)(iv):  For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment**

3

9886270v.1

Great American provides WorthPoint with Management Liability Solution Coverage pursuant to Policy No. DOL3664464 for the policy period of December 6, 2019 to December 6, 2020. Cap Specialty provides WorthPoint with Technology/Media/Cyber Coverage pursuant to Policy No. SGC0001844-10 for the policy period of October 23, 2019 to October 23, 2020. Confidential copies of the insurance declarations are being produced herewith.

The Answering Defendant reserves the right to amend and/or supplement these disclosures during the pendency of this action.

Dated:  February 25, 2022

<div style="margin-left:40%">

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

By: ___*s/ Jana Slavina Farmer*_____

Adam R. Bialek
666 Old Country Road
Suite 602
Garden City, NY 11530
Telephone: (212) 915-5143
Fax:  (212) 490- 3038
Adam.Bialek@wilsonelser.com

Jana S. Farmer
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Ave.
White Plains, NY 10604
(914) 872-7247 (Direct)
(914) 323-7001 (Fax)
Jana.Farmer@wilsonelser.com

***Attorneys for Defendant WorthPoint Corporation***

</div>

To:     Annamarie Trombetta
        *Plaintiff Pro Se*
        175 East 96th Street
        Apt. 12R
        New York, NY 10128

4

9886270v.1

Anderson Duff
Hogan Duff, LLP
Attorneys for Defendants
Norb Novocin, Marie Novocin
and Estate Auctions, Inc.
43-10 Crescent St.
Ste. 1217
Long Island City, NY 11101
(646) 450-3607
ajd@hoganduff.com

9886270v.1

**SA2272**

18-cv-00993-RA-SLC                                      File No. 19701.00006

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

ANNAMARIE TROMBETTA,

                      Plaintiff,

     - against –

NORB NOVOCIN, MARIE NOVOCIN,
ESTATE AUCTIONS, INC., ~~WILLIAM
SEIPPEL~~ and WORTHPOINT
CORPORATION,

             Defendants.

---

---

---

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
**Attorneys for Defendant**
**WORTHPOINT CORPORATION**
**150 East 42nd Street**
**New York, New York  10017**
**(212) 490-3000**

6

9886270v.1

**SA2273**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

ANNAMARIE TROMBETTA

Plaintiff,

-against-

NORB NOVOCIN, MARIE NOVOCIN,
ESTATE AUCTIONS, INC., AND
WORTHPOINT CORPORATION,

Defendants.

---

**DECLARATION**

Civil Case No. 18-cv-00993-RA-SLC

**JASON PACKER** hereby declares:

1.      I am the lead technical architect for WorthPoint Corporation in the areas of data, SEO (search engine optimization), and analytics. I have been serving in this role since 2008, first as the Director of Architecture and then as an outside consultant since 2012. I have served as the lead on Google Analytics at all times relevant hereto.

2.      I have expertise in Google Analytics based on extensive professional use of the product and its predecessor Urchin since 2000. I'm a known expert on Google Analytics within the web analytics community. My work has been cited by research done at academic institutions including: Vanderbilt, Imperial College London, Polytechnic University of Turin, and LMU Munich. I have published a book on web analytics, *Google Analytics Alternatives* (Quantable LLC, 2022). I received a B.S. degree in Mathematics with a Specialization in Computer Science from the University of Chicago in 1997 and have worked in as an IT professional since that time. I'm a

1

257342712v.2

co-organizer of Columbus Web Analytics Wednesday, and a speaker at that and other events such as MeasureCamp and WordCamp.

3.      I submit this declaration in order to dispel plaintiff's claim that the listing for the sale of the 1972 oil painting "Man with Red Umbrella" existed after February 2016.  As set forth below, plaintiff's claim that the listing was still posted on WorthPoint's website in May of 2017 is not accurate.

4.      On or about February 4, 2016, I was tasked with permanently removing from WorthPoint's data processing server and website the information about the listing for the 1972 oil painting "Man with the Red Umbrella, " which was originally posted with the URL "https://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-48924172"   (the "URL"). This is the listing that has been identified by plaintiff in this case. I permanently deleted this URL on February 4, 2016. Since February 4, 2016, the URL has never been reposted, and it does not currently exist on WorthPoint's site.

5.      Annexed hereto as **Exhibit 1** and **Figure 1** is the true and correct screenshot from the WorthPoint data processing server showing the deletion history of this URL.  This screenshot shows that the file containing the deletion was last modified on February 4, 2016 and that no other instances of that same URL were later reposted and deleted a second time.

**Figure 1:**



Redacted - Proprietary Information

257342712v.2

**SA2275**

6.        This data is consistent with the information from WorthPoint's Google Analytics account. Annexed hereto as Exhibit 2 are Google Analytics reports from WorthPoint Universal Google Analytics property UA-2113658-1 ("Google Analytics").  Figure 2 below (also included with Exhibit 2) is a screenshot from the Google Analytics report that shows the amount of traffic www.worthpoint.com received on the URL up to and including the month the deletion request was received. It shows 0 traffic through August 2015 and 128 unique pageviews (unique pageviews from different sessions, not indicative of individual people) until Feb 28, 2016.

**Figure 2:**



7.    This means that no person accessed the URL before August 2015. This is consistent with the claim that the URL was first noticed by Plaintiff (or Plaintiff's friend) in August 2015.  It further indicates that no one viewed the page prior to August 2015.   The 128 pageview sessions, that would likely include traffic from the plaintiff, the plaintiff's friends, and some internal

3

257342712v.2

**SA2276**

WorthPoint traffic. Drilling down into that traffic leads me to believe it is in fact a very small number of distinct users.

8.    Specifically, the screenshot in Figure 3 (also included with Exhibit 2) shows that all of the traffic to the URL in August 2015 (when the URL first received any traffic) came from Verizon as an internet service provider (ISP) with 2 different browsers from 2 different cities in New York State.

**Figure 3:**

Redacted - Proprietary Information

It should be noted that plaintiff was located in New York at the time and, upon information and belief, plaintiff's friends, the Ploskis, had resided in Nyack.

9.    Figure 4 (also included within Exhibit 2) shows the number of pageviews to the URL in February 2016, the month when the deletion request was received.

**Figure 4:**

4

257342712v.2

**SA2277**



10.    Figure 5 (also included within Exhibit 2) shows traffic to the URL on February 3, 2016, one day before the deletion of the URL was executed. This screenshot illustrates that a valid page title was displayed to the viewer, which means that on this day the visitor to the URL was able to access the URL and see its content.

**Figure 5:**



5

257342712v.2

**SA2278**

11.     Figure 6 (also included within Exhibit 2) shows traffic to the URL on February 4, 2016. On this day, one pageview displayed the valid page view title to the viewer and two other pageviews displayed a "404 Page not found" error message. This demonstrates that at some point on February 4, 2016, the content on the page at the URL was removed.

**Figure 6:**



Redacted - Proprietary Information

12.     Figure 7 (also included within Exhibit 2) shows traffic to the URL on February 20, 2016. It shows a single pageview and that the viewer received only the "404 Page not found" message. This means the visitor was not able to see any content beyond the error message at this URL on February 20, 2016.

**Figure 7:**

257342712v.2



13.     The above indicates with a reasonable degree of professional certainly that the URL was permanently deleted on February 4, 2016, which matches the output of the text file log Redacted - Proprietary Information discussed above.

14.     After February 20, 2016, there was only one additional pageview attempt to the URL during the reporting time frame. This was on May 8, 2017 as shown in Figures 8 and 9:

**Figure 8:**

257342712v.2

**SA2280**



**Figure 9:**



257342712v.2

15.    Figure 9 shows, once again, that the visitor on May 8, 2017 also encountered the "404 Page not found" error, which demonstrates with a reasonable degree of professional certainty that the URL had not returned any content and had not been reloaded.

16.    I further declare that there have not been any tagging errors or outages that would have caused significant data loss to WorthPoint's data processing server or Google Analytics account during the relevant time periods from 2012 to present.

17.    WorthPoint monitors their Google Analytics account closely and logs issues in Google Analytics as annotations. There are no relevant annotations in Google analytics indicating any tagging errors or outages during the relevant time period.

18.    WorthPoint does not sell any artworks or collectables. Rather, visitors and subscribers to WorthPoint's website are given an opportunity to view available information on sales of artwork. Further, only paid subscribers can view the price for which listed artworks or collectibles previously sold. WorthPoint was not involved in the sale of the 1972 Man with Red Umbrella painting, did not create the content in the listing, did not participate in identifying the artist of the painting, and was not party to the inclusion of plaintiff's biography in the original listing.

19.    According to WorthPoint's log of price lookups (a true and correct screenshot of which is annexed hereto as Exhibit 3 and Figure 10 below) made from the price guide detail page, only two users made those requests for the artwork described in the subject URL. Upon information and belief, annamarie@trombettaart.com is plaintiff's email address, meaning that one of the two users looking up the price for the subject painting was plaintiff herself. Upon information and belief, the other visitor, with an address of Simianarts@cs.com appears to have been plaintiff's friend.

9

257342712v.2

**Figure 10:**

Redacted - Proprietary Information

20.     I have searched WothPoint's records and confirmed that neither user referenced in Figure 10 was an active subscriber to WorthPoint's services after February 3, 2016. Once they were inactive, they would not have been able to see the price that the painting previously sold at.

21.     WorthPoint's website currently receives approximately Redacted - Proprietary Googlebot spidering data refresh requests per day to price guide detail pages, which Google does in order to capture the content of those pages for their search engine, as well as cache versions of pages. Redacted - Proprietary InformationRedacted - Proprietary Information Redacted - Proprietary InformationRedacted - Proprietary Information The frequency at which Googlebot returns to an individual URL may vary greatly, but on average individual price guide detail pages such as the URL in question are requested very infrequently if at all.

22.     In my personal experience serving as the SEO lead for WorthPoint since 2008, the overall volume of price guide detail pages and spidering rates were different in 2015-2017 vs currently, but the ratios of how often each page may be crawled and refreshed has remained quite consistent. Annexed hereto as Exhibit 4 and Figure 11 is a true and correct screenshot of WorthPoint's crawl request data:

   **Figure 11:**

10

257342712v.2

**SA2283**



Redacted - Proprietary Information

23.     This means that a cached version of the page may have remained on Google's servers for months or years after it was deleted by WorthPoint, as Google would not refresh their cache until the page is spidered by Googlebot again.

11

257342712v.2

24.     Thus, to the extent plaintiff was able to find references to the URL by making various very specific searches on Google, this would have had to have been due to Google cache displaying a reference to the page that Google previously spidered. If plaintiff, or anyone else, were to have clicked on the link in the Google search results to the URL in question after February 4, 2016, that person would have received a "404 Page not found" error.

25.     In sum, on February 4, 2016, I personally deleted the URL plaintiff identified and confirmed that it was never re-posted by WorthPoint. Had plaintiff attempted to access the page at the URL, she would have received a "404 Page not found" error, and the listing about the sale of the 1972 oil painting would not have appeared.

Pursuant to 28 U.S. Code § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:     January 19, 2023

By:     _____
         Jason Packer

12

257342712v.2

# EXHIBIT 1

257342712v.2



CONFIDENTIAL                                        WP000132

14

257342712v.2

**SA2287**

# EXHIBIT 2

257342712v.2

**SA2288**

<span style="color:red">Redacted - Proprietary Information</span>



CONFIDENTIAL                    WP000042

16

257342712v.2

Redacted - Proprietary Information



CONFIDENTIAL                WP000043

257342712v.2



CONFIDENTIAL                          WP000044

257342712v.2

Redacted - Proprietary Information



CONFIDENTIAL                              WP000045

19

257342712v.2

Redacted - Proprietary Information



CONFIDENTIAL                    WP000046

257342712v.2

Redacted - Proprietary Information

CONFIDENTIAL                    WP000047

257342712v.2

<span style="color:red">Redacted - Proprietary Information</span>



CONFIDENTIAL                    WP000048

257342712v.2

**SA2295**



Redacted - Proprietary Information

CONFIDENTIAL                    WP000049

23

257342712v.2

**SA2296**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

ANNAMARIE TROMBETTA,                             :
                                                 :
                         Plaintiff,              :    Civil  Action No. 18-cv-00993-RA-SLC
                                                 :
          - against –                            :
                                                 :
NORB NOVOCIN, MARIE NOVOCIN, ESTATE              :
AUCTIONS, INC., and WORTHPOINT                   :
CORPORATION,,                                    :
                                                 :
                         Defendants.             :
------------------------------------------------------------------------ X


**DEFENDANT WORTHPOINT CORPORATION'S EXPERT DISCLOSURE
PURSUANT TO FRCP RULE 26(a)(2) OF JESSIE STRICCHIOLA**


PLEASE TAKE NOTICE, that pursuant to Rule 26(a)(2) of the Federal Rules of Civil

Procedure, Defendant WORTHPOINT CORPORATION ("WorthPoint"), by its attorneys

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, hereby states the following as

and for its expert witness disclosure:

1.       WorthPoint intends to call Jessie Stricchiola, Founder and CEO of Alchemist

Media, Inc., as an expert witness at trial in connection with this matter.

2.       Ms. Stricchiola's testimony will be based upon, but not limited to, her examination

of the pleadings and proposed amended complaint, parties' discovery exchanges, deposition

testimony, interview with witness Jason Packer, Declaration of Jason Packer, dated January 19,

2023, WorthPoint's Google Analytics account, relevant pages from the WorthPoint.com website

and a report of Patrick Michael O'Leary, which was disclosed by the plaintiff. Please also see Ms.

1

**SA2297**

Stricchiola's report (Exhibit "A" hereto) for a more complete discussion of information and records on which she is anticipated to rely.

3.     Ms. Stricchiola is expected to testify that Defendant WorthPoint removed from its website the web page containing the listing alleged to be at issue in this matter, located at the URL: https://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-48924172,    and that the subject listing was not re-published by Defendant to its website after February 4, 2016. Thus, Ms. Stricchiola is expected to testify, within the reasonable degree of professional certainty, that the last date that the subject listing was published on WorthPoint's website was February 4, 2016. Ms. Stricchiola may testify as to the technological materials and information that provide a basis for her opinion.

4.     Ms. Stricchiola will also opine that the date in the upper righthand corner of Plaintiff's various web page printouts she produced during discovery (should the Plaintiff be able to authenticate them and admit them into evidence – a position that Defendant does not concede) does not necessarily indicate the date on which Plaintiff was able to access (e.g. view) the web page at the above URL on Defendant's website. Ms. Stricchiola is also expected to testify, to the extent necessary, about how web results may return in response to a search although the content may not be on the website operator's webpage.  Ms. Stricchiola is also expected to testify in rebuttal to any of the opinions that may be offered by Mr. O'Leary.

5.     The substance of Ms. Stricchiola's expected testimony is more fully set forth in her report, which is *annexed hereto* as **Exhibit "A."**

6.     Ms. Stricchiola's qualifications are set forth in her curriculum vitae, which is *annexed hereto* as **Exhibit "B."**

2

PLEASE TAKE FURTHER NOTICE, Defendant WORTHPOINT CORPORATION reserves the right to offer further rebuttal of Plaintiff's expert testimony in the event such expert testimony is permitted (Defendant WORTHPOINT CORPORATION further reserves the right to seek preclusion of Plaintiff's expert testimony on several grounds). PLEASE TAKE FURTHER NOTICE, Defendant WORTHPOINT CORPORATION reserves the right to supplement and/or amend this disclosure in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

Dated: New York, New York
January 19, 2023

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

BY:

Adam R. Bialek
150 East 42nd Street
New York, New York 10017
Telephone: (212) 915-5143
Fax: (212) 490-3038
Adam.Bialek@wilsonelser.com

Jana Slavina Farmer
1133 Westchester Avenue
White Plains, New York 10604
Telephone: (914) 872-7247
Fax: (914) 323-7001
Jana.Farmer@wilsonelser.com

Attorneys for Defendant
*WorthPoint Corporation*
Our File No. 19701.00006

TO:    Anderson Josiah Duff (via email)
Hogan Duff, LLP
Attorneys for Defendants
*Norb Novocin, Marie*
*Novocin, and Estate Auctions, Inc.*
43-10 Crescent St., Ste. 1217

3

**SA2299**

Long Island City, New York 11101
Telephone: (646) 450-3607

Annamarie Trombetta (via email)
*Plaintiff Pro Se*
175 East 96th Street, Apt. 12R
New York, New York, 10128
Telephone: (212) 427-5990

4

**SA2300**

**PRIVILEGED HIGHLY CONFIDENTIAL**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

ANNAMARIE TROMBETTA

**Plaintiff,**

-against-

**Civil Case No. 18-cv-00993-RA-SLC**

NORB NOVOCIN, MARIE NOVOCIN,
ESTATE AUCTIONS, INC., AND
WORTHPOINT CORPORATION,

**Defendants.**

## EXPERT REPORT OF JESSIE STRICCHIOLA

### I.    SCOPE OF WORK

1.    My name is Jessie Stricchiola. I understand that Annamarie Trombetta ("Plaintiff") has sued Norb Novocin, Marie Novocin, Estate Actions, Inc. and WorthPoint Corporation (collectively, "Defendants") for copyright infringement, violations of the Digital Millennium Copyright Act and violation of the Visual Artists Rights Act[1]. I have been retained by Defendant WorthPoint as an expert consultant in this matter. My current company and employer, Alchemist Media, Inc., is being compensated at the rate of $725 per hour for my time. This compensation is in no way tied to the outcome of this matter or to the substance of my opinions.

---

[1] I am also aware of, and have reviewed, Plaintiff's motion to amend complaint, seeking to assert additional claims sounding in "false advertising" and "fraud, emotional distress, tort, and permanent injunctive relief". Plaintiff's proposed new claims do not change my opinions set forth in this report.

**PRIVILEGED & HIGHLY CONFIDENTIAL**

**SA2301**

Case 1:18-cv-00993-LTS-SLC    Document 480-3    Filed 05/30/23    Page 6 of 43

**PRIVILEGED HIGHLY CONFIDENTIAL**

2.    I have been asked to review Plaintiff's document production, Defendant's document production, and Plaintiff's deposition transcript to provide my professional opinions as to, within a reasonable degree of professional certainty:

a.    Whether the Defendant removed the web page containing the art listing in question, located at the URL: https://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-48924172 from its website, and at what point in time this occurred;

b.    Whether, after the removal of the web page located at the above URL from Defendant's website, the web page in question was displayed on the Defendant's website to any members of the public on or after February 4, 2016;

c.    That the subject listing contained within the web page located at the above URL was not re-published by Defendant to its website after February 4, 2016;

d.    Whether the appearance of the Defendant's URL within Google search results is a reliable indicator of that the web page in question was accessible (e.g. viewable) on the Defendant's website;

e.    Whether the date in the upper righthand corner of the web page printouts produced by the Plaintiff is a reliable indicator that the web page in question was accessible (e.g. viewable) on the Defendant's website;

f.    Whether the appearance of the subject listing's title on other web pages on Defendant's website indicated that the full listing itself was re-published on those pages;

3.    In addition to reviewing the materials described above, I interviewed Jason Packer, the outside consultant for the Defendants in the areas of data, SEO, and web analytics, on October 3, 2022. As a result of this interview and my requests for additional information therein, Mr. Packer provided a written declaration ("Packer Declaration") on which I rely in formulating various opinions.

4.    I have also been asked to review the December 25, 2022 declaration of Patrick O'Leary ("O'Leary Declaration") and opine as to whether the O'Leary Declaration changes any of the opinions I have formulated regarding the above.

**PRIVILEGED & HIGHLY CONFIDENTIAL**

**PRIVILEGED HIGHLY CONFIDENTIAL**

5.      In addition to my review of the above materials, I base my opinions on my education, knowledge, and over 24 years of experience in the fields of web analytics and website traffic analysis, digital marketing and online advertising, search engine optimization (SEO), paid search advertising, and website design and development.

## II.    BACKGROUND AND QUALIFICATIONS

6.      I began studying search engine optimization in 1997, and in 1998 I obtained my first full time employment as a search engine optimization and internet marketing consultant. Since then I have developed, implemented, and optimized internet-based digital and search marketing strategies, including implementing website analytics and performing web traffic analysis, for various types of businesses including educational, commercial, and non-profit organizations to support their online branding, sales, and lead generation efforts.

7.      In 2002 I founded and incorporated my current company and employer, Alchemist Media, Inc., a digital marketing firm that provides internet advertising and search engine marketing consulting services.

8.      I am co-author of *The Art of SEO* (O'Reilly, 1st ed. 2009, 2d ed. 2012, 3d ed. 2015, 4th ed. 2023), a reference volume on the practice of search engine optimization (SEO). *The Art of SEO* has been used as required or recommended reading in various U.S. and international universities including Georgetown University, the University of Southern California, University of California-Los Angeles, University of California-San Diego, University of California-Davis, the University of Wisconsin, Syracuse University, the University of Mumbai, the City University of Hong Kong, and others.

9.      I have been a speaker at various search engine and digital marketing industry conferences since 2002 including Ad:tech, O'Reilly's Web 2.0, Pubcon, Shop.org, O'Reilly Media's FOO Camp, Search Engine Strategies, Search Marketing Expo (SMX), and others.  My

**PRIVILEGED & HIGHLY CONFIDENTIAL**

**PRIVILEGED HIGHLY CONFIDENTIAL**

presentations and panel discussions at these events have covered topics including managing paid search advertising campaigns, website analytics and tracking, traffic analysis for click fraud and invalid traffic identification, and search engine optimization (SEO) strategy, implementation, and management.

10.    In 2003 I worked with digital marketing industry colleagues and search experts to cofound the Search Engine Marketing Professional Organization (SEMPO), now part of the Digital Analytics Association. I spent two years on the Board of Directors for SEMPO and served as Chair of the Membership Committee and am a member of the Digital Analytics Association (DAA).

11.    I have been engaged by various entities to consult on the development of their click fraud and invalid traffic detection systems.  In 2004, Urchin Web Analytics engaged my services to help them understand the techniques used in web traffic analysis to identify, isolate, and report on fraudulent and invalid click activity within PPC campaigns.  Urchin was later acquired by Google[2] and subsequently re-branded as Google Analytics.  In 2005 I was engaged as an independent consultant by Microsoft during its pre-launch development of Microsoft adCenter (later renamed Bing Ads, now called Microsoft Advertising) to advise them on how to perform ad traffic analysis for the purpose of identifying and filtering invalid click activity on their online advertising platform.  In 2006 I was engaged as an independent consultant by Fair Isaac Corporation (creators of the FICO score) to advise on traffic analysis to assist them in development of ad traffic auditing technology, and this engagement led to an industry-first click fraud reporting study between Fair Isaac and SEMPO[3] that same year.  During this same period I was hired as a

---

[2]  New York Times, *Google Acquires Urchin Software* (March 29, 2005), https://www.nytimes.com/2005/03/29/technology/google-acquires-urchin-software.html.

[3] FICO, *Search Engine Marketing Professional Organization Teams with Fair Isaac to Research Click Fraud*, https://www.fico.com/en/newsroom/search-engine-marketing-professional-organization-teams-fair-isaac-research-click-fraud.

**PRIVILEGED & HIGHLY CONFIDENTIAL**

**PRIVILEGED HIGHLY CONFIDENTIAL**

consultant and testified as an expert witness for the Plaintiffs in the first click fraud class action lawsuit brought against Google, which Google settled for $90 million in 2006.[4]

12.    In addition to providing internet and search marketing consulting, I have provided litigation support as a consultant and an expert witness on matters relating to digital marketing and online advertising, ad platforms, SEO, PPC (paid search) advertising, website development, content development, social media platforms, web analytics, and related subject areas.

13.    I have been qualified as an expert in various U.S. Federal District Courts, California Superior Courts, the Federal Court of Canada, and in American Arbitration Association proceedings.

14.    I obtained a Bachelor of Arts degree in Government from Smith College in Northampton, Massachusetts.  A copy of my *curriculum vitae* is attached hereto as **Exhibit B** to the expert disclosure.

## III.    SUMMARY OF OPINIONS

15.    Based on my analysis of the materials outlined above, I am able to state with a reasonable degree of professional certainty that:

a.    Defendant removed the URL representing the subject listing in question on February 4, 2016.

b.    As a result of the removal of the web page located at the above URL from Defendant's website, this page was not displayed on the Defendant's website to any members of the public on or after February 4, 2016.

c.    The web page located at this URL was not re-published by Defendant to its website after February 4, 2016.

d.    The appearance of the Defendant's URL within Google search results is not reliable indicator that this page was accessible (e.g. viewable) on the Defendant's website.

---

[4]    Google,    Inside    AdWords,    *Lane's    Gifts    v.    Google    settlement*, https://adwords.googleblog.com/2006/05/lanes-gifts-v-google-settlement.html.

**PRIVILEGED & HIGHLY CONFIDENTIAL**

**SA2305**

**PRIVILEGED HIGHLY CONFIDENTIAL**

e.     The date in the upper righthand corner of the Plaintiff's web page printouts is not a reliable indicator that the web page located at the URL in question was viewable at that time on Defendant's website.

f.     The appearance of only the subject listing's title on other web pages on Defendant's website does not indicate that the full listing itself was re-published on those pages.

g.     The contents of the declaration provided by Mr. O'Leary do not change any of my opinions above.

**A.     Defendant Removed the URL in question on February 4, 2016**

16.     In my October 3, 2022 interview of Mr. Packer, I asked what date the web page located at the URL: https://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-48924172 was deleted from the Defendant's website, www.worthpoint.com, and his response was that he personally deleted this web page at Defendant's request on February 4, 2016. I also asked whether Mr. Packer was able to produce deletion history documentation from any source – including from the operative CMS (content management system) responsible for managing the website's content, and/or from available server records which could show the date of file modifications (including deletions), and he stated that he could provide server files containing the record of the file deletion.

17.     On January 19, 2023 Mr. Packer produced a declaration (**Exhibit A**) in which he provided a screenshot[5] from the Defendant's data processing server which illustrates, according to Mr. Packer, "that the file containing the deletion was last modified on February 4, 2016, and that no other instances of that same URL were later reposted." Based on the text file log contents shown in this screenshot, I can state with reasonable professional certainty that the web page containing the listing in question located at the URL in question was deleted on February 4, 2016.

---

[5] Packer Declaration, Figure 1

**PRIVILEGED & HIGHLY CONFIDENTIAL**

**PRIVILEGED HIGHLY CONFIDENTIAL**

**B.**    **The web page in question was not displayed on the Defendant's website to any members of the public after its removal on February 4, 2016.**

18.    In the above interview with Mr. Packer I also asked whether, after the above deletion date, any members of the public viewed or would have been able to view the subject listing web page at the URL in question, and if not, whether he could support that with web analytics data. He responded that no members of the public viewed, or were able to view, this page after the date of its deletion, and in his declaration he supports this by providing various screenshots[6] from Defendant's Google Analytics account. I also asked Mr. Packer for direct access to Defendant's Google Analytics account to confirm this information personally, which I did prior to submission of this report.

19.    As an additional verification step to assess the reliability of the Google Analytics data, I asked Mr. Packer whether there were any known issues with Defendant's Google Analytics implementation (e.g. tagging errors, server outages, or other issues) which could have caused any significant data loss that could potentially render Defendant's Google Analytics data incomplete and/or inaccurate, and he represented to me, and also represents in his declaration[7], that there were no such known issues during the relevant time period.

**C.**    **Defendant did not re-publish the URL in question**

20.    In addition to the questions above, I asked Mr. Packer whether the web page in question at the above URL was ever re-published at this or any other URL on the www.worthpoint.com website, and he stated that it was not.

---

[6] Packer Declaration, ¶11-13
[7] Packer Declaration, paragraph 16 and 17

**PRIVILEGED & HIGHLY CONFIDENTIAL**

PRIVILEGED HIGHLY CONFIDENTIAL

**D.    The appearance of a web page's title and description in Google search results does not mean that the web page located at that URL is "live" and accessible by the general public at that point in time.**

21.    When a web page located at a given URL is deleted from a website after Google has already stored that URL in its index[8], the URL and its page title and description can (and most often do) remain in Google's index, and therefore eligible to be returned in search results, after the deletion date. The length of time the URL remains in Google's index after the page it hosts is deleted from a website is primarily dependent upon when and how frequently Google re-accesses that URL after the deletion date to determine its status (e.g. did the URL show the page, did the server return a 404 Page Not Found response, etc.). Based on my professional knowledge and experience, Google does not immediately or automatically delete a URL from its index in the event the URL it accesses returns a 404 error – as Google recognizes that sometimes web servers and content management systems can go down or experience issues, and that webmasters can make errors. If Google does not return to "check" a URL's status again for many months (which is likely if Google's crawler, Googlebot, had infrequently accessed that URL or crawled its contents prior to deletion), then the web page at that URL that has been deleted from the website will remain in Google's index and therefore continue to be eligible to be returned in Google search results.

22.    Based on my review of Mr. Packer's declaration[9] in which he states that Google infrequently accessed URL in question, there would likely be, as appears to be the case, a lengthy delay between the deletion date of the Defendant's web page and Google's removal of the web page's URL from the Google index, and therefore from its search results. This could result in the

---

[8] https://support.google.com/webmasters/answer/7645831?hl=en
[9] Packer Declaration, ¶21-24

PRIVILEGED & HIGHLY CONFIDENTIAL

**SA2308**

**PRIVILEGED HIGHLY CONFIDENTIAL**

web page's title and description, and link to its URL, appearing in Google search results after it has been deleted as is suggested by various documents in Plaintiff's production[10].

**E.    The date in the upper righthand corner of Plaintiff's web page printouts is not a reliable indicator that the web page in question was viewable on Defendant's website on that date.**

23.    The date that the browser or printer included on paper when Plaintiff printed the documents 000062 and 000069 can be incorrect and/or manipulated (for a browser, at the desktop/laptop/mobile level, and/or directly in a given printer's time settings), and without additional evidence to support the web page's actual viewable status on a website and in the presence of the contrary evidence produced by Defendant (that the web page which appears to be shown in 000069 was deleted on February 4, 2016), these printer timestamps are unreliable indicators that the webpage in question was viewable at the dates shown on the various printouts.

**F.    The appearance of the subject listing's title on other web pages on Defendant's website does not indicate that the full listing itself was re-published on those pages.**

24.    Based on Mr. Packer's representation that the subject listing was not re-published to the Defendant's website on any other page, and on my review of the document 000062 produced by Plaintiff which shows a navigational "text link" appearing to point to the deleted subject listing page, the appearance of a navigational text link with the subject listing title as clickable text does not indicate that the full listing itself was re-published on these pages.

25.    Finally, after reviewing the O'Leary Declaration, none of the contents or statements provided by Mr. O'Leary change my opinions above.

[SIGNATURE PAGE TO FOLLOW]

---

[10] Plaintiff 000063, 000065, 000066, 000068

**PRIVILEGED & HIGHLY CONFIDENTIAL**

**PRIVILEGED HIGHLY CONFIDENTIAL**

I declare under the penalty of perjury that that foregoing is true and correct. Executed on January19, 2023.

Jessie Stricchiola

# EXHIBIT "B"

**SA2311**

# JESSIE STRICCHIOLA

100 Pine Street, Suite 1250
San Francisco, CA 94111

---

## PROFESSIONAL EXPERIENCE

---

First-generation search engine marketing professional, published author, and lecturer on internet search technology-related issues. Co-author of *The Art of SEO* (O'Reilly 2009, 2012, 2015, 2022), a comprehensive reference manual on the digital marketing practice of search engine optimization. Qualified expert witness on SEO, PPC, and digital discoverability for contract, patent, trademark, and class action litigation matters. Founder of San Francisco based digital marketing consultancy Alchemist Media, Inc.

Extensive experience in:

- Search engine optimization and paid search marketing
- Digital information discoverability
- Website and mobile app analytics
- Website development and auditing for search engine optimization
- Website and mobile app traffic and performance analysis
- Click validity measurement and analysis
- Litigation consulting and testimony

---

## PROFESSIONAL ENGAGEMENTS

**FOUNDER & CEO**                                                          2002 - Present
Alchemist Media, Inc.                                                   San Francisco, CA

- Client portfolio has included Microsoft, Uber, Marchex, Search Engine Land, Fair Isaac Corporation, Dyson, Coca Cola, Rent.com, LookSmart.
- Listed as one of the Top 20 Search Agencies in BtoB Magazine's Interactive Marketing Guide each year from 2003-2012.

**LITIGATION CONSULTANT**                                              2004 – Present
Case list provided upon request.                                              Various

**INVESTIGATION CONSULTANT**                                             2016 – 2017
U.S. Government                                                          San Francisco, CA

**JESSIE STRICCHIOLA**
**- Page 2 of 5 -**

## PROFESSIONAL ENGAGEMENTS *(continued)*

**SEARCH PLATFORM CLICK VALIDITY CONSULTANT (PPC)**                    2005-2006
Microsoft Corporation                                                  Redmond, WA

- Trained Microsoft adCenter developers on sources, characteristics, and liabilities of invalid click activity and click fraud within paid search ad platforms, influencing development of invalid click identification and click quality reporting mechanisms in the adCenter product back-end.

**CLICK VALIDITY CONSULTANT**                                          2006
Fair Isaac Corporation                                                 San Diego, CA

- Assisted Fair Isaac, creators of the FICO score, in leveraging their financial transaction auditing technology (Falcon) to analyze and report on click validity within search engine advertising.
- Educated the FIC Global Fraud Solutions team about the click fraud issue, structured methods of analysis, and devised potential solutions.
- Initiated the "Fair Isaac & SEMPO Search Advertising Click Fraud Study," the search industry's first preliminary investigation into the scope of the click fraud problem by leveraging the Fair Isaac technology platform to partner with SEMPO's membership base of search advertisers.

**CLICK MEASUREMENT CONSULTANT**                                       2004
Urchin Software (Acquired by Google, re-named Google Analytics)        San Diego, CA

- Educated web analytics development team on identification, scoring, and reporting of invalid click activity and click fraud; Urchin was acquired by Google in April 2005 and renamed Google Analytics.

**CO-FOUNDER**                                                         2003-2005
SEMPO (The Search Engine Marketing Professional Organization)          Los Angeles, CA

- Member, Board of Directors
- Chair, Membership Committee

**DIRECTOR OF ONLINE MARKETING**                                       2001-2002
Chase Law Group, P.C.                                                  Sherman Oaks, CA

- Reporting to president, led all online marketing efforts.
- In nine months, generated $4 million in new revenue from retainers garnered via paid (PPC) and organic (SEO) search engine marketing efforts – an increase of 400% over previous year.
- Identified the first known case of click fraud and negotiated refunds from multiple PPC vendors.

**SA2313**

**JESSIE STRICCHIOLA**
**- Page 3 of 5 -**

---

## PROFESSIONAL ENGAGEMENTS *(continued)*

**ONLINE MARKETING MANAGER**                                    2000-2001
LowerMyBills.com                                            Santa Monica, CA

- Reporting to VP of Marketing, successfully managed efforts of designers, programmers, and sales to implement paid (PPC) and organic (SEO) search campaigns
- Increased Internet sales across all verticals by over 200% and reduced cost per acquisition by 30%

**SEO DIRECTOR**                                               1999-2000
The Active Network (Active.com)                               La Jolla, CA

- Developed and implemented SEO strategies resulting in an increase in monthly search engine traffic by 700%
- Increased total market share of online participatory sports registration traffic to nearly 80%, helping to competitively position the company to secure funding from Ticketmaster/CitySearch

---

## LECTURE & PRESENTATION ENGAGEMENTS

SMITH COLLEGE WOMEN'S LEADERSHIP CONFERENCE                         2016
*- Redefining Success Workshop Leader*                        Northampton, MA

SEARCH MARKETING EXPO 2016                                          2016
*- Essential Steps for Performing an SEO Audit*                   San Jose, CA

SEARCH MARKETING EXPO 2015                                          2015
*- Essential Steps for Performing an SEO Audit*                  New York, NY

WEB 2.0 SUMMIT (O'Reilly)                                    2007, 2008, 2010
*- Web 2.0 & SEO: Drinking from the Search Fire Hose*         San Francisco, CA
*- SEO: From Soup to Nuts*

ad:tech                                                     2006, 2007, 2010
*- PPC Click Fraud Analysis & Debate*                        San Francisco, CA
*- Organic Search Engine Optimization*
*- Marketing Masters: Search in a Real Time World*

SEARCH ENGINE STRATEGIES CONFERENCES WORLDWIDE                    2002-2009
*- Various Industry Topics  (Paid Search, SEO, Analytics)*       Multiple Cities

3

**SA2314**

**JESSIE STRICCHIOLA**
**- Page 4 of 5 -**

---

### LECTURE & PRESENTATION ENGAGEMENTS *(continued)*

| | |
|---|---|
| WEBMASTERWORLD SEARCH CONFERENCES  WORLDWIDE | 2004-2009, 2016 |
| *- Various Industry Topics   (Paid Search, SEO, Analytics)* | Multiple Cities |

FEDERAL EXPERT WITNESS ASSOCIATION (FEWA)    2006-2008
*- Using SEO and Paid Search to Promote Your Expertise*    Pasadena & San Francisco, CA

MARKETLIVE E-COMMERCE SUMMMIT
2008 - *Search Visibility for E-Commerce Properties: Strategy & Tactics*    Half Moon
Bay, CA

STANFORD PUBLISHING ON THE WEB WORKSHOP    2007
*- Maximizing Search Exposure for Large Content Publishers*    Monterey, CA

SEARCH ENGINE STRATEGIES LATINO CONFERENCE    2006-2007
*- Search & Latin America: Trends & Forecasts*    Miami, FL
*- SEO for Multi-Language, & Multi-Dialect Audiences*
*- Establishing a Global Search Presence: Targeting by Language & Region*

SILICON VALLEY WEB GUILD    2006
*- Advanced Search Marketing*    Mountain View, CA

---

### MEDIA INTERVIEWS & COVERAGE

**TheStreet.com,** *"#DigitalSkeptic: Malware and Bots are Murdering Web Advertising"* by Jonathan Blum (October 17, 2013)

**NPR's Day to Day,** *"Web Ad Buyers Fight Back Against Click Fraud"*
Interviewed by Xeni Jardin (March 27, 2006)

**The Washington Post**, *"In Game of Click and Mouse, Advertisers Come Up Empty"* by Leslie Walker (March 16, 2006)

**BusinessWeek Magazine,** *"Gauging Google's Gaffes"* by Burt Helm (March 10, 2006)

**The Google Story, 1st Ed.**
by David A. Vise (Random House 2005)

**Inc. Magazine,** *"So Many Clicks, So Few Sales"*
by Adam L. Penenburg (August 2005)

4

**JESSIE STRICCHIOLA**
**- Page 5 of 5 –**

---

### MEDIA INTERVIEWS & COVERAGE *(continued)*

**CNN Money,** *"Google: Biting the Hand that Feeds it?"* by
Krysten Crawford (May 4, 2005)

**InformationWeek,** *"Click Fraud Threatens Rising Online Ad Revenue"* by
Thomas Claburn (May 2, 2005)

**Wired Magazine,** "*Click Fraud:  Problem and Paranoia"* by
Adam L. Penenburg (March 10, 2005)

**The New York Times,** *"Web Marketers Fearful of Fraud in Pay-Per-Click"* by
Nat Ives (March 3, 2005)

**The Associated Press,** *"Click Fraud Threatens Search Engine Ad Growth"* by
Michael Liedtke (February 12, 2005)

---

### PUBLICATIONS

**The Art of SEO:**
**Mastering Search Engine Optimization**
(O'Reilly Media)

1st Ed.:  October 2009
2nd Ed.:  March 2012
3rd Ed.:  September 2015
4th Ed.:  TBD 2022

---

### EDUCATION

**Smith College**
Northampton, MA

Bachelor of Arts, Government

---

**SA2316**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

ANNAMARIE TROMBETTA

        Plaintiff,

     -against-

NORB NOVOCIN, MARIE NOVOCIN,
ESTATE AUCTIONS, INC., AND
WORTHPOINT CORPORATION,

        Defendants.

---

**DECLARATION**

Civil Case No. 18-cv-00993-RA-SLC

 

**JASON PACKER** hereby declares:

1.     I am the lead technical architect for WorthPoint Corporation in the areas of data, SEO (search engine optimization), and analytics. I have been serving in this role since 2008, first as the Director of Architecture and then as an outside consultant since 2012. I have served as the lead on Google Analytics at all times relevant hereto.

2.     I have expertise in Google Analytics based on extensive professional use of the product and its predecessor Urchin since 2000. I'm a known expert on Google Analytics within the web analytics community. My work has been cited by research done at academic institutions including: Vanderbilt, Imperial College London, Polytechnic University of Turin, and LMU Munich. I have published a book on web analytics, *Google Analytics Alternatives* (Quantable LLC, 2022). I received a B.S. degree in Mathematics with a Specialization in Computer Science from the University of Chicago in 1997 and have worked in as an IT professional since that time. I'm a

1

257342712v.2

**SA2317**

co-organizer of Columbus Web Analytics Wednesday, and a speaker at that and other events such as MeasureCamp and WordCamp.

3. I submit this declaration in order to dispel plaintiff's claim that the listing for the sale of the 1972 oil painting "Man with Red Umbrella" existed after February 2016. As set forth below, plaintiff's claim that the listing was still posted on WorthPoint's website in May of 2017 is not accurate.

4. On or about February 4, 2016, I was tasked with permanently removing from WorthPoint's data processing server and website the information about the listing for the 1972 oil painting "Man with the Red Umbrella, " which was originally posted with the URL "https://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-48924172" (the "URL"). This is the listing that has been identified by plaintiff in this case. I permanently deleted this URL on February 4, 2016. Since February 4, 2016, the URL has never been reposted, and it does not currently exist on WorthPoint's site.

5. Annexed hereto as **Exhibit 1** and **Figure 1** is the true and correct screenshot from the WorthPoint data processing server showing the deletion history of this URL. This screenshot shows that the file containing the deletion was last modified on February 4, 2016 and that no other instances of that same URL were later reposted and deleted a second time.

**Figure 1:**



2

257342712v.2

6.      This data is consistent with the information from WorthPoint's Google Analytics account. Annexed hereto as Exhibit 2 are Google Analytics reports from WorthPoint Universal Google Analytics property UA-2113658-1 ("Google Analytics").  Figure 2 below (also included with Exhibit 2) is a screenshot from the Google Analytics report that shows the amount of traffic www.worthpoint.com received on the URL up to and including the month the deletion request was received. It shows 0 traffic through August 2015 and 128 unique pageviews (unique pageviews from different sessions, not indicative of individual people) until Feb 28, 2016.

**Figure 2:**



7.    This means that no person accessed the URL before August 2015. This is consistent with the claim that the URL was first noticed by Plaintiff (or Plaintiff's friend) in August 2015.  It further indicates that no one viewed the page prior to August 2015.   The 128 pageview sessions, that would likely include traffic from the plaintiff, the plaintiff's friends, and some internal

3

257342712v.2

WorthPoint traffic. Drilling down into that traffic leads me to believe it is in fact a very small number of distinct users.

8.      Specifically, the screenshot in Figure 3 (also included with Exhibit 2) shows that all of the traffic to the URL in August 2015 (when the URL first received any traffic) came from Verizon as an internet service provider (ISP) with 2 different browsers from 2 different cities in New York State.

**Figure 3:**

Redacted - Proprietary Information

It should be noted that plaintiff was located in New York at the time and, upon information and belief, plaintiff's friends, the Ploskis, had resided in Nyack.

9.      Figure 4 (also included within Exhibit 2) shows the number of pageviews to the URL in February 2016, the month when the deletion request was received.

**Figure 4:**

4

**SA2320**



10.    Figure 5 (also included within Exhibit 2) shows traffic to the URL on February 3, 2016, one day before the deletion of the URL was executed. This screenshot illustrates that a valid page title was displayed to the viewer, which means that on this day the visitor to the URL was able to access the URL and see its content.

**Figure 5:**



5

257342712v.2

**SA2321**

11.     Figure 6 (also included within Exhibit 2) shows traffic to the URL on February 4, 2016. On this day, one pageview displayed the valid page view title to the viewer and two other pageviews displayed a "404 Page not found" error message. This demonstrates that at some point on February 4, 2016, the content on the page at the URL was removed.

**Figure 6:**



12.     Figure 7 (also included within Exhibit 2) shows traffic to the URL on February 20, 2016. It shows a single pageview and that the viewer received only the "404 Page not found" message. This means the visitor was not able to see any content beyond the error message at this URL on February 20, 2016.

**Figure 7:**

6

257342712v.2



13.    The above indicates with a reasonable degree of professional certainly that the URL was permanently deleted on February 4, 2016, which matches the output of the text file log Redacted - Proprietary Information discussed above.

14.    After February 20, 2016, there was only one additional pageview attempt to the URL during the reporting time frame. This was on May 8, 2017 as shown in Figures 8 and 9:

**Figure 8:**

7

257342712v.2



**Figure 9:**



257342712v.2

15.     Figure 9 shows, once again, that the visitor on May 8, 2017 also encountered the "404 Page not found" error, which demonstrates with a reasonable degree of professional certainty that the URL had not returned any content and had not been reloaded.

16.     I further declare that there have not been any tagging errors or outages that would have caused significant data loss to WorthPoint's data processing server or Google Analytics account during the relevant time periods from 2012 to present.

17.     WorthPoint monitors their Google Analytics account closely and logs issues in Google Analytics as annotations. There are no relevant annotations in Google analytics indicating any tagging errors or outages during the relevant time period.

18.     WorthPoint does not sell any artworks or collectables. Rather, visitors and subscribers to WorthPoint's website are given an opportunity to view available information on sales of artwork. Further, only paid subscribers can view the price for which listed artworks or collectibles previously sold. WorthPoint was not involved in the sale of the 1972 Man with Red Umbrella painting, did not create the content in the listing, did not participate in identifying the artist of the painting, and was not party to the inclusion of plaintiff's biography in the original listing.

19.     According to WorthPoint's log of price lookups (a true and correct screenshot of which is annexed hereto as Exhibit 3 and Figure 10 below) made from the price guide detail page, only two users made those requests for the artwork described in the subject URL. Upon information and belief, annamarie@trombettaart.com is plaintiff's email address, meaning that one of the two users looking up the price for the subject painting was plaintiff herself. Upon information and belief, the other visitor, with an address of Simianarts@cs.com appears to have been plaintiff's friend.

9

257342712v.2

**Figure 10:**

Redacted - Proprietary Information

20.     I have searched WothPoint's records and confirmed that neither user referenced in Figure 10 was an active subscriber to WorthPoint's services after February 3, 2016. Once they were inactive, they would not have been able to see the price that the painting previously sold at.

21.     WorthPoint's website currently receives approximately Redacted - Proprietary Googlebot spidering data refresh requests per day to price guide detail pages, which Google does in order to capture the content of those pages for their search engine, as well as cache versions of pages.

Redacted - Proprietary InformationRedacted - Proprietary Information

Redacted - Proprietary InformationRedacted - Proprietary Information

The frequency at which Googlebot returns to an individual URL may vary greatly, but on average individual price guide detail pages such as the URL in question are requested very infrequently if at all.

22.     In my personal experience serving as the SEO lead for WorthPoint since 2008, the overall volume of price guide detail pages and spidering rates were different in 2015-2017 vs currently, but the ratios of how often each page may be crawled and refreshed has remained quite consistent. Annexed hereto as Exhibit 4 and Figure 11 is a true and correct screenshot of WorthPoint's crawl request data:

**Figure 11:**

10

257342712v.2

**SA2326**



23.     This means that a cached version of the page may have remained on Google's servers for months or years after it was deleted by WorthPoint, as Google would not refresh their cache until the page is spidered by Googlebot again.

11

257342712v.2

**SA2327**

24.     Thus, to the extent plaintiff was able to find references to the URL by making various very specific searches on Google, this would have had to have been due to Google cache displaying a reference to the page that Google previously spidered. If plaintiff, or anyone else, were to have clicked on the link in the Google search results to the URL in question after February 4, 2016, that person would have received a "404 Page not found" error.

25.     In sum, on February 4, 2016, I personally deleted the URL plaintiff identified and confirmed that it was never re-posted by WorthPoint. Had plaintiff attempted to access the page at the URL, she would have received a "404 Page not found" error, and the listing about the sale of the 1972 oil painting would not have appeared.

Pursuant to 28 U.S. Code § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:        January 19, 2023

By:  _____
     Jason Packer

12

257342712v.2

# EXHIBIT 1

257342712v.2

**SA2329**



Redacted - Proprietary Information

CONFIDENTIAL                                                   WP000132

14

257342712v.2

# EXHIBIT 2

257342712v.2

Redacted - Proprietary Information



CONFIDENTIAL                          WP000042

16

257342712v.2



CONFIDENTIAL                    WP000043

17

257342712v.2



CONFIDENTIAL                    WP000044

18

257342712v.2

<span style="color:red">Redacted - Proprietary Information</span>



CONFIDENTIAL                    WP000045

257342712v.2

**SA2335**

# Redacted - Proprietary Information



CONFIDENTIAL                              WP000046

257342712v.2

**SA2336**

<span style="color:red">Redacted - Proprietary Information</span>

CONFIDENTIAL                    WP000047

21

257342712v.2

Redacted - Proprietary Information



CONFIDENTIAL                    WP000048

22

Redacted - Proprietary Information



CONFIDENTIAL                    WP 000049

23

257342712v.2

## Cahill, John

| | |
|---|---|
| **From:** | Farmer, Jana S. |
| **Sent:** | Tuesday, October 11, 2022 7:20 PM |
| **To:** | Annamarie Trombetta; ajd@hoganduff.com |
| **Cc:** | Bialek, Adam; Farmer, Jana S.; Haimson, Nicole; Bialek, Taylor |
| **Subject:** | Trombetta v. Novocin - WorthPoint's responses to Plaintiff's 4th Set of Discovery Demands and Rule 37 letter dated 9/9/22 |
| **Attachments:** | Response to plaintiff's fourth Rule 37 letter 10.11.22 (final)(276335849.2).pdf; WP000132.pdf; WP's Responses and Objections to Plf's 4th RFP - final(276390234.1).pdf; WP's Responses to Plf's Fourth RFIs (final)(276390081.1).pdf |

Ms. Trombetta and Mr. Duff:

Please refer to the attached WorthPoint's responses to Plaintiff's 4th Set of Discovery Demands and Rule 37 letter dated 9/9/22. **Please note that the Rule 37 letter response is marked CONFIDENTIAL. The contents may not be shared with third parties, including on the public docket before seeking the court's permission to seal the filing, as per the Court's protective order in this matter. WorthPoint reserves all rights and remedies in the event any party violates the Court's protective order and publicly shares any of WorthPoint's proprietary information, including via a public filing on the court's docket.**

Jana S. Farmer
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, NY 10604
914.872.7247 (Direct)
914.552.9644 (Cell)
914.323.7000 (Main)
914.323.7001 (Fax)
jana.farmer@wilsonelser.com

**In The United States District Court For Southern District of New York**
_____

Annamarie Trombetta,

    Plaintiff,

      vs.

Norb Novocin, Marie Novocin,
  Estate Auctions Inc.
     and

WorthPoint Corporation

    Defendants

Civil Action No. 18-cv-0993-RA-HBP

**PLAINTIFF'S RESPONSE TO**

**DEFENDANTS ESTATE AUCTIONS INC.**

**AND NORB AND MARIE NOVOCIN**

**AND WORTHPOINT CORPORATION**

**MOTION FOR SUMMARY JUDGEMENT**

_____

**PLAINTIFF'S RESPONSE TO DEFENDANTS ESTATE AUCTIONS INC.**

**MOTION FOR SUMMARY JUDGEMENT**

**SA2341**

2

TABLE OF CONTENTS

I.   INTRODUCTION AND  PLAINTIFF 'S SUMMARY RESPONSE…………………….4,5, 6

II.   SUMMARY JUDGEMENT STANDARD  …………………………………………..6

    UNDISPUTED    FACTS

III,  UNDISPUTED FACT  PLAINTIFF IS NOT THE ARTIST  PROVEN AND EVIDENCED
      BY PLAINTIFF'S  ORIGINAL  CHILDHOOD  1972  SIGNATURE………………..…7

IV.  UNDISPUTED  COUNTERFEIT  SIGNATURE  "A. TROMBETTA" ON 1972 OIL…..7.8

V.  UNDISPUTED MISSPELLED  RED PENCIL  SIGNATURE  ON  BACK  OF 1972 OIL……8,9

VI.  UNDISPUTED FACT ARTIST  UNKNOWN   FOR 1972 OIL MAN W/ RED UMBRELLA
      …………………………………………………………………………….…. 9, 10, 11

VII.  UNDISPUTED  FACT  ESTATE AUCTIONS INC. PRODUCED  FOUR  DIFFERENT
       EBAY 2012  SALES RECEIPTS  ON FOUR DATES  FOR  ONE EBAY SALE…..…11,12

VIII.  UNDISPUTED   FACTS         ESTATE   AUCTION  INC    ADMISSIONS    ,
       ……………………………………………………………..……12,13,14,15,16,17,18,19,20

IX. CONTRADICTORY FACTS………………………………………………………20,21

X.  DEFENDANTS   DECLARATIONS……………………………………………………21

XI. ARGUMENT …………………………………………………………………………22

      PLAINTIFF'S RESPONSE TO ATTORNEY  ANDERSON  DUFF ..………21.22,23,24,25
A.  and B To withdraw 18 U.S.C. § 1028 to Fed.R.Civ.P.Fraud § 9(b) ……………………22,23
C.  Plaintiff's Claim for Intentional Infliction of Emotional Distress Matter of Law……23,24,25
D.  Copyright Management Information in Violation of 17 U.S.C. § 1202(b)……………..25,26
E.. Defendants CMI in Violation of 17   U.S.C. § 1202(a)…………………………………..26
F.   Plaintiff's Copyright Infringement Claim Matter of Law…………………………………..26
G. Plaintiff's Misattribution Claim Under VARA Should be Dismissed………………………..27
 1. Defendants Argue Plaintiff's  Right of Attribution Claim is Moot…………………….…27
 2. Defendants Argue Plaintiff is Not Entitled to Attorneys' Fees Under VARA …………..27.28

XII. PERMANENT INJUNCTIVE  RELIEF …………………………………………………..28

XIII. CONCLUSION…………………………………………………………………………29

## CASES

"Morris v. N.Y.C. Emps. Ret. Sys., 129 F. Supp. 2d 599, 605 (S.D.N.Y. 2001)

(citing Barhold v. Rodriguez, 863 F.2d 233, 236 (2d Cir. 1988) …………………………………….6

(quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir.1986), cert. denied, 480 U.S. 932 (1987)…..6

HC2, Inc. v. Delaney, 510 F.Supp.3d 86, 104 (S.D.N.Y. 2020)

(quoting Stuto v. Feishman, 164 F.3d 820, 827 (2d Cir. 1999)…………………………………………23

Broadcast Music, Inc. v. Wexford INR LLC, 12-CV-1253, 2014 WL 4626454, at

*9 (N.D.N.Y. Sept. 15, 2014) (Suddaby, J.)………………………………………………………25

Civ. 00089 SDNY McGlynn vs. TowerInvestors, Com Inc…………………………………………26

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S.Ct. 1282(1991……………………………..26

Mass. Museum of Contemporary Art Found., Inc., 593 F.3d…………………………………………..…27

Civ. 00089 SDNY McGlynn vs. TowerInvestors, Com Inc…………………………………….…..29

Barcroft Media, Ltd. v. Coed Media Group, LLC, 297 F. Supp. 3d 339, 355-56 (S.D.N.Y. 2017);

Beastie Boys v. Monster Energy Co., 87 F. Supp. 3d 672, 679 (S.D.N.Y. Feb. 20, 2015). ………………29

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S.Ct. 1282(1991). …………………..29

STATUTES

17 U.S.C. § 401 § 401(c)……………………………………………………….….. 26
17 U.S.C. § 501………………………………………………………………………4,27
17 U.S.C. § 504………………………………………………………………….…….4
17 U.S.C. § 106…………………………………………………………………..4,27
17 U.S.C. § 106A…………………………………………………………………4,27
17 U.S.C. § 106(2)………………………………………………………………27
17 U.S.C. § 1202……………………………………………………………4,22,26,27
17 U.S.C. § Section 1202(a) ………………………………………….. ……4.22,26,27
17 U.S.C. § Section 1202(b)……………………………………………………4,22,26,27
17 U.S.C. § 1202(c) ……………………………………………………………4,22

RULES

Fed. R. Civ. P. 56(a)………………………………………………….….4
Fed.R.Civ.P. § 56(c)…………………………………………………..…..4
Fed.R.Civ.P. § 9(b)………………………………………………… ..4,22,23
CPLR 213(2)…………………………………………………………..….4

## I.    INTRODUCTION AND  SUMMARY OF PLAINTIFF'S  RESPONSE  TO  DEFENDANTS (THE  NOVOCINS)  MOTION FOR  SUMMARY JUDGEMENT

The crux of Plaintiff's response  motion to  Defendants,  Estate  Auctions Inc., Marie and Norb Novocin ( also WorthPoint Corporation)  motion  for summary  judgment  pursuant  to Rule 56 of the Federal  Rules of Civil Procedure, is to set forth  conclusive proof  of  Defendants' liability for violations of Copyright infringement (Copyright law protects original works of authorship including literary) Code § 501§ 504§106,Visual Artists Rights Act "VARA"17 U.S.C. § 106A) for violation of the DMCA 17 U.S.C. §1202(a) removing or altering copyright management  information under 17 U.S.C. § 1202(b)  falsifying copyright management information, Fraud (Rule 9), Intentional Infliction of  Emotional Distress, Tort, CPLR 213(2) and the  request  for Declaratory and  Permanent Injunctive Relief,  as well   finding that Defendants' conduct was willful.   Plaintiff's Response, with exhibits will  allow the Court to conclude the intent of Estate Auctions Inc., the Novocins  and WorthPoint Corporation  is willful.

Plaintiff  begins by noting  to the Court the importance of the word " Original" written in Estate Auctions Inc ebay listing titled as  " *1972  Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta* " .Estate Auctions Inc, and the Novocins'  inclusion  of this word "Original" means the painting  is a one of a kind work of art.  The word 'Original " is  defined as "*created  directly  and  personally  by   a  particular artist;  not a copy or imitation*. " The distinct use  and  inclusion of the word  "Original" in  EAI's  description  "1972 **Original**  Oil Painting  Man With Red  Umbrella signed Annamarie Trombetta" in EAI's eBay ad  purported a false fact and therefore not an undisputed fact. EAI 's allegedly  sold painting was  NOT  an "Original"  oil painting by New York listed artist Annamarie  Trombetta as it was written. This fraudulent oil  painting  cannot be undisputed.  The  second false  undisputed public claim made by Defendants was  that the 1972 oil painting  was " SIGNED BY"  New York listed artist Annamarie  Trombetta.  The falsity of  Defendants  assertions  is evident in Plaintiff's production

of my original 1972 childhood signature. The content of the text on WorthPoint's webpage for the EAI ebay ad is in **EX #1 1972 WorthPoint webpage.** Except for one misspelling of my last name misspelled as Trombett**E** ending in an E not the letter A, my first name, spelled all one word ends in the letter E, was correctly written seven times in Defendants eBay auction ad. EAI. Defendants' delayed production of the red pencil signature which misspells Plaintiff first name for a significant period of time. WorthPoint's website refused to remove the false posting and willfully misdirected the Plaintiff to contact eBay whom WorthPoint claimed had the false 1972 oil painting post on eBay 's website. The caption from the 1972 ad targets the Plaintiff as the artist since I am the only New York artist named Annamarie Trombetta on the internet. CAPTION " 1972 **Original** Oil Painting Man With Red Umbrella Signed Annamarie Trombetta"

>>>>> UP IN THIS AUCTION <<<<< 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta New York Listed Artist - Shabby Chic Condition

This caption and description from the EAI ad incorrectly tethers Plaintiff and implied to the public, I created a"Shabby Chic-"**original** "oil painting in 1972, which is a false undisputed fact. I informed both Defendants prior to litigation that the 1972 painting is not an "Original" oil painting by Annamarie Trombetta and all claims in the EAI ad were fraudulent. The willful withholding of the red pencil signature requested by Plaintiff, on April 24, 2019 and filed with the Court in ECF 22, conjoined with EAI 's 2020 Motion to Post a Bond against Plaintiff and the recent, firm rejection to settle this lawsuit in November 2022 and the May 2023 absence by Defendants of any settlement counteroffers, are examples of Defendants willful intent to delay the conclusion of this case. All of the false assertions, admissions and undisputed statements of facts by Defendants in Plaintiff's Response substantiates Plaintiff's request of the Court to deny Defendants' Motion for Summary Judgement. **EX. 2 Letter by Alex Raspa misspellings /fraud SEE Page 83-86   Norb Novocin Dep New York Listed Artist -Shabby Chic**

Plaintiff notes to the Court, Mr. Duff has included a claim under New York's Artists' Authorship Rights Act ("NYAARA"), N.Y. Arts & Cult. Aff. Law § 14.03. (SAC, ECF No. 348-1 at 18.). On March 7, 2023. Magistrate Judge Cave, in her Opinion & Order in **ECF 384** on page three wrote *"Ms. Trombetta re-asserted the NYAARA Claim despite Judge Abrams' dismissal of that claim in.Trombetta I. 414 F. Supp. 3d at 634."* Plaintiff was made aware of my oversight. Pro Se litigant listed the NYAARA claim as I was compromised with ill health, while writing my Second Amend Complaint noted by Judge Cave in **ECF 332** filed on 12/12/2022 and thereby withdraws claims for NYAARA as per Judge Abrams's noted decision.

## II. SUMMARY JUDGEMENT STANDARD

"Summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Each movant must present sufficient evidence to satisfy its burden of proof on all material facts." "<u>Morris v. N.Y.C. Emps. Ret. Sys., 129 F. Supp. 2d 599, 605 (S.D.N.Y. 2001) (citing Barhold v. Rodriguez, 863 F.2d 233, 236 (2d Cir. 1988)</u> " [T]he mere existence of some alleged factual dispute between the parties will **not** defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.". "All ambiguities must be resolved in favor of the "non-moving party" and all permissible inferences from the factual record must be drawn in that party's favor." A party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" Id. <u>(quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir.1986), cert. denied, 480 U.S. 932 (1987)</u> . Estate Auctions Inc and the Novocins' as evidenced in their admissions, contradictory depositions statements, declarations, conjoined with their deficient discovery responses fails to meet the standard. Defendants Motion for Summary Judgement and non conclusive evidence and speculative responses, therefore should be denied.

UNDISPUTED   FACTS

### III.    UNDISPUTED  FACT PLAINTIFF'S CHILDHOOD 1972  SIGNATURE

Plaintiff begins by exposing  to the Court  a willful pattern  by Defendants to take advantage and exploit the fact that Plaintiff is Pro Se.  The first example harkens back  to  Feb. 1, 2022, during a conference call with Judge Cave. WorthPoints' attorneys requested I write  a settlement letter. I agreed to write a letter before discovery because Mr. Duff stated his clients filed for bankruptcy and needed to end  this lawsuit for the bankruptcy's completion.  During the call Plaintiff  informed all  parties, I found my 1972 original signature proving  I am not the artist  EAI's  listed in their 1972 oil painting ad.  My childhood  signature,  juxtaposed to the " A. Trombetta  signature " on the 1972  painting establishes my signature, as an undisputed fact. In February 2022, I  produced a long  monetary settlement letter.  Defendants falsely wrote to Judge Cave claiming I did  not include a monetary amount in my first  2022  letter which was not  true. Judge Cave ordered me to write another letter.  On April 26, 2023, I  filed  both of my   letter in **ECF 456,** since Judge Cave ordered me to produce yet another settlement amount to Defendants. On May 23, 2023  neither  Defendants  made any counteroffer to Plaintiff letter.  EAI's attorney requested Plaintiff  to pay  a lump sum  to EAI  Defendants,  to offset future attorney fees  they will imposing on me after trial.  In the guise of negotiating, Defendants attorney  is  once again demonstrating  gamesmanship,  intentionally creating  stress and are trying exploit  Plaintiff  who produced my undisputed signature on  April 8, 2022 **EX.#3 Plaintiff's original 1972 signatures.**

### VI.   UNDISPUTED  FACT - FALSE  FRONTAL  SIGNATURE  "A. TROMBETTA" ON 1972 OIL

Plaintiff's  original 1972 signature  production  proves the "A. Trombetta"  signature in black oil paint, photo featured in EAI 1972  painting ad is clearly not by Plaintiff's hand.  The "A.Trombetta "signature is an undisputed fact. The photo of  the "A. Trombetta" signature featured in  the ad for the  "1972 oil painting " Man With Red Umbrella"   is a fraudulent

signature which was publicly distributed while it was on the internet on WorthPoint's website. This was the only photo in the eBay ad and oddly there were no photos of the 1972 oil painting. When I saw the hyperlink to enlarge the photo of the " A. Trombetta signature" being circulated on the internet, that was not mine, I was prompted to put a "Credit Freeze" on all my cards.

**EX#4 Pl'sEvid .000163 1972 "A.Trombetta"sig. 000690 TransUnion and 000694 Experian.**

V.  **UNDISPUTED FACT - MISSPELLED RED PENCIL SIGNATURE ON BACK OF 1972 OIL**

Annexed are photos of Defendant noted **red pencil signatures** written on the back of the stretcher bar of the 1972 oil painting in **EX. #5.** Three years ago, on April 24, 2019, Plaintiff requested the production of this red signature from EAI Defendants. On April 12, 2022 production of red signature revealed it was in pencil and did NOT have the same spelling as Plaintiff's name. This three year delay is a severe loss of Plaintiff's time. The red pencil signature, is in caps and separates the name Anna from Maria. Plaintiff spells my name all one word ending in the letter "E". *The fact that my name was misspelled in red pencil signature is an undisputed fact*. Plaintiff notes and has annexed testimony by Norb Novocin from his deposition. On **Page 53** lines 18 to 25 in **EX. #6** he states *" Once I saw the name on the back, I went to askArt. I put in the name Trombetta and Annamarie came up. It's an unusual name. I have never come across it before. I did not -- I do not remember ever seeing " Annamaria " on the back of the painting, so I just assumed it was the same person. Pulled up that person on askART."* The painting with the misspelled signature in red pencil was not photo featured in the EAI ad. The fact that the painting and the red signature is now known to be a fraud, was attempted to be cured by the proper spelling of Plaintiff's name in the written text that described the painting. This photo omission by the Defendants who misattributed my self authored copyright biography, appeared publicly on WorthPoint webpage. The time I lost due to Defendants obvious concealment of the misspelled red pencil signature satisfies the legal standard for willful concealment to prove Plaintiff's claim for fraud. The red signature was

not produced until April 12, 2022. This lawsuit began in 2018. Plaintiff request the Court to acknowledge Defendants have willfully delayed the production of the red signature for over of three years. The photo of the red pencil signature, clearly documents ANNA (space) MARIA ending in the letter A and not E, TROMBETTA 1972, and "GIFTED 1977".

Despite this documented discovery produced by Defendants, on April 17, 2023, Mr. Duff's filed the EAI Rule 56.1 Statement of Facts which has a significant alteration. In **ECF 421**, Mr Duff wrote as **SMF No 11.** *"The wooden frame appearing on the back of thePainting featured the statement "Annamarie Trombetta, painted 1972." (Duff Decl. ¶ 3, Ex. A at 35:16-24, Ex. 2.)* **SEE EX. #7.** I note to the Court Mr. Duff 's statement of fact, No 11, has omitted the space between Anna and Maria and changed ANNA MARIA to a spelling with all one word, Annmarie, ending in the letter "E". Another notable alteration by Mr. Duff is the omission "GIFTED 1977". Mr. Duff has willfully changed his statement of material facts SMF(No. 11) from what appears in the photo on the wooden stretcher bar . Mr. Duff submitted to the Court on April 17, 2023 in **ECF 421**, a significant changed document of a fact which exemplifies another manipulation and attempts to alter evidence, which he uninhibitedly filed in Federal Court.

## VI. <u>UNDISPUTED FACT - ARTIST UNKNOWN FOR 1972 OIL MAN W/ RED UMBRELLA</u>

Plaintiff brings to the Court's attention Defendants have not identified the artist who painted the oil painting titled by Norb Novocin, Man With Red Umbrella allegedly dated 1972. Since Jan. 10, 2017, Plaintiff informed both of Estate Auctions Inc. owners, Marie and Norb Novocin, I was not the artist. Documented in the audio and phone transcript is Plaintiff voice, informing Norb Novocin that he took my biography from my website which Mr. Novocin never denied. Annexed is the Transcript of Norb Novocin phone call.**EX.#8.** Upon the conversation with Mr. Novocin, Plaintiff hired attorney Megan Noh. The three page dated letter on August 28, 2017, was sent by certified mail and emailed to the Novocins. In addition, Ms. Noh phoned

**SA2349**

10

and spoke with Marie Novocin to confirm  receipt of the letter and to negotiate a settlement  for the infringements against the Plaintiff. This settlement letter was bate stamped by EA I's attorney Anderson Duff as EAI00001, EAI00002, EAI00003 entered in discovery in April 2022  In 2017, after no efforts were made to resolve this issue, on Feb. 5, 2018,  Plaintiff filed a lawsuit  against Estate Auctions Inc and   Norb and Marie Novocin. Again, on  April 24, 2019,  Plaintiff filed  in **ECF 22** on  pages 10 and 11  settlement  requests to Defendants  and to  the Court  before the April 25, 2019 settlement conference with  Judge Ronnie Abrams. The fact that  both Defendants have not identified  or know who painted the alleged 1972 oil painting that Norb Novocin titled Man With Red Umbrella is an undisputed fact**. EX.9 Court File Settlement Requests -ECF 22**

Plaintiff brings to the Courts attention the number of years from 2017 to 2022  EAI had to produce one photo of the 1972 oil painting Man With Red Umbrella. EAI  failed to produce any of the 12 original  images,  any 2012 , computer or meta  data of the 2012 auction ad or the sale or any photos of the back of the painting. On Feb.1, 2022 Mr. Duff mentioned the need to end this case due to their pending  bankruptcy, yet EAI has withheld key evidence, delayed discovery, and not offered settlements more than a few hundred dollars. In reviewing the deposition of Norb Novocin, Plaintiff brings to the Court's attention in  his Sept. 21,2022 deposition which states  *page 9 " My mother was a professional artist, all the way through my life.  I was  trained on everything from macrame to Chinese ink block to water colors to  oils…I was  not the artist that she was."*  Plaintiff adds **Page 139**, Mr. Novocin's other reference to his mother  line 5 *"her name at least seven different ways."* "line 7- " *She signs  her  name   different ways.*  **EX.10  Norb Novocin Dep. Page 9 and 139  Norb paints in oil— many  signatures**

The only way to prove the date of the painting is to send a paint sample to a lab  to reveal the age the paint.   Since Plaintiff has proven I am not the artist, Defendants should be obligated or ordered to produce a paint specimen to an art conservator for analysis, if this case

should go to trial, if Defendant' chose to litigate.   Plaintiff  has proven I am not the artist.

Lastly, on  May 16, 2023, Plaintiff was ordered by Judge Cave to  give my fourth settlement demand to Defendants  Plaintiff wrote a detailed letter and noted my 2017 settlement amount in my  May 16, 2023 letter.  On May 17, 2023,  Mr. Duff emailed  me requesting I produce proof of my  2017settlement amount. Plaintiff notes, Mr. Duff  had this information with the amount. He bate stamped my August 28, 2017  settlement letter,  numbered as EAI00001 EAI00002 and EAI00003.  Mr. Duff  May 2023 request to produce proof  of my 2017  amount I wrote in my May 2023  fourth settlement, is either Mr. Duff exerting mental gamesmanship, willfully exhibited throughout discovery, or  his request was another example of his  reckless disregard for his case.  Defendants attorneys did not make a counteroffer as Plaintiff's requested.

**EX.#11 August 28, 2017 settlement letter  EX. #12 Mr.Duff email request amount 5/17/23.**

Plaintiff also notes to the  Court all the attorneys were aware of  Plaintiff  2017 attorney, Megan Noh and the settlement letter. It was  documented  at the Sept. 21, 2022 depositions. On **Page 63 Ex. #13**  Plaintiff asked Marie Novocin  if she received a settlement  letter from Megan Noh and Mrs Novocin confirmed receipt of a demand letter. The settlement amount was documented  in **Page 97 EX. #14** in Norb Novocin deposition yet Mr. Duff requested proof.

## VII.  UNDISPUTED FACT  ESTATE AUCTIONS INC. PRODUCED  FOUR  EBAY 2012 SALES RECEIPTS  ON  FOUR DIFFERENT DATES  FOR  ONE EBAY SALE

On April 27, 2022, EAI produced  the FIRST  alleged eBay sales receipt for the 2012 EAI sale of the1972 oil  Man With Red Umbrella.  The right side  was cut off  and  incomplete. Plaintiff set forth consistent discovery requests to EAI filed on August 8, 2022 in **ECF 257**, **in ECF 266** on August 22, 2022  and in **ECF 276** on Sept. 16, 2022 . I  requested the Court to order Mr. Duff to produce discovery. Even after Judge Cave ordered responses to interrogatories and prod of docs, Mr. Duff in Sept.  2022,  still  failed to produce the complete version of the

2012 eBay sales receipt.  I note to the Court on  Oct 31, 2022 in **ECF 307** Plaintiff letter to the Court  has a quote by Anderson Duff  for   the1972 Oil Painting Man With Red Umbrella. Mr. Duff wrote  *"I will pass along a new copy of the single email referenced in your email below as soon  as I receive it  from my clients."*    On Nov. 16, 2022 Plaintiff  sent Mr. Duff another reminder for  2012 eBay receipt he needed to be produced.  Plaintiff in ECF 315  noted receipt of a  SECOND  alleged eBay sales receipt for the 2012 EAI  1972 oil was produce yet was missing the bold  Yellow eBay bar and had different text than the first one. On Nov. 17, 2022, I was sent an email with an eml from attorney Adam Bialek  with an excuse that this eml was produce on Sept. 21, 2022,  Mr. Duff did not mention this from Sept to  Nov. Defendants consistently tried to  falsity evidence  and created excuses for their failed or deficient production of missing evidence. The three different eBay sales receipts produced at different times  prompted Plaintiff requested on Nov23,  2022 to request the one and only  meta data digital electronic email for the  EAI 2012 eBay receipt. Defendants emailed  ambiguous code to me on Nov. 23, 2022  and failed to comply with my request Judge Cave granted. Defendants code  needed to be deciphered by my internet expert and resulted in Mr. O'Leary's  Affidavit on Dec. 5, 2022.  Due to this  problem Plaintiff asked for extensions for my expert witness reports **EX. #15 O'Leary Affidavit Dec. 5, 2022.**

VIII.   <u>ADMISSIONS</u> **BY ESTATE AUCTION INC.    UNDISPUTED FACT**

Plaintiff 's lists  ten  admissions from  Estate Auction Inc's, Motion for Summary Judgement  filed  in **ECF 422** filed on April 17, 2023. in  Case 1:18-cv-00993.  All  of Estate Auctions Inc's and  Norb  Novocin statements admit  he  " willfully and intentionally "  copied and published Plaintiff's self  authored biography without Plaintiff's knowledge or consent.

**1- On Page 11 into Page 12 of  ECF 422 Estate Auctions Inc. Defendants  admitted :**
*<u>Because  the signature on the  front of the painting was difficult to read, Norb relied upon writing</u>*
*<u>on the back of the Painting that read "Annamaria   Trombetta, painted 1972" to identify the artist</u>*

*who created the Painting. (SMF ¶¶ 11, 12).*     Plaintiff's responds by informing the Court on P**age 38** of Mr. Novocin's deposition, he admitted  the "A. Trombetta signature he had photographed by Mike Miller was   *"garbled" and kind of hard to read,"*   **EX.16  Page 38-39** * Mr. Novocin admission  he  used  the red signature to discern who painted the 1972 oil who produced is an undisputed fact.* The red signature is a counterfeit signature which  misspells Plaintiff's name and  is  an undisputed fact.  **\*** Norb Novocin admits  the signature on the  front of the painting (A. Trombetta) was difficult to read and therefore is an undisputed fact.*

**2- On Page 12 of  ECF 422   Estate Auctions Inc. Defendants   admitted  :**

*Norb spent a half an hour or less creating EAI's eBay listing for the Painting and did not read the  biography he found for Plaintiff on askart.com. (SMF ¶ 21.)*     Plaintiff's  responds by informing the Court, EAI  Norb Novocin  admits he did not read Plaintiff's biography. If Norb Novocin "found" my biography on askART  it was in the year 2015 NOT  in  2012  which Mr. Novocin's  asserts in his 2012 sale.  In June of 2020,  Plaintiff  emailed  askART  because Defendants  Norb and Marie Novocin filed a Motion to  Post a Bond for $20,000 against the Plaintiff and their declarations claim my askArt bio was copied  in 2012. On June  30, 2020 askART  confirmed" *Your recognition on askART  was most  likely the result of your being included  in a publication some  years ago"*   which is in **Pl's Evid askART 000585 in EX.#17** Plaintiff  produced  emails  with the author who listed my biography with askART in **EX. #18 Pl's Evid. 000150 and  000151.** I also have  proof  from a  third party,  Wayback Internet Archive dating my bio Sept.22 ,2015 **EX.18 Pl's Evid 000149**  Plaintiff adds Pate from Norb Novocin deposition 17  page 18 line 4 *"I have always been good at researching*   and line 22-24   " *I  did own a company at one time called RE Search Incorporated that did research for people".*   * Mr. Novocin's admission   he did not read my biography is an undisputed fact*. **EX. #19 Norb  Novocin Deposition Page  17-18  Proficient researcher**

14

**3- On Page 12 of  ECF 422  Estate Auctions Inc. Defendants   admitted :**

*"Norb included Plaintiff's biography in EAI's eBay listing for the Painting because Plaintiff's name was written on the back of the Painting and Norb felt it was important to include as much information in EAI's eBay listing as possible. (SMF ¶ 20.)*    Plaintiff's responds by informing the Court both signatures, front and back, on the 1972 oil painting "Man With Red Umbrella" are not by Plaintiff's hand communicated  to the Novocins since   2017 to the present time.

* Mr. Novocin's admission  that he included Plaintiff's biography in EAI's eBay listing for

   the Painting  due to was written on the back of the Painting is an undisputed fact.*

**4— On Page 11 of  ECF 422   Estate Auctions Inc.  Defendants    admitted  :**

*Norb carelessly but accidentally and in good faith listed Plaintiff as the artist who created a painting  she did not paint in an eBay listing that EAI published for ten days.*

Plaintiff's responds by reminding the Court in 2015 Plaintiff  biography was not listed on askART.  Plaintiff  lost  years,  because of EAI's false ad and Norb Novocin's   false, ridiculous claim  that a nine year old painted a four foot oil in 1972. I was forced to contact WorthPoint and eBay to remove this absurd internet post. In addition  and in " good faith" in 2017, Plaintiff had a colleague named Teri Meissner  phone EAI in response to the 2017 second posting of the false 1972 listing on the internet. Teri Meissner was advised by Marie Novocin  to send EAI an email which is dated  Jan. 6, 2017  and noted her Jan. 5, 2017 call to Marie Novocin in the email.

**EX.#20  EAI00004**   When Marie Novocin failed to  respond to Ms Meissner's e

mail, Plaintiff  " in good faith"phoned Marie Novocin to  inquire  why the false 1972   post was presently  on  the internet.  Mrs. Novocin stated she did not know.  I  than informed Marie Novocin Plaintiff  was not the artist etc. Shortly after, Plaintiff received a phone call Norb Novocin who never denied that he took my biography from my website.  Mr. Novocin suggested Plaintiff   acquire an attorney.(EX.#7 Phone page 5)  Months later upon following Mr. Novocin

suggestion, the Novocins ignored any attempts to resolve their infringements   From 2017 to 2022 no photos of the oil painting or red pencil signature were produce until April 2022 in discovery.  EAI wasted four years, avoided production of any evidence.  Mr. Novocin's actions cannot be deemed " *accidental or in "good faith"* with the word" carelessly"in his admission.

**\*** Mr. Novocin's admission  he carelessly  listed Plaintiff as the artist is an undisputed fact.\*

**\*** EAI's admission Plaintiff did not paint the painting in an eBay listing is an undisputed fact.\*

**5- On Page 11 of  ECF 422   Estate Auctions Inc.  Defendants   admitted  :**

*As  a paid subscriber to askart.com, Norb believed that he was free to include the contents of artists' biographies provided by askart.com in EAI's eBay listings and always tried to attribute such biographies to their sources. (SMF ¶¶ 6,7.)*       Plaintiff's responds by informing the Court Mr. Novocin has been a paid member to askArt since 2001 and is still a member of askART.   Plaintiff has annexed   records from  **askART in  EX.A 21 in Pl's Evid. 000586  to 000592**.    In Mr Duff  affirms  in  *(Duff Decl. ¶ 3, Ex. A at  20:2-22, 129:2-5.)*

*5."Norb has been a paid  subscriber to askART, which allowed Defendants  to access a database  containing photos of various artists that have sold, biographies  of artists, previous sale prices for artworks, and other related information for twenty-one years.*   Plaintiff also informs the Court  I have no photos, images, signatures or documented sales records on askArt. **EX. 21B Pages 53-54.** Plaintiff  notes to the Court , after being a member   to askART for 21 years, in of his deposition   Mr. Novocin  testified he did not review the Terms on  askART. which prohibit any third party transfer or copy and pasting. **EX.21C askART Terms p.22 to 24** Below is an excerpt from askART 's terms  of use.  EAI  Defendants did not produce  at any time, written proof  from askART  regarding consent or permission of use of  Plaintiff's  bio.

*"You may not modify, create derivative works from, participate in the transfer or sale of, post on the Word Wide Web or in any of  way exploit  the Site or any portion thereof for any public or commercial use without the express written permission of askART.  You are responsible for complying with all*

**SA2355**

16

*applicable laws, rules and regulations regarding your use on any such downloaded Content. In the event of any permitted copying, redistribution or publication of material from the Site, no  changes in or  deletion of author  attribution,  trademark, legend or copyright  notice shall be made."   ~ askART~*

**6- On Page 11 of  ECF 422   Estate Auctions Inc.  Defendants    admitted  :**

*"Norb  wrote the description of the Painting for Defendants' 2012  eBay  listing  and   Marie*

*was not involved with sourcing or selling the Painting. (SMF ¶¶ 9, 10.) "*     Plaintiff's responds

by informing the Court, in reviewing the Sept.  21,2022  deposition of Marie  Novocin  Plaintiff

submits the following : **Page 9 EX #22** —  On Page 9, Marie  Novocin stated what her role  was

at EAI. Ms. Novocin state "*I have  been a picture taker, an inventory person,  shipper etc"*

 It is also  documented on **Page 41-43 EX.22**  Marie Novocin claims she did at  some point,

viewed the red signature photos.   Plaintiff  asked if her if she remember Plaintiff's  name on the

painting either it her response  was "Annemaria" or " Annamaria " (close enough)  noted on

**Page 42 (EX. 222).**  Also on **Page 42 (EX.#22)**  Marie Novocin claims *"I did not see*

*the painting when it was in our  possession.*   As the deposition continued on **Page  43  EX#.22 ,**

Marie Novocin  noted  there was another party that allegedly photographed the 1972 oil painting,

In  line 11  of  **Page  43** she said  *"He is somebody that somebody else that we had  working with*

*us."*  In line  23  Marie Novocin stated the name "Mike Miller"  was employed  and when  asked

how long he was employed her response was" *Just a few months. I don't remember exactly when*

*he came in, but* I  know that I took him to the airport late winter, early spring 2013."     In  Marie

Novocin's  deposition Jana Farmer on **Page 13 (EX.#23)**   confirms  with  Marie Novocin that

she had nothing  to do with this  painting. Ms. Farmer asked  Marie  Novocin  *" Is it also  fair to*

*say that because you didn't know about this painting until you got the  phone call, that you hadn't*

*discussed this painting (1972)  with your husband prior to the  sale?*   Marie Novocin replied

*"That's correct."*   Later  on, Plaintiff  asked Marie Novocin, noted on **Page 64 (60-64 EX.#24)**

*" Were there photos of the painting in  the Estate Auctions Inc's ad in 2012?*   Marie  Novocin

replied  *"Yes"*  Plaintiff asked *"Was  that documented in the ad in and of itself"*  Marie  Novocin

replied "Yes" Plaintiff notes on Sept. 21,2022, Mari Novocin gave two contradictory responses.

**7- On Page 12 of ECF 422  Estate Auctions Inc. Defendants  admitted :**

*The eBay listing Norb created for the Painting was published on EAI's eBay page for ten days*

*and the Painting sold for $181.50. (SMF ¶¶ 22-23.)* Plaintiff's responds by informing the Court

of related testimony on page **66- 68 (EX. #25 )** EAI has FAILED to produce any evidence

to prove the eBay webpage ever existed for any amount of time nor did they set forth

an example of their eBay webpage. Plaintiff's informs the Court from Feb.2022 to Sept. 2022

Plaintiff submitted to EAI, three sets of of requests for interrogatories, production of

documents and admissions. On April 27, 2022, EAI produced the alleged eBay sales receipt

for the 1972 oil painting which was cut off on the right side. Plaintiff sent Mr. Duff a second

and third sets of interrogators and prod. of doc, requesting a complete copy of the 1972 sales

receipt. As aforementioned the Courts ordered Mr. Duff to produce EAI evidence. I noted in

**ECF 257** filed on August 8, 2022 in **ECF 266** on August 22, 2022 and in **ECF 276** on Sept.

16, 2022. In mid Sept. 2022, EAI still failed to produce a complete version of the

alleged 2012 eBay sales receipt for the 1972 painting. Plaintiff in reviewing the Sept. 21, 2022

deposition of Marie and Norb Novocin, both parties testified the buyer of the 1972 oil

painting Man With Red Umbrella has gifted the oil painting meaning, the location and the

current owner of the 1972 oil is not known. On **Page 66  EX. 25** of Marie Novocin's

deposition, in line 12 to 18 states " *From our discussions with her (Nina* Correia *our*

*discussion that Norm had with her, she does not have the painting in her possession any* longer. "

Marie Novocin was asked *"Do you know who currently has the possession of the painting* and

responded *"No"* **See full page 66 in Exhibit #25.**of Norb Novocin's deposition, in lines 7 to

10 on **Page 31 in Ex. 26** Mr. Novocin claims " *The person that we sold the painting to had*

**SA2357**

18

_since disbursed the painting, whether she sold it or gifted  it to someone else_." On the following page  **in EX.#26 Page 32**  Mr.  Novocin is questioned if he  sees any "Tear" in  the painting written in the WorthPoint webpage  which  said "_It is quite large being approx. 48 1/2" tall and 17  1/2" wide. We are calling it  shabby chic condition as it has a tear in the canvas, about 5/8" longjust to the left of the man's knees,_"    Mr Novocin  viewed a photo of  the oil painting  and when  questioned  "_Mr. Novocin,  can you see the tear in this image?_ Mr. Novocin replies "_ No"_  WorthPoint attorney asked Mr Novocin   "_ To your knowledge, was this painting ever restored?_ " Mr. Novocin replied  "_ No, it was not._" on **EX. 26 p 31-32.**    On Oct. 22, 2022  Plaintiff subpoenaed  Nina Correia  by email. Nina Correia  has NO written receipt for the oil painting  **EX. 27 Nina Correia no_ receipt_**  EBay  Receipts by Norb Novocin are on  P.135-136  **EX. #28**

**8- On Page 12 of  ECF 422   Estate Auctions Inc. Defendants   admitted :**

 _Norb included Plaintiff's biography in EAI's eBay listing for the Painting because Plaintiff's name was written on the back of the Painting and Norb felt it was important to include as much information in EAI's eBay listing as possible. (SMF ¶ 20.)_    Plaintiff's responds by informing the Court  in Norb Novocin's Sept. 21, 2022 deposition, he admits on **Page 52 in EX.29**  when asked by WorthPoint's attorneys "_ When you looked at the  back of the stretcher and you saw the words Annamarie Trombetta that we discussed earlier, did  it help you interpret what the  signatures may have read?_ Norb Novocin's stated   "_ It certainly interpreted the last name. I  couldn't do anything for that first initial._"   On **Page 54  EX.#29**  Norb  Novocin stated   "_Once  I saw the name on the back, I went to askArt. I put in the  name  Trombetta and  Annamarie  came up.  It's an unusual name.  I have  never  come across it  before. I  did not -- I do not  remember  ever seeing  " Annamaria  " on the back  of the painting,  so  I just assumed it was the same person. Pulled up that person on askART_ .  Plaintiff brings to the Court's attention  three more additional pages from Norb Novocin's deposition. **On Page 47 EX.30**  WorthPoint's  attorneys asked Mr.

Novocin *"Sir, how do you know  that?"*  he replied  *"Because if there's  anything we have seen over and over is this signature. It  came off of  Worthpoint. It's the only  signature or only picture that survived on Worthpoint.  Why,  I  don't   know. That's how we know.  It just was there."*  When Plaintiff  asked the Novocins "HOW" all  their eBay sales are transfer  to another site,  neither one could offer  any information. The  ambiguous  responses from both  Norb and Marie  Novocin  are consistent from 2017 till the present  .**(EX24  Marie Novocin pages 60 to 64).**

**9- On Page 12 of  ECF 422   Estate Auctions Inc. Defendants   admitted :**

*Norb intended only to provide potential buyers with as much information as possible to increase EAI's chances of selling the Painting.*      Plaintiff 's Response to Defendant Norb Novocin intent is  on  **EX.#29 Page 54** Norb Novocin  stated  *"I saw it had a biography, but no record of any paintings ever been sold ,…There's no records of any painting been sold  on  secondary   market.   I grabbed the biography and used that in the listing. Because there was no records of any painting to be sold,  I  wanted people to be able to associate somebody of value to the painting and so I went out and found another artist on askART that had painted before with umbrellas. (ARTIST ANDRE KROHN ) I said it's much in the style of and I mentioned  that other person. So that way people can look it up and say, oh, it's like that person. They paint with umbrellas also. That way, people do some research on it. They see something of value and I'm willing to spend more money.*   Plaintiff notes to the Court  on pages 54 to page 55  Norb Novocin confirms *"They (askART) had no listings and to this day, have no listings of any paintings have ever been sold on secondary market for Annamarie Trombetta"*        **SEE EX.29  Page 54 & 55.**

**10- On Page 12 of  ECF 422  attorney Anderson Duff  wrote :**

*Assuming arguendo that Norb intentionally attributed the Painting to Plaintiff knowing that she did not paint it, such conduct still falls far short of being extreme and outrageous. Plaintiff's claim for intentional infliction of emotional distress must be dismissed with prejudice as a matter of law.*   Plaintiff responds by affirming  my name,  status and bio  were publicly depreciated and

**SA2359**

20

embarrassed by the ridiculous claims by Defendant that a nine year old child painted a four foot oil painting. My name was incorrectly associated with a counterfeit signature, publicly circulated on the internet. EAI's ad created an ad which led to the false CMI and copyright and licensing claim by WorthPoint, adding yet another false association and claims. My integrity and my character are still unjustly being harmed and well known collectors and gallery owners enthused to represent my work, lost interest caused by this false ad and now this lawsuit.

I add in the Novocin's deposition on **Page 15, EX# 30** Norb Novocin admits *"We Buy Junk"*. On **Page 43** of Norb Novocin's deposition he described 1972 Man With Red Umbrella as *"It was run of the mill. These things we sold from out of that auction*. **EX.#31 P. 42 -46** On Page 46 he confirmed *"The way we sell oEbay, we start everything at 99 cents and let it go. We don't set a price on it."* The 99 cents slogan in the 1972 ad with my bio, let to my lost sale.

## CONTRADICTORY FACTS

**1- On Page 12 of Defendant's ECF 422 attorney Anderson Duff wrote :**

*The undisputed facts recited above show, at worst, an honest mistake made by a hard working person.* Plaintiff notes prior to litigation EAI 's facebook page had a comment from a "Wendy Martinez" that EAI was selling counterfeit goods. EAI was passing on China as French porcelain, a pattern by EAI used to increase the prices of items by falsifying and misattribute items to fetch a higher fee. It is not an honest mistake, it is an honest pattern by EAI. **EX.31 Facebook EAI page comment in Pl. Evid. 000345**

**2-On Page 12 of ECF 422 attorney Anderson Duff wrote under "Fair Use" The Effect on the Potential Market**

*"Plaintiff asserts that the biography Norb copied from askart.com appears on the website covered by the copyright registration. Plaintiff asserts in this action. Assuming that Plaintiff is*

*correct, the biographical information used by Defendants is one small element of the collective work that is Plaintiff's website. Defendants' use of one element that is one ninth of Plaintiff's total work or less to educate consumers during the ten-day window when Defendants' eBay listing for the Painting was published had no effect on the potential market for or value of Plaintiff's copyrighted website. This factor weighs in favor of fair use.*    Plaintiff notes EAI failed to produce evidence of the alleged ten day window or any eBay evidence to support the false claim in EAI's ad. Mr. Duff's "Fair Use" argument fails to take into account Plaintiff's biography is from my 2003 catalog which is referenced in my biography and included in EAI's false 1972 ebay ad. This catolog in 2003 was for sale and was purchased. EAI and Mr. Duff fail to acknowledge, my bio is an original,self authored literary work. In addition my biography was used to attribute my identity to a painting I did not create. Plaintiff asserts and affirms my self authored biography is my property as soon as it comes into a tangible medium. Additionally Wayback Machine Internet Archive, a third party, dates Sept. 22, 2015 for my askART bio. WorthPoint's claims there were no views of the 1972 post before 2015. Norb Novocin asserts that he phoned "Kris" at askART" Plaintiff contacted Kris as askART in Jan. 2018 before I filed the lawsuit and I contact Art Appraiser Gayle Skluzacek **EX32** who assessed my art career and issued a report in 2009. She confirmed there was no askART biography of mine in her files. **EX. 33 Pl. Jan 2018 Evid. 000321 322-Kris -June 2020 000585**

**DEFENDANTS   DECLARATIONS  TO POST A BOND FOR $20,000  JUNE 26, 2020**

Defendants issued false statements in their June 26, 2020 Declaratiosn. Marie Novocin wrote *1.Together with my husband and co- defendant in this case, Norb Novocin, I owned and operated Estate Auctions, Inc. from April 23, 2012 until 2019.* Norb Novocin in No. 3 *" I owned and operated Estate Auctions, Inc. from April 23, 2012 until 2019"* In Mr. Novoin's deposition, EAI had three separate names from 2012 to 2019, evidenced on **Page 199 EX.34**

**SA2361**

22

Norb Novocin testified  in lines 6 to 9  " *S -- so Estate Auctions was only in existence for one year before we started a different company and started operating with that company name*"

 Both Defendants wrote  incorrect years on their declaration  Marie wrote  in  *3. In 2012, Estate Auctions listed a painting on its eBay storefront  that  my husband Norb  personally inspected. The painting was signed on the front by "A. Trombetta"  and featured an  inscription reading "Annamarie Trombetta `**Gifted' 1997,** `Painted' 1972" in red  along its back stretcher (the "Painting"). I also note  unlike the red pencil signature  my name is spelled correctly.* In both of their  declarations there are  clerical errors-**1997** and not 1977  with  a misspelling of **Trobmetta —**it is  Trombetta  In No 13. *After roughly  **the third  phone call**  we received from the  person  identifying themselves as  "Meissner," my husband Norb  saw that the caller ID identified  Annamarie **Trobmetta**  and not  Teri Meissner.* "**EX. 35   EAI00004** Plaintiff note the reference to Teri Meissner who called sent an  email once is irrelevant to the facts in this case. Defendants are falsely asserting that Plaintiff   was mis-identifying myself , when my voice and the text of the call are documented  in the Jan. 10, 2017 phone transcript.  Still Norb Novocin testified on Page  **96-97 EX.34 ,** falsely stating he thought he was speaking to Teri Meissner and that I threatened to sue him.  The root cause of my lawsuit is to get  Permanent Injunctive Relief.

**EXHIBIT #36 Declarations of Norb 000 and Marie Novocin 000332-337**

### ARGUMENT

On Page 26 of ECF 187 filed on Dec. 21, 2021, Judge Abrams named three surviving claims  for  direct copyright infringement, DMCA §1202 and  VARA §106A.  Magistrate Judge Cave granted on Feb 2,2023 my  new claims for IIED, Tort, Fraud Fed.R.Civ.P. § 9 (b) and Declaratory and  Permanent  Injunction Relief.

 PLAINTIFF' S RESPONSE TO ATTORNEY ANDERSON  DUFF'S MOTION

**A. Plaintiff's NYAARA Claim —Dismissed by Judge Abrams**

**B. Fraud  Fed.R. Civ.P. § 9 an not  Identity Theft 18 U.S.C. § 1028**   Plaintiff  notes, the

**SA2362**

23

§ 1028 rule related to identity theft,  consistent with the counterfeit "A. Trombetta"
photo signature. Plaintiff notes I can now, with the production of Defendants  EAI's red
misspelled signature against  Plaintiff's 1972signature a claim for Fraud Fed.R. Civ.P. § 9
(b) can be asserted and Plaintiff  withdraws  the Identity Theft 18 U.S.C §1028 as moot.
EAI attorney did not address my Fraud  claims when the fraudulent signatures
intentionally photographed and then were  publicly uploaded and  circulated by EAI is a
deliberate effort to  withhold the red signature,  constituting a willful intent to  conceal
fraud.  EAI Defendant did not care if the Plaintiff was the artist evident in their
admissions and deposition  or if the name was spelled correctly which is the basis of my
new claim . I request the Court to rule in favor of my claim of Fraud for two reasons.
Ever since I saw the internet ad I made efforts to contact both Defendants. I was reliant
upon Defendants for information and to produce what was in the ad, however  they did
not set forth information without hesitation and this is  an  element to conceal or to
commit fraud. The lack of effort to rectify this fraud and the intent to conceal evidence
satisfies the legal standard. The four eBay receipts do not substantiate proof of any sale.
I add as evidence in EXHIBIT #40 the eBay phone call  I recorded and produced to
Defendants on April 11, 2022, Annexed as **EXHIBIT #41** is the eBay transcript.

**C. Plaintiff's Claim for Intentional Infliction of Emotional Distress**

As a matter of law IIED in New York, intentional infliction of emotional distress requires:
"(1) extreme and outrageous conduct;(2) intent to cause, or reckless disregard of a substantial
probability of causing, severe emotional distress; (3) a causal connection between the conduct
and the injury; and (4) severe emotional distress." HC2, Inc. v. Delaney, 510 F.Supp.3d 86, 104
(S.D.N.Y. 2020) (quoting Stuto v. Feishman, 164 F.3d 820, 827 (2d Cir. 1999).
Cases that have sustained claims for intentional infliction of emotional distress involve "some

**SA2363**

24

combination of  **public humiliation**,  **false accusations** or criminal or **heinous** conduct, verbal

abuse or harassment,    permanent **loss of employment**,   conduct contrary to public policy.

**1-Extreme and outrageous conduct :public humiliation,**

Plaintiff  has been  suffering from many of the described  IIED claims  since 2015. Due to

EAI  ad which created a false, public, ridiculous  claim with Defendants slogan *"all sales start at*

*99 cents."* this false  association to   such claims was harmful since  the actual text from my

website was used. I lost  sales, several  career opportunities,  noted in my pleadings. The

false and damaging impression led colleagues to  contact me and get the WorthPoint link off the

internet. **EX. #2**. It  has taken eight   years, from 2015 to 2023,  for Plaintiff   to prevent, by

law, both  Defendants from  ever using  my name again.  This long,  public legal battle  has

injured me in every possible way, due to the  extent of time.   I am  jeopardizing my health,

finances and career. Plaintiff  reasonably requested, for one simple eBay sales  receipt of a 1972

painting,  led to four receipts  and  a bill from my internet expert witness for  thousands of

dollar, to  decipher coding. **EX# 37Affidavit** Defendants  never produced my request for the

2012 ebay electronic email. Defendants  stunt cost  time  money, sleepless night and  ill health as

noted in **ECF 332**. I  had to request an extension for my SAC.  I was  unable to produce my

expert witness report on time, reports,  which  cost thousands of dollars to produce. From Dec.

2022  into Jan. 2023 I was suffering from extreme fatigue. The initial  trauma of being sabotaged

professionally and financially  and  a steady loss of  career  opportunities led to this lawsuit.

Plaintiff has annexed separately in **EXHBIT #41**  pages from the November 23, 2022 transcript

which details Plaintiff's request for the electronic email of the alleged 2012 eBay receipt from

EAI. I have also include the subsequent  threats from all attorneys for attorneys fees.

**2- Intent to cause, or reckless disregard of a substantial probability of causing, severe**
   **emotional distress;**

Despite  my production of  over 1000 pages of evidence, Defendants  are willfully denying  liability, settlement offers, and have either  withheld, failed or  produced  deficient evidence. Defendants  attempted to "falsify" evidence by emailing Plaintiff unknown code, while on the phone with a Federal Judge.  The  four  eBay  2012 sale  receipt  reveals that given another opportunity, Defendants attempted to commit fraud  against Plaintiff.  Mr. Duff rejected settlement and then  emailed  with the subject   "Increased Attorneys Fee"  for his call  time on Nov, 23, 2022 .   In his  May 23, 2023,  letter Mr. Duff's response to  settlement amount was to requesting Plaintiff pay him a lump sum to offset his fees after trial. The infliction of  threats to my finances when I am unable to work  due to this lawsuit is cruel. Defendants dragged me into chaos fights and the need to defend my honor, offsetting  legal challenges and a $20,000 Bond.

**3-A causal connection between the conduct and the injury; and**

I am not the "cause" of my claims rather Defendants' conduct prior to litigation caused Plaintiff to require physical therapy.  In Feb. 2022  due to the false claims Defendants against Plaintiff alleging I did not state a monetary  amount in my settlement letter, caused Plaintiff to have vertigo for the first time in my life due to the stress. This stress caused a sty in my eye.  In Nov, 23, 2022, due to the willful manipulation of Defendants, Plaintiff had the flu and extreme fatigue into late Jan. 2023.  My ill health conjoined with the demands of this  lawsuit made it impossible to earn a living and or to be the artist I trained and worked to be  my  whole life. Due to this case, my personal life  life revolves around writing and filing legal  documents. My friends and family are concerned for my well being with all this stress. Since Defendants Bond  Motion for $20,000 in ECF 56  my work involved in refuting this unjust  Motion in lieu of Mr. Duff's who  blocked his  email and phone  in regard to his Rule 68 offer **EX#38**, reveals a pattern of unethical conduct to manipulate, make  false assertions and exploit. **EX.38in Pl. Ev. 000266-267 &-000 262-263**

 **(4) Severe emotional distress.**   Plaintiff is suffering from all signs of emotional distress *t*o include a) Heaviness in my chest, increased heart rate or chest pain.- b)Shoulder, neck  or

back pain; general body aches and pains.c)  Sudden Headaches. d) Dizziness. e)Feeling

overwhelmed f)Feeling tired, anxious, confused. Most notable by friends and family  is

repetitions statements about the case which has entrapped me in time  in this legal battle. I been

unable to live my life, painting and creating works of art. For eight years,  Plaintiff  has been

subjected  to Defendant intentional relentless  false assertions and their legal demands.

**D. Remove or Alter Copyright  Management Information in Violation of 17 U.S.C. §1202(b)**

The Second Circuit, courts identify the elements of proof for a § 1202(b) removal/alteration

claim as requiring:(1)the existence of CMI on the [infringed work];(2) removal and/or alteration

of that information; and(3)that the removal and/or alteration was done intentionally." *Mango v.*

*Buzzfeed, Inc.,*  Plaintiff bio always had a copyright statement *"All work on this site are*

*©Annamarie  Trombetta. All rights reserved"*  I have a **"DM©A** " badge on of my webpages.

The WorthPoint's webpage for the 1972 oil painting had a partial  listing of Plaintiff's self

authored biography  which is documented in the ad  and as seen below in the mid sentence

truncation and the appearance of three dots. EAI Defendant offer no evidencefor the cut off

sentence. Some person at some point added three dots mid sentence in the EAI/WorthPoint ad.

Plaintiff submits  evidence that my website was created in 2003. I annex exhibits with Plaintiff's

CMI not in the EAI ad on WorthPoint's website. **EX.#39  Pl. Evid. 000250  000294-296-342**

Plaintiff due to limited space references  my ECF 432  Pages 24 to 29 -CMI. All  Plaintiff

webpages were registered with the copyright.gov  **EX #40 Website created 2003  Evid. 000250**

> Eighties I traveled on a summer tour to Europe. The tour comprised of six countries; Germany, Austria,
> France, Italy, Switzerland and England. Viewing so many different cities and cultures in a concentrated
> period of time...

**E. Defendants CMI in Violation of 17   U.S.C. § 1202(a)**

Defendants' claim by (SMF ¶ 19.) Rather than act with the intent to induce, enable,

facilitate, or conceal infringement, Norb clearly indicated that askart.com attributed the

biography it offered for Plaintiff to Plaintiff's website. Once again , WorthPoint's website documents my bio was diminished and truncated.  If the alleged sale was in 2012 and my bio on askART has been proven by three forms of evidence that it was add in the year 2015.  If the alleged sale took place in  2012, one can deduce Novocin took my bio from Plaintiff's website. In May or June of 2015 my biography appeared on askART. In June and July  2015,I signed onto eBay for the first time and put two bids on items. In  August 2015 Plaintiff found the false EAI internet post. According to the Declaration of WorthPoint's internet tech, Jason Packer, no views of the 1972 webpage occurred before August 2015.-EX.#39 Plaintiff'sWebsite pages

 Due to the brevity of space I reference  my  ECF 432  Pages 24 to 29

**F. Plaintiff's Copyright Infringement Claim Matter of Law**

Plaintiff owns a valid copyright and that the defendant violated Plaintiff's exclusive rights in 17 U.S.C. §106.  To establish copyright infringement, Plaintiff did establish:(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S.Ct. 1282(1991).   The "Copyright Act does not require that the infringer know that he is infringing" to be liable. Each time an infringing work is reproduced, circulated or distributed, the infringer commits a "New" wrong Copyright Infringement are under 17 U.S.C.§106, 17 U.S.C. § 106(2) §106(a) (3)§106 (a) (5) and §501(a) entitles Plaintiff to all laws due to the willful and wrongful infringements.The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the Court.  Civ. 00089 SDNY McGlynn vs. TowerInvestors, Com Inc. Plaintiff is requesting my certificate and its evidentiary weight be made by the discretion of the Court. Due to the brevity of space I reference ECF 432  Pages 12 to 19.

**G. Plaintiff's Misattribution Claim Under VARA Should  NOT  be Dismissed**

VARA's exclusively grants authors of works that fall under the protection of the Act these four

core rights: (i) right to claim authorship, (ii) right to prevent the use of one's name on any work the author did not create, (iii) right to prevent use of one's name on any work that has been distorted, mutilated,  Plaintiff request of the Court to Grant Permanent Injunctive Relief is to  prevent any future   use of my name on works I dd not create as EAI did. Due to the brevity of space I reference my  ECF 432  Pages 20 to 24 on

**1.    Defendants Argue Plaintiff's  Right of Attribution Claim is NOT  Moot**

In Mr. Duff  Motion he writes." *Defendants have not publicly taken a position concerning the authorship of the Painting since 2012.* Because Defendants are not continuing to attribute the Painting to Plaintiff, no injunctive relief is warranted. Mass. Museum of Contemporary Art Found., Inc., 593 F.3d   EAI admitted Mr. Novocin was "carelessness" who also admitted that did no read my biography must be held to a different legal standard than MOCA.  Plaintiff has requested relief due to the harm I sustained and I will still sustain regarding this lawsuit and the danger of  Defendants creating a false secondary art market using my name.  The  primary reasons to litigate this case 1)Declaratory Relief 2) Permanent Injunctive Relief 3) Offset any future lawsuits for attribution rights and due to the six years of time lost to litigation, I need seek more substantial damages for all the losses Plaintiff has incurred.

**2. Defendants Argue Plaintiff is Not Entitled to Attorneys' Fees Under VARA**

A Court may award costs and attorneys' fees to a prevailing party in an action alleging the violation of an author's rights under VARA even if the work in question has not been registered with the Register of Copyrights,  Defendants alleged "*the  premise at the heart of every claim Plaintiff has asserted and reasserted is that one eBay advertisement published on eBay for ten days in 2012 and again after 2015 on worthpoint.com has ruined her career as an artist"*  Plaintiff argues if the sale was in 2012 why was the false post on the internet in 2017, The false EAI ad as well as the Novocins did not produce any convincing or substantial evidence Moreover, this harmed my career and diverted my time and efforts to remove a post under my

name my website content in an ad filled with  every error imaginable from clerical errors to concrete, all of which caused a  great embarrassment, great harm and a great loss of time

## I. Defendants' Use of the Asserted Work is a Permissible Fair Use

 Mr Duff falsely asserts "The fair use doctrine 'allows for transformative works that further the public discourse and the free exchange of ideas in order to promote science and the arts.'" As stated on page   12 of  ECF 422   Estate Auctions Inc. Defendants   admitted : *Norb intended only to provide potential buyers with as much information as possible to increas*e *EAI's chances of selling the Painting."* Plaintiff's biography was used commercially use, to allegedly sell an oil painting. Defendants did not red the biography and misattributed my biography, thus the usage is incorrect  and any defense of Fair Use is no*t*  only not  inapplicable it cannot survive the Fact/ Usage standard since Plaintiff is not the artist.  I reference Pages 12 to  20 Plaintiff's Summary Judgement ECF  ECF 432   Pages 12 to 20.

## VI. PERMANENT  INJUNCTIVE  RELIEF  FOR  BOTH DEFENDANT

Plaintiff's request of the Court to gran permanent injunction relief for both Defendants. Plaintiff establish the following four elements to be entitled to such relief:

(1)  that I has suffered an irreparable injury; the harm that has been suffered in this case cannot be adequately remedied by monetary damages. Pro Se Plaintiff has been entrapped by both Defendants since 2015, when I found the false post under my name.

(2) that the remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) that, considering the balance of the hardships between the plaintiff and the defendant, a remedy in equity is warranted; and

(4) that the public interest would not be dis served  by a permanent injunction. As a result of Plaintiff's  biography being on WorthPoint's webpage a kind of consumer confusion resulting from the use of  my biography  with the inclusion of EAI  Defendants company description within  the WorthPoint's  webpage on its  website
     In the context of copyright claims, Plaintiff  suffered irreparable harm based on lost sales

that are "difficult if not impossible to measure," where there is a likelihood of confusion, or where the Plaintiff incurs a loss that she should not expected to suffer, such as a diminishment of reputation, income and the eight years LOST to litigate and legally disassociate my name from the damaged 1972 Oil Painting Man With Red Umbrella.

Plaintiff's need to seek legal recourse and to seek Permanent Injunctive Relief against the Defendants, is to prevent any further "false" misattributions and/or attempts at creating a false secondary art market of low quality, damaged artwork that the Plaintiff has not created. Plaintiff filed this lawsuit to offset public or internet falsities or any lawsuits by Defendant for attribution rights as in the case of <u>Fletcher vs. Doig;</u>13 C 3270 (refuted right of authorship) <u>Barcroft Media, Ltd. v. Coed Media Group, LLC, 297 F. Supp.3d339,355-56 (S.D.N.Y. 2017); Beastie Boys v. Monster Energy Co., 87 F. Supp. 3d 672,679 (S.D.N.Y. Feb. 20, 2015)</u>.

## CONCLUSION

Plaintiff 's Motion, exhibits and documents of Defendants EAI, Norb and Marie Novoicn demonstrate a willful pattern to create contradictory statements which expose their intent to confuse, conceal or contradict potential facts that **<u>cannot</u>** be relied upon as a basis for reasonable deduction. Each topic listed above exemplifies a collective carelessness and irresponsible conduct. Defendants have done so repeatedly, causing statements to be unverifiable, and set forth in "Bad Faith". For these reasons, Plaintiff's respectfully requests of Defendants Motion for Summary Judgement be denied and dismissed with prejudice.

Dated: New York, New York  May 30, 2023          Respectfully Submitted

Annamarie Trombetta                    ——— Electronic Signature————-
175 East 96th Street (12 R)
New York. New York 10128          /s/ Annamarie Trombetta  May 30, 2023
Pro Se Plaintiff                    _____

                                   Annamarie Trombetta Pro Se Plaintiff

**In The United States District Court For Southern District of New York**

_____

Annamarie Trombetta,

    Plaintiff,                            Civil Action No. 18-cv-0993-RA-HBP

     vs.

Norb Novocin, Marie Novocin,
   Estate Auctions Inc.
     and
WorthPoint Corporation

    Defendants

_____

### CERTIFICATE OF SERVICE

I certify that on May 30, 2023, a true and correct copy of the foregoing document was served upon the parties of record via the Court's CM/ECF system and directly to all attorneys listed below to include Adam Bialek, Jana Farmer and John Cahill attorneys for WorthPoint Corporation and  attorney Anderson Duff representing Marie and Norb Novocin and Estate Auctions Inc.

Dated: New York, New York   May 30 , 2023

                                 Respectfully Submitted by

Annamarie Trombetta          ——Electronic Signature ——
175 East 96th Street (12 R)
New York. New York 10128     /s/ Annamarie Trombetta    May 30, 2023
Pro Se Plaintiff       _____

                      Annamarie Trombetta Pro Se Plaintiff

**SA2371**

32

Attorneys for Defendant WorthPoint Corporation

TO : Adam R. Bialek
150 East 42nd Street
New York, New York 10017 Telephone:
Telephone: (212) 915-5143 Fax: (212) 490-3038
Email : Adam.Bialek@wilsonelser.com

TO : Jana Slavina Farmer
1133 Westchester Avenue White Plains, New York 10604
Telephone: (914) 872-7247 Fax: (914) 323-7001
Email : Jana.Farmer@wilsonelser.com
Attorneys for Defendant WorthPoint Corporation

TO : John Cahill
150 East 42nd Street
New York, New York 10017
Telephone: (212) 915-5143 Fax: (212) 490-3038
John.Cahill@wilsonelser.com
Attorneys for Defendants Norb Novocin, MarieNovocin, and Estate Auctions, Inc.

TO: Anderson Josiah Duff (via email)
Hogan Duff, LLP
43-10 Crescent St., Ste. 12173
Long Island City, New York 11101
Telephone: (646) 450-3607
Email ajd@hoganduff.com

# EXHIBITS TO PLAINTIFF'S RESPONSE

**EXHIBIT #1** A Estate Auction Inc text 1972 Original Oil Painting Man With Red Umbrella
   B Pl's Evid Text of ad  000158 dated Jan. 14, 2016 and 000159 Aug. 1, 2015

**EXHIBIT# 2** A Letter by Alex Raspa warning of misspellings and fraudulent signature.
   B Norb Novocin Dep New York Listed Artist -Shabby Chic p83-86

**EXHIBIT #3** A Plaintiff's 1972 childhood signature Plaintiff's Evid. 000260 and 000493

**EXHIBIT #4** A False Frontal Oil Painting signature "A. Trombetta" on 1972 oil paining.
   B Plaintiff's Evidence 000690 TransUnion and 000694 Experian.

**EXHIBIT #5** EAI red pencil signatureANNA (gap) MARIA TROMBETTA 1972 GIFTED 1977

**EXHIBIT #6** Norb Novocin Deposition Page 53 Does NOT remember AnnamariA signature.

**EXHIBIT #7** EAI Rule 56.1 Statement of Facts Page 2 No. 11 CHANGE A to Annamari-E

**EXHIBIT #8** Phone Transcript of Norb Novocin & Plaintiff on Jan. 10, 2017

**EXHIBIT#9** ECF 22 April 24, 2019 p. 10 and 11 red signature settlement requests to EAI

**EXHIBIT#10** Norb Novocin Dep Page 9 & p138-139- mother is artist- N. Novocin trained in oils

**EXHIBIT #11** Bate stamped EAI as EAI00001-2-3 August 28, 2017 settlement

**EXHIBIT#12** Anderson Duff's May 16, 2023 email proof of Plaintiff's $8000 settlement

**EXHIBIT#13** Sept. 21, 2022 Deposition page 63-64 settlement letter Marie Novocin

**EXHIBIT#14** Sept. 21, 2022 Deposition pages 94- 97 settlement letter Norb Novocin

**EXHIBIT #15** EAI's. April 27, 2022-cut off and altered Nov. 16, 2022 2012 eBay sales receipts

**EXHIBIT#16** Sept. 21, 2022 Deposition page 38-39 GARBLED hard to read sig. Norb Novocin

**EXHIBIT#17** June 30 2020 email from Kris at askART Bio 000585

**EXHIBIT#18** AskART 2015 bio Wayback Machine 000149 Pl Evid Emails 00150 - 000151

**EXHIBIT#19** Norb Novocin Dep. pages 17 -18 Proficient Researcher

**EXHIBIT#20** EAI00004 Jan. 6, 2017 email sent to EAI by Teri Meissner -written reference to Jane

**EXHIBIT#21** A -Norb Novocin askART Member 2001 to present Pl. Evid 000586 -000592
   B- Norb Novocin Dep pages 53-54 askART research
   C- Norb Novocin Page 54 No secondary market-somebody of value to painting.
   D- askART Terms of Use Plain. Evid. 000342 DEPOSITION as exhibit # 8

nal Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (12/01/2012)

*Date*

1/14/16, 8:42 AM

EXHIBIT #1 A

ebay
Raw data from eBay
under sublicense

Worthopedia™
price guide

*Items in the Worthopedia are obtained exclusively from licensors and partners solely for our members' research needs.*

If this item contains incorrect or inappropriate information please contact us here to flag it for review.

If you are the originator/copyright holder of this photo/item and would prefer it be excluded from our community, contact us here for removal.

- Home > Worthopedia™ > 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz

## 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz

- Sold for: Start Free Trial or Sign In to see what it's worth.
- Item Category: -
- Source: eBay
- Sold Date: Dec 01,2012
- Channel: Online Auction

Welcome to EstateAuctionsInc! We are one of the Top Sellers of Antiques, Collectibles and Quirky items on eBay. We have been selling since 1998 and ALL of our auctions start at .99 cents. We are proud to announce that we maintain a "FIVE STAR Detailed Seller Rating" and our staff strives for 100% customer satisfaction, our 100% feedback rating will vouch for that. We work with consigners from Coast-To-Coast and work hard to make sure we have top quality items. We are "Your Quality Zone" - search "YQZ" to see our other listings our !

>>>>> UP IN THIS AUCTION <<<<< 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta New York Listed Artist - Shabby Chic Condition

- DESCRIPTION - Please be patient there are 12 photos to be loaded in this auction. Up in this auction is a wonderful and delightful oil on canvas painting of a man (I guess it could be a woman) with a red umbrella. This is by Annamarie Trombette. It is signed on the bottom, but on the back it has written in red on the stretcher, Annamarie Trombetta "Gifted" 1977, "Painted" 1972. To our eyes it looks like it is after the style of Andre Kohn. It is quite large being approx. 48 1/2" tall and 17 1/2" wide. We are calling it shabby chic condition as it has a tear in the canvas, about 5/8" long just to the left of the man's knees, but still such a great painting. For those not familiar with Trombetta, here is information about her from off AskArt as they got it from her website: Annamarie Trombetta (1963 - ) Lived/Active: New York The nature of an artist's life, creativity and

1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (12/01/2012)

Date    8/1/15, 8:46 PM

website: Annamarie Trombetta (1963 - ) Lived/Active: New York The nature of an artist's life, creativity and growth may be synonymously expressed in the image of an archetypal tree. Beginning with the earthly descendent roots the artist like the tree branches out into its surrounding environmental and celestial world. Both ascend and descend, widening their girth of consciousness while producing visual imagery, weathering each season of change. Thus, I believe it is the nature of the artist and of nature itself to regenerate and manifest. All of the imagery in this catalog was either created en plein air or from the subject directly. My journey to becoming an artist began many years ago. The consanguineous roots of my Italian family tree provided me with an innate constitution for my artistic profession. When I was a tiny seed of contemplative thought, my artistic nature began to sprout interest while gazing up at the ceiling paintings in a neighborhood church named Regina Pacis, meaning Queen of Peace. The church located in Brooklyn, NY features ceiling paintings, sculptures, marble interiors, and incorporates architectural elements for the façade and the belfry that are of Italianate design. Before the age of three I was able to surmise that the church in the ceiling painting was indeed the church I was in. The visual stimulation was a form of education. It fostered my sense of perception which became my strongest mode for acquiring knowledge. As the years unfurled, my family moved to Staten Island. At this time it was a scenic field of luminosity, lush vegetation and a harbor view complete with sail boats and small yachts. A few years after we moved my tree of life was in jeopardy of loosing a limb. What appeared to be a swollen leg was indeed a cancerous tumor. It was an almost fatal or perhaps even a fated occurrence in my life. The struggle to survive the experience was lightened by my imagination and by my artistic ability to create. I seriously thought I would go into medicine but the posters and paintings in the hospital and doctor's office held my attention more intensely. I began my formal training at The Brooklyn Museum School of Art while I was in high school. The exposure to various forms of art inspired me to expand my horizons and in the early Eighties I traveled on a summer tour to Europe. The tour comprised of six countries; Germany, Austria, France, Italy, Switzerland and England. Viewing so many different cities and cultures in a concentrated period of time...

Similar Items

EXHIBIT #1B

No Image available

Oil painting, original oil painting impressionism

No image available

original oil painting on canvas

Plaintiff000159

Plaintiff 000076

*Damage to my Reputation EXHIBIT*

*#2*

April 7, 2022

To Whom It May Concern:

My name is Alex Raspa and I am the Senior Sound Post Production Technician at NYU's Tisch School of the Arts, Post Production Center. I have worked here in the Film and TV Department at the Kanbar Institute of Film & Television since 2006.

In 2015, Annamarie invited me to an opening for an exhibition at the Italian American Museum here in New York, where some of her wonderful paintings were being shown.

A few months after this, I did a Google search of Annamarie's name and was led to a website, Worthpoint, that mentioned the sale of one of her paintings, "Man with a Red Umbrella" on Ebay. I was very surprised by this because I didn't know that Annamarie was selling any of her paintings that way. Upon closer inspection, I saw her name misspelled once as "Trombette," and then, when I read that this canvas was supposedly painted in 1972, I realized that "Man with a Red Umbrella" could not possibly be hers, as she was only a little kid then. Finally, the artist's signature shown was "A. Trombetta," which I knew was not the way Annamarie signed her paintings. I of course got in touch with her right away and let her know that what I saw on that website was evidently fraudulent. It was clearly going to affect her ability to sell her paintings and make a living.

*Wrong Spelling for Trombette*

Sincerely,

Alex (Alejandro) Raspa
Post Production Sound Senior Technician & Instructor
Post Production Center
Maurice Kanbar Institute of Film & Television
Tisch School of the Arts, New York University
721 Broadway, Room 1163
New York, NY 10003

*Exhibit #2*

Norb

EXHIBIT #281

Page 83

N. NOVOCIN

A.     Yes.

Q.     It mentioned that Annamarie Trombetta, New York listed artist.  Did you use that phrase in the Ebay listing?

A.     Yes.

Q.     What did you mean by New York listed artist?

A.     It means she's from New York and she is listed on one of the sites that I got information from.

Q.     Do you see where it says, "Shabby chic condition"?

A.     Yes.

Q.     Did you put that phrase in?

A.     Yes.

Q.     What does that mean to you?

A.     When I use shabby chic condition, that means there is a flaw of some type to the item that is being sold.  I was using that for years on anything that has an issue.  In this case, it has a tear to it, therefore a shabby chic.  My clients when they say shabby chic, they know it's not pristine, it's not brand new.  It has

Case 1:18-cv-00993-LTS-SLC     Document 488-1     Filed 05/30/23     Page 6 of 38

EXHIBIT #2B 2

Norb

Page 84

N. NOVOCIN

an issue.

Q.     In fact you are explaining further down in the listing, we are calling it shabby chic as there is a tear in the canvas, about 5/8th's of an inch long in the man's knees, but still such a great painting, correct?

A.     Correct.

Q.     This is the basis for you calling it the shabby chic condition, right?

A.     Correct.

Q.     In the next sentence it looks like you are referring to Miss Trombetta's biography as being taken off of askART, correct?

A.     Correct.

Q.     You also referencing that askART received the biography or accrued the biography from her website, correct?

A.     Correct.

Q.     The language that follows the phrase website, specifically, "Annamarie Trombetta, 1963", close parentheses, et

EXHIBIT #2B 3

Norb

N. NOVOCIN

cetera, is that the text that you indicated you copied from askART?

A.      Correct.

Q.      The date 1963, was that also copied from askART?

A.      Yes.

Q.      Again, back when you composed this listing, you did not focus on the date of the artist, correct?

A.      I did not focus on it.

Q.      I'm going to show you the last page of this document.  Do you see at the very bottom the document has some code, right?

A.      Right.

Q.      In fact, it seems to read "jpeg" in some of the codes.  Do you see that?

A.      Yes.

Q.      Does it indicate to you that's probably images that were originally part of the listing?

A.      Yes.

Q.      Above the code, the last

Case 1:18-cv-00993-LTS-SLC    Document 488-1    Filed 05/30/23    Page 8 of 38

EXHIBIT #2B4

Norb

Page 86

N. NOVOCIN

sentence in the document seems to be, "I thank them for their help and guidance in my life", period, and then there is a symbol "TR", close symbol. Do you see that?

A.    Yes.

Q.    Was this also the last sentence of the listing that you had on Ebay?

A.    I don't know if it is, but if I can expand a second for this. Our software that we use was custom written for us and we would put pictures in the middle of our descriptions and it would split the actual description, so it could very well be that is the last point that it is above the pictures and then that would be continued, the biography would be continued on the bottom underneath it and there is a chance that -- this is one of the things I have been thinking of, why there was paragraphs missing out of the biography when we copied the whole biography. There was a chance that when Worthpoint grabbed it, it came to the codes for the pictures and it stopped

EXHIBIT#3 A

Housekeeping

8. washing the dishes





Plaintiff000163

SA2383



experian™

*2(9 P.1    Annual Free Credit Report 877-322-8228* (handwritten)

WorthPoint Corp.  Plaintiff Trombetta
Supplemental Rule 37 Responses

Plaintiff's Evidence 000694

Prepared for: ANNAMARIE TROMBETTA
Date: October 10, 2017
Report number

Page 1 of 4

**Dear ANNAMARIE TROMBETTA**

As you requested, we have placed a security freeze on your personal credit report from Experian. Your personal identification number is 000004073842615.  Please retain the number as **you must submit this number in order to temporarily or permanently remove the security freeze from your credit report.** If you would like to create a single-use personal identification number to be used by a certain credit grantor, log on to www.experian.com/freeze.

To **temporarily** remove a security freeze for a period of time in order to apply for credit or for any transaction that requires that another party access your personal credit report, log on to www.experian.com/freeze or call 1 (888) EXPERIAN (1 888 397-3742), then enter your identification information and personal identification number. To temporarily remove a security freeze for a specific party, provide your single-use personal identification number to the party you wish to grant access to your report.

Fees to temporarily remove a security freeze by state are: Alabama, California, Colorado, Florida, Guam, Illinois, Kentucky, Michigan, Mississippi, Nevada, New Hampshire, Oklahoma, Oregon, Rhode Island, Utah, Wisconsin and Wyoming - $10; Connecticut - $10.64*; South Dakota - $10.65*; Pennsylvania - $10.70*; Texas - $10.83*; Washington - $11.01*; Puerto Rico - $11.15*; Iowa - $12; Idaho - $6; Arizona, Arkansas, Kansas, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, North Dakota, Ohio and Vermont - $5; Hawaii - $5.20*; New Mexico - $5.26*; West Virginia - $5.30*; New York - $5.44*; Louisiana - $8; Georgia, Montana and Nebraska – $3; Alaska - $2. (* includes taxes)

All other states have no charge for temporarily removing a security freeze. There is no fee in any state for victims of identity theft who provide a copy of a valid identity theft report filed with a law enforcement agency.

To **permanently** remove a security freeze, log on to www.experian.com/freeze or call 1 (888) EXPERIAN (1 888 397-3742). You also may write to us (Washington, D.C. residents must request permanent removal of a security freeze in writing).  Send your request to: Experian Security Freeze, P.O. Box 9554, Allen, TX 75013.

Be sure to include the following information:

- Your full name including middle initial (and generation such as JR, SR, II, III)
- Social Security number

Scan me with your smart phone for special offers from Experian.

*EXHIBIT # B* (handwritten)

*2(9, Page 1* (handwritten)

0000838  01 AB    **AUTO T4 2 7242 10128 620648    -C01-P00038-1

ANNAMARI   TROMBETTA
175 E 96T        APT12R
NEW YO   NY 10128-6206

Return   ...
Allen, TX 75013

WorthPoint Corp. Plaintiff Trombetta
Supplemental Rule 37 Responses

TransUnion LLC
PO Box 805
Woodlyn, PA 19094-0805

Plaintiff's Evidence 000690

File Number:
Page:                1 of 4
Date Issued:    10/10/2017

**TransUnion.**

P7HMH000302134-I009643-041351471

ANNAMAR... M TROMBETTA
175 E 9... ST APT 12R
NEW YORK... 10128-6206

*EXHIBIT #4B*

Thank you for contacting TransUnion. Our goal is to maintain complete and accurate information on consumer credit reports. We have provided the information below in response to your request.

At your request, a TransUnion Security Freeze has been added to your credit report. Please keep this letter for future reference.

This Security Freeze will remain on your credit report until you request its removal in writing. If you change your state of residence, you must notify us in order to update your address and have the security freeze rules and any applicable fees applied for that state. Should you wish to temporarily or permanently remove the TransUnion Security Freeze from your credit report, you will need to provide TransUnion with your Security Freeze Personal Identification Number (PIN), which is listed below. Also listed below is the fee you were charged for adding the freeze to your credit report.

N... Fee: $0.00

Re: Security Freeze

You may obtain a new TransUnion Security Freeze Personal Identification Number (PIN).

If you know your current PIN, you may call (888) 909-8872. You may be asked to verify your identity again.

If you do not know your PIN or you have lost the PIN that was issued to you when you added the Security Freeze to your credit file, you may request a new one by writing to the address below. Please provide proof of identification, such as a copy of your driver's license, passport, birth certificate or other proper identification forms. For additional information on replacing your lost PIN, call our toll free Telephone Number (888) 909-8872.

Re: Security Freeze

What does a Security Freeze mean?
When your TransUnion credit report is frozen, all third parties whose use is not exempt by law will be unable to access your credit report without your consent. The Security Freeze may delay, interfere with or prohibit the timely approval of any subsequent request or application you make that involves access to your credit report.

Additionally, while your report is frozen, companies that provide consumer data to TransUnion will not be allowed to update name and address information on your credit report. If your name or address changes while your file is frozen, please notify TransUnion directly at the address provided so that we can update your personal information.