SA2444

askART

## Terms of Service and Internet Privacy Policy   EXHIBIT #21 D

### ACCEPTANCE OF TERMS

### MODIFICATIONS

### RIGHT TO USE THE SITE

### COPYRIGHTS, RESTRICTIONS, TRADEMARKS

### USE OF INFORMATION

As a user of the site, you acknowledge that you may provide information regarding your tastes and preferences, and you hereby authorize askART, Inc. and its affiliates to use such information in connection with any online or offline offering or any electronic mail offering directed to you. askART, Inc. is committed to protecting your privacy. Any information that askART, Inc. collects about you will be used to enhance your experience of the site. By using our web site, you consent to the collection and use of this information by askART, Inc. and its affiliates.

By uploading material to any forum or by submitting any comments, recommendations or data ("Information") to us, you automatically grant us represent and warrant to us that the owner of such rights has expressly granted) to us a perpetual, royalty-free, irrevocable, nonexclusive right and license to use, reproduce, modify, adapt, publish, sublicense, translate, create derivative works of and distribute such information worldwide and/or incorporate such information into any form, medium, or technology now known or later developed. In addition, you represent and warrant to us that all so-called moral rights in the information have been waived.

EXHIBIT

8

**SA2445**

# EXHIBITS PAGE 2

**EXHIBIT #22**   A Marie Novocin Dep, P 9- EAI  picture taker, shipper P.13

B Marie Novocin Dep.Pages 41-43) Never saw 1972 Painting -Photographer

**EXHIBIT#23**   Marie Novocin Dep. Page 13—Attorney nothing to do with painting

**EXHIBIT#24**   Marie Novocin Dep Page 55-58   Question about photos of painting in 2012

**EXHIBIT#25**   Marie Novocin Dep Page 66   Owner of 1972 Oil unknown.

**EXHIBIT#26**   Norb Novocin Dep. Page 31-32 Owner Gifted  1972 Oil owner unknown.

Norb Novocin Dep. Page 32  No visible Tear in Canvas

**EXHIBIT#27**   Nina Correia no written sales  receipt for eBay 1972 oil Pl. Evid. 000501

**EXHIBIT#28**   EBay  Receipts by Norb Novocin are on  Pages 135-136  EX. #28

**EXHIBIT#29**   Norb Novocin Dep.Page 52-55 Annamaria -unusual name -Secondary market

**EXHIBIT#30**   Norb Novocin Dep Page 15, EX# 30

**EXHIBIT#31**    99 Cents/ Norb Novocin Dep.Page 42- 47  WP Attorneys  ask about Signature

**EXHIBIT#32**   EAI Facebook page  selling Counterfeit items comment in Plain. Evid. 000345

**EXHIBIT#33**   Gayle Skluzacek askART bio in her files. EX, Pl. Evid. 000323-000579

**EXHIBIT#34**   Kris from askART Jan. 16, 2018 emails Regarding my Bio.000 321 -322

Plaintiff's email to askART June 30, 2020 Plaintiff's Evidence 000585

**EXHIBIT#35**   Norb Novocin Dep. page 96-97  A. Trombetta as Teri Meissner sue him

Dep. page 100

**EXHIBIT#36**   A Declaration Norb Novocin   Pl. Evid. 000174—000177

B Declaration Marie Novocin  Pl.Evid. 000332—000337

**EXHIBIT#37**   Affidavit Patrick O'Leary Four eBay receipts

**EXHIBIT#38**   Attorney Anderson Duff in Pl. Evid. 000266-267  Rule 68 Offer of Judge

Attorney Anderson Duff  Pl.  Evid -000 262-263 Blocked his emails

**EXHBIT#39**   Plaintiff's CMI Evidence Biography  000295-296-

**EXHIBIT#40**   Plaintiff's Website Domain  Year of creation 2003 Pl's Evid. 000250

**EXHIBIT#41**   EBay  Phone Call 2015/2016 Transcript

Case 1:18-cv-00993-LTS-SLC     Document 488-3     Filed 05/30/23     Page 2 of 37

*Marie*   *Take Photos*   Page 9

M. NOVOCIN

EXHIBIT #22 A

Q.     Is it safe to say among the many listings of Estate Auctions, Inc. posted, few were done by you?

A.     That is very true.

Q.     What does your role or what was your role in Estate Auctions, Inc.?

A.     I have been a picture taker, an inventory person, shipper, troubleshooter, grunt worker.

Q.     Did you have any involvement with this painting Man With a Red Umbrella, whether it be finding it, photographing it, anything whatsoever?

A.     I did not.  I don't remember it, to tell you the truth.

Q.     When did you first become aware of this painting's existence?

A.     When I got a phone call from Teri Meissner.

Q.     When was it is that you got that phone call?

A.     That was early January 2017.  I think I have an e-mail that might reference the date of the phone call.  I can -- I got

MARIE NOVOCIN

Plaintiff's Evidence Expert Dis. 000903

Page 41

Marie M. NOVOCIN

EXHIBIT #22 B

spoke to.

Q. So let me ask you this. To switch the subject and then revert back. What is the name of the signature in red on Man With A Red Umbrella?

A. I don't know. What is it? You have pictures of it somewhere.

Q. Did you ever look at those pictures of the signature in red?

A. I have.

Q. So to the best of your recollection, what is the name of the signature?

A. This is something very close to your name.

Q. How close is close? It seems that it's a very straight forward question. To the best of your recollection, what is the name of the back of the 1972 painting, Man With A Red Umbrella?

A. The reason I haven't answered it indirectly, because I don't exactly remember the name on there. I don't have the picture of it in front of me with it

SA2448

Page 42

M. NOVOCIN

on. Something like -- I don't know. Annemaria, Annamaria. I don't know.

Q. Do you recall the name on the biography of askArt?

A. Annamarie Trombetta.

Q. Do you recall the name of the artist's biography on askArt?

A. We use the biography or Norb did, Annamarie Trombetta.

Q. So in the biography, you know it was Annamarie Trombetta, but in the back of the painting in red, the signature, you are not sure of the name?

A. As I mentioned, I did not see the painting when it was in our possession.

Q. Well, when you say our possession, were you ever in the room with it? Do you recollect what it looks like?

A. No. Only in photographs. At that point I had been released of my duties to try to be a better home schooled mother and I wasn't in the office then.

Q. But at the beginning of the deposition you did say that you took

EXHIBIT
#22
B

Page 43

M. NOVOCIN

photographs. Did you take photographs of this painting?

A.    No.

Q.    Do you know who took photographs of this painting?

A.    I believe it was Michael Miller.

Q.    Can you describe further who Michael Miller is or was?

A.    He is somebody that somebody else that we had working with us. I think he knew Mike and knew that Mike needed an opportunity and brought him to our place and we put him to work for just a short time, a few months.

Q.    So he was an employee of yours in 2012 when you were in possession of this painting?

A.    Right.

Q.    To the best of your recollection, how long did he work for you?

A.    Just a few months. I don't remember exactly when he came in, but I know that I took him to the airport and the

EXHIBIT #22 B

**SA2450**

EXHIBIT #23

MARIE

Page 13

M. NOVOCIN

A.    They were both women's voices.

Q.    So you are not sure if it is or not the same voice?

A.    Correct.

Q.    Mrs. Novocin, do you ever use askArt website yourself?

A.    No, not generally.  That's a research tool.  It's not part of my division of labor.

Q.    Just to double check.  I know you said you had nothing to do with this painting, you also did not take those pictures of the company's listing; is that correct?

A.    That's correct.

Q.    Is it also fair to say that because you didn't know about this painting until you got the phone call, that you hadn't discussed this painting with your husband prior to the sale?

A.    That's correct.

Q.    No discussions prior to the phone call that you got from Teri Meissner, correct?

**SA2451**

EXHIBIT#24

MARIE

Page 55

M. NOVOCIN

impossible to know what that top price was.

Q.    Can you read number 10, please.

A.    "Neither Estate Auctions, Inc., nor myself, nor my husband Norb have ever had any control of the contents at Worthpoint.com".

Q.    Do you, Ms. Novocin have a subscription to Worthpoint?

A.    Norb has a subscription.  If I need Worthpoint, I can get in on his subscription.

Q.    So it's an actual subscription or are you just able to access Worthpoint?

A.    It's a business.  It's our business subscription.

MS. TROMBETTA:  Let me just review 00033 to see if there's any other items I want to ask Ms. Novocin.

Q.    In the 1972 Man With A Red Umbrella, in the text, did you have anything to do with writing the text?

A.    No.

Q.    Are you aware that the text

Case 1:18-cv-00993-LTS-SLC    Document 488-3    Filed 05/30/23    Page 8 of 37

*2017 - Did not Help Plaintiff or Look Up Website = Settlement Letter.*

Page 56

M. NOVOCIN

says that, "For those not familiar with Annamaria Trombetta, here's her biography".

A.    What's the question?

Q.    Are you familiar with the statement, "For those not familiar with Annamaria Trombetta, here is the information about her from askArt, as they got it from her website".  Are you aware of that statement?

A.    I am.

Q.    Are you aware that I had a website?

A.    At this moment in my life, I am.

Q.    When this was brought to your attention in 2017, did you look up my website in 2017 when you received the settlement letter?

A.    I don't believe I did.

Q.    So even though it said that I had a website, you and your husband chose not to contact me; is that correct?

A.    I said that I had nothing to do with this painting when it was in our

SA2453

MARIE EXHIBIT #24 3    Page 57

M. NOVOCIN

possession.

Q.    At the same time, you verified that you were aware that I had a website?

MR. DUFF:  Objection.  Asked and answered.  The declaration speaks for itself.

Q.    Are you aware that there were 12 photos?  You had mentioned that a Mike Miller took photos.

A.    I have seen that referred to in the documents.

Q.    You saw it referred to in the documents?

A.    Yes.

Q.    Did you see those photographs when this painting was on your Ebay online website?  Did you see any of those photographs?

A.    No.

Q.    None whatsoever?

A.    Not to my recollection.

Q.    Were you aware if your husband forwarded those photographs with the sales records?

Case 1:18-cv-00993-LTS-SLC    Document 488-3    Filed 05/30/23    Page 10 of 37

MARVE

EXHIBIT#24

Page 58

M. NOVOCIN

A.    Please restate that. I don't know what you mean by that.

Q.    Once the sale was complete, somehow this sale from Estate Auctions, Inc. made its way to another website. Do you recall the photographs being forwarded with the sales records for this painting?

A.    No, I don't.

MR. DUFF:    Objection.

You can answer.

A.    I don't forward any photos to websites. That is an action from Ebay to other websites that may have gotten licensing for other records. That's completely out of our hands.

Q.    You don't know how that information gets transferred over? Is it by Ebay?

A.    As I said, it's some licensing arrangement between Ebay and the site that's gathering information.

Q.    Do you know if that site was named Terapeak?

MR. DUFF:    Objection to the

SA2455

EXHIBIT # 26 (1)

Page 31

NORB

N. NOVOCIN

A.      I sent them to him.

Q.      Do you recall, how did you get these pictures?

A.      Yes.  The person who --

Q.      How?

A.      The person that we sold the painting to had since disbursed the painting, whether she sold it or gifted it to someone else.  I called her up and asked if she would be willing to take pictures of the photo, being as we had no more -- no longer had any photos of it.  She made arrangements to have that taken.  The reason I don't know who took the painting, the photos of it is I don't know who she gifted it to and I assume that's who took the photos because it's in her or his house.  So they took the pictures and the photos and they e-mailed them to the -- that person, the person who bought the painting from us and then they e-mailed them to us, they were in a large format and I reduced them down to a smaller size that was more susceptible to being able to

EXHIBIT #26 (2)

Page 32

N. NOVOCIN

e-mail to Mr. Duff and that's probably where the EAI came from us, Estate Auctions, Inc., 000054. That's how we got them. We reduced them and sent them onto Mr. Duff.

Q.    Mr. Novocin, do you recall the tear in the painting that you mentioned? Where on the painting was it located?

A.    It was located if I recall correctly, on the left-hand side just about even with the knee or something of that nature.

Q.    We are looking right now at the photograph on the painting and I have is magnified at 50 percent. The screen is about the knee level of the tear depicted in the painting. Mr. Novocin, can you see the tear in this image?

A.    No.

Q.    To your knowledge, was this painting ever restored?

A.    No, it was not.

Q.    Does the image or do the images in Defendant's Exhibit 1 fairly and

Plaintiff's Evidence 000501                    Gmail - Third Subpoena From Plaintiff Annamarie Trombetta

 **Gmail**                    Annamarie Trombetta <atrombettaart@gmail.com>

## Third Subpoena From Plaintiff Annamarie Trombetta

Nina Correia <ninascorreia@aol.com>                    Sat, Oct 22, 2022 at 5:32 AM
To: Annamarie Trombetta <atrombettaart@gmail.com>

I have been out of town since oct. 14th and unable to measure it. Will not be back until Nov. 5.. on a cruise. I have no
written correspondence with the eBay seller nor do I have eBay receipts from that long ago.

Sent from my iPad

On Oct 22, 2022, at 10:16 AM, Annamarie Trombetta <atrombettaart@gmail.com> wrote:

[Quoted text hidden]

EXHIBIT #27

2 attachments

📄 **Third Subpoena for Nina Correia.pdf**
685K

📄 **Rule 45 NYSD Court .pdf**
890K

Case 1:18-cv-00993-LTS-SLC    Document 488-3    Filed 05/30/23    Page 14 of 37

Page 135

N. NOVOCIN

receive a phone call.  Was it after or before the letter?

A.    It was after the letter.

MR. DUFF:  So you need to get Marie up here for you to ask questions, right?

MS. TROMBETTA:  No.  I'll wait. Will she be deposed by Worthpoint?

MS. FARMER:  Yes, Miss Trombetta.  What I was trying to say earlier when I didn't realize you were still speaking, Mrs. Novocin is scheduled to be deposed this afternoon.  Just as soon as you are completed with your questioning, we will move onto the deposition of Mrs. Novocin.

MS. TROMBETTA:  Thank you.

Q.    Did you only have the one Ebay receipt or was there more receipts from Ebay regarding the 2012 sale?

A.    We only received the receipts from Ebay.  Then the Paypal payment.  That was it.

EXHIBIT #28 B

Page 136

N. NOVOCIN

Q.    Have you produced the Paypal payment?

A.    Yeah.  Yes.

MS. TROMBETTA:  Plaintiff has not received the Paypal payment and would like production of that.

Q.    So as far as shipping information, it is a standard practice for Ebay to send out shipping receipts?  Do you have any?

A.    At that point Ebay was not in charge of shipping.  They didn't send out shipping receipts.  They never had -- at that point we shipped it ourselves directly and no, we do not have a receipt for the shipping.

Q.    Are you currently in bankruptcy?

A.    I am in bankruptcy.  Somebody has filed a thing to stop our bankruptcy, so we are still in bankruptcy.

Q.    Had you ever been in bankruptcy prior to this time?

A.    Yes.

SA2460

EXHIBIT # 29 (1)

Page 52

N. NOVOCIN

yes.

Q.    Again, this document shows the signature and I think you testified earlier that you did not find it legible when you first saw the painting, correct?

A.    Correct.

Q.    When you looked at the back of the stretcher and you saw the words Annamarie Trombetta that we discussed earlier, did it help you interpret what the signatures may have read?

A.    It certainly interpreted the last name. I couldn't do anything for that first initial.

Q.    Taken together with the information on the bottom, how did you determine who may be the artist?

A.    You have to rephrase that. I'm sorry. You are going to have to rephrase that. You got gunked [sic] up on the internet.

Q.    Actually, give me one second. I have someone mowing the lawn outside of my window. I'm going to try to shut the

SA2461

EXHIBIT #29  (2)

Page 53

N. NOVOCIN

window.

MR. DUFF:  Can we take a quick break.

(Whereupon, a short recess was taken).

Q.    Mr. Novocin, did you compose the Ebay listing for Man With a Red Umbrella?

A.    Yes.

Q.    Were you the one who determined that this painting was attributed to Annamarie Trombetta?

A.    Yes.

Q.    How did you research this particular painting and this particular attribution?

A.    Once I saw the name on the back, I went to askArt.  I put in the name Trombetta and Annamarie came up.  It's an unusual name.  I have never come across it before.  I did not -- I do not remember ever seeing Annamaria on the back of the painting, so I just assumed it was the same person.  Pulled up that person on askART.

Case 1:18-cv-00993-LTS-SLC    Document 488-3    Filed 05/30/23    Page 18 of 37  (3)

EXHIBIT # 29

Page 54

N. NOVOCIN

I saw it had a biography, but no record of any paintings ever been sold, which I'll just leave it that. There's no records of any painting been sold on secondary market. I grabbed the biography and used that in the listing. Because there was no records of any painting to be sold, I wanted people to be able to associate somebody of value to the painting and so I went out and found another artist on askART that had painted before with umbrellas. I said it's much in the style of and I mentioned that other person. So that way people can look it up and say, oh, it's like that person. They paint with umbrellas also. That way, people do some research on it. They see something of value and I'm willing to spend more money.

Q.    You mentioned when you found Annamarie Trombetta's name on askART, that was not associated with any paintings on askART, correct?

A.    That's correct. They had no listings and to this day, have no listings

EXHIBIT #29 (4)

Page 55

N. NOVOCIN

of any paintings have ever been sold on secondary market for Annamarie Trombetta.

Q.    Does askART necessarily receives any information about sales in the primary market?

A.    In other words, first hand, if Annamarie Trombetta sold directly to someone or if an artists sold directly to them?  No, normally they don't have that. They get their information from auction houses and so forth.

Q.    So to your knowledge, in the art market, the auction sales are usually public, correct?

A.    They are something that you can get information from.  They weren't always public, but the auction houses share it with said companies and so forth.  You can find records of when things sold.  Go ahead.

Q.    What I mean is, if you were to attend a public live auction, you would hear what the price that the item went for, right?

SA2464

EXHIBIT # 30

Page 15

N. NOVOCIN

Q.    Mr. Novocin, just to confirm, your children Juda and Casey, are they currently minors?

A.    No.

Q.    The reason I ask, if they were minors, we would redact their name on the transcript, but we don't do that for adult witnesses.

A.    Okay.

Q.    Just for the record, what was the nature of Estate Auctions Inc.'s business?

A.    I'll first give the funny answer. We buy junk, we sell antiques. We would go out to auctions and acquire items or take items on consignment and then we would sell them on Ebay. We didn't sell them anywhere else on Ebay unless we couldn't get enough for it on Ebay. Then we would send it off to live auction to recoup something we paid for it.

Q.    You just mentioned the phrase live auction. Is that a brand name or are you referring to an auction that takes

Case 1:18-cv-00993-LTS-SLC    Document 488-3    Filed 05/30/23    Page 21 of 37

EXHIBIT # 31

Page 42 (1)

N. NOVOCIN

Ebay?

A.    No.

Q.    Did somebody else at Estate Auctions, Inc. take such photographs?

A.    Yes.

Q.    Is Estate Auctions, Inc. currently in possession of any such photographs?

A.    No.

Q.    You mentioned that Estate Auctions, Inc. is currently a defunct entity; is that right?

A.    Correct.

Q.    That's a hypothetical. If Estate Auctions, Inc. had records previously, where would they currently be kept, if at any location?

A.    We kept them on the cloud, which is a cloud for a server at a location outside of our own property. We still keep records of photos and everything else on a server outside of our own property, but a few years ago, long after 2012, we were notified by a company that kept all of our

EXHIBIT # 31 (2)

Page 43

N. NOVOCIN

records that we had grown too large and they were going to shut us down. So we shut that server down and started a new one and in the process, lost all of the previous records we had on the cloud. So we no longer had records to be able to go back and get and unfortunately, the cutoff for it was, like, two weeks after this went onto the cloud. So it was like in 2012. The end of December is when that cutoff of us saving it went forward.

Q.    Do you remember whether or not the Estate Auctions, Inc. listing of this painting contained a close-up picture of the signature on this painting?

A.    It did.

Q.    Mr. Novocin, compared to the other items that you acquired from antique mall, was this painting, Man With A Red Umbrella a more valuable item, a less valuable item as others, somewhere in the middle, something else?

A.    It was run of the mill. These things we sold from out of that auction

Case 1:18-cv-00993-LTS-SLC    Document 488-3    Filed 05/30/23    Page 23 of 37

EXHIBIT #31 (3)

Page 44

N. NOVOCIN

house -- not auction house, that antique mall sold anywhere from just a few dollars upwards to several thousand dollars. This one sold at 181. The way we sell on Ebay, we start everything at 99 cents and let it go. We don't set a price on it. The customers themselves bidding on it are the ones that actually drive the price. I never know what things are going to sell at.

Q.    From your memory, there were other items from this antique mall that sold for several thousands, correct?

A.    There were some items that sold for several thousands.

Q.    I know you mentioned that you did not take the images for the Ebay listing, but do you know what camera was used to take the images?

A.    Probably not. I am not sure if it's a current camera that we are using. We go through a lot of cameras. We have literally have shot millions of photos and so cameras wear out and we change cameras

EXHIBIT # 31 (4)

Page 45

N. NOVOCIN

and the style of camera we use changes as necessary. I'm not sure which camera we were using at that time.

Q.    As you sit here today, do you know if you are still in possession of the particular camera, even though you don't know which one, that may have taken these images?

A.    I'm going to say no.

Q.    As you sit here today, do you have knowledge whether or not you have the memory card or film that was used to take photographs of this painting?

A.    No.

Q.    I wanted to follow up with you on your pricing on Ebay. You mentioned that some of the items sold for several thousands, correct?

A.    Correct.

Q.    When you would look at the item, would you ever have an idea that it might be worth several thousands before it sold?

A.    Sometimes.

SA2469

EXHIBIT # 3 (3)

Page 46

N. NOVOCIN

Q.    For such items, is it still your strategy to list them at a starting price of 99 cents?

A.    Yes.

Q.    So there's no exceptions, everything goes at 99 cents?

A.    Correct.

Q.    Do you ever pull any items down from Ebay if you were not, let's say, receiving the bids that you expected to receive?

A.    No.

MS. FARMER:    Miss Marlene, could you please mark this document as the one page pdf as Defendant's Exhibit 3 of today's date.

(Whereupon, the aforementioned photograph was deemed marked as Defendant's Exhibit 3 on this date, by the Reporter).

Q.    Mr. Novocin, I'm showing you what has been marked as Defendant's Exhibit 3 of today's date. For the record, it is a one page pdf document with a bates stamp

Case 1:18-cv-00993-LTS-SLC    Document 488-3    Filed 05/30/23    Page 26 of 37

EXHIBIT #31 (6)

Page 47

N. NOVOCIN

EAI000024.  I'm showing it to you at 150 percent and I have just scrolled from the top to the bottom of the document.  Mr. Novocin, my question to you is, does this image depict the signature that appeared on the painting Man With A Red Umbrella?

A.      Yes.

Q.      Is this one of the photographs that was included in Estate Auctions Ebay listing for that painting?

A.      Yes.

Q.      Sir, how do you know that?

A.      Because if there's anything that we have seen over and over is this signature.  It came off of Worthpoint.  It's the only signature or only picture that survived on Worthpoint.  Why, I don't know.  That's how we know.  It just was there.

Q.      Let me just follow up with you on that.  So as far as you know, you testified that Worthpoint doesn't sell any paintings, correct?

A.      Correct.

EXHIBIT # 32



Plaintiff's Evidence 000346

More Counterfeit Items

Gmail - Past Appraisal Letter

Plaintiff's Evidence 000579

 Gmail

Annamarie Trombetta <artofannamarie@gmail.com>

## Past Appraisal Letter

**Abigail Hartmann** <appraisersaha@gmail.com>                    Mon, Mar 28, 2022 at 2:46 PM
To: artofannamarie@gmail.com

Hi Annamarie,
I am reaching out today to let you know I had a chance to look through your file and did not see an ASKART bio, I believe you were interested in it for possible lawsuit purposes. If you would like, Gayle can get back to you in late April or early May to discuss your options further regarding your past appraisal letter. Your files will surely not be destroyed in the meantime. We are currently working to meet tax deadlines for other clients and appreciate your patience.

Molly Gallo
Client Services
Abigail Hartmann Associates



EXHIBIT #33 A

**SA2473**

*Evidence Plaintiff 323*
*Confidential*



Gmail - Annamarie Trombetta---Thank you

Annamarie Trombetta <artofannamarie@gmail.com>

## Annamarie Trombetta---Thank you

**Abigail Hartmann** <appraisersaha@gmail.com>                    Wed, Apr 6, 2022 at 4:12 PM
To: Annamarie Trombetta <artofannamarie@gmail.com>

Dear Annamarie Trombetta,

I am contacting you on behalf of our full appraisal firm, Abigail Hartmann Associates. I can confirm we do not have any evidence of an askART biography within your 2009 past appraisal report regarding the Staten Island ferry crash. If we are able to be of any more assistance to you in this matter, please do not hesitate to contact our Head Appraiser Gayle A. Skluzacek .

Sincerely,
Molly Gallo
Client Services
Abigail Hartmann Associates
[Quoted text hidden]

*EXHIBIT #33 B*

*Evidence Plaintiff 0003: Confidential* (handwritten)

Gmail - Question Regarding Biography Listing

 Gmail

Annamarie Trombetta <atrombettaart@gmail.com>

---

## Question Regarding Biography Listing

Annamarie Trombetta <atrombettaart@gmail.com>                    Tue, Jan 16, 2018 at 5:11 PM
To: AskART Customer Service <AskART@askart.com>

Dear Kris,

Thank you for your prompt response.

Can you provide me with the name ---contact Fan that extended my biography from my website. It was not me for certain.

I might be interested in sending additional information however it is important that I know who the source is at this time.

Regards,

Annamaire Trombetta
[Quoted text hidden]

*EXHIBIT #34* (handwritten)

**SA2475**

Evidence Plaintiff 000322
Confidential

Gmail - Question Regarding Biography Listing

## M Gmail

Annamarie Trombetta <atrombettaart@gmail.com>

## Question Regarding Biography Listing

AskART Customer Service <AskART@askart.com>                     Tue, Jan 16, 2018 at 9:24 PM
To: Annamarie Trombetta <atrombettaart@gmail.com>

Dear Annamarie,

Sorry, it has been a while and we don't have the name of the person on file.

[Quoted text hidden]

EXHIBIT
#34

Gmail - Artist Annamarie Trombetta Question Regarding my Biography

Plaintiff's Evidence 000585

7/10/20, 12:09 PM

 Gmail

Annamarie Trombetta <atrombettaart@gmail.com>

## Artist Annamarie Trombetta Question Regarding my Biography

4 messages

**Annamarie Trombetta** <atrombettaart@gmail.com>                    Tue, Jun 30, 2020 at 2:08 PM
To: AskART Customer Service <AskART@askart.com>

Dear Kris,

I am an artist and my biography is listed on ask art.

Can you send me the full Biography of my own Biography as it is Listed on ask Art as I do not have a subscription .

When I look up my name Annamarie Trombetta I only get the first few lines.

Thank you in advance for you cooperation.
Annamarie Trombetta

---

**AskART Customer Service** <AskART@askart.com>                    Tue, Jun 30, 2020 at 3:10 PM
To: "atrombettaart@gmail.com" <atrombettaart@gmail.com>

Dear Annamarie,

Your recognition on askART was most likely the result of your being included in a publication some years ago, where askART has always been pleased to help promote upcoming talented artists. Most likely one of our interns around that time posted your publicly available biography on our site, with credit to your website. Please let us know if you would prefer that your artist recognition be removed from the askART website, or alternatively, if you might wish to provide some updated information and examples of your works of art (in which case please send to images@askart.com)

Sincerely,

Kris

Biography from the Archives of askART

EXHIBIT #35 (1)

Page 96

N. NOVOCIN

point prior to, when was the first time that you communicated with her?

A.   I don't remember the exact date.  It was earlier we received a call. I'm not -- I'm pretty sure it was my wife who took the call asking to speak with the person who won the painting and somewhere along the line, I ended up being on the phone and I said I would be happy to check to see if they want to talk to you.  Now at that point I did not realize I was talking to Annamarie Trombetta.  I thought I was talking to someone named Teri Meissner.  I told them that I would check with the person.  If they wanted to talk to them, I would give them the information.  If not, I'm not free to give out the name or contact information of who bought the painting.  I checked with them.  They did not want to.  They said we love the painting, we want to keep it.  We don't want to talk to anybody about it.  I came back and said I was not going to give that painting -- the information to them.

**SA2478**

EXHIBIT #35 (2)

Page 97

N. NOVOCIN

That's what I was told over and over, you must, you must, you have got to. If you don't, I will sue you. I said fine, get a lawyer, sue me. I didn't realize that that actually would come to fruition. A little while after that, we received a demand letter asking for a sum of money. I think it was I believe 500 -- 8,000. $8,000 and then we wouldn't be sued. Give me $8,000 for damages. I carried it to another attorney, not Mr. Duff.

Q.    Let me stop you for a second. Mr. Novocin, I never want to hear what you may have said to another attorney.

A.    That's fine.

Q.    That's attorney-client privilege. I'm not allowed to ask you about that. I just want to remind you.

A.    I'm sorry. I'm rambling and I didn't need to be rambling. That should give you enough information, I guess.

Q.    Let me follow up with you on a couple of things.

A.    Sure.

EXHIBIT #35 (3)

Page 98

N. NOVOCIN

Q.    You mentioned that you originally spoke with a person who represented herself to be Teri Meissner, correct?

A.    Correct.

Q.    Was this the person who first threatened to sue you?

A.    That's the person that said you have got to or I'll sue you.

Q.    Who did you understand Miss Meissner to be?  Was she a collector, an investigator or something like that?

A.    I don't have any idea who this person was.  None.  This is five years after we had sold something and long gone. I don't know why a person was even contacting me.

Q.    Was this person Teri Meissner threatening to sue you if you don't reveal the information about the buyer or if you don't let her speak to the buyer or something else?

A.    It was about -- yeah, having contact with the buyer.  That's what she

EXHIBIT #35 (4)

Page 68

*Marie*

M. NOVOCIN

MR. BIALEK:   Join.

A.   I said already I had nothing to do with this painting, as in our profession.

Q.   But yet you declared in June and July of 2020 certain statements confirming that your husband gleaned the biography from askArt?   Yes or no.

MR. DUFF:   Objection.

Q.   Did your husband glean from askArt my biography?

A.   Haven't you already asked him that?

MR. DUFF:   Objection.   Asked and answered.

Q.   I am repeating for the very last time.

*Marie Admits Plaintiff Called Jan 10, 2017*

A.   This is like talking to you and that phone call where you demanded to know the buyer's name.

Q.   So then you admit it was me who you spoke to in the phone call; is that correct?

MR. BIALEK:   You were

Page 33

M. NOVOCIN

that it might have been Annamarie Trombetta.

Q.    So you are saying that on January 10th, although you received a phone call with the caller ID Annamarie Trombetta, that was Teri Meissner?

A.    She introduced herself as Teri Meissner.

Q.    She introduced herself as Teri Meissner? Can you elaborate, other than the name of the buyer, is there anything else that you can recall from that conversation?

MR. DUFF:    Objection.

You can answer.

Q.    What in general do you recall from that conversation?

A.    Whoever called me wanted to know where we obtained the painting and to whom we sold the painting. Trying to establish and she searched for a word. I said prominence. Then that conversation come back in that telephone call that you recorded.