**SA2942**

Confidential Plaintiff 000109   ©

# A N N A M A R I E   T R O M B E T T A
## *Plein Air Paintings: Central to Staten Island*

EXHIBIT #30D

page 2



*Tibetan Museum Mandala, 2001*

### Introduction
**by Bartholomew Bland, Senior Vice President for Collections and Exhibitions, Staten Island Institute of Arts and Sciences**

For this second installation in the Staten Island Institute's *Artists/Ideas* series, the Institute is pleased to present the work of Annamarie Trombetta, a realist painter working in the traditional academic style, who favors the rigor and spontaneity of plein air painting. Trombetta is an accomplished painter who has spent years developing her craft. Her images are elegant, refined, and accessible to the viewer. However, her use of unusual canvas structure and multi-paneled paintings that create sculptural presence, elevate her work beyond the merely pretty. Trombetta's paintings aspire to a particular kind of beauty. This in itself may be considered somewhat unusual for an artist during a period when the art world has frequently viewed the goal of beauty, in and of itself, as an insufficient justification for making serious art. This attitude was linked with a scorn for realist painting found in much of the art world during the second half of the twentieth century. However, this attitude is rapidly changing, as the much ballyhooed resurgence of realist painting rides an increasing wave of critical acceptance.

Realism is a misleading word in art, for the content of any painting is, of course, never real. Rather, it is the reality of the artist, filtered through a series of artistic conventions. Trombetta's images at first glance may appear straight forward, but each landscape is a series of conscious choices in which the artist carefully determines what she wants the viewer to "see". In an age when digital manipulation has called into the question the "reality" of even the most detailed photograph, it may be illuminating to consider Trombetta's landscapes as a series of editorial choices.

*Lighthouse Diptych* is a good example of Trombetta's work illustrating those choices. To start, the viewer should consider the format Trombetta has chosen for this work. The painting uses a traditional diptych (a two part painting, usually hinged like a book) format that was popular in Medieval and Renaissance painting. The format was considered ideal for showing dual or contrasting natures; often the format was used to display saints representing complimentary virtues. In *Lighthouse Diptych*, Trombetta has replaced the traditional representation of saints or martyrs with images of a lighthouse shown in two dramatically different lights. The sun and the encroaching storm each suggest diametric opposites.

The real subject matter of this painting, and indeed most plein air painting, is light, and Trombetta uses the "light"house as both pun and link between her implicit and explicit subject matter. That it is the same lighthouse, the viewer is left in little doubt, and at first glance they may appear to be the mirror images of one another. However, Trombetta has shifted the perspective, rotating her (and the viewer's) position around the canvas. By changing the position, Trombetta allows us to see how the "reality" of the lighthouse changes in time and space. This suggestion of the passage of time gives a sense of dynamism to an otherwise static piece. Here, Trombetta is responding to the famed series paintings by Monet, who made iconic images out of structures as modest as haystacks and as grand as Rouen Cathedral. In each case the structure depicted serves as a foil for the true subjects of the picture: atmosphere and light. Although the images are painted from different angles, Trombetta has unified the composition by allowing the sky and scenery of each panel to flow into the other. The lighthouse in the bright side of the picture is slightly larger and forward in the picture plane, allowing it to subtly dominate the composition. A nineteenth century reading of American landscape painting, most famously in the works of Thomas Cole, often showed the contrast between storm and sun, and viewers would have been quick to pick up on the suggestion of the "triumph of light" as a religious allegory.

The lighthouse is a well-known local landmark, but it has been rendered as monumental and abstract from time and place. The stong vertical thrust of the picture leaves the lighthouse constricted, and Trombetta carefully depicts the rust that suggests decay and disuse. Moreover, the lighthouse is shown in an arcadian setting that removes it from any visible body of water. Trombetta disengages the lighthouse from its utilitarian purpose and allows the viewer to contemplate the aesthetic appeal of its form and structure.

EXHIBIT #30D

Confidential Plaintiff 000110 ©

Page 3

**Annamarie Trombetta's *Plein Air* Painting**
**by Judith Whitbeck, Curator, The Chinese Scholar's Garden**
**Staten Island Botanical Garden**

Painting on site in a natural setting makes possible the representation of what a painter sees at a moment in time. Annamarie Trombetta excels in rendering architectural structures and sculptural forms in natural settings in ways that stay true to the objects themselves and yet invite one to view the object oneself. Combining enduring transitory moments in a natural setting has been a hallmark of her work.

Her paintings of landmark sites on Staten Island all strive to represent the structure in a straightforward manner, portraying a close-likeness of the structure while capturing the magical quality of light and shadow cast on, or near, the structure. Her painting of a wisteria pergola continues this trend, playing with cool shadow cast by warm light and cool light casting warm shadow. She renders the enchanting quality of ambience of light and atmosphere with the purple blossoms basking in sunlight and the frame of the pergola casting shadow on the ground.

Her series of *en plein air* paintings in New York's Central Park take a new turn, presenting other possibilities for *plein air* painting. Despite the representational aspects of these paintings and the fact that they are done on location, she has begun to re-present them as more than a scene one might encounter were one to approach the site. Geometric forms—triangles and hexagons—frame the *plein air* image, defining spaces from which the central object emerges. She selects from the scene what she wants the viewer to see. The images are presented as edited works of art.

Emphasis on appreciating abstraction within the natural world, and the play of complementary forms, textures, tones—abstract/concrete, smooth/rough, light/dark—are playfully used, but seriously presented. Within the picture frame, particular perspectives emphasize geometric arcs and triangles. She remains true to the original structure, but forces us to appreciate her work more as a personal response to the object depicted.

The triangle format frames many of her works, lending them status as icons (which in fact they have become). The format seems to function differently for each work. Endurance is the theme of including *Cleopatra's Needle*, 1999. But there is a note of irony here. The obelisk appears in soft light and as an object that has stood the long passage of time. The choice of triangular frame and the reduction of surrounding elements to highlight circles, lines, arcs—all ideal, abstract forms, plays against the weathered surface of obelisk.

The most familiar icon of Central Park is the Angel of the Waters Fountain at Bethesda Terrace. An angel bearing a lily, the symbol of purity, sets atop a series of basins. Below the angel are four figures (three of which are depicted here) representing peace, health, purity and temperance. Cropping of the image of the Bethesda Fountain to utilize the brickwork and rim of the basin moves us into the picture. By highlighting the angel, she creates for us a sincere iconic presentation of the healing quality of water. The figure of the angel seems to spring forward from the background of lush green trees, which also draw life from water. The triangular black frame also allows the artist to heighten the white tones on the bronze figures and the clarity of the healing waters.

With the Burnett Memorial Fountain, Trombetta conspicuously plays with space and time. Positioned at one end of a pool, a bronze sculpture depicts two figures: a reclining boy playing the flute and a girl standing with a bowl that functions as a birdbath. Bessie Potter Vonnoh's sculpture is believed to depict Dickon and Mary, the main characters of the children's classic, *The Secret Garden* (1909) by Frances Hodgson Burnett. Trombetta painted four versions of this sculpture, which can be arranged in sequence horizontally, vertically, or in a diamond pattern.



*Chinese Scholar's Garden*

Confidential    Plaintiff 000111 ©

EXHIBIT
#30D
page 34



*Wisteria Arbor Mandala, 1994*

Trombetta's playfulness and insistence on viewers appreciating the sculpture through time and space is clearly apparent when the hexagonal shapes are displayed in horizontal sequence. Beginning with the full view of the pond, the sculpture is viewed from behind. To explore the activity on the other side, one must walk around it. This is precisely what she does in the other three images, which also form a coherent (abstract) image focusing on the rim of the pool. By selecting high summer for her work, she also plays with the subtle blend of pinks, greens, and gray tones of the site itself.

### Plein Air Imagery / The Intention and The Intercultural Intercurrents
by Annamarie Trombetta

*"We are Born into the world of nature; our second birth is into the world of spirit"*—

Bhagavad Gita

The French term "en plein air" literally means in open air relating to outdoor daylight. In Italian the term is alfresco. This painting process was made possible by the introduction of portable metal tubes used to hold and transport the pigments, replacing pig bladders. The invention of these tubes by John Rand coupled with the scientific discoveries by chemist/scientist M. E. Chevreul, which took place in the mid 1800's, had a profound effect on the visual arts.

Color, like perspective, form and shape combines an objective scientific reality with the expansive reality of an artist's eye. It is this willingness to open the soul to the powers in nature that creates the interpretations, meaning and personal perceptions in my work. The vicissitudes of working within nature's elements, particularly the changing light has cultivated a sense of patience and understanding about the patterns of nature that I consciously choose to articulate. Each lighting condition creates a mood that reveals the true personality or sprit of the image that I attempt to preserve in time. My investment of time, emotion and patience translating colors, shapes and atmosphere yield the stylistic vision.

My inclination to work on shaped canvases led me to search for the deeper symbolic meaning in shapes. Each form of worship be it Judaic, Islamic, Hindu, Christian, Buddhist, Native American, or any other uses elemental geometric shapes to design architectonic centers of worship and also to create icons of art. The significance of shape and form is equally apparent in the world of the sciences. From the smallest atom, any form in the universe consists of a composition or an arrangement of geometric configurations. I am interested in the balancing the contrast in the knowledge equated to shape from these opposite fields.

The images featured in this exhibition encapsulate a host of visual expressions, many of which synthesize the pristine architecture of nature conversely with the nature of architectural designs. In contemplating the essence of my predilections and passion for working en Plein Air, I believe that there is and will always be an indispensable kindred force that humanity has with nature. This affinity with nature is most evidently seen in the objects, texts and architectural structures that can be perceived as tangible reminders from past civilizations that are still alive in their existence in our present world. My desire is to expand humanity's affinity with nature by creating a legacy of lyrical landscapes which are delicately saturated in symbolic interpretations and yet are concentrically referential to other cultures in the context of time,- i.e.- creating-the Perceptible Linguistics of a Verisimilitude Vision.

**SA2945**

Confidential    Plaintiff 0000112    ©

EXHIBIT #30D

Page 5



*Acesension Decesnsion, 1998*

Many of the paintings in the exhibit, including *Cleopatra's Needle*, 1999 and *Bethesda Fountain*, 2000, (painted in Central Park) as well as *Tibetan Museum Mandala*, 2001 and *Garibaldi/ Meucci -Mapping out a Museum*, (painted in Staten Island) originated from the ideas mentioned above. Selecting an image is a "love at first sight" experience. The idea to paint multiple views of the same subject as seen in *The Voorlezer House*, 2001; *The Secret Garden Hexagons*, 2000 and *Lighthouse Diptych*, 2001 harkens back to a trip to New Mexico. It is profound to learn how the Native Indians from all the Americas are connected to the earth, the spirit, and the four cardinal directions. Their beliefs resonate with Hinduism—an influential source that assisted in creating *Wisteria Arbor Mandala*, 1994. The series of petite "Poetry Paintings" was inspired by a trip to Ireland in 1991. At other times the conceptual execution for my artwork is inspired under the auspices of my dreams and draws on research related to the specific location. In my research, I discover fructifying facts that illuminate the roles of historical characters related to the subject matter in the art. In my opinion, our lives are richer due to their conscious efforts and I find their pioneering endeavors motivating and the unexpected chain of cultural coincidences delightfully amusing.

Related to my paintings are facts of interest that show the interconnectedness of people and places. The transportation of Cleopatra's Needle from Egypt to New York in the late 1880's was due to the patronage of William Henry Vanderbilt who is buried in the Vanderbilt Family Mausoleum in Moravian Cemetery in Staten Island, New York. Director Cecil B. de Mille (*The Ten Commandments*), who recalls playing near the obelisk and found it inspirational, donated plaques translating the hieroglyphs. Bethesda Fountain's sculptress Emma Stebbins became the first female in New York to receive a major public art commission and she used that opportunity to transform, via her sculpture, the traditional male angel into a female angel-the original creation of Sister Seraphim! "Edna" Klauber, also known as Jacques Marchais, was one of the first female art dealers in Manhattan and was the brilliance behind the building of The Tibetan Museum. In 1991, the Dalai Lama visited the museum to consecrate the newly conserved art commenting on the importance of the preservation of his culture via the building and the art it houses. These references are fractional reflections germinating both the futuristic spirit and the historical relevance that collectively assist in changing the world we live in.

The motivation to paint Central Park and the Garibaldi/Meucci Museum stems from the association of artists who influenced the development of each place. Contributing to my growth as a plein air artist is a group of nineteenth century Italian painters known as the Macchiaioli. This group of consanguineous artists believed that spontaneous spots of color directly painted from nature embodied the most important aspects of painting. These artists, who preceded the French Impressionists by a decade, were also involved in the unification of Italy and fought with Guiseppe Garibaldi. Their historical relevance politically and professionally inspired me to create *Garibaldi/Meucci-Mapping out a Museum*. Similar to the Macchiaioli were a group of American artists known as the Hudson River School. This group of landscape painters and their personal association with writer William Cullen Bryant captured and initiated a love for nature that eventually led to the creation of Central Park. This connection between literary and visual art is an ongoing theme in some of my Central park scenes

Confidential  Plaintiff 000113 ©

At times, as I work on a project, events will converge mystically, allowing me to envision the many facets to the nature of life. It is worth noting that the Egyptian and the Tibetan cultures both produced classic treatise entitled *The Book of the Dead*. The two philosophical texts that I read during the creation of the interrelated paintings *Cleopatra's Needle*, 1999 and *Tibetan Museum Mandala*, 2001, are about the journey of the soul in the afterlife. The concepts of rebirth and death are also synonymously relevant to each of the books and are reflected in the artwork created by these cultures. During the creation of *Cleopatra's Needle*, a serendipitous exhibition was taking place at the Metropolitan Museum of Art. I was quite surprised to learn that the exhibit on view was *Egyptian Art in the Age of the Pyramids*-a timely coincidence that was followed by the crash of Egypt Air flight 990. The following year, in search of regeneration, I embarked on painting *Bethesda Fountain*. My spirit knew where to lead me as it knew I needed healing. Bethesda refers to a biblical verse and the ancient healing pools in Jerusalem. The sculptress Stebbins intended the angel to be one of healing, relating to New York's Croton water system.

I won a grant from the Staten Island Council of the Arts to paint *Tibetan Museum Mandala*, and the scene depicted in the painting became the burial site for The Peace Vase Project. This inspiring idea, implemented by Khyentse Rinpoche, tutor to the Dalai Lama, is an attempt to restore peace, harmony and ecological well-being to the planet, and involved the planting of 6,200 Tibetan medicinal treasure vases worldwide. In contrast to this enlightening event, shortly after, came the tragedy of 9/11. The ageless concepts of death and rebirth found in the ancient text imbued a truth that was relevant to the events in the contemporary world. A memorial service at Snug Harbor Cultural Center provided an opportunity to visit the Chinese Scholar's Garden-the country's first authentic garden of it's kind. The beauty of this extraordinary structure in this bucolic setting alleviated my sadness and propelled me to set my ambitions on my new visionary image. I received an encore grant from The Staten Island Council of the Arts to paint in the garden, and the project will be completed this year. It is personally gratifying to have this exhibition at The Staten Island Institute of Arts and Sciences as it is befitting to my beliefs.



EXHIBIT #30D Page 6



*Cleopatra's Needle West, 1999*

This project is supported by an Encore Grant from the Council on the Arts & Humanities for Staten Island, with public funding from the New York State Council on the Arts. Additional support provided by Richmond County Savings Foundation, General Trademark Labels and Soho Art Materials.

The *Artists/Ideas Series* is supported by:

 JPMorganChase



State of the Arts

NYSCA

SIIAS
STATEN ISLAND
INSTITUTE
OF ARTS & SCIENCES

Cover image: *Lighthouse Diptych*, 2001

**SA2947**



June 8, 2023

**Jana S. Farmer**
Phone: 914-323-7000
Jana.farmer@wilsonelser.com

**VIA ECF**
Honorable Sarah L. Cave
United States District Court
Southern District of New York
500 Pearl St., Courtroom 18A
New York, NY 10007-1312

　　　　　Re:　　*Annamarie Trombetta v. Norb Novocin, et.al.*
　　　　　　　　Civil Action No. 18-cv-993

Dear Judge Cave:

　　　　Pursuant to Your Honor's request (See Order, ECF No. 449), the within Reply Letter on behalf of Defendant WorthPoint Corp. ("WorthPoint") seeks to preclude the untimely and insufficient expert disclosures of Dr. Scelsa, served on February 16, 2023, and Ms. Skluzacek, served on February 22, 2023. As evidenced by her Letter in Opposition (ECF No. 493), Ms. Trombetta cannot justify the over two-month delay in serving these expert disclosures and, therefore, must be precluded from relying on these experts and reports in her motions for summary judgment and in the event of trial.

　　　　Plaintiff's opposition fails to address, or even refute, WorthPoint's timeline of the events. Specifically, the Opposition fails to excuse the neglect of Plaintiff to timely file her expert disclosures. Rather, Plaintiff, again, attributes the two-month delay in producing the reports to "Defendants delays and disruptions". Plaintiff cites three discovery disputes which apparently caused her to submit her expert reports two months after the Court-Ordered deadline: 1) a February 1, 2022 Settlement Letter; 2) Discovery Responses produced by WorthPoint in April of 2022; and, 3) the one-month adjournment of her July 2022 deposition. Plaintiff fails to account for the months of September, October, November and December, where she was afforded an opportunity to confer with her experts and produce an appropriate disclosure.

　　　　Given the extensive briefing on the issue and in the interests of judicial economy, WorthPoint will not belabor the issue. WorthPoint therefore expressly incorporates all of its prior arguments set forth in ECF Nos. 360, 374, 383, 403-405, 462, 482- 484, and 494,  as if fully set forth herein. Simply stated, Plaintiff's experts do not meet the procedural or substantive preconditions to being able to provide expert testimony in this case and they should be precluded. Furthermore, as already concluded by Your Honor, expert reports were due on December 19, 2023, and Plaintiff failed to offer any good cause for extending the expert report deadlines or substantial

150 East 42nd Street  •  New York, NY 10017  •  p 212.490.3000  •  f 212.490.3038

Alabama • Albany • Atlanta • Austin • Baltimore • Beaumont • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Hartford • Houston
Indiana • Kentucky • Las Vegas • London • Los Angeles • Miami • Michigan • Milwaukee • Mississippi • Missouri • Nashville • New Jersey • New Orleans
New York • Orlando • Philadelphia • Phoenix • San Diego • San Francisco • Sarasota • Stamford • Virginia • Washington, DC • Wellington • White Plains

**wilsonelser.com**

282949176v.1
282949176v.1

**SA2948**



- 2 -

justification for her untimely disclosures. *See*, ECF Nos. 375, 384, 387.

Plaintiff cannot offer any reasonable excuse for the untimely delay. The untimely disclosure can only be attributed to Plaintiff's willful disregard of Your Honor's deadlines. Your Honor extended the deadlines on numerous occasions to appease Ms. Trombetta as a pro se Plaintiff. Despite her attempts, Ms. Trombetta has failed to proffer one credible reason for her delay. Furthermore, the delay cannot be attributed to her status as a pro se Plaintiff as WorthPoint advised Ms. Trombetta of the Fed. R. Civ. P. 26 requirements on several occasions, and Plaintiff represented to this Court that she "understood" the requirements for a proper expert disclosure. As such, WorthPoint respectfully requests that the expert disclosures of Dr. Scelsa and Ms. Skluzacek be precluded.

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

*Jana Farmer*
Jana S. Farmer, Esq.

cc:     All counsel
        Annamarie Trombetta

282949176v.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNAMARIE TROMBETTA,<br><br>                              Plaintiff,<br><br>        -v-<br><br><br>NORB NOVOCIN, <u>et</u> <u>al.</u>,<br><br>                              Defendants. | |

CIVIL ACTION NO.: 18 Civ. 993 (LTS) (SLC)

**<u>OPINION & ORDER</u>**

**SARAH L. CAVE,** United States Magistrate Judge:

## I. <u>INTRODUCTION</u>

Fact discovery in this action closed on December 19, 2022, and expert discovery closed on March 1, 2023.  (ECF Nos. 340; 361).  Now before the Court is the motion of Defendant WorthPoint Corp. ("WorthPoint") to preclude as "untimely and insufficient" the expert disclosures of <u>pro</u> <u>se</u> Plaintiff Annamarie Trombetta ("Ms. Trombetta").  (ECF Nos. 462 (the "Motion"); 499 (the "Reply")).[1]  Ms. Trombetta has opposed the Motion.  (ECF No. 493 (the "Opposition")).[2]  For the reasons set forth below, the Motion is GRANTED.

---

[1] Defendants Norb and Marie Novocin (the "Novocins"), and Estate Auctions Inc. (with the Novocins, the "EAI Defendants," and with WorthPoint, "Defendants") have not joined in the Motion.  William Seippel was, but no longer is, a Defendant in this action.  (ECF Nos. 187 at 25; 357).

[2] After WorthPoint submitted the Reply, Ms. Trombetta submitted two additional letters.  (ECF Nos. 500; 501; 502).  Ms. Trombetta has previously been cautioned not to file such unauthorized sur-replies without prior permission, and accordingly, the Court has not considered their contents in deciding the Motion, nor would their contents alter the Court's ruling.  See Trombetta v. Novocin, No. 18 Civ. 993 (RA) (SLC), 2021 WL 6052198, at *13 (S.D.N.Y. Dec. 21, 2021) ("<u>Trombetta VII</u>") (granting motion to strike Ms. Trombetta's unauthorized sur-replies and "remind[ing her] that moving forward, she must seek the Court's permission before filing documents she does not otherwise have permission to file under the Federal Rules, S.D.N.Y.'s local rules, or this Court's individual rules").

## II.  <u>BACKGROUND</u>

In this action involving claims under the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 <u>et</u> <u>seq.</u> ("DMCA"), and the Visual Artists Rights Act, Pub. L. No. 101–650 (tit. VI), 104 Stat. 5089, 5128–33 (1990) ("VARA"), the factual background and procedural history are described in numerous prior decisions of the Honorable Ronnie Abrams[3] and the undersigned and are incorporated by reference.  See <u>Trombetta v. Novocin</u>, No. 18 Civ. 993 (RA) (SLC), 2023 WL 2575242 (S.D.N.Y.  Mar. 20, 2023) ("<u>Trombetta X</u>") (denying without prejudice WorthPoint's motion to determine fees to which Ms. Trombetta's expert, Patrick O'Leary ("Mr. O'Leary"), was entitled for his deposition); <u>Trombetta v. Novocin</u>, No. 18 Civ. 993 (RA) (SLC), 2023 WL 2388722 (S.D.N.Y.  Mar. 7, 2023) ("<u>Trombetta IX</u>") (denying Ms. Trombetta's motion to reopen fact discovery); <u>Trombetta v. Novocin</u>, No. 18 Civ. 993 (RA), 2022 WL 280986 (S.D.N.Y. Jan. 31, 2022) ("<u>Trombetta VIII</u>") (denying Ms. Trombetta's motion for reconsideration of order granting Defendants' motion to strike her sur-reply in opposition to motion to dismiss); <u>Trombetta VII</u>, 2021 WL 6052198 (granting in part and denying in part WorthPoint Defendants' motion to dismiss); <u>Trombetta v. Novocin</u>, 18 Civ. 993 (RA) (SLC), 2021 WL 3829803 (S.D.N.Y. Aug. 27, 2021) ("<u>Trombetta VI</u>") (denying Ms. Trombetta's motion to recover costs of service on William Seippel and WorthPoint Defendants); <u>Trombetta v. Novocin</u>, No. 18 Civ. 993 (RA) (SLC), 2021 WL 1259740 (S.D.N.Y. Apr. 6, 2021) ("<u>Trombetta V</u>") (denying Ms. Trombetta's motion for sanctions against the EAI Defendants); <u>Trombetta v. Novocin</u>, No. 18 Civ. 993 (RA), 2020 WL 7053301 (S.D.N.Y. Nov. 24, 2020) ("<u>Trombetta IV</u>") (denying WorthPoint's motions to dismiss under Federal Rules of Civil

---

[3] On June 15, 2023, this action was reassigned to the Honorable Laura Taylor Swain, Chief Judge of the Southern District of New York.

Procedure 12(b)(2), 12(b)(4), and 12(b)(5) and to quash summons, and granting Ms. Trombetta

60 days to serve WorthPoint); Trombetta v. Novocin, No. 18 Civ. 993 (RA) (SLC), 2020 WL 6365171

(S.D.N.Y. Oct. 29, 2020) ("Trombetta III") (denying without prejudice the motion to require Ms.

Trombetta to post bond); Trombetta v. Novocin, No. 18 Civ. 993 (RA) (SLC), 2020 WL 1304120

(S.D.N.Y. Mar. 19, 2020) ("Trombetta II") (granting in part and denying in part Ms. Trombetta's

motion for leave to amend); Trombetta v. Novocin, 414 F. Supp. 3d 625 (S.D.N.Y. 2019)

("Trombetta I") (granting EAI Defendants' motion to dismiss Ms. Trombetta's claims under N.Y.

Civ. Rts. L. §§ 50–51; under New York Artists' Authorship Rights Act, N.Y. Arts & Cult. Aff.

L. § 14.03 ("NYAARA"); and for trademark infringement and denying motion to dismiss VARA

claim).[4]  The Court summarizes the background necessary to analyze the Motion.

**A.  Ms. Trombetta's Claims**

Ms. Trombetta alleges that the EAI Defendants advertised and sold a 1972 painting (the

"Painting") that they falsely claimed Ms. Trombetta had painted, and that WorthPoint

contributed to her harm by reposting information about the sale misattributing the Painting to

her.  See Trombetta IV, 2020 WL 7053301, at *1.  Ms. Trombetta's amended complaint (the

"FAC") asserted numerous claims, including:  (i) under VARA against the EAI Defendants; (ii) for

direct copyright infringement against the EAI Defendants; (iii) for contributory copyright

infringement against WorthPoint; and (iv) under the DMCA §§ 1202(a) and (b) against

Defendants.  See Trombetta II, 2020 WL 1304120, at *7.  (See ECF Nos. 36; 40 at 13–14).

In December 2022, Ms. Trombetta filed a motion for leave to amend the FAC to assert,

inter alia, claims for fraud, emotional distress, and permanent injunctive relief.  (ECF No. 341 (the

---

[4] All case citations omit internal citations and quotation marks unless otherwise indicated.

"MTA")).  After Defendants agreed to withhold their objections to Ms. Trombetta's amendments until summary judgment (see ECF Nos. 360; 362), the Court granted the MTA and deemed ECF No. 348-1 the operative complaint (ECF No. 348-1 (the "SAC")).  (ECF No. 366).  In the SAC, Ms. Trombetta added three claims:  (i) intentional infliction of emotional distress (the "Emotional Distress Claim"); (ii) identity theft under 18 U.S.C. § 1028 (the "Identity Theft Claim"); and (iii) a claim under the NYAARA (the "NYAARA Claim").  (ECF No. 348-1 at 18).[5]  On February 16, 2023, Defendants filed answers to the SAC.  (ECF Nos. 371–72 (the "Answers")).

**B.  Fact Discovery**

The parties' deadline to complete fact discovery in this action was extended at least six times.  (ECF Nos. 195; 234; 252; 268; 291; 302; 308).  On December 15, 2022, Defendants certified that fact discovery was complete (ECF No. 336), and on December 16, 2022, Ms. Trombetta notified the Court that, apart from her "desire for the PDF file for the Ebay 2012 sale of the 1972 Original Oil" (the "Receipt"), her "[f]act [d]iscovery [was] complete."  (ECF No. 338).  The Court deemed Defendants' production as to the Receipt sufficient (see ECF Nos. 327; 343), and on December 19, 2022, deemed fact discovery closed.  (ECF No. 340; see ECF No. 375 (reiterating that fact discovery closed on December 19, 2022)).  On March 7, 2023, the Court denied Ms. Trombetta's request to reopen fact discovery.  Trombetta IX, 2023 WL 2388722, at *4–5.  (See ECF No. 384).

---

[5] Ms. Trombetta reasserted the NYAARA Claim even though Judge Abrams dismissed it in Trombetta I. 414 F. Supp. 3d at 634.

**SA2953**

### C.  Expert Discovery

On September 12, 2022, Ms. Trombetta provided to Defendants' counsel the resumes of Mr. O'Leary and Gayle Skluzacek ("Ms. Skluzacek"), and noted that she was "awaiting confirmation" on two additional experts, Dan Caropreso ("Mr. Caropreso") and Dr. Joseph V. Scelsa ("Dr. Scelsa").  (ECF No. 462-5).  On September 15, 2022, Ms. Trombetta produced a resume for Dr. Scelsa, and noted that she was "still waiting to hear" from Peter Trippi and Mr. Caropreso.  (ECF No. 462-6).  On September 19, 2022, and again on September 28, 2022, Defendants' counsel asked Ms. Trombetta to confirm whether she intended to proffer as experts Dr. Scelsa, Mr. O'Leary, and Ms. Skluzacek, but Ms. Trombetta did not respond.  (ECF Nos. 462; 462-7).

During a discovery conference on November 23, 2022—with more than three weeks left in the expert discovery period—Ms. Trombetta stated that she had three experts "waiting in the wings," and the Court reminded her of the deadline to "provide to the defendants all the information about the expert that the rules require."  (ECF No. 328 at 41).  When Ms. Trombetta noted that she had provided Defendants' counsel with the experts' resumes, the Court explained:

> THE COURT:  All right, well you need to look at Rule 26[,] which talks about expert disclosures, and that tells you the information about the experts that needs to be disclosed.  You need to comply with those requirements even though you're a <u>pro se</u> plaintiff.  Just forwarding their resumes is not sufficient.
> THE PLAINTIFF:  Understood.

(ECF No. 328 at 41–42).  Defendants have also notified Ms. Trombetta of the Rule 26(a)(2) deadlines and requirements on several occasions.  (ECF Nos. 462-1; 462-4; <u>see also</u> ECF No. 267 (noting Ms. Trombetta's noncompliance with Rule 26(a)(2)(B)).

Expert discovery was also extended several times.  (See ECF Nos. 195; 234; 291; 308; 333; see also ECF Nos. 361; 367; 387).  The final deadline for Ms. Trombetta to serve her expert disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2) was December 19, 2022; for Defendants to serve their expert disclosures was January 19, 2023; and all expert depositions were to be completed by February 7, 2023.  (ECF No. 333; see ECF No. 340 (denying Ms. Trombetta's request to extend expert deadlines)).  At the parties' request, the Court further extended the deadline to exchange rebuttal expert disclosures to February 7, 2023, and stated that "[a]ll discovery, including expert discovery, shall be completed by Wednesday, March 1, 2023."  (ECF No. 361 (the "Jan. 24 Order"); see ECF Nos. 364; 367).  Following letters from the parties (ECF Nos. 373–74), on February 23, 2023, the Court reminded the parties that, "[t]o the extent that any party served their experts' reports after the[] deadlines [set forth above], they [have] failed to comply with the Court's Orders (ECF Nos. 361; 367), and their experts' reports are subject to being stricken."  (ECF No. 375 at 1 (the "Feb. 23 Order")).  The Court also reminded the parties that "[a]ny party who fails to make their expert available for deposition before [the March 1, 2023] deadline, absent a showing of good cause, risks having such expert precluded."  (Id. at 2).

After denying Ms. Trombetta's motion to reopen fact discovery, the Court explained that, as of March 7, 2023, it "deemed all discovery—fact and expert—closed," and set a deadline of April 7, 2023 for the parties' to file motions for summary judgment and/or "to proffer or exclude a parties' experts."  Trombetta IV, 2023 WL 2388722, at *5.[6]  In an order dated March 10, 2023,

---

[6] At the parties' request, Judge Abrams later extended this deadline by one week, i.e., until April 14, 2023 (ECF Nos. 393; 394; 395; 402), and then at Ms. Trombetta's request, by an additional three days, to April 17, 2023.  (ECF Nos. 413; 415; 416).

the Court reiterated that all discovery was closed, and explained that, to the extent Ms. Trombetta was seeking "permission to serve any expert reports past the deadlines the Court has set, of which [she] had adequate notice, that request [was] DENIED."  (ECF No. 387 at 1 (citing ECF Nos. 333; 340; 361; 364; 367; 375)).

The Court subsequently denied Ms. Trombetta's demand that Defendants pay for one of her experts, Mr. O'Leary, to appear for a deposition, and ordered that he appear as noticed on February 28, 2023.  See Trombetta X, 2023 WL 2575242, at *2.  (See ECF No. 378).

### D.  Other Pending Motions

On April 11, 2023, WorthPoint filed a motion in limine seeking, inter alia, to preclude the testimony and expert reports of Dr. Scelsa and Ms. Skluzacek.  (ECF No. 403 (the "Daubert Motion")).[7]  On April 17, 2023, the parties filed competing motions for summary judgment.  (ECF Nos. 418; 423 (collectively, the "MSJs," and individually, an "MSJ")).

On April 19, 2023—after she filed her MSJ—Ms. Trombetta filed motions to proffer the testimony of Dr. Scelsa and Ms. Skluzacek in support of summary judgment and at trial (ECF Nos. 429-31; 440; 442; 444; 448 (together, the "Proffers")), which WorthPoint has opposed on Rule 37(c)(1) grounds.  (ECF Nos. 483; 484).

Attached to the Proffer for Ms. Skluzacek is a letter from Ms. Skluzacek dated February 21, 2023—more than two months after the December 19, 2022 deadline for Ms. Trombetta's expert disclosures—stating:

> Annamarie Trombetta had asked me to provide an expert witness report to support her case.  Unfortunately, I was not able to provide this document until the New Year due to my obligations to other clients.  I had a medical emergency in my immediate family last week which further delayed the completion of my report

---

[7] Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

for Ms. Trombetta. This sequence of events should not reflect upon nor be considered neglect on the part of Ms. Trombetta.

(ECF Nos. 429 at 34; 430-1 at 2). In her report dated February 21, 2023, Ms. Skluzacek, an art historian and professional art appraiser, offers opinions on the damage that Ms. Trombetta has suffered due to Defendants' alleged "unwarranted association" of Ms. Trombetta with the Painting. (ECF No. 430-1 at 3–10 ("Ms. Skluzacek's Report")).

Attached to the Proffer for Dr. Scelsa, a licensed mental health counselor and Director of the Italian American Museum, is his report, dated February 16, 2023—also nearly two months after Ms. Trombetta's deadline—in which he offers his opinions on the damages to Ms. Trombetta, an "Italian American contemporary artist," from Defendants' false description of her as the painter of the Painting. (ECF No. 440-1 at 2–14 ("Dr. Scelsa's Report")).

The Daubert Motion, the Proffers, and the MSJs are currently pending before Chief Judge Swain.

**E.    The Motion**

On April 18, 2023, WorthPoint submitted a letter asking the Court to reject Ms. Trombetta's "untimely expert disclosures." (ECF No. 436). On April 20, 2023, the Court set a briefing schedule for the Motion. (ECF No. 449). On May 11, 2023, WorthPoint filed the Motion, which seeks to exclude under Rule 37(c)(1) Dr. Scelsa and Ms. Skluzacek's "untimely and insufficient expert disclosures." (ECF No. 462 at 1). On June 1, 2023, Ms. Trombetta filed the Opposition (ECF No. 493), and on June 8, 2023, WorthPoint filed the Reply. (ECF No. 499).

### III. DISCUSSION

**A. Legal Standard**

Under Federal Rule of Civil Procedure 26(a)(2), an expert witness must prepare, on the schedule set by the court, a written report that contains, inter alia, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B), (a)(3)(B), (a)(4). A party who fails to make the disclosures required under Rule 26(a)(2)(B) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

When analyzing a motion to preclude under Rule 37(c)(1), courts within the Second Circuit consider:

> (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness[]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006). "None of these factors are dispositive and each factor is to be balanced against the others in making the determination." Lab Crafters, Inc. v. Flow Safe, Inc., No. 03 Civ. 4025 (SJF) (ETB), 2007 WL 7034303, at *6 (E.D.N.Y. Oct. 26, 2007); see Softel, Inc. v. Dragon Med. & Sci. Commcn's, Inc., 118 F.3d 955, 961–63 (2d Cir. 1997) (considering and balancing the four factors). In the Rule 37(c)(1) context, "[s]ubstantial justification means justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." Vioni v. Providence Inv. Mgmt., LLC, No. 08 Civ. 2950 (PAC), 2017 WL 881841, at *3 (S.D.N.Y. Mar. 6, 2017). Preclusion under Rule 37(c)(1) "does not require a showing of bad faith." United States v. Acquest Transit LLC, No. 09 Civ. 55S (WMS) (LGF), 2018 WL 3861612, at *12 (W.D.N.Y. Aug. 14,

9

2018), adopted as modified in part 2020 WL 3042673 (W.D.N.Y. June 4, 2020) (citing Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006)).

A "district court has wide discretion in punishing failure to conform to the rules of discovery." Outley v. City of New York, 837 F.2d 587, 590 (2d Cir. 1988). "Preclusion for violation of Rule 26(a) is not mandatory," and "[c]ourts in this Circuit have recognized that preclusion is a harsh sanction." Conte v. Newsday, Inc., No. 06 Civ. 4859 (JFB) (ETB), 2011 WL 2671216, at *1 (E.D.N.Y. July 7, 2011) (collecting cases); see Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990) (explaining that preclusion is warranted "only in extreme situations"). Instead, preclusion is discretionary, even if the district court "finds that there is no substantial justification and the failure to disclose is not harmless." Design Strategy, 469 F.3d at 297; see Redmond v. Teledyne Landis Mach., No. 15 Civ. 646 (MAD) (ATB), 2017 WL 2465173, at *6 (N.D.N.Y. June 7, 2017) (declining to preclude expert report even though plaintiff's failure to comply with Rule 26(a) "was not substantially justified or harmless"). Before granting "the extreme sanction of preclusion," the district court "should inquire more fully into the actual difficulties which the violations causes, and must consider less drastic responses." Outley, 837 F.2d at 591.

**B. Application**

In the Motion, WorthPoint argues that each of the Patterson factors weigh in favor of precluding Ms. Trombetta from using Dr. Scelsa and Ms. Skluzacek as experts and denying any extension of the expert discovery deadline. (ECF No. 462 at 4). Ms. Trombetta argues in her Opposition that the late production of the Dr. Scelsa's Report and Ms. Skluzacek's Report "has to do with Defendants['] delays and disruptions causing [her] to address unexpected and numerous problems on a weekly [basis,] and as the months unfurled, it was on a daily basis." (ECF

10

No. 493 at 1).  In the Reply, WorthPoint observes that Ms. Trombetta has not disputed the timeline of events or deadlines in the Court's orders and argues that she has failed to "offer any reasonable excuse for the untimely delay" in serving her expert disclosures for Dr. Scelsa and Ms. Skluzacek.  (ECF No. 499 at 1–2).

The Court considers each of the Patterson factors below.  Patterson, 440 F.3d at 117.

### 1.  Ms. Trombetta's explanation for the delay

As the justification for her delayed production of the reports of Dr. Scelsa and Ms. Skluzacek, Ms. Trombetta points to the time she expended to:  (i) write, and rewrite, a settlement letter in February 2022; (ii) press Defendants for their discovery responses in April 2022; (iii) prepare for her rescheduled deposition and respond to a summons and complaint served by Seippel in Georgia in July 2022; and (iv) attempt to access emails WorthPoint produced in September 2022, all of which caused her "emotional trauma."  (ECF No. 493 at 1–2).  WorthPoint correctly points out, however, that Ms. Trombetta fails to account for the months of October, November, and December 2022, which "afforded an opportunity to confer with her experts and produce an appropriate disclosure."  (ECF No. 499 at 1).

The Court accepts Ms. Trombetta's representation that the four disputes she describes preoccupied her attention and resources between February 2022 and September 2022 and made it difficult for her to focus on expert discovery during that time.  After these disputes, however, Ms. Trombetta still had almost three months—October, November, and more than half of December 2022—to confer with her experts and prepare the disclosures that Rule 26(a)(2)(B) requires.  Despite that period of time, Dr. Scelsa and Ms. Skluzacek did not sign their reports until February 16, 2023  and  February 21, 2023, respectively (ECF Nos.  430-1 at 2, 10;  440-1 at 14),

11

approximately two months after the December 19, 2022 deadline.  (ECF Nos. 333; see ECF Nos. 340; 364; 367; 375).  Ms. Trombetta offers no explanation for this two-month delay, let alone the substantial justification required to avoid preclusion under Rule 37(c)(1).  See Abraham v. Leigh, 471 F. Supp. 3d 540, 555 (S.D.N.Y. 2020) (precluding expert reports that "were not signed until nearly five months after the time for expert discovery had concluded" and plaintiff failed to provide substantial justification for the delay); Alexander v. Fidalgo, No. 10 Civ. 8587 (AJN), 2013 WL 12316346, at *3 (S.D.N.Y. Apr. 10, 2013) (precluding expert who failed to examine plaintiffs until "almost two months after the court-ordered discovery deadline and after [d]efendants[] had already filed their motions for summary judgment").

While the Court recognizes that Ms. Trombetta provided Defendants with the resumes of Dr. Scelsa and Ms. Skluzacek during the expert discovery period, doing so did not satisfy the requirements of Rule 26(a)(2)(B).  See In re Gen'l Motors LLC Ignition Switch Litig., No. 20 Civ. 3732 (JMF), 2022 WL 17551571, at *3 (S.D.N.Y. Dec. 9, 2022) (precluding expert whose report "lacks nearly everything required of an expert witness report by Rule 26(a)(2)); Bermudez v. City of New York, No. 15 Civ. 3240 (KAM) (RLM), 2018 WL 6727537, at *2 (E.D.N.Y. Dec. 21, 2018) (precluding report and testimony of expert whose report attached his resume, list of prior cases, and compensation, but did not satisfy remaining requirements of Rule 26(a)(2)(B)(i)); Vona v. Schindler Elev. Corp. Mgmt., No. 05 Civ. 131 (SR), 2009 WL 2152309, at *8 (W.D.N.Y. July 14, 2009) (precluding expert where plaintiffs' untimely submission of a one-page affidavit and resume was "woefully insufficient to satisfy the requirements set forth in Fed. R. Civ. P. 26(a)(2)"); Castaldi v. Land Rover N. Am., Inc., No. 06 Civ. 1008 (JG) (KAM), 2007 WL 4165283, at *5 (E.D.N.Y. Nov. 21, 2007) (precluding experts whose reports did not satisfy Rule 26(a)(2)), aff'd, 363 F. App'x

761 (2d Cir. 2009) (summary order); see also Robinson v. Suffolk Cnty. Police Dep't, 544 F. App'x

29, 32 (2d Cir. 2013) (summary order) (holding that district court did not abuse its discretion in

precluding under Rule 37(c)(1) expert report that "was insufficiently detailed" and thus did not

meet requirements of Rule 26(a)(2)(B)).

In addition, although Ms. Trombetta is a pro se litigant, she cannot dispute that she was

aware of and understood the requirements of Rule 26(a)(2)(B) and her obligation to fulfill them.

See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam) (explaining

that pro se litigants are "not exempt . . . from compliance with the relevant rules of procedural

and substantive law").  By no later than August 8, 2022, Ms. Trombetta was made aware of the

information about her experts that Rule 26(a)(2) required her to provide to Defendants.  (ECF

No. 462-4 at 1–2).  On that date, WorthPoint sent Ms. Trombetta an email that quoted Rule

26(a)(2), as well as Federal Rules of Evidence 701, 702, 703, and 705, and reminded her that, to

present a witness as an expert at trial, she:

> must make an expert disclosure . . . in the form of a written report prepared and
> signed by each expert and which contains the following information:  a complete
> statement of all opinions to be expressed and the basis and reasons therefor; the
> data or other information considered by the witness in forming the opinions; any
> exhibits to be used as a summary or of or support for the opinions; the
> qualifications of the witness, including a list of all publications authored by the
> witness within the preceding ten years; the compensation to be paid for the study
> and testimony; and a listing of any other cases in which the witness has testified
> as an expert at trial or by deposition within the preceding four years.

(Id. at 2).  See Fed. R. Civ. P. 26(a)(2).  Despite being advised of the requirements of

Rule 26(a)(2)(B), Ms. Trombetta at that time had only provided Defendants with resumes for Dr.

Scelsa and Ms. Skluzacek and did not respond to their inquiries seeking confirmation whether

she intended to proffer them as experts.  (ECF Nos. 462; 462-7).  On November 23, 2022—with

just under one month left before the December 19, 2022 deadline—the Court also advised Ms. Trombetta of her obligations under Rule 26(a)(2), with which she "need[ed] to comply . . . even though [she is] a pro se plaintiff."  (ECF No. 328 at 41–42).  When the Court instructed her that "[j]ust forwarding their resumes is not sufficient," Ms. Trombetta acknowledged that she "[u]nderstood," and neither requested an extension of the December 19, 2022 deadline nor gave any indication that she might not meet it due to her experts' unavailability or for any other reason.  (Id. at 42).

The Court therefore finds that Ms. Trombetta has failed to provide a substantial justification for her failure to comply with the requirements of Rule 26(a)(2)(B) as to Dr. Scelsa and Ms. Skluzacek before the December 19, 2022 deadline.  The first Patterson factor therefore weighs in favor of preclusion.

### 2. The importance of the testimony of Dr. Scelsa and Ms. Skluzacek

As noted above, Ms. Trombetta intends to offer the testimony of Dr. Scelsa and Ms. Skluzacek to support her claimed damages resulting from Defendants' alleged misattribution of the Painting.  (ECF Nos. 430-1; 440-1).  Although the reports and testimony of Dr. Scelsa and Ms. Skluzacek could be relevant to damages,[8] expert testimony is not necessarily required to substantiate her damages, assuming she first proves Defendants' liability for the Emotional Distress and Identity Theft Claims.  See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 528 F. Supp. 2d 303, 320 (S.D.N.Y. 2007) (noting that "expert testimony on emotional distress is not

---

[8] The Court makes no finding as to whether Dr. Scelsa's Report and Ms. Skluzacek's Report contain all the disclosures required under Rule 26(a)(2)(B) or whether either is qualified to serve as an expert under Daubert and FRE 702.  Defendants have raised various challenges to Dr. Scelsa and Ms. Skluzacek in the Daubert Motion, which is pending before Chief Judge Swain.  (ECF No. 403).

required to prove [such] claims"); see also Green v. Mattingly, No. 07 Civ. 1790 (ENV), 2010 WL 11626861, at *2 (E.D.N.Y. Dec. 15, 2010) (noting that expert testimony was not required to prove emotional distress damages); Tehan v. Sacred Heart Univ., No. 06 Civ. 267 (PCD), 2008 WL 11417097, at *2–3 (D. Conn. Oct. 31, 2008) (rejecting argument that expert testimony was required to prove emotional distress damages). Thus, at most, the second Patterson factor weighs slightly in favor of Ms. Trombetta.

### 3. Prejudice and possibility of continuance

The Court considers the third and fourth Patterson factors together. See Scalpi v. Amorim, No. 14 Civ. 2126 (KMK), 2018 WL 1606002, at *14 (S.D.N.Y. Mar. 29, 2018) (considering third and fourth factors together). Noting that Ms. Trombetta did not serve Dr. Scelsa and Ms. Skluzacek's reports until after the MSJs and Daubert Motions were filed, WorthPoint argues that it has been prejudiced. (ECF No. 462 at 4). WorthPoint adds that reopening discovery at this stage—after all discovery has been closed since March 2023—would result in additional litigation costs and "unnecessary and irrelevant discovery." (Id.)

The Court agrees that Ms. Trombetta's delay has prejudiced WorthPoint by failing to serve the reports of Dr. Scelsa and Ms. Skluzacek until after WorthPoint filed its MSJ. See Scalpi, 2018 WL 1606002, at *14 (precluding expert report where plaintiff "had already received an extension of time to complete expert discovery" and did not submit expert's report until after defendant moved for summary judgment); Alexander, 2013 WL 12316346, at *3 (precluding expert where plaintiffs' disclosure of expert's report after defendants had moved for summary judgment was "not harmless"); cf. Redmond, 2017 WL 2465173, at *6 (declining to preclude expert report where defendants "did receive the report well in advance of moving for summary judgment").

15

Although Chief Judge Swain has not yet set a trial date, to reopen expert discovery at this late stage, after the Court extended the deadlines several times and deemed all discovery closed (see § II.C, supra), would further prejudice WorthPoint and unnecessarily delay resolution of this action.  See Scalpi, 2018 WL 1606002, at *14 (declining to reopen discovery and precluding expert report in case that had been pending for over four years and in which discovery had been closed for several months); In re Bear Stearns Cos. Secs., Deriv. & ERISA Litig., 263 F. Supp. 3d 446, 452 (S.D.N.Y. 2017) (precluding delayed supplemental expert report because "[a]lthough a continuance would be possible, this case has been litigated since 2009, trial is now mere months away, and allowing deadlines to slip 'result[s] in the backup of other cases and eventual scheduling chaos as a series of bottlenecks builds'") (quoting Softel, 118 F.3d at 962–63).  The third and fourth Patterson factors therefore weigh in favor of preclusion.

\*        \*        \*

Accordingly, the Court finds that Ms. Trombetta's disclosures as to Dr. Scelsa and Ms. Skluzacek during the expert discovery period did not satisfy Rule 26(a)(2), and that at least three out of the four Patterson factors weigh in favor of preclusion of their untimely disclosed reports, as well as any testimony they might have offered.  Notwithstanding Ms. Trombetta's pro se status, she was required to comply with the Court's deadlines, which were extended numerous times, and the requirements of Rule 26(a)(2)(B), which she understood.  See Robinson, 544 F. App'x at 32 (affirming preclusion of pro se plaintiff's expert report under Rule 37(c)(1)).  Under these circumstances, the Court declines to reopen discovery and precludes Ms. Trombetta from relying on the reports and testimony of Dr. Scelsa and Ms. Skluzacek pursuant to Rule 37(c)(1).

**SA2965**

## IV.  CONCLUSION

For the reasons set forth above, the Motion is GRANTED and, pursuant to Federal Rule of Civil Procedure 37(c)(1), Ms. Trombetta is PRECLUDED from relying on the reports and/or testimony of Dr. Scelsa and Ms. Skluzacek.

The Clerk of the Court is respectfully directed to (i) close ECF No. 462, and (ii) mail a copy of this Opinion & Order to Ms. Trombetta at the address below.


Dated:        New York, New York
              June 22, 2023


                              SO ORDERED.

                              _____
                              SARAH L. CAVE
                              **United States Magistrate Judge**


Mail To:      Annamarie Trombetta
              175 East 96th Street
              Apt. 12R
              New York, New York  10128

17

**SA2966**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ANNAMARIE TROMBETTA,

       Plaintiff,

    -v-                               No.  18-CV-993-LTS-SLC

NORB NOVOCIN, MARIE NOVOCIN,
ESTATE AUCTIONS, INC., AND
WORTHPOINT CORPORATION                  ORDER

       Defendant.

--------------------------------------------------------x

       The Court has reviewed the parties' submissions in docket entry nos. 510, 511, 512, and 513.  To the extent that Plaintiff requests expedited ruling on the pending motions concerning the admissibility of testimony from her proposed expert witnesses at trial, that request is denied.   Those motions (docket entry nos. 400, 403, and 429 (the "Evidentiary Motions")) shall be considered in the first instance, if at all, as relevant to the pending motions for summary judgment.  As to Defendant's request that the Court not consider allegations contained within Plaintiff's letter at docket entry no. 510 in resolving the Evidentiary Motions, that request is granted, as Plaintiff did not request leave to file a sur-reply.  As to Defendant's request that the Court permit Defendants not to respond to future submissions by Plaintiff unless directed by the Court to do so, that request is granted, and the Court will presume the allegations contained within any such future submission are disputed by Defendants.  Plaintiff is reminded that she must consult with opposing parties before filing any submission with the Court, pursuant to Judge Swain's individual rules of practice.  See Individual Practices of Judge Laura Taylor Swain, Rule A(1)(b).

**SA2967**

This case remains referred to Magistrate Judge Sarah Cave for General Pretrial

Management.  This order resolves docket entry nos. 510, 511, 512, and 513.

SO ORDERED.

Dated: New York, New York
   July 5, 2023

            _/s/ Laura Taylor Swain_____
            LAURA TAYLOR SWAIN
            Chief United States District Judge