# 25-817-CV

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

——— ►►◄◄ ———

ANNAMARIE TROMBETTA, ARTIST,

*Plaintiff-Appellant,*

*v.*

NORB NOVOCIN, MARIE NOVOCIN,
ESTATE AUCTIONS, INC., WORTHPOINT CORPORATION,

*Defendants-Appellees,*

WILLIAM SEIPPEL, WORTHPOINT.COM,
JASON PACKER, EMPLOYEE AT WORTHPOINT CORPORATION,

*Defendants.*

———————————

*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF FOR DEFENDANT-APPELLEE
## WORTHPOINT CORPORATION

Adam R. Bialek
Jana A. Slavina Farmer
WILSON ELSER MOSKOWITZ EDELMAN
& DICKER LLP
*Attorneys for Defendant-Appellee
WorthPoint Corporation*
150 East 42nd Street, 23rd Floor
New York, New York 10017
212-490-3000

 (212) 719-0990
appeals@phpny.com

## Disclosure Statement

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee WorthPoint Corporation ("WorthPoint"), by its counsel, certifies that WorthPoint does not have a parent corporation, and no publicly held corporation owns 10% or more of its stock.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...............................................................................v

JURISDICTIONAL STATEMENT .....................................................................1

PRELIMINARY STATEMENT ..........................................................................2

COUNTERSTATEMENT OF THE ISSUES.......................................................4

COUNTERSTATEMENT OF THE CASE...........................................................6

    A.    The Parties .................................................................................6

    B.    The Underlying Dispute .............................................................7

    C.    Plaintiff's Discovery of the WorthPoint Catalog Entry ...........8

    D.    WorthPoint's Evidence Concerning Removal and Google Search Results................................................................................9

    E.    Procedural History ....................................................................10

SUMMARY OF ARGUMENT .........................................................................16

ARGUMENT .....................................................................................................19

    I.    Standard of Review...................................................................19

        A.  Summary Judgment ...........................................................19

        B.  Discovery and Evidentiary Rulings .................................20

        C.  Denial of a Motion for Reconsideration ..........................21

    II.    Threshold Issue: Ms. Trombetta's Notice of Appeal Does Not Confer Jurisdiction Over Pre-Judgment Interlocutory Rulings Beyond the Scope of the March 7, 2025, Post-Judgment Order ...........21

ii

III. The District Court Correctly Granted Summary Judgment to WorthPoint Because All Claims Are Time-Barred and Correctly Dismissed Ms. Trombetta's Fraud, IIED, and Lanham Act Claims on the Merits ..........................................26

    A. Ms. Trombetta Discovered the Catalog Entry in August 2015 But Did Not Name WorthPoint Until February 2020 ................................................................26

    B. Ms. Trombetta's February 2020 Amendment Does Not Relate Back ..................................................................31

    C. Ms. Trombetta Failed to Establish Any "Renewed Act" of Infringement After February 21, 2017 ........................33

    D. WorthPoint's Expert and Fact Testimony Were Uncontroverted .....................................................37

    E. Ms. Trombetta's Fraud Claim Was Properly Dismissed.................38

    F. The District Court Correctly Dismissed Ms. Trombetta's IIED Claim....................................................40

    G. The District Court Correctly Dismissed Ms. Trombetta's Lanham Act Claim..............................................41

IV. The District Court Correctly Denied Ms. Trombetta's Motions in Limine to Exclude Expert and Fact Testimony ................................42

    A. Jason Packer's Declaration Is Fully Corroborated ..........................44

    B. Jessie Stricchiola's Expert Report Was Properly Admitted............46

    C. Ms. Trombetta's Allegations Regarding WorthPoint's Document Production Are Unfounded ...........................................47

V. The District Court Did Not Abuse Its Discretion in Its Discovery and Evidentiary Rulings .........................................................49

    A. Ms. Trombetta's Allegations of Judicial Bias and Error Are Unfounded ..................................................................50

iii

  B. Ms. Trombetta's Experts Were Properly Excluded ........................ 51

  C. Discovery Deadlines Were Properly Enforced ............................... 53

 VI. The District Court Properly Denied Injunctive Relief as to WorthPoint ............................................................................................ 54

 VII. The District Court Properly Denied Ms. Trombetta's Motion for Reconsideration ................................................................................ 59

 VIII. Ms. Trombetta Has Waived or Forfeited Numerous Arguments ........... 61

  A. Due Process Violations ................................................................. 61

  B. Discovery Sanctions ..................................................................... 62

CONCLUSION .................................................................................................... 62

CERTIFICATE OF COMPLIANCE ..................................................................... 65

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Dixon*,
  480 F.3d 636 (2d Cir. 2007) ...................................................................28, 30

*Acito v. IMCERA Group*,
  47 F.3d (2d Cir. 1995 .................................................................................39

*Alzawahra v. Albany Med. Ctr.*,
  546 F. App'x 53 (2d Cir. 2013) .................................................................61

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012) .........................................................24, 59, 60

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................19

*Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*
  *(In re Vitamin C Antitrust Litig.)*,
  995 F. Supp. 2d 125 (E.D.N.Y. 2014).......................................................32

*Aulicino v. N.Y. City Dep't of Homeless Servs.*,
  580 F.3d 73 (2d Cir. 2009) ........................................................................38

*Babalola v. B.Y. Equities, Inc.*,
  No. 98-9449, 1999 U.S. App. LEXIS 24376 (2d Cir. Sep. 28, 1999) ...........54, 59

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
  758 F. Supp. 1522 (S.D.N.Y. 1991) ..........................................................55

*Bender v. City of New York*,
  78 F.3d 787 (2d Cir. 1996) ........................................................................40

*Bennett v. Dutchess Cty.*,
  832 F. App'x 58 (2d Cir. 2020).................................................................19

v

*Biondo v. Kaleida Health,*
    935 F.3d 68 (2d Cir. 2019) ................................................................. 19

*Bustamante v. KIND, Ltd. Liab. Co.,*
    100 F.4th 419 (2d Cir. 2024) .............................................................. 51

*Callahan v. Wilson,*
    863 F.3d 144 (2d Cir. 2017) ............................................................... 43

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ..................................................................... 19, 37

*Charette v. Town of Oyster Bay,*
    159 F.3d 749 (2d Cir. 1998) ............................................................... 54

*Chen v. Chen Qualified Settlement Fund,*
    552 F.3d 218 (2d Cir. 2009) ............................................................... 50

*Coca-Cola Co. v. Tropicana Products, Inc.,*
    690 F.2d 312 (2d Cir. 1982) ............................................................... 54

*Dennis v. K&L Gates LLP,*
    No. 20-CV-9393 (MKV), 2025 WL 2941612 (S.D.N.Y. July 9, 2025) .............. 53

*Dos Santos v. Assurant, Inc.,*
    625 F. Supp. 3d 121 (S.D.N.Y. 2022) .............................................. 26, 30

*Franco v. Diaz,*
    51 F. Supp. 3d 235 (E.D.N.Y. 2014) .................................................... 41

*Gerstenbluth v. Credit Suisse Sec. (USA) LLC,*
    728 F.3d 139 (2d Cir. 2013) ............................................................... 23

*Gomez v. City of New York,*
    805 F.3d 419 (2d Cir. 2015) ............................................................... 21

*Hogan v. Fischer,*
    738 F.3d 509 (2d Cir. 2013) ............................................................... 32

*Holcomb v. Iona Coll.,*
    521 F.3d 130 (2d Cir. 2008) ............................................................... 38

vi

*Howell v. New York Post Co.*,
  81 N.Y.2d 115 (1993) ..........................................................................................40

*Hunt v. CNH Am. LLC*,
  511 F. App'x 43 (2d Cir. 2013) ......................................................20, 24, 42, 51

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010) ................................................................................38

*Jeffreys v. City of N.Y.*,
  426 F.3d 549 (2d Cir. 2005) ................................................................................19

*Kamdem-Ouaffo v. Balchem Corp.*,
  No. 23-455-cv, 2024 U.S. App. LEXIS 7104 (2d Cir. Mar. 26, 2024) ................59

*Kaye v. Trump*,
  58 A.D.3d 579 (1st Dep't 2009) ..........................................................................41

*Kee v. City of New York*,
  12 F.4th 150 (2d Cir. 2021) ................................................................................37

*Knight v. U.S. Fire Ins. Co.*,
  804 F.2d 9 (2d Cir. 1986) ....................................................................................20

*Krupski v. Costa Crociere S. p. A.,*
  560 U.S. 538 (2010) ............................................................................................31

*Legutko v. Local 816, Int'l Bhd. of Teamsters*,
  853 F.2d 1046 (2d Cir. 1988) ..............................................................................29

*Liteky v. United States*,
  510 46 U.S. 540 (1994) ........................................................................................50

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ............................................................................................20

*McCullock v. H.B. Fuller Co.*,
  61 F.3d 1038 (2d Cir. 1995) ..........................................................................21, 42

*McDonald v. Head Criminal Court Supervisor Officer*,
  850 F.2d 121 (2d Cir. 1988) ................................................................................53

*Monsanto Co. v. Geertson Seed Farms,*
  561 U.S. 139 (2010). ................................................................55

*Olson v. Major League Baseball,*
  29 F.4th 59 (2d Cir. 2022) .......................................................21

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
  572 U.S. 663 (2014) ...........................................................30, 33

*Polaroid Corp. v. Polarad Elecs. Corp.,*
  287 F.2d 492 (2d Cir. 1961) ...............................................56, 57

*Psihoyos v. John Wiley & Sons, Inc.,*
  748 F.3d 120 (2d Cir. 2014) ...............................................26, 27

*Scott v. Vill. of Spring Valley,*
  577 F. App'x 81 (2d Cir. 2014) ...............................................32

*Sequa Corp. v. GBJ Corp.,*
  156 F.3d 136 (2d Cir. 1998) ....................................................59

*Shrader v. CSX Transp., Inc.,*
  70 F.3d 255 (2d Cir. 1995) ......................................................23

*Simmons v. Stanberry,*
  810 F.3d 114 (2d Cir. 2016) ....................................................27

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
  497 F.3d 144 (2d Cir. 2007) ...............................................56, 57

*Triestman v. Fed. Bureau of Prisons,*
  470 F.3d 471 (2d Cir. 2006) ....................................................20

*Ward v. Compound Ent. LLC,*
  No. 18-CV-7628-PGG-BCM, 2020 WL 6136293
  (S.D.N.Y. Apr. 27, 2020) ...................................................26, 30

**Statutes**

17 U.S.C. § 507(b) .........................................................4, 16, 26, 30

18 U.S.C. § 1028 ....................................................................12

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ......................................................................................1

28 U.S.C. § 1367 ......................................................................................1

Digital Millennium Copyright Act ........................................ 1, 4, 10, 16, 26, 30, 42

Visual Artists Rights Act ........................................ 1, 4, 10, 16, 26, 30, 42

**Rules**

FRAP 3 ......................................................................................21, 22

FRCP 9(b) ......................................................................................38, 39

FRCP 15(c) ......................................................................................31, 62

FRCP 37(b) ......................................................................................62

FRCP 56(a) ......................................................................................19

FRCP 59(e) ......................................................................................6, 14, 21, 22, 59

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over Plaintiff-Appellant Annamarie Trombetta's claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as this case involves claims arising under federal copyright law, the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 *et seq.* ("DMCA"), and the Visual Artists Rights Act, 17 U.S.C. 106A ("VARA"). The District Court had supplemental jurisdiction over Ms. Trombetta's state law claims pursuant to 28 U.S.C. § 1367.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 over the final judgment entered by the District Court on February 20, 2024 (A-136–170; A-179),[1] as well as the Order denying Ms. Trombetta's Motion for Reconsideration entered on March 7, 2025 (A-171–78). The appeal is from a final order or judgment disposing of all claims.

---

[1] Citations to "A-" refer to the page designations appearing on Appellant's Appendix itself, including any handwritten or lettered designations, rather than to the PDF or CM/ECF pagination.

1

## PRELIMINARY STATEMENT

This appeal arises from the District Court's grant of summary judgment in favor of WorthPoint Corporation on all claims asserted by *pro se* Plaintiff-Appellant Annamarie Trombetta. The District Court's decision, rendered after six years of litigation, was thorough, well-reasoned, and fully supported by the record.

The facts are straightforward: Ms. Trombetta discovered a WorthPoint posting reporting the sale of a painting attributed to her (the "Catalog Entry") in August 2015. (SA-1655–60; SA-16; SA-65–66; SA-2859.) WorthPoint removed the Catalog Entry at Ms. Trombetta's request on February 4, 2016. (SA-1245; SA-1291; SA-1888.) Ms. Trombetta did not name WorthPoint as a defendant until February 21, 2020, nearly five years after discovering the Catalog Entry and well beyond the Copyright Act's three-year statute of limitations. (SA-64–89.) To avoid the time bar, Ms. Trombetta needed to show that WorthPoint committed a "renewed act" of infringement after February 21, 2017, i.e., within three years before impleading WorthPoint into this litigation. (A-153.) She could not do so because there was no such act. WorthPoint's undisputed evidence, including sworn testimony, web traffic data, and expert analysis, established that the Catalog Entry was permanently deleted in 2016 and never reposted. (A-153–154; SA-1241–50; SA-1257–1306.) Ms. Trombetta's only claimed "evidence" of reposting consisted of Google search result printouts, which WorthPoint's expert credibly explained as Google-cached data left

over from Google's crawl of a subsequently deactivated webpage, not proof of a live page on WorthPoint's servers. (A-154, SA-1245–50; SA-1289–91.) Independent data from WorthPoint's analytics further confirmed that the page was not active after it was removed in February 2016. (SA-1245–50; SA-1258–65; SA-1284–91.)

Ms. Trombetta's appellate brief raises no meritorious challenge to the District Court's analysis. Her allegations of fraud, judicial bias, and evidentiary error are conclusory and unsupported by any admissible, or frankly credible, evidence. The District Court's decision should be affirmed in all respects.

While Ms. Trombetta raises a myriad issues that she would like to re-litigate, they are not part of the appeal and should not be considered. The real issue to be considered is whether Ms. Trombetta timely filed her claim. She did not.

3

## COUNTERSTATEMENT OF THE ISSUES

1. Whether Ms. Trombetta's Notice of Appeal, which designates only the March 7, 2025, post-judgment order denying reconsideration, permits appellate review of pre-judgment interlocutory rulings, including discovery, expert disclosure, evidentiary orders, and orders on prior motions to dismiss, that were entered before the February 20, 2024, final judgment and that Ms. Trombetta seeks to challenge for the first time by declaration in her appellate brief.

2. Whether the District Court correctly determined that all of Ms. Trombetta's remaining claims against WorthPoint, including claims under the Copyright Act, VARA, and the DMCA, are barred by the three-year statute of limitations set forth in 17 U.S.C. § 507(b), where Ms. Trombetta discovered the allegedly infringing Catalog Entry in August 2015 and first contacted WorthPoint in 2015, yet did not name WorthPoint as a defendant until February 21, 2020.

3. Whether the District Court correctly determined that Ms. Trombetta waived or forfeited her fraud, intentional infliction of emotional distress, Lanham Act, and due process arguments by failing to properly plead them in the operative complaint or adequately raise them below.

4. Whether the District Court correctly found that Ms. Trombetta failed to establish any "renewed act" of infringement by WorthPoint after February 21, 2017,

where WorthPoint's uncontroverted evidence demonstrated that the Catalog Entry was permanently removed over a year earlier, on February 4, 2016, and Ms. Trombetta's only purported evidence of continued infringement consisted of Google search results that WorthPoint's expert credibly explained as cached data from a deactivated webpage.

5.     To the extent this court finds appellate authority over interlocutory orders not included in the Notice of Appeal, whether the District Court correctly admitted the fact testimony of Jason Packer and the expert testimony of Jessie Stricchiola, and correctly denied Ms. Trombetta's motions *in limine* seeking to exclude both witnesses.

6.     To the extent this court finds appellate authority over interlocutory orders not included in the Notice of Appeal, whether the District Court acted within its discretion in enforcing discovery deadlines, excluding Ms. Trombetta's untimely expert witness disclosures, and managing the extensive discovery disputes in this protracted litigation.

7.     Whether the District Court correctly denied Ms. Trombetta's request for permanent injunctive relief against WorthPoint, where the Catalog Entry was permanently removed in February 2016 and there was no evidence of ongoing or future infringement.

8.  Whether the District Court correctly denied Ms. Trombetta's motion for reconsideration under Rules 59(e) and 60, where Ms. Trombetta's additional screenshots from 2017 failed to create a genuine dispute of material fact for the same reasons discussed in the Court's final opinion.

## COUNTERSTATEMENT OF THE CASE

### A.  The Parties

Plaintiff-Appellant Annamarie Trombetta, proceeding *pro se*, brought this action in the Southern District of New York against Norb Novocin, Marie Novocin, Estate Auctions, Inc., and WorthPoint Corporation. (A-2–3; SA-64.) Ms. Trombetta is an artist who, according to the District Court's summary judgment opinion, has sold artwork through a personal catalog on her business website since 2003. (A-137.) The EAI Defendants (Norb Novocin, Marie Novocin, and Estate Auctions, Inc.) owned and operated a small resale business that sold items from estate or consignment sources on platforms including eBay. (SA-848–49; SA-851.) WorthPoint provides an online resource for researching past art sales that were incorporated from automated induction of auction platform results. (SA-1884-85 ¶¶ 2-4, 10-15.)

6

## B.    The Underlying Dispute

The case arises from an eBay sale of a painting titled "Man with a Red Umbrella." (SA-861–62.) Around December 1, 2012, Estate Auctions sold the painting on eBay for $181.50. (SA-862; SA-1731.) Based on the signature "A. Trombetta" on the painting and writing on the wooden frame that appeared to say "Annamarie Trombetta, Painted 1972," Norb Novocin identified Ms. Trombetta as the artist. (SA-888–90.) In his eBay listing to sell the painting, Mr. Novocin included Ms. Trombetta's biography, which he gleaned from a website askart.com, a paid subscription service containing information about works of art, artist biographies, and related materials. (SA-888–90.)

Ms. Trombetta maintained that she did not create the painting, and that the authorship of the painting was falsely attributed to her. (SA-65–67.) She alleged that the attribution of authorship of a "a low-priced, damaged painting" and the use of her biography without authorization harmed her standing and earnings as an artist. (SA-66–67.)

WorthPoint has never handled the painting and has not made any attributions; rather it republished the information about the 2012 eBay sale, ingested automatically along with millions of other auction results, pursuant to a license

7

agreement with eBay's authorized agent, as part of the Catalog Entry in WorthPoint's art research database. (SA-1884–86.)

## C. Plaintiff's Discovery of the WorthPoint Catalog Entry

Ms. Trombetta discovered the WorthPoint Catalog Entry in August 2015. (SA-551; SA-2859; SA-16.) After discovering the Catalog Entry, she contacted WorthPoint and submitted an official removal request in February 2016. (SA-16–18; SA-66–67; SA-646–47.) Pursuant to Ms. Trombetta's request, WorthPoint caused the Catalog Entry to be permanently removed from WorthPoint's website on February 4, 2016. (SA-1281; SA-1246.)

In December 2016 and several times subsequently, Ms. Trombetta claimed to have searched for information about herself on Google and allegedly received a Google search result referencing the Catalog Entry. (SA-224; SA-228–29.) She submitted a Google search printout (allegedly from March 15, 2017), showing her web search for "1972 original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta" and a WorthPoint/Worthopedia result with the snippet "1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz." (SA-2908.) Based on that, she concluded that the WorthPoint Catalog Entry must have remained accessible on WorthPoint's website as recently as March 2017. (SA-723–24.) Notably, Ms. Trombetta did not recall whether she was able to view a live

page on WorthPoint's website after February 2016 (SA-734; SA-1891), or whether she merely assumed there was one based on the Google search result listing.

**D.   WorthPoint's Evidence Concerning Removal and Google Search Results**

WorthPoint submitted a declaration of Jason Packer, its lead technical architect, who personally removed the Catalog Entry from WorthPoint on February 4, 2016. (SA-1280–91.) Jason Packer confirmed that that the Catalog Entry did not appear on or get accessed through WorthPoint after that date, that it had limited viewership while it was active, and that WorthPoint's data supported those findings. (SA-1280–91.) The District Court admitted Mr. Packer's declaration as fact-witness evidence based on personal knowledge. (A-142–43.)

WorthPoint also proffered expert testimony from technical expert Jessie Stricchiola. (SA-1237–79.) Ms. Stricchiola corroborated, based on web data, that the WorthPoint Catalog Entry was removed on February 4, 2016. (SA-1245–46.) She further confirmed that Google's web crawler caches URL information and that such caches may remain on Google's systems after the crawled page is no longer live, which could have explained Ms. Trombetta's view of a search result page with her name. (SA-1245–46; SA-1248–49.) The District Court admitted Ms. Stricchiola's expert declaration and found that WorthPoint had sufficiently

9

established that the WorthPoint Catalog Entry was not available or accessed after February 4, 2016. (A-154.)

### E.   Procedural History

Ms. Trombetta filed an initial complaint on February 5, 2018, against Estate Auctions, Inc., Marie Novocin, and Norb Novocin. (A-6.) On February 21, 2020, she seemingly amended her complaint to add WorthPoint and Mr. Seippel as defendants. (SA-64–89.) On March 19, 2020, the Court deemed ECF No. 36 the operative amended complaint and permitted certain claims to proceed, including VARA and direct copyright claims against EAI, contributory copyright and DMCA claims against WorthPoint, and DMCA claims against EAI. (SA-124–25.)

WorthPoint moved to dismiss in June 2020. (A-13.) On December 20, 2021, District Court Judge Ronnie Abrams dismissed all claims against Mr. Seippel for lack of personal jurisdiction. (A-136.) The Court also dismissed with prejudice Ms. Trombetta's claims against WorthPoint under the Lanham Act, New York Civil Rights Law, NYAARA, defamation, and contributory copyright infringement. (A-25.) Claims against WorthPoint for direct copyright infringement, DMCA violations, and VARA remained at that stage. (A-25.) WorthPoint answered on January 4, 2022. (A-26.)

Discovery proceeded but was extended multiple times at Ms. Trombetta's request. (A-117; SA-1896–97.) On December 12, 2022, Magistrate Judge Cave set December 19, 2022, as the deadline for Ms. Trombetta to serve expert disclosures under Rule 26(a)(2). (A-108.) The same order set January 19, 2023, as Defendants' expert disclosure deadline; set February 7, 2023, as the deadline for expert depositions and completion of all discovery; and stated that no further extensions would be granted absent extraordinary circumstances. (A-108–09.)

On December 19, 2022, after several extensions requested by Ms. Trombetta, the District Court deemed fact discovery closed. (A-110.) Ms. Trombetta had objected to the close of discovery due to an issue of production of the eBay 2012 sales receipt by the Novocins and Estate Auctions, and the Court below held that the only outstanding discovery issue identified by Ms. Trombetta had already been deemed resolved. (A-110.) The Court also denied Ms. Trombetta's request to extend her expert disclosure deadline because she had not articulated extraordinary circumstances, in contravention of the Court's directive that no further extensions of deadlines would be granted absent extraordinary circumstances. (A-110–11.)

Ms. Trombetta was allowed to file a second amended complaint ("SAC"), and the Court deemed ECF No. 348-1 the operative pleading. (SA-266–67.) The SAC asserted additional claims for intentional infliction of emotional distress, identity

11

theft under 18 U.S.C. § 1028, and NYAARA. (SA-216–63.) In January and February 2023, the Court granted limited extensions of expert discovery deadlines to March 1, 2023 only for rebuttal expert reports and expert depositions. (A-112–13).

On March 7, 2023, Magistrate Judge Cave denied Ms. Trombetta's motion to reopen fact discovery and deemed both fact and expert discovery closed. (A-123.) The Court observed that the action had been pending for years, that the parties had received multiple discovery extensions, and that reopening discovery would impose additional costs and delay. (A-121–23.) The Court directed the parties to file anticipated summary judgment and Daubert motions. (A-123.) Despite multiple directives as to the expert discovery schedule, Ms. Trombetta attempted to introduce untimely expert disclosures after all expert disclosure deadlines had long passed. (SA-327-389; SA-1952-2006; SA-2007-2050; SA-2947-48).

WorthPoint moved for summary judgment on April 17, 2023. (SA-458–59.) WorthPoint also moved to preclude Ms. Trombetta's untimely expert disclosures on April 11, 2023. (SA-268–69; SA-2947-48.) On June 22, 2023, Magistrate Judge Cave granted WorthPoint's Rule 37 motion and precluded Ms. Trombetta from relying on the reports or testimony of Dr. Scelsa and Ms. Skluzacek. (SA-2949–65.) On February 8, 2024, Chief Judge Laura Taylor Swain affirmed that ruling, holding that Judge Cave's order was not clearly erroneous or contrary to law. (A-130–35.)

The ruling on the admissibility and evidentiary value of Ms. Trombetta's proposed expert witnesses was deferred until the summary judgment stage. (SA-2966–67.)

On February 20, 2024, Chief Judge Swain issued a memorandum opinion and order resolving the parties' summary judgment and evidentiary motions. (A-136–70.) The Court denied Ms. Trombetta's motion in limine, admitted Mr. Packer's declaration as fact witness evidence, and accepted WorthPoint's proffer of Ms. Stricchiola's expert testimony. (A-141–47.) The Court granted Defendants' motions in limine with respect to Patrick O'Leary, Ms. Trombetta's remaining expert proffer. (A-147–48.)

The Court granted WorthPoint's motion for summary judgment in its entirety. (A-170.) The Court found that Ms. Trombetta discovered the WorthPoint Catalog Entry in mid-August 2015 and first contacted WorthPoint in 2016, but did not seek to add WorthPoint as a defendant until February 21, 2020. (A-152.) On that basis, the Court concluded that her claims against WorthPoint were timely only if she could show a renewed act of infringement after February 21, 2017. (A-153.)

The Court found that Ms. Trombetta's Google search result printout, which was her sole evidence of supposed renewed posting of the Catalog Entry, did not create a genuine dispute that the WorthPoint webpage was live after February 4, 2016. (A-153–54.) The Court accepted WorthPoint's evidence that the page had

13

been taken down on February 4, 2016, and was not accessible after that date, as well as Expert Stricchiola's explanation that Google search results could display cached snippets from deactivated webpages. (A-153–55.) The Court also noted that Ms. Trombetta could not recall personally accessing WorthPoint's website after 2016. (A-154; SA-733–34.) Finding that Ms. Trombetta failed to establish a triable issue of fact regarding WorthPoint's alleged "renewed act," the Court granted summary judgment for WorthPoint in full and denied Ms. Trombetta's cross-motion against WorthPoint in full. (A-154.) The Court deemed Ms. Trombetta's claims for fraud and negligence waived (A-136) and dismissed Ms. Trombetta's NYAARA, identity theft, and IIED claims against both WorthPoint and the EAI Defendants (A-149–52).

The Court separately resolved the claims involving the EAI Defendants. (A-154–70.) The Clerk entered judgment on February 20, 2024 in favor of WorthPoint on all claims and closed the case. (A-179.)

On March 19, 2024, Ms. Trombetta moved under Rules 59(e) and 60 for relief from judgment. (A-69.) On March 20, 2024, she moved for an extension of time to file a notice of appeal. (A-69.) On March 7, 2025, Chief Judge Swain denied reconsideration in its entirety. (A-178.) The Court granted the motion for an extension of time to appeal because the Rule 59 motion had been timely filed and extended the appeal deadline to April 6, 2025, under Federal Rule of Appellate Procedure 4. (A-178.) The Court stated that the case would remain closed. (A-178.)

14

Ms. Trombetta filed her Notice of Appeal on April 4, 2025. (A-3) The Notice of Appeal identified the March 7, 2025, memorandum order as the order appealed from. (A-3.)

15

## SUMMARY OF ARGUMENT

The District Court granted summary judgment in favor of WorthPoint on all claims, and that ruling should be affirmed. Ms. Trombetta's brief fails to identify any error of law or fact in the District Court's careful analysis.

As a threshold matter, Ms. Trombetta's Notice of Appeal, which designates only the March 7, 2025, post-judgment order denying reconsideration, does not permit appellate review of pre-judgment interlocutory rulings, including discovery, expert disclosure, and evidentiary orders, that were entered before the February 20, 2024, final judgment and that Ms. Trombetta seeks to challenge for the first time by declaration in her appellate brief. The only issues available for appellate review are those that were raised in the parties' motions for summary judgment and later in Ms. Trombetta's motion for reconsideration.

Second, Ms. Trombetta's claims against WorthPoint are time-barred as a matter of law. Actions under the Copyright Act, VARA, and the DMCA must be brought within three years after the claim accrues. 17 U.S.C. § 507(b). Ms. Trombetta discovered the Catalog Entry on WorthPoint's website in August 2015 but did not name WorthPoint as a defendant until February 21, 2020, well beyond the three-year limitations period. No equitable tolling or relation-back doctrine saves these claims.

16

Third, to avoid the time bar, Ms. Trombetta needed to establish that WorthPoint engaged in a "renewed act" of infringement after February 21, 2017. She failed to do so. WorthPoint provided substantial, uncontroverted evidence, through Jason Packer's sworn declaration and web traffic data, establishing that the Catalog Entry was permanently deleted on February 4, 2016, and was never reposted. Ms. Trombetta's unauthenticated Google search screenshots do not contradict this evidence. WorthPoint's expert, Jessie Stricchiola, credibly explained that Google's caching system can display text crawled from a subsequently deactivated webpage long after the source content has been removed. Ms. Trombetta offered no evidence to rebut this expert analysis and could not recall during her deposition whether she clicked on the Google link to determine what was on WorthPoint's website in 2017.

Fourth, to the extent this Court wishes to consider interlocutory discovery orders despite the limitation in the Notice of Appeal, Ms. Trombetta's allegations that WorthPoint's evidence is "fraudulent" (including her attacks on Jason Packer's declaration, Jessie Stricchiola's expert report, and WorthPoint's document productions) are entirely speculative and without support in the record. The District Court fully considered Ms. Trombetta's allegations and found them insufficient to create a genuine issue of material fact.

Fifth, the District Court's discovery and evidentiary rulings were well within its discretionary authority. The Court appropriately excluded Ms. Trombetta's

17

untimely expert witness, admitted Packer's fact testimony and Stricchiola's expert report, and denied Ms. Trombetta's motions to reopen discovery.

Sixth, injunctive relief against WorthPoint is unwarranted. The Catalog Entry was permanently removed nearly a decade ago, and there is no evidence that WorthPoint would repost it.

Finally, the denial of Ms. Trombetta's motion for reconsideration was proper, as her additional 2017 Google screenshots failed to create a genuine dispute of material fact for the same reasons the Court already articulated.

# ARGUMENT

## I. Standard of Review

### A. Summary Judgment

An appellate court reviews a district court's grant of summary judgment *de novo*, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in her favor." *Bennett v. Dutchess Cty.,* 832 F. App'x 58, 60 (2d Cir. 2020) (internal citations omitted).

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment [...] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.") A fact is "material" if it "might affect the outcome of the suit under the governing law." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Biondo v. Kaleida Health,* 935 F.3d 68, 73 (2d Cir. 2019) (*quoting Anderson, supra,* 477 U.S. at 248).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Nor may a party rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986).

While "a *pro se* litigant's submissions must be construed 'liberally'", the "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal citations omitted). A *pro se* litigant at the summary judgment stage must still present admissible evidence sufficient to create a genuine dispute of material fact; conclusory allegations, speculation, and subjective beliefs are insufficient to survive summary judgment.

### B. Discovery and Evidentiary Rulings

Discovery and evidentiary rulings, including the admission or exclusion of expert testimony, are reviewed for abuse of discretion, and such decisions are not abuses of discretion unless they are "manifestly erroneous." *Hunt v. CNH Am. LLC,* 511 F. App'x 43, 47 (2d Cir. 2013); *see also McCullock v. H.B. Fuller Co.,* 61 F.3d

20

1038, 1042 (2d Cir. 1995) ("The decision to admit expert testimony . . . will be overturned only when manifestly erroneous").

### C. Denial of a Motion for Reconsideration

Denial of a motion for reconsideration under FRCP Rules 59(e) or 60 is reviewed for abuse of discretion. *Olson v. Major League Baseball*, 29 F.4th 59, 72 (2d Cir. 2022); *see also Gomez v. City of New York*, 805 F.3d 419, 423 (2d Cir. 2015) ("Regardless of whether the motion should have been made or construed pursuant to Rule 59(e) or Rule 60(b), the standard of review is the same: abuse of discretion").

## II. Threshold Issue: Ms. Trombetta's Notice of Appeal Does Not Confer Jurisdiction Over Pre-Judgment Interlocutory Rulings Beyond the Scope of the March 7, 2025, Post-Judgment Order

As a threshold matter for this appeal, the Court should consider the limited scope of appellate review conferred by Ms. Trombetta's Notice of Appeal. FRAP 3(c)(1)(B) requires that a notice of appeal "designate the judgment—or the appealable order—from which the appeal is taken." This designation defines the jurisdictional boundaries of the appeal, and the Court's review is accordingly circumscribed by the order or judgment so identified.

Here, Ms. Trombetta's Notice of Appeal (A-3) designates only the March 7, 2025, memorandum order denying her motion for reconsideration (A-171–78) as the

21

order appealed from. It does not designate any interlocutory discovery orders. This distinction matters because Ms. Trombetta now seeks to relitigate a wide array of pre-judgment interlocutory rulings, including discovery orders, expert disclosure orders, and evidentiary rulings, that were entered before the final judgment and are not properly within the scope of an appeal limited to the post-judgment order.

The scope of appeal issue is governed by the interplay of several provisions of FRAP Rule 3(c). Under Rule 3(c)(4), a notice of appeal "encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order." Under Rule 3(c)(5)(B), in a civil case, a notice of appeal "encompasses the final judgment" if the notice designates "an order described in Rule 4(a)(4)(A)," which includes orders disposing of timely FRCP Rule 59(e) motions. The March 7, 2025 order is such an order. Accordingly, WorthPoint acknowledges that the Notice of Appeal may be construed to encompass the February 20, 2024, final judgment under the merger principle codified in FRAP Rule 3(c)(4)–(5).

However, the merger principle does not grant Ms. Trombetta an unrestricted license to use this appeal as a vehicle for relitigating every interlocutory order entered during six years of litigation below. Ms. Trombetta's Notice of Appeal wording, by its own terms, directs the appeal to "all aspects" of the March 7, 2025, order, that is, the denial of Ms. Trombetta's motion for reconsideration, and not to all aspects of the entire case. A party cannot expand the scope of appellate review

22

merely by declaring, in her brief, that she is appealing additional orders not identified in the Notice of Appeal. *See Gerstenbluth v. Credit Suisse Sec. (USA) LLC*, 728 F.3d 139, 142 n.4 (2d Cir. 2013) (concluding that a *pro se* litigant forfeited a challenge to a district court ruling mentioned only "obliquely and in passing" in the opening brief); *see also Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 256 (2d Cir. 1995) (finding no jurisdiction to review an earlier dismissal order where the notice of appeal referred solely to a subsequent order).

Ms. Trombetta's appellate brief seeks review far beyond the March 7, 2025, order. She expressly states: "The other Orders I am appealing are Doc. 340 on Dec. 19, 2022 which closed Discovery before I filed my SAC, Doc. 364, 384 … The other Orders I am appealing are the four by Judge Swain Doc. 528, 537, 538 and the last Doc. 556 on March 7, 2025." (Appellant's Br. at 61.) These orders, encompassing discovery management (Doc. 340) (A-110–11), expert disclosure deadlines (Doc. 364) (A-112–13), the closure of all discovery (Doc. 384) (A-114–24), unredacted document production (Doc. 528) (A-125–26), and expert witness preclusion (Doc. 537) (A-130–35), were interlocutory rulings entered before the February 20, 2024, final judgment.

To the extent the interlocutory orders are reviewable at all, they are reviewable only as part of a timely appeal from the final judgment, and only to the extent that

23

Ms. Trombetta has properly preserved and developed challenges to those rulings in her appellate brief. Ms. Trombetta cannot tack these orders on to the scope of this appeal simply by declaring in her brief that she is appealing them.

Moreover, many of these interlocutory challenges fail on independent grounds. As discussed above, discovery and evidentiary rulings are reviewed for abuse of discretion (*Hunt, supra,* 511 F. App'x at 47), and Ms. Trombetta has not demonstrated manifest error in any of these rulings, as discussed *infra*. But the threshold point remains: this Court need not, and should not, undertake plenary review of years of interlocutory case management orders when the Notice of Appeal identifies only the March 7, 2025, post-judgment order, and when Ms. Trombetta's challenges to those rulings were already considered and rejected in the District Court's denial of reconsideration. *See Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir. 2012) (a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'"). Neither is this appeal.

Ms. Trombetta's appellate brief reprises the same discovery, evidentiary, and case-management objections that the District Court already considered and rejected: first in its original rulings, and again in its denial of reconsideration, where the Court expressly "reject[ed] Trombetta's attempt to relitigate long-decided issues pertaining

24

to discovery in this action." (A-174.) Having failed twice to persuade the District Court that these rulings were erroneous, Ms. Trombetta now asks this Court to serve as a second appellate forum for the same arguments. But where the District Court has already determined that an appellant's objections "reiterate[] her disagreement" with prior rulings and do not "provide[] an appropriate basis for either a Rule 59 or Rule 60 motion" (A-174), this Court's review is limited to whether the denial of reconsideration was an abuse of discretion, not whether it would have decided the underlying interlocutory rulings differently in the first instance.

To the extent the Court determines that it has jurisdiction to review interlocutory rulings that merged into the final judgment, WorthPoint respectfully submits that those rulings should be affirmed for the reasons set forth in the sections that follow. At a minimum, however, this Court should decline Ms. Trombetta's invitation to conduct a wholesale re-examination of the District Court's case management, discovery, and evidentiary rulings, and should confine its review to the issues properly encompassed by the designated order and the arguments adequately developed in Ms. Trombetta's appellate brief.

25

**III.** **The District Court Correctly Granted Summary Judgment to WorthPoint Because All Claims Are Time-Barred and Correctly Dismissed Ms. Trombetta's Fraud, IIED, and Lanham Act Claims on the Merits**

The heart of the District Court's ruling in favor of WorthPoint is clear: Ms. Trombetta's claims against WorthPoint are time-barred, and she could not prove otherwise. The District Court's analysis on this issue was thorough, legally sound, and fully supported by the record. This Court should affirm.

### A. Ms. Trombetta Discovered the Catalog Entry in August 2015 But Did Not Name WorthPoint Until February 2020

Actions brought under the Copyright Act must be commenced within three years after the claim accrued. 17 U.S.C. § 507(b). This limitations period also applies to claims arising under the DMCA and VARA, which are amendments to the Copyright Act. See *Ward v. Compound Ent. LLC,* No. 18-CV-7628-PGG-BCM, 2020 U.S. Dist. LEXIS 74571, *13, n. 7, 2020 WL 6136293, at *5 n.7 (S.D.N.Y. Apr. 27, 2020); *Dos Santos v. Assurant, Inc.*, 625 F. Supp. 3d 121, 131 (S.D.N.Y. 2022).

The three-year limitation period begins to run when a plaintiff discovers or "with due diligence should have discovered" the infringement. *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014). Here, Ms. Trombetta discovered the WorthPoint Catalog Entry in mid-August 2015 and first contacted

26

WorthPoint about the misattributed painting in 2015. (SA-16; SA-65–67; SA-2859.) Her claims against WorthPoint therefore accrued no later than August 2015. *See Psihoyos*, *supra*, 748 F.3d at 125 ("copyright infringement claims . . . accrue [upon] actual or constructive discovery of the relevant infringement").

Ms. Trombetta knew of the alleged infringement since at least as early as August 2015 (which means that any alleged act by WorthPoint would have occurred at a prior time – August 2015 is merely used to acknowledge this Circuit's acceptance of the discovery rule). Ms. Trombetta also knew of WorthPoint's identity since at least as early as 2015 and had direct contact with multiple WorthPoint employees (including Anita Brooks, Gregory Watkins, Jason Packer, and William Seippel) from 2015 through early 2017. (A-80Q; SA-16–18; SA-50–51; SA-66–67.)

Under the Copyright Act's three-year statute of limitations, the time to file her action against WorthPoint expired in August 2018. However, Ms. Trombetta did not seek to add WorthPoint as a defendant until she filed her First Amended Complaint on February 21, 2020. (SA-64.) Thus, the action is untimely. *See, e.g., Simmons v. Stanberry*, 810 F.3d 114, 116 (2d Cir. 2016) (affirming dismissal of copyright infringement action as time-barred where the plaintiff was aware of the defendant's allegedly infringing use of a copyrighted musical beat more than three years before filing suit, and holding that the plaintiff "could not revive the time barred claim of

27

ownership of a copyright interest by relying on defendants' continued exploitation of the copyright within three years of his filing suit").

The District Court correctly found that "[n]o circumstances prevented Plaintiff from identifying and naming WorthPoint as a Defendant in this action in a timely manner." (A-152.) The Court properly rejected any implied equitable tolling argument, noting that equitable tolling requires that the plaintiff was "induced by fraud, misrepresentations, or deception to refrain from filing a timely action." (A-152); *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007).

Ms. Trombetta claims that she "was induced by fraud, misrepresentations, and deception by WorthPoint and EAI to possibly have Plaintiff refrain from filing a timely action against either party, WorthPoint in particular." (Appellant's Br. at 19.) There is no evidence of any such inducement. Ms. Trombetta knew WorthPoint was the source of the Catalog Entry from the very first day she discovered it.

Ms. Trombetta claims that, in her initial Original Complaint, she "named" WorthPoint's employees she directly spoke with and emailed. (Appellant's Br. at 19.) However, the record reflects that Ms. Trombetta's original complaint, filed on February 5, 2018, was against Norb Novocin, Marie Novocin, and Estate Auctions, Inc. (A-6; SA-71.) Her later pleadings state that the Catalog Entry was posted on Worthpoint.com, and she identifies Anita Brooks, Gregory Watkins, and William

28

Seippel as individuals she contacted, but this does not mean that she "named" WorthPoint or any of its employees as *defendants* in the original complaint. (SA-16–17; SA-48–51; SA-66–70.) Moreover, the fact that Ms. Trombetta identified Worthpoint and its employees in her first pleading proves that she knew of their identities and their relevance to the case, and that she intentionally did not name them as defendants. She certainly never served them with process of a pleading.

Ms. Trombetta also claims that she was "misdirected" by WorthPoint employee Anita Brooks, who told her in November 2015 to contact eBay because WorthPoint only compiles sales records (a fact that is true). (Appellant's Br. at 14, 17.) This conversation itself demonstrates that Ms. Trombetta knew by November 2015 that the Catalog Entry was on WorthPoint's website and that WorthPoint was responsible for maintaining it. The fact that one customer service representative suggested contacting eBay does not constitute "fraud, misrepresentation, or deception" sufficient to toll the statute of limitations, particularly where Ms. Trombetta continued communicating directly with WorthPoint representatives in early 2016 and successfully obtained removal of the Catalog Entry on February 4, 2016. *See, e.g.*, *Legutko v. Local 816, Int'l Bhd. of Teamsters*, 853 F.2d 1046, 1054 (2d Cir. 1988) ("Informal correspondence should not toll the statute of limitations"). Ms. Trombetta's own account demonstrates she was not prevented from taking

action against WorthPoint; she simply chose not to do so within the limitations period.

To the extent Ms. Trombetta relies on WorthPoint's litigation conduct (including the Georgia lawsuit, alleged discovery misconduct, or purportedly "fraudulent" evidence, none of which is accurate) as additional grounds for equitable tolling, these events all occurred after the statute of limitations had already expired in August 2018. Equitable tolling requires that the plaintiff was induced to refrain from filing a timely action; post-expiration conduct cannot retroactively toll a statute that has already run. *Cf. Abbas, supra*, 480 F.3d at 642.

This analysis applies with equal force to Ms. Trombetta's claims under VARA and the DMCA, which are subject to the same three-year statute of limitations. *See* 17 U.S.C. § 507(b); *Ward, supra*, 2020 U.S. Dist. LEXIS 74571, *13, n. 7; *Dos Santos, supra*, 625 F. Supp. 3d at 131. Although Ms. Trombetta invokes the "separate accrual rule" for her DMCA § 1202 claims, that rule does not alter the analysis: it provides only that each act of infringement gives rise to a separate claim. *See Petrella v. Metro-Goldwyn-Mayer, Inc.,* 572 U.S. 663, 671 (2014). Because Ms. Trombetta failed to establish that WorthPoint committed any act of infringement after February 21, 2017, neither the separate accrual rule nor any other doctrine saves her DMCA or VARA claims from the time bar.

30

### B. Ms. Trombetta's February 2020 Amendment Does Not Relate Back

The District Court correctly established that Ms. Trombetta "has offered no basis from which this Court can conclude that her February 2020 amendment naming WorthPoint as a Defendant 'relates back' to the date of the initial Complaint." (A-152–53); *see* FRCP 15(c) (describing the circumstances in which an amendment to a pleading relates back to the date of the original pleading).

Under Rule 15(c) an amendment adding a new defendant relates back only if, among other requirements, the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FRCP 15(c)(1)(C)(ii). Here, there was no "mistake" concerning WorthPoint's identity. Ms. Trombetta's original Complaint specifically referenced WorthPoint and its employees by name. Ms. Trombetta simply chose not to name WorthPoint as a defendant at that time. She did not name or serve WorthPoint or its employees prior to February 20, 2017.

The Supreme Court has held that "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." *Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538, 549 (2010). The Second Circuit Court of Appeals has "consistently held that the failure to identify

31

individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake." *Scott v. Vill. of Spring Valley*, 577 F. App'x 81, 82-83 (2d Cir. 2014) (internal citation omitted). *See also*, *Schoolcraft v. City of N.Y.*, 81 F. Supp. 3d 295, 301 (S.D.N.Y. 2015) (finding that where the plaintiff knew the identities of the proposed defendants "within the applicable statute of limitations and did not name them as defendants or serve them with a summons and complaint during that time," this amounted to "a deliberate choice, not a mistake of identity").

Ms. Trombetta's choice to sue the EAI Defendants and not to sue WorthPoint is not the kind of "mistake" that Rule 15 contemplates. *See Animal Sci. Prods. v. Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.)*, 995 F. Supp. 2d 125, 129 (E.D.N.Y. 2014) ("In an 'additional party' case like this one, there generally will be no 'mistake concerning' the proper party's 'identity.' The plaintiff has sued the right defendant, and simply neglected to sue another defendant who might also be liable. If the drafters of Rule 15 had meant to allow relation back in this situation, they could have easily done so"); *see also, Hogan v. Fischer,* 738 F.3d 509, 518 (2d Cir. 2013) ("the lack of knowledge of a John Doe defendant's name does not constitute a "mistake of identity.")

WorthPoint does not assert that a mistake was actually made, since there was no viable claim against it, both procedurally and substantively. As a passive platform

on which millions of auction results are automatically fed to the platform without any active involvement or oversight by WorthPoint, WorthPoint would have been immune from any substantive copyright claims. For purposes of this appeal, WorthPoint merely points out that Ms. Trombetta procedurally erred if she thought she had a claim.

Ms. Trombetta now claims on appeal that the "cause of action" to amend arose from the Novocins' admission that they were "not responsible for the two separate 1972 webpage postings" on WorthPoint's website. (Appellant's Br. at 18.) This argument is irrelevant to the relation-back analysis. Ms. Trombetta knew from August 2015 that the Catalog Entry was on WorthPoint's website. Ms. Trombetta had a claim against WorthPoint from the moment she discovered the Catalog Entry, a claim she did not pursue for years past the statute of limitations.

### C. Ms. Trombetta Failed to Establish Any "Renewed Act" of Infringement After February 21, 2017

Since Ms. Trombetta's claims were facially time-barred, her only path to a timely claim was to establish that WorthPoint committed a "renewed act" of infringement after February 21, 2017, three years before she filed the First Amended Complaint naming WorthPoint. *See Petrella, supra,* 572 U.S. at 671 (2014) ("Each time an infringing work is reproduced or distributed . . . gives rise to a discrete 'claim'

33

that 'accrues' at the time the wrong occurs"). Ms. Trombetta failed to satisfy this burden.

The District Court correctly reasoned that "the only evidence the Plaintiff provides to substantiate her claim that WorthPoint reposted the Catalog Entry is a March 15, 2017, screenshot of the link on a list of Google search results, which Stricchiola's uncontroverted proffer establishes does not prove anything about when the Catalog Entry was accessible on WorthPoint's website." (A-154.) Viewing the evidence in the light most favorable to Ms. Trombetta, the District Court found that Ms. Trombetta "failed to establish a triable issue of fact regarding WorthPoint's alleged 'renewed act,'" granting summary judgment to WorthPoint on this issue. (A-154.)

WorthPoint's evidence on this point was substantial and uncontroverted. Jason Packer's sworn declaration established that he permanently deleted the URL (posted years earlier) on February 4, 2016, that the URL was never reposted, and that it did not then exist on WorthPoint's site. (SA-1281; SA-1291.) WorthPoint submitted web traffic data demonstrating that the page was not available or accessed after February 4, 2016. (SA-1284–88.) And, WorthPoint's expert witness, Jessie Stricchiola, provided detail explaining how Google's caching system continues to display snippets of text from deactivated webpages. (SA-1245–50.) Ms. Stricchiola

34

explained that even after WorthPoint removed the Catalog Entry in February 2016, Google could still display snippets of the deactivated webpage from its saved data. (SA-1245–50.) Finally, WorthPoint's own internal communications from January 4, 2017, produced in discovery, show Mr. Packer and Mr. Seippel discussing the URL "showing up for that search based on off-page signals" and taking steps to file a "temporary removal request with Google" to "flush out that URL." (SA-1989.) Far from suggesting the Catalog Entry was reposted, the January 2017 email confirms the opposite: the page had already been removed from WorthPoint's servers, and WorthPoint was taking *additional* affirmative steps to address the residual Google cache — a separate system entirely outside WorthPoint's control. This is entirely consistent with WorthPoint's position that the Catalog Entry, automatically populated years before, was removed from WorthPoint's servers in February 2016, while Google's cache continued to display a snippet.

Against this evidence, Ms. Trombetta offered only: (1) printouts of Google search results from 2016 and 2017 showing a snippet of the Catalog Entry (SA-2908-10; SA-2912–13); and (2) her own belief that the Catalog Entry must have been "reposted." (SA-621; SA-720; SA-724–25.) Ms. Trombetta characterizes her printouts as "real time computer print outs" rather than screenshots, and argues that dates in the upper right-hand corner of her printouts prove the Catalog Entry was live. (Appellant's Br. at 29.) But regardless of terminology, a printout of a Google

35

search results page proves only that Google's index continued to display cached data from a deactivated webpage — it does not prove that the underlying page was live on WorthPoint's servers.

As the District Court found, these printouts do "not prove anything about when the Catalog Entry was accessible on WorthPoint's website." (A-154.) A Google search result showing a cached snippet does not establish that the underlying webpage is live.

Ms. Trombetta mentions emails she received from WorthPoint during 2016 and 2017, arguing that these emails are circumstantial evidence that the Catalog Entry remained active. (Appellant's Br. at 29; 42; Appellant's Br. Ex. 14). This argument is meritless. Automated marketing emails are sent to subscribers and have no connection to whether a particular URL is live on WorthPoint's website. The existence of routine marketing communications has no probative value as to the status of a specific deactivated webpage on WorthPoint's servers.

Crucially, Ms. Trombetta herself, during her deposition, could not recall whether she had ever actually clicked on the Google link to access the Catalog Entry on WorthPoint's website after February 2016. (SA-733–34.) She proffers no evidence from any other witness who claims to have done so. Without evidence that anyone actually accessed the Catalog Entry on WorthPoint's website after February

36

21, 2017, there is no basis to conclude that WorthPoint committed a "renewed act" of infringement within the limitations period.

### D. WorthPoint's Expert and Fact Testimony Were Uncontroverted

The District Court carefully evaluated the admissibility of WorthPoint's witnesses and appropriately admitted both.

Ms. Trombetta argues the Court improperly granted WorthPoint's summary judgment motion in its entirety, despite her allegedly "irrefutable and abundant" evidence, such as her 1972 signatures and 2015 askART evidence. (Appellant's Br. at 57–58). She contends genuine issues of material fact existed.

Summary judgment is appropriate where no genuine dispute of material fact exists. *Celotex Corp., supra,* 477 U.S. at 322. The District Court conducted a thorough analysis across 35 pages. (A-136–70). Ms. Trombetta's evidence (phone call transcripts, printouts, and self-serving declarations) was weighed against sworn testimony from Packer, expert reports from Stricchiola, and documentary evidence. The Court found much of Ms. Trombetta's proffered evidence inadmissible (e.g., expert reports, hearsay letters) or insufficient to create a triable issue. (A-153-154.) On appeal, the Second Circuit reviews a grant of summary judgment *de novo*, construing facts in the light most favorable to the non-moving party. *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021). Even under this standard, the non-

movant must come forward with admissible evidence sufficient to permit a rational finder of fact to return a verdict in its favor; conclusory allegations alone are insufficient. *Aulicino v. N.Y. City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

### E. Ms. Trombetta's Fraud Claim Was Properly Dismissed

The District Court correctly declined to consider Ms. Trombetta's fraud claims because they were never properly pled in the operative complaint. Ms. Trombetta attempted to assert fraud and negligence claims for the first time in her summary judgment motion, but the Court found that these claims were not included in the operative Complaint and that Ms. Trombetta was warned repeatedly that the deadline to amend her Complaint to assert new claims expired in December 2022. (A-176-177.) The Court accordingly deemed those claims waived; as well as found that nothing in Trombetta's operative pleading suggested that she was a victim of any fraudulent statements or misrepresentations made by Defendants. (A-177.)

Even if Ms. Trombetta's fraud claims had been pled in the operative Complaint, they would fail under the heightened pleading standard of FRCP 9(b), which requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010). "[C]onclusory allegations of fraud do not

38

satisfy the pleading requirements of Rule 9(b)." *Acito v. IMCERA Group*, 47 F.3d 47, 53 (2d Cir. 1995). Ms. Trombetta's fraud allegations — that Defendants produced "fraudulent" evidence, filed "fraudulent declarations," and engaged in "willful disinformation" — are precisely the type of conclusory, non-particularized allegations that Rule 9(b) is designed to preclude. She identifies no specific misrepresentation by WorthPoint made with the intent to deceive, no reasonable reliance, and no damages flowing from any such misrepresentation as distinct from her underlying intellectual property claims.

Moreover, Ms. Trombetta's fraud allegations largely conflate litigation conduct — alleged discovery abuses and purportedly inaccurate declarations, all of which have been refuted and adjudged in favor of WorthPoint at the District Court — with substantive fraud claims. Discovery disputes are properly addressed through sanctions under FRCP 37, not through independent fraud claims requiring detrimental reliance and damages flowing from a misrepresentation. Ms. Trombetta's disagreement with the evidence Defendants produced, which the District Court found acceptable, does not constitute independently actionable fraud. The District Court's refusal to consider these unpled and insufficiently particularized claims was correct and should be affirmed.

39

### F. The District Court Correctly Dismissed Ms. Trombetta's IIED Claim

The District Court granted summary judgment to both Defendants on Ms. Trombetta's intentional infliction of emotional distress claim because she "failed to establish a triable issue of fact regarding her *prima facie* case." (A-150–51.) To prevail on an IIED claim under New York law, a plaintiff must demonstrate: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996).

The threshold element, extreme and outrageous conduct, imposes a demanding standard. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993). The District Court correctly found that Ms. Trombetta's allegations fell far short of this standard. Her IIED claim was premised on the contention that WorthPoint conducted its defense by filing a motion to dismiss, deposing Ms. Trombetta, and filing a countersuit in Georgia. (A-151.) None of these actions constitute extreme or outrageous conduct; they are routine incidents of adversarial litigation. Significantly, none of these actions were pre-suit actions that could have been raised in the operative complaint.

40

It is well established under New York law that "the commencement of litigation, whether civil or criminal, cannot form the basis for an IIED claim." *Franco v. Diaz*, 51 F. Supp. 3d 235, 243 (E.D.N.Y. 2014). Moreover, "[the] statements and actions occurred in the context of adversarial litigation and therefore cannot provide a foundation for the [intentional infliction of emotional distress] claim"). *Kaye v. Trump*, 58 A.D.3d 579, 579 (1st Dep't 2009). As all the Defendants' actions complained of were taken in the course of adversarial litigation, the District Court's dismissal of the IIED claim was correct and should be affirmed.

## G. The District Court Correctly Dismissed Ms. Trombetta's Lanham Act Claim

Ms. Trombetta seeks to revive her claim under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), for "false designation of origin," arguing that the WorthPoint Catalog Entry created a false attribution of her name in connection with a painting she did not create. (Appellant's Br. at 47–52.) This claim was dismissed with prejudice by Judge Abrams in Doc. 23, filed October 2, 2019 (A–78A, 78-E-G), and that ruling is not properly before this Court as discussed above. Magistrate Judge Cave's March 19, 2020, order affirmed the dismissal with prejudice of Ms. Trombetta's New York Civil Rights Law, NYAARA, and Lanham Act claims, and deemed them stricken from the Amended Complaint. (SA-112–25). The same order also dismissed Ms. Trombetta's defamation claim with prejudice. (SA-112–25).

41

The dismissal with prejudice was subsequently confirmed in Judge Abrams' December 2021 order (Doc. 187), which dismissed Ms. Trombetta's Lanham Act claims against WorthPoint with prejudice along with her claims under the New York Civil Rights Law, NYAARA, defamation, and contributory copyright infringement. (A-25–26.) Only claims for direct copyright infringement, DMCA violations, and VARA survived as against WorthPoint at that stage. (A-151–52.)

Ms. Trombetta now argues on appeal that her "triangle logo" branding and artistic signature constitute protectable marks, and that WorthPoint's automated affixation of its copyright notice to the Catalog Entry created a "false designation of origin." (Appellant's Br. at 47–52.) These arguments were either presented to or available before Judge Abrams in 2019 and were rejected. Ms. Trombetta may not use this appeal as a vehicle to relitigate the merits of a claim that was dismissed with prejudice years before the summary judgment at issue. The dismissal of the Lanham Act claim should be affirmed.

## IV. The District Court Correctly Denied Ms. Trombetta's Motions in Limine to Exclude Expert and Fact Testimony

"A district court's exclusion of expert testimony is reviewed for abuse of discretion, and a decision to admit or exclude expert scientific testimony is not an abuse of discretion unless it is manifestly erroneous." *Hunt, supra,* 511 F. App'x at 47; *McCullock, supra,* 61 F.3d at 1042. District courts have "broad discretion" to

carry out their gatekeeping function under Rule 702 and Daubert. *Callahan v. Wilson*, 863 F.3d 144, 153 (2d Cir. 2017). Under this deferential standard, Ms. Trombetta bears a heavy burden: she must demonstrate that the District Court's decisions to admit Jason Packer's fact testimony and Jessie Stricchiola's expert testimony were manifestly erroneous. She cannot do so.

Ms. Trombetta moved for an order excluding the testimony of WorthPoint's expert witness Jessie Stricchiola and fact witness Jason Packer. (A-141.) The District Court denied this motion in its entirety in its February 20, 2024, order. (A-141–47.)

Ms. Trombetta alleges that WorthPoint produced "fraudulent" evidence, including Jason Packer's declaration and Jessie Stricchiola's expert report, both of which were unrebutted. (Appellant's Br. at 20, 29.) The fact of Ms. Trombetta's disagreement with the witness reports does not make that credible evidence "fraudulent." Her allegations of "fraud" on this point lack any support in admissible evidence and have been considered and dismissed by the District Court.

The Court conducted a thorough gatekeeping analysis before admitting Ms. Stricchiola's expert testimony, and found that WorthPoint had demonstrated by a preponderance of the evidence that Ms. Stricchiola's specialized technical knowledge would help the trier of fact, that her testimony was based on sufficient facts and data, and that her methodology was reliable. (A-143–47.)

43

With respect to Mr. Packer, the Court determined that his testimony was admissible as fact witness testimony based on his personal knowledge as WorthPoint's lead technical architect. (A-142–43.) Ms. Trombetta's challenges amount to credibility disputes that do not establish manifest error.

## A. Jason Packer's Declaration Is Fully Corroborated

Ms. Trombetta claims that Jason Packer's declaration is contradicted by WorthPoint's January 4, 2017, internal email, in which Mr. Packer discussed filing a "temporary removal request with Google." (Appellant's Br. at 38.) Ms. Trombetta argues that if the Catalog Entry had truly been permanently removed on February 4, 2016, Packer would not have needed to take further action in January 2017. (Appellant's Br. at 38.)

Ms. Trombetta's argument misunderstands the technical issues at play. As discussed above, Mr. Packer's declaration states that he permanently deleted the URL from WorthPoint's servers on February 4, 2016. (SA-1281; SA-1291; A-142.) The January 2017 email addresses a separate issue: Google's cached version of the deactivated page, which continued to display a snippet based on "off-page signals." (SA-2848.) This is consistent with removing the Catalog Entry from WorthPoint's servers in February 2016 while Google's cache continued to display a snippet.

44

Taking steps to request that Google flush its cache does not contradict the fact that the underlying page was already removed from WorthPoint's website.

Moreover, WorthPoint produced these internal communications voluntarily in discovery. The emails corroborate WorthPoint's position: the Catalog Entry was removed from WorthPoint's website, and WorthPoint took additional steps to address Ms. Trombetta's concerns about the Google caching issue.

Ms. Trombetta also challenges Mr. Packer's data showing that an email address "annamarie@trombettaart.com" accessed the Catalog Entry's price lookup on WorthPoint's website. (SA-1288; A-144.) She asserts she never used that email to contact WorthPoint. (Appellant's Br. at 29.) However, the District Court correctly found that "[t]his factual dispute is ancillary to any material disputes in this action and, in any event, was not relevant to any of Stricchiola's conclusions." (A-144.) Whether Ms. Trombetta used one email address or another to access WorthPoint's website has no bearing on the dispositive question of whether the Catalog Entry was re-posted after February 4, 2016.

Moreover, the record shows that WorthPoint sent an automated email to that same address (annamarie@trombettaart.com) on January 22, 2016, reflecting a routine subscription matter wholly unrelated to the Catalog Entry's accessibility. (SA-21.) This further demonstrates that the email address dispute is a red herring

45

and does not undermine Mr. Packer's core testimony about the Catalog Entry's removal.

## B. Jessie Stricchiola's Expert Report Was Properly Admitted

Ms. Trombetta attacks Jessie Stricchiola's expert report on the grounds that it contained purported errors, specifically that Ms. Stricchiola stated Mr. O'Leary's report was completed on December 25, 2022 (Christmas Day) and characterized his "Affidavit" as a "Declaration." (Appellant's Br. at 39.) These are at best trivial clerical errors that have no bearing on the substance of Ms. Stricchiola's analysis regarding Google's caching mechanisms.

Ms. Trombetta also complains that Ms. Stricchiola "could not explain" why her Google search results had 2017 dates and that Ms. Stricchiola suggested that Ms. Trombetta "must have manipulated the dates on the printer." (Appellant's Br. at 39–40.) However, Ms. Stricchiola's core opinion, that Google search results can display cached data from a deactivated webpage, is well-established and undisputed. The District Court accepted this expert testimony pursuant to Rule 702 (A-143–47), and Ms. Trombetta provided no counter-expert testimony to rebut it.

Ms. Trombetta, by her own admission, declined to depose Ms. Stricchiola, weakening her ability to challenge that testimony on appeal. (Appellant's Br. at 40; A-108–09). Ms. Trombetta cannot now, on appeal, challenge the reliability of expert

testimony she voluntarily chose not to test through cross-examination during discovery.

### C. Ms. Trombetta's Allegations Regarding WorthPoint's Document Production Are Unfounded

Ms. Trombetta raises numerous allegations regarding WorthPoint's document productions, including: (1) that an archived askART document produced on August 30, 2022, was "counterfeit" because it lacked her name in the URL header, contained a grammatical error, and was Bates-stamped twice (Appellant's Br. at 40); (2) that a document labeled "Trombetta Terapeak" Bates-stamped WP000038-40 and marked "Confidential" was fraudulent (Appellant's Br. at 28); and (3) that WorthPoint failed to comply with the Court's Order directing production of unredacted documents (Appellant's Br. at 12–13, 40). These allegations are meritless for several reasons.

Ms. Trombetta's complaints about Bates stamp numbers, URL headers, and document formatting are not evidence of fraud; they are complaints about routine discovery production practices. Documents are routinely Bates stamped during discovery, and the presence of multiple Bates stamp numbers reflects standard document management, not forgery. Second, the "Confidential" designation was WorthPoint's standard proprietary information protection, a protection authorized by the Court's protective order (A-28; SA-126-129). Third, WorthPoint complied with the Court's discovery orders, including the Court's December 2023 order

47

directing WorthPoint to produce unredacted versions of certain documents. (A-125–26; A-67.)

The District Court supervised discovery throughout this litigation, holding multiple discovery conferences, issuing discovery orders, and resolving disputes as they arose. (A-105–06; A-114–24.) Ms. Trombetta's disagreement with the substance of Defendants' productions, such as her unsubstantiated belief that the askART documents were "backdated" (Appellant's Br. at 40), does not establish discovery misconduct or fraud. The Court noted that Ms. Trombetta's argument that her askART profile did not exist until 2015 "only shows that the webpage existed, and its data was cached, by 2015 at the latest. It does not disprove EAI's assertion that the page existed in 2012 and earlier." (A-168.) Ms. Trombetta "provides no evidence to contradict Mr. Novocin's testimony" that he found her biography on askART in 2012. (A-168.)

The District Court deemed all production-related issues resolved on December 8, 2022 (A-45), closed fact discovery on December 19, 2022 (A-110), and denied Ms. Trombetta's motion to reopen discovery on March 7, 2023 (A-123–24).

In denying reconsideration, the Court specifically addressed Ms. Trombetta's discovery-related objections, noting that "Trombetta again reiterates her

disagreement with several discovery orders and deadlines, as well as allegedly noncompliant productions from Defendants," none of which "provides an appropriate basis for either a Rule 59 or Rule 60 motion" (A-174), and finding that "none of the evidence or claims Trombetta discusses are sufficient to show that the Court overlooked controlling law or relevant factual matters" (A-176).

Ms. Trombetta's document production allegations amount to nothing more than an attempt to relitigate discovery disputes that were properly resolved by the District Court. This Court should decline the invitation to revisit those rulings.

## V. The District Court Did Not Abuse Its Discretion in Its Discovery and Evidentiary Rulings

Ms. Trombetta contends that throughout discovery, "both Defendants willfully produced fraudulent evidence intended to conceal the fact that there was never a sale on eBay in 2012 nor was [her] biography was ever on askART in 2012 evidenced in the deliberate, delayed and deficient documents produced to prolong this lawsuit in the district court and cause IIED, to mentally, financially, and physically exhaust [her]." (Appellant's Br. at 20.)

The District Court properly admitted Defendants' evidence concerning the 2012 eBay sale and Ms. Trombetta's askART biography. WorthPoint has not produced documents "to prolong this lawsuit" or to "mentally, financially, and physically exhaust" Ms. Trombetta; it has done nothing more than defend itself

49

against claims that Ms. Trombetta chose to pursue for over six years. A defendant's submission of evidence and defenses in its own interest does not constitute litigation misconduct.

### A. Ms. Trombetta's Allegations of Judicial Bias and Error Are Unfounded

Ms. Trombetta repeatedly alleges Judge Swain demonstrated bias, made errors of fact (e.g., stating it was "not clear" Trombetta lost revenue), overlooked critical evidence (1972 signatures, 2015 askART listing, phone call transcripts), and incorrectly credited Defendants' evidence. (Appellant's Br. at 13, 15, 57–58.) Ms. Trombetta must also be claiming that Judge Ronnie Abrams and Magistrate Judge Cave also were biased insofar as they ruled in favor of WorthPoint throughout the case on the same issues.

Allegations of judicial bias require a showing that the judge had an "extrajudicial source" of bias *(see Liteky v. United States*, 510 46 U.S. 540, 554 (1994) or that rulings reflected "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Francolino v. Kuhlman*, 365 F.3d 137, 143 (2d Cir. 2004) (quoting *Liteky*, supra, 510 46 U.S. at 555.); *Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009) (Adverse rulings, without more, do not suffice for questioning a judge's impartiality.).

50

Judge Swain's factual findings were based on the evidentiary record, including Ms. Trombetta's own refusal to provide income discovery or rebut Defendants' evidence. The District Court acknowledged Ms. Trombetta's evidence but found it inadmissible or insufficient. This was a routine exercise of judicial discretion at summary judgment, not bias. Ms. Trombetta's disagreement with the Court's weighing of evidence does not constitute reversible error.

### B. Ms. Trombetta's Experts Were Properly Excluded

Ms. Trombetta contends Magistrate Judge Cave improperly excluded her expert witness reports (including Patrick O'Leary's internet forensics affidavit) as untimely, and that Judge Swain affirmed this without considering that the deadline was set before Ms. Trombetta filed her Second Amended Complaint (SAC) adding fraud claims. (Appellant's Br. at 12, 56–58.)

Expert report deadlines are set by the Court's scheduling order and enforced under FRCP 26(a)(2). The District Court has broad discretion over discovery management and scheduling, reviewed only under a highly deferential abuse of discretion standard. *See Hunt*, *supra*, 511 F. App'x at 47; *Bustamante v. KIND, Ltd. Liab. Co.*, 100 F.4th 419, 427 (2d Cir. 2024)("A decision to ... exclude expert ... testimony is not an abuse of discretion unless it is manifestly erroneous").

51

Ms. Trombetta's experts were excluded because their disclosures were untimely: the scheduling order deadline predated the SAC, but the expert reports concerned the *original* claims, not the newly added fraud claims. *See* A-131 (Judge Swain finding that, "Despite Judge Cave's Order, Plaintiff provided the reports of her expert witnesses … two months after the deadline for such disclosures"), and failed to allow for a deposition to be conducted within the expert discovery time period; A-133 ("Judge Cave reasoned … that the Plaintiff had failed to provide a substantial justification for her failure to comply with expert disclosure deadlines").

Moreover, the District Court properly excluded Mr. O'Leary's opinions because 1) his thoughts on "long-concluded discovery disputes [were] not material or even relevant" (A-147), and 2) his opinions regarding whether Ms. Trombetta created the painting and potential damages suffered were on subjects outside his claimed area of expertise (A-147-148). The Court correctly concluded that Mr. O'Leary's three proffered opinions — "(1) that Defendants 'nefariously' engaged in discovery misconduct, (2) that Plaintiff did not, in fact, create the Painting – a fact that no Defendant disputes, and (3) that Plaintiff suffered extensive financial damages" — were irrelevant or outside of his claimed area of expertise and could not be considered. (A-147–148.) The District Court did not abuse its discretion in so finding, and these decisions are not manifestly erroneous.

### C. Discovery Deadlines Were Properly Enforced

Ms. Trombetta challenges various discovery rulings, including Magistrate Judge Cave's denials of her motions to reopen discovery. (Appellant's Br. at 34; A-114–24.) The District Court addressed these arguments comprehensively in Judge Cave's March 7, 2023, Opinion and Order. (A-114–24.)

Ms. Trombetta was granted extensive accommodations as a pro se litigant. The docket contains over 550 entries, reflecting the protracted and contentious nature of discovery, and Ms. Trombetta's disregard for the Court rules. (A-6–70.) But accommodating a pro se litigant does not require indefinite extensions of all deadlines. *See McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988) ("while *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses*, have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions.")

Judge Cave set and clearly communicated discovery deadlines, having extended the discovery deadline at least six times and advising Ms. Trombetta what her responsibilities were before deeming it closed. (A-123.) Ms. Trombetta's failure to comply with those deadlines does not constitute reversible error by the Court.

Ms. Trombetta further complains that WorthPoint's Georgia lawsuit burdened her ability to comply with discovery deadlines. (Appellant's Br. at 40–41). The

District Court considered this argument and found it insufficient. (A-134). The Georgia lawsuit was "an unrelated state court proceeding" that did not excuse Ms. Trombetta's obligations in the SDNY action. (A-134).

## VI. The District Court Properly Denied Injunctive Relief as to WorthPoint

Ms. Trombetta asserts that a request for permanent injunctive relief is "[o]ne of the main reasons" for her appeal. (Appellant's Br. at 49.) She asks the Court of Appeals to enjoin defendants from copying any of her existing or future copyrighted works. (Appellant's Br. at 55.) However, Ms. Trombetta's request for injunctive relief was properly denied at the District Court level, which should be affirmed here. (A-166.)

An appellate court reviews a district court's denial of injunctive relief for an abuse of discretion. *See Babalola v. B.Y. Equities, Inc.*, No. 98-9449, 1999 U.S. App. LEXIS 24376, at *3 (2d Cir. 1999), citing *Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 315 (2d Cir. 1982). "Either an error of law or a clear error of fact may constitute an abuse of discretion." *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998).

To obtain a permanent injunction, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) that, considering the

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 156-57 (2010).

The District Court correctly applied the above standard. To the extent that Ms. Trombetta seeks injunctive relief as to WorthPoint, there is no evidence that WorthPoint has any intention of reposting the Catalog Entry. The Catalog Entry was permanently deleted from WorthPoint's servers on February 4, 2016, over ten years ago, almost immediately after Ms. Trombetta contacted WorthPoint about the Catalog Entry. (A-139; SA-1281; SA-1291; SA-1245–47; SA-1888–89.) There is accordingly no ongoing or future injury, let alone "irreparable" injury.

Ms. Trombetta cites *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1542 (S.D.N.Y. 1991) for the assertion that: "While liability has yet to be been determined, there is strong history and a possible continuing of infringement and a significant threat of future infringement exists, a court must enjoin infringement of future copyrighted works." (Appellant's Br. at 55.) (WorthPoint notes that the Kinko's case is misquoted). However, here, liability *has* already been determined: the District Court dismissed Ms. Trombetta's claims as to WorthPoint and found in favor of WorthPoint on all claims. Moreover, the underlying claim, if timely filed, would have failed as WorthPoint could not have been held liable as a platform that was automatically fed millions of auction results and did not have active control over

55

the publishing of the results. (SA-1304–05.) In addition, there is no "significant threat" of future infringement. Therefore, Ms. Trombetta's reliance on *Basic Books* for injunctive relief is inapplicable here.

Ms. Trombetta claims, "[t]he need here for an injunction, moreover, is plain where defendants have already demonstrated a pattern of producing falsified documents, filed in Federal Court." (Appellant's Br. at 55.) This is not an appropriate basis for an injunction. Moreover, Ms. Trombetta's discontentment with Defendants' evidence does not mean that the evidence itself is "falsified." No judge or court has found that Defendants produced falsified documents in this litigation. To the contrary, the document to which Ms. Trombetta referred was shown to be a courtesy copy of a document produced by the co-defendant concerning the underlying sale of the artwork.

Ms. Trombetta also cites *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) and *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) in support of her arguments in favor of an injunction (Appellant's Br. at 50-52.). These cases, however, are inapposite. *Polaroid Corp.* and *Time Warner Cable* are both trademark infringement cases under the Lanham Act, and as discussed above, Ms. Trombetta's operative complaint does not assert claims under the Lanham Act. Furthermore, the *Polaroid* court concluded that the defendant's use of plaintiff's trademark title did not infringe plaintiff's trademarks or constitute

56

unfair competition, finding that the evidence of actual confusion was not impressive. *Polaroid, supra,* 287 F.2d at 495. Additionally, Ms. Trombetta suggests *Time Warner Cable* applies to this case such that irreparable injury can be presumed; however, *Time Warner Cable* is a false advertising case whose facts do not align with those of the instant case.

Importantly, much of Ms. Trombetta's request for permanent injunctive relief seems to rest on her belief that Defendants committed an act of trademark infringement.[2] Again, Ms. Trombetta's operative complaint did not raise claims for trademark infringement under the Lanham Act, and the March 7, 2025, order from which she appeals (A-171–78) does not opine on trademark infringement, so such claims cannot be the basis for a request for permanent injunctive relief.

In support for her request for permanent injunctive relief, Ms. Trombetta claims: "I have not been able to update my website due to this lawsuit. I add that

---

[2] *See* Appellant's Br. at 51–52: "The false 1972 painting webpage displayed a signature that was not mine with a false copyright and licensing claim by WorthPoint which is the textbook definition of creating a false designation of origin. Defendants signature confused/ altered my signage, which includes my known trademark triangle with my initials which was not known to Judge Abrams in 2019. My branding logo is used on my website, in the signage of my name and is a means of distinction for my brand. My designed logo was initiated to protect me from any artwork I did not create which subjects my brand logo and name to counterfeit authorship. Any false artworks, such as the 1972 oil painting that bares [sic] a similar name subjects my brand and name to more counterfeit artwork. This is why I requested Permanent Injunctive Relief against Defendants."

since 2015, neither Defendant has identified who created the painting, ergo the 1972 painting is a bonafide forgery, still baring [sic] my name and the signer is still at large." (Appellant's Br. at 49.) WorthPoint has not interfered with nor had anything to do with Ms. Trombetta's ability to update her website. Nor has WorthPoint been under any obligation to identify who created the Painting. As WorthPoint has repeatedly explained to Ms. Trombetta, it had no knowledge of who painted the artwork; who had owned the artwork other than what was shown in the eBay results; and it had never seen or had possession of the artwortk. To ask WorthPoint to do so is overbroad and beyond WorthPoint's power, obligation, or ability to fulfill.

Ms. Trombetta also declares that her request for permanent injunctive relief "is in part due to the way both Defendants and their attorneys tried to further exploit me using legal means such a posting a bond, or WorthPoint suing me in another state where there is no personal jurisdiction." (Appellant's Br. at 52.) These are not grounds for the grant of permanent injunctive relief, and further factually inaccurate. Posting a bond and commencing a lawsuit do not constitute "exploitation."

Furthermore, Ms. Trombetta's requested relief of ordering Defendants to remove her name from the painting (Appellant's Br. at 62), similar to her earlier request for Defendants to remove "any saved data of the now-removed eBay post and WorthPoint Catalog Entry that may be in the possession of any third party on the entire internet" (A-166), is facially overbroad and beyond WorthPoint's abilities

58

to fulfill. WorthPoint is not in possession of the physical painting (it never was), cannot change it, and cannot control what third parties have saved or cached.

Ms. Trombetta has provided no basis upon which to conclude that the District Court committed any error of law or clear error of fact so as to warrant a finding of abuse of discretion to overturn the District Court's judgment. *See, e.g., Babalola*, *supra*, 1999 U.S. App. LEXIS 24376, at *3. The District Court properly denied all requested injunctive relief.

## VII. The District Court Properly Denied Ms. Trombetta's Motion for Reconsideration

Ms. Trombetta's motion for reconsideration under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure was properly denied by the District Court (A-171–78). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *citing Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

Appellate courts review an order denying Fed. R. Civ. P. 60 or 59(e) relief generally for abuse of discretion. *Kamdem-Ouaffo v. Balchem Corp.*, No. 23-455-cv, 2024 U.S. App. LEXIS 7104, at *3-4 (2d Cir. 2024) (plaintiff's motion for reconsideration failed on the merits since plaintiff had not identified any new

59

evidence or exceptional circumstances warranting relief). The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked. Denials of motions for reconsideration are reviewed only for abuse of discretion." *Analytical Surveys, supra,* 684 F.3d at 52 (internal citations omitted).

The District Court found that Ms. Trombetta's motion was precisely such an impermissible attempt to relitigate (A-174, where the "Court reject[ed] Trombetta's attempt to relitigate long-decided issues pertaining to discovery in this action").

Ms. Trombetta proffered screenshots taken throughout 2017 showing Google search results displaying a link to the WorthPoint Catalog Entry. The District Court properly found that these additional screenshots "are not material to the relevant analysis" and "fail[] to create a genuine dispute of material fact for the same reasons discussed in the Final Opinion." (A-175–76.) As the District Court explained: "As the Court found from consideration of the expert testimony offered by WorthPoint's witnesses, screenshots of Google search results could still display a 'cached' version of the webpage even after WorthPoint deactivated the page." (A-176.) This explanation and analysis is well-reasoned and remains relevant to this appeal. Moreover, Ms. Trombetta's additional screenshots from later months of 2017 suffer from the identical deficiency as the March 2017 screenshots considered in the original opinion: they show Google search results, not a live WorthPoint page.

Ms. Trombetta plainly could not overcome the strict standard prescribed by the Federal Rules, and the District Court did not abuse its discretion in so finding.

## VIII. Ms. Trombetta Has Waived or Forfeited Numerous Arguments

Several arguments raised in Ms. Trombetta's brief were not properly preserved below or are not cognizable on appeal.

### A. Due Process Violations

First, Ms. Trombetta contends the District Court denied her equal rights under 28 U.S.C. § 1654 and the Due Process Clause, including by allegedly losing her February 16, 2024 court filings and not giving her adequate time to respond to Judge Swain's February 8, 2024 Memorandum.

*Pro se* litigants receive liberal construction of pleadings, but they are still bound by the same procedural rules. *See Alzawahra v. Albany Med. Ctr.*, 546 F. App'x 53, 54 (2d Cir. 2013) ("Although a *pro se* litigant is entitled to a liberal construction of his filings … his *pro se* status does not relieve him of his obligation to comply with the relevant procedural rules"). Ms. Trombetta cites no authority holding that a docketing issue amounts to a due process violation. She filed a Motion for Reconsideration and a Motion for Extension, indicating she was not denied the opportunity to be heard. (A-171−78.) (Any alleged docketing error is a clerical matter, not a substantive due process violation, and she has not shown prejudice.

61

## B. Discovery Sanctions

Ms. Trombetta argues that discovery sanctions should have been imposed against WorthPoint under FRCP 37(b). (Appellant's Br at 52, 58, 59.) Magistrate Judge Cave addressed the underlying discovery disputes, ordered limited production, deemed the relevant production issues resolved, closed discovery, and denied further discovery relief. (SA-130–31; A-123.) Judge Swain later rejected Ms. Trombetta's renewed attempts to relitigate those discovery issues. (A-174.) Ms. Trombetta has not demonstrated that the denial of sanctions was an abuse of discretion, particularly where the Court thoroughly considered the discovery disputes and deemed them resolved (in favor of WorthPoint).

## CONCLUSION

This Court should affirm the judgment below. The claims Ms. Trombetta asserted against WorthPoint expired long before she sought to add WorthPoint to this action. Having learned of the Catalog Entry in August 2015 (meaning the Catalog Entry had been at best posted before then), Ms. Trombetta waited until February 2020 to name WorthPoint as a party, a delay of nearly five years that far exceeds the Copyright Act's three-year statute limitations, even accounting for the discovery rule. Nor does Ms. Trombetta's belated amendment relate back under Rule 15(c) to the date she filed her complaint against the unrelated co-defendant; she was

62

fully aware of WorthPoint's identity and role from the outset yet made a deliberate choice not to pursue WorthPoint in her original complaint.

Ms. Trombetta's sole avenue for a timely claim required demonstrating that WorthPoint engaged in infringing conduct after February 21, 2017. She offered no such proof. The record contains undisputed testimony from fact witness Jason Packer, corroborating server logs, and technical analysis from expert witness Jessie Stricchiola confirming that WorthPoint took down the content (which had been posted through an automated upload of millions of auction results from eBay) on February 4, 2016, and that it never reappeared on the company's platform. Ms. Trombetta's screenshots of Google search results failed to raise a triable issue. As Ms. Stricchiola's unrebutted opinion made clear, search engines routinely retain and display remnants of pages that no longer exist at their source. Tellingly, Ms. Trombetta could not testify that she or anyone else navigated from those search results to a live WorthPoint page in 2017.

The District Court's case-management and evidentiary decisions likewise warrant no reversal. Admitting the Packer and Stricchiola testimony, barring Ms. Trombetta's late-disclosed experts, and closing discovery after years of extensions all fell squarely within the District Court's discretionary authority. Ms. Trombetta's accusations of fraud and partiality on the part of the judiciary lack any evidentiary foundation. Equitable relief serves no purpose where the challenged material has

been offline for close to a decade and nothing suggests it will resurface. Finally, Ms. Trombetta's motion for reconsideration raised no overlooked facts or law, and many of the arguments she now advances on appeal were never preserved below.

For these reasons, the District Court's decision should be affirmed.

/s/ *Jana Slavina Farmer*
Jana Slavina Farmer
Adam R. Bialek
Wilson, Elser, Moskowitz,
Edelman & Dicker LLP
*Attorneys for Defendant-Appellee*
*WorthPoint Corporation*
150 East 42nd Street
New York, NY 10017
(212) 490-3000

64

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 13,331 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)-(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: New York, New York

July 17, 2026