# Docket # 25-817

# APELLANT'S APPEAL'S BRIEF **RESPONSE**

---

UNITED STATES COURTS OF APPEALS
FOR THE SECOND CIRCUIT

---

Annamarie Trombetta, Artist

Plaintiff ~ Appellant

v.

Norb and Marie Novocins, Estate Auctions Inc.
and
WorthPoint Corporation

Defendants ~ Appellees

William Seippel, worthpoint.com

Jason Packer, Employee at WorthPoint Corporation

---

On Appeal from the United States District Court
For the Southern District of New York

---

Response Brief Appellant Annamarie Trombetta

Annamarie Trombetta, Pro Se
175 East 96th Street
New York, New York 10128
Tel. (929) 286-3235

## Table of Contents

Table of Contents……………………………………………..Page 2

SDNY Case Information Parties and Attorneys……………Page 3

Table of Authorities ………………………………………..Page 4

Cases ……………………………………………………….Page 4

Statutes …………………………………………………..….Page 5

Rules ……………………………………………………….Page 6

Appellant’s Introduction Response to
Both Appellees………………………………………….Page 8,9.10,11,12,13,

Statutes of Limitations Copyright and Fraud……………….Page 14,15

Appellees Intentional 15,16,
Discovery Delays, Disputes 17,18,19
Committing Fraud Prior 20,21,22,
To And During Litigation……………………………….Page 23,24,25,

Appellant’s Deposition Statements……………………………Page 26,27,28

Appellant’s Response to First Appellees 29,30,31,32
EAI The Novocins Reply Brief……………………………… .Page, 33,34,35,36

Appellant’s Filed Art Sales /Price List…………………………Page 37,38, 39,

Appellant’s Response To 40,41,42,43,44,
Second Appellees Reply……..……………………………..Page 45,46,47,48,49,

Appellant’s Lanham Act 49,50,51, 52,53,
Appellant’s New York Arts & Cultural Affairs Law ………..….Page 54,55,56,57,58

Appellant’s Summary……………………………………..Page58,59,60,61

Conclusion……………………………………………………..Page 61

**SDNY 2018–0993-cv** **Appeal's Case No. 25-817**

**United States Court of Appeals**

**For The**

**Second Circuit District Of New York**

---

Appeals from the United States District Court for the Southern District of New York in Case No. 18-CV-0993, Judge Laura Taylor Swain

---

**BRIEF FOR PLAINTIFF- APPELLANT**

| **PARTIES** | **ATTORNEY LISTING** |
| --- | --- |
| Annamarie Trombetta, Artist<br><br>Plaintiff, Appellant | Pro Se Counsel, Plaintiff<br>175 East 96th Street<br>New York, New York 10128 |
| vs. | |
| Norb and Marie Novocin, Estate Auctions Inc.<br><br>Defendant, Appellees | Attorney Anderson J. Duff<br>353 Ocean Avenue<br>Brooklyn, New York 11226 |
| and | Wilson Elser Moskowitz Edelman Dicker LLP |
| WorthPoint Corporation<br><br>Defendants, Appellees | Attorney Adam R. Bialek<br>150 East 42nd Street<br>New York, New York 10017 |
| Will Seippel<br>CEO, worthpoint.com | Attorney Jana Slavina Farmer<br>1133 Westchester Avenue<br>White Plains, New York, 10604 |
| Jason Packer, Employee<br>at worthpoint.com | |

# TABLE OF AUTHORITIES

## CASES

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)……………………..Page 8

*No.2:23-cv-0932-JHC*

*Federal Trade Commission vs Amazon .com Inc.*………………………..…Page 11

*Two Pesos vs. Taco Cabana 505 U.S. 763 at 768 (1992)*………………..Page 52

*Warner Chappell Music, Inc. v. Nealy*,…………………………………..Page 13

Rosen vs Terapeak & WorthPoint……………………………………..Page 15,54

Petrella v. Metro-Goldwyn-Mayer, Inc., 572 US.663,670-71(2014) …….Page 12

Fletcher et al v. Doig et al, No. 1:2013cv03270……………………………Page 60

# TABLE OF AUTHORITIES

## STATUTES

Lanham Act 15 U.S.C. § 1125……………………………Page 15, 29, 47
………………………………………………………… ,48,49,50,51,53

New York Consolidation Laws on Arts & Cultural Affairs
Title C Article § 14.03 ……………………………………Page 15,29,48, 49,52

Vexatious Litigant statute, 28 U.S.C. § 1927……..........…....Page 7, 9 ,11

28 U.S. Code § 2202 Declaratory and Permanent Injunction……Page7 ,10, 59,

17 U.S.C. § 106A Visual Artists Right Act ("VARA")…………Page 7, 29

17 U.S.C.S. § § 101-1401………………………………………Page 32

17 U.S.C.S. § 501(a) Direct Copyright Infringement …………..…Page 27

17 U.S.C. § 502(a)………………………………………………Page 56

17 U.S.C.S. § 504 Damages Actual or Statutory……………………Page22,58

17 U.S.C.S. § 507 (b) ……………………………………………..Page ,29

17 U.S.C.DMCA § 1202(a) § 1202(b) ……………………………Page32.41

DMCA§1202(a) → prohibits providing false copyright
management information (CMI),,…………………………………Page 42,43

DMCA§1202(b) → prohibits removing or altering CMI
( author names, copyright notices, metadata)………………………Page 8,42,43

28 U.S.C § 1654 equal rights ………………………………………Page 26

15U.S.C. § 1125…………………………………………………….Page 13.50

# RULES

FRCP Fraud (9)………………………………………………………. Page 9, 10

Separate Accrual Rule— 17 U.S.C.S. § 507 (b)……………………. Page 12

Injury Rule— 17 U.S.C.S. § 507 (b)…………………………………Page 59

Local Civil Rule 33.3……………………………………………..Page 18

Rule 15 for Fed. R. Civ. P. 15(c)………………………………..Page23

FRCP Rule 901 ………………………………………………..Page 17

FRCP Rule 26…………………………………………………..Page 13,22

FRCP Rule 37…..……………………………………………..Page 13,22

Fed. R. Civ. P. 56 56(a)……………………………………….Page 10

**APPELLANT'S INTRODUCTION RESPONSE TO BOTH APPELLEES**

Appellant's Appeal arises from two Appellees who willfully perpetuated baneful public propaganda, unending litigation disputes and in turn, errors were made in the District Court, resulting in the violations of my rights in the judicial due process. **See Doc. 538 p.17 Doc. 33- EX. #1**. I filed my lawsuit in the District Court to legally document, disassociate and prevent my name from being incorrectly, falsely and unethically **abused.** My Appeal is to prevent both Appellees from creating future misattributions, with forged signatures, with a near similar name as mine, on work I did not create. I also need to protect any illegal use of my website content and self authored biography, first listed on askART in June 2015, mere weeks before EAI's fraudulent painting webpage was on WorthPoint's website.

Appellant 's 2018 lawsuit was based on NYLAG stating, if Appellees create future misattributions without legal action for this misattribution, legally it would **not** work in my favor. The District Court, awarded VARA, despite errors in assessing VARA and my prima facie evidence, it verified I did not paint Appellees' **2012** eBay painting, rendering its sale fraudulent. Both Appellees failed to produce Court ordered Discovery conjoined with false, deficient, flawed Discovery documents confirmed EAI's painting sale in 2012 and 1972 oil painting webpage was an complete, false fabrication. My Appeal is to hold both Appellees financially accountable for willfully committing and concealing fraud filed in **Doc. 348, Doc. 366 Doc. 542 p. 1-12** and to obtain Permanent Injunctive Relief. I lost eleven years of my time, burdened with a lawsuit, caused by Appellees willful, persistent production of pernicious propaganda, thus a Vexatious Litigation, 28 U.S.C §1927, ensued.

As a matter of law, in the District Court's Fed. Rules of Civ. P. 56, 56(a); Summary Judgment procedure is a method for promptly disposing of actions, often implemented when there is NO genuine issue as to any material facts. Appellees lawyers perfunctorily filed motions for summary judgment which Judge Cave scheduled and ordered, as a means of suppressing Appellant's impeccable material facts and legal rights, which reasonably, would result in a different decision. Appellees attorneys did so to conceal Appellees intentional commitment of Fraud Rule 9 prior to and during litigation. Appellees filed multiple false dated statements, missing visuals in their documents. WorthPoint's DMCA 1202 violations are in its false written claims and logos in Appellees online 1972 " Original," (one of a kind) oil painting webpage. Articulated in the case *Celotex Corp. vs. Catrett, 477 U.S. 317, 322 (1986 )*, the briefing for Celotex Corp. vs Catrett, case states " A defendant cannot be granted summary judgment through a conclusory assertion the plaintiff **does not have evidence** to support the complaint. **Instead, the defendant must show the absence of evidence in the discovery record**." In litigation, Appellees perpetually produced fraudulent statements, created fake documents, **Doc. 320, 322** to falsify an illusion of a 2012 eBay sale, that did not occur. In character with the pattern within both Appellees' intentional false claims, both Appellees still assert **1-** a 2012 eBay painting sale occurred **2-** I first contacted WorthPoint in Feb. 2016, **NOT** in 2015 see **Doc. 33 Ex.1** or **3-** that I did not file past art sales see **Doc. 1.p 6 #6, Doc. 74 p. 8, Docs 72-73 p.27 Doc. 517-4.** Appellees' summary judgment was "not proper ". Moreover, it is not proper to prolong a simple case, create and file counterfeit documents i.e., intentionally commit fraud, to conceal the commitment of

fraud which is what Appellees did and the District Court willfully or in error, ignored.

The District Court did not acknowledge Appellant's prima facie evidence, any of my pleadings **Doc. 432, 488 , Doc. 496-1, Doc. 504, Doc. 542, Doc. 552,** all my exhibits, my six witnesses, answers to interrogatories, admissions on file, together with Mr. Patrick O'Leary's Affidavit, Doc. 322, an internet expert's who verified, EAI's three different eBay and Pay Pal receipts for one painting sale are all counterfeit, deficient and are missing vital information. WorthPoint's IT tech, Jason Packer, alleges permanently removing the false post on Feb. 4, 2016. however, he produced false charts and data, based on annamarie@trombettaart.com, my website email, which I never used to email WorthPoint, **AFTER** I filed my SAC to include fraud. These genuine issues of deleterious deceit prove Appellees repeatedly and intentionally committed fraud by creating, counterfeit material facts to cause burdens I must dispute.The District Court ignored my SAC **Doc. 366,** however, the statutes of limitations are timely. The District Court ignored prima facie evidence, material facts and fraud claims, elongating my lawsuit. As a matter of law, Appellees are not entitled to Summary Judgment. False concealment of documents, harassing my witnesses, communications demonstrating intentional misrepresentations to the court, false or contradictory testimony to disguise deceit and fraud in Appellees evidence and depositions constitutes Vexatious Litigation 28 U.S.C §1927.

Most importantly, for an artist or anyone, who had their identity falsely used, without their knowledge is in true danger. For victims to be able to prove they did not sign a painting, legal document, contract is extremely improbable. EAI willfully produced **two different signatures**. Prior toSummary Judgment, at a Meet and Confer, June 2023, Appellees attorneys were challenging, my two 1972 childhood

signatures as genuinely mine. after Discovery began, April,2022. **Doc. 430-3, Doc. 504 p.1.** My girl scout sash had location decals (Bklyn-NY) noted in EAI's cut off biography webpage. My 1972 signatures had badge drawings matching my sash.See **Doc. 526-2 on p 13, Doc. 527-1,p. 20**. Neither of EAI's signatures is correctly signed Annamarie Trombetta. In **Docs. 538-556,** Judge Swain failure to acknowledge in writing, my two signatures . Appellees attorneys have inflicted threats of legal fees **Doc.317, Doc.527-1, Doc.522-5. ( Insert Below)** Appellees Replies still refute my prima facie evidence, asserting my biography was on askART prior to 2015, despite my verified emails with author Bob Bahr who recommended me to askART.

Appellant's Reply pinpoints Appellees' filed proof. EAI intentionally, churned out a ridiculous, embarrassing, fraudulent **Advertisement, Doc. 425-15 p.37 in 2015.** WorthPoint's public false claims, visual logos, asserts false marketing and advertising to piggyback off my name and success. The threat of Appellees *"finding paintings* " with a scribbled similar name as mine, possibly creating a false secondary market is the a viable threat and caused my suit. To reveal my concern, I filed BBB complaints and a 2015 lawsuit by other victims against WorthPoint in **Doc.232**, **Doc. 552 in EX. #9** and **Case 25-817, DktEntry: 116.5,** verifying WorthPoints illegal conduct. Appellees are eBay based businesses. EAI subscribes to WorthPoint who produced, falsified, conjoined, sustained a fraudulent sale and webpage when I made a one time purchase using eBay July 2015.

**WorthPoint attorney 2026 Quote by Adam Bialek**

> If you would like to discuss a resolution whereby the Defendant WorthPoint agrees to waive its right to collect fees (which is already over $530K) in exchange for the dismissal of the appeal and a general release, please let us know. I would be happy to discuss requesting such a [illegible] from my client.
>
> Thanks,
>
> Adam

Elements in my lawsuit, such as use of my name, identity, location, use of my self authored biography, without my knowledge or consent is similar, to the recent lawsuit: *Case No.2:23-cv-0932-JHC Federal Trade Commission vs. Amazon.com Inc*. In 2023, Amazon, used manipulative marketing and sales tactics, "dark patterns" to trick users without their consent, into auto-renewing Prime memberships. Amazon **intentionally** built a confusing, multi-step cancellation process **preventing subscribers from removing its personal content from Amazon's website.** Similar to Appellees who usurped my name, biography and identity as a New York artist also made it intentionally confusing and difficult to remove one false webpage with my personal content from WorthPoint's website. Prior to litigation, documented in **Doc. 542 on p.17-23, I made 16 removal attempts in Jan. 2016** only for it to be reposted again in late 2016 into 2017. For over two years, WorthPoint twice obfuscated its false 1972 painting webpage from removal which is consistent with the actions in 2015 and the subterfuge seen in the Amazon lawsuit. **In my case, I did not freely chose to use any service nor had any association with Appellees.** The Court awarded billions and granted Permanent Injunctive Relief to Amazon victims.

Appellant is the sole source of income for my personal living and professional business expenses. Any time lost to remove or to prevent false internet postings, forged signatures, online eBay sales, "*starting at 99 cents*" **(WPSA882)** from occurring, or litigating to obtain Permanent Injunctive Relief, causes financial and professional deductions and losses. Appellees attempts to prolong Discovery, disrupt deadlines, with mistakes made by the District Court, caused an eleven year lost of income. Pro Se Appellant, in dealing with this ordeal, was deliberately

derailed from creating new artwork, exhibiting artwork in the US and abroad, applying for art residences, applying for grants, traveling, write ups, promoting my work in print or online ; in summary all that Appellantachieved, won and done, prior to Appellees's litigation. **Doc.517–1 Doc.517–2,**

## STATUTES OF LIMITATIONS COPYRIGHT AND FRAUD

Appellant, according to the Separate Accrual Rule 17 U.S.C.S. § 507 (b) timely filed my Original Complaint, **Doc. 1, on 2/ 5/18.** On Jan. 10, 2017, I contacted EAI, confirming the 1972 painting SOLD and emailed WorthPoint about its false painting webpage REPOST yet no response. My attorney sent and contacted EAI after sending a 2017 settlement letter. EAI confirmed no involvement with third party,WorthPoint's reposting EAI's 1972 painting webpage, **Doc. 33 p. 49. on 1/17/20**. Judge Abrams granted my Amended Complaint against WorthPoint Corp., Will Seippel and Jason Packer. Delays caused by the 2020 pandemic ensued.

Under the Separate Accrual rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced and/or distributed, in this case on the world wide web, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrues" at the time the wrong occurs. In summary , each infringing act starts a new limitations period. **Doc. 187 p.14 Judge Abrams filed in Doc. 518-2 p.16.**

Cir. 2014).[5] Moreover,

> it is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrues" at the time the wrong occurs. In short, each infringing act starts a new limitations period.

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014)

The statutes of limitation for fraud and tort in New York, is six years. Fraud in general is two years from the confirmed known fraud. FRCP fraud (9). The cause of action accrues when every element of the claim, including injury can be truthfully alleged, even though the injured party may be ignorant of the existence of the wrong or injury, courts will dismiss a fraud claim when the alleged facts establish that duty of inquiry existed and that inquiry was **NOT** pursued, hence the reason why NYLAG advised me to file a lawsuit (I noted Scienter in my SAC by Judge Cave in **Doc. 40** and Judge Abrams in **Doc. 187**).

Moreover, on May 9, 2024, in case *Warner Chappell Music, Inc. v. Nealy*, the U.S. Supreme Court ruled 6-3 all copyright owners are entitled to monetary relief for timely infringement claims - *i.e.*, claims brought within the Copyright Act's statute of limitations - no matter **when** the infringement occurred.

## APPELLEES INTENTIONAL DISCOVERY DELAYS DISPUTES COMMITTING FRAUD PRIOR TO AND DURING LITIGATION

Discovery began April 8, 2022. On April 26, 2022, after a Conference with Judge Cave **Doc. 223,** EAI produced on April 26, 2022 a fraudulent document EAI000053 allegedly from askART claiming my biography was listed in 2008.





Subject: askART Information
Date:
From: AskART Customer Service
To:

Elements revealing a counterfeit email is the absent **@ symbol** in askART's address. From : askART **MISSING @ symbol** in between Customer Service. EAI's fake document is filed in **Doc. 420-1p. 62 (EAI SA420).** Before EAI's late production of




EAI's fraudulent askART email, EAI000053- dated April 26, 2022, Appellant produced two documents The first email dated March 28, 2022 is from art appraisal assistant Molly Gallo confirming no askART biography before 2009. Ms Skuzacek was my art expert witness at my Dec, 2009 Staten Island Ferry Crash trial and had my past art career records d till 2009. The first email states NO askART biography on record, is filed in **Doc. 429 p. 21 on 4/17/23, filed in Doc 522-1 p.12** on **7/06/23 and Doc. 493-1 p.12.** The second confirmation of no record of any 2008 biography on askART is an email dated **April 6, 2022** from my expert. witness, Gayle Skluzachek. Gayle's email was produced April 8, 2022, **twenty days before EAI** produced its fake askART evidence bate stamped EAI000053. (EAI's filed in **Doc. 420-1 p.62).** My April 6, 2022, second email was filed in **Doc. 429 p.22** on **on 4/17/23** filed in **Doc. 430-3, p. 13 on 4/17/23.** Before I filed my law suit, in2 018, I contacted askART Jan.16 2018, to confirm who/when my biography was listed on askART in 2015. Emails with Kris from askART's are filed in **Doc. 429 p. 24 -26**. In July 2020 EAI filed a Bond Motion for twenty thousand dollars. I contacted Kris from askART again to confirm my biography on askART filed in **Doc. 72** p.22 **-Doc. 73 p.22 p.30-31, Doc. 75 p. 18 p. 19-20.** Kris stated my biography listing is from a publication years ago. (Bob Bahrs 2015 article).



May 2022, I filed my first SAC to include fraud in **Doc. 224, Doc. 225 in 05/18/22.** June 16, 2022 Judge Cave held a phone conference. **Transcript records in Doc.245,** note on p.16 to 18, I produced my 2015 price lists to Appellees. Noted on p.18, Judge Cave derailed my requests in my Rule 37 letter, and focused on Defendants demands from Appellant. Page 23, I noted my filing in **Doc.232,** 2015 lawsuit Rosen vs Terapeak & WorthPoint to Judge Cave . WorthPoint's webmaster Mr. Watkins, told me Terapeak was the name of the data, licensing source of WorthPoint. On pages 23, 24 , Appellees wanted all the contact addresses of all potential witnesses naming Peter Trippi, Editor Art Magazine. Mr Trippi withdrew noted in Sept 22, 2022 email to all attorneys. On Oct. 7, 2022, Mr Trippi emailed Ms. Farmer and I. He was away, returned home to a subpoena outside his apt. It is filed in **Doc. 526-2 p.11-12.** I never gave Mr. Trippi's address to WorthPoint's attorneys. I wrote all attorneys Mr. Trippi and Mr. Caropreso withdrew, however subpoenas were sent to their home/ work locations. On p.37 Mr. Duff's falsely claimed he did not receive my Rule 37 letter. which I refuted in the moment **p. 37 lines 3 to 25 in Doc. 245.** On page 40 Judge Cave stated I need the Court's permission to file my SAC and to wait until fact Discovery concluded. **Doc. 245, p. 40 line 9- 25.** The above governs from June to Dec.2022, the gamesmanship by Appellees to deliberately delayed Discovery, and abuse Appellant and my witnesses. EAI/WorthPoint did so to concealed EAI's fraudulent eBay 's 2012 painting sale and WorthPoint's fraudulent advertising/ marketing webpage.

Appellant filed numerous dockets regarding EAI and WorthPoint's bad faith,

delays failure to produce Discovery is in **Doc. 257, Doc. 259, Doc.261, Doc.266, Doc.270, Doc.274, Doc.279, Doc. 280.** Filed in **Doc 447-5** EAI's hid behind Local Civil Rule 33.3 to prevent EAI's production of Discovery. On Sept. 21, 2022, Mr. Novocin's testified on p. 73-77. (**WPSA909- WPSA909-** his first eBay receipt, was cut off on the right side, **(EAI000058-59) Doc. 320** and violated **FRCP 901**. It took from the Sept. 21st to Nov.16, 2022 for EAI to produce a second eBay receipt which was visually different from the first. **(EAI000060).**

During the Sept. 21, 2022, Novocin deposition Appellant emailed all parties, my Jan.10 2017 audio call with Mr. Novocin during our break p.158 **(WPSA994).** Novocin falsely testified I threatened to sue him in our Jan. 2017 call. **Doc. 432 p.7-8.** Despite emailing my 2017 recordin, p.159 (**WPSA995)**, Appellees claimed they could not hear the same audio emailed to Judge Abrams, Mr. Duff in Feb 2019. Judge Abrams used Mr. Novocin's phras*e"Go For It" (hire attorney)* on **p. 3 of Doc. 23** (**EAI**SA021). In Discovery April 11, 2022, I produced to all parties the same 2017 audio verified in **Doc.222 4/25/22-Doc. 496-2 p.4-5** and noted in my Reconsider Motion **Doc. 542 31-36.** On Sept. 23, 2022 in **Doc.283 , 9/23/22 Doc. 284**, I requested to compel EAI to produce Discovery and requested supervised Zoom Meet and Confer which Judge Cave denied .

On Sept. 26, 2022, Jana Farmer and Nicole Haimson, emailed attached letter with warnings. Unfortunately, I downloaded their letters. My computer froze. I had technical issues see **Doc. 522-5 p. 12-13.** I wrote a letter informing the Court of my blockage **Doc. 287,** and had to changed my email address as a result. In **Doc. 289** on **10/ 6/22 Doc. 299** on **10/17/22** in **Doc. 300, Doc. 304** on

**10/26/22- Doc. 305** on **10/28/22.** EAI's stalled to produce its eBay receipt

In **Doc, 295 -**I had to request sealing my witnesses personal information WorthPoint publicly filed. In **Doc. 287, Doc. 289, Doc. 292,** and **Doc. 301, Doc. 304, Doc.307,Doc.310** WorthPoint's attorneys made errors in their demands due to WorthPoint's lawsuit against me in Georgia, a frivolous, malicious prosecution IIED lawsuit improperly served 8/30/22, the same day as my nine hour deposition. WorthPoint's delayed serving its June 14, 2022 without a server's signature or a date. **Insert below .** WorthPoint's Georgia complaint was never mailed to my home in NYC**.** The cause of this malicious prosecution was due Judge Abrams ordered, granting permission to mail my Summons and Complaint to Will Seippel's home address. In 2020, Will Seippel tried to avoid my request to Waiver the summons in SDNY . Seippel willfully instructed his first lawyer to "DELAY" his response to my Waiver of Summons filed in **Doc. 518-1, p.19. (Ga lawsuit Doc.526-3p.1-25)** Seippel's command, mirrored WorthPoint's delayed removal of its false webpage in Aug. 2015-March 2016 and second repost 2016 into 2017.



Appellees corrupt immoral conduct compounded on August 30, 2022. I testified on p.**169 to p.181 (WPSA633)**informing Appellees their evidence was missing my name in the URL contradicting my true askART's URL. My art expert confirming their were NO askART biography in my file at the end of 2009.



To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you ____________, 20____

**WPSA633 Trombetta Depo. p.169**



**WPSA633 Trombetta Depo. p.170**



**Authentic askART URL with my name written TWICE**




WorthPoint's fraudulent documents bate stamped WP000141-WP000142 **(false 2010)** WP000143-WP000144 **(false 2014)** had two mistakes. Both URL are absent my name. Appellees fake pages state " *This biography from the Archives of AskART*". It is grammatically incorrect. The phrase does not have ***"is"*** or ***" was"*** - is **absent.** filed in **Doc. 348-2 p.13-16, Doc. 517-4 p.34-35, Appendix EX.#13**.

**Below: WorthPoint's Counterfeit URL**



**Grammatically Incorrect Phrase**




Attorney Jana Farmer worked with Georgia attorneys contributing to filings. WorthPoint timed SDNY Discovery deadlines to coincide with deadlines in Georgia

Default Judgement , prematurely filed in Georgia before the Court ruled on my Answer -in **Doc 526-3 p.11 Oct. 31, 2022** and on the day Ms. Farmer, delayed Discovery falsely writing I did not produce SDNY Discovery **Doc. 306.**

On June, 7, 2023 I had deadlines to file in SDNY **Doc. 495, Doc. 496, Doc. 497, Doc.498,** yet in Georgia I had a Zoom hearing scheduled with a substitute Judge. The court would NOT reschedule. The Judge erred signing a proposed order with future/ incorrect dates. This caused me to hire an attorney to dismiss a Seippels' frivolous, ill filed Default Judgment.

Recorded in the June transcript, **Doc. 245 and at** Novocin **Sept. 21, 2022** deposition in **Doc. 425-** are my requests for the full eBay receipt. On Oct. 29 2022, I emailed Novocin's Sept. 21st testimony after a Meet and Confer requesting EAI' s second 2012 eBay receipt. **Doc.312-1** When produced, on Nov. 16**,** the receipt, visually or in text content did not look like the first one. EAI derailed, abused and stole my time from producing expert witness reports.

**Nov. Depo p.77 Doc.527-1**
SEPT. 21 2022



**Doc. 312-1 p.1**
OCT. 29, 2022



**Doc. 527-1 p. 5**
NOV. 16, 2022



On Nov. 23, 2022, Discovery requests were ordered to reveal if the 2012 eBay sale took place-Transcript in **Doc.488-5 p.3 lines 5-11(WP2527).** I requested one electronic eBay receipt email. WorthPoint's attorneys emailed me

ambiguous coding during our Conference call, " Source Information" filed **Doc.526-1 p. 7 to 36 Doc. 551.** Judge Cave **in Doc. 319 filed 11/23/22,** # **1 a** ordered EAI to produce their Dec.1, 2012 native electronic eBay sale email envelope. I was ordered and complied with producing a native envelope email **#5a** EAI' s failed producing one electronic email resulted in more deficient, counterfeit evidence. On Dec. 1, 2022 in **Doc. 320, Exhibits #1** is Novocin's 2012 fake Pay Pal receipt bate stamped EAI000061-62 **-see Doc. 320 Ex. #5** .

To illustrate how EAI's Pay Pal receipt is fake look at the buyer's email address (ninascorreia@aol.com). It is **<u>NOT</u>** from <u>service@paypal.com</u> or by Pay Pal to EAI buyer's address ninascorreia@aol.com NOR issued from <u>ebay@ebay.com.</u> Secondly, ninascorreia@aol.com email is sent **TO** EAI's email address <u>ebay@estateaucions.inc</u> NOT to eBay or Pay Pal. _EAI's fake alleged email ninascorreia@aol.com t here is NO written proof the alleged buyer linked to Pay Pal or eBay. I subpoenaed EAI's buyer requesting all 2012 eBay and Pay Pal receipts. On <u>Oct. 22, 2022.</u> EAI alleged buyer stated she had no receipts. **Be low right.** When a purchase is made on eBay, links to PayPal's payment website. The fraudulent Pay Pal has **NO DATE** in the header as my authentic receipts.
My authentic eBay receipt didn't have the word **Subject**, as in EAI's fake receipt. An authentic eBay receipt has the Transaction ID code listed

**Insert Below Doc. 320 Fake PayPal** **Doc. 488-3 p.13 (WPSA2457).**




Gmail

Third Subpoena From Plaintiff Annamarie Trombetta

within my email from Pay Pal. Appellees' FAKE transaction number is under **the SUBJECT**. In my authentic eBay email my full address and the seller email is within my email. EAI's receipts have NO eBay or Pay Pal LOGO **Doc. 320 Ex. #3.** Below Excerpts of authentic Pay Pal and eBay receipts.

**<u>APPELLANT 'S</u> <u>Pay Pal Receipt in Doc. 320</u>** **<u>eBay Receipt in Doc. 320</u>**







Judge Cave overlooked, EAI's deficient documents denying my request to submit evidence to resolve this issue in **Doc. 321.** Appellant contacted my I nternet expert, Mr. O'Leary to decipher attorneys, ambiguous coding that could NOT be discerned without Mr. O'Leary's expertise and advanced computer technology, **Doc.517-8 p.10.** Mr. O'Leary produced an Affidavit to explain, verify, on the Court record, Appellees failure to comply with the court's request. Appellees coding was a third attempt to create another counterfeit EAI's eBay receipt, unlike the first two, in text and visual content. EAI could NOT produce one native electronic email envelope because none exists and why EAI produced three counterfeit receipts.

Mr. O'Leary's Affidavit filed Dec. 5, 2022, **Doc. 322.** presented EAI's three receipts with illustrations. I incurred an unnecessary financial burden to produce Mr. O'Leary's Affidavit caused by Appellees' deliberate gamesmanship. EAI deception/failures were unabashedly followed by Mr. Duff brazen email for

increased attorneys fees **Doc.527-2 p.29** after the Nov. 23, 2022 Call. EAI's Discovery delays caused me to request an expert report extension **Doc. 330.**

EAI's failure to produce the native electronic 2012 eBay email was substituted by more cut off documents at the top, bottom and right side of each bate stamped page <u>**EAI00073 to EAI00079**</u> **Doc. 517-9 on 6/29/23 p. 22-28, Doc.527-2 pages 3- 5-** Please compare **EAI000063-see Doc. 488-2 filed 05/30/23 -p. 22 (WPSA2431).** EAI true email coding for Teri Meissner's Jan. 6, 2017 genuine email. The document is complete, un cut without a black backround, verses <u>EAI EAI00073 to EAI00079</u> truncated text on black pages. The electronic envelope of any email exported as a PDF is the whole email content in its entirety, meaning the content cannot be manipulated .

Judge Cave twice ordered me to certify Fact Discovery completion, Judge Caves order to EAI for native electronic eBay email envelope was never produced, **Doc. 331, Doc. 338.** I noted, explained and illustrated to Judge Cave in **Doc. 339 and Doc.493,** any email text/coding can be copied/ pasted into another fraudulent version using the same text. EAI Appellees failed to comply with a court order Discovery violating FRCP 26 and FRCP 37. This meritoriously proves the eBay sale of an " Original" 1972 painting did not occur. At the beginning or my 2015 ordeal, I verified with an eBay specialist, Archer, in phone call, that the 2012 eBay sale was **"undefined"**— District Court Judge Swain overlooked **ALL** phone calls, in one statement on **page 4 in Doc. 538.** Judge Swain contradicted Judge Caves decision in **Doc.302** granting my audio recording via transcripts. All my calls were filed April 11, 2022 **Doc.496-2 p.4.**

¶ 17; EAI 56.1 ¶¶ 27-33.) The exact details of these phone calls are disputed and are ultimately immaterial, but it is clear that the parties were unable to conclude the matter in a manner satisfactory to the Plaintiff at that time. (<u>Id.</u>)

The "Undefined ebay sale" statement is filed in **Doc. 517-5 p. 19-20-21, Doc. 527-1p.29. (WPSA2576 WSA2814).** EBay phone call is filed **Doc. 488-6 pages 14 to 36, Doc. 496-2 pages 9 to 30, Doc. 517-7 pages 2 to 22.**

In Doc. 375, Judge Cave deemed Discovery closed on Dec. 19, 2022 before I filed my SAC and would not reopen Discovery. My SAC, cites all related Rule15, p. 1, and Rule 15(c) (1) for an amendment that relates back to the Original Complaint. In **Doc. 381 Doc. 382 and Doc. 386**, Appellant re-petitioned to reopen Discovery, requested to submit expert witness reports, all denied.

In Summary Judgment, WorthPoint **Doc. 427p. 19-20** , took a " No Position" stance stating WorthPoint had no input and avoided statements to explain its logo under the A. Trombetta signature and written claim *" Copyrighted Work Licensed by WorthPoint"*. In EAI's S of F **No.15** and No 16 **Doc. 504 p. 4 -p.6** , EAI signatures A. Trombetta absent my first name and red signature were both disputed. Mr. Duff wrote *I am willing to make* misrepresentations under oath.

**Doc. 504 p. 4 SOF No.15**

**PLAINTIFF'S STATEMENT OF FACTS NO. 15**

No. 15. There is no dispute that the signature A. Trombetta ,on the front of the 1972 Original Oil Painting entitled Man With Red is not the Plaintiff's signature.

**EAI Defendants' Response: Disputed. The record does not demonstrate with evidence aside from Plaintiff's testimony that this statement is true, and Plaintiff has demonstrated that she is willing to make misrepresentations while under oath.**

Novocin testimony on the A. Trombetta signature is on **p. 47 in Doc .518-2 p.8**

Q. Is this one of the photographs that was included in Estate Auctions Ebay listing for that painting?
A. Yes.
Q. Sir, how do you know that?
A. Because if there's anything that we have seen over and over is this signature. It came off of WorthPoint it is the only signature or only picture that surfaced on WorthPoint. Okay, I don't know. That's how we know. It just was there.

Novocin points back to WorthPoint devoid of any meaning *" it just was there"*. Judge Swain on **page 25 Doc. 538** wrote EAI was cooperative in Discovery. I did not provide income losses and I have no lost o pportunities. For over a decade due to

**Judge Swain Doc. 538 p. 25**

All statements above prove EAI delays for one 2012 painting sale and Worth Point webpage were total propaganda to conceal Appellees fraud, done to burden Appellant, prolong this lawsuit, resulting in a Vexatious Litigation.


constitutes a net profit. (EAI 36.1 ¶ 12.) Third, EAI has been cooperative in providing the appropriate receipts and evidence to establish the value of the infringing material. Fourth, despite her conclusory allegations of reputational damages, it is not clear from the facts in the record that the Plaintiff lost any revenue because of the infringement. Ms. Trentacosta refused to provide discovery evidence regarding her usual income from art sales, and she has offered no admissible evidence demonstrating that the lost opportunities to sell or showcase her work due to the Listing. Fifth, the conduct and attitude of the parties weighs in favor of a modest award of

**APPELLANT'S AUGUST 30, 2022 DEPOSITION STATEMENTS**

On **p. 101 Doc. 518-2 p.10** Attorneys rebuking liability for claims in WorthPoint's false painting webpage.



On. **p. 121, 122** my named spelled wrong

I am a NY artist. **Doc. 518-1 p .2-3**



On **p. 124,** I noted Appellees duplicity of responses. Novocin's sold painting In Jan. 10, 2017 transcript . **Doc. 527-1 p. 24-28**


A Sitting here today there is a plethora of seven years worth of miscommunication and duplicitous responses. I cannot say in complete certainty that this sale happened on ebay.


A. Based on a phone call on January 10, 2017 straight from Mr. Novocin's words recorded in a phone call, he claims that this painting was sold on eBay. August 30, 2022

On **p. 130 lines 2 -20**

I "began training in high school

statement used in the 1972 painting ad.

Oil paints are toxic for children.

A. Trombetta

Do you need to --

A. I began my formal training -- no. I am trying to point out to you that it states in my biography I began my formal training --

Q. Did you paint in --

A. [illegible] in high school. [illegible] question in high school

Q. That's when you started painting in oil?

A. That is correct.

Q. You never painted in oil before then?

A. For the [illegible] oil and oil paints are highly toxic. For a child to paint in oil the atmosphere and the paints would have to be clearly and carefully monitored. Some paints in oil have a warning on them. That's how toxic they are.

Q. When did you start painting in oil?

A. Asked and answered.

Q. In high school?

On **p. 169**

[illegible]

I confirmed

2015 askART

First time

listing.

On **p. 170 Fake**

A. Trombetta

[illegible]

WorthPoint

Fake

askART

No name in

The URL.

On **p. 173, Doc. 518-2 p.11** I did not paint 1972 painting. No licensing agreement. No 20012 meta data from Appellees.

[illegible]

On **p. 174, Doc. 518-2 p.12.** My website was on WorthPoint's website.



On **p. 175** WorthPoint's website correctly spelled my name. EAI's red signature misspelled my name. Photo in WorthPoint's webpage does not have my full name.



On **p. 178**, **Aug. 30, 2022 Doc. 518-1 p.4** I told Appellees I NEVER gave WorthPoint my website email address. WorthPoint sent emails to my website email. Jason Packer's Declaration issued charts and dated data based on my website email <u>annamarie@trombettaart.com</u> I never used.



Q. Do you know whether there is any evidence that Worthpoint visited your website prior to February 2015 or August 2015?

A. I need to answer this in three particular ways. First and for most, since this occurred in 2015 it has been a nightmare in which like a horror movie the source of the chaos and confusion keeps coming back to life and has yet to be vanquished.

Secondly, I have e-mails from Worthpoint that were sent to my website.

Three, I never gave Worthpoint my e-mail address from my website. That is an important point.

## <u>APPELLANT'S RESPONSE TO FIRST APPELLEE'S ESTATE AUCTIONS INC. AND THE NOVOCINS ' REPLY BRIEF</u>

By right, as per 28 U.S.C.§1654, Appellant is a Pro Se litigant. I did not paint Appellees 1972 painting. I had my 1972 childhood signatures to verify facts. In 2015, Bob Bahr wrote my online article, still active and recommended my biography to askART, verified in two 2015 emails **Doc. 348-2**

I filed a lawsuit on **<u>Feb. 5, 2018, in Doc. 1,</u>** due to the concealed and purported misinformation in EAI's 1972 painting description and the lack of

visual images and **false written** statements in its ad to include:

1- claim its 1972 painting was signed in red on the back stretcher bar, without proof.

2- claim of 12 photos in the 1972 painting ad, yet had no photos of its painting.

3- WorthPoint/eBay logos, copyright vector and two false copyright/licensing claims.

4- my modified askART biography was cut off, mid sentence with three added dots.

5- a **false** written claim, my website biography was on askART in **2012** , not 2015.

I explained in my Original and Amended Complaints in **Doc. 1** and **Doc. 33 filed** on **Jan. 17, 2020** and (expanded in my **SAC Doc. 348 Doc. 366** ) the basis for my claims to include : TheVisual Artist Rights Act ( VARA) 17 U.S.C. § 106 rights § §106A,(3) §106 (a)(5)§501 (Reproduce, Display, Distribute) Intellectual and Copyright Infringement 17 U.S.C. §501(a) and 17U.S.C.S. § 507(b), 17 U.S.C DMCA §1202 (a) §1202 (b),The Lanham Act 15 U.S.C. §1125 and The New York Consolidation Laws on Arts & Cultural Affairs Title C Article §14.03.

Appellant's Original, Amended and Second Complaints informed the District Court documented facts with verifying evidence :

**1)** In my Complaint in **Doc.1, filed on Feb. 5, 2018, on Page 6, #6 -** the size and prices of my artwork in 2016 and 2017, after the 2015 fraudulent webpages.

**Art sales 2016-2017 (EAISA756)**

6. The prices of my artwork at present are **not** listed **on the internet nor on my website.** The Estate Auction Inc. misappropriated sale which attributed a false damaged painting with a low price to my name undermines the value of my work which constitutes libel. Some examples of my current retail value is 2 inch by 2 inch miniature oil painting sold in 2016 for $500. A painting sold in 2017 is an oil size 10 inch by 20 inch which was purchased for $5500.

**2)** I created all content biography and the visual logos. I am sole owner, I did not sell or license to print and retain all copyrights. in **p. 6 and 7 in # 7 and # 8**

**3)** I am a New York artist, had two 2015 solo Central Park exhibits. The value

of my art decreased. I knew of one lost sale ,Wisteria Arbor, due to WorthPoint's willful reluctance to remove its false internet webpage. **p. 7 in # 9, #10 and p. 15**

**4)** I never gave EAI or WorthPoint the right to use my self authored biography. p.**7 in # 8 on Page 7 and #14 and Page 15**

**5)** Thrice I wrote I had two solo exhibits, four articles in 2015. Moreover, in August 2015 a colleague (Alex Raspa) notified me on the public forged s signature and false webpage, verified a **Doc. 488-1 p.4 on Doc. 430-3 p. 15 Doc.517-4 p. 12** In **#12 # 13** and **#14** on p 7. I noted twice the eBay and WorthPoint logos, WorthPoint's intentionally added a written false copyright claim symbol *"Copyrighted Work Licensed by WorthPoint"*.

**6)** I filed WorthPoint's two fraudulent 1972 painting webpages and forgery dated August 1, 2015 from WorthPoint's website. WorthPoint's fraudulent webpages prove my biography was cut off, mid sentence and three dots are … added. I filed WorthPoint claims, forged signature and webpage coding on pages 11thru 13. **on Pages 9, and 10.**

Eight years later, on page two in EAI's Appellee's Brief, attorney Anderson Duff wrote: " in **2012"**

Inc. ("EAI") (together the "EAI Defendants") in 2018 alleging that an eBay auction misattributing a single painting (the "Painting") to her in 2012 ruined her career as an artist. The listing was live on EAI's eBay account for ten days but was scraped and preserved by Defendant Worthpoint Corporation ("Worthpoint"). If her claims were true, Trombetta should have had no problem showing that her sales declined after the 2012 eBay auction. She failed to provide such documentation and refused to discuss her past income as an artist during her deposition. Trombetta did produce three receipts showing that she sold three works in 2015 and seems to believe that her refusal to provide any additional evidence concerning her income as an artist transforms those three receipts into proof that she became unable, after her discovery of the alleged misattribution in 2015, to sell artwork. The receipts actually tend to show that the alleged misattribution, which has been available on eBay and then Worthpoint.com since 2012, did not impact Trombetta's ability to sell art. The 2012 misattribution would have affected third parties before Trombetta discovered it.

EAI Appellees **still ignores** they violated askART's Terms of Service and internet Policy. EAI's ad was not authorized. On Sept. 21, 2022, Appellant intentionally read Mr. Novocin the askART Terms to inform Mr. Novocin he was NOT permitted to use askART's content especially for commercial use. Deposition **p. 123 - 131 askART p. 125** (**WPSA959- WPSA967)**. Despite reading Novocin askART terms, when I asked Mr. Novocin if askART permits secondary copies of its content …off their website.

**NOVOCIN p.126 lines 1-10**



You are responsible for complying with all applicable laws, rules and regulations regarding your use of any such downloaded contents. In the event of any permitted copying, redistribution or publication of materials from the site, no changes in or deletion of author's attribution, trademark, legend or copyright notice shall be made". That is from the askART website

Norb Novocin replied **"*I don't know*". Below p.167 (WP SA1003).** Willful denials and gaslighting are ways / means of obstructing justice.

**Novocin p. 167 lines 8 -13**



Q. Does askART permit its subscribers to make secondary copies of the contents on their website? Yes or no

A. I don't know.

Q. That's why we are here today because you don't know.

Two years before the first Discovery April 8, 2022, July 13, 2020, Appellant filed **askART's Terms of Service and DMCA Infringement in Doc. 72 p. 28-29 Doc.73 p. 28–29, Doc. 75 p.16- 17,** due EAI' s Motion to Post a twenty thousand dollars Bond filed June 2020, **Doc. 56-57-58 and 83.** Marie Novocin's second Declaration. Novocins filed Declarations proving they both violated askART's Terms.**(Tort) .** Insert below is Norb Novocin's Declaration signature with **the No. 2,** with dashes next to his aporetic signature.



I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 25, 2020

Norb Novocin

On Sept. 21, 2022, Novocin testified p. 122,( **WSA958-WPSA959)** he signed his Declaration signature in ink. On p. 123, Mr. Novocin fails to explain why there is the # 2 with dashes/dots avoiding accountability for his signature.

**Novocin p. 122 signature in ink** | **Novocin p.123-avoids why #2 -dash**

Q. You mentioned this is your signature. Do you recall if you signed it electronically, in ink or something else?
A. I signed it in ink, not electronic.
Q. Do you see this number 2 and a bunch of dash signs and two dots after your signature?
A. I do.
Q. Do you know how did those

N. NOVOCIN
symbols end up after your signature?
A. No worldly idea.
Q. When you saw this document, did it have these number and dots?
A. No.
Q. As you sit here today, do you know what these numbers signify?
A. No idea.

Appellees <u>signed Declarations,</u> demonstrates negligence and a willful intent to file fraudulent written statements for financial gains. Appellees represented by an attorney yet each Declaration incorrectly states it was gifted in **<u>"1997",</u>** not 1977 due to negligence. Marie Novocin Deposition **Doc.527-2 p. 19-20.**

- DESCRIPTION - Please be patient there are 12 photos to be loaded in this auction. Up in this auction is a wonderful and delightful oil on canvas painting of a man (I guess it could be a woman) with a red umbrella. This is by Annamarie Trombetta. It is signed on the bottom, but on the back it has written in red on the stretche Annamarie Trombetta "Gifted" 1977, "Painted" 1972. To our eyes it looks like it is after the style of Andre

EAI description text with 1977. Below Novocins improper filings with errors.

**Marie Novocin** | **Norb Novocin**

3. In 2012 Estate Auctions listed a painting on its eBay storefront that my husband Norb personally inspected. The painting was signed on the front by "A. Trombetta" and featured an inscription reading "Annamarie Trombetta 'Gifted' 1997, 'Painted' 1972" in red along its back stretcher (the "Painting").

4. As was our typical practice, my husband Norb conducted research to identify the artist who signed the Painting using online research tools designed for that purpose such as askart.com.

3. In 2012, Estate Auctions listed a painting on its eBay storefront that I personally inspected. The painting was signed on the front by "A. Trombetta" and featured an inscription reading "Annamarie Trombetta 'Gifted' 1997, 'Painted' 1972" in red along its back stretcher (the "Painting").

4. As was our typical practice, I conducted research to identify the artist who signed the Painting using online research tools designed for that purpose such as AskArt.com.

Mr. Novocin on p. 138, 139 and 140 testified his mother was an artist. She signed her name different ways, p.139 - 140. Appellant confirmed Novocin's only used askART to identify Appellant as his artist. Novocin subscribes to WorthPoint. **Doc. 488-1 pages 33 to 38.**

| | | |
|---|---|---|
| **N. Novocin p. 138** | **N. Novocin p. 139** | **N. Novocin p. 140** |
| **RE: My Name Spelling** | **RE: Multiple Signatures** | **RE: Only Used askART** |







As a self supporting professional artist, I works in many media creating and promoting my art with You Tube and **Vimeo videos.** In 2012, as promotion, **NEW** meritorious fact filed in **Doc. 542 on p. 79 as EXHIBIT # 4** Nov. 17, 2012, a Twitter post by -videographer Salem Krieger, for my **2012** Vimeo video, Painting Central . My 2012 video was uploaded the same time EAI Appellees **allege** the ten day 1972 painting ad post and sale Dec. 1, 2012. In Nov. 17, 2012, videographer, Salem Krieger and I sent promotion emails. We monitored the videos viewership. If EAI's alleged ten day post truly occurred, Salem Krieger or I would have seen it.

Salem Krieger's video is listed on many Google Listing with WorthPoint's false 1972 painting webpage. **Inserted below** my authentic links, 2015 exhibit at The Italian American Museum and Salem Krieger's 2012 Painting Central video, **Doc.33 p.58.**




EAI Appellees 's Brief Response p.2, offers no evidence, calendar dates for its **2012 ten day live eBay listing** <u>assertion,</u> how or why it was "preserved". EAI failed to produce any content, meta data, emails from its 2012 ad, failed to produce original 12 photos written WorthPoint's false ad. Judge Swain noted on p**. 30 Doc. 538** the ten day eBay upload yet is devoid of proof and did not occur.

Wedged between my 2015 IAM exhibit and Mr. Krieger's video Painting Central is WorthPoint's fake 1972 painting post. **Doc.33 filed 01/17/20 p. 56** Also **Doc. 36 p.28-29-30** listed under my name and artist Annamarie Trombetta. **Doc. 518-3 in April/May 2017 p. 8 to 12.**

**Below 2012 Video Doc. 518-3p.10.**

**Below 2012 Video Doc. 33 01/17/20**






The District Court failed to note or comment , on my new Nov.17, 2012 video post evidence nor did the Court comment on my 2015 emails with Bob Bahr, March / June 2015 emails inserted into **p. 13 Doc. 542,** Motion for Reconsideration. My phone transcripts documenting the 2012 eBay sale was"undefined" **Doc. 538 556,** The District Court did not realize EAI's webpage, eBay sale with receipts are all lies.

EAI Appellees **still** deny and claim my askART biography was gleaned **2012** despite irrefutable, dated evidence filed in **Doc. 348-**2 **p. 9-12, p.13 & p.15**. **Doc. 429 p. 27-28, Doc. 488- 2 p.16-19 March /Jun**e 2015 email to Bob Bahr in **Doc. 504-2 p. 3-5, Doc. 517-4 p. 30-33-36-38, Doc. 518-2 p. 4 -6, Doc. 542 p. 13.** AskART 's Wayback Machine is in Doc. 429 p.29-30, **Doc. 517-4 Ex.#30 p. 36, Doc. 542- 03/19/24 on p. 13** Appeals Case 25-817 **-Doc. 51 Ex.#3** and **EX.#10** in my Appendix.

Conversely EAI's produced one fake email claiming it was sent by Kris from askART, devoid of an @ symbol(p.15 in this Reply). Four months after my 2015 authentic proof,WorthPoint produced, two fake askART (p.20 in this Reply). Filed **Doc. 517-4 p.34-35 in Doc. 348-2 p.13-16. Doc. 517-4 page 37-38 .** Appeals' Appendix **EX. #13**. Appellees created two new problems and disputes on August 30, 2022, a lawsuit in Georgia and two fake askART biography documents instead of ending my lawsuit which constitutes Vexatious Litigation.

EAI and WorthPoint Appellees both claimed to the District Court I did not produce art sales receipts. Relevant to this topic I note Novocin's testimony: on page **53, lines 18-25 (WP SA889)** Novocin testified my name was on the

back his painting, allegedly entering it into askART in 2012.

AskART's website was his ONLY source used to attribute his painting to me. On page 54, lines 2-10 **<u>(WP SA890)</u>** Novocin admitted my askART biography had no sales records of sold painting on the **<u>secondary</u>** market. Please read Novocin's testimony on p. 49-52 in **Doc. 496-5 p.13-18** and pages 53-54 in **Doc. 488-2- p.33-36.** AskART website's Terms of Service prohibiting any transference of its content, is in **Doc. 72 , 73, 75, Doc.429—p23, Doc.430 p.3, Doc.488-2-p.35-38, Doc.462-10 p.34, Doc. 542 p. 101**

**WP attorney Page 53 WPSA889**

A. [illegible] the [illegible] on the
back, I went to askArt. I put in the name
Frombetts and Annamaria came up. It's an
unusual name. I have never come across it
before. I was not -- I do not remember
[illegible] Annamarie on the back of the
painting, so I just assumed it was the same
person. Pulled up that person on askART.

**WP attorney Page 54 WPSA890**

I saw it had a biography but no record of
any paintings ever been sold, which I'll
[illegible] at that. There's no records of
any painting been sold on secondary market.
I grabbed the biography and used that in
the listing. Because there was no records
of any painting to be sold, I wanted enough
to be able to associate somebody of value
to the painting and so I went out and found

I asked Mr. Novocin, on p. 129, **(WPSA967)** how long he has been a Member of askART, if he used other biographies he responded, yes, 21 years. Page 131, (**WPSA967**) I asked if my askART biography, listed my prices, my signature or images of my art, Novocin replied <u>NO.</u> **Inserts Below**

**PAGE 129 Lines 2-9 WP**SA965

one year, two years? Do you know offhand
how long you have been a member of askART?
A. Yes, I do. I have been a
member of askART for twenty-one years.
Q. So all throughout those years,
have you ever taken a biography from
another artist from askART?
A. Yes.

**PAGE 131 Lines 3 -8 WP**SA967

Q. Did you see any prices on the
askART website from my artwork?
A. No.
Q. Just to clarify, no prices, no
signature, no artwork?
A. Correct.

**<u>APPELLANT'S FILED ART SALES / PRICE LIST IN:</u>**

**Doc. 1, Doc. 33, Doc. 348 Doc. 366, Doc 72 Doc. 73, Doc. 74. Doc. 517-4 and Doc.542. Doc. 1 on p.6 -#6, Doc.33 p. 9 of 63 , Doc. 348 filed 12/ 27/22 and Doc. 366** (SAC) granted 2/2/23 all have in Statements of Facts and listed are my 2016 and 2017 prices and size of artwork. In three filings, **Doc. 72 p. 9, Doc. 73 p. 9, Doc. 74 p. 8** I filed from 2000 past art sales from art collector Teri Meissner Owners Florian Papp art, antique/ furniture business exhibits pages 33, 34, 35 Doc. 72, Doc.73 p. 33 . On Jan. 6, 2017, Teri Meissner called and emailed EAI's Marie Novocin to ask about the 1972 false painting repost in 2017, In **Doc. 74** on p. 6. <u>Teri's 2017 email is filed in **Doc. 72** p. 36.</u> I inform the Court, any false online damaging claims effects the value of my artwork and the value of my art collectors' collections and why Teri contacted EAI.

**Doc.1- Doc. 33- Doc. 348- Doc. 366.**

> 6. The prices of my artwork at present are **not** listed **on the internet nor on my website.** The Estate Auction Inc. misappropriated sale which attributed a false damaged painting with a low price to my name undermines the value of my work which constitutes libel. Some examples of my current retail value is 2 inch by 2 inch miniature oil painting sold in 2016 for $500. A painting sold in 2017 is an oil size 10 inch by 20 inch which was purchased for $5500.

**Doc. 72 Doc. 73 Doc. 74**

> Teri and William Papp own and operate Florian Papp an Art, Antique and [illegible] Furniture Gallery on Madison Avenue which is diagonal to the then Whitney Museum of Art and the new Met Breuer Museum on New York's Upper East Side. <u>The couple bought between 2000 and 2001 almost eleven thousand dollars of the Plaintiff's small scale works of art.</u> An example of one purchase was an etching of <u>"Belvedere Castle" the etching plate size is 2 3/4 x 4 inch on a 3 x 7 inch paper. The price was four hundred and fifty dollars ($450) in the year 2000.</u> EAI allegedly sold in 2012 an oil painting approx. 48 1/2 tall and 17 1/2 wide, calling it shabby chic condition as it has a tear in the canvas, about 5/8 long for $180.50. This information greatly depreciates the value of my work and adversely effects the

Prices of Appellant's artwork 2000-01 and 2015 Price Lists **Doc. 72-.73 p. 2** In **Doc. 517-4 p. 13 -20**, I filed four 2015 sales with checks. Also filed the price inquiry and proof of my lost sale for eight five hundred dollars by Prof. Goldstein In **Doc. 542** (Mot. Reconsider) as **EX. 7A** , I filed proof Prof. Goldstein died and

could not be deposed (2022) In **EX. 7B** there are three pages:

**1-** Prof. Goldstein's painting price inquiry email **2-** Appellant's email response of price of Wisteria Arbor painting **3-** 2015 lost art sale letter. Prof. Goldstein's email and letter are filed in **Doc. 72** page 24-25 **Doc. 73** page 24-page 25 **Doc. 75** Page 32-33. Appellant's 2015 Art Price List—2015 Doc. 72 -page 27 Doc. 73 page 27 and **Doc. 542 EXHIBIT # 12** —2015 Price List for my artwork.

On August 20, 2022, I was asked how much I made in 2010 which is was twelve years ago, five years before I found the false post. My 2010 income was irrelevant. **Judge Swain's noted my deposition, page 244 lines 12 to 16 my in 2010.**

I conclude by reminding the Court of Appeals ofmy Jan. 10, 2017, phone call with Mr. Novocin, **filed Doc.488-1 p.27 .** Before my lawsuit I hired an attorney and sent a settlement letter in 2017, not in Appellee's Appeal Exhibits, bate stamp EAI000001-EAI000003. My 2017 settlement letter is filed 7/13/20, Bond Motion **Doc. 72 p. 37- 39, Doc. 73 p. 37 -39, Doc. 74 p. 21 - 23, Doc. 75 p. 25-26-27 Doc.488-1 p.35-37 Doc. 496-1.MSJ in Doc. 527-1 p. 31-33**

**Insert Below N. Novocin**



At Novocin's Sept. 21, 2022 deposition. Norb Novocin, **p.101 lines 4- 25** admitted receipt of my 2017 settlement letter, EAI000001-EAI000003. On May 16, 2023, Judge Cave Ordered me to write a fourth settlement letter, **Doc. 454 - 4/25/23.**

I noted my first attorney's 2017 settlement offer in my May 16th letter. Mr. Duff immediately emailed me requesting I forward my settlement offer

acting as if Mr. Duff was never aware of this letter This same letter Mr. Novocin testified receiving at his deposition seven months earlier.

**Mr. Duff's May 16, 2023 email Filed in Doc. 488-1 page 38**




**(WP SA1000)**




**(WPSA970) Doc. 527-1 p. 30 - 33)**

These examples reveal how Mr. Duff and the Novocins deliberately manipulate truth, gaslight, complicate, delayed evidence to conceal fraud and prolonged a simple lawsuit, to keep litigation a stalemate. I have been disputing multiple false, unsubstantiated statements pointing out deficient evidence. On Sept. 21, 2022, both Marie Novocin **Doc. 488-p.10- Doc. 488-2 p. 2-3,** Norb Novocin testimony characterized my 2017 settlement letter as **" blackmail "** .

Judge Swain, overlooked my two signatures, many of my pleadings and exhibits, six witnesses testimonies, all phone calls yet Judge Swain stated " no general deterrence manifested and Mr. Novocin's *conduct was not egregious*, noted in

**Judge Swain Doc. 538 p. 25**


at 446. Still, the goals of general deterrence manifest more strongly in cases involving willful violations of VARA or otherwise egregious conduct. See, e.g., id. Neither circumstance is present here. As to the goal of individual deterrence, the Court finds that a modest judgment against EAI — which, even at the lowest end of the statutory range ($750), will constitute over

**Judge Swain in Doc. 538** did not to review my 2017 complete webpages of the 1972 painting evidence dated May 7, 2017 (not cache) **Doc. 518-3 p. 13-14.**


Therefore, the only evidence the Plaintiff provides to substantiate her claim that WorthPoint reposted the listing is a March 15, 2017, screenshot of the link on a list of Google search results, which Sniechula's uncontroverted proffer establishes does not prove anything about when the Listing was accessible on WorthPoint's website. WorthPoint, on the other hand,

**APPELLANT'S RESPONSE TO SECOND APPELLEE WORTHPOINT CORPORATION'S REPLY BRIEF**

Appellant brings to the Court of Appeals attention the deleterious deception and intentionally fraudulent assertions by WorthPoint that caused errors in the District Court pertaining to Appellant first contact with WorthPoint. My verified first contact was in 2015 filed in **Doc. 33, in Exhibit #1**,**p. 20, Doc. 518-4 p.19** . An excerpt from WorthPoint's employee Anita Brooks who intentionally misinformed Appellant misdirecting me to eBay to remove WorthPoint's false 1972 painting webpage. WorthPoint's pernicious pattern to perversely distort factual events into fraudulent disputes is the root cause of Amending my lawsuit, its longevity and the urgent petition to request Permanent Injunctive Relief.

**Doc. 33 p. 16-17.** **Anita Brooks Doc. 33 p. 20-**



WorthPoint's attorneys in **Doc. 427** misinformed Judge Swain, noted on **page 4 and page 17 of Doc. 538 Excerpt-p. 14** Judge Swain wrote my first contact with WorthPoint was Jan. 2016, falsely and intentionally implying I did not contact WorthPoint. I immediately contacted WorthPoint

> After she discovered the Listing, Plaintiff contacted WorthPoint several times, and she submitted an official request to remove the report in January 2016. (WorthPoint 56.1 ¶¶ 35-37.) In February 2016, Plaintiff spoke with representatives of WorthPoint, and the Listing was removed from WorthPoint's website on February 4, 2016. (Id. ¶ 41; SAC ¶ 16.) In December

by phone August 2015 thru Nov. 2015. In **Doc. 496-2 06/07/23 p.8** is my

**August 9, 2015,** email documents contacting NYPD, Det. Rose to remove the false the forgery/webpage

**Doc. 538 p.17 Judge Swain**

Cir. 2014). According to the Plaintiff's pleadings, she discovered the WorthPoint Listing in "mid-August 2015" and first contacted WorthPoint about the misattributed painting in 2016.
**SEE Doc.33 filed 01/17/20 page 16 EX. #1**

Anita Brooks Nov.16, 2015 misdirection email is in **Doc. 33 p.20 .** From Nov.2015 to Jan. 22, 2016, I spoke to eBay NYPD Det. Rose **Doc. 518-5 p.32 .** In a recorded call, eBay specialist, Archer, confirmed the 2012 ebay sale was **"Undefined". Doc.517-7 p. 2 to 22** on p. 21

On Jan. 22, 2016 in a recorded call, filed in **Doc.517-6 p. 1-18,** I spoke with Anita Brooks.

On August, 30, 2022, I testified on pages 197-200 in **Doc. 517-6 p. 20 -22)** regarding WorthPoint attribution rights with eBay WorthPoint's EAI's 1972 false online post appeared after I first opened eBay account in June/July 2015 filed in in **Doc. 517-4 p. 21 to 23**, my eBay emails. Files is eBay's Intellectual Property

**Doc. 33 p.16 Facts**

3. Months of endless phone calls to eBay and WorthPoint .com resulted in obtaining e-mail addresses which were frustratingly futile in finding out who admittedly sold the painting and who or why this posting of the fraudulent link was on the internet. More importantly which source could possibly take this link fraudulent link off the internet.

4. On November 16, 2015 I received a written response from WorthPoint .com from one of the employee's named "Anita B." In her e-mail she wrote " We do not buy or sell anything on the site. Rather we buy sales records from various auction houses and sites and compile them into a price guide to help user determine the value of antiques and collectibles. If this particular item sold on eBay I recommend trying to contact eBay as they may be able to provide you with the addition information you are seeking. See **EXHIBIT 1** - Plaintiff 's Email to eBay with Worthpoint's response . I sent this notice to eBay who never offered any information other than to contact the specific ebay address and report the link to them. Ebay never stated how to remove the link. I did find out that eBay does not keep information longer than ninety days to six months.

**Doc.33 p.17 Jan. 22, 2016 phone and emails**

Case 1:16-cv-00993-RA-SLC Document 33 Filed 01/17/20 Page 17 of 63

as much as I could about this listing. Secondly I was hoping that if I was a member of WorthPoint .com someone from the company might return my phone calls or e-mails. See **EXHIBIT 2 – WorthPoint subscription Membership confirmation**

6. On January 22, 2016 I also e-mailed support@worthpoint.com with a series of questions to the Worthpoint staff as to who posted the 1972 entitled "Man with a Red Umbrella" and that it was falsely misattributed to Annamarie Incribetta, etc. See **EXHIBIT 3 –**

7. On or around January 22, 2016 I spoke at length with Anita B. from WorthPoint .com on the phone regarding the misattributed painting. I informed Anita that I was NOT the artist and yet the information for this painting was posted on the internet under my name. Anita insisted that I had to contact ebay to find out who the seller could be. My response to Anita was that I had been in contact with ebay and they were not the responsible party for posting the fraudulent posting on the internet. Plaintiff has a RECORDING OF THE PHONE CALLS TO ANITA-EMPLOYEE AT WORTHPOINT AS PROOF . THE PHONE CALL ALSO PROVES HOW DIFFICULT IT WAS FOR THE PLAINTIFF TO OBTAIN INFORMATION AND TO FIND OUT WHO CAN REMOVE THE FALSE INTERNET POSTING.

Policy filed on **p. 24 - 27. PLEASE NOTE:** WorthPoint failed to produce any eBay's licensing agreement and failed to comply with Judge Swain's order in **Doc. 528 on 12/13/23** to produce its sub licensing agreement violating FRCP 26 and FRCP 37. Appellant in **Doc. 463 on 5/11/23**addressed to the District Court concerning contradictory false facts.

> [illegible]

**.1-** I noted the date of Jan. 22, 2016 as the initial removal date. WorthPoint should have deleted its false 1972 webpage in Jan. 22, 2016 not Feb. In **Doc. 463 p. 2 -3** I noted the "red -flag" willful blindness by WorthPoint who still wrote in its Appeal Reply WorthPoint permanently removed its false painting webpage on Feb. 4, 2016 when I contacted WorthPoint on Jan. 22, 2026. I testified on **p. 104-105 (WPSA568-SA569)** that I spoke to Anita Brooks on Jan. 22, 2016. Moreover the second repost six months removal in late 2016 to 2107 and contacted EAI

> 2) According to the DMCA laws any and all posting past the January 22, 2016 date should be deemed as date of infringement by WorthPoint Corporation who failed to respond to the Plaintiff causing me to call on Jan. 31 2016 and Feb. 1, 2016. I also continued to email WorthPoint who failed to respond to my written requests. In addition, any internet posts and all emails sent to Plaintiff 's Yahoo account 2016 is also a violation of my requests and my rights The fact that WorthPoint Corp sent an email to Plaintiff's website email address on March 25, 2022 is proof that my information is in their data base. The THIRD issue of clarification I am seeking from the Court are the DMCA statutory damages if multiplied by "each violation" of the DMCA as a the separate per violation infringement in the Second Circuit Court.

**2-** The DMCA violations pertain to the adherence of "*Copyrighted Work Licensed by WorthPoint*", WorthPoint's written claim and the use of eBay and WorthPoint's logos with my name and biography. **-** Filed in my **Appendix Exhibit #4 Doc.496-1** my testimony pages 102 to107. **( WPSA565 — WP SA572)**

WorthPoint still disputes **permanent** removal dates. WorthPoint's refusal to acknowledge its **repost** in l 2016 into 2017 is done to offset liability . This is one the most overtly and perversely illogical assertions in WorthPoint's defense is its false claim that it **<u>permanently</u>** remove its false 1972 webpage on **Feb. 4, 2016 .** However its own Jan. 4, 2014 evidence it proves the URL needed to be flushed out.

In my Plainittff's. Reply to WortPoint 's Mem. or Law **Doc. 517 on p.5.** WorthPoint asserts ""*this case is not about whether Ms. Trombetta created an oil painting Man With Red….Umbrella.* **insert Doc. 517 p.5.** This case is precisely about the misattribution and incorrect use without consent, of my name identity and biography. My DMCA1202(a)1202 (b) claims are caused by WorthPoint adherence of its logos and eBays. WorthPoint is completely deflection from the heart of this lawsuit, my identity. My biography was intentionally misattribution as the artist so that as Mr. Novocin testified **"value"** could be added to the painting**— see N. Novocin testimony p 61-62 WPSA897-WPSA898.** I had ABSOLUTELY no involvement with this painting or these eBay based companies. WorthPoint assertions on the cause of this case demonstrates intentional blindness to avoid liability.

> <u>Statement</u> Memorandum of Law, on page 7 of ECF 476, filed May 30 2023 it states" "*The case against WorthPoint is <u>not</u> about whether Ms. Trombetta created an oil painting of a Man with a Red Umbrella.* WorthPoint also stated in ECF 476 "*WorthPoint has never seen the painting…, never had possession or ownership of it " WorthPoint was not involved.And, even if it were, the statute of limitations against WorthPoint expired long before she made her claim.*". In WorthPoint's webpage is a visual, written claim "*©Copyrighted Work Licensed by WorthPoint*" *proving* WorthPoint is "involved" based on their licensing and copyright claim.
>
> Plaintiff who had ABSOLUTELY no involvement with the painting or these companies until I found 1972 posted under my name in August 2011, the year my biography was listed

**3.** In **Doc. 463 on 5/11/23,** IT Tech, Mr. Jason Packer issued false statements in his Declaration produced Jan. 19 2023 after I filed my SAC to include fraud. The false assertion is Mr. Packer's charts and data concern my website email address

annamarie@trombettaart.com which I never used to contact WorthPoint. On **p. 9 of Doc. 538** Judge Swain inaccurately surmised that the factual dispute about my email address as ancillary.

> Packer's declaration, upon which Stricchiola partially relied during her review of the factual record. (See id. at 14-15.) In particular, Plaintiff disputes whether the email address Jason Packer identified as one of two users who looked up the price of the Painting on WorthPoint's website — annamarie@trombettaart.com — was truly Plaintiff's preferred email address. (See Packer Decl. ¶ 19; Pl. Stricchiola Opp. at 11.) This factual dispute is ancillary to any material disputes in this action and, in any event, was not relevant to any of Stricchiola's conclusions.

Unknown to Judge Swain and the District Court is the fact on August 30, 2022, I testified I never gave WorthPoint my website email address yet I received emails from WorthPoint to my artist's website email address, noted on page **178 lines** 15 to 19 **(WPSA642).** I also emphasized on Oct. 20, 2022 **-Doc.312-1 p.2 filed in Doc. 522- 7 p.2 ,** I submitted WorthPoint demanded Discovery. I wrote I never furnished WorthPoint with my website email address **<u>annamarie@trombettaart.com</u>**, **Doc. 522-7 p.2 below**

> [illegible]

Appellant informed WorthPoint's attorneys twice on **8/30/22 in my Deposition p. 178 lines 15 to 19 (WPSA642)** and in the Discovery 10/22/22, **I never gave** WorthPoint my my website e**mail address <u>annamarie@trombettaart.com</u>**. Despite informing WorthPoint in 2022 of these facts twice, on Jan. 19, 2023, Jason Packer grafted charts and data based on my website email **<u>annamarie@trombettaart.com</u>** address. I never used to contact WorthPoint . Willful defiance and disputes are in Packer's completely

fraudulent and useless data , like the 1972 painting webpage. WorthPoint's attorneys interrogatory ( right insert) stated there was *no one who posted the 1972 painting internet post*. **Doc. 526-2 p.2**



WorthPoint, however, produced a written email from Jason Packer who wrote the 1972 painting internet was posted on March 3, 2013 filed in **Doc. 526-2 p. 3**

WorthPoint's often has two contradictory responses to one another, **Doc. 526-2 p. 3**



thus WorthPoint is actively committing fraud despite my SAC filing to legally prohibit Appellees such actions of fraud and concealment which extends the statutes of limitations FRCP Fraud R. 9.

**4-** Appellant brings to the Court's attention WorthPoint's dispute that my May 7, 2017 full page webpages with the false painting description was active and printed out on the date and time on the document. WorthPoint argues my evidence is "cached". In **Doc. 33, p.35**, it proves Jason Packer filed a temporary removal request with Google. In **Doc.518-4 p.7**, Google's document state a temporary removal request lasts six months. **Google Instructions Doc. 518-4 p. 2 to 8**



Google's Permanent removal directions are filed on **Doc.518-4 p.7.** WorthPoint's own evidence proves Packer's removal was temporary.



Secondly, Jason Packer's March 3, 2016 email to Will Seippel to file a temporary Google removal request features two webpage links that are the not the **same.** One is **active the other is cached.** **SEE CACHED WEBPAGE BELOW**

It has after **http://** **<u>webcache</u>** written before google user content

<u>webcache.googleusercontent.com/search?q-cache:7Xt</u> g7k26S8J; —



Which is the one that has her text in the old cached version w/Google:
http://webcache.googleusercontent.com/search?q=cache:7Xt_g7k26S8J:www.worthpoint.com/worthopedia/titanic-lithograph-poster-48924121+&cd=1&hl=en&ct=clnk&gl=us

Below is an active link**—see http://—there is NO "web cache" in the tagline**. An active tagline on the bottom of a page just has the link. A cached webpage has <u>cached</u> listed in the URL tagline—



I can file a temporary removal request w/Google for this URL:
http://www.worthpoint.com/worthopedia/titanic-lithograph-poster-48924121

<u>**5 -**</u> WorthPoint's alleged removal date, contradicts Appellant contacting WorthPoint on Jan. 4, 2017, by email to remove its reposting of its webpages under my name filed in **Doc. 33 on pages 61 - 63.** WorthPoint's repost and failure to respond on Jan. 4, 2017- by email, caused me to contact, EAI and speak to both Marie and Norb Novocins. Additionally, I filed in **Doc. 504-3** my phone calls with WorthPoint. In **Doc. 504-2** are the Jan 2016 Feb. 2016 emails to WorthPoint's ticket #57565 with Fraudulent Artwork" etc.and 2017 sent email from WorthPoint p.16-19 , WorthPoint's 2017 Google listings p. 17-18,

between Mr. Seippel and Mr. Packer. WorthPoint's Discovery evidence bate stamped in WP000132—WP000133 WP000134 confirms there was a reposting of the 1972 painting webpage. Mr.Packer state he had to "flush out the URL". WorthPoint's Jan. 4, 2017 email was filed **<u>Doc. 504-3</u>** <u>p 43</u> **Insert Below**

**Please see Doc. 504-2** It has all WorthPoint's Jan. 2016 Response emails.



In **Doc. 518-3 on** pages 13 -14 is the full WorthPoint 1972 painting description dated May 7, 2017. This whole file contains the 2017 Google listings, 2017 web pages, Seippel Georgia lawsuit and Jason Packer **<u>fraudulent charts p.35 below.</u>**




**<u>6 -</u>** I note, two WorthPoint Subscriptions dated Jan. 22. 2016 in Doc. 33

The only email I used was **<u>trombettaart@yahoo.com</u>** **see Doc. 33. P.23-24** to contact WorthPoint which is consistent with my other emails **Doc 504-2 .** The second **<u>annmarie@trombettaart.com</u>** **Doc.33 p.21** was a SENT email from WorthPoint. I NEVER used my website to subscribe to WorthPoint's membership. A credit card had to be entered for membership. I knew WorthPoint was untrustworthy, Why would I subscribe


Welcome to WorthPoint – Your Subscription Has Been Created

From: WorthPoint (support@worthpoint.com)

To: annmarie@trombettaart.com

Date: Friday, January 22, 2016, 11:29 AM EST

Dear Annmarie Trombetta,

twice since I had to enter my credit card twice. On Jan. 29, 2016. WorthPoint payment attempt declined and emails to my Yahoo and website were sent to **<u>annamarie@trombettaart.com</u>** **(Doc. 504-3 filed 06/14/23 page 44)** .

WorthPoint's email has my 2016 Visa credit card # …2798 noted it

> WorthPoint
> To: annamarie@trombettaart.com
> Also Sent to Plaintiff's Website Email
>
> Dear Annamarie Trombetta,
>
> We tried to make a payment [illegible] but the payment was not successful [illegible] Lost/Stolen Card.
>
> Here are some details about your Credit Card information on file:
>
> Annamarie Trombetta
>
> ············2798
>
> Visa

**7-<u> In Jan. 2023, WorthPoint's interent expert Jessie Stricciola issued a report.</u>**

Ms Stricciola' report had errors. Mr. O'Leary's on Dec. 5, 2022 in Doc. 322 wrote an Affidavit. On every page the word Affidavit and date Dec. 5, 2022 Are written. Jessie Stricciola incorrectly wrote **Declaration not Affidavit and incorrectly Dec. 25, 2022 , Christmas Day**—not Dec. 5, 2022. (WPSSA6)

> I have also been asked to review the December 25, 2022 Declaration of Patrick O'Leary ("O'Leary Declaration") and opine as to whether the O'Leary Declaration changes any of the opinions I have formulated regarding the above.

On the left side of every page written is Affidavit. On the bottom left is the date.

> Plaintiffs: Trombetta vs. Defendants: Newcain — Southern District of New York — Case No. CV18 0993
>
> AFFIDAVIT SWORN STATEMENT
>
> Date: December 5th, 2022
>
> My legal name is Patrick Michael O'Leary ("Affiant"), and I acknowledge I am
>
> a) Age 58 years old

Additionally, Ms. Stricchiola could not explain why my Google Listings had 2017 dates in the upper right had corner, Her report asserted Appellant must have manipulated the dates on the printer and failed to state how to change printer dates. Ms. Stricchiola failed to acknowledge my filed full webpages with the 1972 Description filed in Doc. 518-3 p.13-14 dated May 7, 2017 or my March, April and May 2017 Google listings or WorthPoint's sent emails to me.

**<u>APPELLANT'S LANHAM ACT AN NYAARA DISMISSED CLAIMS IN JUDGE ABRAMS DOC. 23 p. 5-7 (LANHAM) p.10 (NYAARA)</u>**

The Second Circuit, Court of Appeal's in New York is known for setting a precedence for influential decisions in many jurisdictions. It is considered one of the two most prominent federal appellate courts in the United States. This state and the city of New York is one of the most influential art center in this country and most influential art centers in the world. Appellant, is re presenting my factual statements with documented proof as to why The Lanham Act and The New York Arts and Cultural Affairs Law-ACA §14.03 are applicable claims in my case. I request the Court to reexamine and on rule on both Appellees violations

Appellant's Original and Amended Complaint listed The Lanham §43 Act 15 U.S.C. § 1125 and The New York Artist Authorship Rights Act, Arts and Cultural Affairs Law-ACA §14.03 in Doc. 1 p., Doc. 22 p., Doc. 33 p.17 **(Appellant' s** triangle logo and initials is in **Doc. 22 and Doc. 488-6 p.3 to 11).** The New York

Authorship Rights Act Arts and Cultural Affairs Law-ACA§14.03 terms specifically concerns "public" modification of an artist's work of art, without the artist consent. Appellees truncated my 1354 poetically worded biography, used 418 words, cut off mid sentence by adding three dots to modified my biography, for a false attribution. Appellant's self authored biography is in my catalog and website. Each has my original visual images next to my original bio. **Doc. 22 EXHIBITS A to D .** **Doc.517-2 (<u>WP SA2548- thru-WPSA2556 -</u>** <u>my full website.</u>

These important, claims, Lanham Act §43 15 U.S.C.§1125, a false designation of origin and trademark infringement and The New York Arts and Cultural Affairs Law-ACA §14.03 relates to my violations and askART's Terms which states no changes can be made to the author's attribution, trademarks, logos etc. EAI Appellees wrote in its 1972 painting description my biography was taken *"off AskART ..…as they got it from her website"*. **Insert** The AskART's

condition as it has a tear in the canvas, about 5/8" long just to the left of the man's knees, but still such a great painting. For those not familiar with Trombetta, here is information about her from off AskArt as they got it from her website: Annamarie Trombetta (1963 - ) Lived/Active: New York The nature of an artist's

Terms aside from prohibiting transfer of its website's content, especially for commercial use, states: " *You are responsible for complying with…. laws, rules… regarding your use of any such downloaded content…..no changes in or deletion of authors attribution, trademark, legend or copyright notice shall be made".*

**Left askART Trademark**






worthpoint.com

1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta

EAI produced a forged signature, WorthPoint adhered its own logo and eBay's logo under its false written claim *"Copyrighted Work licensed by WorthPoint"* next to its caption *1972 oil painting was **signed** Annamarie Trombetta"* using my correctly spelled, full name, in its caption. In doing this, WorthPoint rebranded and renamed itself as the copyright holder on its version of the 1972 painting webpage, with my full name and biography. The Lanham Act of 1946-15 U.S.Code §1125 is for trademarks used in interstate commerce; ie world wide web. My distinctive triangle logo was absent. Appellees inferred a false designation of origin using its trademarks. Judge Abrams, in error **Doc. 23, filed on 10/02/19**, on page 5 - 6, wrote my Lanham Act claim was for **"my name"** . My Lanham Act claim, in **Doc.22** filed 4/24/19, p. 2, 3, stated I had *"a protectable mark logo"*- **Below.** The Lanham Act *" protects and prevents the use of counterfeit marks"*.

Plaintiff Annamarie Trombetta's website has been on the internet since 2003. This exceeds the Lanham Act requirement " **a registered mark becomes incontestable after five years of continuous post-registration use.** " All of the website pages have a copyright circle with the letter C and the statement " All work on this site are © Annamarie Trombetta". In addition there is the TDM®A! logo. Most importantly there is the artist's personal triangular shaped logo for business evidenced in the artist distinctive personally designed trademark designation logo which is on each and every page of the artist's website.

On p. 3 of Doc. 22, I noted on my website I have my *"artist's personal triangular shaped logo for my business" it is distinctive, personally designed, trademark designation logo*", on each page of my website, filed **in Doc.22, Exhibits A thru D,** to verify my facts.To further prove my triangle logo is my trademark and business distinction **via my triangle logo branding,** at right is my professional business card.



My logo, unlike the case *Two Pesos vs. Taco Cabana 505 U.S. 763 at 768 (1992),* has a secondary meaning. Appellant's triangle logo has my personal initials, and this secondary meaning-*i.e and has come to be, through use, to be uniquely associated with the specific source,* artist Annamarie Trombetta. Filed in my Appeal's Exhibits, in EX.#16 pages 118-120, is German Renaissance artist, Albrecht Dürer's webpages- regarding his 15th C,_ A D logo branding on all his content.

I am requesting the Second Circuit Court of Appeals, to deliberate, in the 21st century, on the willful, internet entwinement, crafted by Appellees which created trademark challenges the District Court failed to acknowledge and protect. My legal rights as an artist/author, in an age of computers, the internet and AI needs to hold infringers accountable, which The Lanham § 43 Act 15 U.S.C. § 1125 enforces.

> *This Article seeks to fill that gap by analyzing Dürer's cases through the lens of twenty-first-century trademark theory. It argues that, properly contextualized and understood, the cases provide remarkable and early accounts of two tribunals giving prototrademark relief to a famous artist and his brand. They mark a critical moment in trademark history even if portions of the underlying narratives are unreliable. More broadly, they invite us to reconceptualize the role of artists and aesthetics as a unsung but core aspect of trademark law's otherwise commercial and industrial legal history.*

Secondly, Appellant's claims in **Doc. 22 p.7**, pertains to The New York Artist Authorship Rights Act, Arts and Cultural Affairs Law- ACA §14.03. The public display of an artist's original work that has been publicly published, modified, mutilated, without an artist's knowledge or consent, damaging the artist reputation is likely to result there from. In my case, the EAI painting ad stated I am a New York artist. This law applies to New York State artists. EAI's

WorthPoint's webpage, exemplifies public use and display on the world wide internet. Filed in **Doc. 22 p. 25-26,** EAI and WorthPoint's webpages and

> The right to claim authorship shall include the right of the artist to have his or her name appear on or in connection with such work as the artist. The right to disclaim authorship shall include the right of the artist to prevent his or her name from appearing on or in connection with such work as the artist. Just and valid reason for disclaiming authorship shall include that the work has been altered, defaced, mutilated or modified other than by the artist, without the artist's consent, and damage to the artist's reputation is reasonably likely to result or has resulted therefrom.

their mid sentence cut off, with three dots added verifying my biography was mutilated. On page **7, Doc. 22,** I included *" a valid reason for disclaiming*

**Doc.1**
**P.10**

> Eighties I traveled on a summer tour to Europe. The tour comprised of six countries, Germany, Austria, France, Italy, Switzerland and England. Viewing so many different cities and cultures in a concentrated period of time...
>
> cut off sentence 3 dots
>
> 1072 Original Oil Painting ---Worthpoint Fraudulent Signature.png
> 576.1kB

*authorship includes the work has been altered, mutilated or modified other than by the artist.* See- WorthPoint's website's full one page ad (**EAI**SA475-). **Below**

**Doc. 22**
**Page 7**

> 2) Law § 14.03 number 1— specifically deals with the right of an artist or any designated artist agent's CONSENT to display in public or published a work of fine art etc as being the work of the artist. The Plaintiff did not consent or know about the public display and use of her name, identity and biography on the internet. This caused "damage" to the artist reputation due to the fact that the artwork described was damaged. This public forum coupled with the fact that the work was deemed "Shabby Chic" on the internet and was sold for below the artist's net worth — lowering the net worth and retail value of the artist in a public platform adds to the loss and damages and substantiates the right to A) Personal Jurisdiction in the State of New York B) New York State's Right to Claim Ownership C) Protects's the Artist that resides in New York State with the right of the

Judge Abrams errors, assumed my claim was for **my name** and not the truncation and deletion in the word count of my biography. **Doc. 23, p.10,**

**Judge**
**Abrams**
**Doc. 23 p. 10**

> **D. New York Artist's Authorship Rights Act**
>
> Trombetta, however, cannot state a claim for damages for the "unauthorized use of her name" pursuant to New York's Artist's Authorship Rights Act, Arts and Cultural Affairs Law ("AARA"), § 14.03, because the statute does not cover Defendants' alleged conduct.

An oversight by Judge Abrams, on p.10, Doc.23 pertains to the *"damage caused by others (Appellees) to the artist's work "*. My biography was cut off, a mid sentence with three added dots, modifying my biography with two unrelated logos with my name.

> Here, however, Trombetta does not allege that Defendants "altered, defaced, mutilated or modified" her work. But the statute plainly gives a right of action to artists only with respect to damage caused by others to *the artist's* work. The Court thus holds that the statute, as a matter of law, does not cover the conduct at issue in this case. Trombetta's AARA claim is thus dismissed.[4]

My website, catalog with self authored poetic prose biography features my artwork. My catalog text with my artwork was a limited edition multiple, no more than three hundred copies. The originality and imagery in my biography is written in distinctive prose (imagery, poetic word choice, rhythm and personification) that has a recognizable, individual voice, style, not merely communicating information; particular of the *artist* and written by no other individual. These qualities gives Appellant exclusive rights to license my biography, defined, as a published work of fine art.

> **IV. New York Consolidated Laws, Arts and Cultural Affairs Law - ACA § 14.03**
> **This is a New York State Law.**
>
> 1. Except as limited by subdivision three of this section, on and after January first, nineteen hundred eighty-five, no person other than the artist or a person acting with the artist's consent shall knowingly display in a place accessible to the public or publish a work of fine art or limited edition multiple of not more than three hundred copies by that artist or a reproduction thereof in an altered, defaced, mutilated or modified form if the work is displayed, published or reproduced as being the work of the artist, or under circumstances under which it would reasonably be regarded as being the work of the artist, and damage to the artist's reputation is reasonably likely to result therefrom, except that this section shall not apply to sequential imagery such as that in motion pictures.

My biography is my intellectual and copyright property and has been public on my website since 2003 and listed on askART in 2015. In summary, WorthPoint produced bate stamped evidence they deemed "Confidential" with my full 1354

words in my biography. The word count in the fraudulent 1972 ad description, EAI created contains 418 words. WorthPoint's evidence contains triple the amount of words they labeled **"Confidential",** bate stamped WP000038 to WP000040. I immediately addressed both of Appellees fraudulent evidence and claims in **Doc. 225 filed 5/18/22,** in my initial attempted first SAC May 2022. Proof of this is in WorthPoint's attorneys request to seal its **"Confidential"**, WP000038 to WP000040 in **Doc. 226 filed on 5/19/22** . I filed WorthPoint's **"Confidential"**, bate stamped WP000038 to WP000040 last in **Doc.542, on 3/19/24 pages 76-78.** .

WorthPoint's Confidential labeling led to another question and contradiction : the name of WorthPoint'a licensing partner. My Feb 3, 2016 call with webmaster Gregory Watkins documents Mr. Watkins stating WorthPoint gets it data information from a company named Terapeak. **(Doc.504-3 p. 24). BELOW**

Speaker Gregory Watkins

That would be to Terapeak

**Speaker Annamarie Trombetta Plaintiff**

Terapeak ??

Speaker Gregory Watkins

Terapeak. But they don't... They only sends the information that's on the page like that, right. So everything else that's connected to it it... disappears.

In lawsuit records Rosen vs Terapeak, WorthPoint claim it had NO contractual relationship with eBay. Their licensing agreement was with Terapeak-**Doc. 470-9, filed on 5/19/23,** In Discovery I requested WorthPoint to produce all the meta data for WP000038 to WP000040. WorthPoint's attorneys replied it was **FROM** their licensing partner yet **DID NOT NAME WorthPoint's licensing**

**partner** in their written response. Appellant 's filed Discovery requests to WorthPoint was to name its licensing source, proves concealment. **Insert Below Rosen vs Terapeak WorthPoint** **on the Right-<u>Doc. 470-9 Pro. of Docs</u>**

Rosen v. Terapeak, Inc., Slip Copy (2015)

*10 Plaintiff also alleges that WorthPoint has a license from eBay by which it has subjected itself to California law. (Rosen Decl. ¶ 6, Ex. 4). The Court is unpersuaded that this is a jurisdictionally relevant contact that is sufficiently related to either the forum or the claims to justify exercising personal jurisdiction. The parties submit competing declarations as to whether WorthPoint has a license agreement with eBay. Plaintiff points to WorthPoint's website, which indicates that it licenses its data from eBay. (Rosen Decl. ¶ 6, Ex. 4). WorthPoint asserts that it has no contractual relationship with eBay, but rather, "WorthPoint is licensed to use eBay data; this license is based on the Terapeak agreement [and] WorthPoint has no direct license from eBay, or agreement with it." (Seppel Suppl. Decl. ¶ 7).

Case 1:18-cv-00198 [illegible]

Plaintiff's Request for Production of Documents No. 10 [illegible]

RESPONSE: [illegible]

[illegible] WorthPoint's licensing partner. [illegible]

In Discovery, Appellees produced a 2009, Canadian sub licensing agreement named AERS WP000008-WP000035. Appellant confronted WorthPoint's attorneys in **<u>Doc. 270 filed on 8/25/22</u>** and in **<u>Doc. 274 filed on 08/29/22</u>** to document with the District Court and to have on record the difference between a licensing and a sub licensing agreement.from **Doc. 274 on 08/29/22.** Appellant was deposed on

The term licensing agreement refers to a legal, written contract between two parties wherein the property owner gives permission to another party to use their brand, patent, or trademark.

Plaintiff definition below relates to Defendants' Bate Stamped WP000008 thru WP000035 which is [illegible] and subject to certain periods of time, hence Plaintiff's repeated requests to [illegible] the dates and times when the 1972 [illegible] Auctions Inc. eBay Ad for the 1972 Original Oil on [illegible] "Man With Red Umbrella" was DOWNLOADED from the alleged partner and when the 1972 [illegible] eBay Ad was POSTED on the website of WorthPoint Corporation. Plaintiff also [illegible] to the Court that each page, many which are redundant, of WP000008 thru WP000035 has written [illegible].

A sublicense agreement is a legal document that outlines the terms and conditions where one business owner allows another party to use their intellectual property. The original business owner, or licensor, often has the exclusive right to license specific intellectual property for a certain period of time.

August, 30, 2022 I testified about my cut off biography noted on page **117 lines 18 to 25 into p, 118.** I filed my testimony in **Doc. 496-4 p. 3 -4 Please read pages 118 to 124**. Despite the visual cut off sentence and dots in 2015, seven years later, Norb Novocin on 9/21/22 testified he copied my biography in its entirety.

> attention mcre intensely. I began my formal training at The Brooklyn Museum School of Art while I was in high school. The exposure to various forms of art inspired me to expand my horizons and in the early Eighties I traveled on a summer tour to Europe. The tour comprised of six countries; Germany, Austria, France, Italy, Switzerland and England. Viewing so many different cities and cultures in a concentrated period of time...

EAI's ad on WorthPoint's website used my biography that documents *"I began my training at the Brooklyn Museum …..when I was in high school "* EAI's false ad listed my birth year, 1963 which irrefutably proves I did not paint EAI's 1972 painting. On August 30, 2022, on **p. 130 lines 2 -20** I testified and in formed the attorneys my "began training in high school statement was used in the 1972 WorthPoint webpage had a cut off biography is in **Doc. 1** p. 9-10 13, **Doc. 33** p.34 **Doc. 430-3 p.3. Doc. 504-1 p.18** as **Pl. Evid 000144**. Appellees production of aporetic evidence, implementing distorted/disjunctive syllogism include my biography from my website.

> A. Trombetta
> Do you need to --
> A. I began my formal training -- no. I am trying to point out to you that it states in my biography I began my formal training --
> Q. Did you paint in --
> A. [illegible] in high school. [illegible] question in high school.
> Q. That's when you started painting in oil?
> A. That is correct.
> Q. You never painted in oil before then?
> A. For the record, [illegible] and oil paints are highly toxic. For a child to paint in oil the atmosphere and the paints would have to be clearly and carefully monitored. Some paints in oil have a warning on them. That's how toxic they are.
> Q. When did you start painting in oil?
> A. Asked and answered.
> Q. In high school?

WorthPoint's pattern of producing multiple, contradictory responses to one

question is consistent amidst their constant concealment, avoidance and fraudulent evidence. Neither EAI nor WorthPoint ever produced meta data which is on the hard drive of the computer used. WorthPoint's sub licensing agreement does not legally define permit or justify their webpage adherence of WorthPoint's logo or eBay's logo. WorthPoint's position was it featured my whole biography in their 1972 painting webpage, despite filed visual proof and coding in **Doc. 1. p. 9 to 11 filed 02/05/18.**

## APPELLANT' S SUMMARY

My self written biographical words were ill used in a description for a damaged 1972 painting devoid of photos/ images of its painting, with a trademark forged signature by Appellees who claimed a nine year old created a four foot painting. The year before I had multiple sales, produced in Discovery to Appellees, bate stamped **PL000203** Feb. 2014, a sale for **$2180, PL000206** in March 2014, a sale for **$7500** and **PL000208-209** in June 2014, a sale for **$5000**. I filed and produce four 2015 art sales receipts in **Doc.517-4 pages 13 -20.** In **Doc. 1,** page 6, # **6,** listed, in 2016, a 2 x 2 inch canvas sold for $500 and in 2017 an oil, size 16 x 20 sold for $5500.

My 2015 exhibit at The Italian American Museum was akin to an actor winning a Tony. The actor's financial worth , interest in the theater and tickets immediately increase. The Italian American Museum and I had such successes until August 2015. **(Doc.462-9 52-61)** WorthPoint's, false internet post with its forgery was listed with my solo exhibit at Italian American Museum. This is why my expert witness Dr. Joseph Scelsa wrote a report. In **Doc.33** and **Doc. 542 on pages 17 to 23,** my Reconsider Motion, In 2015, because I was unable to remove

this false webpage for months, Mrs. Goldstein informed me her aunt (potential collector) kept seeing the ongoing post of the damaged counterfeit painting with its forgery photo. My inability to remove the post quashed her interest. WorthPoint's willful lies was the cause resulting in my lost sale for $8500.

Prior to Discovery, I filed Professor Susan Goldstein 2019 notarized letter in **Doc. 73 p. and 75p.** I informed Appellees and the Court in April 2022, I could not depose Mrs. Goldstein because she died. Proof of these facts are in **Doc. 517-3 p. 8**. **Doc. 542 p. 41-45,** my Reconsider Motion. In 2015, I lost opportunities by my fact witness' testimony, professional artist, Scott Goodwillie (**Quote Below**) who procured specific gallery dealers specializing in representational artwork in **Doc. 517-3 p. 8** in **Doc. 542 p. 100.**

| |
|---|
| For those of us in the "Professional Field of Art", particularly in the year 2015, anyone selling artwork particularly on eBay or any other online platform is considered an amateur artist. The internet listing, once discovered by the galleries, sabotaged the interest in Ms. Trombetta's work. I can attest to this from personal experience that the internet link ended all possibilities of gallery representation. |

Mr. Goodwillie gave testimony on 10/6/22, on facts seven years earlier and confirmed viewing my exhibit in 2015. Mr. Goodwillie introduced me to gallerists he exhibited with in the past and made advantageous introductions for me . In 2002, Mr. Goodwillie contacted museum curator, John Adhern who included me in the 2003 Arnot Art Museum exhibit in **Doc 517-1-06/29/23 pages 3 - 6.** Curator, John Adhern wrote the introduction for my catalog with the same biography on my website, in **Doc. 517-2 p, 6.** Mr. Goodwillie's testimony also conveyed **(Scott G. Testimony WPSA1816 toWPSA1852)** the danger of being associated to eBay or WorthPoint, known for selling used, damaged/cheap items. My damages s were for professional gallery representation, lost interest in my art, due to a false, ridiculous claim and connections to eBay /EAI/ WP. This damage

is Statutory and inequitable.17 U.S.C.S. § 504

Mr. Patrick O'Leary, my internet expert witness, was immediately compelled to write an Affidavit **Doc. 322** to affirm Appellees' attempt to conceal, confuse and commit fraud by willfully not producing EAI's one native electronic 2012 eBay sale receipt email. Appellees ambiguous coding **Doc. 526-1 p. 6 - 10** A verified, exported electronic native email of Appellees ambiguous coding sent on 11/23/22 is in **Doc. 526-1 on p. 11- 16** .

In Jan. 2023, WorthPoint's attorneys sen t Mr. O'Leary a mere forty dollars to be deposed **,** noted in **Doc 388** on 3/10/23 and **Doc. 542 p. 34-35.** Mr. O'Leary was "ordered" by Judge Cave to give testimony with WorthPoint's attorneys devoid of paying Mr. O'Leary's expert fee. Mr. O'Leary's Dec. 5, 2022 Affidavit-**Doc. 322** and Mr. O'Leary testimony in is a professional expert in internet and email companies for decades and sold his internet company, matchmaker.com, for several million dollars, was dismissed. Jana Farmer moved to strike Mr. O'Leary's testimony in ( **WP**SA1483- **WP**SA1486) regarding his statements on WorthPoint 's failure to permanently removal one webpage.

Concurrently, my fact witness Vanessa Ploski gave testimony, did **NOT** receive a subpoena. This resulted in Mrs. Ploski's neighbors informing her, an angry man was yelling and banging on her door. It was WorthPoint's attorneys serving a late subpoena, when she was not home. I ask the Court of Appeals to read **Doc. 295 filed on 10/13/22.** I needed seal my witnesses contact information, Made public by WorthPoint's attorneys. The consistent, intentional means to cause chaos is still ongoing, in the Appeals Court as Mr. Duff's email omission exhibits and Ms. Farmer's Motion to Strike on Aug. 12, 2026, sent Aug. 14, 2026.



I had three fact and three expert witnesses. Six different people, verifying and explaining the impact and damage of Appellees public online webpages had on my life, immediately and over time. All my witnesses were dismissed by the District Court. Four phone call transcripts were not considered. Mr. O'Leary's unpaid fee for testimony was deemed inadmissible.

## CONCLUSION

Appellant 's Reply Brief seeks relief from this post decade Ordeal due the obstinate opponents in which I had no involvement. I had or connection to Appellees this fraudulent painting that bares my name. I am requesting my name be removed from this painting. I seek relief in the unliquidated , statutory and actual damages I have lost and moreover to be granted Permanent Injunctive Relief 28 U.S. Code § 2202, against WorthPoint Corp. and Estate Auctions Inc.

I respectfully ask that the Court reverse the judgment of the district court with a finding of fact in favor of the Appellant . In the alternative the court remands the case for either an oral argument, or a fair and impartial trial before an unprejudiced jury on proper evidence and under correct instructions as is just and proper.

Annamarie Trombetta
Pro Se Plaintiff
175 East 96th Street
New York, New York 10128

Respectfully Submitted,

—-———— Electronic Signature ———

/s/ Annamarie Trombetta, September 5, 2026

______________________________

Annamarie Trombetta

To The Court Of Appeals,

Appellant is aware of the word limitation but was unable to further edit down my Repy Brief to to the limitation of my time and the investment of time it took to write This Reply. On Friday August 28 and Tuesday September 8, I filed letters with the Court of Appeals to Request Words Increase. Despite the number of pages, I have Inserted many visuals to illustrate my statements. I shall await the Courts direction. Lastly, on Tuesday September 8, 2026, I was unable to reach my case manager for Inquires etc.

# CERTIFICATE OF COMPLIANCE

I, Annamarie Trombetta certify that this brief contains 11,280 words or less.

Annamarie Trombetta
Pro Se Plaintiff
175 East 96th Street
New York, New York 10128

Respectfully Submitted,

——————— Electronic Signature ——————

/s/ Annamarie Trombetta, September 5, 2026

Annamarie Trombetta

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:
Artist Annamarie Trombetta

v.

EAI, Novocin WorthPoint Corp

**CERTIFICATE OF SERVICE***

Docket Number: 25-17

I, Annamarie Trombetta (print name), hereby certify under penalty of perjury that on September 8, 2026 (date), I served a copy of Appellant's Reply Brief Appellant's Reply Brief (list all documents)

by (select all applicable)**

___ Personal Delivery ___ United States Mail ___ Federal Express or other Overnight Courier

___ Commercial Carrier X E-Mail (on consent)

on the following parties:

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| Adam Bialek Wilson Elser Moskowitz | 150 East 42nd Street | New York | NY | 10017 |
| Jana FarmerWilson Elser Moskowitz | 1133 Westchester Avenue | White Plains | NY | 10604 |
| Anderson Duff | 150West 62nd Street | New York | NY | 10023 |
| | | | | |
| | | | | |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

September 8, 2026 — Today's Date

Annamarie Trombetta — Signature